**THE GOUGH LAW FIRM, LLP**
Deborah R. Gough
411 Hackensack Ave.
Hackensack, New Jersey 07601
Telephone: (888) 488-1002
Facsimile: (516) 282-9880
Email: drgough @drgoughlaw.com

*Attorneys for Movant Pao Kue and Proposed Liaison Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated, | : |
| | : Civil No. 3:18-CV-02293(FLW)(TJB) |
| Plaintiff, | : |
| | : **MEMORANDUM OF LAW IN** |
| | : **SUPPORT OF PAO KUE'S** |
| v. | : **MOTION FOR APPOINTMENT AS** |
| | : **LEAD PLAINTIFF AND APPROVAL** |
| RIOT BLOCKCHAIN, INC. F/K/A, | : **OF SELECTION OF COUNSEL** |
| BIOPTIX, INC., JOHN O'ROURKE, and | : |
| JEFFREY G. MCGONEGAL, | : |
| | : |
| Defendants. | : |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................3

ARGUMENT..................................................................................................................................4

        A.        Kue Should be Appointed Lead Plaintiff..................................................................4

                1.        Kue Has Satisfied the PSLRA's Procedural Requirements .......................6

                2.        Kue Has a Significant Financial Interest ....................................................6

                3.        Kue Satisfies the Requirements of Rule 23 of the Federal Rules of
                      Civil Procedure ...........................................................................................8

                      a.        Kue's Claims are Typical of the Claims of the Class…………………8

                      b.        Kue Will Adequately Represent the Interests of the Class…………..9

        B.        The Court Should Approve Kue's Selection of Lead Counsel ..............................10

CONCLUSION.............................................................................................................................12

**TABLE OF AUTHORITIES**

**Cases**                                                                                                         **Page(s)**

*Bo Young Cha v. Kinross Gold Corp.*,
   No. 12-Civ-1203, 2012 U.S. Dist. LEXIS 79288 (S.D.N.Y. May 31, 2012) ...........................7

*Cortese v. Radian Group, Inc.*,
   No. 07-cv-3375, 2008 U.S. Dist. LEXIS 6958 (E.D. Pa. Jan. 31, 2008)...................................7

*Eisenberg v. Gagnon*,
   766 F.2d 770 (3d Cir. 1985)...................................................................................................9

*Hassine v. Jeffes*,
   846 F.2d 169 (3d Cir. 1988)...................................................................................................9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)............................................................................................ *passim*

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. July 13, 2005)................................................................................8

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
   63 F. Supp. 3d 394 (D. Del. 2014),
   aff'd, *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481 (3d Cir. 2016) ......................7

*Pope v. Navient Corp.*,
   No. 17-cv-8373, 2018 U.S. Dist. LEXIS 17340 (D.N.J. Feb. 2, 2018) .....................................9

*West Palm Beach Police Pension Fund v. DFC Global Corp*
   No. 13-cv-6731, 2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 10, 2014)...............................7

**Statutes**

15 U.S.C. § 78u-4(a)(2) ...............................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii) .......................................................................................... *passim*

Section 21D(a)(3) of the Securities Exchange Act of 1934............................................................1

**Rules**

Federal Rules of Civil Procedure Rule 23 ............................................................................ *passim*

Movant Pao Kue ("Kue") respectfully submits this Memorandum in support of her Motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an Order: (1) appointing Kue as Lead Plaintiff on behalf of a class of all persons who purchased or acquired publicly traded securities of Riot Blockchain, Inc. f/k/a Bioptix, Inc. ("Riot") from November 13, 2017 through February 15, 2018, both dates inclusive (the "Class"); (2) approval of Kue's selection of Gibbs Law Group LLP ("Gibbs") and Milberg Tadler Phillips Grossman LLP ("Milberg Tadler") as Lead Counsel and The Gough Law Firm, LLP ("Gough") as Liaison Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

This class action alleges violations of the federal securities laws for false and misleading statements and omissions made by Riot in Securities and Exchange Commission filings from November 13, 2017 through and including February 15, 2018 (the "Class Period"), regarding Riot's business, operations, and prospects. When materially adverse information about Riot's questionable business practices emerged on February 16, 2018, shares of Riot common stock plummeted, losing over 33.37% in value on February 16, 2018. On February 17, 2018, plaintiff Creighton Takata filed a class action complaint in this Court, asserting claims against defendants Riot, John O'Rourke, and Jeffrey G. McGonegal (collectively, "Defendants") pursuant to Sections 10(b) and 20(a) of the Exchange Act. There are no other related actions pending in this Court.

