CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com

*Proposed Liaison Counsel*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>       vs.<br><br>RIOT BLOCKCHAIN, INC. f/k/a BIOPTIX, INC., et al.,<br><br>                    Defendants. | Case No. 3:18-cv-02293-FLW-TJB |

**BRIEF IN SUPPORT OF THE MOTION OF
SAROOR ALAM FOR APPOINTMENT AS LEAD PLAINTIFF
<u>AND APPROVAL OF SELECTION OF COUNSEL</u>**

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | LEGAL ARGUMENT | 4 |
|  | A. Dr. Alam Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff | 4 |
|  |     1. Dr. Alam Has Complied with the PSLRA's Procedural Requirements | 5 |
|  |     2. Dr. Alam Has the Largest Financial Interest in the Relief Sought by the Class | 6 |
|  |     3. Dr. Alam Is Typical and Adequate of the Putative Class | 6 |
|  | B. The Court Should Approve Dr. Alam's Choice of Counsel | 10 |
| IV. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

Page

**CASES**

*Eisenberg v. Gagnon*,
 766 F.2d 770 (3d Cir. 1985) ......................................................................................8

*Georgine v. Amchem Prods., Inc.*,
 83 F.3d 610 (3d Cir. 1996) ........................................................................................9

*In re Cendant Corp. Litig.*,
 264 F.3d 201 (3d Cir. 2001) ...............................................................................6, 8, 9

*In re Party City Sec. Litig.*,
 189 F.R.D. 91 (D.N.J. 1999) .....................................................................................8

*In re Vonage IPO Sec. Litig.*,
 No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 7, 2007) ........5, 7

*Lax v. First Merchants Acceptance Corp.*,
 No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..................7

**STATUTES, RULES AND REGULATIONS**
15 U.S.C.
   §78j(b) ..........................................................................................................................1
   §78t(a) .........................................................................................................................1
   §78u-4(a)(1) ...............................................................................................................4
   §78u-4(a)(3)(A)(i) .....................................................................................................4
   §78u-4(a)(3)(A)-(B) ...............................................................................................4, 5
   §78u-4(a)(3)(B) .........................................................................................................5
   §78u-4(a)(3)(B)(iii) ...........................................................................................1, 5, 6
   §78u-4(a)(3)(B)(v) ...............................................................................................1, 10

Federal Rules of Civil Procedure
   Rule 23 ............................................................................................................1, 5, 6, 7
   Rule 23(a) ...............................................................................................................6, 7
   Rule 23(a)(3) ..............................................................................................................7
   Rule 23(a)(4) ..............................................................................................................8

17 C.F.R.
   §240.10b-5 .................................................................................................................1

**I.     PRELIMINARY STATEMENT**

Presently pending before this Court is a securities class action lawsuit ("Action") brought on behalf of investors who purchased publicly traded Riot Blockchain, Inc. f/k/a Bioptix, Inc. ("Riot" or the "Company") securities from November 13, 2017 through February 15, 2018, inclusive ("Class Period"). The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

Proposed Lead Plaintiff Saroor Alam respectfully submits this memorandum of law in support of its motion for appointment as Lead Plaintiff pursuant to the PSLRA. Dr. Alam should be appointed as Lead Plaintiff because he: (1) timely filed this Motion; (2) believes he possesses the largest financial interest in the relief sought by the putative class; and (3) will typically and adequately represent the class's interests. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, Dr. Alam's selection of Robbins Geller Rudman & Dowd LLP as Lead counsel for the class, and of Carella, Byrne as Liaison counsel, should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

This motion is made on the grounds that Dr. Alam is the most adequate plaintiff, as defined by the PSLRA, because he possesses a significant financial interest in the Action, and he otherwise satisfies the requirements of Rule 23 of the

Federal Rules of Civil Procedure in that his claims are typical of the claims of the putative class and that he will fairly and adequately represent the interests of the class. Accordingly, Dr. Alam's motion should be granted.

## II.   FACTUAL BACKGROUND

Riot builds and supports various blockchain technologies. The Company invests primarily in Bitcoin and Ethereum blockchains. On October 4, 2017, the Company announced it was changing its name from Bioptix, Inc. ("Bioptix") to Riot Blockchain, Inc. claiming this name change was in line with a shift in the Company's direction. As Bioptix, the Company focused on animal healthcare and veterinary products. As Riot, however, the Company was now going to focus on being a strategic investor and operator in the blockchain ecosystem with a particular focus on Bitcoin and Ethereum.

