Michael B. Eisenkraft
ID: 016532004
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: meisenkraft@cohenmilstein.com

*Counsel for Movants and*
*Proposed Co-Lead Counsel for the Class*

(Additional counsel listed on signature page)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated, | 3:18-cv-02293 |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE RIOT INVESTOR GROUP FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |
| v. | |
| RIOT BLOCKCHAIN, INC., F/K/A BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL, | |
| Defendants. | |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF FACTS .......................................................................................2

ARGUMENT ...........................................................................................................4

    A.    THE RIOT INVESTOR GROUP SHOULD BE APPOINTED LEAD
           PLAINTIFF.............................................................................................4

           1.    The Riot Investor Group Is Willing to Serve as Class
                 Representative .............................................................................4

           2.    The Riot Investor Group Has the "Largest Financial Interest"...................5

           3.    The Riot Investor Group Otherwise Satisfies the Requirements of
                 Rule 23 of the Federal Rules of Civil Procedure ........................................6

    B.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
           APPROVED ............................................................................................9

CONCLUSION.......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Barnet v. Elan Corp., PLC*,
236 F.R.D. 158 (S.D.N.Y. 2005) ...........................................................7

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
1:17-cv-4846 (E.D.N.Y.) ....................................................................10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...........................................................5, 6, 7

*In re Cent. European Distrib. Corp. Sec. Litig.*,
No. 11-cv-6247-JBS-KMW (D.N.J.) ..................................................10

*In re Comverse Tech., Inc., Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y.
Mar. 2, 2007)........................................................................................5

*In re Datatec Sys. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428 (D.N.J. Nov. 28, 2007)...................10

*Dollens v. Zionts*,
Nos. 01 C 5931 *et al*, 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001).........................7

*In re Enzymotec Ltd. Sec. Litig.*,
No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015) ....................................7, 8

*Garber v. Pharmacia Corp.*,
No. 03-1519 (AET), 2003 U.S. Dist. LEXIS 29208 (D.N.J. Aug. 5, 2003)............................8

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011)..................................................8

*Howard v. Arconic, Inc.*,
2:17-cv-1057 (W.D. Pa.)......................................................................9

*Lax v. First Merchants Acceptance Corp.*,
Nos. 97 C 2715, *et al.*, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ......................5

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) .......................................................6, 9

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
63 F. Supp. 3d 394 (D. Del. 2014)........................................................7

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................5

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) .......................................................................8

*In re Petrobras Sec. Litig.*,
    No. 14-cv-09662 (S.D.N.Y.) .............................................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) .................................................................7, 8

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
    No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012) ................8

*Ruckel v. Ford Motor Co.*,
    4:17-cv-13536 (E.D. Mich.) ............................................................................10

*Takara Trust v. Molex Inc.*,
    229 F.R.D. 577 (N.D. Ill. 2005) .......................................................................7

*In re Toronto-Dominion Bank Sec. Litig.*,
    1:17-cv-1665 (D.N.J.) .......................................................................................9

*W. Palm Beach Police Pension Fund v. DFC Global Corp.*,
    No. 13-6731, 2014 U.S. Dist. LEXIS 49595 (E.D. Pa. Apr. 10, 2014) ...................8

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .............................................................................6

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) .......................................................................7

**STATUTES**

15 U.S.C. § 78u-4 .......................................................................... *passim*

Movants Kevin Ezell, Frank J. Kosarek, the Francis Kosarek Jr. Trust, Ben Hughes, Sue Hughes, and Lawrence Handler (collectively, the "Riot Investor Group"), respectfully submit this memorandum of law in support of their motion for: (i) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (ii) approval of the Riot Investor Group's selection of Pomerantz LLP ("Pomerantz") and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") as Co-Lead Counsel for the Class.

