**LEVI & KORSINSKY, LLP**
Donald J. Enright
1101 30th Street NW
Suite 115
Washington, DC 20007
Tel.: (202) 524-4292
Fax: (202) 333-2121
Email: denright@zlk.com

*Counsel for Movants and*
*[Proposed] Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL,<br><br>                    Defendants. | C.A. No. 3:18-cv-2293<br><br>**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE KLAPPER, RANA AND ESTOESTA GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**<br><br>**MOTION DATE: May 21, 2018** |
| JOSEPH J. KLAPPER, JR., individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL,<br><br>                    Defendants. | C.A. No. 3:18-cv-8031 |

i

# **TABLE OF CONTENTS**

Page

SUMMARY OF ARGUMENT ..............................................................................1

STATEMENT OF RELEVANT FACTS ................................................................3

ARGUMENT ..........................................................................................................6

    I.    THE COURT SHOULD APPOINT THE KLAPPER, RANA AND ESTOESTA GROUP AS LEAD PLAINTIFF ......................................6

        A.    The Procedures Required by the PSLRA ..................................7

            1.    The Group is Willing to Serve as Class Representative...8

            2.    The Group Has the Requisite Financial Interest in the Relief Sought by the Class..................................................9

        B.    The Group Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure .........................................................10

            1.    The Group's Claims Are Typical of the Claims of All the Class Members..............................................................11

            2.    The Group Will Adequately Represent the Class ..........13

        C.    The Court Should Approve the Group's Choice of Counsel....15

CONCLUSION.....................................................................................................15

**Page(s)**

**Cases**

*Blake Partners, Inc. v. Orbcomm, Inc.*,
  No. 07 Civ. 4590, 2008 U.S. Dist. LEXIS 43061 (D.N.J. June 2, 2008) .................. 10

*Gen. Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ............................................................................................... 11

*Haung v. Acterna Corp.*,
  220 F.R.D. 255 (D. Md. 2004) ............................................................................... 10

*In re Able Labs. Sec. Litig.*,
  425 F. Supp. 2d. 562 (D.N.J. 2006) ..................................................................... 7, 9

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................. 7, 9, 12, 14

*In re Milestone Sci. Sec. Litig.*,
  183 F.R.D. 404 (D.N.J. 1998) ................................................................................ 10

*In re Nice Sys. Sec. Litig.*,
  188 F.R.D. 206 (D.N.J. 1999) ................................................................................ 12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................. 11

*In re Party City Sec. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999) .................................................................................. 11

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990) .................................................................................. 5

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) ............................................................................. 6

*Roby v. Ocean powers Techs.*,
  2015 U.S. Dist. LEXIS 42388 (D.N.J. Mar. 17, 2015) ............................................ 8

*Sklar v. Amarin Corp. PLC*,
  2014 U.S. Dist. LEXIS 103051 (D.N.J. July 29, 2014) ........................................... 7

*Takeda v. Turbodyne Techs., Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................................... 10

*Weiss v. York Hosp.*,
  745 F.2d 786 (3d Cir. 1984) .................................................................................. 11

**Statutes**

15 U.S.C. § 78j(b) .......................................................................................................... 1

15 U.S.C. § 78t(a) .......................................................................................................... 1

15 U.S.C. § 78u-4(a) ..................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(A) ...................................................................................................5

15 U.S.C. § 78u-4(a)(3)(A)(I) ...............................................................................................7

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ..........................................................................................6

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................passim

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ....................................................................................6, 13

**Rules**

17 C.F.R. § 240.10b-5 ...........................................................................................................1

Fed. R. Civ. P. 23 ...........................................................................................................passim

## **SUMMARY OF ARGUMENT**

The above-captioned (the "Related Actions") pending in this District are securities class action lawsuit brought on behalf of all persons and entities, other than defendants and their affiliates, who purchased publicly traded securities of Riot Blockchain, Inc. ("Riot" or the "Company") from November 13, 2017 through February 15, 2018, both dates inclusive (the "Class" who purchased during the "Class Period"). The Related Actions alleges claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants Riot, John O'Rourke ("O'Rourke"), and Jeffrey G. McGonegal ("McGonegal," and together with Riot and O'Rourke, "Defendants").

In class actions brought under the federal securities laws, the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made a *prima facie* showing that he, she, or it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. Movants Joseph J. Klapper, Jr. ("Klapper"), Ashish Rana ("Rana"), and Sonia C. Estoesta ("Estoesta") (collectively, the "Klapper, Rana and Estoesta Group" or "Group") suffered a collective loss of approximately

$715,015.25 as a result of defendants' wrongful conduct alleged in the Related Actions during the Class Period.[1]

The Group believes that its financial interest in the Related Actions is the largest of any Class member seeking appointment as lead plaintiff. To the best of the Group's knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23. Moreover, the Group satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and the Group's members will fairly and adequately represent the interests of the Class. As such, the Group meets the requirements of the PSLRA for appointment as Lead Plaintiff.

