**LEVI & KORSINSKY, LLP**
Donald J. Enright
1101 30th Street NW
Suite 115
Washington, DC 20007
Tel.: (202) 524-4292
Fax: (202) 333-2121
Email: denright@zlk.com

*Counsel for Movants and*
*[Proposed] Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated, | ) ) ) | C.A. No. 3:18-cv-02293 |
| | ) | **MEMORANDUM OF LAW IN** |
| Plaintiff, | ) ) ) | **OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD** |
| v. | ) ) | **PLAINTIFF AND APPROVAL OF COUNSEL** |
| RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL, | ) ) ) | **MOTION DATE: May 21, 2018** |
| | ) | |
| Defendants. | ) | |
| JOSEPH J. KLAPPER, JR., individually and on behalf of all others similarly situated, | ) ) ) | C.A. No. 3:18-cv-02293 |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

i

# **TABLE OF CONTENTS**

**Page**

SUMMARY OF ARGUMENT.......................................................................1

PRELIMINARY STATEMENT....................................................................1

ARGUMENT ................................................................................................3

    I.    STANDARDS OF LAW................................................................3

    II.    THE KLAPPER, RANA AND ESTOESTA GROUP SHOULD BE APPOINTED LEAD PLAINTIFF .................................................4

        A.    The Rosen Law Group Is Atypical and Inadequate to Represent the Class..............................................................................4

            1.    The Siegel Certification Subjects the Rosen Law Group to a Disqualifying Unique Defense .......................4

            2.    The Rosen Law Group is Incapable of Adequately Representing the Class...............................................9

        B.    The Klapper, Rana and Estoesta Group Has the Largest Financial Interest of Any Movant Who Meets the Requirements of Federal Rule of Civil Procedure 23 .............................................14

CONCLUSION ..........................................................................................18

**Page(s)**

<u>Cases</u>

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d. Cir. 2006) ...............................................................7

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ....................................................4, 11, 12

*In re Cent. European Distribution Corp. Sec. Litig.*,
  No. 11-6247-JBS-KMW, 2012 U.S. Dist. LEXIS 160248 (D.N.J. Nov.
  8, 2012) ...............................................................................................7

*In re Cent. European Distribution Corp. Sec. Litig.*,
  No. 11-6247-JSB-KMW, 2012 U.S. Dist. LEXIS 162616 (D.N.J. Nov.
  14, 2012) .............................................................................................8

*In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 U.S. Dist. LEXIS
  25720 (D.N.J Mar. 3, 2015).........................................................6, 7, 9

*In re Herley Indus.*,
  No. 06-2596, 2010 U.S. Dist. LEXIS 3463 (E.D. Pa. Jan. 15, 2010) .......7

*In re IMAX Sec. Litig.*,
  No. 06-6128-NRB, 2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. June 29,
  2009) .................................................................................................14

*In re Netflix, Inc., Sec. Litig.*,
  No. 12-0225-SC, 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26,
  2012) ...................................................................................................8

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ..........................................................14

*In re Party City Sec. Litig.*,
  189 F.R.D. 91 (D.N.J. 1999)................................................................14

*In re Tarragon Corp. Sec. Litig.*,
  No. 07-7972-PKC, 2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6,
  2007) .................................................................................................15

*In re Versata, Inc.*,
  No. C 01-1439-SI, 2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 20,
  2001) .......................................................................................11, 13, 17

*In re Vonage Initial Pub. Offering Sec. Litig.*,
  No. 07-cv-177-FLW, 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6,
  2007) .......................................................................................4, 13, 16

*Johnson v. OCZ Tech. Group*,
  No. 12-5265-RS, 2013 U.S. Dist. LEXIS 1610 (N.D. Cal. Jan. 4, 2013) ...............16

*Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*,
  No. 15-cv-7350-FLW-DEA, 2016 U.S. Dist. LEXIS 68952 (D.N.J.
  May 26, 2016).............................................................................passim

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ..................................................................................... 5

*Nasin v. Hongli Clean Energy Techs. Corp.,*
   No. 17-3244-WJM, 2017 U.S. Dist. LEXIS 192673 (D.N.J. Nov. 21,
   2017) ..................................................................................................... 8, 9

*Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.,*
   No. 17-449, 2017 U.S. Dist. LEXIS 140268 (E.D. Tex. Aug. 31, 2017) ................. 9

