# EXHIBIT 5

**LEVI & KORSINSKY, LLP**
Eduard Korsinsky (EK-8989)
30 Broad Street 24th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com

*Counsel for Movants and*
*[Proposed] Co-Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS GALLAGHER, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No.: 2:17-cv-05011-SDW-LDW |
| v. | **MOTION DATE: OCTOBER 2, 2017** |
| OCULAR THERAPEUTIX, INC., AMARPREET SAWHNEY, GEORGE MIGAUSKY. ANDREW HURLEY, and ERIC ANKERUD, | |
| Defendants. | |

| | |
|---|---|
| DYLAN CARAKER, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No.: 2:17-cv-05095-SDW-LDW |
| v. | |
| OCULAR THERAPEUTIX, INC., AMARPREET SAWHNEY, GEORGE MIGAUSKY. ANDREW HURLEY, and ERIC ANKERUD, | |
| Defendants. | |
| SHAWNA KIM, Individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No.: 2:17-cv-05704-SDW-LDW |
| v. | |
| OCULAR THERAPEUTIX, INC., AMARPREET SAWHNEY, GEORGE MIGAUSKY. ANDREW HURLEY, and ERIC ANKERUD, | |
| Defendants. | |

**THE OCULAR THERAPEUTIX INVESTOR GROUP'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ..........................................................................................................3

    I.     The Ocular Therapeutix Investor Group Has The Largest

          Financial Interest Of Any Qualified Movant .......................................3

    II.    No Movant Has Provided Proof That Rebuts The Presumption

          Afforded To The Ocular Therapeutix Investor Group.........................6

        A.    The Ocular Therapeutix Investor Group Has

             Demonstrated That It Is A Cohesive Unit ..................................7

        B.    Ramadan has not Rebutted this Presumption ............................9

        C.    Ramadan's Counsel Routinely Seeks the Appointment of

             Groups of Unrelated Investors .................................................12

CONCLUSION .....................................................................................................14

i

# TABLE OF AUTHORITIES

**Cases**

*In re Able Labs. Sec. Litig.*,

    425 F. Supp. 2d 562 (D.N.J. 2006) ................................................................2, 10

*Beezley v. Fenix Parts*, *Inc. et al.*,

    Case No. 2:17-cv-00233, ECF No. 23 (D.N.J. June 28, 2017) (Order) ...............13

*In re Cambrex Corp. Secs. Litig.*,

    2005 U.S. Dist. LEXIS 25339 (D.N.J. Oct. 7, 2005) .............................................4

*Carducci v. Aetna U.S. Healthcare*,

    247 F. Supp. 2d 596 (D.N.J. 2003) ........................................................................4

*In re Cendant Corp. Litig.*,

    264 F.3d 201(3d Cir. 2001) ..................................................................... 9, 10, 11

*Dura Pharmaceuticals, Inc. v. Broudo*,

    544 U.S. 336 (2005) ...............................................................................................6

*In re Enzymotec Ltd. Sec. Litig.*,

    No. 14-5556, 2015 WL 918535 (D.N.J. Mar. 3, 2015) ................................. 10, 11

*Foster v. Maxwell Techs., Inc.,*

    No. 13-CV-00580-BEN-RBB, 2013 WL 5780424 (S.D. Cal. Oct. 24, 2013) .......5

*Hansen v. Ferrellgas Partners, L.P.,*

    No. 16-CV-7840 (RJS), 2017 WL 281742 (S.D.N.Y. Jan. 19, 2017) ...................9

*Khunt v. Alibaba Grp. Holding. Ltd.*

    102 F. Supp. 3d 523 (S.D.N.Y. 2015) ...................................................................5

*Klein v. Gen'l Nutrition Cos.,*

    186 F.3d 338 (3d Cir. 1999) .................................................................................4

*Li v. Aeterna Zentaris, Inc. et al.,*

    Case No. 3:14-cv-07081, ECF. No. 27 (D.N.J. Mar. 3, 2015) (Order) ...............13

