**LEVI & KORSINSKY, LLP**
Donald J. Enright
1101 30th Street NW
Suite 115
Washington, DC 20007
Tel.: (202) 524-4292
Fax: (202) 333-2121
Email: denright@zlk.com

*Counsel for Movants and*
*[Proposed] Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL,<br><br>        Defendants. | C.A. No. 3:18-cv-02293<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE KLAPPER, RANA AND ESTOESTA GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**<br><br>**MOTION DATE: May 21, 2018** |
| JOSEPH J. KLAPPER, JR., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL,<br><br>        Defendants. | C.A. No. 3:18-cv-02293 |

i

## **TABLE OF CONTENTS**

                                                                                                                    **Page**

SUMMARY OF ARGUMENT ...................................................................................1

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ..............................................................................................................3

    I.     THE KLAPPER, RANA AND ESTOESTA GROUP IS THE MOST ADEQUATE PLAINTIFF ...................................................................3

    II.    THE ROSEN LAW GROUP REMAINS SUBJECT TO A DEBILITATING UNIQUE DEFENSE AND IS NEITHER ADEQUATE NOR TYPICAL FOR THE PURPOSES OF RULE 23 ...4

          A.    The Siegel Certification Subjects the Rosen Law Group to a Disqualifying Unique Defense ......................................................5

          B.    The Rosen Law Group is a Byproduct of Improper Lawyer-Driven Litigation ....................................................................7

CONCLUSION .........................................................................................................12

 **Page(s)**

**Cases**

*Guohua Zhu v. UCBH Holdings, Inc.*,
   682 F. Supp. 2d 1049 (N.D. Cal. 2010) ................................................................... 9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ............................................................... 4, 7, 8, 10

*In re Cent. European Distribution Corp. Sec. Litig.*,
   No. 11-6247-JSB-KMW, 2012 U.S. Dist. LEXIS 162616 (D.N.J. Nov.
   14, 2012) ................................................................................................................... 6

*In re Enzymotec Ltd. Sec. Litig.*,
   No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J Mar. 3, 2015) ......................... 5

*In re Gemstar-Tv Guide Int'l Secs. Litig.*,
   209 F.R.D. 447 (C.D. Cal. 2002) ............................................................................. 9

*In re Microstrategy Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ...................................................................... 9

*In re Netflix, Inc., Sec. Litig.*,
   No. 12-0225-SC, 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 26,
   2012) ........................................................................................................................ 6

*In re Network Assocs. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................................... 11

*In re Spectrum Pharms., Inc.*,
   No. 13-cv-433-LDG-CWH, 2014 U.S. Dist. LEXIS 38322 (D. Nev.
   Mar. 20, 2014) .......................................................................................................... 9

*In re Versata, Inc.*,
   No. C 01-1439-SI, 2001 U.S. Dist. LEXIS 24270 (N.D. Cal. Aug. 20,
   2001) ...................................................................................................................... 12

*In re Vonage Initial Pub. Offering Sec. Litig.*,
   No. 07-cv-177-FLW, 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sept. 6,
   2007) ........................................................................................................................ 7

*Inchen Huang v. Depomed, Inc.*,
   289 F. Supp. 3d 1050 (N.D. Cal. 2017) ................................................................... 6

*Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*,
   No. 15-cv-7350-FLW-DEA, 2016 U.S. Dist. LEXIS 68952 (D.N.J.
   May 26, 2016) ............................................................................................... 3, 5, 12

*Nasin v. Hongli Clean Energy Techs. Corp.*,
   No. 17-3244-WJM, 2017 U.S. Dist. LEXIS 192673 (D.N.J. Nov. 21,
   2017) ........................................................................................................................ 8

*Niederklein v. PCS Edventures!.com, Inc.*,
   No. 10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247 (D. Idaho
   Feb. 24, 2011) ........................................................................................................ 11

*Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*,
   No. 17-449, 2017 U.S. Dist. LEXIS 140268 (E.D. Tex. Aug. 31, 2017) ................... 9

*Ross v. Abercrombie & Fitch Co.*,
   No. 05-cv-819, 2007 U.S. Dist. LEXIS 24903 (S.D. Ohio Mar. 22,
   2007) ............................................................................................................... 11

*Stires v. Eco Sciences Solutions, Inc.*,
   No. 17-3707-RMB-KMW, 2018 U.S. Dist. LEXIS 25088 (D.N.J. Feb.
   13, 2018) ........................................................................................................ 8, 10

