UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated, : <br> : <br> *Plaintiff*, : <br> : <br> v. : <br> : <br> RIOT BLOCKCHAIN, INC. F/K/A, : <br> BIOPTIX, INC., JOHN O'ROURKE, and : <br> JEFFREY G. MCGONEGAL, : <br> : <br> *Defendants*. : <br> : | Civil Action No.: 18-2293(FLW)(TJB) <br><br> CLASS ACTION <br><br> ORAL ARGUMENT REQUESTED <br><br> MOTION DATE: May 21, 2018 |

**DR. STANLEY GOLOVAC'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**LITE DEPALMA GREENBERG**
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com

*Counsel for Dr. Stanley Golovac*

**MOTLEY RICE LLC**
Gregg S. Levin
Michael J. Pendell
Joshua C. Littlejohn
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
glevin@motleyrice.com
mpendell@motleyrice.com
jlittlejohn@motleyrice.com

*Counsel for Dr. Stanley Golovac
and Proposed Lead Counsel for the Class*

739194.1

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
I.   PRELIMINARY STATEMENT .......................................................................................1
II.  ARGUMENT ...................................................................................................................3
     A.   The Competing Movant-Groups Do Not Trigger the Statutory
          Presumption ........................................................................................................3
          1.   The Lee-Siegel-Singhal Group ...................................................................3
          2.   The Klapper Rana & Estoesta Group..........................................................5
     B.   Dr. Golovac Qualifies for Appointment as Lead Plaintiff Under the
          PSLRA .................................................................................................................9
III. CONCLUSION.................................................................................................................9

## TABLE OF AUTHORITIES

**CASES**

*Buettgen v. Harless*,
   263 F.R.D. 378 (N.D. Tex. 2009) ................................................................................................ 2

*Chao Sun v. Han*,
   No. 15-703, 2015 WL 2364937 (D.N.J. May 14, 2015) ............................................................. 7

*Frias v. Dendreon Corp.*,
   835 F. Supp. 2d 1067 (W.D. Wash. 2011) .................................................................................. 8

*In re Cendant Corp. Litigation*,
   264 F.3d 201 (3d Cir. 2001) ............................................................................................... 1, 2, 6

*In re Gentiva Securities Litigation*,
   281 F.R.D. 108 (E.D.N.Y. Jan. 26, 2012) ................................................................................... 4

*In re Level 3 Communications, Inc. Securities Litigation*,
   No. 09-cv-00200-PAB-CBS, 2009 WL 10684924 (D. Colo. May 4, 2009) .............................. 5

*In re Razorfish, Inc. Securities Litigation*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001) ......................................................................................... 5

*In re Tarragon Corp. Securities Litigation*,
   No. 07 CIV 7972(PKC), 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007) .................................. 4, 8

*In re Veeco Instruments Inc. Securities Litigation*,
   233 F.R.D. 330 (S.D.N.Y. 2005) ................................................................................................ 1

*In re Versata, Inc. Securities Litigation*,
   No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001) ....................................... 7, 8

*In re Vonage IPO Securities Litigation*,
   No. 07-177 (FLW), 2007 WL 2683636 (D.N.J. Sept. 7, 2007) ............................................. 6, 8

*Roby v. Ocean Powers Technologies, Inc.*,
   No. 14-cv-3799 (FLW)(LHG), 2015 WL 1334320 (D.N.J. Mar. 17, 2015) .............................. 4

*Sakhrani v. Brightpoint, Inc.*,
   78 F. Supp. 2d. 845 (S.D. Ind. 1999) .......................................................................................... 6

*Schriver v. Impac Mortgage Holdings, Inc.*,
   No. SACV 06-31 CJC (RNBx), 2006 WL 6886020 (C.D. Cal. May 2, 2006) ......................... 7

*Smith v. Suprema Specialties, Inc.*,
   206 F. Supp. 2d 627 (D.N.J 2002) .......................................................................................... 2, 7

*Stires v. Eco Science Solutions, Inc.*,
   No. 17-3707(RMB/KMW), 2018 U.S. Dist. LEXIS 25088 (D.N.J. Feb. 13, 2018) ...... 4, 5, 6, 7

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV-07-2204-PHX-FJM, 2008 WL 942273 (S.D.N.Y. Apr. 7, 2008) ................................ 5

*Varghese v. China Shenghuo Pharmaceutical Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................... 2, 3

**R**ULES

Fed. R. Civ. P. 23 ................................................................................................................................ 1

Dr. Stanley Golovac ("Dr. Golovac") respectfully submits this reply brief in further support of his Motion, ECF No. 17, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for appointment as lead plaintiff and approval of his selection of lead counsel, and in opposition to the competing motions.

