# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD L. MULLIGAN JR., Individually and on Behalf of All Others Similarly Situated, | Case No.: 2:18-cv-02425 |
| Plaintiff, | |
| v. | |
| ACETO CORPORATION, SALVATORE GUCCIONE, and DOUGLAS ROTH, | Hon. Joseph F. Bianco Magistrate Judge Anne Y. Shields |
| Defendants. | |
| JINCAI YANG, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:18-cv-02437 |
| Plaintiff, | |
| v. | |
| ACETO CORPORATION, WILLIAM C. KENNALLY III, and DOUGLAS ROTH, | Hon. Ann M. Donnelly Magistrate Judge Sanket J. Bulsara |
| Defendants. | |

## NOTICE OF MOTION AND MOTION OF THE ACETO INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that Andrew Goodwin, Robert Herpst, Charles Bouley, Joseph Mun and Stephen Cornell (the "Aceto Investor Group" or "Movant") respectfully moves this Court for an order: (1) consolidating the above-captioned related cases; (2) appointing Movant as lead plaintiff pursuant to Section 21D of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (3) approving Movant's selection of Pomerantz LLP and Levi & Korsinsky, LLP as Co-Lead Counsel for the Class.

Movant seeks consolidation of related cases, appointment as lead plaintiff, and approval of Movant's choice of counsel pursuant to the Securities Exchange Act of 1934, the Federal Rules of Civil Procedure, and the PSLRA. This motion is based on this notice, the attached memorandum of law, the declaration of Shannon L. Hopkins, and the Court's complete files and records in this action, as well as such further argument as the Court may allow at a hearing on this motion.

Dated: June 25, 2018

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: _/s/ Shannon L. Hopkins_
Shannon L. Hopkins (1887)
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: 203-992-4523
Fax: 212-363-7171
shopkins@zlk.com

_Co-Lead Counsel for Movant and Proposed_
_Co-Lead Counsel for the Class_

**POMERANTZ LLP**

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com

_Co-Lead Counsel for Movant and Proposed_
_Co-Lead Counsel for the Class_

**PROOF OF SERVICE BY ELECTRONIC POSTING PURSUANT TO EASTERN
DISTRICT OF NEW YORK ECF AND LOCAL RULES AND BY MAIL
ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On June 25, 2018, I served true and correct copies of **NOTICE OF MOTION AND
MOTION OF THE ACETO INVESTOR GROUP FOR CONSOLIDATION OF RELATED
ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION
OF COUNSEL**, by posting the document electronically to the ECF website of the United States
District Court for the Eastern District of New York, for receipt electronically by the parties listed
on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct. Executed on June 25, 2018, at Stamford, Connecticut.


*/s/ Shannon L. Hopkins*
Shannon L. Hopkins

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD L. MULLIGAN JR., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ACETO CORPORATION, SALVATORE GUCCIONE, and DOUGLAS ROTH,<br><br>Defendants. | Case No.: 2:18-cv-02425<br><br><br><br><br><br>Hon. Joseph F. Bianco<br>Magistrate Judge Anne Y. Shields |
| JINCAI YANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ACETO CORPORATION, WILLIAM C. KENNALLY III, and DOUGLAS ROTH,<br><br>Defendants. | Case No.: 1:18-cv-02437<br><br><br><br><br><br>Hon. Ann M. Donnelly<br>Magistrate Judge Sanket J. Bulsara |

### [PROPOSED] ORDER GRANTING MOTION OF THE ACETO INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL

Having considered the motion of Andrew Goodwin, Robert Herpst, Charles Bouley, Joseph Mun and Stephen Cornell (the "Aceto Investor Group" or "Movant") for consolidation of the above-captioned related cases, appointment as lead plaintiff, and approval of selection of lead counsel (the "Motion"), and good cause appearing, the Court ORDERS as follows:

1.      The Motion is GRANTED;

2.      The above-captioned related cases are consolidated pursuant to Federal Rule of Civil Procedure 42(a) as *In re Aceto Corporation Securities Litigation*, Master File No. 2:18-cv-02425.

3.      The Court, having considered the provisions of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §77z-1(a)(3)(B) and 15 U.S.C. §78u-4(a)(3)(B), appoints Movant as Lead Plaintiff; and

4.      Pursuant to 15 U.S.C. §77z-1(a)(3)(B)(v) and 15 U.S.C. §78u-4(a)(3)(B)(v), Pomerantz LLP and Levi & Korsinsky, LLP are appointed as Co-Lead Counsel for the Class.

IT IS SO ORDERED.


Dated: _____, 2018        _____
                                          HON. JOSEPH F. BIANCO
                                          UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RONALD L. MULLIGAN JR., Individually and on Behalf of All Others Similarly Situated, | Case No.: 2:18-cv-02425 |
| Plaintiff, | |
| v. | |
| ACETO CORPORATION, SALVATORE GUCCIONE, and DOUGLAS ROTH, | Hon. Joseph F. Bianco |
| Defendants. | Magistrate Judge Anne Y. Shields |
| JINCAI YANG, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:18-cv-02437 |
| Plaintiff, | |
| v. | |
| ACETO CORPORATION, WILLIAM C. KENNALLY III, and DOUGLAS ROTH, | Hon. Ann M. Donnelly |
| Defendants. | Magistrate Judge Sanket J. Bulsara |

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE ACETO INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF <u>COUNSEL</u>

# **TABLE OF CONTENTS**

I.     FACTUAL BACKGROUND ............................................................................... 2

II.    PROCEDURAL HISTORY ................................................................................. 3

III.   ARGUMENT ....................................................................................................... 3

    A.   The Related Actions Should Be Consolidated ............................................ 3

    B.   Movant Should Be Appointed as Lead Plaintiff ........................................ 4

    1.   Movant Filed a Timely Motion .................................................................. 5

    2.   Movant Has the Largest Financial Interest ............................................... 6

    3.   Movant Satisfies Rule 23 ........................................................................... 6

        a.   Movant's Claims Are Typical .............................................................. 7

        b.   Movant is an Adequate Representative ................................................ 8

    C.   The Court Should Approve Lead Plaintiff's Choice of Counsel .................. 8

IV.   CONCLUSION .................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc.*,
   269 F.R.D. 291 (S.D.N.Y. 2010) .......................................................................... 7, 8

*In re Cendant Corp.*,
   264 F.3d 201 (3d Cir. 2001)...................................................................................... 8

*In re eSpeed, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................... 7

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108 (E.D.N.Y. 2012) ............................................................................. 1

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990).................................................................................... 4

Kuriakose v. Federal Home Loan Mortg. Co.,
   No. 1:08-cv-7281 (JFK), 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) ................ 7

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ............................................................................. 4

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
   2010 U.S. Dist. LEXIS 103218 (E.D.N.Y. Aug. 17, 2010) ..................................... 5

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008)................................................................... 5, 6

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
   2011 U.S. Dist. LEXIS 88552 (E.D.N.Y. May 31, 2011) ....................................... 8

**Statutes**

15 U.S.C. §78u-4(a)(3)(B) ............................................................................................. 4

15 U.S.C. §78u-4(a)(3)(B)(iii) .................................................................................... 5, 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(aa) ................................................................................. 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(II) .................................................................................. 5

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................... 8

15 U.S.C. §78u-4(a)(3)(B)(v) ......................................................................................... 8

15 U.S.C. 78u-4(a)(3)(A)(i) ............................................................................................ 5

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................ 4, 7

Andrew Goodwin, Robert Herpst, Charles Bouley, Joseph Mun, and Stephen Cornell (the "Aceto Investor Group" or "Movant") respectfully submits this memorandum of law in support of its motion to consolidate the above-captioned related cases, to appoint Movant as lead plaintiff, and to approve its selection of Pomerantz LLP ("Pomerantz") and Levi & Korsinsky, LLP ("Levi & Korsinsky") as Co-Lead Counsel pursuant to Section 21D of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995, on behalf of a putative class (the "Class") of purchasers of Aceto Corporation ("Aceto" or the "Company") securities during the period between August 25, 2017 and April 18, 2018, inclusive (the "Class Period").[1]

Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the person or group of persons with the largest financial interest in the relief sought by the Class who also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure are presumed to be the "most adequate" plaintiffs – the plaintiffs most capable of adequately representing the interests of Class members. The PSLRA provides that the Court shall appoint the most adequate movant as lead plaintiff. Movant believes that it is the "most adequate" movant, as defined by the PSLRA, and should be appointed lead plaintiff based on its financial losses suffered as a result of defendants' wrongful conduct as alleged in this Action. Moreover, Movant satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as its claims are typical of other Class members' claims, and it will fairly and adequately represent the interests of the Class. In addition, Movant's selection of Pomerantz and Levi & Korsinsky as Co-Lead Counsel should be

---

[1] Movant seeks to represent class members included in the longest alleged Class Period—between August 25, 2017 and April 18, 2018—because it is the "larger, most inclusive class period". *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) (finding the most inclusive class period proper in analyzing lead plaintiff motions).

approved because the firms have substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this action.

## I.    FACTUAL BACKGROUND[2]

Aceto is an international company engaged in the development, marketing, sales and distribution of finished dosage form generic pharmaceuticals, nutraceutical products, pharmaceutical active ingredients and intermediates, specialty performance chemicals inclusive of agricultural intermediates and agricultural protection products. ¶2.

During the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company failed to implement and enforce proper internal control to identify the misapplication of cash; (ii) the Company would incur large non-cash intangible asset impairment charges, (iii) the Company lacked effective internal control over financial reporting; (iv) the Company's financial results for the fiscal year 2017 could not be relied upon; (v) the Company's fiscal 2018 financial guidance was overstated; and, (vi) as a result of the foregoing, Aceto's public statements were materially false and misleading at all relevant times. ¶3.

On November 3, 2017, Aceto filed a Form 8-K with the SEC disclosing the nonreliance on its previously issued financial statements and a material weakness in internal control over financial reporting. ¶4. On April 18, 2018, Aceto issued a press release announcing an update on the Company's business and financial condition. ¶5. Therein, the Company disclosed the non-reliance on the previously issued 2018 fiscal year earnings guidance and the recording of non-cash

---

[2] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "Complaint") filed in *Mulligan v. Aceto Corporation, et al.*, Case No. 2:18-cv-02425 (the "*Mulligan* Action") on April 24, 2018. Unless otherwise defined, capitalized terms shall have the same meaning set forth in the Complaint. The facts set forth in the Complaint are incorporated herein by reference.

intangible asset impairment charges, including goodwill, in the range of $230 million to $260 million. *Id.*

On this news, Aceto's common stock declined $4.74 from a close price of $7.40 on April 18, 2018, to a close price of $2.66 on April 19, 2018, ***a drop of approximately 64.05% in the course of a trading day***. ¶6. As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's common stock, Plaintiff, and other Class members have suffered significant losses and damages. ¶7.

## II.   PROCEDURAL HISTORY

Plaintiff Ronald L. Mulligan Jr. ("Mulligan") commenced the first of the above-captioned cases against Aceto on April 24, 2018. On April 24, 2018, Levi & Korsinsky, on behalf of Mulligan, published a notice on *Globe Newswire* announcing a securities class action had been initiated against defendants herein. *See* Exhibit C ("Press Release") to the Declaration of Shannon L. Hopkins in Support of Motion ("Hopkins Decl."). In addition and subsequent to the filing of the *Mulligan* Action, one other related action was filed making similar allegations against similar defendants: *Yang v. Aceto Corporation, et* al., Case No. 1:18-cv-02437, filed in this District on April 25, 2018 (the "*Yang* Action") (together, the "Related Actions").[3]

## III.   ARGUMENT

### A.    The Related Actions Should Be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure Rule 42(a) is proper when actions involve common questions of law and fact. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284

---

[3] The *Mulligan* Action alleged a class period of August 25, 2017 and April 18, 2018, inclusive, however the *Yang* Action alleges a shorter, less inclusive Class Period of February 1, 2018 through April 18, 2018, inclusive. Accordingly, Movant seeks to represent a class of Aceto shareholders who are included in the larger Class Period because it encompasses more potential class members who relied on Aceto's public statements.

(2d Cir. 1990). The Related Actions presents similar factual and legal issues, as they involve the same subject matter and present the same legal issues. The *Yang* Action names most the same defendants as the *Mulligan* Action, alleges violations of the Exchange Act, presents the same or similar theories for recovery, and is based on the same allegedly wrongful course of conduct. Because the Related Actions arise from the same facts and circumstances and involve the same subject matter, consolidation under Federal Rule of Civil Procedure 42(a) is appropriate. *See Pipefitters Local No. 636 Defined Ben. Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (Consolidation is appropriate "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation").

### B. Movant Should Be Appointed as Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. §78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" – *i.e.*, the plaintiffs most capable of adequately representing the interests of the Class – is the class member or group of class members that:

> (aa) has either filed the complaint or made a motion in response to a notice. ..;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies all of the PSLRA criteria and has complied with all of the PSLRA's requirements to be appointed lead plaintiff. Movant has, to the best of its members' collective knowledge, the largest financial interest in this litigation—having lost $79,557.63 as a result of its transactions, and meet the relevant requirements of Federal Rule of Civil Procedure 23. *See* Loss Chart, Ex. B to Hopkins Decl. In addition, Movant is not aware of any unique defenses that defendants could raise against it that would render it inadequate to represent the Class. Accordingly, Movant respectfully submits that it should be appointed as lead plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

### 1.    Movant Filed a Timely Motion

On April 25, 2018, pursuant to 15 U.S.C. 78u-4(a)(3)(A)(i), Levi & Korsinsky, as counsel for Mulligan, published the Press Release on *Globe Newswire* – a widely circulated national business-oriented wire service – announcing that a securities class action had been filed against defendants herein and advising purchasers of Aceto securities that they had 60 days from the publication of the April 25, 2018 notice to file a motion to be appointed as lead plaintiff. *See* Press Release, Ex. C to Hopkins Decl.; *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, 2010 U.S. Dist. LEXIS 103218, at *11 (E.D.N.Y. Aug. 17, 2010) (filing a notice on *Business Wire* satisfied the PSLRA's notice requirement).

Movant timely filed this motion within the 60-day period following publication of the April 25, 2018 PSLRA notice, submitted herewith sworn certifications of the transactions made by its members in Aceto as well as certifications attesting that they are willing to serve as representatives of the Class. *See* Hopkins Decl., Ex. A. By making a timely motion in response to a PSLRA notice, Movant satisfies the first PSLRA requirement to be appointed as lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(aa).

### 2.      Movant Has the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff… is the person or group of persons that… has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii). At the time of this filing, Movant believes that it has the largest financial interest among Class members who filed timely applications for appointment as lead plaintiff and, accordingly, is presumed to be the "most adequate plaintiff."

Movant purchased Aceto securities during the Class Period at prices alleged to be artificially inflated by defendants' misstatements and omissions and fraudulent scheme and, as a result, suffered substantial losses. As a result of the alleged fraud against Defendants, Movant suffered an approximate loss of $79,557.63. *See* Hopkins Decl., Ex. B. The members of the Aceto Investor Group are unaware of any other Class member claiming a larger financial interest in this matter that have filed a motion for appointment as lead plaintiff. Consequently, Movant believes that it has the "largest financial interest in the relief sought by the Class." Thus, Movant satisfies the second PSLRA requirement – the largest financial interest – to be appointed as lead plaintiff for the Class.  *See Varghese,* 589 F. Supp. 2d at 396.

### 3.      Movant Satisfies Rule 23

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) . Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Group, Inc*., 269 F.R.D. 291, 296 (S.D.N.Y. 2010). At the lead plaintiff stage of the litigation, Movant need only make a preliminary showing that they satisfy Rule 23's typicality and adequacy requirements. *Id*. at 296-97 (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005); *Kuriakose v. Fed. Home Loan Mortg. Co.,* 2008 U.S. Dist. LEXIS 95506, at *11-12 (S.D.N.Y. Nov. 24, 2008).

### a.    Movant's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a lead plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to other class members' claims, and lead plaintiff's claims are based on the same legal theory. *See id.,* at *12. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that defendants' material misstatements and omissions, and fraudulent

scheme, concerning Aceto's business, operations and financial prospects violated the federal securities laws. The members of the Aceto Investor Group, like all of the members of the Class, purchased Aceto securities in reliance on defendants' alleged misstatements and omissions and were damaged thereby. *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, 2011 U.S. Dist. LEXIS 88552, at \*12 (E.D.N.Y. May 31, 2011) (typicality satisfied where Movant purchased stock at artificially inflates prices "and suffered damages as a result"). Accordingly, Movant's interests and claims are "typical" of the interests and claims of the Class.

### b.      Movant is an Adequate Representative

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297. Movant has demonstrated its adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and its collective and individual financial losses ensure that its members have sufficient incentive to ensure vigorous advocacy. *See* Hopkins Decl., Ex. B. Finally, Movant is not aware that any conflict exists between its claims and those asserted on behalf of the Class.

### C.      The Court Should Approve Lead Plaintiff's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. §78u-4(a)(3)(B)(v); *In re Cendant Corp.*, 264 F.3d 201 at \*274 (3d Cir. 2001). Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, Movant has selected Pomerantz and Levi & Korsinsky to pursue this litigation on its behalf and

will retain the firms as the Class's Co-Lead Counsel in the event it is appointed as lead plaintiff. Pomerantz and Levi & Korsinsky possess adequate experience in securities litigation and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the Firm Résumés attached to the Hopkins Decl. as Ex. D. Thus, the Court may be assured that by granting the Movant's motion, the Class will receive the highest caliber of legal representation.

## IV.     CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court grant its Motion and enter an Order: (1) consolidating the above-captioned Related Actions, (2) appointing the Aceto Investor Group as lead plaintiff, (3) approving its selection of Pomerantz and Levi & Korsinsky as Co-Lead Counsel for the Class, and (4) granting such other relief as the Court may deem just and proper.

Dated: June 25, 2018                                    Respectfully Submitted,

                                                        **LEVI & KORSINSKY, LLP**

                                                        By: */s/ Shannon L. Hopkins*
                                                        Shannon L. Hopkins (1887)
                                                        733 Summer Street, Suite 304
                                                        Stamford, CT 06901
                                                        Tel.: 203-992-4523
                                                        Fax: 212-363-7171
                                                        shopkins@zlk.com

                                                        *Co-Lead Counsel for Movant and Proposed*
                                                        *Co-Lead Counsel for the Class*

                                                        **POMERANTZ LLP**

                                                        Jeremy A. Lieberman
                                                        J. Alexander Hood II
                                                        600 Third Avenue, 20th Floor
                                                        New York, NY 10016

Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com

*Co-Lead Counsel for Movant and Proposed*
*Co-Lead Counsel for the Class*

**PROOF OF SERVICE BY ELECTRONIC POSTING PURSUANT TO EASTERN DISTRICT OF NEW YORK ECF AND LOCAL RULES AND BY MAIL ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On June 25, 2018, I served true and correct copies of **MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE ACETO INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 25, 2018, at Stamford, Connecticut.


*/s/ Shannon L. Hopkins*
Shannon L. Hopkins

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RONALD L. MULLIGAN JR., Individually and on Behalf of All Others Similarly Situated, | Case No.: 2:18-cv-02425 |
| Plaintiff, | |
| v. | |
| ACETO CORPORATION, SALVATORE GUCCIONE, and DOUGLAS ROTH, | Hon. Joseph F. Bianco |
| Defendants. | Magistrate Judge Anne Y. Shields |
| JINCAI YANG, Individually and on Behalf of All Others Similarly Situated, | Case No.: 1:18-cv-02437 |
| Plaintiff, | |
| v. | |
| ACETO CORPORATION, WILLIAM C. KENNALLY III, and DOUGLAS ROTH, | Hon. Ann M. Donnelly |
| Defendants. | Magistrate Judge Sanket J. Bulsara |

**DECLARATION OF SHANNON L. HOPKINS IN SUPPORT OF THE MOTION OF THE ACETO INVESTOR GROUP FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

I, Shannon L. Hopkins, hereby declare as follows:

1.      I am a partner with the law firm Levi & Korsinsky, LLP ("Levi & Korsinsky"), counsel for lead plaintiff movants Andrew Goodwin, Robert Herpst, Charles Bouley, Joseph Mun and Stephen Cornell (the "Aceto Investor Group" or "Movant") and proposed Co-Lead Counsel for the Class.

2.      I submit this Declaration, together with the attached exhibits, in support of Movant's motion for consolidation of the related cases, appointment as lead plaintiff, and approval

of its selection of Pomerantz LLP ("Pomerantz") and Levi & Korsinsky as Co-Lead Counsel for the Class.

     3.     Attached hereto as the exhibits indicated are true and correct copies of the following:

| | |
|---|---|
| Exhibit A: | PSLRA Certifications signed by the members of the Aceto Investor Group attesting to their purchases of Aceto Corporation securities; |
| Exhibit B: | Loss Charts reflecting the losses incurred by the members of the Aceto Investor Group as a result of their transactions in Aceto Corporation securities; |
| Exhibit C: | Press Release published April 24, 2018 on *Globe Newswire,* announcing the pendency of the first-filed securities class action against defendants herein: *Mulligan v. Aceto Corporation, et al.*, Case No. 2:18-cv-02425. |
| Exhibit D: | Firm Résumés of Pomerantz and Levi & Korsinsky, proposed Co-Lead Counsel for the class. |

     I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct. Executed this 25th day of June, 2018 at Stamford, Connecticut.


Dated: June 25, 2018                              Respectfully Submitted,

                                                  **LEVI & KORSINSKY, LLP**

                                                  By: */s/ Shannon L. Hopkins*
                                                  Shannon L. Hopkins (1887)
                                                  733 Summer Street, Suite 304
                                                  Stamford, CT 06901
                                                  Tel.: 203-992-4523
                                                  Fax: 212-363-7171
                                                  shopkins@zlk.com

*Co-Lead Counsel for Movant and Proposed*
*Co-Lead Counsel for the Class*

**POMERANTZ LLP**

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com

*Co-Lead Counsel for Movant and Proposed*
*Co-Lead Counsel for the Class*

**PROOF OF SERVICE BY ELECTRONIC POSTING PURSUANT TO EASTERN
DISTRICT OF NEW YORK ECF AND LOCAL RULES AND BY MAIL
ON ALL KNOWN NON-REGISTERED PARTIES**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On June 25, 2018, I served true and correct copies of **DECLARATION OF SHANNON
L. HOPKINS IN SUPPORT OF THE MOTION OF THE ACETO INVESTOR GROUP
FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**, by posting the document
electronically to the ECF website of the United States District Court for the Eastern District of
New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct. Executed on June 25, 2018, at Stamford, Connecticut.

*/s/ Shannon L. Hopkins*
Shannon L. Hopkins

# Exhibit A

**Submission Date**

2018-04-25 10:17:45

# CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1.  I make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.  I have reviewed a Complaint against Aceto Corporation ("Aceto" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.  I did not purchase or acquire Aceto securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Aceto securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.  To the best of my current knowledge, the attached sheet lists all of my transactions in Aceto securities during the Class Period as specified in the Complaint.

6.  During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.  I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.  I declare under penalty of perjury that the foregoing is true and correct.

# Name

**Print Name**

Andrew Goodwin

# Acquisitions

**Configurable list (if none enter none)**

| Date Acquired | Number of Shares Acquired | Price per Share Acquired |
|---|---|---|
| March 28, 2018 | 4200 | 7.34 |

# Sales

Case 2:18-cv-02425-JP-AYS Document 12-1 Filed 06/25/18 Page 3 of 12 PageID #: 164

**Configurable list (if none enter none)**

| Date Sold | Number of Shares Sold | Price per Share Sold |
|-----------|----------------------|---------------------|
| April 23, 2018 | 4200 | 2.271 |

# Documents & Message

**Signature**



**Full Name**

Andrew Goodwin



**Schedule A**

Transactions of Andrew Goodwin in Aceto Corporation (ACET)

**Client Name**         Andrew Goodwin
**Company Name**        Aceto Corporation
**Ticker Symbol**       ACET
**Class Period Start**  8/25/2017
**Class Period End**    4/18/2018

| Date of Transaction | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|
| 3/28/2018 | Purchase | 4,200 | $7.3400 | $30,828.00 |
| 4/23/2018 | Sale | 4,200 | $2.4830 | $10,428.60 |

CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, Robert D. Herpst, individually and on behalf of the (1) Robert D. Herpst Trust U/A dtd 9/18/81, (2) Anita A. Herpst Trust U/A dtd 6/25/2001, both for which I am the Trustee; (3) Anita A Herpst individual account, for which I have Power of Attorney for investing; and (4) Robert D. Herpst and Teresa M. Herpst joint account; (collectively "Movants/Plaintiffs"), all of which I am duly authorized to act, duly certify and say, as to the claims asserted under the federal securities laws, that:

1. Movants/Plaintiffs has reviewed a complaint filed in the action(s).

2. Movants/Plaintiffs did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. Movants/Plaintiffs is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Movants/Plaintiffs' transaction(s) in Aceto Corporation securities which are the subject of this litigation during the class period (are) set forth in the chart attached hereto.

5. Within the last 3 years, Movants/Plaintiffs has not sought to serve nor have I served as a class representative in any federal securities fraud case.

6. Movants/Plaintiffs will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this day of April, 2018.

Signed:

NAME:

<u>**Schedule A**</u>
Transactions of Robert Herpst in Aceto Corporation (ACET)

| | |
|---|---|
| **Client Name** | Robert Herpst |
| **Company Name** | Aceto Corporation |
| **Ticker Symbol** | ACET |
| **Class Period Start** | 8/25/2017 |
| **Class Period End** | 4/18/2018 |

**Account 1**

| Date of Transaction | | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|---|
| 2/22/2018 | Purchase | | 1,000 | $7.0000 | $7,000.00 |
| 2/22/2018 | Purchase | | 1,000 | $7.1200 | $7,120.00 |
| 3/1/2018 | Purchase | | 1,000 | $6.9900 | $6,990.00 |

**Account 2**

| Date of Transaction | | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|---|
| 2/22/2018 | Purchase | | 1,000 | $7.1000 | $7,100.00 |

**Account 3**

| Date of Transaction | | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|---|
| 2/22/2018 | Purchase | | 1,000 | $7.1200 | $7,120.00 |

**Account 4**

| Date of Transaction | | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|---|
| 2/22/2018 | Purchase | | 250 | $7.0400 | $1,760.00 |

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, Joseph Mun, duly certify and say, as to the claims asserted under the federal securities laws, that:

1. I have reviewed a complaint filed in the action(s).

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transaction(s) in Aceto Corporation which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this June 14, 2018.

Name: Joseph Mun

Signed:

### Schedule A

Transactions of Joseph Mun in Aceto Corporation (ACET)

| | |
|---|---|
| **Client Name** | Joseph Mun |
| **Company Name** | Aceto Corporation |
| **Ticker Symbol** | ACET |
| **Class Period Start** | 8/25/2017 |
| **Class Period End** | 4/18/2018 |

| Date of Transaction | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|
| 9/25/2017 | Purchase | 250 | $11.3100 | $2,827.50 |
| 10/30/2017 | Purchase | 250 | $10.2700 | $2,567.50 |
| 12/29/2017 | Purchase | 3 | $10.3200 | $32.55 |
| 2/2/2018 | Purchase | 1,000 | $8.0000 | $8,000.00 |
| 2/22/2018 | Purchase | 2,000 | $7.0500 | $14,100.00 |

**CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS**

I, charles d bouley , duly certify and say, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

3. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transaction(s) in Aceto Corporation which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5. Within the last 3 years, I have not sought to serve nor have I served as a class representative in any federal securities fraud case.

6. I will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this June 23, 2018.

Name: charles d bouley

Signed:

### Schedule A
Transactions of Charles Bouley in Aceto Corporation (ACET)

**Client Name**          Charles Bouley
**Company Name**       Aceto Corporation
**Ticker Symbol**        ACET
**Class Period Start**    8/25/2017
**Class Period End**     4/18/2018

**Account 1**

| Date of Transaction | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|
| 1/9/2018 | Purchase | 200 | $10.7721 | $2,154.42 |
| 1/26/2018 | Purchase | 100 | $11.2625 | $1,126.25 |
| 1/29/2018 | Purchase | 100 | $11.4660 | $1,146.60 |
| 1/30/2018 | Purchase | 100 | $11.5080 | $1,150.80 |
| 2/2/2018 | Purchase | 500 | $8.1361 | $4,068.05 |
| 2/7/2018 | Purchase | 500 | $7.4262 | $3,713.10 |
| 3/21/2018 | Purchase | 200 | $7.4210 | $1,484.20 |

**Account 2**

| Date of Transaction | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|
| 4/11/2018 | Purchase | 500 | $7.2836 | $3,641.80 |

**Account 3**

| Date of Transaction | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|
| 2/20/2018 | Purchase | 200 | $7.2865 | $1,457.30 |

## CERTIFICATION PURSUANT TO
## THE FEDERAL SECURITIES LAWS

I, the undersigned Stephen Cornell, certify that:

1.     I have reviewed the complaint, and have authorized its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.     I did not purchase the securities that are the subject of this action at the direction of counsel or in order to participate in any action arising under the federal securities laws.

