## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated, <br><br>                 Plaintiff, <br><br>      v. <br><br> RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, JEFFREY G. McGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES, and ERIC SO, <br><br>                 Defendants. | Civil No. 3:18-CV-02293(FLW)(TJB) <br><br> MOTION DATE:  November 4, 2019 <br><br> **ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF DIRECTOR DEFENDANTS' JOINDER AND MOTION TO DISMISS THE CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*ANDREW KAPLAN, ERIC SO, AND JASON LES*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................1

II.   RELEVANT BACKGROUND AS TO DIRECTOR DEFENDANTS .........4

III.  THE SECTION 10(B) CLAIM AGAINST THE DIRECTOR
     DEFENDANTS SHOULD BE DISMISSED ..............................5

    A.    The Reform Act's Heightened Pleading Standards ...........................5

    B.    The Corrected Complaint Does Not Contain Specific Facts
        Giving Rise to Any Plausible Inference that the Director
        Defendants Acted with Scienter .............................................6

        1.    Lead Plaintiff's Scienter Allegations are Insufficient As a
             Matter of Law...................................................................7

        2.    The Non-Fraudulent Inferences are More Cogent and
             Compelling........................................................................11

    C.    Lead Plaintiff Does Not Adequately Allege "Scheme Liability"
        Under Section 10(b) ............................................................13

    D.    Lead Plaintiff Fails to Allege that Messrs. Les or So Made Any
        Material Misstatement or Omission ..................................15

    E.    Lead Plaintiff Fails to Allege Loss Causation ...................16

IV.  THE SECTION 20(A) CLAIM AGAINST THE DIRECTOR
     DEFENDANTS SHOULD BE DISMISSED ..............................17

V.    CONCLUSION.........................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999) ..............................................................7

*In re Alpharma Secs. Litig.*,
372 F.3d 137 (3d Cir. 2004) ..............................................................18

*In re Burlington Coat Factory*,
114 F.3d 1418 ....................................................................................11

*In re Cannavest Corp. Sec. Litig.*,
307 F. Supp. 3d 222 (S.D.N.Y. 2018) ...............................................16

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)...........................................................................14

*In re Equimed, Inc. Secs. Litig.*,
2000 WL 562909 (E.D. Pa. May 9, 2000).........................................18

*Fox Int'l Relations v. Fiserv Secs. Inc.*,
490 F. Supp. 2d 590 (E.D. Pa. 2007)..................................................18

*In re GlenFed, Inc. Sec. Litig.*,
60 F.3d 591 (9th Cir. 1995) ...............................................................16

*Gordon v. Diagnostek, Inc.*,
812 F. Supp. 57 (E.D. Pa. 1993).........................................................18

*Inst'l Investors Grp. v. Avaya*,
564 F.3d 242 (3d Cir. 2009) ...............................................................5

*In re Intelligroup Sec. Litig.*,
527 F. Supp. 2d 262 (D.N.J. 2007)....................................................11

*Limantour v. Cray Inc.*,
432 F. Supp. 2d 1129 (W.D. Wash. 2006) .........................................13

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006).............................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ............................................................7, 12, 13

*In re PDI Sec. Litig.*,
  2006 WL 3350461 (D.N.J. Nov. 16, 2006) ......................................................12

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ...........................................................................4

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013) .............................................................................8

*In re Royal Dutch/Shell Transp.*,
  2006 WL 2355402 (D.N.J. Aug. 14, 2006) ......................................................14

*S.E.C. v. Lucent Techs., Inc.*,
  610 F. Supp. 2d 342 (D.N.J. 2009) ...................................................................2

*Shapiro v. UJB Fin. Corp.*,
  964 F.2d 272 (3d Cir. 1992) ...........................................................................18

*Stichting Pensioenfonds ABP v. Merck & Co.*,
  2012 WL 3235783 (D.N.J. Aug. 1, 2012) ........................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................2, 6, 11

*Trustcash Holdings, Inc. v. Moss*,
  668 F. Supp. 2d 650 (D.N.J. 2009)..................................................................13

*Winer Family Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007) .........................................................................9, 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

15 U.S.C.
   § 10(b) ..................................................................................................*passim*
   § 20(a) ..............................................................................................3, 17, 18, 19
   § 78a (Private Securities Litigation Reform Act of 1995 (the
   "Reform Act")) ....................................................................................*passim*
   § 7201 (Sarbanes Oxley Act of 2002 ("SOX")) .........................................10, 11

