**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
Julia M. Beskin (*pro hac vice* pending)
Jacob J. Waldman (*pro hac vice*)
Jaclyn M. Palmerson
Alexander P. Wentworth-Ping (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100
alexspiro@quinnemanuel.com
juliabeskin@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jaclynpalmerson@quinnemanuel.com
alexwentworthping@quinnemanuel.com

*Attorneys for Catherine DeFrancesco*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC. f/k/a BIOPTIX, INC., JOHN O'ROURKE, JEFFREY MCGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES and ERIC SO,<br><br>*Defendants*. | Civil Action No. 3:18-02293 (FLW) (TJB) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**CATHERINE DeFRANCESCO'S MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................2

    A.    Ms. DeFrancesco.................................................................................................2

    B.    Procedural History ..............................................................................................2

    C.    The Consolidated Amended Class Action Complaint .......................................3

        1.    November 2017: RBI Purchases Kairos ...............................................4

        2.    December 2017: RBI Issues Stock in a Private Placement...................5

        3.    February 2018: Kairos Purchases Additional Bitcoin Machines
            from Prive and Another Entity................................................................6

LEGAL STANDARD......................................................................................................................6

ARGUMENT...................................................................................................................................7

I.    PLAINTIFF HAS FAILED TO PLEAD THAT THE ALLEGED
      TRANSACTIONS ARE ACTIONABLE UNDER RULES 10b-5(a) OR 10b-5(c)............7

    A.    The Alleged Transactions Are Not the Type of Conduct That Is
         Actionable Under Rules 10b-5(a) or 10b-5(c).......................................................7

    B.    Plaintiff's Allegations of Misstatements and Omissions are Insufficient
         Under Rules 10b-5(a) and 10b-5(c) ........................................................................9

    C.    Plaintiff Fails to Plead Scienter With the Requisite Particularity.........................13

CONCLUSION..............................................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   562 U.S. 662 (2009) .................................................................................................. 6

*Beaver Cnty. Employees' Ret. Fund v. Tile Shop Hldgs., Inc.*,
   2016 WL 4098741 (D. Minn. July 28, 2016) ......................................................... 12

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2012) .................................................................................... 12

*Catton v. Def. Tech. Sys., Inc.*,
   2006 WL 27470 (S.D.N.Y. Jan. 3, 2006) ................................................................ 11

*Cortina v. Anavex Life Sci. Corp.*,
   2016 WL 7480415 (S.D.N.Y. Dec. 29, 2016) .................................................... 8, 14

*De Vito v. Liquid Hldgs. Grp., Inc.*,
   2018 WL 6891832 (D.N.J. Dec. 31, 2018) ........................................................ 10, 12

*Hoey v. Insmed Inc.*,
   2018 WL 902266 (D.N.J. Feb. 15, 2018) ............................................................... 13

*In re Alstom SA*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005) ..................................................................... 11

*In re Anadigics, Inc. Sec. Litig.*,
   484 F. App'x 742 (3d Cir. 2012) .............................................................................. 7

*In re Anadigics, Inc., Sec. Litig.*,
   2011 WL 4594845 (D.N.J. Sept. 30, 2011) ............................................... 7, 12, 13

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002) .................................................................................... 8

*In re Royal Dutch/Shell Transp.*,
   2006 WL 2355402 (D.N.J. Aug. 14, 2006) ..................................................... 7, 9, 11

*Janus Capital Grp. v. First Derivative Traders*,
   564 U.S. 135 (2011) ................................................................................................ 10

*Kemp v. Univ. Am. Fin. Corp.*,
   2007 WL 86942 (S.D.N.Y. Jan. 10, 2007) ............................................................... 9

*Lautenberg Found. v. Madoff*,
   2009 WL 2928913 (D.N.J. Sept. 9, 2009) ........................................................ 10, 12

*Liana Carrier Ltd. v. Pure Biofuels Corp.*,
   151 F. Supp. 3d 319 (S.D.N.Y. 2015) ..................................................................... 12

*Oran v. Stafford*,
   226 F.3d 275, 289 (3d Cir. 2000) .............................................................................. 8

*S.E.C. v. Lucent Techs., Inc.*,
   610 F. Supp. 2d 342 (D.N.J. 2009) .................................................................................. 10, 12

*Santa Fe Indus. v. Green*,
   430 U.S. 462 (1977) ................................................................................................................. 8

