# EXHIBIT O

8-K 1 bioptix_8k-012016.htm FORM 8-K

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION

WASHINGTON, DC 20549

# FORM 8-K

### CURRENT REPORT

PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported): January 14, 2017

# Bioptix, Inc.

(Exact name of Registrant as specified in its charter)

| Colorado | 001-33675 | 84-155337 |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (I.R.S. Employer Identification No.) |

| 1775 38th Street Boulder, Colorado | 80301 |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code: (303) 545-5550

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

[_] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
[_] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
[_] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
[_] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 1.01**      **Entry Into a Material Definitive Agreement.**

On January 18, 2017, Bioptix, Inc. (the "Company") entered into an agreement (the "Agreement") with certain shareholders of the Company (the "Shareholders") providing for termination of certain pending litigation related to the Shareholders' demand for the Company to hold a Special Meeting of its shareholders for the purpose of (a) removing three (3) members of the Company's Board of Directors; (b) setting the size of the Board of Directors at no more than six (6) members and (c) electing three (3) candidates proposed by the Shareholders to the Company's Board of Directors (the "Proposals"). The Agreement followed the resignation of (3) three members of the Board of Directors of the Company effective January 6, 2017 and appointment of two (2) of the director candidates proposed by the Shareholders, as previously reported on the Company's Current Report on Form 8-K dated January 6, 2017.

In connection with the Agreement, the Shareholders agreed to withdraw the action pending before the District Court, Douglas County, Colorado (the "Action") under which the court issued an order requiring the Company to (a) issue to its shareholders notice of the Special Meeting on or prior to January 10, 2017; (b) hold a Special Meeting of shareholders to consider the Proposals pursuant to Section 7-107-103(1)(b) of the Colorado Revised Statutes not less than 10 nor more than 60 days from the date of notice; (c) bear the expense of sending notice of the Special Meeting and (d) pay the reasonable costs and expenses incurred and to be incurred, including reasonable attorneys' fees.

**Item 2.05**      **Costs Associated with Exit or Disposal Activities.**

On January 14, 2017, the Board of Directors of the Company adopted a plan under which the Company will terminate certain employees associated with the September 2016 acquisition of Bioptix Diagnostics, Inc. The Company commenced terminations on January 16, 2017 and terminations are expected to be completed within 30 days. The Company may pay severance benefits in certain circumstances of up to one month base salary. The Board of Directors determined to take the action following a review and assessment of the anticipated time to realization of benefits from the acquisition, further product development required and the sales forecasts, costs and results of operations projected during the near to mid-term period. The Company is also reviewing possible strategic alternatives for the business. The Company is unable in good faith to make a determination at this time of an estimate or range of estimate of costs associated with the decision and undertakes to file an amended Current Report on Form 8-K within four business days after making a determination of such estimate or range of estimates.

**Item 8.01**      **Other Events**

On January 20, 2017, the Company issued a press release announcing the plans discussed in Item 2.05 herein. The press release is attached as Exhibit 99.1 to this Current Report on Form 8-K and is incorporated herein by reference.

**Item 9.01**      **Financial Statements and Exhibits.**

(d) Exhibits.

| Number | Exhibit |
|---|---|
| 10.1 | Agreement dated January 18, 2017 |
| 99.1 | Press release dated January 20, 2017 |

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

                           Bioptix, Inc.
                           (Registrant)

January 20, 2017                By:   /s/ Jeffrey G. McGonegal
                                        Name:   Jeffrey G. McGonegal
                                        Title:    Chief Financial Officer