For the reasons detailed herein, Kue should be appointed Lead Plaintiff to prosecute this action on behalf of the Class. First, Kue satisfies all of the prerequisites for lead plaintiff

1

appointment in the PSLRA. In addition, Kue has a substantial economic interest in directing the litigation to recover on behalf of the Class and its beneficiaries. Kue suffered losses of approximately $72,784.32, calculated under the last-in-first-out ("LIFO") loss calculation methodology preferred by courts in this and other districts at the lead plaintiff stage of securities class actions under the PSLRA. To the best of Kue's knowledge, Kue is the movant with the greatest financial interest in this litigation and, as such, under the PSLRA, a statutory presumption attaches that Kue is the "most adequate plaintiff" to serve as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

Because Kue is the presumptive "most adequate plaintiff" under the PSLRA, the Court should appoint Kue as Lead Plaintiff unless that presumption is rebutted through proof that Kue "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 223 (3d Cir. 2001). No such showing can plausibly be made here. Indeed, Kue's claims are identical or virtually identical to those of the other Class members who invested in Riot stock during the Class Period and, like the other Class members, Kue sustained losses as a consequence of Defendants' alleged misrepresentations and omissions. Kue will also be an adequate class representative, as Kue's interests are perfectly aligned with those of the Proposed Class. Kue thus meets the typicality and adequacy requirements under Rule 23.

Moreover, Kue's selection of the Gibbs and Milberg Tadler firms as Lead Counsel and the Gough firm as Liaison Counsel should also be approved. The firms' attorneys are highly experienced litigators with significant securities class action experience and have the expertise, resources, and track record necessary to handle a litigation of this scale.

## STATEMENT OF FACTS

Riot builds and supports various blockchain technologies, which serve as software platforms for digital assets. Riot invests primarily in Bitcoin (a decentralized peer-to-peer payment network with no central authority or middlemen that was created at the end of 2008) and Ethereum (a global decentralized multiple-usage platform for applications that run on a custom-built blockchain). Riot was formerly known as Bioptix, Inc. and had focused its business on animal healthcare and veterinary products. On October 4, 2017, Bioptix announced that, on October 2, 2017, its board of directors had approved a merger with its wholly-owned subsidiary, Riot, whereby Bioptix would change its name to Riot and shift the direction of its business from animal healthcare to becoming a strategic investor and operator in the blockchain ecosystem.

On February 17, 2018, plaintiff Creighton Takata filed a class action complaint in this Court, asserting violations of Sections 10(b) and 20(a) of the Exchange Act (the "*Takata* Action").[1] The *Takata* Action alleged that, beginning on November 13, 2017, Riot issued a series of materially false and/or misleading statements and omitted to disclose materially adverse facts regarding Riot's business and operations, which were known to or recklessly disregarded by Defendants. Specifically, Defendants made materially false and/or misleading statements or failed to disclose that: (1) Riot's principle executive offices were not in Colorado, but rather in Florida in the same location as a large, influential shareholder, Barry C. Honig who had a previous working relationship with Defendant O'Rouke; (2) Riot never intended to hold its Annual General Meetings scheduled for December 28, 2017 and February 1, 2018; and (3) as a

---

[1] On February 22, 2018, a class action complaint alleging substantially similar claims against Defendants for violations of Sections 10(b) and 20(a) of the Exchange Act was filed in the District Court for the Southern District of Florida, *Roys v. Riot Blockchain Inc.*, Case No. 9:18-CV-80225 ("*Roys* Action"). By Order dated March 28, 2018, the *Roys* Action was closed for administrative purposes only, upon advisement from the parties to the *Roys* Action that it may be consolidated with the *Takata* Action.

result, Defendants' statements about Riot's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

The truth emerged on February 16, 2018, when CNBC published an article entitled, "CNBC investigates public company that changes its name to Riot Blockchain and saw its shares rocket," regarding the questionable business practices at Riot. Upon publication of this article, shares of Riot plummeted $5.74 per share, losing over 33.37% of its value on February 16, 2018, closing at a trading price of $11.46 per share. Notably, defendant O'Rourke was able to avoid sharing in these losses, having sold $869,256 worth of personally owned Riot stock on December 29, 2017.