The complaint alleges that during the Class Period, defendants made false and misleading statements and/or failed to disclose adverse material information regarding Riot's business and operations. Specifically, the complaint alleges defendants failed to disclose that the Company had changed its name to Riot Blockchain, Inc. in order to generate investor enthusiasm and tie the Company to the recent rise in the price of cryptocurrencies despite its lack of a significant blockchain business in order to further an insider scheme that would allow Riot's controlling shareholder Barry Honig ("Honig") and his associates to sell their Riot securities at artificially inflated prices.

In addition, according to the complaint, Honig and other investors were effectively controlling Riot and its operations and exerting undisclosed influence over the Company and its Chief Executive Officer ("CEO"). As a result of defendants' false statements and omissions during the Class Period, the prices of Riot securities were artificially inflated, with its stock trading at more than $38.00 per share.

On January 5, 2018, the Company announced that it had dismissed its auditor. On January 9, 2018, investor news site *The Motley Fool* published an article discussing the auditor's dismissal and connecting it to the removal of two other auditors by Riot earlier in the year, which raised concerns about corporate governance and the legitimacy of the Company's business. On this news, the price of Riot shares fell $3.58 per share, or nearly 15%, over four trading days. On February 12, 2018, Honig and certain of his associates, who had collectively owned or controlled nearly 30% of the Company's outstanding shares, reported that they had reduced their share ownership to less than 5% of Riot's outstanding shares.

Then on February 16, 2018, CNBC published an article regarding questionable practices at Riot, revealing, among other things, that Honig appeared to be "the man behind the . . . curtain" at Riot, that Honig and other insiders had sold large amounts of Riot shares at times that coincided with increases in Riot's stock price, that the Company's CEO had a history of dealings with Honig and regularly consulted with him regarding the Company's affairs, and that Riot had overpaid for Bitcoin mining

machines from a less-than-two-week-old entity that appeared to have numerous ties to Company insiders. On this news, the price of Riot shares fell $5.74 per share, or 33%, to close at $11.46 per share on February 16, 2018.

## III.   LEGAL ARGUMENT

### A.   Dr. Alam Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff here caused the first notice regarding the pendency of the Action to be published on *Business Wire*, a national, business-oriented newswire service, on February 17, 2018. *See* Cecchi Decl., Ex. A.[1] Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §78u-4(a)(3)(A)-(B).

---

[1]   References to the "Cecchi Decl., Ex. __" are to the exhibits attached to the Declaration of James E. Cecchi, submitted herewith.

Second, the PSLRA provides that, within 90 days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under [the Securities Act] is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *see also In re Vonage IPO Sec. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *11-*14 (D.N.J. Sept. 7, 2007) (describing PSLRA standards for appointment of lead plaintiff).

### 1. Dr. Alam Has Complied with the PSLRA's Procedural Requirements

The statutory notice published in connection with this Action advised purported class members of the pendency of the Action, the claims asserted, the proposed class definition, and the right to move the Court to be appointed as Lead Plaintiff within 60 days, or by April 18, 2018. 15 U.S.C. §78u-4(a)(3)(A)-(B); *see* Cecchi Decl., Ex. A.

Dr. Alam is timely moving this Court to be appointed Lead Plaintiff by the statutory deadline.

Dr. Alam has also executed a Certification evidencing his willingness to serve as Lead Plaintiff on behalf of the class. *See* Cecchi Decl., Ex. B. Accordingly, Dr. Alam is eligible to have his motion considered by the Court.

### 2. Dr. Alam Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed Certification and loss chart, Dr. Alam incurred a loss of approximately $110,412 on his transactions in Riot securities in reliance upon the materially false and misleading statements issued by defendants. *See* Cecchi Decl., Exs. B, C. Upon information and belief, no other single investor possesses a larger financial interest in the Action. Accordingly, Dr. Alam satisfies the PSLRA's prerequisite of having a significant financial interest in the Action, and is the presumptive "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii).

### 3. Dr. Alam Is Typical and Adequate of the Putative Class

According to the PSLRA, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 222 (3d Cir. 2001). Rule 23(a) provides that a party may serve as a class representative only if the

following four requirements are satisfied: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Of these four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative, rather than the class as a whole. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Vonage*, 2007 U.S. Dist. LEXIS 66258, at \*13-\*14 (testing the typicality and adequacy of prospective lead plaintiffs); *see also Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, \*17-\*23 (N.D. Ill. Aug. 6, 1997) (same). Dr. Alam satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff in this Action.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. In making the *prima facie* determination of typicality, the Court should apply traditional Rule 23 principles, including whether the circumstances of the movant with the largest losses "are markedly different or the

legal theory upon which the claims [of that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based." *Cendant*, 264 F.3d at 265.  Thus, typicality exists if claims "arise from the same event or course of conduct that gave rise to the claims of the other class members and are premised upon the same legal theory." *In re Party City Sec. Litig.*, 189 F.R.D. 91, 107 n.13 (D.N.J. 1999); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (typicality "permits the court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment").