## PRELIMINARY STATEMENT

The above-captioned action (the "Action") alleges that from November 13, 2017 through February 15, 2018, both dates inclusive (the "Class Period"), Riot Blockchain, Inc. f/k/a Bioptix, Inc. ("Riot" or the "Company"), its Chief Executive Officer ("CEO") John O'Rourke, and its Chief Financial Officer Jeffrey G. McGonegal (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Riot investors, including the Riot Investor Group, incurred significant losses following the publication of an article by CNBC based on the news organization's investigation of Riot. The article reported that a CNBC news crew visiting the office of Barry C. Honig ("Honig"), an investor with significant holdings in Riot, had encountered Riot's CEO, Defendant O'Rourke. Citing discussions with securities attorneys, CNBC reported that "if a CEO were using the office of a major investor, it might raise concerns about the exchange of information" concerning the Company, and raised the theretofore undisclosed prospect that Honig wielded influence over O'Rourke's decisionmaking. Following publication of the CNBC article, Riot's share price fell sharply, damaging the Riot Investor Group and other investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the action and that satisfies the

requirements of Rule 23 of the Federal Rules of Civil Procedure.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Riot Investor Group, having incurred losses of approximately $643,117 in connection with its Class Period purchases of Riot securities, believes that it has the largest financial interest in the relief sought in this action.

In addition to asserting the largest financial interest in this litigation, the Riot Investor Group also meets the applicable requirements of Rule 23 because its claims are typical of absent class members and because it will fairly and adequately represent the interests of the Class.

In order to fulfill those responsibilities and vigorously prosecute this action on behalf of the Class, the Riot Investor Group has selected Pomerantz and Cohen Milstein as Co-Lead Counsel for the Class.  Pomerantz is a nationally recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors, and recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the fifth largest class action settlement ever achieved in the United States.  Cohen Milstein has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions across the country, including in this District, and has likewise obtained billions of dollars on behalf of defrauded investors.

Accordingly, based on the Riot Investor Group's significant financial interest and its commitment and ability to overseeing this litigation, the Riot Investor Group respectfully requests that the Court enter an order appointing it as Lead Plaintiff and approving its selections of Co-Lead Counsel.

## STATEMENT OF FACTS

Riot purports to operate as a digital currency company.  The Company represents that it focuses on buying cryptocurrency and blockchain businesses, as well as supporting blockchain technology companies

Founded in 2000, the Company was formerly known as Bioptix, Inc. ("Bioptix") and changed its name to Riot Blockchain, Inc. in October 2017.  Riot is based in Castle Rock,

Colorado and its common stock trades on the NASDAQ Capital Market under the ticker symbol "RIOT."

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Riot lacked a meaningful business plan with respect to the cryptocurrency business and had only minimal investments in cryptocurrency products; (ii) the Company changed its name to Riot Blockchain, Inc. as part of a scheme to capitalize on public interest in cryptocurrency products, thereby driving up the Company's stock price and enriching inside shareholders; (iii) Riot never intended to hold its Annual General Meetings scheduled for December 28, 2017 and February 1, 2018; and (iv) as a result of the foregoing, Riot shares traded at artificially inflated prices during the Class Period, and class members suffered significant losses and damages.

On February 16, 2018, CNBC published a report based on an investigation of Riot. CNBC reported that a CNBC news crew visiting the office of Barry C. Honig, an investor with significant holdings in Riot, had encountered Riot's CEO, Defendant O'Rourke. Citing discussions with securities attorneys, CNBC reported that "if a CEO were using the office of a major investor, it might raise concerns about the exchange of information" concerning the Company, and raised the theretofore undisclosed prospect that Honig wielded influence over O'Rourke's decisionmaking.

On this news, Riot's share price fell $5.74, or over 33.37%, to close at $11.46 on February 16, 2018, damaging investors.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the Riot Investor Group and other class members have suffered significant losses and damages.

## ARGUMENT

### A.  THE RIOT INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Riot Investor Group should be appointed Lead Plaintiff because, to its knowledge, the Riot Investor Group has the largest financial interest in the Action and otherwise satisfies the requirements of Rule 23.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Riot Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.  The Riot Investor Group Is Willing to Serve as Class Representative

On February 17, 2018, counsel for plaintiff in the above-captioned action caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that the Action had been filed against Defendants, and advised investors in Riot securities that they had until April 18, 2018 to file a motion to be appointed as Lead Plaintiff. (*See* Declaration of Michael B. Eisenkraft ("Eisenkraft Decl."), Ex. A.)  The Riot Investor Group

has filed the instant motion pursuant to the notice, and its members have attached Certifications, attesting that the Riot Investor Group is willing to serve as a representative of the Class, and to provide testimony at deposition and trial, if necessary.  (*See id.*, Ex. B.)  Accordingly, the Riot Investor Group satisfies the first requirement to serve as Lead Plaintiff for the Class.