Accordingly, the Klapper, Rana and Estoesta Group respectfully requests that: (1) the Related Actions be consolidated into the Takata Action (the "Consolidated Action"); (2) it be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), and (3) their selection of Levi &

---

[1] The Group's members' certifications identifying their transactions during the Class Period, a chart identifying their collective losses, and a joint declaration executed by movants evidencing their intention to pursue the Consolidated Action (defined herein) in a cohesive and collaborative manner, are attached collectively to the Declaration of Donald J. Enright, dated April 18, 2018 (the "Enright Decl."), as Exhibits 1, 2, and 3, respectively.

Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel for the putative Class be approved.

## STATEMENT OF RELEVANT FACTS

Riot builds and supports various blockchain technologies. ¶ 7.[2] The Company invests primarily in Bitcoin and Ethereum blockchains. *Id*. The Company is a Nevada corporation with its principal executive offices are supposedly located at 834-F South Perry Street, Suite 443, Castle Rock, CO 80104. *Id*. Riot securities trade on NASDAQ under the symbol "RIOT." *Id*.

The Related Actions allege that throughout the Class Period, Defendants made false and/or misleading statements and failed to disclose that: (1) Riot's principle executive offices were not in Colorado, but rather in Florida in the same location as a large, influential shareholder, Barry C. Honig who had a previous working relationship with Defendant O'Rourke; (2) Riot never intended to hold its Annual General Meetings scheduled for December 28, 2017 and February 1, 2018; and (3) Defendants' statements about Riot's business, operations and prospects were

---

[2] Citations to "¶ __" are to paragraphs of the Class Action Complaint for Violation of the Federal Securities Laws filed in the Takata Action (the "Complaint"), Dkt. No. 1. The facts set forth in the Complaint are incorporated herein by reference. Citations to "Klapper Compl. ¶__" are to the Complaint for Violations of the Federal Securities Laws filed in *Klapper v. Riot Blockchain, Inc., et al*, 3:18-cv-8031, Dkt. 1.

materially false and misleading and/or lacked a reasonable basis at all relevant times. ¶ 21.

The Class Period begins on November 13, 2017, when the Company filed a Form 10-Q for the fiscal period ended September 30, 2017 ("3Q17 10-Q"), with the SEC announcing the Company's financial results and positions. ¶ 17.  The 3Q17 10-Q was signed and certified under the Sarbanes Oxley Act of 2002 by Defendants O'Rourke and McGonegal. *Id*.  The 3Q17 10-Q stated that the Company's principle executive offices were located at 202 6th Street, Suite 401, Castle Rock, CO 80104. ¶ 18.

On December 27, 2017, the Company issued a press release announcing the cancellation of the annual meeting of stockholders scheduled for the following day and that it was rescheduled for February 1, 2018. ¶ 19.  On news of this first adjournment, the Company's stock declined from $31.22 per share on December 26, 2017, to close at $27.23 per share on December 28, 2017, a decline of nearly 13% over two trading days.  Klapper Compl. ¶ 27.

Similarly, on January 31, 2018, the Company issued another press release announcing the cancellation of the annual meeting yet again. ¶ 20.  This time, the meeting was not rescheduled.  *Id*.  These statements were materially false and/or misleading as they failed to accurately or fully disclose that: (1) Riot's principle executive offices were not in Colorado, but rather in Florida in the same location as

4

a large, influential shareholder, Barry C. Honig who had a previous working relationship with Defendant O'Rourke; and (2) Riot never intended to hold its Annual General Meetings scheduled for December 28, 2017 or its rescheduled date—February 1, 2018. ¶ 21. 28.

On January 5, 2018, the Company filed a notification on Form 8-K revealing that it had dismissed its auditor, EisnerAmper LLP. Klapper Compl. ¶ 28. On January 9, 2018, investor news site *The Motley Fool* published an article entitled "Riot Blockchain: This Crypto Clown Car Continues Hurtling Toward the Abyss." *Id*. The article publicized the auditor's dismissal and connected it to the removal of two other auditors by Riot earlier the year, which raised concerns about corporate governance and the legitimacy of the Company's business. *Id*. On this news, the price of Riot shares once again declined, from a close of $24.43 per share on January 5, 2018 to a close of $20.85 per share on January 11, 2018, a decline of $3.58 per share, or nearly 15%, over four trading days. *Id*.