*Roby v. Ocean powers Techs.,*
   No. 14-cv-3799-FLW-LHG, 2015 U.S. Dist. LEXIS 42388 (D.N.J.
   Mar. 17, 2015) ...................................................................................... 5, 9

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution
   Corp.,*
   No. 11-6247-JBS-KMW, 2012 U.S. Dist. LEXIS 118693 (D.N.J. Aug.
   22, 2012) ..................................................................................................... 7

*Stires v. Eco Sciences Solutions, Inc.,*
   No. 17-3707-RMB-KMW, 2018 U.S. Dist. LEXIS 25088 (D.N.J. Feb.
   13, 2018) ............................................................................................. 10, 12

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................. 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ................................................................ 4

## **Rules**

Fed.R.Civ.P. 23 ............................................................................... *passim*

## SUMMARY OF ARGUMENT

Movant the Klapper, Rana and Estoesta Group[1] respectfully submits this memorandum of law in opposition to the competing motions for appointment as lead plaintiff and approval of selection of counsel.  The Group has the largest financial interest among the adequate movants, and thus is the presumptive lead plaintiff under the PSLRA and controlling authority in this District and the Third Circuit.[2] The Klapper, Rana and Estoesta Group also satisfies the adequacy and typicality requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  Accordingly, the Group should be appointed lead plaintiff and its selection of counsel, Levi & Korsinsky, LLP ("Levi & Korsinsky"), should be approved.

## PRELIMINARY STATEMENT

On April 18, 2018, movants Pao Kue ("Kue"), Saroor Alam ("Alam"), the Riot Investor Group,[3] the Rosen Law Group,[4] Stanley Golovac ("Golovac"), Wai

---

[1]    The "Klapper, Rana and Estoesta Group" or "Group" is comprised of Joseph J. Klapper, Jr., Ashish Rana, and Sonia C. Estoesta.

[2]    Unless otherwise defined, capitalized terms contained herein have the same meaning ascribed to them in the Memorandum of Law in Support of the Motion of the Klapper, Rana and Estoesta Group for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Counsel.  Dkt. No. 19.

[3]    The Riot Investor Group is comprised of Kevin Ezell, Frank J. Kosarek, the Francis Kosarek Jr. Trust, Ben Hughes, Sue Hughes, and Lawrence Handler.  Dkt. No. 11.

[4]    The Rosen Law Group is comprised of Simon Lee ("Lee"), Bryan Siegel ("Siegel") and Vivek Singhal ("Singhal").  Dkt. No. 14.

Lau ("Lau"), and the Klapper, Rana and Estoesta Group, each submitted competing motions for appointment as lead plaintiff and approval of lead counsel.  In order of largest to smallest claimed financial interest, the movants are as follows:

| Movant | Proposed Counsel | Claimed Financial Interest |
|---|---|---|
| The Rosen Law Group | <u>Lead</u>: The Rosen law Firm, P.A. | $1,733,507.47 |
| The Klapper, Rana and Estoesta Group | <u>Lead</u>: Levi & Korsinsky | $715,015.25 |
| The Riot Investor Group | <u>Co-Lead</u>: Cohen Milstein Sellers & Toll PLLC<br><br><u>Co-Lead</u>: Pomerantz LLP | $643,117 |
| Golovac | <u>Lead</u>: Motley Rice<br><br><u>Additional Counsel</u>: Lite DePalma Greenberg | $463,231.95 |
| Alam | <u>Lead</u>: Robbins Geller Rudman & Dowd LLP<br><br><u>Liaison Counsel</u>: Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. | $110,412.63 |
| Kue | <u>Co-Lead</u>: Milberg Tadler Phillips Grossman LLP<br><br><u>Co-Lead</u>: Gibbs Law Group LLP<br><br><u>Liaison Counsel</u>: The Gough Law Firm | $72,784.32 |

The PSLRA provides for the Court to appoint as lead plaintiff the movant with the largest financial interest in the litigation that **also** meets the adequacy and typicality requirements under Rule 23.  As discussed *infra*, The Rosen Law Group is ineligible for consideration because, *inter alia*: (1) one of the group's members (Siegel), submitted a certification (the "Siegel Certification") that fails to disclose the identities of the owners of the accounts listed in Schedule A of his certification (the "Accounts") or explain whether he is authorized to unilaterally make decisions on behalf of such Accounts, Dkt. No. 16-2 at 10; and (2) the Rosen Law Group is an improper aggregation of unaffiliated investors cobbled together by its counsel that cannot be relied upon to monitor its proposed counsel in a sufficient manner. Accordingly, the Klapper, Rana and Estoesta Group is the presumptive lead plaintiff because it has the largest loss of any movant qualified for appointment under Rule 23.