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.,*

    No. 00-3605 (DRD), 2000 WL 33173017 (D.N.J. Nov. 16, 2000) ......................11

*In re Lucent Techs. Sec. Litig.,*

    194 F.R.D. 137 (D.N.J. 2000) ........................................................................7, 10

*McCloskey et al. v. Match Group Inc. et al.,*

    Case No. 3:16-cv-00549-L, ECF No. 28 (N.D. Tex. June 9, 2016) (Order) ........13

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,

    63 F. Supp. 3d 394 (D. Del. 2014)...........................................................................6

*Ruland v. InfoSonics Corp.*,

    No. 06cv1231 BTM(WMc), 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006)...........5

*Sallustro v. Cannvest Corp*,

    93 F. Supp. 3d 265 (S.D.N.Y. 2015) ...................................................................5

*Schueneman v. Arena Pharm., Inc.*,

    No. 10CV1959 BTM BLM, 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011)...........6

*Simmons v. Spencer*,

    No. 13-cv-8216 (RWS), 2014 WL 1678987 (S.D.N.Y. Apr. 25, 2014) .............12

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,

    No. CIV A 07-177 FLW, 2007 WL 2683636 (D.N.J. Sept. 7, 2007) .................11

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .................................................................... 11, 12

15 U.S.C. 78u-4(a)(3)(B)(iii) ...................................................................................6

v

Movants Yau-Hung Chow, Kenneth Herrnson, Jean Claude Dumont, Penny Poirier, and Cynthia Troy (collectively, the "Ocular Therapeutix Investor Group" or "Movants") respectfully submit this memorandum of law in further support of its appointment as lead plaintiff.  Between it and the remaining competing motions of Khaled Ramadan ("Ramadan") (ECF No. 16) and Kavita Mehta, Oleg Tkalych, and William L. Stephens ("Stephens" and, collectively, the "Mehta Investor Group") (ECF No. 20), the Ocular Therapeutix Investor Group is the most qualified movant with the largest financial interest in the above-captioned Actions.[1]

## PRELIMINARY STATEMENT

The Ocular Therapeutix Investor Group is the qualified movant with the "largest financial interest" in the action and, therefore, is presumptively the "most adequate plaintiff" for the purpose of serving as lead plaintiff.  This presumption may only be rebutted by proof that the Ocular Therapeutix Investor Group is not typical or adequate to represent the class or is subject to a unique defense.  The competing movants have proffered no such proof.

---

[1] Movant Glenn Stephenson withdrew his motion on September 13, 2017.  ECF No. 21.  Movant Thomas Gallagher filed a notice of non-opposition to the competing lead plaintiff motions on September 18, 2017.  ECF No. 23.

Only one movant, the Mehta Investor Group, claims a larger financial in the litigation. As detailed in the Opposition,[2] the Mehta Investor Group's loss calculations improperly include losses not listed in the certification of Stephens, one of its members. Failing to list these transactions in his certification and then attempting to claim losses is proof not only of Stephens' deficient certification, but also establishes he is inadequate to represent the interests of the class. Disregarding Stephens' losses, the remaining members of the Mehta Investor Group come nowhere close to the financial interest of the Ocular Therapeutix Investor Group.

Given that movant Ramadan has a lesser financial interest in the litigation, he challenges the Ocular Therapeutix Investor Group's appointment on adequacy grounds. These arguments are without merit. *See, e.g*, *In re Able Labs. Sec. Litig.*, 425 F. Supp. 2d 562, 567 (D.N.J. 2006); *see also* ECF No. 25 at 2-3.