**<u>Statutes</u>**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ................................................................................... 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .................................................................................. 7

**<u>Rules</u>**

Fed.R.Civ.P. 23 ................................................................................................. *passim*

## SUMMARY OF ARGUMENT

Movant the Klapper, Rana and Estoesta Group[1] respectfully submits this Reply Memorandum of Law in Further Support of Its Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Reply").  The Klapper, Rana and Estoesta Group has the largest financial interest among the adequate movants, and thus is the presumptive lead plaintiff under the PSLRA and controlling authority in this District and the Third Circuit.[2]  The Klapper, Rana and Estoesta Group also satisfies the adequacy and typicality requirements of Federal Rule of Civil Procedure 23 ("Rule 23").  Accordingly, the Group should be appointed lead plaintiff and its selection of counsel, Levi & Korsinsky, LLP ("Levi & Korsinsky"), should be approved.

## PRELIMINARY STATEMENT

---

[1]   The "Klapper, Rana and Estoesta Group" or "Group" is comprised of Joseph J. Klapper, Jr., Ashish Rana, and Sonia C. Estoesta.

[2]   Unless otherwise defined, capitalized terms contained herein have the same meaning ascribed to them in the Group's Memorandum of Law in Opposition to the Competing Motions for Appointment as Lead Plaintiff and Approval of Selection of Counsel.  Dkt. No. 23.

1

On April 18, 2018, movants Pao Kue ("Kue"), Saroor Alam ("Alam"), the Riot Investor Group, the Rosen Law Group,[3] Stanley Golovac ("Golovac"), Wai Lau ("Lau"), and the Klapper, Rana and Estoesta Group, each submitted competing motions for appointment as lead plaintiff and approval of lead counsel.

On May 7, 2018, movants the Rosen Law Group, the Klapper, Rana and Estoesta Group and Golovac, each submitted memoranda of law in opposition to the competing motions for appointment as lead plaintiff and approval of lead counsel (the "Oppositions").[4] The Oppositions have only served to provide additional evidence that the Klapper, Rana and Estoesta Group is the presumptive lead plaintiff because it has the largest loss of any movant qualified for appointment under Rule 23.

Specifically, the Rosen Law Group is still subject to a unique defense and has engaged in clear lawyer-driven litigation. For example, it is obvious that the members of the Rosen Law Group did not speak to each other even once prior to moving for lead plaintiff and is now requesting that -- so long as The Rosen Law

---

[3] The Rosen Law Group is comprised of Simon Lee ("Lee"), Bryan Siegel ("Siegel") and Vivek Singhal ("Singhal"). Dkt. No. 14.

[4] On May 7, 2018, Movants Alam, Lau, and the Riot Investor Group each withdrew their motions for appointment as lead plaintiff and approval of lead counsel. On May 11, 2018, Movant Kue withdrew his motion for appointment as lead plaintiff and approval of lead counsel.

Firm be appointed lead counsel -- the group would gladly be disbanded and if the Court were inclined to select any one of the its members as lead plaintiff.

With respect to movant Golovac, his claimed losses are far less than the Klapper, Rana and Estoesta Group's losses. His attempt to rebut the Klapper, Rana and Estoesta Group's status as the presumptive lead plaintiff fails to acknowledge the fact that groups under the PSLRA are well-accepted in this Circuit -- so long as the group demonstrates that it can "be relied on to monitor counsel in a sufficient manner." *Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*, No. 15-cv-7350-FLW-DEA, 2016 U.S. Dist. LEXIS 68952, at *16 (D.N.J. May 26, 2016) (citation omitted).

Accordingly, the Klapper, Rana and Estoesta Group is the presumptive lead plaintiff because it has the largest loss of any movant qualified for appointment under Rule 23.

## ARGUMENT

### I. THE KLAPPER, RANA AND ESTOESTA GROUP IS THE MOST ADEQUATE PLAINTIFF

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) of the PSLRA, the presumptive "most adequate plaintiff" to serve as lead plaintiff is the movant: (1) that has the largest financial interest in the relief sought by the class; and (2) that has made a *prima facie* showing that he, she, or it is satisfies the requirements to serve as class

3

representative under Rule 23. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). As detailed in the Klapper, Rana and Estoesta Group's Opposition, after excluding the inadequate movant -- the Rosen Law Group -- it is the most adequate plaintiff with the largest financial interest in the litigation that otherwise has made a *prima facie* showing of "typicality" and "adequacy" under Rule 23. Dkt. No. 23.