I.   PRELIMINARY STATEMENT

On April 18, 2018, seven movants filed motions with the Court seeking appointment as lead plaintiff in this action. Since then, four movants have withdrawn their motions or conceded that they are not entitled to appointment as lead plaintiff.[1] Other than Dr. Golovac, the only movants who still press their motions are two groups of unrelated individual investors: (i) the Lee-Siegel-Singhal Group, consisting of Simon Lee, Bryan Siegel, and Vivek Singhal; and (ii) the Klapper Rana & Estoesta Group, consisting of Joseph J. Klapper Jr., Ashish Rana, and Sonia Estoesta. "Courts . . . view such aggregations of individual shareholders with disapproval" because of the danger they will be controlled by counsel. *In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. 330, 334 (S.D.N.Y. 2005).

The "threshold" question for the Court is whether these groups could "'fairly and adequately protect the interests of the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001) (quoting Fed. R. Civ. P. 23). At a minimum, each "proposed group must proffer an evidentiary showing that [their] unrelated members . . . will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp.

---

[1] The "Riot Investor Group," *see* ECF No. 25, and Wai Lau, *see* ECF No. 21, have withdrawn their respective motions. Saroor Alam acknowledged in his response that "he does not possess the largest financial interest among the various lead plaintiff movants." ECF No. 20 at 1. Paul Kue did not file any response by the May 7, 2018 deadline or since.

2d 388, 392 (S.D.N.Y. 2008). "If the court determines that the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff, the court should disqualify that movant on the grounds that it will not fairly and adequately represent the interests of the class." *In re Cendant Corp.*, 264 F.3d at 266.

Neither the Lee-Siegel-Singhal Group nor the Klapper Rana & Estoesta Group have demonstrated that it can function cohesively and effectively manage the litigation apart from their lawyers. Simon Lee, Bryan Siegel, and Vivek Singhal had never even spoken to each other when their counsel submitted a motion for appointment as lead plaintiff on their behalf—and their untimely joint declaration does not establish that they will be able to work together effectively to manage the litigation. And, while the Klapper Rana & Estoesta Group timely submitted a joint declaration, the language in that declaration is nearly identical to verbiage that the court rejected as inadequate earlier this year in *Stires v. Eco Science Solutions, Inc.*, No. 17-3707(RMB/KMW), 2018 U.S. Dist. LEXIS 25088 (D.N.J. Feb. 13, 2018). *See infra* at 6. Furthermore, the individuals who comprise the Klapper Rana & Estoesta Group have not provided a convincing "'rationale for [their] grouping other than to manufacture the greatest financial interest in order to be appointed lead plaintiff.'" *Buettgen v. Harless*, 263 F.R.D. 378, 382 (N.D. Tex. 2009). Accordingly, its motion for appointment should be denied. *See Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 637 (D.N.J. 2002) ("[I]f a movant 'group' was created by the efforts of lawyers for the purpose of ensuring that it is named lead counsel, the 'group' should not be named lead plaintiff.").

Because Dr. Golovac is the only remaining movant who has demonstrated that he satisfies Rule 23's typicality and adequacy requirements, and no movant has challenged Dr. Golovac's adequacy under the PSLRA, he is entitled to appointment as lead plaintiff.