3.     I want to serve as a lead plaintiff and representative party on behalf of the class, including providing testimony at deposition and trial.   I fully understand the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the class.

4.     Attached hereto as Schedule A is a complete listing of all my Aceto Corporation securities (NASDAQ: ACET) transactions during the Class Period.

5.     I have not served as a representative party on behalf of a class under this title during the last three years.

6.     I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the Class, as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: June __22__, 2018

_Stephen P Cornell_
Stephen P Cornell (Jun 22, 2018)

Stephen Cornell

## Schedule A

### Transactions of Stephen Cornell in Aceto Corporation (ACET)

| | |
|---|---|
| **Client Name** | Stephen Cornell |
| **Company Name** | Aceto Corporation |
| **Ticker Symbol** | ACET |
| **Class Period Start** | 8/25/2017 |
| **Class Period End** | 4/18/2018 |

| Date of Transaction | Puchase or Sale | Quantity | Price per Security | Total Cost/Proceeds |
|---|---|---|---|---|
| 4/6/2018 | Purchase | 1,000 | $7.3100 | $7,310.00 |
| 4/9/2018 | Purchase | 500 | $7.0600 | $3,530.00 |
| 4/9/2018 | Purchase | 500 | $7.0500 | $3,525.00 |
| 4/19/2018 | Sale | 2,000 | $2.9700 | $5,940.00 |

# Exhibit B

**Loss Chart**

Losses of Andrew Goodwin in Aceto Corporation (ACET)

| | | | | | | | | Aceto Investor Group | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Client Name** | Andrew Goodwin | | | | | | | | | |
| **Company Name** | Aceto Corporation | **90 Day Lookback Average** | $3.0328 | **LIFO Loss Total** | $20,398.14 | | | LIFO Loss | *Dura* LIFO Loss | Shares Retained |
| **Ticker Symbol** | ACET | | | *Dura* LIFO Total | $20,398.14 | | Andrew Goodwin | $20,398.14 | $20,398.14 | 4,200 |
| **Class Period Start** | 8/25/2017 | | | **Shares Retained** | **4,200** | | Robert Herpst | $21,167.66 | $21,167.66 | 5,000 |
| **Class Period End** | 4/18/2018 | | | | | | Joseph Mun | $16,903.09 | $16,903.09 | 3,503 |
| | | | | | | | Charles Bouley | $12,663.74 | $12,663.74 | 2,400 |
| | | | | | | | Stephen Cornell | $8,425.00 | $8,425.00 | 2,000 |
| | | | | | | | **TOTAL** | $79,557.63 | $79,557.63 | 17,103 |

| **Acquisition Date** | **Quantity of Securities Purchased** | **Price Per Security** | **Total Cost** | **Disposition Date** | **Securities Sold** | **Actual Sales Price Per Security** | **Avg. Trading Price on Date of Sale\*** | **Total Proceeds from Sale** | **Securities Held at Close of Class Period** | **Per Security Value** | **Retained Value** | **Total Proceeds/Loss (LIFO)** | ***Dura* LIFO\*\*** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/28/2018 | 4,200 | $7.3400 | $30,828.0000 | 4/23/2018 | 4,200 | $2.4833 | | $10,429.86 | - | 3.032826087 | $ - | $20,398.1400 | $20,398.1400 |
| **TOTAL:** | **4,200** | | **$30,828.00** | | **4,200** | | | **$10,429.86** | - | | **$ -** | **$20,398.14** | **$20,398.14** |

\* Post-class period sales valued using the greater of: (1) the average closing price between the end of the class period and the sales date; or (2) the actual sales price.

\*\* Disregarding intra-class period gains and losses.

**Loss Chart**
Losses of Robert Herpst in Aceto Corporation (ACET)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Client Name | Robert Herpst | | | | LIFO Loss Total | $21,167.66 | |
| Company Name | Aceto Corporation | 90 Day Lookback Average | $3.0328 | | *Dura* LIFO Total | $21,167.66 | |
| Ticker Symbol | ACET | | | | Shares Retained | 5,000 | |
| Class Period Start | 8/25/2017 | | | | | | |
| Class Period End | 4/18/2018 | | | | | | |

**Account 1**

| Acquisition Date | Quantity of Securities Purchased | Price Per Security | Total Cost | Disposition Date | Securities Sold | Actual Sales Price Per Security | Avg. Trading Price on Date of Sale* | Total Proceeds from Sale | Securities Held at Close of Class Period | Per Security Value | Retained Value | Total Proceeds/Loss (LIFO) | *Dura* LIFO** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/22/2018 | 1,000 | $7.0000 | $7,000.0000 | | | | | | 1,000 | 3.032826087 | $ 3,032.83 | $3,967.1739 | $3,967.1739 |
| 2/22/2018 | 1,000 | $7.1200 | $7,120.0000 | | | | | | 1,000 | 3.032826087 | $ 3,032.83 | $4,087.1739 | $4,087.1739 |
| 3/1/2018 | 1,000 | $6.9900 | $6,990.0000 | | | | | | 1,000 | 3.032826087 | $ 3,032.83 | $3,957.1739 | $3,957.1739 |
| TOTAL: | 3,000 | | $21,110.00 | | - | | | $0.00 | 3,000 | | $ 9,098.48 | $12,011.52 | $12,011.52 |

**Account 2**

| Acquisition Date | Quantity of Securities Purchased | Price Per Security | Total Cost | Disposition Date | Securities Sold | Actual Sales Price Per Security | Avg. Trading Price on Date of Sale* | Total Proceeds from Sale | Securities Held at Close of Class Period | Per Security Value | Retained Value | Total Proceeds/Loss (LIFO) | *Dura* LIFO** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/22/2018 | 1,000 | $7.1000 | $7,100.0000 | | | | | | 1,000 | 3.032826087 | $ 3,032.83 | $4,067.1739 | $4,067.1739 |
| TOTAL: | 1,000 | | $7,100.00 | | - | | | $0.00 | 1,000 | | $ 3,032.83 | $4,067.17 | $4,067.17 |

**Account 3**

| Acquisition Date | Quantity of Securities Purchased | Price Per Security | Total Cost | Disposition Date | Securities Sold | Actual Sales Price Per Security | Avg. Trading Price on Date of Sale* | Total Proceeds from Sale | Securities Held at Close of Class Period | Per Security Value | Retained Value | Total Proceeds/Loss (LIFO) | *Dura* LIFO** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/22/2018 | 1,000 | $7.1200 | $7,120.0000 | | | | | | 1,000 | 3.032826087 | $ 3,032.83 | $4,087.1739 | $4,087.1739 |
| TOTAL: | 1,000 | | $7,120.00 | | - | | | $0.00 | 1,000 | | $ 3,032.83 | $4,087.17 | $4,087.17 |

**Account 4**

| Acquisition Date | Quantity of Securities Purchased | Price Per Security | Total Cost | Disposition Date | Securities Sold | Actual Sales Price Per Security | Avg. Trading Price on Date of Sale* | Total Proceeds from Sale | Securities Held at Close of Class Period | Per Security Value | Retained Value | Total Proceeds/Loss (LIFO) | *Dura* LIFO** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/22/2018 | 250 | $7.0400 | $1,760.0000 | | | | | | 250 | 3.032826087 | $ 758.21 | $1,001.7935 | $1,001.7935 |
| TOTAL: | 250 | | $1,760.00 | | - | | | $0.00 | 250 | | $ 758.21 | $1,001.79 | $1,001.79 |

\* Post-class period sales valued using the greater of: (1) the average closing price between the end of the class period and the sales date; or (2) the actual sales price.
\*\* Disregarding intra-class period gains and losses.

**Loss Chart**
Losses of Joseph Mun in Aceto Corporation (ACET)

| Client Name | Joseph Mun | | | | | | LIFO Loss Total | $16,903.09 |
|---|---|---|---|---|---|---|---|---|
| Company Name | Aceto Corporation | **90 Day Lookback Average** | $3.0328 | | | | *Dura* LIFO Total | $16,903.09 |
| Ticker Symbol | ACET | | | | | | Shares Retained | 3,503 |
| Class Period Start | 8/25/2017 | | | | | | | |
| Class Period End | 4/18/2018 | | | | | | | |

| Acquisition Date | Quantity of Securities Purchased | Price Per Security | Total Cost | Disposition Date | Securities Sold | Actual Sales Price Per Security | Avg. Trading Price on Date of Sale* | Total Proceeds from Sale | Securities Held at Close of Class Period | Per Security Value | Retained Value | Total Proceeds/Loss (LIFO) | *Dura* LIFO** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/25/2017 | 250 | $11.3100 | $2,827.5000 | | | | | | 250 | 3.032826087 | $ 758.21 | $2,069.2935 | $2,069.2935 |
| 10/30/2017 | 250 | $10.2700 | $2,567.5000 | | | | | | 250 | 3.032826087 | $ 758.21 | $1,809.2935 | $1,809.2935 |
| 12/29/2017 | 3 | $10.3200 | $32.5493 | | | | | | 3 | 3.032826087 | $ 9.57 | $22.9837 | $22.9837 |
| 2/2/2018 | 1,000 | $8.0000 | $8,000.0000 | | | | | | 1,000 | 3.032826087 | $ 3,032.83 | $4,967.1739 | $4,967.1739 |
| 2/22/2018 | 2,000 | $7.0500 | $14,100.0000 | | | | | | 2,000 | 3.032826087 | $ 6,065.65 | $8,034.3478 | $8,034.3478 |
| **TOTAL:** | **3,503** | | **$27,527.55** | | - | | | **$0.00** | **3,503** | | **$ 10,624.46** | **$16,903.09** | **$16,903.09** |

\* Post-class period sales valued using the greater of: (1) the average closing price between the end of the class period and the sales date; or (2) the actual sales price.

\*\* Disregarding intra-class period gains and losses.

**Loss Chart**

Losses of Charles Bouley in Aceto Corporation (ACET)

| | | | | | | |
|---|---|---|---|---|---|---|
| **Client Name** | Charles Bouley | | | **LIFO Loss Total** | **$12,663.74** | |
| **Company Name** | Aceto Corporation | **90 Day Lookback Average** | $3.0328 | *Dura* **LIFO Total** | **$12,663.74** | |
| **Ticker Symbol** | ACET | | | **Shares Retained** | **2,400** | |
| **Class Period Start** | 8/25/2017 | | | | | |
| **Class Period End** | 4/18/2018 | | | | | |

**Account 1**

| Acquisition Date | Quantity of Securities Purchased | Price Per Security | Total Cost | Disposition Date | Securities Sold | Avg. Trading Price on Date of Sale* | Total Proceeds from Sale | Securities Held at Close of Class Period | Per Security Value | Retained Value | Total Proceeds/Loss (LIFO) | *Dura* LIFO** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/9/2018 | 200 | $10.7721 | $2,154.4200 | | | | | 200 | 3.032826087 | $ 606.57 | $1,547.8548 | $1,547.8548 |
| 1/26/2018 | 100 | $11.2625 | $1,126.2500 | | | | | 100 | 3.032826087 | $ 303.28 | $822.9674 | $822.9674 |
| 1/29/2018 | 100 | $11.4660 | $1,146.6000 | | | | | 100 | 3.032826087 | $ 303.28 | $843.3174 | $843.3174 |
| 1/30/2018 | 100 | $11.5080 | $1,150.8000 | | | | | 100 | 3.032826087 | $ 303.28 | $847.5174 | $847.5174 |
| 2/2/2018 | 500 | $8.1361 | $4,068.0500 | | | | | 500 | 3.032826087 | $ 1,516.41 | $2,551.6370 | $2,551.6370 |
| 2/7/2018 | 500 | $7.4262 | $3,713.1000 | | | | | 500 | 3.032826087 | $ 1,516.41 | $2,196.6870 | $2,196.6870 |
| 3/21/2018 | 200 | $7.4210 | $1,484.2000 | | | | | 200 | 3.032826087 | $ 606.57 | $877.6348 | $877.6348 |
| **TOTAL:** | **1,700** | | **$14,843.42** | | **-** | | **$0.00** | **1,700** | | **$ 5,155.80** | **$9,687.62** | **$9,687.62** |

**Account 2**

| Acquisition Date | Quantity of Securities Purchased | Price Per Security | Total Cost | Disposition Date | Securities Sold | Actual Sales Price Per Security | Avg. Trading Price on Date of Sale* | Total Proceeds from Sale | Securities Held at Close of Class Period | Per Security Value | Retained Value | Total Proceeds/Loss (LIFO) | *Dura* LIFO** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/11/2018 | 500 | $7.2836 | $3,641.8000 | | | | | | 500 | 3.032826087 | $ 1,516.41 | $2,125.3870 | $2,125.3870 |
| **TOTAL:** | **500** | | **$3,641.80** | | **-** | | | **$0.00** | **500** | | **$ 1,516.41** | **$2,125.39** | **$2,125.39** |

**Account 3**

| Acquisition Date | Quantity of Securities Purchased | Price Per Security | Total Cost | Disposition Date | Securities Sold | Actual Sales Price Per Security | Avg. Trading Price on Date of Sale* | Total Proceeds from Sale | Securities Held at Close of Class Period | Per Security Value | Retained Value | Total Proceeds/Loss (LIFO) | *Dura* LIFO** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/20/2018 | 200 | $7.2865 | $1,457.3000 | | | | | | 200 | 3.032826087 | $ 606.57 | $850.7348 | $850.7348 |
| **TOTAL:** | **200** | | **$1,457.30** | | **-** | | | **$0.00** | **200** | | **$ 606.57** | **$850.73** | **$850.73** |

* Post-class period sales valued using the greater of: (1) the average closing price between the end of the class period and the sales date; or (2) the actual sales price.

** Disregarding intra-class period gains and losses.

**Loss Chart**

Losses of Stephen Cornell in Aceto Corporation (ACET)

| Client Name | Stephen Cornell | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Company Name | Aceto Corporation | **90 Day Lookback Average** | $3.0328 | | | **LIFO Loss Total** | $8,425.00 | | | | | |
| Ticker Symbol | ACET | | | | | *Dura* **LIFO Total** | $8,425.00 | | | | | |
| Class Period Start | 8/25/2017 | | | | | **Shares Retained** | - | | | | | |
| Class Period End | 4/18/2018 | | | | | | | | | | | |

| **Acquisition Date** | **Quantity of Securities Purchased** | **Price Per Security** | **Total Cost** | **Disposition Date** | **Securities Sold** | **Actual Sales Price Per Security** | **Avg. Trading Price on Date of Sale\*** | **Total Proceeds from Sale** | **Securities Held at Close of Class Period** | **Per Security Value** | **Retained Value** | **Total Proceeds/Loss (LIFO)** | *Dura* **LIFO\*\*** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/6/2018 | 1,000 | $7.3100 | $7,310.0000 | 4/19/2018 | 1,000 | $2.9700 | | $2,970.0000 | - | 3.032826087 | $  - | $4,340.0000 | $4,340.0000 |
| 4/9/2018 | 500 | $7.0600 | $3,530.0000 | 4/19/2018 | 500 | $2.9700 | | $1,485.0000 | - | 3.032826087 | $  - | $2,045.0000 | $2,045.0000 |
| 4/9/2018 | 500 | $7.0500 | $3,525.0000 | 4/19/2018 | 500 | $2.9700 | | $1,485.0000 | - | 3.032826087 | $  - | $2,040.0000 | $2,040.0000 |
| **TOTAL:** | **2,000** | | **$14,365.00** | | **2,000** | | | **$2,970.00** | - | | $  - | **$8,425.00** | **$8,425.00** |

\* Post-class period sales valued using the greater of: (1) the average closing price between the end of the class period and the sales date; or (2) the actual sales price.

\*\* Disregarding intra-class period gains and losses.

# Exhibit C



# SHAREHOLDER ALERT: Levi & Korsinsky, LLP Notifies Shareholders It Filed a Complaint to Recover Losses Suffered by Aceto Corporation Investors and Sets a Lead Plaintiff Deadline of June 25, 2018 -- ACET

*April 24, 2018 18:35 ET* | **Source:** Levi & Korsinsky, LLP

NEW YORK, April 24, 2018 (GLOBE NEWSWIRE) -- The following statement is being issued by Levi & Korsinsky, LLP:

**To: All persons or entities who purchased or otherwise acquired common stock of Aceto Corporation** (NASDAQGS:ACET) <u>**between August 25, 2017 and April 18, 2018**</u>**. You are hereby notified** that Levi & Korsinsky has commenced the class action *Mulligan v. Aceto Corporation* (Case No. 9:18-cv-02425) in the USDC for the Eastern District of New York. To get more information **go to**:

**http://www.zlk.com/pslra-d/aceto-corporation?wire=3**

or contact Joseph E. Levi, Esq. either via email at jlevi@levikorsinsky.com or by telephone at (212) 363-7500, toll-free: (877) 363-5972. **There is no cost or obligation to you.**

The complaint alleges that throughout the Class Period defendants made false and/or misleading statements and/or failed to disclose that (i) the Company failed to implement and enforce proper internal control to identify the misapplication of cash; (ii) the Company would incur large non-cash intangible asset impairment charges; (iii) the Company lacked effective internal control over financial reporting; (iv) the Company's financial results for the fiscal year 2017 could not be relied upon; (v) the Company's fiscal 2018 financial guidance was overstated; and (vi) as a result of the foregoing, Aceto's public statements were materially false and misleading at all relevant times.

On April 18, 2018, Aceto issued a press release disclosing non-reliance on the previously issued 2018 fiscal year earnings guidance and the recording of non-cash intangible asset impairment charges, including goodwill, in the range of $230-$260 million.

**If you suffered a loss in Aceto you have until** <u>**June 25, 2018**</u> to request that the Court appoint you as lead plaintiff. Your ability to share in any recovery doesn't require that you serve as a lead plaintiff.

Levi & Korsinsky is a national firm with offices in New York, California, Connecticut, and Washington D.C. The firm's attorneys have extensive expertise and experience representing investors in securities litigation, and have recovered hundreds of millions of dollars for aggrieved shareholders. Attorney advertising. Prior results do not guarantee similar outcomes.

Levi & Korsinsky, LLP
Joseph E. Levi, Esq.
30 Broad Street - 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Toll Free:  (877) 363-5972
Fax: (212) 363-7171
www.zlk.com

---

**Newswire Distribution Network & Management**

- Home
- Newsroom
- RSS Feeds
- Legal
- Contact Us

ABOUT US

**GlobeNewswire** is one of the world's largest newswire distribution networks, specializing in the delivery of corporate press releases financial disclosures and multimedia content to the media, investment community, individual investors and the general public.

© 2018 GlobeNewswire, Inc. All Rights Reserved.

# Exhibit D

# LEVI&KORSINSKY LLP

| | |
|---|---|
| New York | 30 Broad Street |
| | 24th Floor |
| | New York, NY 10004 |
| | Toll Free 877-363-5972 |
| | T. 212-363-7500 |
| | F. 212-363-7171 |
| | |
| Washington, D.C. | 1101 30th Street NW |
| | Suite 115 |
| | Washington, D.C. 20007 |
| | T. 202-524-4290 |
| | F. 202-333-2121 |
| | |
| Connecticut | 733 Summer Street |
| | Suite 304 |
| | Stamford, CT 06901 |
| | T. 203-992-4523 |
| | |
| California | *Los Angeles* |
| | 445 South Figueroa Street |
| | 31st Floor |
| | Los Angeles, CA 90071 |
| | T. 213-985-7290 |
| | |
| | *San Francisco* |
| | 44 Montgomery Street |
| | Suite 650 |
| | San Francisco, CA 94104 |
| | T. 415-291-2420 |
| | F. 415-484-1294 |

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

---

### ABOUT THE FIRM

Levi & Korsinsky, LLP is a national law firm with decades of combined experience litigating complex securities, class, and consumer actions in state and federal courts throughout the country. Our main office is located in New York City and we also maintain offices in Connecticut, California, and Washington, D.C.

We represent the interests of aggrieved shareholders in class action and derivative litigation through the vigorous prosecution of corporations that have committed securities fraud and boards of directors who have breached their fiduciary duties. We have served as Lead and Co-Lead Counsel in many precedent–setting litigations, recovered millions of dollars for shareholders via securities fraud lawsuits, and obtained fair value, multi-billion dollar settlements in merger transactions.

We also represent clients in high-stakes consumer class actions against some of the largest corporations in America. Our legal team has a long and successful track record of litigating high-stakes, resource-intensive cases and consistently achieving results for our clients.

Our attorneys are highly skilled and experienced in the field of securities class action litigation. They bring a vast breadth of knowledge and skill to the table and, as a result, are frequently appointed Lead Counsel in complex shareholder and consumer litigations in various jurisdictions. We are able to allocate substantial resources to each case, reviewing public documents, interviewing witnesses, and consulting with experts concerning issues particular to each case. Our attorneys are supported by exceptionally qualified professionals including financial experts, investigators, and administrative staff, as well as cutting-edge technology and e-discovery systems. Consequently, we are able to quickly mobilize and produce excellent litigation results.  Our ability to try cases, and win them, results in substantially better recoveries than our peers.

We do not shy away from uphill battles – indeed, we routinely take on complex and challenging cases, and we prosecute them with integrity, determination, and professionalism.

---

*"...a model for how [the] great legal profession should conduct itself."*

Justice Timothy S. Driscoll in *Grossman v. State Bancorp, Inc.*,
Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)

---

### PRACTICE AREAS

#### Securities Fraud Class Actions

We prosecute claims on behalf of investors to recover losses suffered as a result of securities fraud, including the manipulation of a company's stock price by its executives, officers, directors, and advisors such as underwriters and accountants, through the issuance of false and misleading information. Our firm has been appointed Lead Counsel in numerous class actions filed in both federal and state courts across the country.

In *E-Trade Financial Corp. Securities Litigation*, No. 07-cv-8538 (S.D.N.Y. 2007), we were selected from a crowded field as Co-Lead Counsel for a landmark securities fraud class action that arose out of the mortgage crisis. Our successful prosecution of the case resulted in a $79 million recovery for the shareholder class.

We have been appointed Lead or Co-Lead Counsel in the following securities class actions:

- *Chahal v. Credit Suisse Group AG*, 1:18-cv-02268-AT (S.D.N.Y. June 21, 2018)

- *In re Bitconnect Sec. Litig.*, 9:18-cv-80086-DMM (S.D. Fla. June 19, 2018)

---

# LEVI&KORSINSKY LLP
NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

- *In re Aqua Metals Sec. Litig.*, 4:17-cv-07142-HSG (N.D. Cal. May 23, 2018)
- *Davy v. Paragon Coin, Inc.*, 4:18-cv-00671-JSW (N.D. Cal. May 10, 2018)
- *Rensel v. Centra Tech, Inc.*, 17-cv-24500-JLK (S.D. Fla. Apr. 11, 2018)
- *Cullinan v. Cemtrex, Inc.* 2:17-cv-01067 (E.D.N.Y. Mar. 3, 2018)
- *Emerson v. Genocea Biosciences, Inc.*, 1:17-cv-12137 (D. Mass. Feb. 2, 2018)
- *In re Navient Corporation Sec. Litig.*, 1:17-cv-08373-RBK-AMD (D.N.J. Feb. 2, 2018)
- *Abouzied v. Applied Optoelectronics, Inc.*, 4:17-cv-2399 (S.D. Tex. Jan. 22, 2018)
- *Huang v. Depomed, Inc.*, 3:17-cv-04830-JST (N.D. Cal. Dec. 8, 2017)
- *In re Regulus Therapeutics Inc. Sec. Litig.*, 3:17-cv-00182-BTM-RBB (D. Mass. Oct. 26, 2017)
- *Mahoney v. Foundation Medicine, Inc.*, 1:17-cv-11394-LTS (D. Mass. Oct. 20, 2017)
- *Murphy III v. JBS S.A.*, 1:17-cv-03084-ILG-RER (E.D.N.Y. Oct. 10, 2017)
- *Goldsmith v. Weibo Corporation*, 2:17-cv-04728-SRC-CLW (D.N.J. Sept. 28, 2017)
- *Waterford Township Police and Fire Retirement System v. Mattel, Inc.*, 2:17-cv-04732-VAP-KS (C.D. Cal. Sept. 9, 2017)
- *In re U.S. Steel Consolidated Cases,* Civil Action No. 17-559-CB (W.D. Pa. Aug. 16, 2017)
- *Hinshaw v. Neurotrope, Inc.*, 1:17-cv-03718-LGS (S.D.N.Y. Aug. 10, 2017)
- *Ohren v. Amyris, Inc.*, 3:17-cv-002210-WHO (N.D. Cal. Aug. 8, 2017)
- *Rodriguez v. Gigamon Inc.*, 5:17-cv-00434-EJD (N.D. Cal. July 26, 2017)
- *Beezley v. Fenix Parts, Inc.*, 2:17-cv-00233 (D.N.J. June 28, 2017)
- *M & M Hart Living Trust v. Global Eagle Entertainment, Inc.*, 2:17-cv-01479 (C.D. Cal. June 26, 2017)
- *Maurer v. Argos Therapeutics, Inc.*, 1:17-cv-00216 (M.D.N.C. June 23, 2017)
- *Ruedelstei v. U.S. Concrete, Inc.*, 4:17-cv-266 (N.D. Tex. June 22, 2017)
- *In re Aratana Therapeutics, Inc. Sec. Litig.*, 1:17-cv-880 (S.D.N.Y. June 6, 2017)
- *In re Insys Therapeutics, Inc.*, 1:17-cv-1954 (S.D.N.Y. May 31, 2017)
- *Clevlen v. Anthera Pharmaceuticals, Inc.*, 3:17-cv-00715 (N.D. Cal. May 18, 2017)
- *In re Agile Therapeutics, Inc. Sec. Litig.*, 3:17-cv-00119-AET-LHG (D.N.J. May 15, 2017)
- *Chupka v. Pearson Plc.*, 1:17-cv-1422 (S.D.N.Y. May 9, 2017)
- *Roper v. SITO Mobile Ltd.*, 2:17-cv-01106-ES-MAH (D.N.J. May 8, 2017)
- *In re Egalet Corporation Sec. Litig.*, 2:17-cv-00617 (E.D.Pa. May 1, 2017)
- *In re Illumina, Inc. Sec. Litig.*, 3:16-cv-03044-L-KSC (S.D. Cal. Mar. 30, 2017)
- *In re Arrowhead Pharmaceuticals, Inc.*, 2:16-cv-08505-PSG-PJW (C.D. Cal. Mar. 8, 2017)
- *Michael Gregory v ProNAi*, 1:16-cv-08703-PAE (Mass. Sup. Ct. Feb. 1, 2017)
- *Rossbach v. VASCO Data Security Int'l Inc.*, 1:15-cv-06605 (N.D. Ill. Dec. 1, 2016)
- *In re PTC Therapeutics, Inc.*, 2:16-cv-01224-KM-MAH (D.N.J. Nov. 14, 2016)
- *Schwab v. E*Trade Financial Corporation,* 1:16-cv-05891-JGK (S.D.N.Y. Nov. 9, 2016)
- *Wilbush v. Ambac Financial Group, Inc.*, Civ. No. 1:16-cv-05076 RMB (S.D.N.Y. Oct. 11, 2016)
- *The TransEnterix Investor Group v. TransEnterix, Inc.*,  5:16-cv-00313-D (E.D.N.C. Aug. 30, 2016)
- *Magro v. Freeport-McMoran Inc.*, 2:16-cv-00186-DJH (D. Ariz. Aug. 19, 2016)

# LEVI&KORSINSKY LLP
NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

- *Gormley v. magicJack VocalTec Ltd.*, 1:16-cv-01869-VM (S.D.N.Y. July 12, 2016)
- *Azar v. Blount Int'l Inc.*, Civ. No. 3:16-cv-00483-SI (D. Or. July 1, 2016)
- *Plumley v. Sempra Energy*, 3:16-cv-00512-BEN-RBB (S.D. Cal. June 6, 2016)
- *Francisco v. Abengoa, S.A.*, 1:15-cv-06279-ER (S.D.N.Y. May 24, 2016)
- *Harrington v. Tetraphase Pharmaceuticals, Inc.*, Civ. No. 1:16-cv-10133-LTS (D. Mass. May 13, 2016)
- *De Vito v. Liquid Holdings Group, Inc.*, 2:15-cv-06969-KM-JBC (D.N.J. Apr. 7, 2016)
- *In re OvaScience Inc. Stockholder Litig.*, C.A. No. 15-3087-BLS2 (Mass. Super. Ct. Apr. 2, 2016)
- *Ford v. Natural Health Trends Corp.*, 2:16-cv-00255-TJH-AFM (C.D. Cal. Mar. 29, 2016)
- *Bai v. TCP International Holdings Ltd.*, 1:16-cv-00102-DCN (N.D. Ohio Mar. 18, 2016)
- *Meier v. Checkpoint Systems, Inc.*, 1:15-cv-08007 (D.N.J. Jan. 1, 2016)
- *Messner v. USA Technologies, Inc.*, 2:15-cv-05427-MAK (E.D. Pa. Dec. 15, 2015)
- *Levin v. Resource Capital Corp.*, 1:15-cv-07081-LLS (S.D.N.Y. Nov. 24, 2015)
- *Messerli v. Root 9B Technologies, Inc.*, 1:15-cv-02152-WYD (D. Colo. Oct. 14, 2015)
- *Martin v. Altisource Residential Corp.*, 1:15-cv-00024 (D.V.I. Oct. 7, 2015)
- *Paggos v. Resonant, Inc.*, 2:15-cv-01970 SJO (VBKx) (C.D. Cal. Aug. 7, 2015)
- *Fragala v. 500.com Ltd.*, 2:15-cv-01463-MMM (C.D. Cal. July 7, 2015)
- *Stevens v. Quiksilver Inc.*, 8:15-cv-00516-JVS-JCGx. (C.D. Cal. June 26, 2015)
- *In re Ocean Power Technologies, Inc. Sec. Litig.*, 14-3799 (FLW) (LHG) (D.N.J. Mar. 17, 2015)
- *In re Energy Recovery Inc. Sec. Litig.*, 3:15-cv-00265 (N.D. Cal. Jan. 20, 2015)
- *Klein v. TD Ameritrade Holding Corp.*, 3:14-cv-05738 (D. Neb. Dec. 2, 2014)
- *In re China Commercial Credit Sec. Litig.*, 1:15-cv-00557 (ALC) (D.N.J. Oct. 31, 2014)
- *In re Violin Memory, Inc. Sec. Litig.*, 4:13-cv-05486-YGR (N.D. Cal. Feb. 26, 2014)
- *Berry v. Kior, Inc.*, 4:13-cv-02443 (S.D. Tex. Nov. 25, 2013)
- *In re OCZ Technology Group, Inc. Sec. Litig.*, 3:12-cv-05265-RS (N.D. Cal. Jan. 4, 2013)
- *In re Digital Domain Media Group, Inc. Sec. Litig.*, 12-CIV-14333 (JEM) (S.D. Fla. Sept. 20, 2012)
- *Zaghian v. THQ, Inc.*, 2:12-cv-05227-GAF-JEM (C.D. Cal. Sept. 14, 2012)

## Derivative, Corporate Governance & Executive Compensation

We protect shareholders by enforcing the obligations of corporate fiduciaries. We are a leader in achieving important corporate governance reforms for the benefit of shareholders. Our efforts include the prosecution of derivative actions in courts around the country, making pre-litigation demands on corporate boards to investigate misconduct and taking remedial action for the benefit of shareholders. In situations where a company's board responds to a demand by commencing its own investigation, we frequently work with the board's counsel to assist with and monitor the investigation, ensuring that the investigation is thorough and conducted in an appropriate manner.