**Other Authorities**

Fed. R. Civ. P. 9(b) ...................................................................................14

I.   **<u>INTRODUCTION</u>**

Defendants Andrew Kaplan, Eric So, and Jason Les (the "Director Defendants") join and incorporate by reference the brief and supporting papers of the Riot Blockchain Defendants, which demonstrates that all of the claims in this case should be dismissed, with prejudice.  Because under the Private Securities Litigation Reform Act of 1995 (the "Reform Act") and applicable case law, Lead Plaintiff must plead a strong inference of scienter against each defendant, the Director Defendants bring this concise separate brief to address those issues specific to them.  The paucity of specific allegations involving the Director Defendants illustrates Lead Plaintiff's failure to allege a cogent and compelling inference of scienter claim against the Director Defendants.

Lead Plaintiff accuses the Director Defendants of participating in a purported "pump-and-dump" scheme at Riot Blockchain, Inc. ("Riot" or the "Company")—not by virtue any direct statements or actions—but simply due to their positions as current or former directors of the Company.  With no allegations remotely suggesting *fraud*, the Corrected Consolidated Amended Class Action Complaint (the "Corrected Complaint" or "CCAC") falls back entirely, and redundantly, on some variation of the boilerplate allegation that "Defendants knew and/or recklessly disregarded" of the alleged fraud—nothing else.  (CCAC ¶ 375; *see also id.* ¶¶ 101, 378 383–84, 411(e), 426.)  But this generalized allegation

comes nowhere close to meeting Lead Plaintiff's burden of specially pleading "specific facts" giving rise to a "strong inference" that the Director Defendants acted with fraud. *See* 15 U.S.C. § 78u-4(b)(2) (plaintiff is required to "state with particularity facts giving rise to a strong inference" that each individual defendant acted with fraudulent intent); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007). In any event, Lead Plaintiff's inability to plead any specific allegations regarding the Director Defendants undercuts a compelling inference of scienter; Lead Plaintiff cannot point to any insider stock sales, confidential witnesses, documents, direct statements, or any other circumstantial evidence that suggests that the Director Defendants acted with scienter. Lead Plaintiff's failure to plead scienter against the Director Defendants is fatal to his Section 10(b) claim.

Lead Plaintiff's scheme liability allegations against the Director Defendants are similarly inadequate. (CCAC ¶¶ 431–34.) These allegations should be dismissed because they fail to allege that any of the Director Defendants committed a deceptive or manipulative act separate from the allegations, which make up Lead Plaintiff's fraudulent misrepresentation and/or omissions claim, which are themselves inadequate Lead Plaintiff's scheme liability allegations are simply a reiteration of the misrepresentations and omissions that underlie his disclosure claim.

Moreover, the Corrected Complaint fails to allege that Messrs. Les and So played any part in the dissemination of materially false and/or misleading statements. Lead Plaintiff's allegations against Messrs. Les and So amount to little more than a guess—that they "likely approved" of Riot's 2017 Proxy Statement, which allegedly contained false and/or misleading statements. (*See* CCAC ¶ 185.) Thus, Lead Plaintiff has not pled any facts that demonstrate Messrs. Les and So's involvement in any misstatement and/or omission. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 147 (2011) (holding that only a "maker" of a false statement, as opposed to one who merely prepares, approves of, or helps publish a false statement, can be liable under Rule 10b-5(b)). The Court should dismiss Lead Plaintiff's Section 10(b) claim against Messrs. Les and So for this independent reason.

In addition to the Corrected Complaint's deficient scienter , as well as loss causation allegations, the Director Defendants join and incorporate the arguments set forth in Riot Blockchain Defendants' Motion, which cogently depicts the other pleading deficiencies concerning Defendants' alleged misstatements (*i.e.*, failure to sufficiently allege falsity or scheme liability). And because the Corrected Complaint does not adequately allege a primary violation under Section 10(b), the claim for control person liability against the Director Defendants under Section

20(a) must be dismissed.  Consequently, the Director Defendants request that the Court dismiss all the claims against him in their entirety.