*Stichting Pensioenfonds ABP v. Merck & Co., Inc.*,
   2012 WL 3235783 (D.N.J. Aug. 1, 2012) ........................................................................ 7, 8, 9

*TCS Cap. Mgmt., LLC v. Apax Partners, L.P.*,
   2008 WL 650385 (S.D.N.Y. Mar. 7, 2008) ...................................................................... 10, 12

*Trustcash Hldgs., Inc. v. Moss*,
   668 F. Supp. 2d 650 (D.N.J. 2009) .................................................................................. 6, 7, 9

## Statutory Authorities

Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b) ...................................... 1

## Rules and Regulations

17 C.F.R. § 240.10b-5 ............................................................................................................ passim

Fed. R. Civ. P. 9 ........................................................................................................................ 1, 7

Fed. R. Civ. P. 12 ...................................................................................................................... 1, 7

Defendant Catherine DeFrancesco submits this memorandum of law in support of her Motion to Dismiss the Consolidated Amended Class Action Complaint ("Amended Complaint" or "AC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b) ("PSLRA").

## PRELIMINARY STATEMENT

Plaintiff claims that Catherine DeFrancesco is liable for market manipulation and securities fraud based on nothing more than allegations that she held minority stakes in Riot Blockchain, Inc. ("RBI") and two of its purported transactional counterparties, and that Ms. DeFrancesco made an additional investment in RBI of less than 1% of a $37 million private placement. Beyond this small purchase—which had no alleged effect on RBI stock—Plaintiff attributes no material conduct or actions to Ms. DeFrancesco. That Ms. DeFrancesco held stock in companies that transacted with one another is not remotely sufficient to plead claims under Rules 10b-5(a) or 10b-5(c).

Plaintiff fails to allege conduct that is actionable under Rules 10b-5(a) and 10b-5(c). At most, Plaintiff alleges that RBI's purchases of bitcoin mining companies and equipment were unfavorable to RBI—not that any party to the transactions engaged in manipulative trading of RBI securities. And Plaintiff alleges no conduct on Ms. DeFrancesco's part whatsoever in connection with these purchases, much less that she engaged in any manipulative act.

The Amended Complaint also improperly claims that the transactions described above were misleading solely because certain aspects—such as Ms. DeFrancesco's holdings in RBI's counterparties—were not disclosed to RBI shareholders. Setting aside that much of the purportedly undisclosed information was already public, it is well-settled that Plaintiff cannot sustain claims under Rules 10b-5(a) and 10b-5(c) merely by pleading misleading statements or omissions. Indeed, courts have long rejected allegations, like those here, that purport to expand

1

liability for misstatements and omissions to defendants who had no part in them—essentially to assert *de facto* claims for aiding and abetting—through Rules 10b-5(a) and 10b-5(c).

Finally, Plaintiff fails to plead scienter. Plaintiffs' allegations concerning Ms. DeFrancesco's ownership of securities, and her limited participation in a private placement, are not remotely sufficient to plead an inference—much less one that is strong or compelling—that she acted with fraudulent intent in connection with an alleged market manipulation scheme.

For the foregoing reasons, and those discussed herein, the Amended Complaint should be dismissed, with prejudice, as to Ms. DeFrancesco.

## BACKGROUND

### A.   Ms. DeFrancesco

Defendant Catherine DeFrancesco is an individual who resides in New Jersey. She is an indirect shareholder in Riot Blockchain, Inc. ("RBI"). *See* AC ¶ 24. Ms. DeFrancesco is not, and has never been, a director or officer of RBI.

### B.   Procedural History

Ms. DeFrancesco was not named as a Defendant in this action until 18 months after it was first filed.

Creighton Takata filed the original complaint on February 17, 2018 ("Takata Action"), which named only Defendants RBI, Jeffrey G. McGonegal, and John O'Rourke. ECF No. 1. On November 6, 2018, this Court consolidated the Takata Action with a separate action filed on April 18, 2018 by Joseph J. Klapper, Jr. (ECF No. 1, 18-cv-8031), and appointed Dr. Stanley Golovac as lead plaintiff ("Plaintiff"). ECF No. 39.