Exhibit 10.1

# AGREEMENT

**WHEREAS**, Barry Honig, in his individual capacity and as trustee of GRQ Consultants Inc. 401K ('collectively, "Honig"), and Catherine DeFrancesco, in her individual capacity and as the controlling person of DSB Capital, Ltd., DeFrancesco Motorsports, Inc., Delavalco Holdings, Inc. (an Ontario corporation), Delavalco Holdings, Inc. (a Florida corporation), Marcandy Investments Corp. and Namaste Gorgie, Inc. (collectively, "DeFrancesco" and with Honig, the "Shareholders") have filed Schedule 13D filings and amendments thereto (the "Schedule 13D Filings") with respect to Bioptix, Inc. (f/k/a Venaxis, Inc.), a Colorado corporation (the "Company") to report ownership, of greater than ten percent (10%) of the common stock of the Company, and have made a demand (the "Demand") for a special meeting of shareholders (the "Special Meeting") of the Company for the purposes of: (a) removing three (3) members of the Company's Board of Directors; (b) setting the size of the Board of Directors of the Company at no more than six (6) members; and (c) electing three (3) candidates proposed by the Shareholders to the Company's Board of Directors (the "Special Meeting Proposals").

**WHEREAS**, pursuant to that certain "Order" dated December 21, 2016 in the matter of Barry Honig v Bioptix, Inc. (Case No. 16CV31207) pending in the District Court, Douglas County, Colorado (the "Action") the Company is required to: (a) issue to its shareholders notice of the Special Meeting on or prior to January 10, 2017; (b) hold a Special Meeting of shareholders to consider the Special Meeting Proposals pursuant to Section 7-107-103(1)(b) of the Colorado Revised Statutes not less than 10 nor more than 60 days from the date of notice; (c) bear the expense of sending notice of the Special Meeting; and (d) pay the reasonable costs and expenses of Honig incurred and to be incurred, including reasonable attorneys fees.

**WHEREAS**, on January 6, 2017 Gail S. Schoettler, Susan A. Evans and David E. Welch resigned as members of the Board of Directors of the Company and Michael Dai and John O'Rourke were appointed to the Board of Directors to fill two of three vacancies resulting from the resignations. The Company and the Shareholders desire to enter into this Agreement (the "Agreement") in order to provide for the withdrawal of the Special Meeting Proposals and termination of the Action.

**NOW, THEREFORE**, based on adequate consideration, the sufficiency of which is acknowledged, the parties to this Agreement, enter into this legal and binding Agreement as follows.

1. Withdrawal of Demand. The Shareholders hereby withdraw the Special Meeting Demand.

2. Stipulation of Dismissal. Within three (3) business days of payment set forth in paragraph 3 hereof, the Company and the Shareholders shall enter into a stipulation dismissing the Action, without prejudice.

3. Payment of Fees. Within two (2) business days following the execution of this Agreement the Company shall wire funds not to exceed such amount as authorized by the Company's Board of Directors, to the account(s) designated by Shareholders.

4. Injunctive Relief. Each Shareholder agrees that money damages may not be a sufficient remedy for any breach of this Agreement by such Shareholder and that in addition to all other remedies the Company shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach. If any provision or portion of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable for any reason, in whole or in part, the remaining provisions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by applicable law.

5.    <u>Entire Agreement</u>.  This Agreement contains the full and complete understanding of the parties with respect to the subject matter hereof and supersedes all prior representations and understandings regarding the subject matter hereof, whether oral or written. Failure to exercise or delay in exercising any remedy hereunder shall not be deemed a waiver thereof. Each party represents that this Standstill Agreement is being signed by a duly authorized officer

6.    <u>Governing Law</u>. This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.  Each party hereby irrevocably and unconditionally submits to the exclusive jurisdiction of any State or Federal court sitting in Palm Beach County, Florida over any suit, action or proceeding arising out of or relating to this Agreement.  Each party hereby irrevocably and unconditionally waives any objection to the placing of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.  EACH OF THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY WAIVES ANY DEMAND FOR A JURY TRIAL.

7.    <u>Miscellaneous</u>.  This Agreement may be executed in two or more counterparts, each of which will be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute one and the same agreement.  The exchange of copies of this Agreement and of signature pages by facsimile transmission or electronic mail in .pdf or similar format shall constitute effective execution and delivery of this Agreement as to the parties.  For purposes of this Agreement any reference to "written" or "in writing" shall be deemed to include correspondence by signed letter or facsimile or by e-mail.