## ARGUMENT

### A. Kue Should be Appointed Lead Plaintiff

The PSLRA provides a clear procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth the procedure for selecting lead plaintiff). The statute first specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class – (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

The statute then directs that, after class members have moved for appointment as lead plaintiff, the court "[n]ot later than 90 days after . . . notice is published . . . shall consider any motion made by a purported class member . . . and shall appoint as lead plaintiff the member or

members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . referred to as the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i).

As the Third Circuit advised, "[i]n appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status." *Cendant*, 264 F.3d at 262. Under the PSLRA, "the court shall adopt a presumption that the most adequate plaintiff" is the "person or group of persons" who (i) filed a motion for lead plaintiff, (ii) "has the largest financial interest in the relief sought by the class," and (iii) otherwise satisfies the class representative's requirements pursuant to Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). *See Cendant*, 264 F.3d at 222 ("The PSLRA lays out detailed procedures for courts to follow in making these decisions, directing them to appoint 'the most adequate plaintiff' as the lead plaintiff, and instructing them to 'adopt a presumption' that the most adequate plaintiff is the movant that 'has the largest financial interest in the relief sought by the class' and 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'") (citing 15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I)).

The statutorily presumptive "most adequate plaintiff" should be appointed lead plaintiff by the Court unless the presumption is rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Cendant*, 264 F.3d at 222.

As the statutorily presumptive "most adequate plaintiff," Kue should be appointed Lead Plaintiff. Kue filed a timely motion for appointment, has (to the best of Kue's knowledge) the largest financial interest in the relief the Class seeks, and satisfies Rule 23(a)'s typicality and

adequacy requirements.

### 1. Kue Has Satisfied the PSLRA's Procedural Requirements

Kue filed this motion to serve as Lead Plaintiff in a timely manner. The plaintiff who filed the first complaint in this action caused notice regarding the pending nature of this case to be published on *Business Wire*, a widely-circulated, national news wire service, on February 23, 2018. A copy of this Notice is attached to the Gough Decl. as Ex. A.[2] This was the earliest notice of action relating to the allegations. As permitted by the PSLRA, Kue has filed her motion for appointment as Lead Plaintiff within the required 60 days after publication of that notice. Kue has also submitted a "sworn certification," detailing her trading in Riot securities, as required by 15 U.S.C. § 78u-4(a)(2). *See* Gough Decl., Ex. B.

### 2. Kue Has a Significant Financial Interest

As noted above, the PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons who "has the largest financial interest in the relief sought by the class," and who also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii); *see also Cendant*, 264 F.3d at 262. In noting that the PSLRA "provides no formula for courts to follow" in determining the largest financial interest, the Third Circuit held that "we agree with the many district courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Id.* (citing cases).

---

[2] References to "Gough Decl." herein are to the Declaration of Deborah R. Gough in Support of Pao Kue's Motion for Appointment as Lead Plaintiff and Approval of Counsel, filed simultaneously with this Memorandum of Law.

To calculate the approximate losses sustained by a proposed lead plaintiff in a securities class action, courts "typically employ one of two methodologies: First-In-First-Out ("FIFO") or Last-In-First-Out ("LIFO")." *Bo Young Cha v. Kinross Gold Corp.*, No. 12-Civ-1203, 2012 U.S. Dist. LEXIS 79288, at *9-9 (S.D.N.Y. May 31, 2012). "Under FIFO, stocks acquired first are assumed to have been sold first in the calculation of losses; under LIFO, stocks acquired most recently are assumed to have been the first sold. These methodologies can yield significantly different results where, as of the start of the class period, the plaintiff held stocks in the issuer which it had purchased earlier." *Id.* at *9.

The PSLRA does not address which accounting method of loss calculation courts should employ and "the Third Circuit has not resolved whether any specific theory should always be used for loss causation analysis." *Cortese v. Radian Grp. Inc.*, No. 07-cv-3375, 2008 U.S. Dist. LEXIS 6958, *15 (E.D. Pa. Jan. 31, 2008). However, courts in this district have noted a preference for employing the LIFO method. *See*, *e.g.*, *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 411, N.1 (D. Del. 2014) ("Some courts have opted for the 'First-In-First-Out' ('FIFO') method, while other courts have applied the LIFO method. However, the Southern District of New York has noted that 'the overwhelming trend . . . nationwide has been to use LIFO to calculate such losses.'") (citing *Bo Young Cha*, 2012 U.S. Dist. LEXIS 79288, at *9)), *aff'd*, *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481 (3d Cir. 2016); *West Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-cv-6731, 2014 U.S. Dist. LEXIS 49595, at *16 (E.D. Pa. Apr. 10, 2014) ("For purposes of appointing lead plaintiff in this matter, this Court will employ the LIFO method of calculation. As one court noted, despite the use of the FIFO method to determine losses for tax purposes, 'more recently, courts have preferred LIFO and have generally rejected FIFO as an appropriate means of

calculating losses in securities fraud cases.'") (quoting *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y.2005) ("The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price. FIFO . . . may exaggerate losses.")).