Dr. Alam satisfies this requirement because, just like all other class members, he: (a) purchased or otherwise acquired Riot securities during the Class Period; (b) was adversely affected by defendants' false and misleading statements; and (c) suffered damages by the conduct set forth in the complaint.  Thus, Dr. Alam's claims are typical of those of other class members because his claims and the claims of other class members arise out of the same course of events and same legal theories.

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class."  The PSLRA directs this Court to limit its inquiry regarding the adequacy of Dr. Alam to represent the class to the existence of any conflicts between the interests of Dr. Alam and the members of the class.  The Court must evaluate adequacy of representation by considering whether Dr. Alam "has the ability and incentive to represent the claims of the class vigorously, [whether he] has

obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Cendant*, 264 F.3d at 265; *see also Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996) (stating that the adequacy of representation inquiry involves consideration of both whether "the interests of the named plaintiffs [are] sufficiently aligned with those of the absentees" and whether "class counsel [is] qualified and [will] serve the interests of the entire class").

Here, Dr. Alam meets these requirements.  As evidenced by the injuries suffered by Dr. Alam in purchasing Riot securities at prices allegedly artificially inflated by defendants' materially false and misleading statements, and by the injury he suffered based on materially false and misleading statements, the interests of Dr. Alam are clearly aligned with the interests of the class.  Furthermore, there is no evidence of antagonism between Dr. Alam and the class, and Dr. Alam has certified his willingness to serve as a class representative.  Cecchi Decl., Exs. B, C.

Further, Dr. Alam has taken significant steps which demonstrate that he will protect the interests of the class:  he has retained competent and experienced counsel to prosecute these claims.  As shown below, Dr. Alams's proposed Lead and Liaison Counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner.  Cecchi Decl., Exs. D, E.

In sum, Dr. Alam has satisfied each of the PSLRA's requirements and should be appointed Lead Plaintiff.

### B.     The Court Should Approve Dr. Alam's Choice of Counsel

Pursuant to the PSLRA, the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. 15 U.S.C. §78u-4(a)(3)(B)(v). In this regard, Dr. Alam has selected Robbins Geller to serve as Lead Counsel and Carella Byrne to serve as Liaison Counsel. Both firms have substantial experience in the prosecution of shareholder and securities class actions. *See* Cecchi Decl., Exs. D, E. As such, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from Robbins Geller as Lead Counsel and Carella Byrne as Liaison Counsel. Accordingly, the Court should approve Dr. Alam's selection of counsel.

### IV.    CONCLUSION

For all the foregoing reasons, Dr. Alam respectfully requests that the Court: (a) appoint Dr. Alam as Lead Plaintiff in the Action; (b) approve his selection of Lead and Liaison Counsel as set forth herein; and (c) grant such other relief as the Court may deem just and proper.

DATED:  April 18, 2018                    CARELLA, BYRNE, CECCHI,
                                          OLSTEIN, BRODY & AGNELLO, P.C.
                                          JAMES E. CECCHI

                *s/ James E. Cecchi*
                JAMES E. CECCHI

5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com

*Proposed Liaison Counsel for*
*Proposed Lead Plaintiff*

ROBBINS GELLER RUDMAN
  & DOWD LLP
JACK REISE
DOUGLAS WILENS
ROBERT J. ROBBINS
SABRINA E. TIRABASSI
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
jreise@rgrdlaw.com
dwilens@rgrdlaw.com
rrobbins@rgrdlaw.com
stirabassi@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUCAS F. OLTS
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
lolts@rgrdlaw.com

*Proposed Lead Counsel for*
*Proposed Lead Plaintiff*

- 11 -

BOTTINI & BOTTINI, INC.
FRANCIS A. BOTTINI, JR.
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA  92037
Telephone:  858/914-2001
858/914-2002 (fax)
fbottini@bottinilaw.com

*Additional Counsel for*
*Proposed Lead Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 18, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*s/ James E. Cecchi*
JAMES E. CECCHI