### 2.     The Riot Investor Group Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of the Riot Investor Group's knowledge, it has the largest financial interest of any Riot investor seeking to serve as Lead Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715, *et al.*, 1997 U.S. Dist. LEXIS 11866, at *7-8 (N.D. Ill. Aug. 6, 1997).  Those factors are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  *See id*; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (adopting test set forth in *Lax v. First Merch. Acceptance Corp*).[1]

During the Class Period, the Riot Investor Group: (1) purchased 111,432 shares of Riot securities; (2) expended $2,510,674 on its purchases of Riot securities; (3) retained 23,940 shares of Riot securities; and (4) incurred losses of $643,117 in connection with its transactions in Riot securities.  (*See* Eisenkraft Decl., Ex. C.) Because the Riot Investor Group possesses the largest financial interest in the outcome of this litigation, it is the presumptively "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[1] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc., Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 U.S. Dist. LEXIS 14878, at *22-25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

**3.    The Riot Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."

In making its determination that a proposed Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification.   Instead, a *prima facie* showing that the movant satisfies the typicality and adequacy requirements of Rule 23 is sufficient.  *See In re Cendant*, 264 F.3d at 264 ("[T]he court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements need not be extensive.").

Typicality can be established by showing that the proposed class representative's individual circumstances and legal theories upon which the claims are based are not markedly different from those of other class members.  *See In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 152 (D. Del. 2005) ("[T]ypicality [] does not require that all putative class members share identical claims.") (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004)).

The claims of the Riot Investor Group are typical of those of the Class.  The Riot Investor Group alleges, as do all class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Riot, or omitted material facts necessary to make the statements they did make not misleading.  The Riot Investor Group, like all members of the Class, purchased Riot securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the claims of other class members, satisfy the typicality requirement of Rule 23(a)(3).

6

The adequacy requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."  In order for the Class' interests to be fairly and adequately represented, a Lead Plaintiff must demonstrate that it "has the ability and incentive to represent the claims of the class vigorously," that it has "obtained adequate counsel," and that its interests are sufficiently aligned with those of absent class members.  *In re Cendant*, 264 F.3d at 265 (citations omitted).  The Riot Investor Group is an adequate representative for the Class.  There is no antagonism between the interests of the Riot Investor Group and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation.

Additionally, the Riot Investor Group is an appropriate Lead Plaintiff group.  The appointment of a group of class members as Lead Plaintiff is expressly permitted by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and the Third Circuit, as well as district courts within the Third Circuit—including this District—which have repeatedly recognized the propriety of appointing such groups that are capable of "fairly and adequately protect[ing] the interests of the class."  *In re Cendant*, 264 F.3d at 266 ("The statute contains no requirement mandating that the members of a proper group be 'related' in some manner; it requires only that any such group 'fairly and adequately protect the interests of the class.'"); *In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015) (Arleo, J.) (appointing as Lead Plaintiff a group of three investors);  *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 411 (D. Del. 2014) (appointing as Lead Plaintiff a group of investors).[2]

---

[2] *See also Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 421 (S.D.N.Y. 2004) (appointing two institutional investors with the greatest financial interest in the litigation as co-lead plaintiffs); *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) (holding that the PSLRA permits appointment of a "person or group of persons" and appointing a group with the largest financial interest as lead plaintiff); *Dollens v. Zionts*, Nos. 01 C 5931 *et al.*, 2001 U.S. Dist. LEXIS 19966, at *18 n.7 (N.D. Ill. Dec. 4, 2001) (explaining that appointment of a lead plaintiff group is appropriate under the PSLRA provided that the group will "fairly and adequately protect the interests of the class").

Here, the Riot Investor Group is an appropriate group: the group is small and cohesive, consisting of a handful of investors that suffered significant losses from their purchases of Riot securities during the Class Period. *See in re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) ("The use of multiple lead plaintiffs will best serve the interests of the proposed class in this case because such a structure will allow for pooling . . . of [their] knowledge and experience."); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 420 (noting benefits of co-lead plaintiff structure with respect to "ensur[ing] that adequate resources and experience are available to the prospective class in the prosecution of this action").