On February 16, 2018, CNBC published the article "CNBC investigates public company that changed its name to Riot Blockchain and saw its shares rocket" regarding questionable practices at Riot. ¶ 22. The CNBC report noted several concerning facts discovered through its investigation, including the fact that Riot had only recently transitioned to a cryptocurrency-oriented business, that its largest stockholder, Barry Honig, had sold millions of dollars-worth of stock, warrants, and

5

promissory notes after the announcement of said transition and resulting stock-price increase, that O'Rourke and Honig may share office space, and that Honig had previously been accused of stock manipulation by the Financial Industry Regulatory Authority in 2000. *Id.*

On this news, Riot's shares fell $5.74 per share or over 33.37% to close at $11.46 per share on February 16, 2018. ¶ 23.

## ARGUMENT

### I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation pursuant to Federal Rule of Civil Procedure Rule 42(a) is proper when actions involve common questions of law and fact. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Each of the Related Actions presents similar factual and legal issues, as they all involve the similar subject matter and present the similar legal issues. Each action names the same Defendants, each alleges violations of the Exchange Act, each presents the same or similar theories for recovery, and each is based on the same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (holding that consolidation is appropriate "if the cases present sufficiently common questions of

fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation").

## II. THE COURT SHOULD APPOINT THE KLAPPER, RANA AND ESTOESTA GROUP AS LEAD PLAINTIFF

### A. The Procedures Required by the PSLRA

The PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

    (aa)   has either filed the complaint or made a motion in response to a notice;

7

  (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *Sklar v. Amarin Corp. PLC*, 2014 U.S. Dist. LEXIS 103051, at *13–15 (D.N.J. July 29, 2014). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, the Klapper, Rana and Estoesta Group satisfies the foregoing criteria and is not aware of any unique defenses that the Defendants could raise against them. Therefore, the Group is entitled to the presumption that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead Plaintiff in the Consolidated Action. *See In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d. 562, 566–67 (D.N.J. 2006).

  **1. The Group is Willing to Serve as Class Representative**

On February 17, 2018, counsel for plaintiff Takata caused a notice (the "Notice") to be published pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(I), which announced that a securities class action had been filed against Defendants, and which

advised putative class members that they had 60 days to file a motion to seek appointment as lead plaintiff in the Takata Action.[3] Movants have reviewed a copy of the Complaint and have timely filed this motion pursuant to the Notice. Moreover, the Group's members have executed the accompanying certifications and joint declaration affirming their willingness and readiness to serve as Class representative. *See* Enright Decl., Exs. 1, 3. Accordingly, the Group satisfies the first requirement to serve as Lead Plaintiff for the Class.

### 2. The Group Has the Requisite Financial Interest in the Relief Sought by the Class

The Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action. *See, e.g.*, *Roby v. Ocean powers Techs.*, 2015 U.S. Dist. LEXIS 42388, at *13–4 (D.N.J. Mar. 17, 2015). As demonstrated herein, the Klapper, Rana and Estoesta Group has, to its knowledge, the largest financial interest in the relief sought by the Class that also satisfies that requirements of Rule 23. *See* Enright Decl., Ex. 2. The movant who has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 is presumptively the lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Able Labs.*, 425 F. Supp. 2d. at 567 ("The Third Circuit

---

[3] The Notice was published over *Business Wire*—a widely circulated national business-oriented wire service. A copy of the Notice is attached as Exhibit 4 to the Enright Decl.

9

has concluded that 'largest financial interest' means the largest loss.") (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 223 (3d Cir. 2001)).

During the Class Period, the Group purchased Riot securities at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered a financial loss. *See* Enright Decl., Ex. 2. Movants, collectively, suffered a substantial loss of approximately $715,015.25. *See id.* The Group thus has a significant financial interest in the outcome of this case. To the best of the Group's knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

### B. The Group Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp.*, 264 F. 3d at 263. Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two—typicality and adequacy—are recognized as appropriate for consideration at this stage. *See Blake Partners, Inc. v. Orbcomm, Inc.*, No. 07 Civ. 4590, 2008 U.S. Dist. LEXIS 43061, at *13 (D.N.J. June 2, 2008); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1132–33 (C.D. Cal. 1999). Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998); *Haung v. Acterna Corp.,* 220 F.R.D. 255, 259 (D. Md. 2004). As detailed below, the Klapper, Rana and Estoesta Group satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying its appointment as Lead Plaintiff.