## **ARGUMENT**

### I.    **STANDARDS OF LAW**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) of the PSLRA, the presumptive "most adequate plaintiff" to serve as lead plaintiff is the movant: (1) that has the largest financial interest in the relief sought by the class; and (2) that has made a *prima facie* showing that he, she, or it is satisfies the requirements to serve as class representative under Rule 23.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d

3

Cir. 2001).  The presumption, however, may be rebutted upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  If the presumption is rebutted, the "'court should then identify the movant with the next largest loss, consider whether that movant will satisfy Rule 23's requirements and repeat this process until a presumptive lead plaintiff is identified.'"  *In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-cv-177-FLW, 2007 U.S. Dist. LEXIS 66258, at *13 (D.N.J. Sept. 6, 2007) (quoting *In re Cendant Corp.*, 264 F.3d at 262).

## II. THE KLAPPER, RANA AND ESTOESTA GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The Rosen Law Group Is Atypical and Inadequate to Represent the Class

#### 1. The Siegel Certification Subjects the Rosen Law Group to a Disqualifying Unique Defense

The Siegel Certification states that Siegel is acting "individually, and/or in [his] capacity as trustee and/or principal for the accounts listed on Schedule A" of the certification.  Dkt. No. 16-2 at 10.  Such language is emphatically not boilerplate language, and rather is highly unusual in the context of a PSLRA certification. Indeed, the certifications for the other Rosen Law Group members -- Mr. Lee and

4

Mr. Singhal -- state that they are executing the certifications solely in their "individual" capacities.  *See* Dkt. No. 16-2 at 2 and 13.

Moreover, neither the Siegel Certification, nor the schedule listing the Accounts indicate who the actual owner of the Accounts is.  The Siegel Certification also fails to detail whether, or on what basis, Siegel has the authority to make decisions for these Accounts.   If Siegel does not, in fact, have full control over the Accounts, he may not have standing to pursue claims on the Accounts' owner(s)' behalf.  *See Roby v. Ocean powers Techs.*, No. 14-cv-3799-FLW-LHG, 2015 U.S. Dist. LEXIS 42388, at *30 (D.N.J. Mar. 17, 2015) ("Ordinarily, injury-in-fact means that the injury 'must affect the plaintiff in a personal and individual way.'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992)).

Furthermore, if Siegel does not have full and unfettered authority over the Accounts, it will likely lead to inefficient decision-making, thereby preventing the Rosen Law Group from adequately representing the proposed Class.  *Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*,  is particularly instructive on this point.  No. 15-cv-7350-FLW-DEA, 2016 U.S. Dist. LEXIS 68952 (D.N.J. May 26, 2016).   In *Lifestyle*, this Court noted that members of a movant group failed to provide "any description of how each of the declarants themselves . . . would be authorized to act on behalf of their respective entities."  *Id*. at *18–9.  The Court further explained that "presumably, these principals cannot act with unfettered discretion" and that

5

were such principals appointed as lead plaintiff it "would not only require the 'group' . . . as a whole to agree on decisions, but also for each of the governing bodies of entities comprising the [group] to individually agree to those decisions as well." *Id*. This Court concluded that such a situation "may create an untenable decision making process that may not adequately protect the putative class." *Id*.  In light of this finding, this Court declined to permit the movant group to aggregate their losses and proceeded to analyze the adequacy of the movant with the next largest claimed losses. *Id*. at 19–20.

Mr. Siegel's failure to disclose the owner(s) of the Accounts and his authority, and the limits thereof, to make decisions for the Accounts are likely to subject him (and the Rosen Law Group) to unique defenses.  For example, in *In re Enzymotec Ltd. Sec. Litig.*, a court in this District stated:

> Here, 3B's certification could be subject to attack because it provides no indication that its signer, Ami Baksis, is authorized to sign the certification on 3B's behalf. Indeed, nowhere in 3B's certification does Mr. Baksis identify himself or provide any indication of his role within 3B . . . Of course 3B is correct that the PSLRA does not explicitly require the signer of a certification on behalf of a corporation to identify his/her position within the company and provide a basis for his/her signing authority. It seems plain to this Court, however, that any proper certification would include such basic information . . . .
>
> Therefore, because the Court finds that 3B would be subject to a unique defense with respect to its certification, EIG has successfully rebutted the presumption in favor of 3B as lead plaintiff.