The Ocular Therapeutix Investor Group is a small, cohesive investor group. In support of their commitment and cohesiveness, the members of the Ocular Therapeutix Investor Group have submitted a joint declaration substantiating their commitment towards the prosecution of this case on behalf of the class, management

---

[2] The "Opposition" is defined as "The Ocular Therapeutix Investor Group's Memorandum of Law in Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Counsel." ECF No. 25.

of counsel and the litigation, and communication and decision making procedures.[3]
Ramadan has provided no proof, just conclusory allegations, that the Ocular
Therapeutix Investor Group is not adequate to represent the class. Notably,
Ramadan's counsel has sought and obtained appointment of similar groups of
unrelated investors and has been appointed as co-lead counsel in these actions.

As it is the "most adequate plaintiff" and has made the requisite *prima facie*
showing of its typicality and adequacy, the Ocular Therapeutix Investor Group
respectfully requests that the Court appoint it as the lead plaintiff in the Actions.

## ARGUMENT

### I. The Ocular Therapeutix Investor Group Has The Largest Financial Interest Of Any Qualified Movant

As detailed in the Opposition, the Ocular Therapeutix Investor Group suffered
the greatest financial loss, with a combined loss of approximately $221,347. *See*
ECF No. 25 at 4. Notably, and most troubling, is that the Mehta Investor Group
claims the largest financial interest based on the deficient PSLRA certification
submitted by Stephens. As detailed in the Opposition (*id.* at 6-10) and discussed
further *infra*, Stephens should not be considered for appointment as lead plaintiff
and his losses should not be included in determining the Mehta Investor Group's
financial interest in the Actions. After excluding Stephens' losses, the Mehta

---

[3] *See* Declaration of Eduard Korsinsky, dated September 25, 2017 ("Korsinsky
Decl."), Exhibit A.

Investor Group's losses total only $168,571.  This is clearly less than the Ocular

Therapeutix Investor Group's losses of $221,347.[4]

| Movant | Loss Suffered |
|---|---|
| -  Yau-Hung Chow | $107,525 |
| -  Kenneth Herrnson | $42,545 |
| -  Jean Claude Dumont | $41,298 |
| -  Penny Poirier | $18,682 |
| -  Cynthia Troy | $11,297 |
| **Ocular Therapeutix Investor Group Total** | **$221,347** |
| -  Kavita Mehta | $87,167 |
| -  Oleg Tkalych | $81,404 |
| -  William L. Stephens | $0[5] |
| **Mehta Investor Group Total** | **$168,571** |
| **Khaled Ramadan[6]** | **$112,800** |

[4]  Even assuming the Court accepts the arguments (which it should not) that movant Chow's losses are reduced by the gains from intra-class period sales matched to the intra-class period purchases, the Mehta Investor Group has conceded that the Ocular Therapeutix Investor Group's losses total $175,657.  Thus, the Ocular Therapeutix Investor Group's losses still exceed the losses of the Mehta Investor Group or Ramadan.

[5]  Stephens' losses are listed as zero because his losses should be excluded given his deficient certification.  If the Court only excludes those transactions not listed in his certification or that are not recoverable under the federal securities laws, his losses total only $37,625.

[6]  Ramadan is subject to a unique defense because he does not possess standing to pursue losses on the second corrective disclosure.  *See, e.g.*, *In re Cambrex Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 25339, at *8-9 (D.N.J. Oct. 7, 2005) ("The Third Circuit requires that named plaintiffs show that they personally have been injured." ) (citing *Carducci v. Aetna U.S. Healthcare*, 247 F. Supp. 2d 596, 623 (D.N.J. 2003) (citing *Klein v. Gen'l Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999)).  In contrast, members of the Ocular Therapeutix Investor Group held shares over both corrective disclosures and have standing to pursue all claims on behalf of injured investors.

Case 2:17-cv-03023-SGW-RLD Document 730 Filed 05/24/18 Page 13 of 24 PageID: 752

The competing movants argue that movant Chow's losses should be reduced by the amount of gains from purchases and sales during the class period that occurred prior to any corrective disclosure. Doing so would add insult to injury.