The Golovac Opposition's challenges to the Klapper, Rana and Estoesta Group's adequacy fail as a matter of law. Golovac contends that the Group is improper because the Group's members did not have a pre-existing relationship. Dkt. No. 24 at 9. However, there is no such requirement in the Third Circuit. *See In re Cendant Corp.*, 264 F.3d at 266–7. Golovac also contends that the Klapper, Rana and Estoesta Group's *timely* filed joint declaration was filled with "conclusory" statements and "falls far short of what is required." Dkt. No. 24 at 10. However, Golovac's challenge itself is conclusory as he fails to identify how the Group's comprehensive joint declaration is insufficient or even what language it lacks. *Id*. In fact, contrary to Golovac's contentions, the Group's *timely* filed joint-declaration provides ample evidence of the fact that the Group is small, cohesive, and intent on vigorously prosecuting this action. Dkt. No 19-3.

**II. THE ROSEN LAW GROUP REMAINS SUBJECT TO A DEBILITATING UNIQUE DEFENSE AND IS NEITHER ADEQUATE NOR TYPICAL FOR THE PURPOSES OF RULE 23**

The Rosen Law Group remains subject to a debilitating unique defense disqualifying it from serving as lead plaintiff. More specifically, Mr. Siegel's failure to disclose the owner(s) of the Accounts and his authority in his certification, and the limits thereof, to make decisions for the Accounts are likely to subject him (and the Rosen Law Group) to unique defenses. Additionally, the Rosen Law Group is clearly the byproduct of lawyer-driven litigation and its willingness to disband its group further undermines its adequacy to effectively represent the Class.

### A. The Siegel Certification Subjects the Rosen Law Group to a Disqualifying Unique Defense

As detailed in the Klapper, Rana and Estoesta Group's Opposition, neither the Siegel Certification, nor the schedule listing the Accounts he purports to represent indicate who the actual owner(s) of the Accounts is/are. Dkt. No. 23 at 8–13. Additionally, the Siegel Certification fails to detail whether, or on what basis, Siegel has the authority to make decisions for these Accounts. Such failures subject the Rosen Law Group to a unique defense concerning, *inter alia*, whether Siegel has unfettered authority to act on behalf of the Accounts. *See Lifestyle*, 2016 U.S. Dist. LEXIS 68952, at *18–9 (noting that a movant group failed to provide "any description of how each of the declarants themselves . . . would be authorized to act on behalf of their respective entities"); *see also In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *9–10 (D.N.J Mar. 3, 2015) (finding movant subject to a unique defense and stating that "the PSLRA does not explicitly

5

require the signer of a certification on behalf of a corporation to . . . provide a basis for his/her signing authority. It seems plain to this Court, however, that any proper certification would include such basic information . . . .).

If the Rosen Law Group was to be appointed lead plaintiff, a defense concerning Siegel's standing, authority to represent the Accounts and the adequacy of the Siegel Certification would certainly become the focus of this litigation at the expense of the Class. This alone clearly and unequivocally disqualifies the Rosen Law Group from being appointed. *See, e.g.*, *In re Cent. European Distribution Corp. Sec. Litig.*, No. 11-6247-JSB-KMW, 2012 U.S. Dist. LEXIS 162616, at *10 (D.N.J. Nov. 14, 2012) ("The unique defense analysis does not require a final determination that the defense is, in fact, applicable. The point is 'not to adjudicate the case before it has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.'") (quoting *In re Netflix, Inc., Sec. Litig.*, No. 12-0225-SC, 2012 U.S. Dist. LEXIS 59465, at *17 (N.D. Cal. Apr. 26, 2012)); *see also Inchen Huang v. Depomed, Inc.*, 289 F. Supp. 3d 1050, 1055 (N.D. Cal. 2017) (noting that there is a "low bar to the raising of such defenses [and] a movant need not prove the defense at this stage of the case, but merely 'show a degree of likelihood that a unique defense might play a significant role at trial.'") (citation omitted).

This deficiency in the Siegel Certification, and the unique defenses raised thereby, fatally undermines Rosen Law Group's motion. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (the presumption is rebutted upon proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class"). Accordingly, the Klapper, Rana and Estoesta Group is the presumptive most adequate plaintiff. *See In re Vonage Initial Pub. Offering Sec. Litig.*, No. 07-cv-177-FLW, 2007 U.S. Dist. LEXIS 66258, at *13 (D.N.J. Sept. 6, 2007) (stating that if the presumption is rebutted, the "'court should then identify the movant with the next largest loss, consider whether that movant will satisfy Rule 23's requirements and repeat this process until a presumptive lead plaintiff is identified.'") (quoting *In re Cendant Corp.*, 264 F.3d at 262)).