2

739194.1

II.     ARGUMENT

    A.     **The Competing Movant-Groups Do Not Trigger the Statutory Presumption**

        1.     **The Lee-Siegel-Singhal Group**

Of the remaining movants, the Lee-Siegel-Singhal Group claims the largest loss. However, as demonstrated in Dr. Golovac's response brief, the Lee-Siegel-Singhal Group does not qualify for appointment as lead plaintiff because, *inter alia*:

1) there is no pre-litigation relationship between members of the proposed group;

2) the group did not describe how it came to be constituted, including why its members decided to move together;

3) the group did not describe its specific plans for cooperation, such as how they intend to conduct discovery or how they will coordinate litigation efforts and strategy;

4) the group did not submit any sworn declaration with its motion;

5) the group did not explain how it would resolve disputes among its members;

6) the few statements about the group that appeared in its opening papers, *see* ECF No. 15 at 8, are not evidence, but merely unsubstantiated assertions by the group members' counsel; and

7) the members of the group had never communicated with each other directly when their common counsel submitted a joint motion on their behalf.

*See* ECF No. 24 at 4-5. In short, the Lee-Siegel-Singhal Group did not make a *prima facie* showing that it can function cohesively or act independently of counsel. *See Varghese*, 589 F. Supp. 2d at 392. To the contrary, the content and circumstances of its motion papers evince a total absence of cohesiveness among the members of the group and a concerning reliance on counsel.

The Lee-Siegel-Singhal Group has made a belated attempt to establish its cohesiveness and independence from counsel by submitting a joint declaration with its response brief. The joint declaration confirms, in fact, that the members of the group had not spoken to each other before their counsel submitted a joint motion for lead plaintiff on their behalf. *See* ECF No. 22-2 at 2. While this Court has accepted evidence submitted with an opposition brief under different circumstances, *see Roby v. Ocean Powers Techs., Inc.*, No. 14-cv-3799 (FLW)(LHG), 2015 WL 1334320 (D.N.J. Mar. 17, 2015), the present joint declaration does not support the appointment of the Lee-Siegel-Singhal Group since the members of the group admit that they had no contact with each other before their motion was filed, *see Stires*, 2018 U.S. Dist. LEXIS 25088, at *15 ("[I]f the group members held a conference call on August 1, 2017 to discuss such preliminary matters, it is not clear to the Court how they could have made the joint decision to serve as lead plaintiff prior to the filing of their motion on July 24, 2017."). That fact alone should be fatal to the group's motion. *See In re Tarragon Corp. Sec. Litig.*, No. 07 CIV 7972(PKC), 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (rejecting applications from two groups that provided "no evidence that the members of these groups have ever communicated with other members of their respective group or will do so in the future").

Finally, the Lee-Siegel-Singhal Group's untimely joint declaration is replete with conclusory statements that courts previously have found insufficient to establish cohesiveness and independence from counsel. *See, e.g.*, *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 109 (E.D.N.Y. Jan. 26, 2012). For example, the group states that its members "believe that the Class would benefit from a leadership structure in which three Lead Plaintiffs jointly assume the responsibilities of a Class representative" and that they discussed a "strategy" for prosecuting the case—without providing any detail as to what that means. ECF No. 22-2 at 2, 3. Unlike sophisticated,

institutional investors who decide on their own to combine with each other to form a group, these individual investors apparently know as little about the task before them as they know about each other. They have no foundation of knowledge, experience, or familiarity to build a cohesive partnership. The circumstances of this group's formation suggest that it was organized, not for the benefit of the class, but "for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff.'" *Stires*, 2018 U.S. Dist. LEXIS 25088, at *13 (quoting *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307-08 (S.D.N.Y. 2001)) (internal quotation marks omitted).

In its untimely joint declaration, the Lee-Siegel-Singhal Group also—for the first time—asks the Court, in the alternative, to appoint a single member of its group as lead plaintiff, presumably in the event that the Court finds that the group is not adequate. The Lee-Siegel-Singhal Group's "willingness to abandon the group only suggests how loosely it was put together." *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (S.D.N.Y. Apr. 7, 2008). The Court should not reward the efforts of counsel to manufacture the largest loss and should reject any "request to appoint only one individual out of an otherwise inadequate group." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-CBS, 2009 WL 10684924, at *5 (D. Colo. May 4, 2009).