We also have successfully prosecuted derivative and class action cases to hold corporate executives and board members accountable for various abuses and to help preserve corporate assets through long-lasting and meaningful corporate governance changes, thus ensuring that prior misconduct does not reoccur. We have extensive experience challenging executive compensation, recapturing assets for the benefit of companies and their shareholders. In addition, we have secured corporate governance

# LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

changes to ensure that executive compensation is consistent with shareholder-approved compensation plans, company performance, and federal securities laws.

In *MacCormack v. Groupon, Inc.*, C.A. No. 13-940-GMS (D. Del. 2013), we caused the cancellation of $2.3 million worth of restricted stock units granted to a company executive in violation of a shareholder-approved plan, as well as the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan; we also obtained additional material disclosures to shareholders in connection with a shareholder vote on amendments to the plan.

In *Scherer v. Lu*, (Diodes Incorporated), No. 13-358-GMS, 2014 U.S. Dist. LEXIS 196440 (D. Del. 2014), we secured the cancellation of $4.9 million worth of stock options granted to the company's CEO in violation of a shareholder-approved plan, and obtained additional disclosures to enable shareholders to cast a fully-informed vote on the adoption of a new compensation plan at the company's annual meeting.

In *Edwards v. Benson*, (Headwaters Incorporated), (D. Utah 2014), we caused the cancellation of $3.2 million worth of stock appreciation rights granted to the company's CEO in violation of a shareholder-approved plan and the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan.

In *Pfeiffer v. Begley*, (DeVry, Inc.), (Cir. Ct. DuPage Cty., Ill. 2012), we secured the cancellation of $2.1 million worth of stock options granted to the company's CEO in 2008-2012 in violation of a shareholder-approved incentive plan.

In *Basch v. Healy* (D. Del. 2014), we obtained a cash payment to the company to compensate for equity awards issued to officers in violation of the company's compensation plan and caused significant changes in the company's compensation policies and procedures designed to ensure that future compensation decisions are made consistent with the company's plans, charters and policies. We also impacted the board's creation of a new compensation plan and obtained additional disclosures to stockholders concerning the board's administration of the company's plan and the excess compensation.

In *Pfeiffer v. Toll* (Toll Brothers Derivative Litigation), C.A. No. 4140-VCL (Del. Ch. 2010), we prevailed in defeating defendants' motion to dismiss in a case seeking disgorgement of profits that company insiders reaped through a pattern of insider-trading. After extensive discovery, we secured a settlement returning $16.25 million in cash to the company, including a significant contribution from the individuals who traded on inside information.

In *Kleba v. Dees*, C.A. 3-1-13 (Tenn. Cir. Ct. Knox Cty. 2014), we recovered approximately $9 million in excess compensation given to insiders and the cancellation of millions of shares of stock options issued in violation of a shareholder-approved compensation plan. In addition, we obtained the adoption of formal corporate governance procedures designed to ensure that future compensation decisions are made independently and consistent with the plan.

In *Lopez v. Nudelman*, (CTI BioPharma Corp.), 14-2-18941-9 SEA (Wash. Super. Ct. King Cnty. 2015), we recovered approximately $3.5 million in excess compensation given to directors and obtained the adoption of a cap on director compensation, as well as other formal corporate governance procedures designed to implement best practices with regard to director and executive compensation.

In *In re i2 Technologies, Inc. Shareholder Litigation*, C.A. No. 4003-CC (Del. Ch. 2008), as Counsel for the Lead Plaintiff, we challenged the fairness of certain asset sales made by the company and secured a $4 million recovery.

In *In re Activision, Inc. Shareholder Derivative Litigation*, No. 06-cv-04771-MRP (JTLX) (C.D. Cal. 2008), we were Co-Lead Counsel and challenged executive compensation related to the dating of options. This effort resulted in the recovery of more than $24 million in excessive compensation and expenses, as well as the implementation of substantial corporate governance changes.

In *In re Corinthian Colleges, Inc. Shareholder Derivative Litigation*, 8:06cv777-AHS (C.D. Cal. 2006), we were Co-Lead Counsel and achieved a $2 million benefit for the company, resulting in the re-pricing of executive stock options and the establishment of extensive corporate governance changes.

In *Pfeiffer v. Alpert (Beazer Homes Derivative Litigation)*, C.A. No. 10-cv-1063-PD (D. Del. 2010), we successfully challenged certain aspects of the company's executive compensation structure, ultimately forcing the company to improve its compensation practices.

In *In re Cincinnati Bell, Inc., Derivative Litigation*, Case No. A1105305 (Ohio, Hamilton Cty. 2012), we achieved significant corporate governance changes and enhancements related to the company's compensation policies and practices in order to better align executive compensation with company performance. Reforms included the formation of an entirely independent compensation committee with staggered terms and term limits for service.

In *Woodford v. Mizel (M.D.C. Holdings, Inc.)*, 1:2011cv00879 (D. Del. 2012), we challenged excessive executive compensation, ultimately obtaining millions of dollars in reductions of that compensation, as well as corporate governance enhancements designed to implement best practices with regard to executive compensation and increased shareholder input.

In *Bader v. Goldman Sachs Group, Inc.*, No. 10-4364-cv, 2011 WL 6318037 (2d Cir. Dec. 19, 2011), we persuaded the Second Circuit Court of Appeals to reverse the District Court's dismissal of derivative claims seeking to recover excessive compensation granted to officers and directors of Goldman Sachs.

In *In re Google Inc. Class C Shareholder Litigation*, C.A. No. 7469-CS (Del. Ch. 2012), we challenged a stock recapitalization transaction to create a new class of nonvoting shares and strengthen the corporate control of the Google founders. We helped achieve an agreement that provided an adjustment payment to shareholders in the event of certain discounts in the price of Google stock, and provided enhanced board scrutiny of the Google founders' ability to transfer stock, including the implementation of a new procedure for a waiver or modification of the founders' Transfer Restriction Agreement.

## Mergers & Acquisitions

We have achieved an impressive record in obtaining injunctive relief for shareholders and are one of the premier law firms engaged in mergers & acquisitions and takeover litigation, where we strive to maximize shareholder value. In these cases, we regularly fight to obtain settlements that enable the submission of competing buyout bid proposals, thereby increasing consideration for shareholders.

We have litigated landmark cases that have altered the landscape of mergers & acquisitions law and resulted in multi-million dollar awards to aggrieved shareholders.

In *In re Great Wolf Resorts, Inc. Shareholder Litigation*, C.A. No. 7328-VCN (Del. Ch. 2012), we achieved tremendous results for shareholders, including partial responsibility for a $93 million (57%) increase in merger consideration and the waiver of several "don't-ask-don't-waive" standstill agreements that were restricting certain potential bidders from making a topping bid for the company.

In *In re CNX Gas Corp. Shareholder Litigation*, 4 A.3d 397 (Del. Ch. 2010), as Plaintiffs' Executive Committee Counsel, we obtained a landmark ruling from the Delaware Chancery Court that set forth a unified standard for assessing the rights of shareholders in the context of freeze-out transactions and ultimately led to a common fund recovery of over $42.7 million for the company's shareholders.

In *In re Talecris Biotherapeutics Holdings Shareholder Litigation*, C.A. No. 5614-VCL (Del. Ch. 2010), we served as counsel for one of the Lead Plaintiffs, achieving a settlement that increased the merger consideration to Talecris shareholders by an additional 500,000 shares of the acquiring company's stock and providing shareholders with appraisal rights.

# LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

In *In re Minerva Group LP v. Mod-Pac Corp.*, Index No. 800621/2013 (N.Y. Sup. Ct. Erie Cty. 2013), we obtained a settlement in which defendants increased the price of an insider buyout from $8.40 to $9.25 per share, representing a recovery of $2.4 million for shareholders.

In *Stephen J. Dannis v. J.D. Nichols*, C.A. No. 13-CI-00452 (Ky. Cir. Ct. Jefferson Cty. 2014), as Co-Lead Counsel, we obtained a 23% increase in the merger consideration (from $7.50 to $9.25 per unit) for shareholders of NTS Realty Holdings Limited Partnership. The total benefit of $7.4 million was achieved after two years of hard-fought litigation, challenging the fairness of the going-private, squeeze-out merger by NTS's controlling unitholder and Chairman, Defendant Jack Nichols. The unitholders bringing the action alleged that Nichols' proposed transaction grossly undervalued NTS's units. The 23% increase in consideration was a remarkable result given that on October 18, 2013, the Special Committee appointed by the Board of Directors had terminated the existing merger agreement with Nichols. Through counsel's tenacious efforts the transaction was resurrected and improved.

In *In re Craftmade International, Inc. Shareholders Litigation*, C.A. No. 6950-VCL (Del. Ch. 2011), we served as Co-Lead Counsel and successfully obtained an injunction requiring numerous corrective disclosures and a "Fort Howard" release announcing that the Craftmade Board of Directors was free to conduct discussions with any other potential bidders for the company.

In *Dias v. Purches*, C.A. No. 7199-VCG (Del. Ch. 2012), Vice Chancellor Sam Glasscock, III of the Delaware Chancery Court partially granted shareholders' motion for preliminary injunction and ordered that defendants correct a material misrepresentation in the proxy statement related to the acquisition of Parlux Fragrances, Inc. by Perfumania Holding, Inc.

In *Forgo v. Health Grades, Inc.*, C.A. No. 5716-VCS (Del. Ch. 2010), as Co-Lead Counsel, our attorneys established that defendants had likely breached their fiduciary duties to Health Grades' shareholders by failing to maximize value as required under *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986). We secured an agreement with defendants to take numerous steps to seek a superior offer for the company, including making key modifications to the merger agreement, creating an independent committee to evaluate potential offers, extending the tender offer period, and issuing a "Fort Howard" release affirmatively stating that the company would participate in good faith discussions with any party making a bona fide acquisition proposal.

In *Chen v. Howard-Anderson*, C.A. No 5878-VCL (Del. Ch. 2010), we represented shareholders in challenging the merger between Occam Networks, Inc. and Calix, Inc., obtaining a preliminary injunction against the merger after showing that the proxy statement by which the shareholders were solicited to vote for the merger was materially false and misleading.  We then took the case to trial and recovered $35 million for the shareholders.

In *In re Pamrapo Bancorp Shareholder Litigation*, Docket C-89-09 (N.J. Ch. Hudson Cty. 2011) & HUD-L-3608-12 (N.J. Law Div. Hudson Cty. 2015), we defeated defendants' motion to dismiss shareholders' class action claims for money damages and a motion for summary judgment, ultimately securing a settlement recovering $1.95 million for the Class plus the Class's legal fees and expenses up to $1 million (representing an increase in consideration of 15-23% for the members of the Class). The case stemmed from the sale of Pamrapo Bancorp to BCB Bancorp at an allegedly unfair price through an unfair process. In addition to obtaining this recovery, the Court also found that our efforts substantially benefited the shareholders by obtaining supplemental disclosures for shareholders ahead of the merger vote.

In *In re Complete Genomics, Inc. Shareholder Litigation*, C.A. No. 7888-VCL (Del. Ch. 2012), we obtained preliminary injunctions of corporate merger and acquisition transactions, and Plaintiffs successfully enjoined a "don't-ask-don't-waive" standstill agreement.

In *In re Integrated Silicon Solution, Inc. Stockholder Litigation*, Lead Case No. 115CV279142 (Super. Ct. Santa Clara, CA 2015), we won an injunction requiring corrective disclosures concerning "don't-ask-don't-waive" standstill agreements and certain financial advisor conflicts of interests, and contributed to the

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

integrity of a post-agreement bidding contest that led to an increase in consideration from $19.25 to $23 per share, a bump of almost 25 percent.

In *In re Bluegreen Corp. Shareholder Litigation*, Case No. 502011CA018111 (Cir. Ct. for Palm Beach Cty., FL), as Co-Lead Counsel, we achieved a common fund recovery of $36.5 million for minority shareholders in connection with a management-led buyout, increasing gross consideration to shareholders in connection with the transaction by 25% after three years of intense litigation.

### Consumer Litigation

Levi & Korsinsky works hard to protect consumers by holding corporations accountable for defective products, false and misleading advertising, overcharging, and unfair or deceptive business practices.

Our litigation and class action expertise combined with our in-depth understanding of federal and state laws enables us to fight for consumers who purchased defective products, including automobiles, appliances, electronic goods, and home products, as well as consumers who were deceived by consumer service providers such as banks and insurance, credit card, or phone companies.

> *"The quality of the representation... has been extremely high, not just in terms of the favorable outcome in terms of the substance of the settlement, but in terms of the diligence and the hard work that has gone into producing that outcome."*
>
> The Honorable Joseph F. Bianco, in *Landes v. Sony Mobile Communications*, 17-cv-02264-JFB-SIL (E.D.N.Y. Dec. 1, 2017)

In *NV Security, Inc. v. Fluke Networks*, Case No. CV05-4217 GW (SSx) (C.D. Cal. 2005), we negotiated a settlement on behalf of purchasers of Test Set telephones in an action alleging that the Test Sets contained a defective 3-volt battery. We benefited the consumer class by obtaining the following relief: free repair of the 3-volt battery, reimbursement for certain prior repair, an advisory concerning the 3-volt battery on the outside of packages of new Test Sets, an agreement that defendants would cease to market and/or sell certain Test Sets, and a 42-month warranty on the 3-volt battery contained in certain devices sold in the future.

In *Bustos v. Vonage America, Inc.*, Case No. 06 Civ. 2308 (HAA) (D.N.J. 2006), our firm achieved a common fund settlement of $1.75 million on behalf of class members who purchased Vonage Fax Service in an action alleging that Vonage made false and misleading statements in the marketing, advertising, and sale of Vonage Fax Service by failing to inform consumers that the protocol Defendant used for the Vonage Fax Service was unreliable and unsuitable for facsimile communications.

In *Masterson v. Canon U.S.A.*, Case No. BC340740 (Cal. Super. Ct. L.A. Cty. 2006), we represented purchasers of Cannon SD Cameras in an action alleging that liquid crystal display ("LCD") screens on Cannon SD Cameras cracked, broke, or otherwise malfunctioned, and obtained refunds for certain broken LCD repair charges and important changes to the product warranty.

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

**OUR ATTORNEYS**

### *Managing Partners*

### Eduard Korsinsky

For more than 20 years Eduard Korsinsky has represented clients in securities cases, derivative actions, consumer fraud, and complex commercial matters. He has been named a New York "Super Lawyer" by Thomson Reuters and is recognized as one of the country's leading practitioners in class and derivative matters. Mr. Korsinsky also has served as an editor of the American Bar Association's Securities Litigation Section's newsletter and is a member of the American Bar Association's Derivative Suits Subcommittee.

Cases which he has litigated include:

- *E-Trade Financial Corp. Sec. Litig.*, No. 07-cv-8538 (S.D.N.Y. 2007), $79 million recovery
- *In re Activision, Inc. S'holder Derivative Litig.*, No. 06-cv-04771-MRP (JTLX)(C.D. Cal. 2006), recovered $24 million in excess compensation
- *Corinthian Colleges, Inc., S'holder Derivative Litig.*, SACV-06-0777-AHS (C.D. Cal. 2009), obtained re-pricing of executive stock options providing more than $2 million in benefits to the company
- *Pfeiffer v. Toll,* C.A. No. 4140-VCL (Del. Ch. 2010), $16.25 million in insider trading profits recovered
- *In re Net2Phone, Inc. S'holder Litig.*, Case No. 1467-N (Del. Ch. 2005), obtained increase in tender offer price from $1.70 per share to $2.05 per share
- *In re Pamrapo Bancorp S'holder Litig.*, C-89-09 (N.J. Ch. Hudson Cty. 2011) & HUD-L-3608-12 (N.J. Law Div. Hudson Cty. 2015), obtained supplemental disclosures following the filing of a motion for preliminary injunction, pursued case post-closing, defeated motion for summary judgment, and obtained an increase in consideration of between 15-23% for the members of the Class
- *In re Google Inc. Class C S'holder Litig.*, C.A. No. 19786 (Del. Ch. 2012), obtained payment ladder indemnifying investors up to $8 billion in losses stemming from trading discounts expected to affect the new stock
- *Woodford v. M.D.C. Holdings, Inc.*, 1:2011cv00879 (D. Del. 2012), one of a few successful challenges to say on pay voting, recovered millions of dollars in reductions to compensation
- *i2 Technologies, Inc. S'holder Litig.*, C.A. No. 4003-CC (Del. Ch. 2008), $4 million recovered, challenging fairness of certain asset sales made by the company
- *Pfeiffer v. Alpert (Beazer Homes)*, C.A. No. 10-cv-1063-PD (D. Del. 2011), obtained substantial revisions to an unlawful executive compensation structure
- *In re NCS Healthcare, Inc. Sec. Litig.*, C.A. CA 19786, (Del. Ch. 2002), case settled for approximately $100 million
- *Paraschos v. YBM Magnex Int'l, Inc.*, No. 98-CV-6444 (E.D. Pa.), United States and Canadian cases settled for $85 million Canadian

Education

- New York University School of Law, LL.M. Master of Law(s) Taxation (1997)

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

- Brooklyn Law School, J.D. (1995)
- Brooklyn College, B.S., Accounting, *summa cum laude* (1992)

Admissions

- New York (1996)
- New Jersey (1996)
- United States District Court for the Southern District of New York (1998)
- United States District Court for the Eastern District of New York (1998)
- United States Court of Appeals for the Second Circuit (2006)
- United States Court of Appeals for the Third Circuit (2010)
- United States District Court for the Northern District of New York (2011)
- United States District Court of New Jersey (2012)
- United States Court of Appeals for the Sixth Circuit (2013)

Publications

- Delaware Court Dismisses Compensation Case Against Goldman Sachs, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011)
- SDNY Questions SEC Settlement Practices in Citigroup Settlement, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011)
- New York Court Dismisses Shareholder Suit Against Goldman Sachs, ABA Section of Securities Litigation News & Developments (Oct. 31, 2011)

## Joseph E. Levi

Joseph E. Levi is a central figure in shaping and managing the Firm's securities litigation practice. Mr. Levi has been lead or co-lead in dozens of cases involving the enforcement of shareholder rights in the context of mergers & acquisitions and securities fraud. In addition to his involvement in class action litigation, he has represented numerous patent holders in enforcing their patent rights in areas including computer hardware, software, communications, and information processing, and has been instrumental in obtaining substantial awards and settlements.

Mr. Levi and the attorneys achieved success on behalf of the former shareholders of Occam Networks, Inc. in litigation challenging the Company's merger with Calix, Inc., obtaining a preliminary injunction against the merger due to material representations and omissions in the proxy statement by which the shareholders were solicited to vote. See **Chen v. Howard-Anderson**, No. 5878-VCL (Del. Ch. Jan. 24, 2011). Vigorous litigation efforts continued to trial, recovering $35 million for the shareholders.

Another victory for Mr. Levi and the attorneys was in litigation challenging the acquisition of Health Grades, Inc. by affiliates of Vestar Capital Partners, L.P., where it was successfully demonstrated to the Delaware Court of Chancery that the defendants had likely breached their fiduciary duties to Health Grades' shareholders by failing to maximize value as required by **Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.**, 506 A.2d 173 (Del. 1986). See **Weigard v. Hicks**, No. 5732-VCS (Del. Ch. Sept. 3, 2010). This ruling was used to reach a favorable settlement in which defendants agreed to a host of measures designed to increase the likelihood of superior bid. Vice Chancellor Strine "applaud[ed]" the litigation team for their preparation and the extraordinary high-quality of the briefing. He and the attorneys also played a

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

prominent role in the matter of *In re CNX Gas Corp. Shareholders Litigation*, C.A. No. 5377-VCL (Del. Ch. 2010), in which plaintiffs recovered a common fund of over $42.7 million for stockholders.

Education

- Brooklyn Law School, J.D., *magna cum laude* (1995)
- Polytechnic University, B.S., *summa cum laude* (1984); M.S. (1986)

Admissions

- New York (1996)
- New Jersey (1996)
- United States Patent and Trademark Office (1997)
- United States District Court for the Southern District of New York (1997)
- United States District Court for the Eastern District of New York (1997)

---

*"[The court] appreciated very much the quality of the argument...,*
*the obvious preparation that went into it, and the ability of counsel..."*

Vice Chancellor Sam Glasscock, III in *Dias v. Purches*, C.A. No. 7199-VCG (Del. Ch. Apr. 5, 2012)

---

## *Partners*

### Adam M. Apton

Adam M. Apton focuses his practice on investor protection. He represents institutional investors and high net worth individuals in securities fraud, corporate governance, and shareholder rights litigation. Prior to joining the firm, Mr. Apton defended corporate clients against complex mass tort, commercial, and products liability lawsuits. Thomson Reuters selected Mr. Apton to the Super Lawyers Washington, DC "Rising Stars" list for the years 2016 and 2017, a distinction given to only the top 2.5% of lawyers.

Mr. Apton currently serves as court-appointed lead counsel in several class action lawsuits throughout the United States:

- *Carlton v. Cannon (KiOR Inc.),* 4:13-cv-02443 (LHR) (S.D. Tex.), federal class action securities fraud lawsuit against former officers of biofuel firm KiOR, Inc., featured on CBS's "60 Minutes"
- *In re Energy Recovery Inc. Sec. Litig.*, 3:15-cv-00265 (N.D. Cal.), federal class action lawsuit alleging securities fraud violations against company and former chief executive officer for false projections and reports of finances and operations
- *Cortina v. Anavex Life Sciences Corp.*, 1:15-cv-10162-JMF (S.D.N.Y.), federal class action lawsuit for market manipulation against biopharmaceutical company for promoting itself as extraordinary investment opportunity based on supposed cure for Alzheimer's Disease
- *Rux v. Meyer (Sirius XM Holdings Inc.)*, No. 11577 (Del. Ch.), shareholder rights lawsuit against SiriusXM's Board of Directors for engaging in harmful related-party transactions with controlling stockholder, John. C. Malone and Liberty Media Corp.

## LEVI&KORSINSKY LLP
NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

- ***Stadnick v. Vivint Solar, Inc.***, No. 16-65 (2d Cir.), federal class action lawsuit alleging violations under the Securities Act of 1933 in connection with misleading initial public offering documents

Mr. Apton's past representations and successes include:

- ***In re Violin Memory Inc. Sec. Litig.***, 4: 13-cv-05486-YGR (N.D. Cal.) (settlement of $7.5 million over allegations of false statements in initial public offering documents concerning sales to government sector)
- ***Roby v. Ocean Power Technologies, Inc.***, 3:14-cv-3799-FLW-LHG (D.N.J.) (settlement fund of $3 million and 380,000 shares of common stock in response to allegations over failed technology)
- ***Maritime Asset Management, LLC v. NeurogesX, Inc.***, 4: 12-cv-05034-YGR (N.D. Cal.) (recovery of $1.25 million on behalf of private offering class)
- ***Monson v. Friedman (Associated Estates Realty Corp.)***, 1:14-cv-01477-PAG (N.D. Ohio) (revoking improperly awarded stock options and implementing corporate governance preventing reoccurrence of similar violations)
- ***In re OCZ Technology Group, Inc. Sec. Litig.***, 3:12-cv-05265-RS (N.D. Cal.) (settlement fund of $7.5 million over allegations of accounting fraud relating to improper revenue recognition)

Education

- New York Law School, J.D., *cum laude* (2009), where he served as Articles Editor of the *New York Law School Law Review* and interned for the New York State Supreme Court, Commercial Division
- University of Minnesota, B.A., Entrepreneurial Management & Psychology, With Distinction (2006)

Admissions

- New York (2010)
- United States District Court for the Southern District of New York (2010)
- United States District Court for the Eastern District of New York (2010)
- District of Columbia (2013)
- United States Court of Appeals for the Ninth Circuit (2015)
- United States Court of Appeals for the Second Circuit (2016)
- United States Court of Appeals for the Third Circuit (2016)
- California (2017)
- United States District Court for the Northern District of California (2017)
- United States District Court for the Central District of California (2017)
- United States District Court for the Southern District of California (2017)

### Donald J. Enright

During his 20 years as a litigator and trial lawyer, Mr. Enright has handled matters in the fields of securities, commodities, consumer fraud and commercial litigation, with a particular emphasis on shareholder M&A and securities fraud class action litigation. He has been named as a Washington, D.C. "Super Lawyer" by Thomson Reuters for several consecutive years, and as one of Washington's "Top Lawyers" by *Washingtonian* magazine.

Mr. Enright has shown a track record of achieving victories in federal trials and appeals, including:

- *Nathenson v. Zonagen, Inc.*, 267 F. 3d 400, 413 (5th Cir. 2001)

- *SEC v. Butler*, 2005 U.S. Dist. LEXIS 7194 (W.D. Pa. April 18, 2005)

- *Belizan v. Hershon*, 434 F. 3d 579 (D.C. Cir. 2006)

Most recently, as Co-Lead Counsel in *In re Bluegreen Corp. Shareholder Litigation*, Case No. 502011CA018111 (Cir. Ct. for Palm Beach Cnty., Fla.), Mr. Enright achieved a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders. Similarly, in *In re CNX Gas Corp. Shareholders Litigation*, C.A. No. 53377-VCL (Del. Ch. 2010), in which Levi & Korsinsky served upon plaintiffs' Executive Committee, Mr. Enright helped obtain the recovery of a common fund of over $42.7 million for stockholders.