## II.   **RELEVANT BACKGROUND AS TO DIRECTOR DEFENDANTS**

Lead Plaintiff contends that the Director Defendants made misrepresentations and/or omissions in connection with a purported "pump-and-dump" scheme.  (CCAC ¶ 209.)  But the Corrected Complaint is devoid of any specific facts regarding the Director Defendants' involvement in any fraudulent scheme.  Instead, the Corrected Complaint merely identifies the Director Defendants' positions as directors with the Company:

- Mr. Kaplan was a director of Riot from May 2017 until October 2018, during which he also served a member of the Company's Audit Committee and Compensation Committee, and the Chair of the Governance Committee.[1]  (*See* CCAC ¶ 28; Zaccaro Decl., Ex. K at 1 (Form 8-K attaching October 23, 2018 Press Release).)  Kaplan also allegedly served on the board of directors of Majesco Entertainment Company ("Majesco Entertainment") while Barry Honig was its CEO. (CCAC ¶ 28.)  On July 19, 2017, Mr. Kaplan allegedly signed a

---

[1] The facts set forth below are taken from the allegations in the Corrected Complaint and publicly available documents that are appropriate for judicial notice.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Registration Statement (Form S-3A) on behalf of then Bioptix, Inc.

(n/k/a Riot) that the Company filed with the U.S. Securities and

Exchange Commission ("SEC").  (*Id.*)

- Mr. So was a director of Riot for only five months, from October

  2017 until February 2018, during which he served as Chair of the

  Audit Committee and a member of the Compensation and the

  Governance Committees.  (*Id.* ¶ 32.)  Mr. So was also previously the

  chief legal and development officer at MUNDOmedia Ltd.  (*Id.*)

- Mr. Les has been a Riot director since November 2017 and is a

  member of the Company's Audit and Governance Committees, and

  the Chair of the Compensation Committee.  (*Id.* ¶ 31.)

## III.   THE SECTION 10(B) CLAIM AGAINST THE DIRECTOR DEFENDANTS SHOULD BE DISMISSED

### A.   The Reform Act's Heightened Pleading Standards

The Reform Act "insists that securities fraud complaints . . . 'state with

particularity facts giving rise to a strong inference that the defendant acted with'"

scienter.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81–82

(2006) (quoting 15 U.S.C. §§ 78u– 4(b)(1)–(2) (emphasis added)).  In this Circuit,

"[t]h[e] scienter standard requires plaintiffs to allege facts giving rise to a 'strong

inference' of 'either reckless or conscious behavior'" by a defendant when making

misstatements to investors.  *Inst'l Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 267 (3d

Cir. 2009) (citations omitted).  For an inference of scienter to be "strong," it "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling . . . [and] at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs*, 551 U.S. at 323–24.  Thus, in reviewing the Corrected Complaint, this Court "must consider plausible, nonculpable explanations for the defendant's conduct . . . ."  *Id.*

Here, Lead Plaintiff has not pled with particularity that any Director Defendant made false or misleading statements or participated in scheme liability knowingly or with extreme recklessness.  Rather, the more compelling inference from the circumstances alleged in the Corrected Complaint is that the volatility of the bitcoin pricing caused a corresponding volatility of Riot's stock price and drove Riot's stock price up in the short term.

## B. The Corrected Complaint Does Not Contain Specific Facts Giving Rise to Any Plausible Inference that the Director Defendants Acted with Scienter

Lead Plaintiff fails to allege specific facts establishing any inference—let alone a cogent and compelling inference—of scienter as to the Director Defendants.  In fact, Lead Plaintiff fails to mention any of the Director Defendants whatsoever with respect to any of his scienter allegations.  (*See generally*, CCAC ¶¶ 374–95.)  Lead Plaintiff instead uses broad brushstrokes to vaguely conclude that (1) "certain of the Defendants, by virtue of their high-level positions with the

Company," must have known of the purported fraud; and (2) "as signatories to the Company's SEC filings, certain of the Defendants had an affirmative obligation to familiarize themselves with facts relevant to Riot's core operations." (*Id.* ¶¶ 378, 381.)  These allegations do not come close to meeting to stringent requirements of the Reform Act.