On January 15, 2019, Plaintiff filed a Consolidated Class Action Complaint ("CAC") naming Defendants RBI, McGonegal, and O'Rourke, and adding Defendant Barry Honig. ECF No. 52. On March 28, 2019, the Defendants filed motions to dismiss the CAC. ECF Nos. 66,

67. Rather than oppose those motions, on April 18, 2019, Plaintiff sought, and was granted, leave to file another amended complaint. ECF No. 69. The Court granted Plaintiff's request and ordered that the amended complaint be filed no later than May 8, 2019. Text Order dated April 24, 2019.

### C. The Consolidated Amended Class Action Complaint

The Consolidated Amended Class Action Complaint, filed May 8, 2019, added various defendants, including Ms. DeFrancesco. ECF Nos. 72, 73. Ms. DeFrancesco executed a Waiver of Service Form, pursuant to Federal Rule of Civil Procedure 4(d), on July 8, 2019, which set Ms. DeFrancesco's deadline to file this motion at September 3, 2019. ECF No. 81.

The Amended Complaint purports to plead a scheme to "drive up the price and trading volume of Riot stock through manipulative trading, promotional activity, and false and misleading disclosures," AC ¶ 1, to "engage in fraudulent related-party transactions at the expense of [RBI] and its shareholders," *id.*, and to "dump their shares into the artificially inflated market on unsuspecting retail investors." *Id; see also id.* ¶ 11 ("Defendants' so-called investments in crypto currency were, in reality, egregiously wasteful related-party transactions with entities that were secretly owned and control[led] by Defendants and their associates . . . .").

But the Amended Complaint attributes to Ms. DeFrancesco no misleading statements and ascribes to her no disclosure obligations. Rather, it attempts to hold Ms. DeFrancesco liable in connection with the alleged "related-party" transactions by pleading that Ms. DeFrancesco owned minority positions in both RBI and Kairos Global Technology Inc. ("Kairos") when RBI purchased Kairos and its bitcoin mining equipment; that Ms. DeFrancesco owned a minority position in Prive Technologies LLC ("Prive") when Kairos—then a subsidiary of RBI— purchased certain equipment from Prive; and that, at a time when she beneficially owned shares

3

in RBI, Ms. DeFrancesco invested $360,000 in a $37 million private placement of RBI securities—or a little under 1% of the total.[1]

### 1. November 2017: RBI Purchases Kairos

The Amended Complaint alleges that on November 2, 2017, RBI announced its acquisition of "1,200 Bitcoin Mining Machines" from Kairos, in exchange for 1,750,001 shares of RBI, and that the total consideration for acquiring Kairos was the equivalent of $12,162,500 in stock and $1,000,000 in "future royalties." AC ¶¶ 172, 175 (the "Kairos Transaction"). According to Plaintiff, Kairos had purchased the equipment for just $2,089,679, and RBI could have "purchased this same equipment online" for substantially less. *Id.* ¶ 176. In particular, according to publicly-available information apparently obtained from an archived version of Bitmain's website, Bitmain was selling the same equipment as of October 29, 2017 for significantly less than RBI paid. *See id.*

Plaintiff alleges that this transaction was misleading because "it was not until April 17, 2018 that [RBI] disclosed that . . . Ms. DeFrancesco . . . owned approximately 6.3% of Kairos" at the time of the Kairos Transaction. *Id.* ¶ 173. Plaintiff claims that a November 2, 2017 press release, and November 3, 2017 Form 8-K, both issued by RBI, included statements that were "materially false and misleading" because "they failed to disclose that Kairos was in part owned by Defendants Honig and DeFrancesco." *See id.* ¶¶ 260-61. Plaintiff claims these statements also "failed to disclose that (i) Kairos had only been incorporated in Nevada October 19, 2017, just two weeks earlier," and that (ii) RBI "appears to have significantly overpaid" for its bitcoin

---

[1] The Amended Complaint attempts to link Ms. DeFrancesco, and/or an entity called "Namaste Gorgie" that is owned by Ms. DeFrancesco, to a previous alleged scheme relating to a company called "PolarityTE." *See* AC ¶¶ 79, 80 (Charts). The allegations relating to PolarityTE, however, mention neither Namaste Gorgie nor Ms. DeFrancesco. *See id.* ¶¶ 119-121.

4

mining machines. *See id.* ¶ 262. Kairos' incorporation information is public.[2] RBI's payment, and the purported availability of cheaper machines for online purchase were, as discussed above, also public information. *See also id.* ¶¶ 264-266 (purporting to allege that the November 6, 2017 press release announcing the closing of the Kairos Transaction was misleading for similar reasons).