**BIOPTIX, INC.**


By:  /s/ Steve Lundy
     Stephen T. Lundy, President
     and Chief Executive Officer


**Barry Honig as an individual**
**Barry Honig for GRQ Consultants Inc. 401K, as Trustee**


By:  /s/ Barry Honig
     Barry Honig


**Catherine Johanna DeFrancesco as an individual**
**Catherine Johanna DeFrancesco  for DSB Capital, Ltd., a Turks & Caicos company, as Trustee,**
**Catherine Johanna DeFrancesco for DeFrancesco Motorsports, Inc., an Ontario corporation, as President,**
**Catherine Johanna DeFrancesco  for Delavalco Holdings, Inc., an Ontario corporation, as President,**
**Catherine Johanna DeFrancesco  for Delavalco Holdings, Inc., a Florida corporation, as President,**
**Catherine Johanna DeFrancesco  for Marcandy Investments Corp., an Ontario corporation, as President,**
**Catherine Johanna DeFrancesco for Namaste Gorgie, Inc., an Ontario corporation, as President**


By:  /s/Catherine Johanna DeFrancesco
     Catherine Johanna DeFrancesco



Dated:  January 18, 2017

EX-99.1 3 ex99x1.htm EXHIBIT 99.1

Exhibit 99.1

## Bioptix Announces Streamlining of Workforce

BOULDER, Colo., January 20, 2017 /PRNewswire/ -- Bioptix, Inc. (BIOP) ("Bioptix" or the "Company"), announced that on January 14, 2017 the Board of Directors of the Company adopted a plan under which the Company will terminate certain employees associated with the September 2016 acquisition of its subsidiary, Bioptix Diagnostics, Inc.  The Company commenced terminations on January 16, 2017 and terminations are expected to be completed within 30 days.  The Company may pay severance benefits in certain circumstances of up to one month base salary.  The Board determined to take the action following a review and assessment of the anticipated time to realization of benefits from the acquisition, further product development required and the sales forecasts, costs and results of operations projected during the near to mid-term period.  The Company is reviewing possible strategic alternatives relative to the business.

None of the Company's current Board members, with the exception of the CEO, were employees or Board members of the Company at the time of the Bioptix purchase.

Michael Beeghley, Chairman of the Board of Directors commented "The Board and executive team are committed to growing the business of the Company and enhancing prospects for growth and increasing shareholder value.  In this endeavor we may explore strategic alternatives that would be accretive to the Company as a whole and that would maximize shareholder value."

**About Bioptix, Inc.**

Bioptix, Inc., through its subsidiary Bioptix Diagnostics, Inc., acquired Enhanced Surface Plasmon Resonance ("eSPR") instruments designed to increase the flexibility and reliability of SPR for a broad range of applications during 2016.  The Company is developing a plan to address technical and other initiatives related to eSPR while it continues to be a licensor of important patents and technology in its intellectual property portfolio.


**Forward Looking Statements:**

This press release contains "forward-looking statements" regarding matters that are not historical facts, including statements relating to the Company's operations and future strategic acquisitions. Because such statements are subject to risks and uncertainties, actual results may differ materially from those expressed or implied by such forward-looking statements. Words such as "anticipates," "plans," "expects," "intends," "will," "potential," "hope" and similar expressions are intended to identify forward-looking statements.  These forward-looking statements are based upon current expectations of the Company and involve assumptions that may never materialize or may prove to be incorrect. Actual results and the timing of events could differ materially from those anticipated in such forward-looking statements as a result of various risks and uncertainties. Detailed information regarding factors that may cause actual results to differ materially from the results expressed or implied by statements in this press release relating to the Company may be found in the Company's periodic filings with the Securities and Exchange Commission, including the factors described in the section entitled "Risk Factors" in its annual report on Form 10-K for the fiscal year ended December 31, 2015, as amended and supplemented from time to time and the Company's Quarter Reports on Form 10-Q and other filings submitted by the Company to the SEC, copies of which may be obtained from the SEC's website at www.sec.gov. The parties do not undertake any obligation to update forward-looking statements contained in this press release.


Contact: InvestorRelations@venaxis.com