During the Class Period, as calculated under the LIFO method, Kue suffered losses of approximately $72,784.32. Gough Decl. Ex. C (Kue's Loss Chart). Kue is unaware of any other investor who intends to file a motion for appointment as lead plaintiff in this action that has suffered a larger loss than Kue. Accordingly, Kue is presumptively the most adequate plaintiff.

### 3. Kue Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The presumption that the most adequate plaintiff has the largest financial interest in the relief sought by the class is rebuttable only by "proof by a member of the purported plaintiff class" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii); *see also Cendant*, 264 F.3d at 263. A prima facie showing of typicality and adequacy is all that is required at the lead plaintiff appointment stage. *See Id.* (inquiry "should be confined to determining whether the movant has made a prima facie showing of typicality and adequacy"). Kue satisfies the typicality and adequacy requirements of Rule 23, as directed by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

#### a. Kue's Claims are Typical of the Claims of the Class

Under Rule 23(a)(3), "[t]he typicality requirement is satisfied when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues." *Pope v.*

8

*Navient Corp.*, No. 17-cv-8373, 2018 U.S. Dist. LEXIS 17340, at *10 (D.N.J. Feb. 2, 2018). Importantly, "[t]he 'typicality' and 'commonality' prerequisites of Rule 23 do not require that all of the putative class members share *identical* claims." *Hassine v. Jeffes*, 846 F.2d 169, 176-177 (3d Cir. 1988) (emphasis in original) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) ("Typical is not identical")). Thus, when making a typicality determination, courts should consider whether the circumstances of the movant are "markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based." *Cendant*, 264 F.3d at 264-65 (quoting *Hassine*, 846 F.2d at 177)).

Here, Kue's claims satisfy the typicality requirement because like all other Class members, Kue (1) purchased or acquired Riot securities during the Class Period, (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and omissions, and (3) was damaged thereby. Indeed, Kue's claims are identical or virtually identical to those of the other Class members who invested in Riot stock during the Class Period and sustained losses as a consequence of the defendants' alleged misrepresentations and omissions. Moreover, Kue is not aware of any unique defenses that Defendants could raise that would render Kue inadequate to represent the Class.

Accordingly, Kue satisfies the typicality requirement of Rule 23. Kue is particularly well-suited to serve as Lead Plaintiff as a result of her significant purchases on the open market. Kue can therefore bring claims against Riot based on trading under Sections 11, 12, and 15 of the Securities Act.

### b. Kue Will Adequately Represent the Interests of the Class

The adequacy inquiry focuses on whether the representative party will "fairly and

adequately protect the interests of the class." Rule 23(a)(4). To meet this requirement, a movant must show that it "has the ability and incentive to represent the claims of the class vigorously, [that it] has obtained adequate counsel, and [that] there is [no] conflict between [the movant's] claims and those asserted on behalf of the class." *Cendant*, 264 F.3d at 265.

No antagonism or conflict exists between the interests of Kue and those of the absent Class members; rather, the interests are squarely aligned. As a sophisticated and experienced investor who understands the fiduciary role of a Lead Plaintiff and is willing and able to vigorously pursue the claims on behalf of the Class, Kue is well-suited to represent and protect the interests of all Class members. Kue appreciates that a key role of a Lead Plaintiff is the selection and supervision of adequate counsel. Moreover, as detailed below, Kue has selected the highly experienced Gibbs and Milberg Tadler firms to act as Lead Counsel.