Contemporaneously with this filing, the members of the Riot Investor Group have submitted a Joint Declaration, demonstrating that each of them is knowledgeable about this litigation, is actively working together with the other group members, and is committed to protecting the interests of the Class.  (Eisenkraft Decl., Ex. D.)  *See Enzymotec*, 2015 U.S. Dist. LEXIS 25720, at *11 (finding that investor group would "fairly and adequately represent the interests of the class" based upon "the representations made in [the group's] joint declaration"); *Garber v. Pharmacia Corp.*, No. 03-1519 (AET), 2003 U.S. Dist. LEXIS 29208, at *6-7 (D.N.J. Aug. 5, 2003) (appointing investor group as lead plaintiff, finding that submission of detailed joint declaration addressed its "ability to act in a cohesive manner"); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (appointing group that submitted joint declaration describing: "why the individual members chose to work as a group; how the group intends to function collectively, including how they plan to communicate; the protocol the group will use to address disagreements; background information regarding individual members of the group; and the members' willingness to accept the role and responsibilities of lead plaintiff"); *W. Palm Beach Police Pension Fund v. DFC Global Corp.*, No. 13-6731, 2014 U.S. Dist. LEXIS 49595, at *21 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt.

8

Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

Moreover, as set forth in greater detail below, the Riot Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### B.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Molson Coors*, 233 F.R.D. at 150 ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel.").

Here, the Riot Investor Group has selected Pomerantz and Cohen Milstein as Co-Lead Counsel for the Class.  Both firms are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' resumes.  (*See* Eisenkraft Decl., Exs. E-F.)

Pomerantz is a premiere firm in the area of securities litigation.  For more than 75 years, Pomerantz has represented defrauded investors.  As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States.   Courts in this District and throughout the country have recognized Pomerantz's qualifications to serve as class counsel, and Pomerantz has recently been appointed lead counsel in actions including *In re Toronto-Dominion Bank Sec. Litig.*, 1:17-cv-1665 (D.N.J.); *Howard v.*

*Arconic, Inc. et al.*, 2:17-cv-1057 (W.D. Pa.); *Ruckel v. Ford Motor Company et al.*, 4:17-cv-13536 (E.D. Mich.); and *In re Blue Apron Holdings, Inc. Sec. Litig.*, 1:17-cv-4846 (E.D.N.Y.).

Cohen Milstein has litigated securities fraud cases since 1969, returning billions of dollars to investors. The firm led many of the largest securities class actions arising from the 2008 financial crisis. Indeed, since 2013, Cohen Milstein has negotiated settlements of nearly $2.5 billion for investors in mortgage-backed securities. Moreover, Cohen Milstein has been appointed to lead other securities class actions in this District. *See, e.g.*, *In re Cent. European Distrib. Corp. Sec. Litig.*, No. 11-cv-6247-JBS-KMW (D.N.J.). And as another court in this District concluded and as detailed in its firm resume, Cohen Milstein has extensive expertise and experience in the field of securities litigation, and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. *See In re Datatec Sys. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428, at *19 (D.N.J. Nov. 28, 2007) (Brown, C.J.) (granting final approval of settlement of case where Cohen Milstein was lead counsel, noting that lead counsel were "highly skilled attorneys with experience in securities class action litigation").

As a result of their extensive experience in litigation involving issues similar to those raised in the instant action, the Riot Investor Group's counsel have the skill and knowledge to enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of counsel by the Riot Investor Group, class members will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Riot Investor Group respectfully requests that the Court issue an Order: (1) appointing the Riot Investor Group as Lead Plaintiff for the Class; and (2) approving its selection of Pomerantz and Cohen Milstein to serve as Co-Lead Counsel for the Class.

Dated:   April 18, 2018

Respectfully submitted,

**COHEN MILSTEIN SELLERS & TOLL PLLC**

_____/s/ Michael B. Eisenkraft_____
Michael B. Eisenkraft
ID: 016532004
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
Email: meisenkraft@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll
S. Douglas Bunch
1100 New York Avenue N.W., Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
Email: stoll@cohenmilstein.com
Email: dbunch@cohenmilstein.com

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

_Counsel for Movants and_
_Proposed Co-Lead Counsel for the Class_

11

## <u>CERTIFICATE OF SERVICE</u>

I, Michael B. Eisenkraft, counsel for Riot Investor Group and Proposed Co-Lead Counsel for the Class, certify that on this 18th day of April, 2018, I electronically filed the foregoing using the Court's CM/ECF system, and a copy of this filing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Michael B. Eisenkraft*
Michael B. Eisenkraft