### 1. The Group's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The Group plainly meets the typicality requirement of Rule 23 because: (i) it suffered the same injuries as the absent class members; (ii) it suffered as a result of the same course of conduct by

Defendants; and (iii) its claims are based on the same legal issues. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 107 n.13 (D.N.J. 1999); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise") (citation omitted).

Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808–09 (3d Cir. 1984). A finding of commonality frequently supports a finding of typicality. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because the Group's claims are identical to, and neither compete nor conflict with the claims of the other Class members. The Groups' members, like the other members of the Class, suffered financial losses as a result of their transactions in Riot securities. Thus, the Group's claims are typical, if not identical, to those of the other members of the class because its members' suffered losses similar to those of the other Class members and their losses result from Defendants alleged misrepresentations, misstatements and omissions. Accordingly, the Group satisfies the typicality requirement of Rule 23(a)(3).

## 2. The Group Will Adequately Represent the Class

Rule 23(a)(4)'s requirement of "[a]dequacy, for purposes of the lead plaintiff determination, is contingent upon both the existence of common interests between the proposed lead plaintiffs and the class, and a willingness on the part of the proposed lead plaintiff to vigorously prosecute the action." *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 219 (D.N.J. 1999). "The Third Circuit explained that when assessing the adequacy of representation, courts should consider whether the proposed lead plaintiff has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Id.* (quoting *In re Cendant Corp.*, 264 F.3d at 265) (internal citation omitted).

The Group's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between the Group's interests and those of the Class, but the Group has a significant and compelling interest in prosecuting the Consolidated Action based on the large financial losses its members have suffered as a result of the wrongful conduct alleged in the Consolidated Action. This motivation, combined with the Group's identical interests with the members of the Class, demonstrates that the Klapper, Rana and Estoesta Group will vigorously pursue the interests of the Class. In addition, the Group has retained counsel highly

13

experienced in prosecuting securities class actions and have submitted their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

Further, as detailed in the Group's Joint Declaration, Enright Decl., Ex. 3, the Group is comprised of sophisticated investors with substantial experience investing in capital markets that are committed to this litigation. *Id*. ¶¶ 2–4. For example, movants Klapper, Rana, and Estoesta, respectively, have 30, 20, and 28 years of experience investing in capital markets. *Id*. Before filing this Motion, all Group members participated in a conference call to discuss, among other things: a strategy for prosecution the actions; the benefits the Class would receive from the leadership of several lead plaintiffs; their shared desire to achieve the best possible result for the Class; and their determination to ensure that the Class' claims are zealously litigated. *Id*. ¶ 8. Additionally, to ensure the action is diligently managed, the Group agreed to communicate regularly with counsel and one another by email and by telephone, and established a regular meeting schedule as well as a mechanism for calling "emergency" meetings. *Id*. ¶ 6. Furthermore, while the Group does not anticipate any disagreements regarding litigation decisions, in an abundance of caution, the Group established a majority vote procedure to resolve such disagreements. *Id*. ¶7. Therefore, the Group will prosecute the Consolidated Action vigorously on behalf of the Class.

14

Accordingly, at this stage of the proceedings, the Group has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfy 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In addition, because the Group has sustained the largest amount of losses from Defendants' alleged wrongdoing, it is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) and should be appointed as such to lead the Consolidated Action.

### C.   The Court Should Approve the Group's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with lead plaintiffs' choice of counsel only when "necessary to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *In re Cendant Corp.*, 264 F.3d at 273.

The Group has retained Levi & Korsinsky to serve as proposed Lead Counsel in the Consolidated Action. The attorneys with Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as these actions and are well-qualified to represent the Class. *See* Enright Decl., Ex. 5 (the firm resume of Levi & Korsinsky). Accordingly, the Court should approve the Group's selection of counsel.

### CONCLUSION

For the foregoing reasons, the Group respectfully requests that this Court: (1) the Court consolidate the Related Actions; (3) appoint the Klapper, Rana and Estoesta Group as Lead Plaintiff, (3) approve the Group's selection of Levi & Korsinsky, LLP as Lead Counsel for the Class, and (4) grant such other relief as the Court may deem just and proper.

Dated:  April 18, 2018         **LEVI & KORSINSKY, LLP**

/s/ Donald J. Enright
Donald J. Enright
Elizabeth K. Tripodi (*pro hac vice to be submitted*)
John A. Carriel (*pro hac vice to be submitted*)
**LEVI & KORSINSKY, LLP**
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4292
Facsimile:  (202) 333-2121
Email: denright@zlk.com
Email: etripodi@zlk.com
Email: jcarriel@zlk.com

*Counsel for Movants*
*and [Proposed] Lead Counsel for the Class*

16