*Enzymotec,* No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *8–10 (D.N.J Mar. 3, 2015).

Like the movant in *Enzymotec*, the Rosen Law Group is subject to a unique defense regarding the adequacy of the Siegel Certification in terms of its failure to disclose the true owners of the Accounts Siegel purports to represent and his authorization to represent said Accounts. Given that "[m]otions to appoint lead counsel and lead plaintiff resemble class certification motions to the extent that they consider issues of typicality and adequacy under Rule 23," the Court should evaluate the probability of the unique defense being raised at this time. *Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, No. 11-6247-JBS-KMW, 2012 U.S. Dist. LEXIS 118693, at *22 (D.N.J. Aug. 22, 2012), *motion for relief from judgment granted sub nom. In re Cent. European Distribution Corp. Sec. Litig.*, No. 11-6247-JBS-KMW, 2012 U.S. Dist. LEXIS 160248, at *2 (D.N.J. Nov. 8, 2012); *see id.* at *10–12 (evaluating movants arguments concerning unique defenses).

"A class representative is not 'typical' if it is 'subject to a unique defense that is likely to become a major focus of the litigation.'" *In re Herley Indus.*, No. 06-2596, 2010 U.S. Dist. LEXIS 3463, at *14 (E.D. Pa. Jan. 15, 2010) (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006)). "The unique defense analysis does not require a final determination that the defense is, in fact, applicable. The point is 'not to adjudicate the case before it has even begun, but rather to protect the

absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.'" *In re Cent. European Distribution Corp. Sec. Litig.*, No. 11-6247-JSB-KMW, 2012 U.S. Dist. LEXIS 162616, at *10 (D.N.J. Nov. 14, 2012) (quoting *In re Netflix, Inc., Sec. Litig.*, No. 12-0225-SC, 2012 U.S. Dist. LEXIS 59465, at *17 (N.D. Cal. Apr. 26, 2012)).

Importantly, even if the Rosen Law Group attempts to remedy the deficiencies relating to the Siegel Certification by filing a supplemental certification and/or a declaration, it will still be subject to a unique defense.  For example, in *Nasin v. Hongli Clean Energy Techs. Corp.*, the movants with the largest financial interest submitted a PSLRA certification that lacked the requisite "under penalty of perjury" language as required by the PSLRA.  No. 17-3244-WJM, 2017 U.S. Dist. LEXIS 192673, at *8–9 (D.N.J. Nov. 21, 2017).  Despite the movants subsequently filing corrected certifications --"[o]nly after having the benefit of the [competing] Movants' opposition papers" -- that cured what the movants described as a "technicality," the court found the original certifications deficient for failing to comply with the enumerated requirements of the PSLRA.  *Id.*  Additionally, the court found the subsequently filed corrected certifications deficient for being untimely given they were filed after the 60-day deadline established by the PSLRA.  *Id.*  Thus, having concluded that both certifications were deficient, the court expounded that these deficiencies "will subject [movants] to a unique defense that renders them

'incapable of adequately representing the class' and, as a result, they are not the presumptively most adequate lead plaintiff." *Id.*[5]

The Court should find the same as the court did in *Lifestyle*, *Enzymotec*, and *Nasin*, especially considering the fact that, as of the date of this filing, the Rosen Law Group still has not corrected the deficiencies in the Siegel Certification. *See Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, No. 17-449, 2017 U.S. Dist. LEXIS 140268, at *13 (E.D. Tex. Aug. 31, 2017) (recognizing that "[a]ny supplement or augmentation of the motion must also take place within the sixty-day deadline").

### 2.    The Rosen Law Group is Incapable of Adequately Representing the Class

The members of the Rosen Law Group have not provided a joint declaration attesting to their ability, or willingness, to work together on behalf of the proposed Class and oversee the Rosen Law Firm's actions.  Rather, The Rosen Law Firm evidently speaks for the group's members in the group's memorandum of law in support of its motion, Dkt. No. 15, which states:

> Movants have agreed to be in a group for appointment as Lead Plaintiffs.  Each Movant is aware of the other, has agreed to be a class representative and has agreed to have The Rosen Law Firm, P.A.