Courts have recognized that losses not related to the fraud (*i.e.*, losses incurred from the matching of in class period purchases to in class period sales using the last-in-first-out methodology while the misrepresentations were alive in the market and before any intervening corrective disclosure announcing or partially revealing the truth) are not to be included in the determination of the largest financial interest. *See Khunt v. Alibaba Grp. Holding. Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (not including losses in the determination of the largest financial interest that did not stem from the alleged fraud); *Sallustro v. Cannvest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) ("Therefore, when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures."); *Foster v. Maxwell Techs., Inc.*, No. 13-CV-00580-BEN-RBB, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("This Court focuses on the amount of potential recovery in the relief sought by the class."); *Ruland v. InfoSonics Corp.*, No. 06-cv-1231 BTM(WMc), 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) (finding for lead plaintiff purposes the individual with the "largest potential recovery" as the presumptive lead plaintiff). Thus, rationally, these cases

support the proposition that any gains on intra-class period purchases matched with intra-class period sales with no intervening corrective disclosures should also be disregarded. In such cases, investors' gains did not stem from fraudulent statements, but were related to some other underlying market or company-specific element. Stated simply, "it makes sense to ***disregard any gains or losses*** resulting from stock trades before the truth was disclosed" when evaluating lead plaintiff movants' financial interests in the litigation in light of *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). *Schueneman v. Arena Pharm., Inc.*, No. 10CV1959 BTM BLM, 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011) (emphasis added).

For the aforementioned reasons and those raised in the Opposition, the Ocular Therapeutix Investor Group has the largest financial interest of any qualified movant. As such, it is entitled to the presumption that it is the "most adequate plaintiff." *See* 15 U.S.C. 78u-4(a)(3)(B)(iii).

## II.  No Movant Has Provided Proof That Rebuts The Presumption Afforded To The Ocular Therapeutix Investor Group

The Ocular Therapeutix Investor Group presumption as "most adequate plaintiff" can only be rebutted with "proof" that they are either atypical or inadequate. *See OFI Risk Arbitrages v. Cooper Tire & Rubber Co*., 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("Mere speculation about a unique defense does not meet this standard. . . .  The burden is on the [challenging movant] 'to come forward with some proof' that the unique defenses raised are legitimate issues that will likely be

litigated at trial.") (citation omitted).  No such proof exists.

**A.  The Ocular Therapeutix Investor Group Has Demonstrated That It Is A Cohesive Unit**

To demonstrate their cohesiveness, individuals seeking appointment as a group generally provide a joint declaration evidencing their pre-motion efforts to coordinate with one another and formulate a strategy to effectively prosecute the case.  *See, e.g.*, *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 151 (D.N.J. 2000) ("In order to assist the court in determining whether several proposed lead plaintiffs are in fact capable of performing as a group, such proposed group should provide the court with information pertaining to its members, its structure and how it will function.).  Here, the members of the Ocular Therapeutix Investor Group have provided evidence:  (i) of their cohesiveness; (ii) of their belief that appointment of a group is in the best interest of the class; (iii) of their commitment to achieving the largest possible recovery for the class members; and (iv) that they have a plan to cooperate to effectively manage the litigation.  *See* Korsinsky Decl., Ex. A.  The Ocular Therapeutix Investor Group's Joint Declaration outlines how its members will work collaboratively to prosecute the action in the best interests of the Class, and describes the procedures for communicating with each other and arriving at decisions regarding the litigation.  *Id.* at ¶¶ 12-14.

The Ocular Therapeutix Investor Group seeks to serve as a small, cohesive group for the purpose of overseeing the prosecution of the class action.  As they each

7

confirmed in the Joint Declaration, the members of the Ocular Therapeutix Investor Group intend to work with one another for the purpose of "ensuring that the Actions are prosecuted diligently" and "to obtain the largest possible recovery against all culpable parties on behalf of the class[.]" *Id.* at ¶¶ 8, 11. Further, each member has confirmed that they are aware of their responsibilities as lead plaintiff and, more importantly, are willing to fulfill them. *Id*. at ¶ 11.