### B.  The Rosen Law Group is a Byproduct of Improper Lawyer-Driven Litigation

The members of the Rosen Law Group filed an *untimely* joint declaration with their Opposition purportedly attesting to the group's members' ability, or willingness, to work together on behalf of the proposed Class and oversee the Rosen Law Firm's actions. Dkt. No. 22-2.[5] As noted in the Klapper, Rana and Estoesta

---

[5]  Conveniently, the Rosen Law Group's *untimely* joint declaration has nearly identical language to that of the Klapper, Rana and Estoesta Group's *timely* filed joint declaration. *Compare* Dkt. No. 22-2 *with* Dkt. No. 19-3.

7

Group's Opposition, the Rosen Law Group's actions are highly analogous to those taken by a movant group in *Stires v. Eco Sciences Solutions, Inc.*, No. 17-3707-RMB-KMW, 2018 U.S. Dist. LEXIS 25088 (D.N.J. Feb. 13, 2018) (a case recently decided in this District).

In *Stires*, the movant "group" belatedly submitted a joint declaration two weeks after they moved "in an attempt to establish that they were the type of cohesive unit that could adequately manage the litigation." *Id*. at *13–4. Similarly, here the Rosen Law Group also belatedly submitted a joint declaration nearly three weeks after it moved for appointment as lead plaintiff. In *Stires*, the Court noted that it was "not clear how [the group] could have made the joint decision to serve as lead plaintiff prior to filing their motion" when they had not engaged in their purported joint conference call that formed the basis of their joint declaration until after they had already moved for lead plaintiff. *Id*. at *14–5. In light of the foregoing, the Court found that the movant group was "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp*," *id*. at *13, and that the group "'[could not] be counted on to monitor counsel in a sufficient manner.'" *Id*. at *15 (quoting *In re Cendant Corp*., 264 F.3d at 267).[6]

---

[6] *See also Nasin v. Hongli Clean Energy Techs. Corp.*, No. 17-3244-WJM, 2017 U.S. Dist. LEXIS 192673, at *8–9 (D.N.J. Nov. 21, 2017) (finding subsequently filed corrected certifications deficient for being untimely given they

8

In short, the Rosen Law Group is the byproduct of precisely the sort of "lawyer-driven" litigation that the PSLRA was designed to prevent. *See, e.g.*, *Network*, 76 F. Supp. 2d at 1020 ("The PSLRA was provoked by a wide-spread perception that securities class actions had become 'lawyer-driven,' *i.e.*, that such litigation had been typically initiated and controlled by plaintiff's counsel, bark to core, start to finish."); *In re Gemstar-Tv Guide Int'l Secs. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (stating that "[t]he record in this case suggests that [the movant group] was created in an effort to have its members designated as lead plaintiffs and, more important, its counsel designated as class counsel"); *In re Spectrum Pharms., Inc.*, No. 13-cv-433-LDG-CWH, 2014 U.S. Dist. LEXIS 38322, at *10 (D. Nev. Mar. 20, 2014) ("While the [Group] is correct that it is not necessary that a group have a pre-existing relationship to be appointed lead plaintiff, a clear purpose of the reforms adopted in the PSLRA was to prevent **lawyer-driven** litigation. This

---

were filed after the 60-day deadline established by the PSLRA); *Guohua Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1053 (N.D. Cal. 2010) (stating "[t]he PSLRA is unequivocal and allows for no exceptions"); *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 433, n.12 (E.D. Va. 2000) (stating that "District courts applying the PSLRA note that the sixty-day time period is a significant element of the statute, and reflects Congress's sensible intent that the led plaintiff be appointed as early in the litigation as possible") (citations omitted); *Oklahoma Law Enforcement Ret. Sys. v. Adeptus Health Inc.*, No. 17-449, 2017 U.S. Dist. LEXIS 140268, at *13 (E.D. Tex. Aug. 31, 2017) ("A motion for appointment as lead plaintiff 'cannot be supplemented or augmented beyond the sixty (60) day window established by the PSLRA.'") (citation omitted).