### 2. The Klapper Rana & Estoesta Group

Like the Lee-Siegel-Singhal Group, the Klapper Rana & Estoesta Group are unrelated individual investors. While the group argues, correctly, that this Court sometimes has allowed investors without a pre-litigation relationship to serve together as lead plaintiff, when, as here, individual investors have been brought together by counsel, there is a distinct danger that the group will be controlled by counsel. As the Court has noted, "The PSLRA's over-arching goal is to promote a client-driven litigation and ensure that the client took the initial steps to pursue an action

5

arising under the PSLRA." *In re Vonage IPO Sec. Litig.*, No. 07-177 (FLW), 2007 WL 2683636, at *7 (D.N.J. Sept. 7, 2007) (citing *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d. 845, 850 (S.D. Ind. 1999)). To this end, "the Court must 'determine . . . [whether] the way in which . . . [the] group . . . was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff.'" *Stires*, 2018 U.S. Dist. LEXIS 25088, at *12 (alterations in original) (quoting *In re Cendant Corp.*, 264 F.3d at 266).

The Klapper Rana & Estoesta Group shares many of the same traits as the group that the court found inadequate in *Stires*. The "'group' spans the country's geography," with one member in Pennsylvania and two in southern California. *Id.* at *14. Moreover, the statements in the group's joint declaration are nearly word-for-word identical to the inadequate joint declaration the court reviewed in *Stires*. Below is a red-line showing the differences between the portion of the joint declaration that the *Stires* court excerpted and the relevant portion of the Klapper Rana & Estoesta Group's joint declaration:

> the strength of the claims against Defendants; a strategy for prosecuting these actions; the benefits that the ~~c~~Class would receive from the leadership of ~~a coordinated group of investors; the~~co-lead plaintiffs; our shared desire ~~of the Eco Science Investor Group's members~~ to achieve the best possible result for the ~~class; the~~Class; our interests in prosecuting the case in a collaborative, likeminded manner; and the actions that ~~the Eco Science Investor Group~~we will take to continue to ensure that the ~~c~~Class's claims will be zealously and efficiently litigated.

*Compare* ECF No. 19-6 at ¶ 8, *with Stires*, 2018 U.S. Dist. LEXIS 25088, at *14-15. The **only** differences are changes to nouns to match the current movants, capitalization of the word "class", and replacement of the phrase "a coordinated group of investors" with "co-lead plaintiffs."

After excerpting this language, the court in *Stires* went on to note that "[w]hat the Joint Declaration does not provide, and what is conspicuously absent, is ***any information regarding how these five apparent strangers from different states found each other***." 2018 U.S. Dist.

6

739194.1

LEXIS 25088, at *15 (emphasis added). Likewise, the Klapper Rana & Estoesta Group provided *no* information about the way in which it was formed or the manner in which it is constituted. *See, e.g.*, *Suprema Specialties*, 206 F. Supp. 2d at 637; *Chao Sun v. Han*, No. 15-703, 2015 WL 2364937, at *3 (D.N.J. May 14, 2015) ("[T]he Third Circuit disapproves of groups that are created by counsel in an effort to satisfy the largest financial loss requirement."). None of the members of the Klapper Rana & Estoesta Group apparently has any experience serving in a group, and they have not provided "any explanation of how the group intends to conduct discovery or coordinate litigation efforts or strategy." *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 WL 6886020, at *8 (C.D. Cal. May 2, 2006). Consistent with the decision in *Stires*, this Court should conclude that the Klapper Rana & Estoesta Group "is precisely the type of lawyer-created group the Third Circuit cautioned against in *In re Cendant Corp.*" *Stires*, 2018 U.S. Dist. LEXIS 25088, at *13.[2]

In support of its argument that it is distinguishable from the Lee-Siegel-Singhal Group, the Klapper Rana & Estoesta Group relies on *In re Versata, Inc. Securities Litigation*, No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001). *See* ECF No. 23 at 17. In that case, the three-member group consisted of an institutional investor "'established for the purpose of investing in global markets,'" "'an international software consulting and investment firm' with a[] corporate portfolio encompassing both equity and fixed income securities in the United States market," and an individual investor. *In re Versata*, 2001 WL 34012374, at *6 (stating group member's "institutional status is given great weight in assessing its adequacy as a plaintiff"). The court noted

---

[2] While the Klapper Rana & Estoesta Group differs from the group in *Stires* in that it held a joint call before submitted its motion for appointment as lead plaintiff, this fact alone is insufficient to overcome that inference that the group is a contrivance of counsel, rather than a cohesive decision-making unit that can function independently.