Mr. Enright has also played a leadership role in numerous securities and shareholder class actions from inception to conclusion. His leadership has produced multi-million dollar recoveries in shareholder class actions involving such companies as:

- Allied Irish Banks PLC

- Iridium World Communications, Ltd.

- En Pointe Technologies, Inc.

- PriceSmart, Inc.

- Polk Audio, Inc.

- Meade Instruments Corp.

- Xicor, Inc.

- Streamlogic Corp.

- Interbank Funding Corp.

- Riggs National Corp.

- UTStarcom, Inc.

- Manugistics Group, Inc.

Mr. Enright also has a successful track record of obtaining injunctive relief in connection with shareholder M&A litigation, having won preliminary injunctions or other injunctive relief in the cases of:

- *In re Portec Rail Products, Inc. S'holder Litig.*, G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)

- *In re Craftmade International, Inc. S'holder Litig.*, C.A. No. 6950-VCL (Del. Ch. 2011)

- *Dias v. Purches*, C.A. No. 7199-VCG (Del. Ch. 2012)

- *In re Complete Genomics, Inc. S'holder Litig.*, C.A. No. 7888-VCL (Del. Ch. 2012)

- *In re Integrated Silicon Solution, Inc. Stockholder Litig.*, Lead Case No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)

Mr. Enright has also demonstrated considerable success in obtaining deal price increases for shareholders in M&A litigation. As Co-Lead Counsel in the matter of *In re Great Wolf Resorts, Inc. Shareholder Litigation*, C.A. No. 7328-VCN (Del. Ch. 2012), Mr. Enright was partially responsible for a $93 million (57%) increase in merger consideration and waiver of several "don't-ask-don't-waive" standstill agreements that were precluding certain potential bidders from making a topping bid for the company.

## LEVI&KORSINSKY LLP
NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

Similarly, Mr. Enright served as Co-Lead Counsel in the case of **Berger v. Life Sciences Research, Inc.**, No. SOM-C-12006-09 (NJ Sup. Ct. 2009), which caused a significant increase in the transaction price from $7.50 to $8.50 per share, representing additional consideration for shareholders of approximately $11.5 million.

And most recently, representing a substantial institutional investor, Mr. Enright served as Co-Lead Counsel in **Minerva Group, LP v. Keane**, Index No. 800621/2013 (NY Sup. Ct. of Erie Cnty.), and obtained a settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share.

The courts have consistently recognized and praised the quality of Mr. Enright's work. In **In re Interbank Funding Corp. Securities Litigation** (D.D.C. 02-1490), Judge Bates of the United States District Court for the District of Columbia observed that Mr. Enright had "...skillfully, efficiently, and zealously represented the class, and... worked relentlessly throughout the course of the case."

Similarly, in **Freeland v. Iridium World Communications**, LTD, (D.D.C. 99-1002), Judge Nanette Laughrey stated that Mr. Enright had done "an outstanding job" in connection with the recovery of $43.1 million for the shareholder class.

And, in the matter of **Osieczanek v. Thomas Properties Group**, C.A. No. 9029-VCG (Del. Ch. 2013), Vice Chancellor Sam Glasscock of the Chancery Court of Delaware observed that "it's always a pleasure to have counsel [like Mr. Enright] who are articulate and exuberant in presenting their position," and that Mr. Enright's prosecution of a merger case was "wholesome" and served as "a model of . . . plaintiffs' litigation in the merger arena."

Education

- George Washington University School of Law, J.D. (1996), where he was a Member Editor of The George Washington University Journal of International Law and Economics from 1994 to 1996
- Drew University, B.A., Political Science and Economics, *cum laude* (1993)

Admissions

- Maryland (1996)
- New Jersey (1996)
- United States District Court for the District of Maryland (1997)
- United States District Court for the District of New Jersey (1997)
- District of Columbia (1999)
- United States Court of Appeals for the Fourth Circuit (1999)
- United States Court of Appeals for the Fifth Circuit (1999)
- United States District Court for the District of Columbia (1999)
- United States Court of Appeals for the District of Columbia (2004)
- United States Court of Appeals for the Second Circuit (2005)
- United States Court of Appeals for the Third Circuit (2006)
- United States District Court for the District of Colorado (2017)

Publications

- "SEC Enforcement Actions and Investigations in Private and Public Offerings," Securities: Public and Private Offerings, Second Edition, West Publishing 2007

## LEVI&KORSINSKY LLP
NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

"Dura Pharmaceuticals: Loss Causation Redefined or Merely Clarified?" J. Tax'n & Reg. Fin. Inst. September/October 2007, Page 5

---

*"I think you've done a superb job and I really appreciate the way this case was handled."*

The Honorable Ronald B. Rubin in *Teoh v. Ferrantino*, C.A. No. 356627
(Cir. Ct. for Montgomery Cnty., MD 2012)

---

### Shannon L. Hopkins

Shannon L. Hopkins manages the Firm's Connecticut office. She was selected in 2013 as a New York "Super Lawyer" by Thomson Reuters. For more than a decade Ms. Hopkins has been prosecuting a wide range of complex class action matters in securities fraud, mergers and acquisitions, and consumer fraud litigation on behalf of individuals and large institutional clients. Ms. Hopkins has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multi-million dollar settlements on behalf of shareholders, including:

- *In re Force Protection, Inc. S'holder Litig.*, C.A. No. A-11-651336-B (D. Nev. 2015), $11 million shareholder recovery

- *Craig Telke v. New Frontier Media, Inc.*, C.A. No. 1:12-cv-02941-JLK (D. Co. 2015), $2.25 million shareholder recovery

- *Shona Investments v. Callisto Pharmaceuticals, Inc.*, C.A. No. 652783/2012 (NY Sup. Ct. 2015), shareholder recovery of $2.5 million and increase in exchange ratio from 0.1700 to 0.1799

- *E-Trade Financial Corp. S'holder Litig.*, No. 07-cv-8538 (S.D.N.Y. 2007), $79 million recovery for the shareholder class

- *In re Cogent, Inc. S'holder Litig.*, C.A. No. 5780-VCP (Del. Ch. 2010), $1.9 million shareholder recovery and corrective disclosures relating to the Merger

- *In re CMS Energy Sec. Litig.*, Civil No. 02 CV 72004 (GCS) (E.D. Mich. Sept. 6, 2007), $200 million recovery

- *In re Sears, Roebuck and Co. Sec. Litig.*, No. 02-cv-07527 (N.D. Ill. Jan. 8, 2007), $200 million recovery

- *In re El Paso Electric Co. Sec. Litig.*, C.A. No. 3:03-cv-00004-DB (W.D. Tex. Sept. 15, 2005), $10 million recovery

- *In re Novastar Fin. Sec. Litig.*, 4:04-cv-00330-ODS (W.D. Mo. Apr. 14, 2009), $7.25 million recovery

The quality of Ms. Hopkin's work has been noted by courts. In *In re Health Grades, Inc. Shareholder Litigation*, C.A. No. 5716-VCS (Del. Ch. 2010), where Ms. Hopkins was significantly involved with the briefing of the preliminary injunction motion, then Vice Chancellor Strine "applaud[ed]" Co-Lead Counsel for their preparation and the extraordinary high-quality of the briefing.

In addition to her legal practice, Ms. Hopkins is a Certified Public Accountant (1998 Massachusetts). Prior to becoming an attorney, Ms. Hopkins was a senior auditor with PricewaterhouseCoopers LLP, where she led audit engagements for large publicly held companies in a variety of industries.

# LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

---

Education

- Suffolk University Law School, J.D., *magna cum laude* (2003), where she served on the Journal for High Technology and as Vice Magister of the Phi Delta Phi International Honors Fraternity
- Bryant University, B.S.B.A., Accounting and Finance, *cum laude* (1995), where she was elected to the Beta Gamma Sigma Honor Society

Admissions

- Massachusetts (2003)
- United States District Court for the District of Massachusetts (2004)
- New York (2004)
- United States District Court for the Southern District of New York (2004)
- United States District Court for the Eastern District of New York (2004)
- United States District Court for the District of Colorado (2004)
- United States Court of Appeals for the First Circuit (2008)
- United States Court of Appeals for the Third Circuit (2010)
- Connecticut (2013)

Publications

- "Cybercrime Convention: A Positive Beginning to a Long Road Ahead," 2 J. High Tech. L. 101 (2003)

---

*In appointing the Firm Lead Counsel, the Honorable Gary Allen Feess noted our "significant prior experience in securities litigation and complex class actions."*

*Zaghian v. THQ, Inc.*, 2:12-cv-05227-GAF-JEM (C.D. Cal. Sept. 14, 2012)

---

## Nancy A. Kulesa

Nancy A. Kulesa has extensive experience in complex litigation in federal and state courts, including securities litigation, Employee Retirement Income Security Act of 1974 (ERISA) litigation, consumer fraud litigation, mergers and acquisitions cases, and antitrust litigation.

Ms. Kulesa is involved in all of the Firm's practice areas, with a primary focus on securities litigation and institutional investor relations. She directs the Firm's Portfolio Monitoring Services and assists clients in identifying material losses in their securities portfolios caused by corporate wrongdoing. She consults with investors regarding securities litigation, corporate governance, and shareholder rights. She has been involved in numerous securities fraud litigations which have recovered millions of dollars for shareholders, including:

- *In re CIT Group Sec. Litig.*, 1:08-06613 (S.D.N.Y. 2008), $75 million
- *Klugmann v. American Capital Ltd.*, 09-cv-0005 (D. Md. 2009), $18 million

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

- ***In re Nuvelo, Inc. Sec. Litig.***, 07-cv-4056 (N.D. Cal. 2007), $8.9 million
- ***Bauer v. Prudential, Inc.***, 09-cv-1120 (JLL) (D.N.J. 2009), $16.5 million

Prior to joining the Firm, Ms. Kulesa practiced at Izard Nobel, LLP, where she represented investors in securities class actions and employees under ERISA. Ms. Kulesa has experience in representing corporations seeking antitrust clearance of mergers and acquisitions and has also handled commercial litigation matters and contractual disputes.

Education

- University of Connecticut School of Law, J.D. (2001)
- Fordham University, B.A., International Politics (1998)

Admissions

- Connecticut (2001)
- United States District Court for the District of Connecticut (2004)
- United States District Court for the Southern District of New York (2015)
- United States Court of Appeals for the Ninth Circuit (2016)

### Amy Miller

Amy Miller has represented clients in stockholder derivative law suits, corporate governance litigation, securities class actions, and appraisal proceedings over the last fifteen years. She currently prosecutes these cases on behalf of stockholders seeking accountability from corporate management on issues ranging from breach of fiduciary duties to corporate waste. Ms. Miller has secured significant monetary recoveries and corporate governance reforms on behalf of stockholders, including:

- ***In re Jefferies Group, Inc. Shareholders Litig.***, C.A. No. 8059-CB (Del. Ch. 2015) ($70 million recovery)
- ***In re News Corp. S'holder Deriv. Litig.***, C.A. No. 6285-VCN (Del. Ch. 2013) ($139 million recovery and a variety of corporate governance enhancements)
- ***In re ACS S'holder Litig.***, C.A. No. 4940-VCP (Del. Ch. 2010) ($69 million recovery)

Prior to joining the Firm, Ms. Miller practiced at Cadwalader, Wickersham & Taft LLP for more than seven years before working at two boutique plaintiffs firms in New York. While in law school, Ms. Miller participated in an externship with the Honorable George B. Daniels of the United States District Court for the Southern District of New York.

Education

- New York Law School, J.D., *summa cum laude*, where she served as a Member & Articles Editor on the New York Law School Law Review, and was awarded Merit Based Scholarships from 1997 through 2001 (2001)
- Boston University, B.A., *magna cum laude* (1995)

Admissions

- New York (2002)
- United States District Court for the Southern District of New York

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

- United States District Court for the Eastern District of New York
- United States Court of Appeals for the Sixth Circuit

Publications

- Co-Author of "Coaches Should Stick to the Sidelines: Why the Federal Rules Should Track Delaware Rules Regarding Conferences Between Deponents and Counsel," used in conjunction with Practising Law Institute's Corporate Law and Practice Course Handbook Series

### Nicholas I. Porritt

Nicholas I. Porritt prosecutes securities class actions, shareholder class actions, derivative actions, and mergers and acquisitions litigation. He has extensive experience representing plaintiffs and defendants in a wide variety of complex commercial litigation, including civil fraud, breach of contract, and professional malpractice, as well as defending SEC investigations and enforcement actions. Mr. Porritt has helped recover hundreds of millions of dollars on behalf of shareholders. He was one of the Lead Counsel in *In re Google Inc. Class C Shareholder Litigation*, C.A. No. 7469-CS (Del. Ch. 2012) that resulted in a payment of $522 million to shareholders and overall benefit of over $3 billion to Google's minority shareholders. He was one of the lead counsel in *Chen v. Howard-Anderson*, No. 5878-VCL (Del. Ch. Jan. 24, 2011) that settled during trial resulting in a $35 million payment to the former shareholders of Occam Networks, Inc., one of the largest quasi-appraisal recoveries for shareholders. Some of Mr. Porritt's cases include:

- *Zaghian v. Farrell,* 675 Fed. Appx. 718, (9th Cir.  2017)
- *SEC v. Cuban*, 620 F.3d 551 (5th Cir. 2010)
- *Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618 (4th Cir. 2008)
- *Teachers' Retirement System of Louisiana v. Hunter*, 477 F.3d 162 (4th Cir. 2007)
- *In re PTC Therapeutics Sec. Litig.,* 2017 WL 3705801 (D.N.J. Aug. 28, 2017)
- *Gormley v. magicJack VocalTec Ltd.,* 220 F. Supp. 3d 510 (S.D.N.Y. 2016)
- *Carlton v. Cannon*, 184 F. Supp. 3d 428 (S.D. Tex. 2016)
- *Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055 (D. Neb. 2016)
- *In re Energy Recovery Sec. Litig.,* 2016 WL 324150 (N.D. Cal. Jan. 27, 2016)
- *In re EZCorp Inc. Consulting Agreement Deriv. Litig.*, 2016 WL 301245 (Del. Ch. Jan. 25, 2016)
- *In re Violin Memory Sec. Litig.,*  2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)
- *Garnitschnig v. Horovitz*, 48 F. Supp. 3d 820 (D. Md. 2014)

Mr. Porritt speaks frequently on current topics relating to securities laws and derivative actions, including presentations on behalf of the Council for Institutional Investors, Nasdaq, and the Practising Law Institute. He currently serves as co-chair of the American Bar Association Sub-Committee on Derivative Actions.

Before joining the Firm, Mr. Porritt practiced as a partner at Akin Gump Strauss Hauer & Feld LLP and prior to that was a partner at Wilson Sonsini Goodrich & Rosati PC.

Education

- University of Chicago Law School, J.D., With Honors (1996)
- University of Chicago Law School, LL.M. (1993)
- Victoria University of Wellington, LL.B. (Hons.), With First Class Honors, Senior Scholarship (1990)

## LEVI&KORSINSKY LLP
NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

Admissions

- New York (1997)
- District of Columbia (1998)
- United States District Court for the District of Columbia (1999)
- United States District Court for the Southern District of New York (2004)
- United States Court of Appeals for the Fourth Circuit (2004)
- United States Court of Appeals for the District of Columbia Circuit (2006)
- United States Supreme Court (2006)
- United States District Court for the District of Maryland (2007)
- United States District Court for the Eastern District of New York (2012)
- United States Court of Appeals for the Second Circuit (2014)
- United States Court of Appeals for the Ninth Circuit (2015)
- United States District Court for the District of Colorado (2015)
- United States Court of Appeals for the Tenth Circuit (2016)
- United States Court of Appeals for the Eleventh Circuit (2017)

Publications

- "Current Trends in Securities Litigation: How Companies and Counsel Should Respond," *Inside the Minds Recent Developments in Securities Law* (Aspatore Press 2010)

## Rosemary M. Rivas

Rosemary M. Rivas is a partner in Levi & Korsinsky's San Francisco office. She has dedicated her legal career to representing consumers in complex, class action litigation involving false advertising and defective product claims.  Most recently, in a highly competitive application process, Judge Charles R. Breyer appointed Ms. Rivas to the Plaintiffs' Steering Committee in *In re: Volkswagen "Clean Diesel" MDL*, Case No. 15-MDL-2672-CRB (JSC), which has resulted in unprecedented settlements exceeding $14 billion dollars.

Ms. Rivas has served in a leadership role in a number of cases, including:

- *Lima v. Gateway*, Case No. SACV-09-1366 (C.D. Cal.), Co-Lead Class Counsel in nationwide class action involving defective monitor; achieved $195 refund for each monitor purchased
- *Pappas v. Naked Juice*, Case No. 2:11-cv-08276 (C.D. Cal.), Co-Lead Class Counsel; achieved $9 million settlement and changes to the company's testing procedures and product labels)
- *Garcia v. Allergan, Inc.*, Case No. 09-cv-7088 PSG (Ex) (C.D. Cal.), Co-Lead Class Counsel; achieved $7.75 million settlement and changes to the company's training procedures

She has also been instrumental in obtaining favorable appellate decisions on behalf of consumers in the areas of false advertising, federal preemption, and arbitration, such as:

- *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662 (9th Cir. 2014)
- *In re Sony PS3 "Other OS" Litig.,* 551 Fed. App. 916 (9th Cir. 2014)
- *Probst v. Superior Court (Health Net of California)*, 2012 Cal. LEXIS 4476 (Ct. Appeal, 1st Dist., May 9, 2012)

## LEVI&KORSINSKY LLP
NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

Ms. Rivas was a recipient of the 2018 California Lawyer of the Year (CLAY) Award. The CLAY awards are given annually to outstanding California practitioners "whose extraordinary work and cases had a major impact on the law." From 2009-2011, Ms. Rivas was selected as a Rising Star by Law & Politics Magazine, which recognizes the best lawyers 40 years old or under or in practice for ten years or less. In 2015, Bay Area Legal Aid presented her with the Guardian of Justice award, for her work achievements in the law and her role in helping direct cy pres funds to ensure equal access to the civil justice system.

Ms. Rivas has presented at a number of speaking engagements, including: Section 17200: The Fertility of Man's Invention, 2016 (The Bar Association of San Francisco); Data Privacy Law 101: U.S. Data Privacy and Security Laws 2015 (The Bar Association of San Francisco); Food Labeling and False Advertising Class Actions, 2015 (The Bar Association of San Francisco); and Class Actions: New Developments & Approaches for Strategic Response, 2013 (American Bar Association).

Previously, Ms. Rivas served as a Board Member and Diversity Director of the Barristers Club of the San Francisco Bar Association. Ms. Rivas is fluent in Spanish.

Education

- University of California, Hastings College of Law, J.D. (2000)
- San Francisco State University, B.A., Political Science (1997)

Admissions

- United States Court of Appeals for the Ninth Circuit (2001)
- United States District Court for the Northern District of California (2001)
- United States District Court for the Central District of California (2002)
- United States District Court for the Eastern District of California (2005)
- United States District Court for the Southern District of California (2005)

> ### Then Vice Chancellor Leo E. Strine, Jr. praised the Firms' "exceedingly measured and logical" argument
>
> *Forgo v. Health Grades, Inc.*, C.A. No. 5716-VCS (Del. Ch. Sept. 3, 2010)

### Elizabeth K. Tripodi

Elizabeth K. Tripodi focuses her practice on shareholder M&A litigation, representing shareholders of public companies impacted by mergers, acquisitions, tender offers, and other change-in-control transactions. Ms. Tripodi has been named as a Washington, DC "Super Lawyer" and was selected as a "Rising Star" by Thomson Reuters for several consecutive years.

Ms. Tripodi has played a lead role in obtaining monetary *recoveries* for shareholders in M&A litigation:

- ***In re Bluegreen Corp. S'holder Litig.,*** Case No. 502011CA018111 (Circuit Ct. for Palm Beach Cty., FL), creation of a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders

### LEVI&KORSINSKY LLP
NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

---

- *In re Cybex International S'holder Litig*, Index No. 653794/2012 (N.Y. Sup. Ct. 2014), recovery of $1.8 million common fund, which represented an 8% increase in stockholder consideration in connection with management-led cash-out merger
- *In re Great Wolf Resorts, Inc. S'holder Litig*, C.A. No. 7328-VCN (Del. Ch. 2012), where there was a $93 million (57%) increase in merger consideration
- *Minerva Group, LP v. Keane*, Index No. 800621/2013 (N.Y. Sup. Ct. 2013), settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share

Ms. Tripodi has played a key role in obtaining injunctive relief while representing shareholders in connection with M&A litigation, including obtaining preliminary injunctions or other injunctive relief in the following actions:

- *In re Portec Rail Products, Inc. S'holder Litig*, G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)
- *In re Craftmade International, Inc. S'holder Litig*, C.A. No. 6950-VCL (Del. Ch. 2011)
- *Dias v. Purches*, C.A. No. 7199-VCG (Del. Ch. 2012)
- *In re Complete Genomics, Inc. S'holder Litig*, C.A. No. 7888-VCL (Del. Ch. 2012)
- *In re Integrated Silicon Solution, Inc. Stockholder Litig.*, Lead Case No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)

Prior to joining Levi & Korsinsky, Ms. Tripodi was a member of the litigation team that served as Lead Counsel in, and was responsible for, the successful prosecution of numerous class actions, including: *Rudolph v. UTStarcom* (stock option backdating litigation obtaining a $9.5 million settlement); *Grecian v. Meade Instruments* (stock option backdating litigation obtaining a $3.5 million settlement).

Education

- American University Washington College of Law, *cum laude* (2006), where she served as Editor in Chief of the Business Law Brief, was a member of the National Environmental Moot Court team, and interned for Environmental Enforcement Section at the Department of Justice
- Davidson College, B.A., Art History (2000)

Admissions

- Virginia (2006)
- District of Columbia (2008)
- United States District Court for the Eastern District of Virginia (2006)
- United States District Court for the District of Columbia (2010)

### *Associates*

### Stephanie A. Bartone

Stephanie A. Bartone practices in all areas of the firm, with a focus on consumer class action litigation. Prior to joining the firm, Ms. Bartone worked for the Connecticut Judicial System where she assisted State court judges in civil and family matters. Ms. Bartone also previously worked for a firm specializing in civil litigation and criminal defense at the state and federal level.

Education

---

- The University of Connecticut School of Law, J.D. (2012), where she served as Symposium Editor of the Connecticut Law Review
- University of New Hampshire, B.A., Psychology and Justice Studies, *summa cum laude* (2008)

Admissions

- Connecticut (2012)
- Massachusetts (2012)
- United States District Court for the District of Colorado (2013)
- United States District Court for the District of Connecticut (2015)
- United States District Court for the District of Massachusetts (2016)


## Jordan A. Cafritz

Jordan Cafritz is an Associate with the Firm's Washington, D.C. office. While attending law school at American University he was an active member of the American University Business Law Review and worked as a Rule 16 attorney in the Criminal Justice Defense Clinic. After graduating from law school, Mr. Cafritz clerked for the Honorable Paul W. Grimm in the U.S. District Court for the District of Maryland.

Education

- American University Washington College of Law, J.D. (2014)
- University of Wisconsin-Madison, B.A., Economics & History (2010)

Admissions

- Maryland (2014)
- Admission to DC Bar pending—*practice in the District of Columbia authorized only under Rule 49(c)(3)*


## Cecille B. Cargill

Cecille B. Cargill manages the Firm's client development services. She advises shareholders of their rights related to securities litigation, complex class actions, and shareholder and derivative litigation, and also responds to shareholder inquiries pertaining to the Firm and specific cases.

Education

- Boston University School of Law, J.D. (1994)
- State University at Buffalo, B.A., History & Legal Studies (1990)

Admissions

- Massachusetts (1995)

## LEVI&KORSINSKY LLP
NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

### John A. Carriel

John A. Carriel is an Associate with the Firm in the Washington, D.C. office, where he focuses his practice on financial litigation, including class action litigation relating to corporate governance, securities, cryptocurrencies, and initial coin offerings.  During law school, he interned for the Enforcement and Investment Management Divisions of the Securities and Exchange Commission and the Legal Division of the Consumer Financial Protection Bureau. In addition, he worked as a summer associate for a midsize business law firm in New York.

Education

- The George Washington University Law School, J.D., With Honors (2017)
- Universidad Pontificia Comillas (ICADE), LL.M., International and European Business Law, With Honors (2015)
- Drew University, B.A., Business Studies (2013)

Admissions

- District of Columbia (2017)
- United States District Court for the District of Colorado (2018)

Publications

- "M-U-N-I: Evidencing the Inadequacies of the Municipal Securities Regulatory Framework," 1 BUS. ENTREPRENEURSHIP & TAX L. REV. 528 (2017).

### Andrea Clisura

Andrea Clisura focuses her practice on prosecuting consumer class actions. Prior to joining Levi & Korsinsky, she was an associate at a boutique law firm in New York specializing in class action litigation. While attending Brooklyn Law School, Ms. Clisura served as an Associate Managing Editor of the Journal of Law and Policy and was a member of the Moot Court Honor Society, Appellate Advocacy Division. Her note, "None of Their Business: The Need for Another Alternative to New York's Bail Bond Business," was published in Brooklyn Law School's Journal of Law and Policy.

Ms. Clisura also gained experience in law school as an intern to the Honorable David G. Trager of the U.S. District Court for the Eastern District of New York and as a summer law intern with the U.S. Department of Justice, Antitrust Division, and a New York Legal Services office engaged in foreclosure defense.

Education

- Brooklyn Law School, J.D., *magna cum laude* (2011)
- New York University, B.A., *magna cum laude* (2005)

Admissions

- New Jersey (2011)
- New York (2012)
- United States District Court for the District of New Jersey (2012)
- United States District Court for the Eastern District of New York (2012)

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

- United States District Court for the Southern District of New York (2012)

### William J. Fields

William J. Fields is a member of the New York City Bar Association and serves on the New York City Affairs Committee. Before joining the Firm, Mr. Fields was a Law Clerk in the Second Circuit Court of Appeals – Staff Attorney's Office.

Education

- Cornell Law School, J.D. (2011)
- University of Connecticut, B.A., *cum laude* (2008)

Admissions

- New York (2012)
- United States District Court for the Eastern District of Michigan (2016)

---

*Vice Chancellor Sam Glasscock, III said "it's always a pleasure to have counsel who are articulate and exuberant…" and referred to our approach to merger litigation as "wholesome" and "a model of… plaintiffs' litigation in the merger arena."*

*Ocieczanek v. Thomas Properties Group*, C.A. No. 9029-VCG (Del. Ch. May 15, 2014)

---

### James Grohsgal

James Grohsgal is an Associate in the Connecticut office. He represents shareholders in federal securities fraud litigation and has nearly a decade of experience representing clients in securities fraud and shareholder derivative cases.

Prior to joining the firm, Mr. Grohsgal was an associate at the New York offices of Skadden, Arps, Slate, Meagher & Flom LLP and then at Orrick, Herrington, & Sutcliffe LLP, where he represented publicly traded companies, investment banks, mortgage loan originators, and financial services firms in federal and state securities litigation, shareholder derivative suits, and SEC enforcement matters.  He also represented Fortune 500 companies and sovereign states in commercial, investment, and intellectual property litigation and international arbitration.

Education

- McGill University Faculty of Law, LL.B. and B.C.L., great distinction, where he served as Case Comments Editor on the McGill Law Journal (2008)
- McGill University, B.A., Political Science, Honors (2004)

Admissions

- New York (2009)
- United States District Court for the Southern District of New York (2010)

---

**LEVI&KORSINSKY LLP**

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

---

- United States District Court for the Eastern District of New York (2010)

- United States Court of Appeals for the District of Columbia (2016)

- Not admitted to practice in Connecticut; practice limited to federal law

### Michelle Gruesbeck

Michelle Gruesbeck practices in the Washington, D.C. office, focusing on securities class actions and stockholder derivative suits. While attending law school, Ms. Gruesbeck gained experience as an intern at the Securities and Exchange Commission in the Office of Compliance Inspections Examinations, the Division of Enforcement, the Division of International Corporation Finance, and the Division of Corporation Finance (AD 5). She also served as an editor of the *Journal of Land and Development* and was a member of the Stetson International Environmental Moot Court Team.