### 1. <u>Lead Plaintiff's Scienter Allegations are Insufficient As a Matter of Law</u>

*First*, Lead Plaintiff assumes that the Director Defendants acted with scienter by virtue of their positions as directors at Riot.  (*See id.* ¶ 379.)  These boilerplate allegations do not comply with the Reform Act.  "[A]llegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are precisely the types of inferences which [courts] . . . have determined to be inadequate to withstand Rule 9(b) scrutiny."  *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) (first alteration in original); *GSC Partners CDO Fund v. Washington,* 368 F.3d 228, 239 (3d Cir. 2004) ( "[I]t is not enough for plaintiffs to merely allege that defendants 'knew' their statements were fraudulent or that defendants 'must have known' their statements were false"); *Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 556 (D.N.J. 2010) (rejecting plaintiff's assertion that defendants must have known of the allegedly illegal commercial practices because they were high-ranking executives).

*Second*, Lead Plaintiff relies on the "core business doctrine." (CCAC ¶¶ 379–80.) Lead Plaintiff contends that, since cryptocurrency was a central part of Riot's success and growth strategy, "knowledge of falsity can be imputed to key officers who should have known of facts relating to the core operations of their company." (*Id.* ¶ 381.) This is incorrect. Under the core business doctrine, corporate management's general awareness of day-to-day workings of a company's business cannot establish scienter absent "some additional allegations of specific information conveyed to management and related to fraud." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013); *Teamsters Local 456 Pension Fund v. Universal Health Servs.*, 2019 WL 3886839, at *38 (E.D. Pa. Aug. 19, 2019) ("a plaintiff cannot rely solely on an allegation 'that imputes knowledge to a defendant because of his or her position within the company'").

Here, the Corrected Complaint lacks any specific allegations that the Director Defendants—who were never Riot officers or even part of management— had knowledge of the alleged "pump-and-dump" scheme or any purported misrepresentation. This is fatal to Lead Plaintiff's scienter allegations. As a result, Lead Plaintiff's scienter allegations are entirely dependent on the group pleading doctrine. However, the group pleading doctrine is no longer viable subsequent to the Reform Act. *See Monk v. Johnson & Johnson*, 2011 WL 6339824, at *10 (D.N.J. Dec. 19, 2011) ("the Third Circuit made clear in *Winer* that the so-called

group pleading doctrine is no longer viable").  Nevertheless, the Corrected

Complaint fails to set forth the particulars of ***any*** of the Director Defendants'

respective involvement with the preparation and dissemination of the allegedly

fraudulent statements.  (*Id.* ¶¶ 374–95.)  Indeed, Lead Plaintiff does not—and

cannot—point to any direct statements or actions by the Director Defendants,

which demonstrate their knowledge of or participation in any fraudulent conduct.

*See Snowstorm Acquisition Corp. v. Tecumseh Prod. Co.*, 739 F. Supp. 2d 686, 703

(D. Del. 2010).  The Corrected Complaint can be dismissed on this ground alone.

*See Winer Family Tr. v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007) (holding that the

reliance on group pleading cannot meet the Reform Act's requirement that scienter

allegations be pled with particularity).

At best, the Corrected Complaint asserts a tenuous connection between the

Director Defendants and a purported "pump-and-dump" scheme at Riot.  For

example, Lead Plaintiff contends that Messrs. Les and So "likely approved" of

Riot's 2017 Proxy Statement, which purportedly contained false and/or misleading

statements.  (CCAC ¶ 185.)  But Lead Plaintiff does not allege that Messrs. Les

and So were aware that the 2017 Proxy Statement contained any purportedly false

and/or misleading statements.  To the contrary, as set forth in the Riot Blockchain

Defendants' Motion, there were no false and/or misleading statements in the 2017

Proxy Statement at all.

Lead Plaintiff also claims that Messrs. Kaplan and So were involved with Riot's false disclosures concerning related-party transactions because Messrs. Kaplan and So had an undisclosed investment in Coinsquare.  (*See, e.g.*, CCAC ¶ 324.)  Setting aside the fact that Mr. Kaplan – based on Lead Plaintiff's own allegations – never maintained any investment in Coinsquare (*see id.* ¶ 154 (listing Coinsquare shareholders)), and that Mr. So invested in Coinsquare **before** he was named as a director at Riot (and thus had no affiliation with Riot at the time of Riot's disclosure), the Corrected Complaint makes no attempt to describe Messrs. Kaplan or So's alleged involvement with Riot's purported failure to disclose. *Winer Family Tr.*, 503 F.3d at 337 ("The [Reform Act] requires plaintiffs to specify the role of **each** defendant, demonstrating **each** defendant's involvement in misstatements and omissions.") (emphasis added).