Plaintiff nowhere alleges that Ms. DeFrancesco had any role in preparing the November 2 or November 6 press releases, or the November 3, 2017 Form 8-K, nor that she had any disclosure obligations to RBI shareholders.

### 2. December 2017: RBI Issues Stock in a Private Placement

On December 19, 2017, RBI announced "private placement agreements with unnamed accredited investors to sell $37 million units of securities at a purchase price of $22.50 per unit." AC ¶ 189 (the "Private Placement"). Plaintiff alleges that this announcement "failed to disclose" that "two large shareholders and members of the Honig Group[3] . . . were among the so-called 'accredited investors' who were invited to participate in the private placement, or that Defendant Honig had invested $500,000 and Defendant DeFrancesco had invested $360,000." *Id.* Plaintiff again nowhere alleges that Ms. DeFrancesco had any role in preparing the press release, nor any disclosure obligation to RBI shareholders. *See also id.* ¶ 296 (alleging private placement announcement was misleading by failing to disclose Honig's and DeFrancesco's alleged participation).

---

[2] *See* Declaration of Jaclyn M. Palmerson ("Palmerson Decl."), Ex. 1 (Nevada corporation information about Kairos Global Technology, Inc.).

[3] The "Honig Group" is a defined term in the Amended Complaint. Even if Plaintiff had pleaded that Ms. DeFrancesco had a disclosure obligation to RBI shareholders, she could not have disclosed membership in a group defined by Plaintiff for purposes of this litigation.

### 3. February 2018: Kairos Purchases Additional Bitcoin Machines from Prive and Another Entity

Plaintiff alleges that, on February 16, 2018, "Riot issued a Form 8-K disclosing that Riot's subsidiary Kairos had agreed to purchase" 3,800 bitcoin mining machines from Prive "for $11 million in cash and 1 million shares of [RBI] common stock." AC ¶ 195 (the "Prive Transaction").[4] According to Plaintiff, the Form 8-K "did not disclose that Prive was a related party that was owned and controlled by Defendants Honig, DeFrancesco, and other members of the Honig Group." *Id.* ¶ 196; *see also id.* ¶¶ 344-45 (reiterating Prive Transaction allegations). Plaintiff nowhere alleges that Ms. DeFrancesco's supposed role in the Prive Transaction extended beyond her minority stake in Prive and in Kairos' parent company, RBI. *See id.* ¶ 196. Plaintiff again refers to a publicly-available archived version of Bitmain's website as evidence that RBI overpaid for the equipment it purchased. *See id.* Plaintiff also alleges that RBI overpaid by asserting that RBI purchased 3,000 bitcoin mining machines from Blockchain Mining Supply & Services Ltd. ("BMSS") (the "BMSS Transaction") for less per machine than RBI paid for the machines purchased from Prive. *See id.* ¶ 198. The BMSS Transaction was *disclosed* in the same February 16, 2018 8-K. Plaintiff's assertion that RBI "conveniently omitted" from a September 15, 2018 press release "anything about" the BMSS Transaction is therefore inapposite. *See id.*

### LEGAL STANDARD

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Trustcash Hldgs., Inc. v. Moss*, 668 F. Supp. 2d 650, 653 (D.N.J. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[4] The Kairos Transaction, Prive Transaction, and Private Placement are referred to collectively herein as the "Alleged Transactions."

6

(2009)). The elements of a claim under Rules 10b-5(a) and (c) are a "(1) . . . manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud [investors], (3) scienter, and (4) reliance." *Stichting Pensioenfonds ABP v. Merck & Co., Inc.*, 2012 WL 3235783, at *7 (D.N.J. Aug. 1, 2012). To satisfy Rule 9(b), a plaintiff must allege "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed and what effect the scheme had on the securities at issue." *In re Royal Dutch/Shell Transport Sec. Litig.*, 2006 WL 2355402, at *7 (D.N.J. Aug. 14, 2006); *see also In re Anadigics, Inc., Sec. Litig.*, 2011 WL 4594845, at *13 (D.N.J. Sept. 30, 2011) ("A securities fraud action, however, requires more than mere reference to the conventional standard applicable to motions under Rule 12(b)(6). Rather, the PSLRA and Rule 9(b) impose heightened pleading requirements that must be satisfied for a complaint sounding in securities fraud to survive a motion to dismiss." (internal citation and quotations omitted)).[5]