### B. The Court Should Approve Kue's Selection of Lead Counsel

Under the PSLRA, lead plaintiffs are given the right, subject to court approval, to "select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(B)(v). This selection should not be disturbed unless necessary to "protect the interests of the [plaintiff] class." 15 U.S.C. § 78u4(a)(3)(B)(iii)(II)(aa). *See Cendant*, 264 F.3d at 222-23 ("With regard to the selection of lead counsel, the statute provides that "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

Kue's choice of counsel, the Gibbs and Milberg Tadler firms, are highly experienced litigators. Gibbs attorneys have served as lead and co-lead counsel on behalf of more than a dozen institutional investors and have secured significant recoveries on behalf of investors in some of the most prominent securities fraud cases in recent decades. *E.g.*, *In re Am. Express Fin. Advisors Secs. Litig.*, No. 04-cv-01773 (S.D.N.Y.) ($100 million settlement); *In re*

*Peregrine Fin. Group Customer Litig.*, No. 12-cv-5546 (N.D. Ill.) (settlements delivered more than $75 million to investors); *Roth v. Aon Corp.*, No. 04-cv-06835 (N.D. Ill.) ($30 million settlement). Recently, Gibbs attorneys were appointed Lead Counsel in *Deora v. NantHealth*, No. 2:17-cv-01825-BRO-MRW (C.D. Cal. May 31, 2017) (finding that the attorneys "have significant securities class action litigation experience and have achieved highly favorable settlements for plaintiffs in previous actions"). See also Greenberg Decl. Ex. D.

Milberg Tadler was established in 2018 by members of Milberg LLP, a pioneer in the field of securities and other class actions, and Sanders Phillips Grossman LLC, a nationally recognized plaintiffs' law firm representing consumers in mass tort and personal injury cases. Milberg LLP was founded in 1965 and has spearheaded as lead or Lead counsel landmark securities cases, recovering billions of dollars for investors. *See*, *e.g., In re Merck & Co., Inc. Securities Litigation*, Nos. 05-1151 and 05-2367 (D.N.J.) (Lead counsel in this case, which resulted in a decision by the United States Supreme Court that settled for $1.06 billion); *In re Vivendi Universal, S.A. Securities Litigation* (jury verdict for plaintiff class); *In re Tyco Int'l Ltd., Sec. Litig.*, MDL No. 02-1335-B ($3.2 billion settlement); *In re Nortel Networks Corp., Sec. Litig.*, No. 01-CV-1855 (S.D.N.Y.) ($1.1 billion settlement); *In re Lucent Techs., Inc., Sec. Litig.*, No. 00-CV-621 (D.N.J.) ($600 million settlement); *In re Raytheon Co. Sec. Litig.*, 99-CV-12142 (E.D. Mass.) ($460 million settlement); *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02-CV-7527 (N.D. Ill.) ($215 million settlement); and *In re Initial Public Offering Sec. Litig.*, No. 21-92 (S.D.N.Y.) (as a member of the court-appointed Plaintiffs' Executive Committee, oversaw the efforts of approximately 60 plaintiffs' firms in 310 consolidated securities actions arising from an alleged market manipulation scheme, culminating in a settlement of $586 million). Additional accomplishments are discussed in Milberg Tadler's firm resume, attached

as Ex. E to the Gough Decl. In addition to the Gibbs and Milberg Tadler firms, Kue is represented by Gough, a New Jersey firm with vast litigation experience that is ready and willing to serve as Liaison Counsel in this case. *See* Ex. F. to the Gough Decl.

Thus, the Court can be assured that by granting this motion, the proposed Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, Kue respectfully requests that the Court: (1) appoint Kue as Lead Plaintiff; (2) approve Kue's selection of Gibbs and Milberg Tadler as Lead Counsel and Gough as Liaison Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: April 18, 2018

Respectfully submitted,

**THE GOUGH LAW FIRM, LLP**

 */s/ Deborah R. Gough*
Deborah R. Gough
411 Hackensack Ave.
Hackensack, New Jersey 07601
Telephone: (888) 488-1002
Facsimile: (516) 282-9880
Email: drgough @drgoughlaw.com

*Counsel for Movant and Proposed Liaison Counsel for the Class*

**GIBBS LAW GROUP LLP**
Eric H. Gibbs
David Stein
505 14th Street, Suite 1110
Oakland, CA 94612-1406
Telephone: (510) 350-9700
Facsimile:  (510) 350-9701
Email:  ehg@classlawgroup.com
              ds@classlawgroup.com

12

**MILBERG TADLER PHILLIPS GROSSMAN LLP**
Andrei V. Rado
Robert A. Wallner
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229
Email:   arado@milberg.com
             rwallner@milberg.com

*Counsel for Movant Pao Kue and Proposed Lead Counsel for the Class*