---

[5]    While this Court has in the past accepted supplemental declarations to cure deficiencies in a certification, *see Ocean Powers Techs.*, 2015 U.S. Dist. LEXIS 42388, at *26–4, this situation is markedly different given the fact that the Siegel Certification fails to even identify the entities or persons owning the Accounts Siegel purports to represent.

represent them.  Movants have also agreed to a mechanism to resolve
disputes amongst one another, accomplished by weighing the amount
of each Movant's financial loss in the action.  Movants are also aware
that communication lines are available to them to discuss the action
amongst one another, including use of a toll-free conference line.

*Id*. at 7–8.

The foregoing is **<u>completely unsupported</u>** by any declarations by the Rosen

Law Group's members, jointly or individually.  Further, this passage makes it

abundantly clear that the Rosen Law Group's members have apparently **<u>never even</u>**

**<u>spoken to each other</u>** or even exchanged contact information.  Rather, the Rosen

Law Group's members are merely "aware" that the other group members exist.

Similarly, the group's members are "aware that communication lines are available

to them to discuss the action amongst one another . . .." *Id*.  Indeed, and the primary

"communication line" appears to be The Rosen Law Firm's "toll-free conference

line."  As such, the primary method of communication "available to" the Rosen Law

Group's members is through their counsel.  This is precisely the sort of arrangement

that tends to give all the power and responsibility to the attorneys, and thereby

facilitates lawyer-driven litigation and undercuts the important statutory role of lead

plaintiffs.  *See Stires v. Eco Sciences Solutions, Inc.*, No. 17-3707-RMB-KMW,

2018 U.S. Dist. LEXIS 25088, at * (D.N.J. Feb. 13, 2018) (finding movant group to

be "precisely the type of lawyer-created group the Third Circuit cautioned about in

*In re Cendant Corp*");  *see also In re Versata, Inc.*, No. C 01-1439-SI, 2001 U.S.

Dist. LEXIS 24270, at *19–20 (N.D. Cal. Aug. 20, 2001) (in determining the adequacy of a group movant, "the singular focus [should] be whether the asserted group has demonstrated the ability to represent the class and direct the litigation without undue influence from counsel").

Moreover, this language indicates that the Rosen Law Group's members merely acquiesced to being part of "a group" and having the Rosen Law Firm represent them.  Dkt. No. 15 at 7–8.  This was evidently not something that they discussed or deliberated over, let alone sought out, but rather simply agreed to, much as one might agree to externally imposed contractual provisions like the terms of service on a website.

The fact that the Rosen Law Group's members have apparently never spoken with one another, and that all decisions regarding the group's structure -- including its purported "mechanism to resolve disputes" -- have obviously been established unilaterally by the group's counsel, evinces that the Rosen Law Group was "cobbled together by attorneys to ensure their eventual appointment as lead counsel, [which] may justify a finding that the members of that group could not be relied on to monitor counsel in a sufficient manner."  *Lifestyle*, 2016 U.S. Dist. LEXIS 68952, at *16 (citing *In re Cendant Corp.*, 264 F.3d at 267).  This alone merits denial of their motion.

A case recently decided in this District, *Stires v. Eco Sciences Solutions, Inc.*, is particularly instructive.  2018 U.S. Dist. LEXIS 25088.  In *Stires*, the Court found that a movant group was "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*"  *Id.* at *13.  In *Stires*, the movant "group" belatedly submitted a joint declaration two weeks after they moved "in an attempt to establish that they were the type of cohesive unit that could adequately manage the litigation."  *Id.* at *13–4.  With regard to such submission, the Court noted that it was "not clear how [the group] could have made the joint decision to serve as lead plaintiff prior to filing their motion" when they had not engaged in their purported joint conference call that formed the basis of their joint declaration until after they had already moved for lead plaintiff.  *Id.* at *14–5.  In light of the foregoing, the Court found that the group "'[could not] be counted on to monitor counsel in a sufficient manner.'"  *Id.* at *15 (quoting *In re Cendant Corp.*, 264 F.3d at 267).[6]

---

[6]     Each of the foregoing arguments equally apply to the Riot Investor Group. While the Riot Investor Group did submit a joint declaration, Dkt. No. 13-4, the substance of this declaration makes clear that the group's unrelated members have not even spoken to one another.  Indeed, much like the Rosen Law Group's members, the Riot Investor Group's members are merely "aware of each other."  *Id.* ¶6.  Simply stated, the Riot Investor Group is also the product of lawyer-driven litigation, and hence, it too is inadequate to lead this litigation on behalf of the class.