The members of the Ocular Therapeutix Investor Group have also demonstrated that they are ready, willing, and able to work together and function cohesively to effectively manage the litigation apart from their lawyers. As set forth in the Joint Declaration, each of the members: (i) "believe that our joint prosecution of the Actions will benefit the proposed class;" (ii) "intend to prosecute the litigation in a collaborative and cohesive manner that is independent from counsel;" (iii) have an understanding and willingness to fulfill their role as a co-lead plaintiff by overseeing counsel, reviewing court filings, participating in discovery and making important decisions concerning litigation strategy; and, among other things, (iv) have set forth a procedure for making decisions concerning the litigation. *See* Joint Declaration, ¶¶ 8-9, 12-14.

In addition to each member's adequacy, the members of the Ocular Therapeutix Investor Group are typical of the various class members involved in this litigation. Each member of the Ocular Therapeutix Investor Group asserts claims

based on the same legal theory and that arise out of the same course of events as the other purported class members' claims. Further, they purchased shares of Ocular Therapeutix securities on the open market, as did each member of the proposed class, at prices artificially inflated by the defendants' false and misleading statements, and were damaged thereby. Thus, the Ocular Therapeutix Investor Group satisfies the typicality requirement of Rule 23(a), and is entitled to be appointed lead plaintiff pursuant to the PSLRA.

### B.    Ramadan has not Rebutted this Presumption

Ramadan has simply failed to provide any proof that the Ocular Therapeutix Investor Group is inadequate to represent the interests of the class or is subject to any unique defenses that would become the focus of the litigation. Despite averments to the contrary, Courts have held that "even a previously unrelated group of individuals is entitled to the presumption provided it possesses the largest financial interest and satisfies Rule 23 – the statute plainly does not require the group to also prove that it is 'more' adequate than competing movants with smaller financial interests." *Hansen v. Ferrellgas Partners, L.P.*, No. 16-CV-7840 (RJS), 2017 WL 281742, at *3 (S.D.N.Y. Jan. 19, 2017).

The PSLRA does not require that the members of the group be "related." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001); *In re Enzymotec Ltd.*

*Sec. Litig.*, No. 14-5556, 2015 WL 918535, at *4 (D.N.J. Mar. 3, 2015). Indeed, as

the Third Circuit has held:

> We note at this juncture that we disagree with those courts that have
> held that the statute invariably precludes a group of "unrelated
> individuals" from serving as a lead plaintiff. The statute contains no
> requirement mandating that the members of a proper group be "related"
> in some manner; it requires only that any such group "fairly and
> adequately protect the interests of the class." We do not intimate that
> the extent of the prior relationships and/or connection between the
> members of a movant group should not properly enter into the calculus
> of whether that group would "fairly and adequately protect the interests
> of the class," but it is this test, not one of relatedness, with which courts
> should be concerned.

*In re Cendant Corp. Litig.*, 264 F.3d at 266-67 (citations omitted).

Courts in this District allow groups of investors that have demonstrated that

they are cohesive and can effectively lead the securities class action to serve as lead

plaintiff. *See, e.g.*, *In re Able Labs.*, 425 F. Supp. 2d at 567 ("The Third Circuit has

explicitly rejected the conclusion reached by other courts that the PSLRA 'invariably

precludes a group of "unrelated individuals" from serving as a lead plaintiff.'")

(quoting *In re Cendant Corp.*, 264 F.3d at 266); *In re Lucent Techs.*, 194 F.R.D. at

154 ("The fact that a group, as opposed to a single plaintiff, is proposed as lead

plaintiff does not necessarily render such a group inadequate. The PSLRA expressly

provides that a 'group of plaintiffs' may be deemed most adequate

plaintiffs. . . . The appointment of more than one lead plaintiff does not violate the

PSLRA.") (internal citations omitted); *In re Vonage Initial Pub. Offering (IPO) Sec.*

*Litig.*, No. CIV A 07-177 FLW, 2007 WL 2683636, at *6 (D.N.J. Sept. 7, 2007) ("A 'group of persons' is explicitly allowed to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This group of persons need not be related in some manner.") (citing *In re Cendant Corp. Litig.*, 264 F.3d at 266).