9

purpose is undermined when a group . . . cannot establish that the formation of their group was driven by some mechanism other than the same law firm that the group intends to nominate as lead counsel")(emphasis added); *Niederklein*, 2011 U.S. Dist. LEXIS 18247, at *19–20 (declining to appoint a movant group that was clearly formed as a result of lawyer-driven litigation and noting that The Rosen Law Firm appeared to be "the driving force behind the grouping").

Clearly perceiving that the Rosen Law Group is subject to a unique defense concerning Siegel and that the group had failed to demonstrate its independence from counsel, the group's counsel was able to finally get the group's members together for a conference call[7] and thereafter filed an *untimely* joint declaration from the group's members which states that "if the Court's preference is to appoint a single investor as Lead Plaintiff, then we each support the appointment of either of ourselves individually as Lead Plaintiff." Dkt. No. 22-2 ¶6. Evidently, the Rosen

---

[7] Furthermore, the Rosen Law Group's independence from its counsel is further undermined by the fact that its primary "communication line" appears to be The Rosen Law Firm's "toll-free conference line." Dkt. No. 15 at 8. Evidently, the primary communication "available to" the Rosen Law Group's members is through their counsel. This is precisely the sort of arrangement that tends to give all the power and responsibility to the attorneys, and thereby facilitates lawyer-driven litigation and undercuts the important statutory role of lead plaintiffs. *See Stires*, 2018 U.S. Dist. LEXIS 25088, at *13 (finding movant group to be "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp*").

Law Group does not care who is appointed lead plaintiff so long as The Rosen Law Firm is appointed lead counsel.

Such willingness to disband further raises the clear specter of improper, lawyer-driven litigation in contravention of one of the primary purposes of the PSLRA. *See, e.g.*, *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1023 (N.D. Cal. 1999) ("One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation.") (citation omitted). Furthermore, the individual members of the Rosen Law Group did not move to be appointed lead plaintiff as individuals and thus their request is even more inappropriate. *See Ross v. Abercrombie & Fitch Co.*, No. 05-cv-819, 2007 U.S. Dist. LEXIS 24903, at *13 (S.D. Ohio Mar. 22, 2007) ("There is no requirement in the PSLRA that the Court realign a proposed group to cure a deficiency in adequacy of representation."); *see also Niederklein v. PCS Edventures!.com, Inc.*, No. 10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247, at *24–5 (D. Idaho Feb. 24, 2011) (finding that a movant group could not belatedly request disbanding the group in a reply memorandum where the initial motion "only proposed that [the group's members] be considered for lead plaintiff collectively . . . and not as individuals . . . Neither did [the group's members] present any evidence in the record which would support individual lead plaintiff appointment for either one of them, other than their certifications which outline their financial losses.").

Based on the foregoing, this Court should find to the Rosen Law Group -- and each of its members -- is inadequate to represent the proposed Class. *See In re Versata, Inc.*, No. C 01-1439-SI, 2001 U.S. Dist. LEXIS 24270, at *21–2 (N.D. Cal. Aug. 20, 2001) (in determining the adequacy of a group movant, "the singular focus [should] be whether the asserted group has demonstrated the ability to represent the class and direct the litigation without undue influence from counsel"). Alternatively, the Court should not permit the Rosen Law Group to aggregate their losses. *See Lifestyle*, 2016 U.S. Dist. LEXIS 68952, at *19–20 ("Accordingly, this Court holds that the [movant group] cannot aggregate their losses to serve as lead plaintiff . . ."). In either event, the Klapper, Rana and Estoesta Group becomes the largest movant that satisfies the requirements of Fed.R.Civ.Pro. 23, and hence the presumptive lead plaintiff.

## CONCLUSION

For the foregoing reasons, the Group respectfully requests that this Court: (1) appoint the Klapper, Rana and Estoesta Group as Lead Plaintiff, (2) approve the Group's selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) grant such other relief as the Court may deem just and proper.

Dated:  May 14, 2018  **LEVI & KORSINSKY, LLP**

/s/ Donald J. Enright
Donald J. Enright
Elizabeth K. Tripodi (*pro hac vice to be submitted*)

12

John A. Carriel (*pro hac vice to be submitted*)
**LEVI & KORSINSKY, LLP**
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4292
Facsimile: (202) 333-2121
Email: denright@zlk.com
Email: etripodi@zlk.com
Email: jcarriel@zlk.com

*Counsel for Movants
and [Proposed] Lead Counsel for the Class*