7

that "[e]ach member of the [proposed group] . . . submitted a declaration providing background information and articulating why the member is seeking lead plaintiff status as part of the asserted group." *Id.* ("Individually, the members of the [proposed group] are impressive in their business sophistication."). The individual group member's declaration provided "detailed background information about himself, including his employment, business background, experience as an investor, investment history with Versata, and intentions to serve the class." *Id.* at *6 n.7. In contrast, the evidence that the individual members of the Klapper Rana & Estoesta Group set forth in their joint declaration is scant and consists mostly of the sort of "conclusory statements and generalizations" that courts have rejected in the past. *Frias v. Dendreon Corp.*, 835 F. Supp. 2d 1067, 1074 (W.D. Wash. 2011).

The other decisions cited by the Klapper Rana & Estoesta Group also do not support its request for a lead plaintiff appointment. In *In re Vonage*, this Court found that it was appropriate to appoint a group because a single individual "makes all investment decisions for the [group]" and therefore it "functions as a single person." *In re Vonage*, 2007 WL 2683636, at *10; *see also* ECF No. 23 at 16 (citing *In re Vonage*). That is not the situation the Klapper Rana & Estoesta Group presents. The Klapper Rana & Estoesta Group also cites *In re Tarragon* in support of its appointment. *See* ECF 23 at 15. In that case, the District Court for the Southern District of New York **denied** the lead plaintiff motions of two different proposed groups in favor of appointing an individual with a smaller loss. In its decision, the court emphasized the "perils of a 'group' created by the lawyers who the 'group' would purportedly control." *In re Tarragon*, 2007 WL 4302732, at *1-2 (collecting cases).

As this Court has recognized in the past, the burden in the first instance is on the group seeking appointment to demonstrate its adequacy. *See In re Vonage*, 2007 WL 2683636, at *6

8

739194.1

("Another factor in making the *threshold adequacy determination* arises when the movant with the largest financial interest in the relief sought by the class is a group rather than a[n] individual person or entity.") (emphasis added).  The Klapper Rana & Estoesta Group has failed to demonstrate that it can operate cohesively and independently of counsel.  Accordingly, it cannot benefit from a presumption that it is the most adequate lead plaintiff, and the Court should deny its motion.

### B. Dr. Golovac Qualifies for Appointment as Lead Plaintiff Under the PSLRA

As demonstrated in his opening and opposition briefs, Dr. Golovac suffered a substantial loss on his investments in Riot Blockchain securities during the Class Period and satisfies the typicality and adequacy requirements of Rule 23.  *See* ECF No. 17-1 at 6-7; ECF No. 24 at 10.  No other movant has challenged his adequacy, therefore, Dr. Golovac is entitled to appointment as lead plaintiff pursuant to the PSLRA.

### III. CONCLUSION

For the foregoing reasons, Dr. Golovac respectfully requests that the Court appoint him lead plaintiff and approve his selection of Motley Rice LLC as lead counsel for the putative class.

**LITE DEPALMA GREENBERG**

Dated:  May 14, 2018

/s/ Joseph J. DePalma
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com

*Counsel for Dr. Stanley Golovac*

9

739194.1

                    **MOTLEY RICE LLC**
                    Gregg S. Levin
                    Michael J. Pendell
                    Joshua C. Littlejohn
                    28 Bridgeside Blvd.
                    Mt. Pleasant, SC  29464
                    Telephone: (843) 216-9000
                    Facsimile: (843) 216-9450
                    glevin@motleyrice.com
                    mpendell@motleyrice.com
                    jlittlejohn@motleyrice.com

                    *Counsel for Dr. Stanley Golovac*
                    *and Proposed Lead Counsel for the Class*