Education

- Georgetown University Law Center, LL.M., Securities and Financial Regulation (2015)

- University of Baltimore School of Law, J.D., *cum laude* (2013)

- Purdue University, B.A., Biology (2003)

Admissions

- Maryland (2013)
- United States District Court for the District of Colorado (2018)

### Alexander Krot

Education

- The George Washington University, B.B.A., Finance and International Business (2003)

- American University Washington College of Law, J.D. (2010)

- Georgetown University Law Center, LL.M., Securities and Financial Regulation,  With Distinction (2011)

- American University, Kogod School of Business, M.B.A. (2012)

Admissions

- Maryland (2011)
- District of Columbia (2014)
- United States District Court for the District of Colorado (2015)
- United States Court of Appeals for the Tenth Circuit (2016)
- United States District Court for the Eastern District of Wisconsin (2017)

### Christopher J. Kupka

Christopher J. Kupka represents victims of wrongdoing in employment, consumer, and securities class actions and stockholder derivative suits. In law school, Mr. Kupka was awarded the M.H. Goldstein

Memorial Prize for excellence in labor law. Mr. Kupka was also the recipient of an Edward V. Sparer Public Interest Fellowship.

Education

- University of Pennsylvania Law School, J.D. (2010), where he served as an editor of the Journal of International Law
- Cornell University, A.B. (2007)

Admissions

- New York (2011)
- United States District Courts for the Southern District of New York (2012)
- United States District Courts for the Eastern District of New York (2012)
- Illinois (2013)
- United States District Courts for the Northern District of Illinois (2014)

Publications

- "Remediation of Unfair Labor Practices and the EFCA: Justifications, Criticisms, and Alternatives," 38 Rutgers L. Rec. 197 (May 2011)
- Co-author of "Turning Tides For Employee Arbitration Agreements" as featured on Law360.com (October 2016)

## Jonathan Lindenfeld

Jonathan Lindenfeld is an Associate with the Firm in the New York office. Mr. Lindenfeld's practice focuses on securities class actions and stockholder derivative suits. While attending law school, Mr. Lindenfeld gained experience as an intern at the U.S. Attorney's Office in the Eastern District of New York and a boutique law firm specializing in derivatives and forex exchanges. Mr. Lindenfeld also served as an editor of the Hofstra Journal of International Business and Law.

Education

- Hofstra University School of Law, J.D., *cum laude*, where he received Honors in Business Law, and was awarded Merit Based Scholarships from 2012 through 2015 (2015)
- City University of New York-Queens College, B.A., Economics (2012)

Admissions

- New Jersey (2015)
- New York (2016)
- United States District Court for the Southern District of New York (2016)

Publications

- The CFTC's Substituted Compliance Approach: An Attempt to Bring About Global Harmony and Stability in the Derivatives Market, 14 J. INT'L BUS. & L. 125 (2015)

## Courtney E. Maccarone

Courtney E. Maccarone focuses her practice on prosecuting consumer class actions. Prior to joining Levi & Korsinsky, Ms. Maccarone was an associate at a boutique firm in New York specializing in class action litigation. While attending Brooklyn Law School, Ms. Maccarone served as the Executive Symposium Editor of the *Brooklyn Journal of International Law* and was a member of the Moot Court Honor Society. Her note, "Crossing Borders: A TRIPS-Like Treaty on Quarantines and Human Rights" was published in the Spring 2011 edition of the *Brooklyn Journal of International Law.*

Ms. Maccarone also gained experience in law school as an intern to the Honorable Martin Glenn of the Southern District of New York Bankruptcy Court and as a law clerk at a New York City-based class action firm. Ms. Maccarone was selected as a New York Super Lawyers "Rising Star" in 2014, 2015, 2016 and 2017.

Education

- Brooklyn Law School, J.D., *magna cum laude* (2011), where she served as the Executive Symposium Editor of the *Brooklyn Journal of International Law* and was a member of the Moot Court Honor Society
- New York University, B.A., *magna cum laude* (2008)

Admissions

- New Jersey (2011)
- New York (2012)
- United States District Court for the District of New Jersey (2012)
- United States District Court for the Eastern District of New York (2012)
- United States District Court for the Southern District of New York (2012)

Publications

- "Crossing Borders: A TRIPS-Like Treaty on Quarantines and Human Rights," published in the Spring 2011 edition of the *Brooklyn Journal of International Law*

## Adam C. McCall

Adam C. McCall is an Associate with the Firm. Prior to joining Levi & Korsinsky, Mr. McCall was a Summer Analyst at Moelis & Company and an intern at Fortress Investment Group. While attending the Georgetown University Law Center, he was an extern at the Securities and Exchange Commission's Division of Corporate Finance.

Education

- Georgetown University Law Center, LL.M., Securities and Financial Regulation (2015)
- California Western School of Law, J.D., *cum laude* (2013)
- Santa Clara University, Certificate of Advanced Accounting Proficiency (2010)
- University of Southern California, B.A., Economics (2008)

Admissions

- California (2014)

- United States District Court for the Central District of California (2015)
- United States District Court for the Eastern District of California (2015)
- United States District Court for the Northern District of California (2015)
- United States District Court for the Southern District of California (2015)
- United States Court of Appeals for the Ninth Circuit (2016)
- District of Columbia (2017)

### Gregory M. Potrepka

Gregory M. Potrepka is an Associate in Levi & Korsinsky's Connecticut office. Mr. Potrepka is an experienced lawyer having litigated cases in State, Federal, and Tribal courts, at both the trial and appellate levels.  While in law school, Mr. Potrepka clerked in the Civil Division of the United States Attorney's Office for the District of Columbia.

Education

- University of Connecticut School of Law, J.D. (2015)
- University of Connecticut Department of Public Policy, M.P.A. (2015)
- University of Connecticut, B.A., Political Science (2010)

Admissions

- Connecticut (2015)
- Mashantucket Pequot Tribal Court (2015)
- United States District Court for the District of Connecticut (2016)

### Quentin A. Roberts

Quentin A. Roberts is an Associate in Levi & Korsinsky's San Francisco office. While attending law school, Mr. Roberts was a member of the Law Review and worked on class action litigation as a law clerk. Mr. Roberts concentrates on litigating class action matters, particularly those involving consumer fraud. He has worked on a number of high-profile cases, such as *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, & Prods. Liab. Litig.*, No. 15-md-2672 (N.D. Cal.), pending in the Northern District of California.

Education

- University of San Francisco School of Law, J.D., *magna cum laude* (2015)
- University of California, San Diego, B.A., Economics (2010)

Admissions

- California (2015)
- United States District Court for the Northern District of California (2016)
- United States District Court for the Central District of California (2017)

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

### Andrew Rocco

Andrew Rocco is an Associate with the Firm in the Connecticut office. As a law student, he interned for the Office of the Attorney General for the State of Connecticut in the Employment Rights Department, and served as the Editor-in-Chief of the Quinnipiac Probate Law Journal.

Education

- Quinnipiac University School of Law, J.D., *summa cum laude* (2017)
- Champlain College, B.A., Legal Studies, *summa cum laude* (2014)

Admissions

- Connecticut

### Samir Shukurov

Mr. Shukurov is an associate in Levi & Korsinsky's New York office and represents shareholders in complex corporate litigation, corporate governance and securities matters in state and federal courts nationwide. Mr. Shukurov also has corporate experience representing clients in various exempted securities offerings and 1934 Securities Exchange Act reporting matters. Previously, Mr. Shukurov worked in the General Counsel's office of Ernst & Young in his home country of Azerbaijan.

Education

- Boston University School of Law, LL.M., Outstanding Achievement Award (2015)
- Baku State University, LL.M., Civil Law, With Honors (2012)
- Baku State University, LL.B. (2009)

Admissions

- Massachusetts (2015)
- New York (2016)
- United States District Court for the Southern District of New York (2016)

### Brian Stewart

Brian Stewart is an Associate with the Firm practicing in the Washington, D.C. office. Prior to joining the firm, Mr. Stewart was an associate at a small litigation firm in Washington D.C. and a regulatory analyst at the Financial Industry Regulatory Authority (FINRA).  During law school, he interned for the Enforcement Divisions of the SEC and CFPB.

Education

- American University Washington College of Law, J.D. (2012)
- University of Washington, B.S., Economics and Mathematics (2008)

Admissions

- Maryland (2012)
- District of Columbia (2014)

## LEVI&KORSINSKY LLP

NEW YORK I WASHINGTON, D.C. I CONNECTICUT I CALIFORNIA

### Sebastian Tornatore

Sebastian Tornatore is an Associate in the Connecticut office where he focuses on representing shareholders in federal securities actions. While at the University of Connecticut School of Law, Mr. Tornatore served as an Executive Editor of the *Connecticut Law Review* and as a member of the Connecticut Moot Court Board. Prior to joining the Firm, Mr. Tornatore worked for the Connecticut Judicial System, where he gained significant experience assisting various state judges.

Education

- The University of Connecticut School of Law, J.D. (2012)
- Boston College, B.A., Political Science (2008)

Admissions

- Massachusetts (2012)
- Connecticut (2012)
- New York (2014)
- United States District Court for the District of Connecticut (2014)
- United States District Court for the Southern District of New York (2016)
- United States District Court for the District of Massachusetts (2016)

### *Staff Attorneys*

### Silpa Rao

Silpa Rao works as a Staff Attorney in the Connecticut office. Prior to joining the firm, Ms. Rao worked with the Connecticut Judicial Branch in Danbury, where she assisted state court judges in civil jury trials and other courtroom matters on the civil and family docket. While at the University of Connecticut School of Law, Ms. Rao served as a Competition Editor for the Connecticut Public Interest Law Journal and President of the South Asian Law Students Association. She also completed an Honors Law Clerk externship with the Environmental Protection Agency while studying for a semester in Washington, D.C.

Education

- University of Connecticut School of Law, J.D., Certificate in Environmental Law (2013)
- New York University, B.A., Environmental Studies (2009)

Admissions

- Massachusetts (2014)
- New York (2017)



Pomerantz LLP is one of the nation's foremost specialists in corporate, securities, antitrust and ERISA class litigation. The Firm was founded in 1936 by the late Abraham L. Pomerantz, one of the "pioneers who developed the class action/derivative action field." [1] Mr. Pomerantz rose to national prominence as a "champion of the small investor" and a "battler against corporate skullduggery." [2] Today, led by Co-Managing Partners Jeremy A. Lieberman and Patrick V. Dahlstrom, the Firm maintains the commitments to excellence and integrity passed down by Mr. Pomerantz.

For over 80 years, the Firm has consistently shaped the law, winning landmark decisions that have expanded and protected investor rights, and initiated historic corporate governance reforms.

Pomerantz is headquartered in New York City, with offices in Chicago, Los Angeles and Paris.

# SECURITIES LITIGATION

## SIGNIFICANT LANDMARKS
## IN SECURITIES-RELATED LITIGATIONS

On January 3, 2018, in a significant victory for investors, Pomerantz, as sole Lead Counsel for the class, along with Lead Plaintiff Universities Superannuation Scheme Limited ("USS"), achieved a historic $2.95 billion settlement with Petróleo Brasileiro S.A. ("Petrobras") and its related entity, Petrobras International Finance Company, as well as certain Petrobras' former executives and directors. On February 2, 2018, Pomerantz and USS reached a $50 million settlement with Petrobras' auditors, PricewaterhouseCoopers Auditores Independentes ("PwC Brazil"), bringing the total recovery for Petrobras investors to $3 billion. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

The class action, brought on behalf of all purchasers of common and preferred American Depositary Shares ("ADSs") on the New York Stock Exchange, as well as purchasers of certain Petrobras debt, principally alleged that Petrobras and its senior executives engaged in a multi-year, multi-billion dollar money-laundering and bribery scheme, which was concealed from investors.

The settlement was achieved after nearly three years of hard-fought litigation, including U.S. and foreign discovery and complex motion practice before Judge Jed S. Rakoff, United States District Judge for the Southern District of New York; an appeal before the United States Court of Appeals

---

[1] New York Law Journal (August 1, 1983).
[2] Robert J. Cole, *Class Action Dean*, The National Law Journal, Vol. 1 No. 2 at 1 (Sept. 25, 1978).

for the Second Circuit. Defendants also filed a petition for writ of certiorari with the United States Supreme Court.

In addition to the outstanding multi-billion recovery to investors, Pomerantz secured precedent-setting decisions during the litigation. In a February 2016 Opinion and Order, the district court certified all the classes proposed by plaintiffs, encompassing not only purchasers of Petrobras American Depository Receipts, but also Petrobras bondholders who acquired securities pursuant to domestic transactions. Plaintiffs asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. Defendants appealed the district court's certification opinion on multiple grounds, including for failure to satisfy the requirement of ascertainability and for failure to satisfy the burden of showing that the Petrobras securities at issue traded in efficient markets. The Second Circuit accepted the appeal and largely rejected defendants' arguments, sending the case back to the district court for further proceedings.

The Second Circuit's decision is important and favorable precedent in several respects. First, in an issue of first impression, the Second Circuit squarely rejected defendants' invitation to adopt the heightened ascertainability requirement promulgated by the United States Court of Appeals for the Third Circuit, which would have required plaintiffs to demonstrate that determining membership in a class is "administratively feasible." The Second Circuit's rejection of this standard is not only a victory for bondholders in securities class actions, but also plaintiffs in consumer fraud class actions and other class actions where documentation regarding Class membership is not readily attainable.

With respect to Petrobras' bondholders, the court vacated the district court's granting of class certification, but only to the extent that it did not perform an analysis regarding the impact of the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) on the predominance requirement of class certification, acknowledging that "the district court might properly certify one or more classes that capture all of the Securities holders who fall within the Classes as currently defined."

The Second Circuit also refused to adopt a requirement, urged by defendants, that all securities class action plaintiffs seeking class certification prove through direct evidence (*i.e.*, via an event study) that the prices of the relevant securities moved in a particular direction in response to new information.

Pomerantz is also sole Lead Counsel in *Strougo v. Barclays PLC,* 14-cv-5797, a high-profile securities litigation alleging that defendants concealed information and misled investors regarding its management of its "LX" dark pool, a private trading platform where the size and price of the orders are not revealed to other participants. On November 6, 2017, the Second Circuit affirmed former District Court Judge Shira S. Scheindlin's February 2, 2016 Opinion and Order granting plaintiffs' motion for class certification in the case.

The Court of Appeals in *Barclays* held that direct evidence of price impact is not always necessary to demonstrate market efficiency, as required to invoke the *Basic* presumption of reliance, and was not required here. Significantly, when handing down its decision, the Second Circuit cited its own *Petrobras* decision, stating, "We have repeatedly—and recently—declined to adopt a particular test for market efficiency."

The court held that defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. The court further held that it would be inconsistent with *Halliburton II* to "allow defendants to rebut the *Basic* presumption by simply producing some evidence of market inefficiency, but not demonstrating its inefficiency to the district court." The court rejected defendants' contention that Federal Rule of Evidence 301 applies and made clear that the *Basic* presumption is a judicially created doctrine and thus the burden of persuasion properly shifts to defendants. The court thus confirmed that plaintiffs have no burden to show price impact at the class certification stage—a significant victory for investors.

In May 2017, Pomerantz, as Co-Lead Counsel, achieved final approval of a $135 million recovery for the Class in *Kaplan v. S.A.C. Capital Advisors, L.P.* This securities class action stemmed from what has been called the most profitable insider trading scheme in U.S. history. After years of vigorous litigation, billionaire Steven A. Cohen's former hedge fund, S.A.C. Capital Advisors LP, agreed to settle the lawsuit by investors in the drug maker Elan Corp, who said they lost money because of insider trading by one of his portfolio managers.

In July 2017, Pomerantz secured the right of investors in BP p.l.c. to pursue "holder claims." The ruling, by Judge Keith P. Ellison of the U.S. District Court for the Southern District of Texas, is significant, given the dearth of precedent from anywhere in the U.S. that both recognizes the potential viability of a holder claim under some body of non-U.S. federal law and holds that the plaintiffs pursuing one had sufficiently alleged facts giving rise to reliance and other required elements of the underlying legal claims. Since 2012, Pomerantz has pursued ground-breaking claims on behalf of institutional investors in BP p.l.c. to recover losses in BP's common stock (which trades on the London Stock Exchange) stemming from the 2010 Gulf oil spill. The threshold challenge was how to litigate in U.S. court in the wake of the Supreme Court's 2010 decision in *Morrison v. Nat'l Australia Bank*, which barred recovery for losses in foreign-traded securities under the U.S. federal securities laws. In 2013 and 2014, Pomerantz secured a series of significant victories in individual actions pursued on behalf of institutional investors in *In re BP plc. Securities Litigation*, MDL 2185 (U.S.D.C. S.D. Tex.). Pomerantz defeated BP's *forum non conveniens* arguments seeking dismissal of U.S. institutions and, later, foreign institutions, pursuing English common law claims seeking recovery of investment losses stemming in both NYSE-traded American Depository Shares and London Stock Exchange (LSE)-traded common stock. Pomerantz also defeated BP's attempt to extend the Securities Litigation Uniform Standards Act to dismiss these claims. Thanks to these rulings, Pomerantz now leads the only litigation, post-*Morrison*, where U.S. and foreign investors, pursuing foreign claims seeking recovery for losses in foreign-traded stocks, are doing so in a U.S. court.

In June 2010, Judge Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York granted final approval of a $225 million settled proposed by Pomerantz and Lead Plaintiff the Menora Group, with Comverse Technology and certain of Comverse's former officers and directors, after four years of highly contested litigation. The *Comverse* settlement is one of the largest securities class action settlements reached since the passage of the Private Securities Litigation Reform Act ("PSLRA").[3] It is the second-largest recovery in a securities litigation involving the backdating of options, as well as one of the largest recoveries – $60 million – from an individual

---

[3] Institutional Shareholder Services, *SCAS "Top 100 Settlements Quarterly Report,"* (Sept. 30, 2010).

officer-defendant, Comverse's founder and former CEO, Kobi Alexander. *In re Comverse Technology, Inc. Sec. Litig.,* No. 06-CV-1825 (E.D.N.Y.)

Even before the enactment of the PSLRA, Pomerantz represented state agencies in securities class actions, including the Treasurer of the Commonwealth of Pennsylvania (recovered $100 million) against a major investment bank. *In re Salomon Brothers Treasury Litig.* (S.D.N.Y.).

Pomerantz recovered $50 million for the Treasurer of the State of New Jersey and several New Jersey pension funds in an individual action. This was a substantially higher recovery than what our clients would have obtained had they remained in a related federal class action. *Treasurer of the State of New Jersey v. AOL Time Warner, Inc.* (N.J. Super. Ct. Law Div., Mercer Co.).

Pomerantz has litigated numerous cases for the Louisiana School Employees' Retirement System. For example, as Lead Counsel, Pomerantz recovered $74.75 million in a securities fraud class action against Citigroup, its CEO Sanford Weill, and its now infamous telecommunications analyst Jack Grubman. *In re Salomon Analysts AT&T Litig.,* (S.D.N.Y.) Also, the Firm played a major role in a complex antitrust and securities class action which settled for over $1 billion. *In re NASDAQ Market-Makers Antitrust Litig.,* (S.D.N.Y.). Pomerantz was a member of the Executive Committee in *In re Transkaryotic Sec. Litig.,* (D. Mass), helping to win a $50 million settlement for the class.

In 2008, together with Co-Counsel, Pomerantz identified a substantial opportunity for recovery of losses in Countrywide mortgage-backed securities ("MBS") for three large New Mexico funds (New Mexico State Investment Council, New Mexico Public Employees' Retirement Association, and New Mexico Educational Retirement Board), that had been overlooked by all of the firms then in their securities litigation pool. We then filed the first non-class lawsuit by a public institution with respect to Countrywide MBS. *See New Mexico State Inv. Council v. Countrywide Fin. Corp., et al.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct.). In Fall 2010, we negotiated for our clients an extremely favorable but confidential settlement.

Over its long history, Pomerantz has achieved significant settlements in numerous cases, a sampling of which are listed below:

- *Universities Superannuation Scheme Limited v. Petróleo Brasileiro S.A. Petrobras,* 14-cv-9662 (S.D.N.Y. 2018)
  $3 billion settlement of securities class action in which Pomerantz was Lead Counsel (pending final approval).
- *In re Yahoo! Inc. Sec. Litig., No. 17-cv-00373 (N.D. Cal.)*
  $80 million settlement of securities class action in which Pomerantz was Co-Lead Counsel (pending final approval)
- *In Re American Capital, Ltd. Shareholder Litigation.,* C.A. No. 422598-V (2018)
  $17.5 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *Kaplan v. S.A.C. Capital Advisors, L.P.,* No. 12 Civ. 9350 (S.D.N.Y. 2017)
  $135 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *Thomas v. Magnachip Semiconductor Corp. et al,* No. 14-cv-01160 (N.D. Cal. 2016)
  $23.5 million partial settlement of class action in which Pomerantz was sole Lead Counsel.

- *In re Lumber Liquidators, Inc. Securities Litigation,* No. 4:13-cv-00157-AWA-DEM (E.D. Va. 2016) $26 million and 1 million shares of common stock tentative settlement in class action in which Pomerantz was sole Lead Counsel.
- *Richard Thorpe and Darrel Weisheit v. Walter Investment Management Corp., et al.,* No. 1:14-cv-20880-UU (S.D. Fla. 2016) $24 million settlement of class action in which Pomerantz was sole Lead Counsel.
- *In re Groupon, Inc. Securities Litigation,* No. 12-cv-02450 (N.D. Ill. 2015) $45 million settlement of class action in which Pomerantz was sole Lead Counsel.
- *In re Sealed Air Corp. Sec. Litig.* (D.N.J. 2010) $20 million settlement in class action in which Pomerantz was Co-Lead Counsel representing the Louisiana Municipal Police Employees' Retirement System.
- *In re Elan Corp. Sec. Litig.* (S.D.N.Y. 2005) $75 million settlement in class action arising out of alleged accounting manipulations.
- *In re Livent, Inc. Noteholders Sec. Litig.* (S.D.N.Y. 2005) $17 million settlement for the class; plus summary judgment against remaining defendants for $36 million (including pre-judgment interest); totaling over 100% of claimed damages.
- *In re Safety-Kleen Corp. Stockholders Litig.* (D.S.C. 2004) $54.5 million in total settlements in class action alleging accounting manipulations by corporate officials and auditors; last settlement reached on eve of trial.
- *Mardean Duckworth v. Country Life Insurance Co.* (Ill. Cir. Ct., Cook Cty. 2000) $45 million recovery.
- *Snyder v. Nationwide Insurance Co.* (Sup. Ct., Onondaga Cty. 1998) Settlement valued at $100 million in derivative case arising from injuries to consumers purchasing life insurance policies.
- *In re National Health Lab., Inc. Sec. Litig.* (S.D. Cal. 1995) $64 million recovery.
- *In re First Executive Corp. Sec. Litig.* (C.D. Cal. 1994) $102 million recovery for the class, exposing a massive securities fraud arising out of the Michael Milken debacle.
- *In re Boardwalk Marketplace Sec. Litig.* (D. Conn. 1994) Over $66 million benefit in securities fraud action.
- *In re Telerate, Inc. Shareholders Litig.* (Del. Ch. 1989) $95 million benefit in case alleging violation of fiduciary duty under state law.

Pomerantz has also obtained stellar results for private institutions and Taft-Hartley funds. Below are a few examples:

- *In re Charter Communications, Inc. Secs. Litig.* (W.D. Mo.) (sole Lead Counsel for Lead Plaintiff StoneRidge Investment Partners LLC); $146.25 million class settlement, where Charter also agreed to enact substantive improvements in corporate governance.
- *In re American Italian Pasta Securities Litigation* (W.D. Mo.) (sole Lead Counsel for Lead Plaintiff Ironworkers Locals 40, 361 and 417; $28.5 million aggregate settlements).
- *Richardson and CC Partners, LLC v. Gray* (Sup. Ct. N.Y. Cty.); and *In re Summit Metals,* (Bankr. D. Del.) (two derivative actions where the Firm represented C.C. Partners Ltd. and obtained judgment of contempt against controlling shareholder for having made "extraordinary" payments to himself in violation of a preliminary injunction; persuaded the court to jail him for

two years upon his refusal to pay; and, in a related action, won a $43 million judgment after trial and obtained turnover of stock of two companies).

# SHAPING THE LAW

Not only has Pomerantz established a long track record of obtaining substantial monetary recoveries for our clients; whenever appropriate, we also pursue corporate governance reforms on their behalf. In *In re Chesapeake S'holder Deriv. Litig.*, No. CJ-2009-3983 (Dist. Okla.), for example, the Firm served as Co-Lead Counsel, representing a public pension client in a derivative case arising from an excessive compensation package granted to Chesapeake's CEO and founder. This was a derivative action, not a class action. Yet it is illustrative of the results that can be obtained by an institutional investor in the corporate governance arena. There, we obtained a settlement which called for the repayment of $12.1 million and other consideration by the CEO. The *Wall Street Journal* (November 3, 2011) characterized the settlement as "a rare concession for the 52-year old executive, who has run the company largely by his own rules since he co-founded it in 1989." The settlement also included comprehensive corporate governance reforms.

The Firm has won many landmark decisions that have enhanced shareholders' rights and improved corporate governance. These include decisions that established that:

- defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. Waggoner v. Barclays PLC, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC* in the court below)
- plaintiffs have no burden to show price impact at the class certification stage. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC* in the court below)
- the ascertainability doctrine requires only that a class be defined using objective criteria that establish a membership with definite boundaries. *Universities Superannuation Scheme Limited v. Petróleo Brasileiro S.A. Petrobras*, 862 F.3d 250 (2d Cir. 2017)
- companies cannot adopt bylaws to regulate the rights of former stockholders. *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015)
- a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure does not eviscerate an investor's claim for damages. *Acticon AG v. China North East Petroleum Holdings Ltd.,* 692 F.3d 34 (2d Cir. 2012)
- a mortgage-backed securities ("MBS") holder may bring claims if the MBS price declines even if all payments of principal and interest have been made. *New Mexico State Inv. Council v. Countrywide Fin. Corp., et al.,* No. D-0101-CV-2008-02289, Transcript of Proceedings on March 25, 2009 (N.M. 1st Dist. Ct.)
- when a court selects a Lead Plaintiff under the Private Securities Litigation Reform Act ("PSLRA"), the standard for calculating the "largest financial interest" must take into account sales as well as purchases. *In re Comverse Technology Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y., Mar. 2, 2007).
- a managing underwriter can owe fiduciary duties of loyalty and care to an issuer in connection with a public offering of the issuer stock, even in the absence of any contractual agreement. Professor John C. Coffee, a renowned Columbia University securities law professor, commenting on the ruling, stated: "It's going to change the practice of all underwriting." *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y. 3d 11 (2005).

- purchasers of options have standing to sue under federal securities laws. *In re Green Tree Fin. Corp. Options Litig.*, 2002 U.S. Dist. LEXIS 13986 (D. Minn. 2002).
- shareholders have a right to a jury trial in derivative actions. *Ross v. Bernhard*, 396 U.S. 531 (1970).
- a company may have the obligation to disclose to shareholders its Board's consideration of important corporate transactions, such as the possibility of a spin-off, even before any final decision has been made. *Kronfeld v. Trans World Airlines, Inc.*, 832 F.2d 726 (2d Cir. 1987).
- specific standards for assessing whether mutual fund advisors breach fiduciary duties by charging excessive fees. *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 740 F.2d 190 (2d Cir. 1984).
- investment advisors to mutual funds are fiduciaries who cannot sell their trustee positions for a profit. *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971).
- management directors of mutual funds have a duty to make full disclosure to outside directors "in every area where there was even a possible conflict of interest."  *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971).

## COMMENTS FROM THE COURTS

Throughout its history, courts time and again have acknowledged the Firm's ability to vigorously pursue and successfully litigate actions on behalf of investors.

In approving the settlement in *Richard Thorpe and Darrel Weisheit, et al. v. Walter Investment Management, et al.*, No. 1:14-cv-20880-UU (S.D. Fla.) the Judge Ursula Ungaro wrote,

> Class Counsel has developed a reputation for zealous advocacy in securities class actions....The settlement amount of $24 million is an outstanding result.