With respect to Mr. Kaplan, Lead Plaintiff's allegations cannot be saved by relying on Mr. Kaplan's certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX").  According to Lead Plaintiff, Mr. Kaplan allegedly signed false SOX certifications in connection with Bioptix's (n/k/a Riot) Registration Statements (Forms S-3/A) on April 20, 2017, July 19, 2017, and August 24, 2017.  (CCAC ¶¶ 211, 221, 226.)  Lead Plaintiff claims that the Registration Statements falsely state that none of the selling shareholders had a material relationship with the Company other than as a result of the ownership of Bioptix securities.  (*Id.*)

Putting aside whether the statement was actually false (which it was not),[2] the certifications by Mr. Kaplan do not create a strong inference of scienter. Absent specific factual allegations indicating that Mr. Kaplan had clear reasons to doubt the validity of the disclosures, but kept turning a "blind eye to all 'red flags,'" courts hold that SOX certifications are insufficient to establish scienter. *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 288 (D.N.J. 2007). Since the Corrected Complaint contains no allegations as to Mr. Kaplan's knowledge of these alleged "material relationships", the SOX certifications are unavailing.

## 2.   **The Non-Fraudulent Inferences are More Cogent and Compelling**

When considered holistically, Lead Plaintiff's hodgepodge of generalized scienter allegations still fail to create a strong inference of scienter. The Corrected Complaint does not offer "facts to show that defendants had both motive and opportunity to commit fraud" or "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (describing the methods by which a strong inference of fraud may be established). In fact, the Corrected Complaint raises non-fraudulent inferences of scienter that are more compelling and cogent than any fraudulent inferences. *Tellabs*, 551 U.S. at 324 (requiring a

---

[2] For the reasons set forth in the Riot Blockchain Defendants' Motion, there are no false statements in the 2017 Proxy Statement. *See* Riot Blockchain Defendants' Motion to Dismiss at 13–20.

plaintiff alleging fraud in a Section 10(b) action to plead facts rendering an inference of scienter at least as likely as any plausible opposing inference).

The Corrected Complaint is noticeably silent with respect to any motive the Director Defendants would have to defraud Riot investors. Lead Plaintiff cannot point to any concrete or personal benefits, such as insider stock sales, that the Director Defendants would have obtained by engaging in the purported pump-and-dump scheme at Riot. *In re PDI Sec. Litig.*, 2006 WL 3350461, at *16 (D.N.J. Nov. 16, 2006) ("[T]he fact that Defendants did not sell a single share of their own stock during the Class Period effaces Plaintiffs' assertions about Defendants' motives. This Court fails to perceive what possible concrete and personal benefits Defendants were trying to obtain by fraudulently inflating [the Company's] stock price if Defendants were not selling their shares."). In fact, Lead Plaintiff offers no personal benefit whatsoever that the Riot directors have received as Board members. The fact that the Director Defendants did not sell any Riot stock during the Class Period (assuming they even owned Riot stock), or receive any other benefits, militates heavily against any inference of scienter. *National Junior Baseball League*, 720 F. Supp. 2d at 558.

Similarly, the Corrected Complaint lacks allegations constituting strong circumstantial evidence of conscious misbehavior or recklessness. For example, the Corrected Complaint offers no witnesses, sources, or any contemporaneous

documents, which show "how and in what manner each [D]efendant knew the falsity of any given statement." *Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*, No. CIV.A. 06-2204WJM, 2009 WL 4250061, at *7 (D.N.J. Nov. 25, 2009) (alteration in original); *see also Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1152 (W.D. Wash. 2006) (finding that plaintiffs have failed to allege scienter because they offered no witnesses or circumstantial evidence that defendants intended to inflate the company's stock in furtherance of a pump-and-dump scheme).  Without allegations establishing that the Director Defendants had first-hand knowledge of any wrongdoing at Riot, the Director Defendants could not have acted with the requisite scienter set forth under the Reform Act.  *National Junior Baseball League*, 720 F. Supp. 2d at 558.