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO PLEAD THAT THE ALLEGED TRANSACTIONS ARE ACTIONABLE UNDER RULES 10b-5(a) OR 10b-5(c)

#### A. The Alleged Transactions Are Not the Type of Conduct That Is Actionable Under Rules 10b-5(a) or 10b-5(c)

Plaintiff seeks to hold Ms. DeFrancesco liable solely under Rules 10b-5(a) and 10b-5(c). To plead its claims with the particularity required under Rule 9(b), Plaintiff must allege "what manipulative acts were performed." *See Stichting*, 2012 WL 3235783, at *7. "[M]arket manipulation" is "'virtually a term of art'" that "'refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity.'" *Trustcash*, 668 F. Supp. 2d at 662 (quoting *Santa Fe Indus. v.*

---

[5] *Aff'd*, 484 F. App'x 742 (3d Cir. 2012).

*Green*, 430 U.S. 462, 476 (1977)); *see also Stichting*, 2012 WL 3235783, at *8 (rejecting "scheme liability" because "alleged efforts to deceive investors . . . do not involve any 'sham' transactions that go beyond the alleged misrepresentations and/or omission . . . ."); *Cortina v. Anavex Life Sci. Corp.*, 2016 WL 7480415, at *3 (S.D.N.Y. Dec. 29, 2016) ("[M]anipulation connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.").

Plaintiff fails to plead that the Alleged Transactions are "manipulative acts" prohibited by Rules 10b-5(a) and 10b-5(c). Plaintiff pleads that the Kairos and Prive Transactions involved only the acquisition of bitcoin mining companies or equipment, and fails to plead that the publicly-disclosed Private Placement was a sham transaction designed to artificially inflate RBI's stock price. Indeed, if anything, such a Private Placement could *dilute* existing shareholders, *see*, *e.g.*, AC ¶ 295 (noting sale of more than 1.6 million "restricted units" consisting of "one share of restricted common stock and one warrant to purchase one share of restricted common stock"),[6] and RBI stock lost approximately a third of its value between December 19, 2017—the day RBI announced the Private Placement—and December 22, 2017.[7] Plaintiff's allegations concerning the Private Placement also fail because Plaintiff nowhere

---

[6] *See also* Palmerson Decl. ¶ 3 & Ex. 2 at 2 (RBI Form 8-K dated December 21, 2017) ("On December 21, 2017, the Company closed on the sale of $37,037,528 of units of its securities and issued 1,646,113 shares of Common Stock and warrants to purchase up to 1,646,113 shares of Common Stock."). The Court may properly consider the information in this SEC filing and other such filings included as exhibits hereto, as well as public data concerning RBI stock, on this motion to dismiss. *See Stichting*, 2012 WL 3235783, at *4 (judicial notice of stock trading data); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (judicial notice of properly-authenticated public disclosure documents filed with the SEC); *see also In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (judicial notice of "(1) documents relied upon in the Complaint (thirty-two documents, comprising Company SEC filings and press releases); (2) documents filed with the SEC, but not relied upon in the Complaint (seven documents); and (3) stock price data compiled by the Dow Jones news service.").

[7] Palmerson Decl. ¶ 4 (including table of RBI stock data from Yahoo! Finance).

8

pleads "what effect" the Private Placement "had on the securities at issue." *In re Royal Dutch*, 2006 WL 2355402, at *7. The Alleged Transactions therefore do not support claims under Rules 10b-5(a) or 10b-5(c).

Plaintiff also fails to plead that Ms. DeFrancesco herself committed any "manipulative or deceptive act." *Stichting*, 2012 WL 3235783, at *7. Plaintiff nowhere alleges that Ms. DeFrancesco had any role in orchestrating or consummating the Kairos or Prive Transactions. Plaintiff's allegation that Ms. DeFrancesco "controlled" Kairos and Prive, *see* AC ¶¶ 173, 196, is a conclusion, devoid of factual support, and is contrary to Plaintiff's allegation that Ms. DeFrancesco held only a minority stake in each company. *See Trustcash*, 668 F. Supp. 2d at 662 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement." (quotation omitted)). Plaintiff also fails to allege that the Prive Transaction was a "related-party transaction[]," AC ¶ 1. Plaintiff pleads that Ms. DeFrancesco owned shares in Prive, but that counterparty Kairos was, at the time of the Prive Transaction, a subsidiary of RBI. Plaintiff therefore fails to allege "with specificity . . . that [Ms. DeFrancesco herself] conducted an 'act, scheme, or course of conduct' to defraud investors." *See Kemp v. Univ. Am. Fin. Corp.*, 2007 WL 86942, at *17 (S.D.N.Y. Jan. 10, 2007). Plaintiff also fails to plead that simple participation in the Private Placement "manipulated" RBI's stock. *See supra* p. 8, 12-13.