Here, this Court should rule likewise and find to the Rosen Law Group -- and each of its members -- is inadequate to represent the proposed Class. *See Versata*, 2001 U.S. Dist. LEXIS 24270, at *19–20 (in determining the adequacy of a group movant, "the singular focus [should] be whether the asserted group has demonstrated the ability to represent the class and direct the litigation without undue influence from counsel").[7]   Alternatively, the Court should not permit the Rosen Law Group to aggregate their losses. *See Lifestyle*, 2016 U.S. Dist. LEXIS 68952, at *19–20 ("Accordingly, this Court holds that the [movant group] cannot aggregate their losses to serve as lead plaintiff . . .").

* * * *

The appropriate time to disqualify the Rosen law Group and prevent the proposed Class from facing unnecessary risks attendant with the group serving as

---

[7]     Furthermore, it is worth noting that the Rosen Law Group's loss calculations are riddled with misinformation. *See In re Vonage*, 2007 U.S. Dist. LEXIS 66258, at *27–8, *30 n. 8. (finding it "noteworthy that [proposed lead plaintiff's] initial certification was plagued with misinformation").  For example, the Rosen Law Group claims that it "expended over $4.7 million in net funds," Dkt. No. 15 at 5.  In reality, the Rosen Law Group expended approximately $2.3 million in net funds – less than half of what they claimed.  *Id*.  Accordingly, the Rosen Law Group overstated its funds expended by $2.4 million.  Similarly, the Rosen Law Group ascribes no value to movant Singhal's 800 retained Riot options.  *Id*.  This caused another overstatement of Singhal's financial losses by thousands of dollars.  As such, the Rosen Law Group's certifications should not be deemed reliable, and they should be disqualified from consideration for appointment as lead plaintiff.  *See Vonage*, 2007 U.S. Dist. LEXIS 66258, at *27–8, *30 n. 8.

lead plaintiff is now.  The proposed Class should not unnecessarily be subjected to these risks. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 114 (D.N.J. 1999) ("[A] court must be mindful that the lead plaintiff has significant responsibilities and duties, including the management of the direction of the case."); *see also In re IMAX Sec. Litig.*, No. 06-6128-NRB, 2009 U.S. Dist. LEXIS 58219, at *11–2 (S.D.N.Y. June 29, 2009) (finding that "[w]ere we to permit [movant] to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal.  There seems little reason for us to subject the class members to such a risk.").

### B.    The Klapper, Rana and Estoesta Group Has the Largest Financial Interest of Any Movant Who Meets the Requirements of Federal Rule of Civil Procedure 23

After excluding the Rosen Law Group, the Klapper, Rana and Estoesta Group is the plaintiff group with the largest financial interest in the litigation that has made a *prima facie* showing of "typicality" and "adequacy" under Rule 23.  *See* Dkt. No. 19-2 at 15–9.  The Klapper, Rana and Estoesta Group's claims are "typical" of the claims of the proposed Class within the meaning of Rule 23(a)(3) because its claims arise from the same course of conduct by Defendants that gives rise to the other proposed Class members' claims and are based on the same legal theories.  *See In re Party City*, 189 F.R.D. at 107 n.13; *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether

plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise") (citation omitted).

Like other members of the proposed Class, the members of the Klapper, Rana and Estoesta Group suffered financial losses as a result of their transactions in Riot securities.  As detailed in the Klapper, Rana and Estoesta Group's motion for lead plaintiff, the group collectively suffered a substantial loss of approximately $715,015.25 due to Defendants alleged wrongful conduct. *See* Dkt. No. 19-2 at 14. Accordingly, the Klapper, Rana and Estoesta Group is the largest applicant seeking appointment as lead plaintiff that also satisfies the typicality and adequacy requirements of Rule 23.

Further, as evidenced by the Klapper, Rana and Estoesta Group's joint declaration in support of its motion for appointment as lead plaintiff, the group has made the requisite showing through cognizable evidence "that the members of the group will act collectively and separately from their lawyers."  *In re Tarragon Corp. Sec. Litig.*, No. 07-7972-PKC, 2007 U.S. Dist. LEXIS 91418, at *6 (S.D.N.Y. Dec. 6, 2007) (noting that "[t]he issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may. But . . . there must be some evidence that the members of the group will act collectively and separately from their lawyers.") (citation omitted).