Other courts, including courts in this Circuit, have not hesitated to appoint lead plaintiff groups where, as here, the members of the group have provided declarations or other evidentiary support of their ability to act cohesively together to effectively manage the litigation.  *See, e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d at 269 (appointing group of three unrelated pension funds as lead plaintiffs); *In re Enzymotec Ltd. Sec. Litig.*, 2015 WL 918535 at *4 (appointing group of three investors and finding that "[g]iven the representations made in EIG's joint declaration and EIG's selection of experienced and learned counsel, the Court is satisfied that EIG meets that test" that it will "fairly and adequately represent the interest of the class"); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605 (DRD), 2000 WL 33173017, at *5 (D.N.J. Nov. 16, 2000) (appointing group of five unrelated institutional investors who submitted declarations advising of, among other things, procedures for meetings and a protocol for resolving any issues if a consensus could not be obtained).[7]

---

[7] Ramadan infers that a group consisting of five unrelated investors is contrary to the PSLRA.  Such an assertion is contrary to the plain language of the PSLRA.  *In re Cendant Corp.*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of

The Ocular Therapeutix Investor Group has provided evidentiary support by way of the Joint Declaration indicating their willingness and ability to work cooperatively.  As such, the Ocular Therapeutix Investor Group has established through evidentiary and other support that its members will "fairly and adequately protect the interests of the class" and, because they have the largest loss (*see* Section II.A *supra*), should be appointed co-lead plaintiffs in this Action.  Ramadan's arguments do not rise to the level of proof to rebut the presumption in favor of the Ocular Therapeutix Investor Group.

## C.    Ramadan's Counsel Routinely Seeks the Appointment of Groups of Unrelated Investors

As discussed *supra*, Ramadan argues that the Ocular Therapeutix Investor Group should not be appointed as lead plaintiff because it is a group of unrelated investors.  Notably, counsel for Ramadan regularly argues for the appointment of groups as lead plaintiff with substantially identical groups of investors in other

---

persons' to serve as lead plaintiff.  *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I); *see also id.* § 78u-4(a)(3)(B)(i) (providing that the court 'shall appoint as lead plaintiff the member *or members* of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members') (emphasis added)).  *See also Simmons v. Spencer*, No. 13-cv-8216 (RWS), 2014 WL 1678987, at *5 (S.D.N.Y. Apr. 25, 2014) (finding that a group that "consists of unrelated members of the class does not disqualify its appointment as lead plaintiff"; "[a] group consisting of persons that have no pre-litigation relationship may be acceptable as a lead plaintiff candidate so long as the group is relatively small, such as here with only five members, and therefore presumptively cohesive") (collecting cases).

securities class actions, and has argued numerous times in this district and others that groups of unrelated individuals are permissible to be appointed as lead plaintiff and that such appointment does not contravene the PSLRA or render the movants inadequate. Moreover, Ramadan's counsel is currently representing groups of unrelated investors (appointed as lead plaintiff in a federal securities class action) as co-lead counsel in this District and others. *See, e.g.*, *Beezley v. Fenix Parts*, *Inc. et al.*, Case No. 2:17-cv-00233, ECF No. 23 (D.N.J. June 28, 2017) (order appointing unrelated group of investors as lead plaintiff and Ramadan's counsel as co-lead counsel); *Li v. Aeterna Zentaris, Inc. et al.*, Case No. 3:14-cv-07081, ECF. No. 27 (D.N.J. Mar. 3, 2015) (order appointing unrelated group of investors as lead plaintiff and Ramadan's counsel as co-lead counsel); *McCloskey et al. v. Match Group Inc. et al.*, Case No. 3:16-cv-00549-L, ECF No. 28 (N.D. Tex. June 9, 2016) (order appointing unrelated group of investors and Ramadan's counsel as co-lead counsel).[8] Thus, the