Judge Jed S. Rakoff, in certifying two Classes in *In re Petrobras Sec. Litig.* in February 2016, wrote:

> "...[O]n the basis not only of USS's counsel's prior experience but also the Court's observation of its advocacy over the many months since it was appointed Lead Counsel, the Court concludes that Pomerantz, the proposed class counsel, is "qualified, experienced and able to conduct the litigation." ...[T]he Pomerantz firm has both the skill and resources to represent the Classes adequately."

At the May 2015 hearing wherein the court approved the settlement in *Courtney, et al. v. Avid Technology, et al.*, No. 1:13-cv-10686-WGY (D. Mass.) following oral argument by Jeremy A. Lieberman, Judge William G. Young stated,

> This has been very well litigated. It is always a privilege. I don't just say that as a matter of form. And I thank you for the vigorous litigation that I've been permitted to be a part of. (Tr. at 8-9)

At the January 2012 hearing wherein the court approved the settlement in *In re Chesapeake Shareholder Derivative Litig*. No. CJ-2009-3983 (Okla. Dist.), following oral argument by Marc I. Gross, Judge Daniel L. Owens stated,

> Counsel, it's a pleasure, and I mean this and rarely say it. I think I've said it two times
> in 25 years. It is an extreme pleasure to deal with counsel of such caliber.
> (Tr. at 48)

In approving the $225 million settlement in *In re Comverse Technology Inc. Sec. Litig.*, No. 06-CV-1825
(E.D.N.Y.) in June 2010, Judge Nicholas G. Garaufis stated:

> As outlined above, the recovery in this case is one of the highest ever achieved in
> this type of securities action. ... The court also notes that, throughout this litigation,
> it has been impressed by Lead Counsel's acumen and diligence. The briefing has
> been thorough, clear, and convincing, and ... Lead Counsel has not taken short cuts
> or relaxed its efforts at any stage of the litigation.

In approving a $146.25 million settlement in *In re Charter Communications Sec. Litig.*, 02-CV-1186
2005 U.S. Dist. LEXIS 14772 (E.D. Mo., June 30, 2005), in which Pomerantz served as sole Lead
Counsel, Judge Charles A. Shaw praised the Firm's efforts:

> This Court believes Lead Plaintiff achieved an excellent result in a complex action,
> where the risk of obtaining a significantly smaller recovery, if any, was substantial. In
> awarding fees to Pomerantz, the Court cited "the vigor with which Lead Counsel
> ...investigated claims, briefed the motions to dismiss, and negotiated the settlement."

In approving a $24 million settlement in *In re Force Protection, Inc.* 08 CV 845 (D.S.C. 2011), Judge C.
Weston Houk described the Firm as "attorneys of great ability and great reputation" and
commended the Firm for having "done an excellent job."

In certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens*,
2005 U.S. Dist. LEXIS (S.D.N.Y.), Judge Gerard D. Lynch stated that Pomerantz had "ably and
zealously represented the interests of the class."

Numerous courts have made similar comments:

- Appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Sec. Litig.*, No 05-CV-0725-
  W-ODS (W.D. Mo.), a class action that involved a massive fraud and restatements spanning
  several years, the District Court observed that the Firm "...has significant experience (and
  has been extremely effective) litigating securities class actions, employs highly qualified
  attorneys, and possesses ample resources to effectively manage the class litigation and
  protect the class's interests."

- In approving the settlement in *In re Wiring Devices Antitrust Litigation*, MDL Docket No. 331
  (E.D.N.Y. Sept. 9, 1980), Chief Judge Jack B. Weinstein stated that "Counsel for the plaintiffs
  I think did an excellent job.... They are outstanding and skillful. The litigation was and is
  extremely complex. They assumed a great deal of responsibility. They recovered a very
  large amount given the possibility of no recovery here which was in my opinion substantial."

- In *Snyder v. Nationwide Insurance Co.*, Index No. 97/0633, (N.Y. Supreme Court, Onondaga
  County), a case where Pomerantz served as Co-Lead Counsel, Judge Tormey stated, "It was

a pleasure to work with you. This is a good result. You've got some great attorneys working on it."

- In *Steinberg v. Nationwide Mutual Insurance Co.*, 99 CV 7725 (E.D.N.Y.), Judge Spatt, granting class certification and appointing the Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification." (2004 U.S. Dist. LEXIS 17669 at *24)

- In *Mercury Savings and Loan*, CV 90-87 LHM (C.D. Cal.), Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."

- In *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.), Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering ...[in] an extremely complex matter," and concluded that the case was "very well-handled and managed." (Tr. at 6, 5/20/92; Tr. at 10, 10/10/92)

- In *Nodar v. Weksel*, 84 Civ. 3870  (S.D.N.Y.), Judge Broderick acknowledged "that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result." (Tr. at 21-22, 12/27/90)

- In *Klein v. A.G. Becker Paribas, Inc.*, 83 Civ. 6456 (S.D.N.Y.), Judge Goettel complimented the Firm for providing "excellent ...absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87)

- In *Digital Sec. Litig.*, 83-3255Y (D. Mass.), Judge Young lauded the Firm for its "[v]ery fine lawyering." (Tr. at 13, 9/18/86)

- In *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y.), Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."

- In *Rauch v. Bilzerian*, 88 Civ. 15624 (Sup. Ct. N.J.), the court, after trial, referred to Pomerantz partners as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court."

# ANTITRUST LITIGATION

Pomerantz has earned a reputation for prosecuting complex antitrust and consumer class actions with vigor, innovation, and success. Pomerantz's Antitrust and Consumer Group has recovered billions of dollars for the Firm's business and individual clients and the classes that they represent. Time and again, Pomerantz has protected our free-market system from anticompetitive conduct, such as price fixing, monopolization, exclusive territorial division, pernicious pharmaceutical conduct, and false advertising. Pomerantz's advocacy has spanned across diverse product markets, exhibiting the Antitrust and Consumer Group's versatility to prosecute class actions on any terrain.

Pomerantz has served and is currently serving in leadership or co-leadership roles in several high-profile multi-district litigation class actions. The Firm currently represents a class of lending institutions in New York that originated, purchased outright, or purchased a participation interest in loans paying interest rates tied to the U.S. Dollar Interbank Offered Rate (USD LIBOR), *The*

*Berkshire Bank v. Bank of America Corp.* (S.D.N.Y.) (2012). It is alleged that the class suffered damages as a result of collusive manipulation by the contributor panel banks that artificially increased the USD LIBOR rate during the class period, causing them to receive lower interest than they would have otherwise.

Pomerantz also currently represents baseball and hockey fans in a potentially game-changing antitrust class action against Major League Baseball and the National Hockey League challenging the exclusive territorial division of live television broadcasts, internet streaming, and the resulting geographic blackouts. *See Laumann v. NHL* and *Garber v. MLB* (S.D.N.Y.) (2012).

Pomerantz has spearheaded the effort to challenge harmful anticompetitive conduct by pharmaceutical companies—including Pay-for-Delay Agreements—that artificially inflates the price of prescription drugs by keeping generic versions off the market.

Even prior to the 2013 precedential U.S. Supreme Court decision in *Actavis*, Pomerantz litigated and successfully settled the following generic-drug-delay cases:

- *In re Flonase Antitrust Litig.* (E.D. Pa.) (2008) ($35 million);
- *In re Toprol XL Antitrust Litig.* (D. Del.) (2006) ($11 million); and
- *In re Wellbutrin SR Antitrust Litig.* (E.D. Pa.) (2004) ($21.5 million).

Other exemplary victories include Pomerantz's prominent role in *In re NASDAQ Mkt.-Makers Antitrust Litig.* (S.D.N.Y.), which resulted in a settlement in excess of $1 billion for class members, one of the largest antitrust settlements in history. Pomerantz also played prominent roles in *In re Sorbates Direct Purchaser Antitrust Litig.* (N.D. Cal.), which resulted in over an $82 million recovery, and in *In re Methionine Antitrust Litig.* (N.D. Cal.), which resulted in a $107 million recovery. These cases illustrate the resources, expertise, and commitment that Pomerantz's Antitrust Group devotes to prosecuting some of the most egregious anticompetitive conduct.

# CORPORATE GOVERNANCE LITIGATION

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. We strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. We vigorously pursue corporate governance reform, particularly in the area of excess compensation, where it can address the growing disparity between the salaries of executives and the workers of major corporations. We have successfully utilized litigation to bring about corporate governance reform in numerous cases, and always consider whether such reforms are appropriate before any case is settled.

Pomerantz partners are frequent speakers at domestic and international conferences on the importance of securities fraud actions in such countries as the United Kingdom, France, and Israel. According to Partner, Marc Gross, "We need to have these kinds of legal remedies available in order to maintain corporate honesty and accountability."

Pomerantz's Corporate Governance Practice Group, led by Partner Gustavo F. Bruckner, enforces shareholder rights and prosecutes actions challenging corporate transactions that arise from an unfair process or result in an unfair price for shareholders.

In September 2017, New Jersey Superior Court Judge Julio Mendez, of Cape May County Chancery Division, approved Pomerantz's settlement in a litigation against Ocean Shore Holding Co. The settlement provided non-pecuniary benefits for a non-opt out class. In so doing, Judge Mendez became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors [*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)]. There has never before been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate. After conducting an analysis of each of the nine *Girsh* factors, and holding that "class actions settlements involving non-monetary benefits to the class are subject to more exacting scrutiny," Judge Mendez held that the proposed settlement provided a material benefit to the shareholders.

In February 2018, the Maryland Circuit Court, Montgomery County, approved a $17.5 million settlement that plaintiffs achieved as additional consideration on behalf of a class of shareholders of American Capital, Ltd. *In Re American Capital, Ltd. Shareholder Litigation*., C.A. No. 422598-V (2018). The settlement resolved Plaintiffs' claims regarding a forced sale of American Capital.

Pomerantz filed an action challenging the sale of American Capital, a Delaware corporation with its headquarters in Maryland. Among other things, American Capital's board of directors (the "Board") agreed to sell the company at a price below what two other bidders were willing to offer. Worse, the merger price was even below the amount that shareholders would have received in the company's planned phased liquidation, which the company was considering under pressure from Elliott Management, an activist hedge fund and holder of approximate 15% of American Capital stock. Elliott was not originally named as a defendant, but after initial discovery showed the extent of its involvement in the Board's breaches of fiduciary duty, Elliott was added as a defendant in an amended complaint under the theory that Elliott exercised actual control over the Board's decision-making. Elliott moved to dismiss on jurisdictional grounds and additionally challenged its alleged status as a controller of American Capital. In June 2017, minutes before the hearing on defendants' motion to dismiss, a partial settlement was entered into with the members of the Board for $11.5 million. The motion to dismiss hearing proceeded despite the partial settlement, but only as to Elliott. In July 2017, the court denied the motion to dismiss, finding that Elliott, "by virtue solely of its own conduct, … has easily satisfied the transacting business prong of the Maryland long arm statute." The court also found that the "amended complaint in this case sufficiently pleads that Elliott was a controller with respect to" the sale, thus implicating a higher standard of review. Elliott subsequently settled the remaining claims for an additional $6 million.  Pomerantz served as co-lead counsel.

In May 2017, the Circuit Court of the State of Oregon approved the settlement achieved by Pomerantz and co-counsel of a derivative action brought by two shareholders of Lithia Motors, Inc. The lawsuit alleged breach of fiduciary duties by the board of directors in approving, without any meaningful review, the Transition Agreement between Lithia Motors and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, Bryan DeBoer, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car

allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

The *Lithia* settlement extracted corporate governance therapeutics that provide substantial benefits to Lithia and its shareholders and redress the wrongdoing alleged by plaintiffs. The board will now be required to have at least five independent directors -- as defined under the New York Stock Exchange rules -- by 2020; a number of other new protocols will be in place to prevent self-dealing by board members. Further, the settlement calls for the Transition Agreement to be reviewed by an independent auditor who will determine whether the annual payments of $1,060,000 for life to Sidney DeBoer are reasonable. Lithia has agreed to accept whatever decision the auditor makes.

In January 2017, the Group received approval of the Delaware Chancery Court for a $5.6 million settlement it achieved on behalf of a class of shareholders of Physicians Formula Holdings Inc. over an ignored merger offer in 2012. *In re: Physicians Formula Holdings Inc.*, C.A. No. 7794-VCL (Del. Ch. Ct.).

The Group obtained a landmark ruling in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. Ct.), that fee-shifting bylaws adopted after a challenged transaction do not apply to shareholders affected by the transaction. They were also able to obtain a *25% price increase* for members of the class cashed out in the going private transaction.

In *Miller v. Bolduc*, SUCV 2015-00807 (Super. Ct. Mass.) the Group caused Implant Sciences to hold its first shareholder annual meeting in five years and put an important compensation grant up for a shareholder vote.

In *Smollar v. Potarazu*, C.A. No. 10287-VCN (Del. Ch. Ct.), the Group pursued a derivative action to bring about the appointment of two independent members to the board of directors, retention of an independent auditor, dissemination of financials to shareholders and the holding of first ever in-person annual meeting, among other corporate therapeutics.

In *Hallandale Beach Police Officers and Firefighters' Personnel Retirement Fund vs. lululemon athletica, Inc.*, Civil Action No. 8522-VCP (Del. Ch. Ct.), in an issue of first impression in Delaware, the Chancery Court ordered the production of the chairman's 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

In *Strougo v. North State Bancorp*, 15 CVS 14696 (N.C. Super. Ct.), the Group caused the Merger Agreement to be amended to provide a "majority of the minority" provision for the holders of North State Bancorp's common stock in connection with the shareholder vote on the merger. As a result of the Action, common shareholders could stop the merger if they did not wish it to go forward.

Pomerantz's commitment to advancing sound corporate governance principles is further demonstrated by the more than 26 years that we have co-sponsored The Abraham L. Pomerantz Lecture Series with Brooklyn Law School. These lectures focus on critical and emerging issues

concerning shareholder rights and corporate governance and bring together top academics and litigators.

Our bi-monthly newsletter, *The Pomerantz Monitor*, provides institutional investors updates and insights on current issues in corporate governance.

# PARTNERS

## JEREMY A. LIEBERMAN

Jeremy A. Lieberman is Pomerantz's Co-Managing Partner with Patrick Dahlstrom. Mr. Lieberman became associated with the Firm in August 2004, and became a partner in January 2010. In 2018, he was honored as a "Titan of the Plaintiffs Bar" by Law360. He has been named a Super Lawyers® "Top-Rated Securities Litigation Attorney" in 2016, 2017, and 2018 – a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. sThe Legal 500, in honoring Pomerantz as a Leading Firm for 2016 and 2017, stated, "In New York, Jeremy Lieberman is 'super impressive – a formidable adversary for any defense firm."

Mr. Lieberman led the litigation in *In re Petrobras Sec. Litig.,* a closely-watched securities class action arising from a multi-billion dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. – Petrobras, in which Pomerantz was sole Lead Counsel. The biggest corruption in the history of Brazil ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. In January and February 2018, Mr. Lieberman achieved a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Mr. Lieberman also secured a significant victory for Petrobras investors at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by the Third Circuit Courts of Appeals. The ruling will have a positive impact on plaintiffs in securities fraud litigation.

Mr. Lieberman is Lead Counsel in a putative securities class action that alleges Barclays PLC misled institutional investors about the manipulation of the banking giant's so-called "dark pool" trading systems in order to provide a trading advantage to high-frequency traders over its institutional investor clients. This case turns on the duty of integrity owed by Barclays to its clients. In November 2017, he achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Mr. Lieberman has had an integral role in a number of high-profile securities class and derivative actions, including *Comverse Technology Sec. Litig.*, in which he and his partners achieved a historic $225 million settlement on behalf of the Class, which was the second-largest options backdating settlement to date.

Mr. Lieberman also serves as Lead Counsel in a number of the most high-profile securities class actions pending in the U.S. courts, such as *In re Mylan N.V. Sec. Litig., In re Perrigo Co. Sec. Litig., In re Yahoo!, Inc. Sec. Litig.* and *In re Fiat Chrysler Automobiles N.V. Sec. Litig.* He is Lead Counsel in the Firm's case against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations.

Mr. Lieberman serves as Interim Class Counsel on behalf of a class lenders and financial institutions litigating claims arising out of the London Interbank Offered Rate ("LIBOR") rate rigging scandal. He was Lead Counsel in *In re Medicis Corp. Sec. Litig.*, in which the court approved an $18 million settlement, and is Lead Counsel in a number of the Firm's other litigations.

In *In re China North East Petroleum Corp. Sec. Litig.*, Mr. Lieberman achieved a significant victory for shareholders in the United States Court of Appeals for the Second Circuit, whereby the Appeals Court ruled that a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure did not eviscerate an investor's claim for damages. The Second Circuit's decision was deemed "precedential" by the *New York Law Journal*, and provides critical guidance for assessing damages in a § 10(b) action.

Mr. Lieberman regularly consults with Pomerantz's international institutional clients, including pension funds, regarding their rights under the U.S. securities laws. Mr. Lieberman is working with the Firm's international clients to craft a response to the Supreme Court's ruling in *Morrison v. Nat'l Australia Bank, Ltd.*, which limited the ability of foreign investors to seek redress under the federal securities laws. Currently, Mr. Lieberman is representing several UK and EU pension funds and asset managers in individual actions against BP plc in the United States District Court for the Southern District of Texas.

Mr. Lieberman is a frequent lecturer regarding current corporate governance and securities litigation issues. In March 2017, he spoke at the ICGN conference in Washington D.C., regarding recent trends in foreign securities litigation. He also recently led a discussion regarding U.S. securities class actions in Paris, France.

Mr. Lieberman graduated from Fordham University School of Law in 2002. While in law school, he served as a staff member of the *Fordham Urban Law Journal*. Upon graduation, he began his career at a major New York law firm as a litigation associate, where he specialized in complex commercial litigation.

Mr. Lieberman is admitted to practice in the State of New York; the U.S. District Courts for the Southern and Eastern Districts of New York, the Southern District of Texas, the District of Colorado, the Eastern District of Michigan and Northern District of Illinois; the U.S. Courts of

Appeals for the Second, Third, Fourth, Sixth, Ninth, and Tenth Circuits; and the United States Supreme Court.

## PATRICK V. DAHLSTROM

Patrick Dahlstrom is Pomerantz's Co-Managing Partner with Jeremy A. Lieberman. Mr. Dahlstrom joined Pomerantz as an associate in 1991 and became a partner in January 1996. He is based in the Firm's Chicago office. Mr. Dahlstrom was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" in 2018.

Mr. Dahlstrom is a member of the Firm's Institutional Investor Practice and New Case Groups, and has extensive experience litigating cases under the PSLRA. He was partner-in-charge of *In re Comverse Technology Sec. Litig.*, No. 06-CV-1825 (E.D.N.Y.), in which the Firm, as Lead Counsel, recovered a $225 million settlement for the Class – the second-highest ever for a case involving the back-dating options, and one of the largest recoveries ever from an individual officer-defendant, the company's founder and former CEO. In *Comverse*, the Firm obtained an important clarification of how courts calculate the "largest financial interest" in connection with the selection of a Lead Plaintiff, in a manner consistent with *Dura*, 544 U.S. 336 (2005). Judge Garaufis, in approving the settlement, lauded Pomerantz: "The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and …Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation."

In *DeMarco v. Robertson Stephens*, 2005 U.S. Dist. LEXIS (S.D.N.Y. 2005), Mr. Dahlstrom obtained the first class certification in a federal securities case involving fraud by analysts.

Mr. Dahlstrom's extensive experience in litigation under the PSLRA has made him an expert not only at making compelling arguments on behalf of Pomerantz' clients for Lead Plaintiff status, but also at discerning weaknesses of competing candidates. *In re American Italian Pasta Co. Sec. Litig*. and *Comverse* are the most recent examples of his success in getting our clients appointed sole Lead Plaintiff despite competing motions by numerous impressive institutional clients.

Mr. Dahlstrom was a member of the trial team in *In re ICN/Viratek Sec. Litig.* (S.D.N.Y.), which, after trial, settled for $14.5 million. Judge Wood praised the trial team: "[P]laintiffs counsel did a superb job here on behalf of the class …This was a very hard fought case. You had very able, superb opponents, and they put you to your task …The trial work was beautifully done and I believe very efficiently done."

Mr. Dahlstrom's speaking engagements include interviews by NBC and the CBC regarding securities class actions, and among others, a presentation at the November 2009 State Association of County Retirement Systems Fall Conference as the featured speaker at the Board Chair/Vice Chair Session entitled: "Cleaning Up After the 100 Year Storm. How trustees can protect assets and recover losses following the burst of the housing and financial bubbles."

Mr. Dahlstrom is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor in Chief of the *Administrative Law Journal*, a member of the Moot Court Board representing Washington College of Law in the New York

County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic. Upon graduating, Mr. Dahlstrom served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge.

Mr. Dahlstrom is admitted to practice in New York and Illinois, as well as the United States District Courts for the Southern and Eastern Districts of New York, Northern District of Illinois, Northern District of Indiana, Eastern District of Wisconsin, District of Colorado, Western District of Pennsylvania, the United States Courts of Appeals for the First, Fourth, Sixth, Seventh, Eighth, and Ninth Circuits, and the United States Supreme Court.

## GUSTAVO F. BRUCKNER

Gustavo F. Bruckner heads Pomerantz's Corporate Governance practice area, which enforces shareholder rights and prosecutes litigation challenging corporate actions that harm shareholders. Under Mr. Bruckner's leadership, the Corporate Governance group has achieved numerous noteworthy litigation successes. He has been quoted frequently by *Bloomberg*, *Law360*, *The New York Times*, and *Reuters* and was honored in 2016, 2017, and 2018 by Super Lawyers® as a "Top-Rated Securities Litigation Attorney," a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. Mr. Bruckner regularly appears in state and federal courts across the nation.

In September 2017, Mr. Bruckner's Corporate Governance team achieved a settlement in New Jersey Superior Court that provided non-pecuniary benefits for a non-opt out class, in Pomerantz's litigation against Ocean Shore Holding Co. In approving the settlement, Judge Julio Mendez, of Cape May County Chancery Division, became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors [*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)]. Never before has there been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate.

Mr. Bruckner successfully argued *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. Ct. 2015), obtaining a landmark ruling in Delaware that bylaws adopted after shareholders are cashed do not apply to shareholders affected by the transaction. In the process, Mr. Bruckner and the Corporate Governance team beat back a fee-shifting bylaw and were able to obtain a 25% price increase for members of the class cashed out in the "going private" transaction. Shortly thereafter, the Delaware Legislature adopted legislation to ban fee-shifting bylaws.

In *Stein v. DeBoer; Jessos derivatively on behalf of Lithia Motors, Inc. v. DeBoer* (Or. Cir. 2017), Mr. Bruckner and the Corporate Governance group achieved a settlement that provides significant corporate governance therapeutics on behalf of shareholders of the company. Lithia Motors' board had approved, without meaningful review, the Transition Agreement between the company and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

In *Miller v. Bolduc*, SUCV 2015-00807 (Mass. Sup. Ct. 2015), Mr. Bruckner and the Corporate Governance group, by initiating litigation, caused Implant Sciences to hold its first shareholder annual meeting in 5 years and to place an important compensation grant up for a shareholder vote.

In *Strougo v. North State Bancorp*, 15 CVS 14696 (N.C. Super. Ct. 2015), Mr. Bruckner and the Corporate Governance team caused the North State Bancorp merger agreement to be amended to provide a "majority of the minority" provision for common shareholders in connection with the shareholder vote on the merger. As a result of the action, common shareholders had the ability to stop the merger if they did not wish it to go forward.

In *Hallandale Beach Police Officers and Firefighters' Personnel Retirement Fund vs. lululemon athletica, Inc.*, C.A. No. 8522-VCP (Del. Ch. Ct. 2014), in an issue of first impression in Delaware, Mr. Bruckner successfully argued for the production of the company chairman's Rule 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

Mr. Bruckner was Co-Lead Counsel in the matter of *In re Great Wolf Resorts, Inc. Shareholders Litigation*, No. C.A. 7328-VCN (Del. Ch. 2012), obtaining the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders.

Mr. Bruckner received his law degree in 1992 from the Benjamin N. Cardozo School of Law, where he served as an editor of the Moot Court Board and on the Student Council. Upon graduation, he received the award for outstanding student service.

After graduating law school, Mr. Bruckner served as Chief-of-Staff to a New York City legislator.

Mr. Bruckner is a Mentor and Coach to the NYU Stern School of Business, Berkley Center for Entrepreneurial Studies, New Venture Competition. He was a University Scholar at NYU where he obtained a B.S. in Marketing and International Business in 1988 and an MBA in Finance and International Business in 1989.

Mr. Bruckner is a Trustee and the Treasurer of the Beit Rabban Day School, and an arbitrator in the Civil Court of the City of New York.

Mr. Bruckner is licensed to practice in New York and New Jersey and is admitted to practice before the United States District Court for the Eastern and Southern Districts of New York, the United States District Court for the District of New Jersey, United States Court of Appeals for the Second and Seventh Circuits, and the United States Supreme Court.

## EMMA GILMORE

Emma Gilmore is a partner at the Firm and is regularly involved in high-profile class-action litigation. Ms. Gilmore was honored as a 2018 Super Lawyer® in the New York Metro area. In 2017 and

2018, Ms. Gilmore was selected to the Lawyers of Distinction, an exclusive list of top practitioners in the nation.

Ms. Gilmore recently played a leading role in the Firm's class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm was sole Lead Counsel. The biggest corruption in the history of Brazil has ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. Ms. Gilmore deposed and defended numerous fact and expert witnesses, including deposing the former CEO of Petrobras, the whistleblower, and the chief accountant. She was also the principal drafter of the appellate brief and played an instrumental role in securing a significant victory for investors in this case at the Second Circuit Court of Appeals, when the Court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts. She opposed defendants' petition for a writ of certiorari to the Supreme Court. In a significant victory for investors, Pomerantz has achieved a historic $3 billion settlement with Petrobras. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a class action involving a foreign issuer, the fifth-largest class action settlement ever achieved in the United States, and the largest settlement achieved by a foreign lead plaintiff.

Ms. Gilmore played a leading role in *Strougo v. Barclays PLC*, a high-profile securities class action that alleges Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. She defeated defendants' efforts to dismiss the action and more recently contributed to securing an important precedent-setting opinion from the Second Circuit, holding that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Ms. Gilmore also plays a leading role in the Firm's class action litigation against Arconic, arising from the deadliest U.K. fire in more than a century.

She also represents Safra Bank in a class action against Samarco Mineracao S.A., in connection with the Fundao dam-burst disaster, which is widely regarded as the worst environmental disaster in Brazil's history.

Ms. Gilmore also plays a leading role in the Firm's class action litigation against Yahoo! Inc., in which the Firm is lead counsel. The case involves the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised.

Among other cases, Ms. Gilmore is part of the team prosecuting securities fraud claims against BP on behalf of many foreign and domestic public and private pension funds arising from the company's 2010 Deepwater Horizon oil spill. *In re BP p.l.c. Secs. Litig.*, No. 4:10-md-2185 (S.D. Tex.). She helped devise a cutting-edge strategy that established the right of individual foreign investors who purchased foreign-traded shares of a foreign corporation to pursue claims for securities fraud in a U.S. court, thereby overcoming obstacles created by the U.S. Supreme Court's 2010 decision in *Morrison v. Nat'l Australia Bank Ltd.*

Ms. Gilmore secured a unanimous decision by a panel of the Ninth Circuit Court of Appeals, benefitting defrauded investors in *Costa Brava Partnership III LP v. ChinaCast Education Corp*. In an issue of first impression, the Ninth Circuit held that imputation of the CEO's scienter to the company was warranted vis-a-vis innocent third parties despite the fact that the executive acted for his own benefit and to the company's detriment.

She has also devoted a significant amount of time to pro bono matters. She played a critical role in securing a unanimous ruling by the Arkansas Supreme Court striking down as unconstitutional a state law banning cohabiting individuals from adopting children or serving as foster parents. The ruling was a relief for the 1,600 plus children in the state of Arkansas who needed a permanent family. The litigation generated significant publicity, including coverage by the Arkansas Times, the Wall Street Journal, and the New York Times.

Before joining Pomerantz, Ms. Gilmore was a litigation associate with the firms of Skadden, Arps, Slate, Meagher and Flom, LLP and Sullivan & Cromwell, LLP, where she was involved in commercial and securities matters. Her experience includes working on the *WorldCom Securities Litigation* representing more than a dozen prominent banks and also representing clients such as General Electric, Columbia University, Samsung, LG Electronics, Sony, Philips, BT, and JVC.

She also served as a law clerk to the Honorable Thomas C. Platt, former U.S. Chief Judge for the Eastern District of New York.