In sum, the Court should dismiss the Section 10(b) claim brought against the Director Defendants because Lead Plaintiff does not come close to pleading cogent and compelling facts to establish each of the Director Defendants' scienter.

## C.   **Lead Plaintiff Does Not Adequately Allege "Scheme Liability" Under Section 10(b)**

To state a claim for scheme liability, Lead Plaintiff must allege that the Director Defendants "(1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud [investors], (3) scienter, (4) and reliance." *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 661–62 (D.N.J. 2009) (enumerating pleading requirements to state a claim under Rule 10b-5(a)

-13-

and/or (c)).  Furthermore, scheme liability claims must comply with the heightened

pleading requirements of the Federal Rule of Civil Procedure 9(b), and must also

plead scienter with the additional specificity required by the Reform Act.  *Stichting*

*Pensioenfonds ABP v. Merck & Co.*, 2012 WL 3235783, at *7 (D.N.J. Aug. 1,

2012).

Consequently, Lead Plaintiff must also set forth, with specificity, "what

manipulative acts were performed, which defendants performed them, when the

manipulative acts were performed and what effect the scheme had on the securities

at issue." *In re Royal Dutch/Shell Transp. Sec. Litig.*, 2006 WL 2355402, at *7

(D.N.J. Aug. 14, 2006) (quoting *In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428,

432 (S.D.N.Y. 2006).  Yet, Lead Plaintiff fails to allege any manipulative acts that

were performed by the Director Defendants—let alone any of the necessary details

of their alleged involvement with or knowledge of any manipulative act.  (*See*

CCAC ¶ 432); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of*

*Denver, N.A.*, 511 U.S. 164, 177–78 (1994) ("We cannot amend [section 10(b)] to

create liability for acts that are not themselves manipulative or deceptive within the

meaning of the statute.").  Lead Plaintiff's scheme liability allegations against the

Director Defendants can be dismissed for this reason alone.

But to make matters worse, Lead Plaintiff's scheme liability allegations

against the Director Defendants amount to nothing more than a reiteration of his

insufficiently alleged material misrepresentation and/or omission claims, which targets the exact same purported misconduct. (*See* CCAC ¶¶ 432–34 (describing Director Defendants' participation in the alleged scheme based solely upon purported misrepresentations and/or omissions). Repackaging an insufficiently alleged misrepresentation and omissions theory as one for scheme liability does not rehabilitate Lead Plaintiff's claims.[3]

### D. Lead Plaintiff Fails to Allege that Messrs. Les or So Made Any Material Misstatement or Omission

Lead Plaintiff only alleges that Messrs. Les and So "likely" approved of Riot's 2017 Annual Definitive Proxy Statement under Schedule 14A. (*See* CCAC ¶ 183.) But it is well established law that only "makers" of a false statement can be liable under Rule 10b-5(b). *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 146 (2011). Messrs Les and So's approval of any allegedly false statement does not establish them as makers of that allegedly false statement. *See id.* at 141 (reversing the Fourth Circuit's finding that defendant had made a false statement, even though the Court of Appeals determined that an investor

---

[3] For the reasons set forth in the Riot Blockchain Defendants' Motion, Lead Plaintiff cannot rely on the Supreme Court's recent decision in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) to argue that a private plaintiff may assert a scheme liability claim based on a material misrepresentation or omission. Lead Plaintiff must allege, with particularity, deceptive conduct by Director Defendants, which he does not come close to doing in the Corrected Complaint.

could reasonably infer that the defendant played a role in preparing or approving the content of the allegedly false prospectuses).

Moreover, Lead Plaintiff's conjecture that Messrs. Les and So "likely" approved of Riot's 2017 Proxy Statement is not actionable because Lead Plaintiff must plead additional facts that show Messrs. Les and So's direct participation in disseminating the alleged material misstatement or omissions contained therein. *See In re CannaVest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 255 (S.D.N.Y. 2018) (dismissing Section 10(b) claims against an individual defendant who was not alleged to be involved in a Company's misstatements and omissions); *In re GlenFed, Inc.*, Sec. Litig., 60 F.3d 591, 593 (9th Cir. 1995) (dismissing Section 10(b) claims against non-executive directors for lack of specific allegations of their involvement in any misstatement or omission).  Lead Plaintiff does not offer these necessary allegations.  The Corrected Complaint thus fails to allege a Rule 10b-5(b) claim against Messrs. Les and So.