### B. Plaintiff's Allegations of Misstatements and Omissions are Insufficient Under Rules 10b-5(a) and 10b-5(c)

Plaintiff alleges that the Alleged Transactions were misleading under Rules 10b-5(a) and 10b-5(c) because RBI (not Ms. DeFrancesco) made misstatements and omissions concerning those Alleged Transactions. As explained below, these allegations are insufficient to sustain claims under Rules 10b-5(a) and 10b-5(c) as a matter of law. They also fail at the threshold to state a claim against Ms. DeFrancesco, however, because the alleged misstatements and

9

omissions are not—and cannot be—attributed to her. Plaintiff's allegations are thus a transparent attempt to hold Ms. DeFrancesco liable for *de facto* "aiding and abetting" liability for misstatements and omissions that she is not alleged to have made, or participated in making— much less over which she exercised "ultimate authority." *See Janus Capital Grp. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) ("[T]he maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it."). Courts have long rejected Plaintiff's attempt to expand liability under Section 10(b) by "re-label[ing] the alleged misstatements and omissions as manipulative and deceptive conduct," because such "sleight of hand does not magically transform [a] disclosure claim into a market manipulation claim." *TCS Cap. Mgmt., LLC v. Apax Partners, L.P.*, 2008 WL 650385, at *22 (S.D.N.Y. Mar. 7, 2008). As this Court has observed, Plaintiff's pleading here "risk[s] . . . reviving aiding and abetting liability in private actions." *S.E.C. v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 361 (D.N.J. 2009) (quotation omitted); *see also Lautenberg Found. v. Madoff*, 2009 WL 2928913, at *12 (D.N.J. Sept. 9, 2009) ("[T]he Supreme Court . . . reasoned that an expansive reading [of 10b-5(a) and 10b-5(c)] would undermine Congress's decision to restrict actions for aiding and abetting securities fraud to the SEC.").

Rules 10b-5(a) and 10b-5(c) prohibit a party, respectively, from "employ[ing] any device, scheme, or artifice to defraud" and from "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person . . . ." 17 C.F.R. § 240.10b-5(a) and (c). By contrast, Rule 10b-5(b) prohibits the "mak[ing] of any untrue statement of a material fact or omit[ting] to state a material fact necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b-5(b). Plaintiff must therefore allege "deceptive conduct that goes beyond a material misstatement or omission." *De Vito v. Liquid*

10

*Hldgs. Grp., Inc.*, 2018 WL 6891832, at *42 (D.N.J. Dec. 31, 2018); *see also In re Royal Dutch*, 2006 WL 2355402, at *8 ("[A] plaintiff's allegations under Rule 10b–5(a) or (c) must entail a defendant's undertaking of a deceptive scheme or course of conduct that went beyond misrepresentations."); *In re Alstom SA*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005) ("[A] plaintiff may not cast claims of misrepresentations as claims under Rule 10b–5(a) and (c) and thus evade the pleading requirements imposed in misrepresentation cases.").

The misconduct Plaintiff alleges in connection with the Kairos Transaction is limited to *statements* in a November 2, 2017 RBI press release and a November 3, 2017 RBI Form 8-K that were allegedly "materially false and misleading" because they "*failed to disclose*" that (i) Ms. DeFrancesco held a minority stake in Kairos, *see* AC ¶¶ 260-61 (emphasis added), (ii) Kairos had been incorporated "just two weeks" before the Kairos Transaction, and (iii) RBI "appears to have significantly overpaid" for bitcoin mining machines, *see id.* ¶ 262. *See also id.* ¶¶ 264-266 (claiming November 6, 2017 press release was misleading for similar reasons). These allegations similarly fail to sustain claims under Rules 10b-5(a) or 10b-5(c), which require allegations of a deceptive scheme, beyond mere misstatements or omissions, that are notably absent from the Amended Complaint. *See Catton v. Def. Tech. Sys., Inc.,* 2006 WL 27470, at *7 (S.D.N.Y. Jan. 3, 2006) ("The phrase 'pump and dump' is not a talisman that will convert a claim grounded in misrepresentations into a scheme." (quotation omitted)).