The Klapper, Rana and Estoesta Group is comprised of three sophisticated investors with 30, 20, and 28 years of experience, respectively, investing in capital markets that are committed to this litigation. Dkt. No. 19-6 at ¶¶2–4.  Before filing this Motion, all Group members jointly participated in conference calls to discuss, among other things: a strategy for prosecution the actions; the benefits the Class would receive from the leadership of several lead plaintiffs; their shared desire to achieve the best possible result for the Class; and their determination to ensure that the Class' claims are zealously litigated. *Id.* ¶8.  Additionally, to ensure the action is diligently managed, the Group agreed to communicate regularly with counsel and with one another directly by email and by telephone, and established a regular meeting schedule, as well as a mechanism for calling "emergency" meetings. *Id.* ¶6.  Furthermore, while the Group does not anticipate any disagreements regarding litigation decisions, in an abundance of caution, the Group established a majority vote procedure to resolve such disagreements. *Id.* ¶7.  Therefore, the Group will prosecute the action vigorously on behalf of the Class.

Such a cohesive group is appropriate for lead plaintiff appointment. *See In re Vonage*, 2007 U.S. Dist. LEXIS 66258, at *37 (appointing movant as lead plaintiff were it "functions as a single person, which the court finds, will be advantageous for the class . . ..") (citation omitted); *see also Johnson v. OCZ Tech. Group*, No. 12-5265-RS, 2013 U.S. Dist. LEXIS 1610, at *8 (N.D. Cal. Jan. 4, 2013) (stating that

16

small and cohesive groups are "routinely appointed as Lead Plaintiff in securities actions when they have shown their ability to manage the litigation effectively in the interests of the class without undue influence of counsel") (citing *Versata*, 2001 U.S. Dist. LEXIS 24270, at *6–7).   Accordingly, the Klapper, Rana and Estoesta Group has provided ample evidence showing its cohesiveness, understanding of its responsibilities, and willingness and ability to effectively and zealously advocate on behalf of the Class.   *See Versata*, 2001 U.S. Dist. LEXIS 24270, at *25–26 (approving appointment where the group "expressed their individual desire to take a pro-active role in vigorously representing the class and directing counsel" and "shown that it can and does intend to work collectively toward their goals . . .[,] established a regular meeting calendar, a mechanism for 'emergency' meetings, and a procedure to resolve disagreements between members and avoid impasse.") (citing movants declaration).

Moreover, the Klapper, Rana and Estoesta Group has selected and retained Levi & Korsinsky as the proposed Lead Counsel.   The attorneys with Levi & Korsinsky have extensive experience in successfully prosecuting complex securities class actions such as these, and are well-qualified to represent the Class.   Indeed, numerous courts throughout the country have appointed Levi & Korsinsky as lead counsel in securities class action lawsuits.   Within the District of New Jersey alone, the firm currently serves as lead counsel in *In re Navient Corporation Sec. Litig.*,

1:17-cv-08373-RBK-AMD (D.N.J) (J. Kugler); *Goldsmith v. Weibo Corporation*, 2:17-cv-04728-SRC-CLW (D.N.J.) (J. Chesler); and *Roper v. SITO Mobile Ltd.*, 2:17-cv-01106-ES-MAH (D.N.J.) (J. Salas).   In sum, with approximately 30 attorneys in four different offices (and with several attorneys admitted to practice in this Court), Levi & Korsinsky stands ready, willing, and able to prosecute this case. Dkt. No. 19-8.

## <u>CONCLUSION</u>

For the foregoing reasons, the Group respectfully requests that this Court: (1) appoint the Klapper, Rana and Estoesta Group as Lead Plaintiff, (2) approve the Group's selection of Levi & Korsinsky, LLP as Lead Counsel for the Class, and (3) grant such other relief as the Court may deem just and proper.

Dated:  May 2, 2018                    **LEVI & KORSINSKY, LLP**

/s/ Donald J. Enright
Donald J. Enright
Elizabeth K. Tripodi (*pro hac vice to be submitted*)
John A. Carriel (*pro hac vice to be submitted*)
**LEVI & KORSINSKY, LLP**
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4292
Facsimile:  (202) 333-2121
Email: denright@zlk.com
Email: etripodi@zlk.com
Email: jcarriel@zlk.com

*Counsel for Movants
and [Proposed] Lead Counsel for the Class*