---

[8] *See also In re Psychemedics Corp. Sec. Litig.*, Case No. 1:17-cv-10186-RGS (D. Mass. Apr. 3, 2017) (ECF No. 11) (Ramadan's Counsel seeking lead plaintiff appointment of five unrelated movants); *In re Juno Therapeutics, Inc.*, Case No. 2:16-cv-01069-RSM (W.D. Wash. Sept. 12, 2016) (ECF No. 23) (same); *Craig v. CenturyLink, Inc. et al.*, Case No. 3:17-cv-01005-RGJ-JPM (W.D. La. Aug. 21, 2017) (ECF No. 24-1) (same); *Bristow v. Sunpower Corp. et al.*, Case No. 3:16-cv-4710-RS, 2016 U.S. Dist. LEXIS 170852 (N.D. Cal. Nov. 7, 2016) (ECF No. 41) (same); *In re Insys Therapeutics, Inc. Sec. Litig.*, Case No. 1:17-cv-01954-PAC (S.D.N.Y. May 16, 2017) (ECF No. 16) (Ramadan's Counsel seeking lead plaintiff appointment of four unrelated movants); *Broadfoot v. Barrick Gold Corp. et al.*, Case No. 1:17-cv-03507 (S.D.N.Y. July 24, 2017) (ECF No. 31) (same); *Sarraf v. BT Group PLC et al.*, Case No. 1:17-cv-00558-PGG (S.D.N.Y. Mar. 27, 2017) (ECF

Court should simply not accept Ramadan's arguments here against appointment of the Ocular Therapeutix Investor Group when its counsel has previously sought and obtained the appointment of unrelated groups of investors as lead plaintiff and its appointment as co-lead Counsel.

## CONCLUSION

For the foregoing reasons, the Ocular Therapeutix Investor Group respectfully requests that the Court grant its motion and enter an Order: (1) appointing the Ocular Therapeutix Investor Group as lead plaintiff, (2) approving its selection of Bragar Eagel & Squire and Levi & Korsinsky, LLP as co-lead counsel for the class, and (3) granting such other relief as the Court may deem just and proper.

Dated: September 25, 2017          Respectfully submitted,

**LEVI & KORSINSKY, LLP**
*/s/ Eduard Korsinsky*
Eduard Korsinsky (EK-8989)
30 Broad Street
24th Floor
New York, New York 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com

*-and-*

Nicholas I. Porritt
Adam M. Apton
1101 30th Street N.W., Suite 115

---

No. 12) (same); *In re Ferrellgas Partners, L.P., Securities Litigation*, Case No. 1:16-cv-07840-RJS (S.D.N.Y. Dec. 5, 2016) (ECF No. 23) (same).

Washington, D.C. 20007
Tel:  (202) 524-4290
Fax:  (202) 333-2121
Email:  nporritt@zlk.com
Email:  aapton@zlk.com

(*pro hac vice to be submitted*)

*-and-*

**BRAGAR EAGEL & SQUIRE, P.C.**
Lawrence P. Eagel
Todd H. Henderson*
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, NY 10022
Tel:  (212) 308-5858
Fax:  (212) 214-0506
Email:  henderson@bespc.com
Email:  fortunato@bespc.com

(*\*pro hac vice to be submitted*)

*Counsel for Movants and Proposed
Co-Lead Counsel for the Class*

15

## CERTIFICATE OF SERVICE

I, Eduard Korsinsky, hereby certify that on September 25, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered participants as identified on the Notice of Electronic Filing.

*/s/Eduard Korsinsky*
Eduard Korsinsky