Ms. Gilmore graduated *cum laude* from Brooklyn Law School, where she served as a staff editor for the *Brooklyn Law Review*. She was the recipient of two CALI Excellence for the Future Awards, being the highest scoring student in the subjects of evidence and discovery. She graduated *summa cum laude* from Arizona State University, with a BA in French and a minor in Business.

She serves on the Firm's Anti-Harassment and Discrimination Committee.

## JENNIFER PAFITI

Jennifer Pafiti became associated with the Firm in May 2014, and became a partner in December 2015. A dual-qualified U.K. solicitor and U.S. attorney, she is the Firm's Head of Investor Relations and also takes an active role in complex securities litigation, representing clients in both class and non-class action securities litigation. In 2016, the *Daily Journal* selected Ms. Pafiti for its prestigious "Top 40 Under 40" list of the best young attorneys in California. In 2017, Ms. Pafiti was named a Southern California Rising Star by Super Lawyers. Ms. Pafiti has also been included in Super Lawyers and Rising Stars: Top Women Attorneys in Southern California for the year 2017.

Ms. Pafiti was an integral member of the Firm's litigation team for *In re Petrobras Sec. Litig.*, a case relating to a multi-billion dollar kickback and bribery scheme at Brazil's largest oil company, Petróleo Brasileiro S.A .- Petrobras, in which the Firm was sole Lead Counsel. She helped secure a significant victory for investors in this case at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other Circuit courts such as the Third and Sixth Circuit Courts of Appeals. Working closely with Lead Plaintiff, Universities Superannuation Scheme Limited, she was also instrumental in

achieving the historic settlement of $3 billion for Petrobras investors. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Ms. Pafiti is also involved in the litigations of *Dabe v. Calavo Growers*, *Flynn v. Sientra, Inc.*, *Isensee v. KaloBios*, *Robb v. FitBit, Inc.*, *Monachelli v. Hortonworks, Inc.*, *Plumley v. Sempra Energy*, and *Greenberg v. Sunrun, Inc.*, in which the Firm is Lead Counsel.

Ms. Pafiti earned a Bachelor of Science degree in Psychology at Thames Valley University in England prior to studying law. She earned her law degrees at Thames Valley University (G.D.L.) and the Inns of Court School of Law (L.P.C.) in the U.K. Ms. Pafiti is admitted to practice law in England and Wales (Solicitor) and in California.

Before studying law in England, Ms. Pafiti was a regulated financial advisor and senior mortgage underwriter at a major U.K. financial institution. She holds full CeFA and CeMAP qualifications. After qualifying as a Solicitor, Ms. Pafiti specialized in private practice civil litigation which included the representation of clients in high-profile cases in the Royal Courts of Justice. Prior to joining Pomerantz, Ms. Pafiti was an associate with Robbins Geller Rudman & Dowd LLP in in their San Diego office.

Ms. Pafiti regularly travels throughout the U.S. and Europe to advise clients on how best to evaluate losses to their investment portfolios attributable to financial fraud or other misconduct, and how best to maximize their potential recoveries.

Ms. Pafiti serves on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls.

Ms. Pafiti is a member of the National Association of Pension Fund Attorneys and represents the Firm as a member of the California Association of Public Retirement Systems, the State Association of Country Retirement Systems, the National Association of State Treasurers, the National Conference of Employee Retirement Systems, the Texas Association of Public Employee Retirement Systems, and the U.K.'s National Association of Pension Funds.

Ms. Pafiti is admitted to practice in England and Wales; the State of California; and the United States District Courts for the Northern, Central and Southern Districts of California. She is based in Los Angeles.

## JOSHUA B. SILVERMAN

Joshua B. Silverman specializes in individual and class action securities litigation. He was Lead Counsel in *In re Groupon, Inc. Sec. Litig.*, achieving a $45 million settlement, representing one of the highest recoveries as a percentage of damages in the Seventh Circuit. Mr. Silverman was also Co-

Lead Counsel in *In re MannKind Corp. Sec. Litig.*, reaching a settlement valued at more than $23 million and setting precedent regarding the use of expert information in a shareholder complaint. He served as Co-Lead Counsel for three large public funds in *New Mexico State Investment Council, et al. v. Countrywide Fin. Corp., et al.*, resulting in a very favorable confidential settlement. He regularly represents clients in controversies involving securities fraud, private equity investments, hedge fund investments, structured financial instruments, securities lending arrangements, and investment consultants. In addition, Mr. Silverman was Co-Lead Counsel in *New Mexico State Inv. Council v. Cheslock Bakker & Associates* (summary judgment award in excess of $30 million), played a key role in the Firm's representation of investors before the United States Supreme Court in *StoneRidge*, and prosecuted many of the Firm's other class cases, including *In re Sealed Air Corp. Sec. Litig.* ($20 million settlement), *Bruce v. Suntech Power Holdings Corp.* ($5 million settlement); *In re AgFeed, Inc. Sec. Litig.* ($7 million settlement); and *In re Hemispherx BioPharma Sec Litig.* ($2.75 million settlement).

Before joining Pomerantz, Mr. Silverman practiced at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies, where he represented one of the largest independent futures commission merchants in commodities fraud and civil RICO cases. He also spent two years as a securities trader, and continues to actively trade stocks, futures, and options for his own account.

Mr. Silverman is a 1993 graduate of the University of Michigan, where he received Phi Beta Kappa honors, and a 1996 graduate of the University of Michigan Law School.

Mr. Silverman is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, the United States Courts of Appeal for the First, Second, Third, Seventh and Eighth Circuits, and the United States Supreme Court.

## LEIGH HANDELMAN SMOLLAR

Leigh Handelman Smollar, formerly Of Counsel to Pomerantz, became a partner in January 2012.

As a member of Pomerantz' Securities Litigation Group, Ms. Smollar plays a key role in litigating class actions against public companies for securities fraud. She was a member of the Pomerantz team in its successful litigation on behalf of three New Mexico pension funds related to Countrywide's mortgage-backed securities, resulting in a very favorable confidential settlement. Ms. Smollar has been a member of the Pomerantz litigation team for many of the cases where significant settlements were obtained. *See In re Sealed Air Corp. Sec. Litig.*, No. 03-CV-4372 (D.N.J.)($20 million settlement approved December 2009); and *In re Safety-Kleen Stockholders Securities Litigation*, 3:00-736-17 (D. S.C.) (as Co-Lead Counsel, Firm obtained a $54.5 million settlement).

In June 2011, as a panelist at the Illinois Public Employee Retirement Systems Summit in Chicago, Illinois, Ms. Smollar gave a presentation entitled "Carrying Out Fiduciary Responsibilities in Management and Investments." She authored several articles and updates for the Illinois Institute for Continuing Legal Education (IICLE) including "Shareholder Derivative Suits and Stockholder Litigation in Illinois," published in IICLE Chancery and Special Remedies 2004 Practice Handbook; "Prosecuting Securities Fraud Class Actions," published in IICLE Chancery and Special Remedies 2009 Practice Handbook, including a 2011 supplement to Chancery and Special Remedies; and a new chapter in the 2013 Edition of the Chancery and Special Remedies Practice Handbook. She also recently submitted an article for publication for the *Loyola Law Journal* entitled "The Importance Of

Conducting Thorough Investigations of Confidential Witnesses in Securities Fraud Litigation," expected for publication in 2015.

Ms. Smollar is currently litigating *In re Galena Biopharma, Inc.*, 3:14-cv-00367 (D. Or.); *Alizadeh v. Tellabs, Inc.* et. al, 13-cv-537 (N.D. Ill.); *Lubbers v. Flagstar Bancorp, Inc.*, 14-cv-13459 (E.D. MI); and *Cooper v. Thoratec Corp.*, 14-cv-360 (N.D. Ca).

She is a 1993 graduate of the University of Illinois at Champaign-Urbana, where she graduated from the School of Commerce with high honors, and a 1996 graduate of the Chicago-Kent College of Law. Ms. Smollar spent the next five years specializing in insurance defense litigation.

Ms. Smollar is admitted to practice in Illinois, the United States District Court for the Northern District of Illinois, and the United States Courts of Appeals for the Seventh and Eighth Circuits.

## MATTHEW L. TUCCILLO

Matthew L. Tuccillo joined Pomerantz in 2011 and was named a Partner in December 2013. He is responsible, on an ongoing basis, for the Firm's litigation of numerous securities fraud class actions pending nationwide, currently including: *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, No. 15-cv-05841 (N.D. Cal.); *Perez v. Higher One Holdings, Inc., et al.*, No. 14-cv-00755-AWT (D. Conn.); *Altayyar v. Etsy, Inc.*, No. 17-1180 (2d Cir.); and *In re Toronto-Dominion Bank Securities Litigation*, 1:17-cv-01735 (D.N.J.).

Mr. Tuccillo oversees and is the lead litigator on the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill, pending in Multidistrict Litigation 2185, *In re BP p.l.c. Secs. Litig.*, No. 4:10-md-2185 (S.D. Tex.). He briefed and argued successful oppositions to three rounds of BP's motions to dismiss the claims of roughly 100 institutional investors, drawing the court's praise for the "quality of lawyering," which it called "uniformly excellent." In leading the BP litigation, Mr. Tuccillo has secured some of the Firm's most ground-breaking rulings:

- He successfully argued that foreign and domestic investors had asserted viable "holder claims" seeking to recover investment losses due to their retention of already-owned shares in reliance upon the fraud, which is believed to be the first ruling by a U.S. court sustaining such a theory under English common law.

- He successfully argued against *forum non conveniens* dismissal, obtaining the first ruling after the Supreme Court's decision in *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) to permit foreign investors pursuing foreign law claims to seek recovery for losses on a foreign stock exchange in a U.S. court.

- He successfully argued that the Securities Litigation Uniform Standards Act of 1998 (SLUSA), which extinguishes U.S. state law claims in deference to the U.S. federal securities laws, should not be extended to foreign common law claims being pursued by both domestic and foreign investors.

- He successfully argued that the pendency of a class action extends tolling under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) to both the statute of limitation and the statute of repose applicable to the Securities Exchange Act of 1934.

Mr. Tuccillo also fulfills Pomerantz's roles as MDL 2185 Individual Action Plaintiffs Steering Committee member and sole Liaison with BP and the Court. The Firm's BP clients include nearly three dozen public and private pension funds, investment management firms, limited partnerships, and investment trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia, seeking recovery for losses in BP's common stock (traded on the London Stock Exchange) and American Depository Shares (traded on the NYSE).

As the Firm's lead litigator in *Perez v. Higher One Holdings, Inc., et al.*, No. 14-cv-00755-AWT (D. Conn.), Mr. Tuccillo overcame an initial dismissal to secure an order upholding the pleading in a second amended complaint of five separate threads of fraud over a multi-year period by an education funding company and its executives. Among other rulings, court agreed that the company's reported financial and operating results violated Regulation S-K, Item 303, 17 C.F.R. §229.303, for failure to disclose known trends regarding the underlying misconduct and its impacts on reported results – a rare ruling in the absence of any accounting restatement. The matter has been settled on a class-wide basis for $7.5 million, pending court approval.

As the Firm's lead litigator in *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, No. 15-cv-05841 (N.D. Cal.), Mr. Tuccillo negotiated two separate class-wide settlements worth over $3.25 million in the aggregate, from a bankrupt pharmaceutical company, its jailed former CEO, and two separate D&O insurers. Significantly, he secured payments of cash and stock directly from the bankrupt company, which were twice approved by the bankruptcy court.

Mr. Tuccillo was the Firm's lead litigation lawyer in *In re Silvercorp Metals, Inc. Secs. Litig.*, No. 1:12-cv-09456 (S.D.N.Y.), a securities class action involving a Canadian company with mining operations in China and stock traded on the NYSE. He worked closely with mining, accounting, damages, and market efficiency experts to defeat a motion to dismiss and oversee discovery. After two mediations, the case was resolved for a $14 million all-cash fund. In granting final approval of the settlement, Judge Rakoff noted that the case was "unusually complex," given the technical nature of mining metrics, the need to compare mining standards in Canada, China, and the U.S., and the volume of Chinese-language evidence requiring translation.

Mr. Tuccillo's prior casework also includes litigation and resolution of complex disputes over roll ups of consulting companies and of commercial real estate interests. At Pomerantz, he was on the multi-firm team that litigated and settled *In re Empire State Realty Trust, Inc. Investor Litig.*, No. 650607/2012 (N.Y. Sup. Ct.), representing investors in public and private commercial real estate interests against the long-term lessees/operators, the Malkin family and the Estate of Leona Helmsley, regarding a proposed consolidation, REIT formation, and IPO centered around New York's iconic Empire State Building. These efforts achieved broad relief for the class, including a $55 million cash/securities settlement fund, a restructured deal creating a tax benefit estimated at $100 million, expansive remedial disclosures, and important deal protections.

Mr. Tuccillo has also handled shareholder books and records demands, as well as shareholder derivative, consumer, wage and hour, and mergers and acquisitions litigation. His handling of *GSS 5-*

*08 Trust v. Arch Chemicals, Inc.*, et al., No. X-08 FST-CV11-6010654-S (Conn. Sup. Ct.), concerning a Swiss multi-national's acquisition of a Connecticut-based chemicals company, earned the court's praise for his "preparation" and "hard work."

Before joining Pomerantz, Mr. Tuccillo began his career at a large full-service Boston firm, litigating primarily for corporate clients. He also worked at plaintiff-side firms in Boston and Connecticut, litigating securities, consumer, and wage and hour class actions, as well as complex sale of business disputes. He has helped negotiate numerous multi-million dollar settlements, at times through the use of alternative dispute resolution. His pro bono work includes securing Social Security benefits for a veteran suffering from non-service-related disabilities.

Since 2016, Mr. Tuccillo has been a recommended securities litigator by The Legal 500, which evaluates law firms worldwide for cutting edge, innovative work based on client feedback, practitioner interviews, and independent research. He was honored as a 2016, 2017, and 2018 Super Lawyers® "Top-Rated Securities Litigation Attorney," a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area, after a rigorous process overseen by Thompson Reuters. Since 2014, he has maintained Martindale-Hubbell's highest-available AV® Preeminent™ peer rating, scoring 5.0 out of 5.0 in Securities Law, Securities Class Actions, and Securities Litigation while being described as a "First class, top flight lawyer, especially in complex litigation." Mr. Tuccillo graduated from the Georgetown University Law Center in 1999, where he made the Dean's List. He graduated from Wesleyan University in 1995, and he currently serves as President of the Wesleyan Lawyers Association.

Mr. Tuccillo is a member of the Bars the Supreme Court of the United States; the State of New York; the State of Connecticut; the Commonwealth of Massachusetts; the Second and Ninth Circuit Courts of Appeals; and the United States District Courts for the Southern and Eastern District of New York, Connecticut, Massachusetts, the Northern District of Illinois, and the Southern District of Texas. He is regularly admitted to practice *pro hac vice* in state and federal courts nationwide.

## MURIELLE STEVEN WALSH

Murielle Steven Walsh graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Ms. Steven Walsh interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

Ms. Steven Walsh joined the Firm in 1998 and became a partner in 2007. During her career at Pomerantz, Ms. Steven Walsh has prosecuted highly successful securities class action and corporate governance cases. She was one of the lead attorneys in prosecuting *In re Livent Noteholders' Securities Litigation*, a securities class action in which she obtained a $36 million judgment against the company's top officers, a ruling which was upheld by the Second Circuit on appeal. Ms. Steven Walsh was also part of the team litigating the *EBC I v. Goldman Sachs* case, where the Firm obtained a landmark ruling from the New York Court of Appeals, that underwriters may owe fiduciary duties to their issuer clients in the context of a firm-commitment underwriting of an initial public offering.

Ms. Steven Walsh, along with Senior Partner Jeremy Lieberman, manages the Firm's case against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. She is currently litigating *Ruiz v. Citibank*, Case No. 10-cv-5950 ((S.D.N.Y); *Thorpe v. Walter Investment Management Corp*., Case No. 14-cv-20880-UU (S.D. Fla.); and *Klein v. Conformis*, Case No. 1:15-CV-13295-GAO (D. Mass.).

Ms. Steven Walsh serves on the Board of Trustees of the non-profit organization Court Appointed Special Advocates for Children ("CASA") of Monmouth County. She also serves on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on specific issues that women face in the legal profession are discussed. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls. In the past, Ms. Steven Walsh served as a member of the editorial board for Class Action Reports, a Solicitor for the Legal Aid Associates Campaign, and has been involved in political asylum work with the Association of the Bar of the City of New York.

Ms. Steven Walsh is admitted to practice in New York, the United States District Court for the Southern District of New York, the United States Court of Appeals for the Second Circuit and the United States Court of Appeals for the Sixth Circuit.

Ms. Steven Walsh serves on the Firm's Anti-Harassment and Discrimination Committee.

## MICHAEL J. WERNKE

Michael J. Wernke, who joined Pomerantz as Of Counsel in 2014 and became Partner in 2015, specializes in securities fraud litigation. He was Lead Counsel in *Thomas v. Magnachip Semiconductor Corp. et al*, in which he recently achieved a $23.5 million partial settlement with certain defendants, pending court approval, securing the settlement despite an ongoing investigation by the Securities and Exchange Commission and shareholder derivative actions. He played an integral role in *In re Lumber Liquidators, Inc. Sec. Litig*., in which Pomerantz, as Co-Lead Counsel, achieved a settlement of $26 million in cash and 1,000,000 shares of Lumber Liquidators common stock for the Class.

Mr. Wernke, with Pomerantz Co-Managing Partner Jeremy A. Lieberman, leads the Firm's litigation in *In re Libor Based Financial Instruments Antitrust Litig*. Pomerantz is Interim Lead Counsel for the Lender Class in this closely-watched multi-district litigation, which concerns the manipulation of the critical LIBOR rate by the sixteen banks reporting their lending costs to the British Bankers Association. This action was filed against each of the Contributor Panel banks for the USD LIBOR panel, which includes Bank of America Corporation, Citigroup Inc., Credit Suisse Group AG, Bank of Tokyo-Mitsubishi UFJ Ltd., Barclays Bank plc, HSBC Holdings plc, and Deutsche Bank AG. The action seeks hundreds of billions of dollars in damages. Pomerantz has prevailed against defendants' motions to dismiss the claims of our clients, Directors Financial Group and The Berkshire Bank.

During the nine years prior to coming to Pomerantz, Mr. Wernke was a litigator with Cahill Gordon & Reindel LLP, with his primary focus in the securities defense arena. He brings to

Pomerantz a unique perspective, with his extensive, successful experience in defending large, multinational financial institutions in securities fraud and commercial litigations.

In 2014 and 2015, Mr. Wernke was voted by his peers, through Super Lawyers, as a "New York Metro Rising Star."

In 2004, Mr. Wernke received his J.D. from Harvard Law School. He also holds a B.S. in Mathematics and a B.A. in Political Science from The Ohio State University, where he graduated *summa cum laude.*

Mr. Wernke is admitted to practice in the State of New York and the United States District Court for the Southern District of New York.

# Senior Counsel

## Marc I. Gross

Marc I. Gross has been with Pomerantz LLP over four decades, serving as its Managing Partner from 2009 - 2016. During that time frame, Mr. Gross led securities lawsuits against SAC Capital (Steven Cohen- insider trading); Chesapeake Energy (Aubrey McClendon- insider bail out); Citibank (analyst Jack Grubman - AT&T research report upgrade to facilitate underwriting role); Charter Communications (Paul Allen-accounting fraud); and numerous others. He also litigated the market efficiency issues in the firm's landmark $3 billion recovery in *Petrobras.*

Mr. Gross is the President-Elect of the Institute of Law and Economic Policy ("ILEP"), which has organized symposiums each year where leading academics have presented papers on securities law and consumer protection issues. These papers have been cited in over 60 cases, including several by the Supreme Court. http://www.ilep.info.

Mr. Gross has addressed numerous forums in the United States on shareholder-related issues, including ILEP; Loyola University Chicago School of Law's Institute for Investor Protection Conference; the National Conference on Public Employee Retirement Systems' ("NCPERS") Legislative Conferences; PLI conferences on Current Trends in Securities Law; and a panel entitled "Enhancing Consistency and Predictability in Applying Fraud-on-the-Market Theory" sponsored by the Duke Law School Center for Judicial Studies.

Mr. Gross is also valued by foreign investors for his expertise, having addressed the Tel Aviv Institutional Investors Forum, the National Association of Pension Funds Conference in Edinburgh, and law students at Bar Ilan University in Tel Aviv.

Among other articles, Mr. Gross authored *Back to Basic(s): Common Sense Trumps Econometrics*, New York Law Jrl. (Jan. 8, 2018) (with Jeremy Lieberman); *Class Certification in a Post-Halliburton II World,*46 Loyola-Chicago Law Jrl. 485 (2015); and *Loser-Pays - or Whose "Fault" Is It Anyway: A Response to Hensler-Rowe's "Beyond 'It Just Ain't Worth It,"* 64 Law & Contemporary Problems (Duke Law School) (2001).

Mr. Gross is also a Board member of T'ruah, The Rabbinic Call for Human Rights, and graduate of NYU Law '76 and Columbia College '73.

Mr. Gross is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the First, Second, Third and Eighth Circuits, and the United States Supreme Court.

Mr. Gross serves on the Firm's Anti-Harassment and Discrimination Committee.

## STANLEY M. GROSSMAN

Stanley M. Grossman, Senior Counsel, is the former Managing Partner of Pomerantz. He is recognized as a leader in the plaintiffs' securities bar. He was selected by *Super Lawyers* magazine as an outstanding attorney in the United States for the years 2006 through 2011, and was featured in the *New York Law Journal* article "*Top Litigators in Securities Field -- A Who's Who of City's Leading Courtroom Combatants.*" Mr. Grossman has litigated securities (individual and class), derivative and antitrust actions with the Firm for 39 years.

Mr. Grossman has primarily represented plaintiffs in securities and antitrust class actions, including many of those listed in the Firm biography. *See. e.g., Ross v. Bernhard*, 396 U.S. 531; *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem*, 818 F.2d 1433 (9th Cir.); *In re Salomon Bros. Treasury Litig*, 9 F.3d 230 (2d Cir.). In 2008 he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See StoneRidge Investment Partners v. Scientific-Atlanta*, No. 06-43 (2007). Other cases where he was the Lead or Co-Lead counsel include: *In re Salomon Brothers Treasury Litigation*, 91 Civ. 5471 (S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, CV-89-7135 (C.D. Cal. 1994) ($100 million settlement); *In re Sorbates Direct Purchaser Antitrust Litigation*, C98-4886 (N.D. Cal. 2000) (over $80 million settlement for the class).

In 1992, Senior Judge Milton Pollack of the Southern District of New York appointed Mr. Grossman to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of legal representation provided to investors by Mr. Grossman. In *Gartenberg v. Merrill Lynch Asset Management, Inc.*, 79 Civ. 3123 (S.D.N.Y.), where Mr. Grossman was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

Mr. Grossman was also the lead trial attorney in *Rauch v. Bilzerian* (Super. Ct. N.J.) (directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and

ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Mr. Grossman frequently speaks at law schools and professional organizations. In 2010, he was a panelist on *Securities Law: Primary Liability for Secondary Actors*, sponsored by the Federal Bar Council, and he presented *Silence Is Golden – Until It Is Deadly: The Fiduciary's Duty to Disclose*, at the Institute of American and Talmudic Law. In 2009, Mr. Grossman was a panelist on a Practicing Law Institute "Hot Topic Briefing" entitled "*StoneRidge*- Is There Scheme Liability or Not?"

Mr. Grossman served on former New York State Comptroller Carl McCall's Advisory Committee for the NYSE Task Force on corporate governance. He is a former president of NASCAT. During his tenure at NASCAT, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission and before members of Congress and of the Executive Branch concerning legislation that became the PSLRA.

Mr. Grossman served for three years on the New York City Bar Association's Committee on Ethics, as well as on the Association's Judiciary Committee. He is actively involved in civic affairs. He headed a task force on behalf of the Association, which, after a wide-ranging investigation, made recommendations for the future of the City University of New York. He serves on the board of the Appleseed Foundation, a national public advocacy group.

Mr. Grossman is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado, the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits, and the United States Supreme Court.

# OF COUNSEL

## MICHELE S. CARINO

Michele S. Carino joined Pomerantz as Of Counsel in 2014. An experienced litigator and professional legal writer, Ms. Carino's practice focuses on securities fraud, corporate governance, mergers and acquisitions, and complex commercial cases.

Before joining Pomerantz, Ms. Carino honed her skills as a securities and corporate governance attorney at Stroock and Grant & Eisenhofer, serving clients on both the defense and plaintiff side of class actions, shareholder derivative actions, and other investor protection cases.

Ms. Carino received her Bachelor of Arts in Economics from Binghamton University with Phi Beta Kappa honors in 1992 and graduated *magna cum laude* from Georgetown University Law Center in 1999. She has taught a legal research and writing seminar at Columbia University Law School, and has served as a Mentor and Coach to Legal Outreach, a constitutional law and college preparatory program for New York City public high school students.

Ms. Carino is admitted to practice law before the Supreme Court of the United States and the United States District Courts for the Southern District of New York and the District of Delaware, and is a member of the bar of the states of New York and Delaware.

## MICHAEL GRUNFELD

Michael Grunfeld joined Pomerantz in July 2017 as Of Counsel. He has extensive experience in securities, complex commercial, and white collar matters in federal and state courts around the country. In particular, Mr. Grunfeld has represented issuers, underwriters, and individuals in securities class actions dealing with a wide variety of industries. He has also represented financial institutions and individuals in cases related to RMBS, securities lending, foreign exchange practices, insider trading, and other financial matters. Mr. Grunfeld was honored in 2018 as a Super Lawyers® Rising Star.

Mr. Grunfeld is the co-author of a chapter on damages in securities class actions in the LexisNexis treatise, *Litigating Securities Class Actions*.

Mr. Grunfeld served as a clerk for Judge Ronald Gilman of the Sixth Circuit Court of Appeals and as a foreign law clerk for Justice Asher Grunis of the Israeli Supreme Court. Before joining Pomerantz, he was a litigation associate at Shearman & Sterling LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP. Mr. Grunfeld graduated from Columbia Law School in 2008, where he was a Harlan Fiske Stone Scholar and Submissions Editor of the *Columbia Business Law Review*. He graduated from Harvard University with an A.B. in Government, *magna cum laude*, in 2004.

Mr. Grunfeld is admitted to practice in the State of New York, the Second, Fourth, and Sixth Circuit Courts of Appeals, and the United States District Courts for the Southern and Eastern Districts of New York.

## JOHN A. KEHOE

John A. Kehoe played a leading role in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, recently achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

He has served as lead or Co-Lead Counsel in numerous securities and financial fraud cases in federal and state courts on behalf of institutional and individual clients, including *In re Bank of America Corporation Securities Litigation* ($2.4 billion settlement); *In re Wachovia Preferred Securities and Bond/Notes Litigation* ($627 million settlement); *In re Initial Public Offering Securities Litigation* ($586 million settlement resolving 309 consolidated actions); *In re Lehman Brothers Securities and ERISA Litigation* ($516 million settlement); and *In re Marvell Technology Group Ltd. Securities Litigation* ($72 million settlement). Mr. Kehoe is a program faculty member with the National Institute of Trial Advocacy, and served three years as an adjunct faculty member with the Trial Advocacy Training Program at Louisiana State University School of Law.

Prior to joining Pomerantz, Mr. Kehoe was a partner with Girard Gibbs LLP and Kessler Topaz Meltzer & Check, LLP representing institutional investors in securities class and direct actions, and was previously associated with Clifford Chance LLP, a London-based law firm where he represented Fortune 500 companies in securities and antitrust civil litigation, and enforcement actions brought by the Department of Justice, the U.S. Securities and Exchange Commission and the Federal Trade Commission.

Mr. Kehoe is a frequent speaker at conferences focused on shareholder rights and corporate governance issues, including the 2013 National Conference on Public Employee Retirement Systems (Rancho Mirage, CA); 2013 Investment Education Symposium (New Orleans, LA); 2013 Public Funds East Conference (Newport, RI); 2012 Rights and Responsibilities for Institutional Investors (Amsterdam, Netherlands); 2011 European Investment Roundtable (Stockholm, Sweden); 2011 Public Funds Symposium (Washington, D.C.); 2011 National Conference on Public Employee Retirement Systems (Miami Beach, FL); 2010 ESG, USA Global Trends and U.S. Sustainable Investing (NY, NY); 2010 ICGN Annual Conference: "The Changing Global Balances" (Toronto, Canada); 2010 Public Funds West Summit (Scottsdale, AZ); 2009 ICGN Annual Conference: "The Route Map to Reform and Recovery" (Sydney, Australia); and the 2007 European Pensions Symposium (Marbella, Spain).