### E.   **Lead Plaintiff Fails to Allege Loss Causation**

The Reform Act provides that in a securities law action, "the plaintiff shall have the burden of proving that the act or omission of the defendant . . . caused the loss for which the plaintiff seeks to recover damages."  15 U.S.C. § 78u–4(b)(4). Lead Plaintiff thus "must plead that defendant's misrepresentation 'concealed something from the market that, when disclosed, negatively affected the value of

the security.'" *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 692 (D.N.J. 2006).  However, the "existence of a causal connection cannot be made solely on the basis of temporal proximity where the stock price decline might be attributable to other forces, events or announcements that took place prior to or contemporaneously with the public airing of the alleged fraud but had nothing to do with the challenged conduct by the defendant." *Id.*

Here, Lead Plaintiff's allegations with respect to causation have nothing to do with the alleged fraud.  For example, Lead Plaintiff points to disclosures in December 2017, which supposedly "called into question Defendants' integrity" and "question[ed] the legitimacy of the Company."  (*See* CCAC ¶¶ 398-99.)  These allegations do not reveal or correct any previously deceptive conduct.  Likewise, the fact that Riot disclosed that it received a subpoena from the SEC, *id.* ¶ 404, merely constitutes "allegations of unproven misconduct," which "is not a corrective disclosure which revealed" the Director Defendants' "fraudulent conduct to the market." *Martin v. GNC Holdings, Inc.*, 2017 WL 3974002, at *18 (W.D. Pa. Sept. 8, 2017).  As such, Lead Plaintiff has not met his pleading burden with respect to loss causation.

## IV.   <u>THE SECTION 20(A) CLAIM AGAINST THE DIRECTOR DEFENDANTS SHOULD BE DISMISSED</u>

To recover under Section 20(a), a plaintiff must show:  (1) one person controlled another person or entity; (2) that the controlled person or entity

committed a primary violation of the securities laws; and (3) that the defendant was a culpable participant in the fraud. *Fox Int'l Relations v. Fiserv Secs. Inc.*, 490 F. Supp. 2d 590, 601 (E.D. Pa. 2007) (citing *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006)). If no controlled person is liable, no controlling person liability exists. *In re Alpharma Secs. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992).

Lead Plaintiff, however, fails to describe the Director Defendants' control over any person who may have committed a primary violation of the securities laws or their culpable participation in that person's fraud. Both are required to allege control person liability under Section 20(a). *Gordon v. Diagnostek, Inc.*, 812 F. Supp. 57, 62 (E.D. Pa. 1993); *see also In re Equimed, Inc. Secs. Litig.*, 2000 WL 562909, at *10 (E.D. Pa. May 9, 2000) ("The heightened standards of the Reform Act apply to a § 20(a) claim, so a plaintiff must plead particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud.") (internal quotation marks omitted) (quoting *In re Cendant Corp. Secs. Litig.*, 76 F. Supp. 2d 539, 549 n.5 (D.N.J. 1999)). The Section 20(a) claim should therefore be dismissed.

## V.   **CONCLUSION**

For the reasons stated above, as well as those reasons stated in the Riot Blockchain Defendants' concurrently filed Motion, the Director Defendants

respectfully request that the Court dismiss the Section 10(b) and Section 20(a)

claims brought against them with prejudice.


DATED:      September 3, 2019              PAUL HASTINGS LLP


                                          By: /s/ *Chad J. Peterman*
                                              CHAD J. PETERMAN

                                          *chadpeterman@paulhastings.com*
                                          200 Park Avenue
                                          New York, NY 10166
                                          Telephone:  1(212) 318-6000
                                          Facsimile:  1(212) 319-4090

                                          THOMAS A. ZACCARO
                                          *thomaszaccaro@paulhastings.com*
                                          D. SCOTT CARLTON
                                          *scottcarlton@paulhastings.com*
                                          515 South Flower Street
                                          Twenty-Fifth Floor
                                          Los Angeles, CA  90071
                                          Telephone:  1(213) 683-6000
                                          Facsimile:  1(213) 627-0705

                                          Attorneys for Defendants
                                          JASON LES, ERIC SO, AND, ANDREW
                                          KAPLAN