As discussed in Section C of the Background section, the only allegedly non-public information concerning the Kairos Transaction was certain Defendants' minority stake in Kairos, including Ms. DeFrancesco's. The "'alleged deception in this case'" was therefore the "'failure to disclose the real terms of the deal,'" which is "'nothing more than a reiteration of the misrepresentations and omissions that underlie [the] disclosure claim.'" *Lucent*, 610 F. Supp. 2d

11

at 358 (quoting *TCS Capital*, 2008 WL 650385 at *22); *see also De Vito*, 2018 WL 6891832, at *42 ("It is not alleged that this pre-IPO transaction was impermissible in itself.  It was Liquid's failure to disclose it that rendered it actionable; it was an omission of fact that made the agreement deceptive.  The claim, then, properly falls under Rule 10b-5(b), not (a) or (c)."); *Lautenberg*, 2009 WL 2928913, at *12 ("Plaintiffs label this conduct a concealment or cover-up of the fraudulent scheme . . . when in fact it merely re-states his failure to disclose material facts in violation of Rule 10b-5(b).  A Rule 10b-5(a) and/or (c) claim cannot be premised on the alleged misrepresentations or omissions that form the basis of a Rule 10b–5(b) claim.").[8]

Plaintiff's allegations concerning the Private Placement and the Prive Transaction fail for the same reasons.  Plaintiff alleges that RBI's press release announcing the Private Placement "***failed to disclose***" Mr. Honig's and Ms. DeFrancesco's participation.  *See* AC ¶ 189.  As to the Prive Transaction, Plaintiff similarly alleges that (i) RBI failed to disclose Ms. DeFrancesco's minority stake in Prive; and (ii) Kairos could have purchased from the manufacturer for less money the equipment it bought from Prive, *see* AC ¶¶ 195-196, 344-45.  Again, Plaintiff's sole allegations of misconduct are, at best, misstatements and omissions, and Plaintiff fails to state a claim arising from the Private Placement or the Prive Transaction under Rules 10b-5(a) or (c).

---

[8] *Rev'd on other grounds*, *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470 (3d Cir. 2012); *see also In re Anadigics, Inc.,* 2011 WL 4594845, at *34 ("[T]his claim is unmistakably predicated on the same factual basis as the Rule 10b–5(b) claim—that Defendants allegedly 'deceived the investing public' by the 'knowing and/or reckless suppression and concealment of information . . . .'  This is just another formulation of Plaintiffs' assertion that Defendants made material omissions . . . ."); *Liana Carrier Ltd. v. Pure Biofuels Corp.*, 151 F. Supp. 3d 319, 329 (S.D.N.Y. 2015) ("[H]ad Plaintiffs learned that Pinto was a related party in the Financing Transactions, their remedy would have been in the form of a suit for breach of fiduciary duty, not a securities fraud suit."); *Beaver Cnty. Employees' Ret. Fund v. Tile Shop Hldgs., Inc.*, 2016 WL 4098741, at *7 (D. Minn. July 28, 2016) (failure to disclose related-party nature of transaction was "omission" rather than "scheme").

### C. Plaintiff Fails to Plead Scienter With the Requisite Particularity

To plead that Ms. DeFrancesco acted with scienter (to the extent she acted at all), Plaintiff must "state with particularity facts giving rise to a strong inference" that she "acted with the required state of mind," *Hoey v. Insmed Inc.*, 2018 WL 902266, at *20 (D.N.J. Feb. 15, 2018), meaning a "strong inference of either reckless or conscious behavior." *Id.* A Plaintiff pleads the necessary strong inference only where it is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *In re Anadigics*, 2011 WL 4594845, at *14 (quotation omitted).