Mr. Kehoe received his Juris Doctorate, *magna cum laude*, from Syracuse University College of Law, was an associate editor of the Syracuse Law Review, associate member of the Syracuse Moot Court Board and alternate member on the National Appellate Team. He received a Master of Public Administration from the University of Vermont and Bachelor of Arts from DePaul University. Prior to attending law school, Mr. Kehoe served as a law enforcement officer in the State of Vermont where he was a member of the Special Reaction Team.

Mr. Kehoe is admitted to practice in the States of New York and Pennsylvania, the United States District Court for the Southern District of New York, the U.S. Court of Appeals for the Second Circuit, and the United States Supreme Court.

## H. ADAM PRUSSIN

Mr. Prussin specializes in securities litigation and has extensive experience in derivative actions. He was special litigation counsel in the derivative actions on behalf of Summit Metals, Inc., actions which resulted in entry of a judgment, after trial, of $43 million in cash, plus an order transferring the stock of two multi-million-dollar companies to the plaintiff. Mr. Prussin is Co-Lead Counsel in several of Pomerantz's pending derivative actions.

Mr. Prussin has published several articles on the subject of the standards and procedures for the maintenance or dismissal of derivative actions, including "Termination of Derivative Suits Against Directors on Business Judgment Grounds: From Zapata to Aronson," 39 The Business Lawyer 1503 (1984); "Dismissal of Derivative Actions Under the Business Judgment Rule: Zapata One Year Later," 38 The Business Lawyer 401 (1983); and "The Business Judgment Rule and Shareholder Derivative Actions: Viva Zapata?," 37 The Business Lawyer 27 (1981). In June 2009 he spoke at the 6th Annual Securities Litigation Conference in New York, participating in the panel discussion,

"From Behind Enemy Lines: The Perspective of Two Prominent Plaintiff Attorneys."

Before joining the Firm, Mr. Prussin was a named partner in Silverman, Harnes, Harnes, Prussin & Keller, which specializes in representing plaintiffs in shareholder derivative and class action litigation, particularly those involving self-dealing by corporate officers, directors and controlling shareholders. He played a key role in several landmark derivative cases in the Delaware courts, and has appeared frequently before the Delaware Supreme Court.

Mr. Prussin graduated *cum laude* from Yale College in 1969 and, after obtaining a Master's Degree from the University of Michigan in 1971, received his J.D. degree from Harvard Law School in 1974.

Mr. Prussin is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second, Ninth and D.C. Circuits.

## BRENDA SZYDLO

Brenda Szydlo joined Pomerantz in January 2016 as Of Counsel. She brings to the Firm more than twenty-five years of experience in complex civil litigation in federal and state court on behalf of plaintiffs and defendants, with a particular focus on securities and financial fraud litigation, litigation against pharmaceutical corporations, accountants' liability, and commercial litigation.

Ms. Szydlo played a leading role in the Firm's securities class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a precedent-setting legal ruling and a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade, but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

In 2018, Ms. Szydlo has already achieved two settlements for investors in securities class action litigations that she led with Managing Partner Jeremy Lieberman: $14,500,000 in *Chamble, et al. v. TerraForm Power, Inc., et al.*, 1:16-cv-08039-PKC; and $4,400,000 in *In re Unilife Corporation Securities Litigation*, No. 16-cv-03976- RA.

Ms. Szydlo has represented investors in class and private actions that have resulted in significant recoveries, such as *In re Pfizer, Inc. Securities Litigation*, where the recovery was $486 million, and *In re Refco, Inc. Securities Litigation*, where the recovery was in excess of $407 million. She has also represented investors in opt-out securities actions, such as in *In re Bank of America Corp. Securities, Derivative & ERISA Litigation*. In addition, Ms. Szydlo has experience in mergers and acquisitions litigation. She played a significant role in obtaining a ground-breaking order enjoining not only the shareholder vote on the merger, but the merger agreement's termination fee and other mechanisms designed to deter competing bids, in *In re Del Monte Co. Shareholder Litigation*.

Prior to joining Pomerantz, Ms. Szydlo served as Senior Counsel at Grant & Eisenhofer P.A., where she represented plaintiffs in securities and financial fraud litigation, and litigation against

pharmaceutical corporations and accounting firms. Ms. Szydlo also served as Counsel in the litigation department of Sidley Austin LLP in New York, and its predecessor, Brown & Wood LLP, where her practice focused on securities litigation and enforcement, accountants' liability defense, and commercial litigation.

Ms. Szydlo is a 1988 graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a B.A. in economics from Binghamton University in 1985.

Ms. Szydlo is admitted to practice in the State of New York; United States District Courts for the Southern and Eastern Districts of New York; the U.S. Court of Appeals for the Second and Ninth Circuits; and the United States Supreme Court.

## NICOLAS TATIN

French lawyer Nicolas Tatin joined Pomerantz in April 2017 as Of Counsel. He heads the Firm's Paris office and serves as its Director-Business Development Consultant for France, Benelux, Monaco and Switzerland. Mr. Tatin advises institutional investors in the European Union on how best to evaluate losses to their investment portfolios attributable to financial misconduct, and how best to maximize their potential recoveries in U.S. and international securities litigations.

Mr. Tatin was previously a financial lawyer at ERAFP, France's €24bn pension and retirement fund for civil servants, where he provided legal advice on the selection of management companies and the implementation of mandates entrusted to them by ERAFP.

Mr. Tatin began his career at Natixis Asset Management, before joining BNP Paribas Investment Partners, where he developed expertise in the legal structuring of investment funds and acquired a global and cross-functional approach to the asset management industry.

Mr. Tatin graduated in International law and received an MBA from IAE Paris, the Sorbonne Graduate Business School.

## AUSTIN P. VAN

Austin P. Van joined Pomerantz in January 2017 as Of Counsel. He brings to the Firm experience in a variety of federal and state securities law matters, including disputes involving publicly traded stocks, RMBS and other ABS, securities lending disputes, and breach-of-trust matters arising in the securities law context. Mr. Van was honored in 2018 as a Super Lawyers® Rising Star.

Mr. Van also has experience in complex commercial litigation, including contract disputes, business torts, consumer fraud, and antitrust matters. He has represented investment banks and other financial sector clients, as well as public and private companies in the technology, energy, pharmaceutical, telecommunications and shipping industries, among others. Mr. Van was previously an associate at WilmerHale and Cravath, Swaine & Moore, both in New York City.

Mr. Van received a J.D. from Yale Law School, where he was an editor of the *Yale Law Journal* and the *Yale Journal of International Law*. He has a B.A. from Yale University and an M.Sc. from the London School of Economics.

Mr. Van is admitted to practice law in the State of New York and in the United States District Courts for the Southern and Eastern Districts of New York.

## TAMAR A. WEINRIB

Tamar A. Weinrib joined Pomerantz in early 2008 and became Of Counsel to the Firm in 2014. Ms. Weinrib focuses on securities fraud litigation. She was honored by Super Lawyers® as a New York Metro Rising Star every year from 2014 through 2018.

Ms. Weinrib, with Co-Managing Partner Jeremy Lieberman, is Lead Counsel in *Strougo v. Barclays PLC*, a high-profile securities class action alleging that Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. This case turns on the duty of integrity owed by Barclays to its clients. In November 2016, she and Mr. Lieberman achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Ms. Weinrib was the attorney responsible for the litigation of *In re Delcath Systems, Inc. Securities Litigation*, in which Pomerantz recently achieved a settlement of $8,500,000 for the Class. She successfully argued before the Second Circuit in *In re China North East Petroleum Securities Litigation* to reverse the district court's dismissal of the defendants on scienter grounds. In addition to her involvement in several other securities matters pending nationwide, Ms. Weinrib is the Pomerantz attorney responsible for the litigation of *KB Partners I, L.P. v. Pain Therapeutics, Inc., et al.*, a securities fraud case for which Judge Sparks of the Western District of Texas recently granted final approval for a settlement of up to $8,500,000 for class members.

Before coming to Pomerantz, Ms. Weinrib had over three years of experience as a litigation associate in the New York office of Clifford Chance US LLP, where she focused on complex commercial litigation. Ms. Weinrib has successfully tried pro bono cases, including two criminal appeals and a housing dispute filed with the Human Rights Commission.

Ms. Weinrib graduated from Fordham University School of Law in 2004 and, while there, won awards for successfully competing in and coaching Moot Court competitions.

Ms. Weinrib is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Second, Third, Fourth, and Ninth Circuits.

# ASSOCIATES

## SAMUEL J. ADAMS

Samuel J. Adams focuses on corporate governance litigation.

Mr. Adams was previously an associate at Robbins Geller Rudman & Dowd LLP, where he focused his practice on securities fraud litigation and other complex matters. He has been recognized as a SuperLawyers® "Rising Star" for the New York Metro area for every year from 2015 through 2018.

Mr. Adams is a 2009 graduate of the University of Louisville Louis D. Brandeis School of Law. While in law school, he was a member of the National Health Law Moot Court Team. He also participated in the Louis D. Brandeis American Inn of Court.

Mr. Adams is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States District Court for the Eastern District of Wisconsin.

## HUI CHANG

Hui Chang joined Pomerantz in 2015 and focuses her practice on antitrust and securities fraud litigation. As a member of the Firm's new matter group, she is responsible for investigating potential violations of the federal securities laws. Ms. Chang was a member of Pomerantz's team in the securities class action against Brazilian oil giant, Petrobras, *In re Petrobras Sec. Litig.,* in which the firm recently achieve a historic $3 billion settlement for the Class.

Ms. Chang received her J.D. from University of California, Hastings College of the Law, and her B.A. in Political Science from University of California, Berkeley.

Ms. Chang is admitted to practice in the State of New York and the United States District Court for the Southern District of New York.

## JESSICA N. DELL

Jessica Dell focuses her practice on securities fraud litigation.

She has worked on dozens of cases at Pomerantz, including the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill, pending in Multidistrict Litigation. Ms. Dell has expertise in managing discovery and a nose for investigating complex fraud across many sectors, including pharmaceuticals, medical devices, and data security. True to her roots in public interest law, she has also worked in complex pro bono class action litigation at Pomerantz.

Ms. Dell graduated from CUNY School of Law in 2005. She was the recipient of an Everett fellowship for her work at Human Rights Watch. She also interned at the Urban Justice Center and

National Advocates for Pregnant Women. While in the CUNY clinical program, she represented survivors of domestic violence facing deportation and successfully filed petition under the Violence Against Women Act. She also successfully petitioned for the release of survivors incarcerated as "drug mules" in Central America. After Hurricane Katrina, Ms. Dell traveled to Louisiana to aid emergency efforts to reunite families and restore legal process for persons lost in the prison system weeks after the flood.

Ms. Dell is a member of the New York City and State Bar Associations and the National Lawyers Guild.

## MARC C. GORRIE

Mr. Gorrie joined Pomerantz in 2014. He focuses his practice on securities fraud litigation and is actively involved in the Firm's securities lawsuit concerning Petróleo Brasileiro S.A.- Petrobras. As a member of the Firm's new matter group, he identifies and investigates potential violations of the federal securities laws.

Prior to joining the Firm, Mr. Gorrie focused his practice on a major securities fraud litigation with a prominent New York law firm. He was actively engaged in legal outreach for the Center for Seafarers' Rights of the Seamen's Church Institute of New York and New Jersey. Mr. Gorrie has previously served as a consultant for an EU development project on the rule of law in The Gambia. He has authored articles on international humanitarian and human rights law published by organizations including the Foreign Policy Association and the Revue de Droit Comparé du Travail et de la Sécurité Sociale. Mr. Gorrie currently serves a member of the Ambassadors Advisory Group for One to One International Consulting, an international aid and development consulting firm headquartered in Ghana.

Mr. Gorrie is a 2010 graduate of Indiana University Maurer School of Law - Bloomington (JD) where he held a research fellowship in legal ethics and was consistently on the Dean's List. He is a 2012 graduate of University of Lund, Sweden (LLM, in conjunction with the Raoul Wallenberg Institute of Human Rights and Humanitarian Law) where he earned honors marks, lectured on U.S. Legal Ethics and on Federal Indian Law, and delivered his thesis on the interaction of tribal, state, federal, and international human rights and labor laws in the United States. Mr. Gorrie is a 2005 graduate of Sarah Lawrence College with a BA in Liberal Arts.

Mr. Gorrie is admitted to practice in New Jersey and the United States District Court, District of New Jersey.

## GABRIEL HENRIQUEZ

Gabriel Henriquez focuses his practice on corporate governance litigation. He also has experience in commercial real estate, trusts & estates, and general business law in the Southern California region.

Mr. Henriquez is a 2012 graduate of the University of Southern California Gould School of Law. During his time there, he co-founded the Critical Legal Scholars Association and served as its vice

president. He also clerked for Judge Kelvin Filer at the Superior Court of California in Compton. Mr. Henriquez earned his LL.M. in International Business and European Union Law from the Université Lyon III in France.

Mr. Henriquez is admitted to practice in New York and California State Courts, as well as the United States District Courts for the Central District of California, the Southern District of New York, and the Eastern District of New York.

## J. ALEXANDER HOOD II

J. Alexander Hood II focuses his practice on securities litigation. As a member of the Firm's new matter group, he identifies and investigates potential violations of the federal securities laws.

Prior to joining Pomerantz, Mr. Hood was a litigation associate at Alston & Bird LLP and an attorney at Bernstein Litowitz Berger & Grossmann LLP, where he was involved in commercial, financial services, corporate governance and securities matters.

Mr. Hood graduated from Boston University School of Law (J.D.) and from the University of Oregon School of Law (LL.M.). While in law school, Mr. Hood clerked for the American Civil Liberties Union of Tennessee and, as a legal extern, worked on the Center for Biological Diversity's Clean Water Act suit against BP in connection with the Deepwater Horizon oil spill. Mr. Hood graduated from Johns Hopkins University with a BA in History.

Mr. Hood is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York, the District of Colorado, the Eastern District of Michigan, and the Northern District of Illinois.

## AATIF IQBAL

Aatif Iqbal focuses his practice on securities fraud litigation.

Before joining Pomerantz, Mr. Iqbal was a litigation associate at Cleary Gottlieb Steen & Hamilton LLP, where his practice involved bankruptcy, securities, and complex commercial litigation matters. Mr. Iqbal also served as a law clerk for the Honorable Patricia A. Seitz, United States District Judge for the Southern District of Florida.

Mr. Iqbal graduated cum laude from Harvard Law School, where he earned a Dean's Scholarship in First Amendment Law and served as Managing Editor of the *Harvard International Law Journal* and Managing Technical Editor of the *Harvard Human Rights Journal*. He graduated cum laude from Yale University with a B.A. in Political Science.

Mr. Iqbal is admitted to practice in New York.

## OMAR JAFRI

Omar Jafri's practice focuses on securities fraud litigation.

Before joining Pomerantz LLP, he was a law clerk to Judge William S. Duffey, Jr. of the United States District Court for the Northern District of Georgia. Mr. Jafri was also an associate at Jenner & Block LLP's Chicago Office, where he represented clients in a wide variety of matters, including securities litigation, complex commercial litigation, white collar criminal defense and internal investigations.

During the last several years, Mr. Jafri has litigated major disputes on behalf of institutional investors arising out of the credit crisis, including disputes relating to Collateralized Debt Obligations, Residential Mortgage-Backed Securities, Credit Default Swaps and other complex financial investments. He also has provided pro bono representation to several individuals charged with first-degree murder and attempted murder in the State and Federal courts of Illinois.

Mr. Jafri graduated, magna cum laude, from the University of Illinois College of Law, where he was a Harno Scholar, and represented the College of Law in the Midwest Moot Court competition, winning second place for best oral advocate in the preliminary round and first place for best oral advocate in the semi-final round. He received his B.A. from the University of Texas at Austin, where he was on the Dean's Honor List and the University Honors List.

Mr. Jafri is admitted to practice in Illinois, and the United States District Courts for the Northern District of Illinois and the Northern District of Indiana.

## ADAM GIFFORDS KURTZ

Adam Giffords Kurtz focuses his practice on antitrust litigation.

Mr. Kurtz was a member of the Firm's litigation team in the securities class action against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a precedent-setting legal ruling and a historic $3 billion settlement for the Class.

Mr. Kurtz served as a law clerk to the Honorable Juan G. Burciaga, then Chief United States District Judge, District of New Mexico and began his career as a litigation associate at Cravath, Swaine & Moore, where he worked on complex securities fraud and antitrust litigation. He was also a solo practitioner in New Mexico where he concentrated on federal criminal defense and civil litigation. In addition, Mr. Kurtz served as an Assistant Corporation Counsel in the General Litigation and Labor and Employment law divisions of the New York City Law Department.

Mr. Kurtz graduated *cum laude* from New York Law School in 1988, where he was Book Review Editor of the New York Law School Law Review. In June 2009, Mr. Kurtz received an MBA from the Baruch/Mt. Sinai Graduate Program in Health Care Administration. He is a member of the American Health Lawyers Association.

Mr. Kurtz is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

## Louis C. Ludwig

Louis C. Ludwig focuses his practice on securities fraud litigation. He has been honored as a 2016 and 2017 Super Lawyers® "Rising Star," and as a 2018 Super Lawyers® "Top-Rated Securities Litigation Attorney."

Mr. Ludwig graduated from Rutgers University School of Law in 2007, where he was a Dean's Law Scholarship Recipient, interned at South Jersey Legal Services, served as a Certified Legal Intern in the Rutgers-Camden Children's Justice Clinic, and participated in Advanced Moot Court.

After serving as a law clerk to the Honorable Arthur Bergman, Superior Court of New Jersey, Mr. Ludwig began his career as a litigation associate at a boutique Chicago law firm specializing in consumer protection class actions.

Mr. Ludwig is admitted to practice in New Jersey, Illinois, the United States Courts of Appeal for the Seventh and Ninth Circuits, and the United States District Courts for the District of New Jersey and the Northern District of Illinois.

## Matthew C. Moehlman

Matthew C. Moehlman focuses his practice on securities fraud litigation.

Prior to joining Pomerantz in 2015, Mr. Moehlman practiced securities litigation at two prominent federal securities law firms, where he represented institutional investors in complex securities fraud cases, shareholder advocacy, corporate governance matters, and mergers and acquisitions litigation. Mr. Moehlman was a member of the Lead or Co-Lead counsel teams that successfully prosecuted *In re Aeropostale Securities Litigation*, *In re Colonial BancGroup, Inc. Securities Litigation*, *Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.* ("*Freddie Mac*"), *In re Delphi Corporation Securities Litigation*, *In re SFBC International, Inc. Securities Litigation*, *In re Converium Holding AG Securities Litigation*, and *In re Suprema Specialties, Inc. Securities Litigation*. His M&A litigation experience includes *In re El Paso Corporation Shareholder Litigation*.

Mr. Moehlman received a J.D. from the University of Virginia School of Law. He earned an A.B. in English and American Literature & Language from Harvard University.

Mr. Moehlman is admitted to practice in New York and Texas, and the United States District Court for the Southern District of New York.

## VERONICA V. MONTENEGRO

Veronica V. Montenegro focuses her practice on securities fraud litigation.

Prior to joining Pomerantz, Ms. Montenegro served for seven years as an Assistant Attorney General in the Investor Protection Bureau in the Office of the New York State Attorney General. Ms. Montenegro represented the Office in some of its most high-profile financial fraud prosecutions. She worked on a case against a Madoff feeder-fund manager which resulted in the return of millions of dollars to defrauded investors. She was a member of the Residential Mortgage Backed Securities (RMBS) Working Group, comprised of State and Federal prosecutors tasked with investigating and prosecuting mortgage securities fraud, which has resulted in billions of dollars in recoveries. In recognition of her work in the RMBS Working Group, Ms. Montenegro was awarded the Louis Lefkowitz Award for Exceptional Service. Ms. Montenegro also worked on cases involving insider trading, auction rate securities and foreign exchange execution.

Ms. Montenegro graduated from Fordham University School of Law in 2008. During law school, she served as a member of the *Fordham International Law Journal* and in Fordham's Moot Court Board. Additionally, she served as a judicial extern to the Honorable Ronald L. Ellis, Magistrate Judge for the Southern District of New York. Ms. Montenegro graduated from New York University's College of Arts and Science is 2004, cum laude, with a double major in Political Science and Latin American Studies.

Ms. Montenegro is admitted to practice in the States of New York and New Jersey and the United States District Court for the Southern District of New York.

## JUSTIN S. NEMATZADEH

Justin S. Nematzadeh focuses his practice on securities fraud litigation. Louis C. Ludwig focuses his practice on securities fraud litigation. In 2018, he was honored as a Super Lawyers® "Rising Star."

Mr. Nematzadeh played a key role in the Firm's seurities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, recently achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Prior to joining Pomerantz in 2015, Mr. Nematzadeh practiced at Gibson, Dunn & Crutcher LLP. His practice at Gibson Dunn involved federal and state complex litigation and internal and regulatory investigations, focusing on securities and antitrust litigation. Additionally, for his work in representing plaintiffs in *Toney-Dick v. Doar*, he was awarded a 2013 Pro Bono Publico award from The Legal Aid Society.

Mr. Nematzadeh earned his J.D. degree, *cum laude*, from Fordham University School of Law. During law school, he served as a member of the *Fordham Urban Law Journal* and as a business editor of the Fordham Dispute Resolution Society. Additionally, he served as a judicial intern to the Honorable Stuart M. Bernstein of the United States Bankruptcy Court for the Southern District of New York. He earned his B.B.A. degree, with distinction, from the University of Michigan Stephen M.

Ross School of Business, with an emphasis in finance and corporate strategy. During business school, he was awarded a University of Michigan Alumnae Council MBNA Scholarship.

Mr. Nematzadeh is the co-author of the *Delaware Business Court Insider* article entitled "Lead Plaintiffs' Shareholdings Draw Chancery Review." He has also contributed to chapters in the American Bar Association's *Antitrust Law Developments*, Matthew Bender's *Antitrust Laws and Trade Regulation*, and to Professor Deborah W. Denno's chapter entitled "When Willie Francis Died: The 'Disturbing' Story Behind One of the Eighth Amendment's Most Enduring Standards of Risk" in John H. Blume and Jordan M. Steiker's book, *Death Penalty Stories*.

Mr. Nematzadeh is admitted to practice law in New York and the United States District Courts for the Southern and Eastern Districts of New York. He is a member of the American Bar Association and the New York State Bar Association.

## JENNIFER BANNER SOBERS

Jennifer Banner Sobers focuses her practice on securities fraud litigation.

In addition to her involvement in numerous cases pending nationwide, Ms. Sobers played an integral role on the team litigating *In re Petrobras Sec. Litig.,* arising from a multi-billion dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A. - Petrobras. The Firm, as sole Lead Counsel, recently achieved a historic $3 billion settlement on behalf of investors in Petrobras securities.

Prior to joining Pomerantz, Ms. Sobers was an associate with a prominent law firm in New York where her practice focused on complex commercial litigation, including securities law and accountants' liability. An advocate of pro bono representation, Ms. Sobers earned the Empire State Counsel honorary designation from the New York State Bar Association and received an award from New York Lawyers for the Public Interest for her pro bono work.

Ms. Sobers received her B.A. from Harvard University (with honors), where she was on the Dean's List, a Ron Brown Scholar, and a recipient of the Harvard College Scholarship. She received her J.D. from University of Virginia School of Law were she was a participant in the Lile Moot Court Competition and was recognized for her pro bono service.

She is a member of the New York City and New York State Bar Associations. She is also a member of the Association of Arbitrators.

Ms. Sobers is admitted to practice in New York, the United States District Court for the Southern District of New York, and the United States Court of Appeals for the Second and Ninth Circuits.

## SUSAN J. WEISWASSER

Susan J. Weiswasser focuses her practice on securities fraud litigation.

Ms. Weiswasser graduated from Brooklyn Law School in 2000. While there, she served as a law clerk intern to the Honorable Edward R. Korman, Judge of the United States District Court for the

Eastern District of New York. She also served as a legal intern with the New York State Capital Defender Office. As an attorney, she has worked with the Pro Bono Bankruptcy Clinic of the New York City Bar Association. For the last several years, Ms. Weiswasser has been a volunteer lawyer with the City Bar's Monday Night Law Clinic, a community service program providing the public with free consultations in several areas including consumer, landlord-tenant, and matrimonial law.

At Pomerantz, Ms. Weiswasser was a member of the team litigating the securities class action lawsuit against Brazilian oil giant, Petróleo Brasileiro (Petrobras) in which the firm achieved, in January 2018, a historic $2.95 billion partial settlement for the Class. She also plays an active role in other high-profile securities fraud cases.

Ms. Weiswasser is a member of the New York City Bar Association and the Federal Bar Council. She is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Court of Appeals for the Third Circuit.

# STAFF ATTORNEYS

## ÁTILA DE CARVALHO BEATRICE CONDINI

Átila de Carvalho Beatrice Condini, an international attorney at Pomerantz, focuses on class action securities litigation.

Mr. Condini brings to Pomerantz his 13 years' expertise in complex Brazilian federal legal, procedural, and regulatory issues. He is a member of Pomerantz's team for three securities class actions against Brazilian companies: In re Petrobras Sec. Litig., Manidhar Kukkadapu, et al. v. Embraer, et al., and Banco Safra S.A. - Cayman Islands Branch v. Samarco Mineração S.A. et al.

Mr. Condini is a partner (on leave) at the law firm, Condini & Tescari Advogados, in São Paolo, Brazil, where he was responsible for the tax and litigation divisions. Before that, he was an associate and senior associate at two other major Brazilian law firms in São Paolo. During that period, he successfully worked on cases that became benchmarks in the Brazilian legal scenario. In one of them, he prepared a brief in the Extraordinary Appeal n° 559.937, whose thesis was accepted by the Brazilian Supreme Court, reducing the social contribution taxes (PIS / COFINS-Importação) levied on imports. In another case, he defended an advanced interpretation about D&O responsibilities, which was also accepted by the Brazilian Supreme Court in the Extraordinary Appeal n° 562.276.

Mr. Condini has also been attentive to social causes, not only practicing pro bono, but also in the human rights field. For example, Mr. Condini conducted a legal research project that ultimately resulted in the human rights group, Tortura Nunca Mais, being able to help fund and support the creation of a free virtual library focused on keeping alive Brazilian recent history for future generations. In 2006, Mr. Condini received a Bachelor of Law degree from Pontifical University Catholic of São Paulo ("PUC/SP"). In 2008, he received a specialized law degree in taxation from PUC/SP.

## LAURA M. PERRONE

Laura M. Perrone focuses on class action securities litigation.

Prior to joining Pomerantz, Ms. Perrone worked on securities class action cases at Labaton Sucharow. Preceding that experience, she represented plaintiffs at her own securities law firm, the Law Offices of Laura M. Perrone, PLLC.

More recently, Ms. Perrone has represented bondholders against Citigroup for its disastrous investments in residential mortgage backed securities, and shareholders against Barclays PLC for misrepresentations about its dark pool trading system known as Barclays LX.

Ms. Perrone graduated from the Benjamin N. Cardozo School of Law, where she was on the editorial staff of Cardozo's *Arts and Entertainment Law Journal*, and was the recipient of the Jacob Burns Merit Scholarship.

Ms. Perrone is admitted to practice in the New York State Courts, the United States District Courts for the Southern and Eastern Districts of New York, and the United States Courts of Appeals for the Second and the Fifth Circuits.

## SAMIR SIDI

Samir Sidi's practice focuses on antitrust and securities fraud litigation.

Previously, Mr. Sidi represented plaintiffs in high-stakes disputes related to a variety of financial investments, including the Federal Home Loan Bank of Seattle and the FDIC in their multi-billion dollar actions against securities dealers to rescind the purchase of certificates backed by residential mortgage loans. He also represented institutional investors in a securities fraud action against Vivendi Universal (*In re Vivendi Universal, S.A. Sec. Litig.*, 02 Civ. 5571 (S.D.N.Y.)), where in January 2010 the jury returned a verdict that at the time had an estimated value of up to $9 billion.

Mr. Sidi also served as a judicial intern for the Administrative Office of the Federal Judiciary – Office of Legislative Affairs in Washington, D.C.

Mr. Sidi received his LL.L. from the University of Ottawa, and his LL.M. in Banking & Financial Law from the Boston University School of Law.

Mr. Sidi is admitted to practice in New York State.