Plaintiff's limited allegations fail to support a compelling inference that Ms. DeFrancesco acted with fraudulent intent. Ms. DeFrancesco's alleged participation in the Kairos Transaction is limited to ownership of a minority stake in RBI and Kairos—Plaintiff does not even allege that Ms. DeFrancesco's shares were voted in favor of completing the transaction. *See* AC ¶¶ 195-98. Plaintiff also fails to allege that, as a minority shareholder in RBI, Ms. DeFrancesco had any disclosure obligation to its shareholders, much less one she deliberately flouted. For the same reasons, Plaintiff fails to allege that Ms. DeFrancesco acted with scienter in connection with the Prive Transaction. As discussed above, Plaintiff nowhere alleges that the Private Placement had any connection to the supposed "pump and dump" scheme, or that Ms. DeFrancesco intended to advance that scheme through her limited participation, which totaled less than 1% of the Private Placement's total value. *See, e.g.*, AC ¶¶ 189, 296 (alleging Ms. DeFrancesco invested $360,000 in a $37 million placement). Tellingly, Plaintiff's "Additional Scienter Allegations" are silent as to Ms. DeFrancesco. *See* AC ¶¶ 374-95.

Finally, Plaintiff fails to plead that Ms. DeFrancesco was an insider at RBI at the time her beneficially-owned shares were sold. Plaintiff alleges that as of January 10, 2017, Ms. DeFrancesco beneficially owned 11.45% of RBI's outstanding shares. AC ¶ 224. Plaintiff

13

makes no allegations as to Ms. DeFrancesco's percentage ownership, however, during the period between October 2017 and February 2018, when Plaintiff alleges Ms. DeFrancesco sold her beneficially-owned shares. *See*, *e.g.*, AC ¶ 164 (chart alleging sales roughly in the period between October 2017 and February 2018). As Ms. DeFrancesco's January 10, 2017 Schedule 13G provides, Ms. DeFrancesco's 11.45% stake was based on beneficial ownership of 515,777 out of 4,503,971 shares outstanding.[9] Plaintiff nowhere pleads that Ms. DeFrancesco's holdings exceeded that number of shares after January 2017. The number of RBI shares outstanding, however, increased over time, and would therefore have diluted Ms. DeFrancesco's beneficial percentage ownership to well below 11.45%:

| DATE | SHARES OUTSTANDING | PERCENTAGE BENEFICIAL OWNERSHIP WITH 515,777 SHARES |
|---|---|---|
| October 10, 2017 | 6,730,272[10] | 7.7% |
| November 13, 2017 | 8,321,137[11] | 6.2% |
| December 11, 2017 | 9,659,919[12] | 5.3% |
| January 4, 2018 | 11,622,112[13] | 4.4% |
| February 5, 2018 | 11,652,270[14] | 4.4% |

Plaintiff thus fails to attribute insider status to Ms. DeFrancesco at the time her beneficially-owned shares were sold.

Plaintiff's makeweight allegations concerning purported prior "pump and dump" schemes do not involve Ms. DeFrancesco, *see supra* note 1, and, in any case, are insufficient to allege scienter for the scheme Plaintiff alleges in *this* Amended Complaint. *See Cortina*, 2016

---

[9] *See* Palmerson Decl., Ex. 3 at 2 (Jan. 9, 2017 Schedule 13D/A filed by Catherine DeFrancesco); *see also supra* note 6 (collecting cases on judicial notice).

[10] *See id.*, Ex. 4 at 2 (Oct. 11, 2017 Schedule 13G).

[11] *See id.*, Ex. 5 at 1 (excerpt of Nov. 13, 2017 Form 10-Q).

[12] *See id.*, Ex. 6 at 13 (excerpt of Dec. 12, 2017 Schedule 14A).

[13] *See id.*, Ex. 7 at 13 (excerpt of Form S-3 dated as of Jan. 5, 2018).

[14] *See id.*, Ex. 8 at 14 (excerpt of Form S-3/A dated Feb. 7, 2018).

WL 7480415, at *8 ("[T]he fact that Anavex had a history of involvement in stock promotion schemes does not come close to suggesting that Defendants had knowledge of the alleged scheme during the Class Period.").

## CONCLUSION

For the reasons stated above, Ms. DeFrancesco respectfully requests an Order dismissing the Amended Complaint as against her, with prejudice, and any further relief the Court deems just and proper.

DATED: New York, New York
September 3, 2019

Respectfully submitted,

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP

By: */s/ Jaclyn M. Palmerson*
Alex Spiro (*pro hac vice*)
Julia M. Beskin (*pro hac vice* pending)
Jacob J. Waldman (*pro hac vice*)
Jaclyn M. Palmerson
Alexander P. Wentworth-Ping (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
Telephone:  (212) 849-7000
alexspiro@quinnemanuel.com
juliabeskin@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jaclynpalmerson@quinnemanuel.com
alexwentworthping@quinnemanuel.com

*Attorneys for Catherine DeFrancesco*