# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>      v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, JEFFREY G. MCGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES and ERIC SO,<br><br>     Defendants. | Case No. 18-cv-2293 (FLW) (ZNQ)<br><br>***Oral Argument Requested***<br><br>**DEFENDANT MARK GROUSSMAN'S MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF HIS MOTION TO DISMISS LEAD PLAINTIFF'S CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

KEVIN G. WALSH
kwalsh@gibbonslaw.com
KATE E. JANUKOWICZ
kjanukowicz@gibbonslaw.com
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
Tel:    973.596.4769
Fax:   973.639.6470

PERRIE M. WEINER (*pro hac vice* to be filed)
perrie.weiner@backermckenzie.com
EDWARD D. TOTINO (*pro hac vice* to be filed)
edward.totino@backermckenzie.com
BAKER & MCKENZIE LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067
Tel:    310.201.4728
Fax:   310.201.4721

Attorneys for Defendant
MARK GROUSSMAN

**Table of Contents**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND .................................... 4

    A.   The Parties ................................................................................................ 4

    B.   Riot's Pivot To Blockchain Technologies ............................................... 6

    C.   Plaintiff Attempts To Plead An Alleged Stock Manipulation Scheme That Does Not In Any Way Involve Groussman ................................................ 7

    D.   Procedural History .................................................................................... 8

III.  LEGAL STANDARD ........................................................................................ 9

IV.   ARGUMENT ................................................................................................... 10

    A.   Plaintiff Fails To Allege That Groussman Engaged In A "Deceptive Or Manipulative" Act .................................................................................. 11

        1.   Plaintiff Does Not Allege Groussman Misrepresented Or Omitted Any Material Fact ........................................................................... 12

        2.   Groussman's Publicly-Disclosed Trading In Riot Does Not Constitute A "Deceptive" or "Manipulative" Act .............................................. 14

        3.   The Coinsquare And Kairos Transactions Are Not Actionable Against Groussman Under 10-b5 .............................................................. 16

    B.   Plaintiff Fails To Adequately Allege That Groussman Acted With Scienter ............... 17

    C.   Plaintiff Fails To Adequately Allege Reliance ...................................... 19

    D.   Plaintiff Fails To Adequately Allege Loss Causation ........................... 20

    E.   The Amended Complaint Should Be Dismissed With Prejudice............ 22

V.    CONCLUSION ................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Able Labs. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 23538 (D.N.J. 2008) ..........................................................11

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972)..........................................................................................19, 20

*In re Alpharma Inc. Sec. Litig.*,
   372 F.3d 137 (3d Cir. 2004)..................................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................9

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988)..............................................................................................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................9

*Central Bank of Denver v. First Interstate Bank of Denver*,
   511 U.S. 164 (1994)..............................................................................................14

*In re Charter Commc'ns, Inc., Sec. Litig.*,
   443 F.3d 987 (8th Cir. 2006) ................................................................................15

*In re Clearly Canadian Sec. Litig.*,
   875 F. Supp. 1410 (N.D. Cal. 1995) ....................................................................16

*Cortina v. Anavex Life Scis. Corp.*,
   2016 U.S. Dist. LEXIS 179905 (S.D.N.Y. Dec. 29, 2016) ..................................18

*Dolan v. PHL Variable Ins. Co.*,
   2016 U.S. Dist. LEXIS 161414 (M.D. Penn. 2016) .............................................11

*In re DVI, Inc. Sec. Litig.*,
   2010 U.S. Dist. LEXIS 92888 (D.N.J. Sep. 3., 2010) ..........................................22

*In re DVI, Inc. Sec. Litig.*,
   639 F.3d 623 (3d Cir. 2011)............................................................................11, 20

*GFL Advantage Fund, Ltd. v. Colkitt*,
   272 F.3d 189 (3d Cir. 2001)..................................................................................15

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   131 F. Supp. 2d 680 (E.D. Pa. 2001) ......................................................21

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)...................................................................19

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007) .........................................................22

*Kemp v. Univ. Am. Fin. Corp.*,
   2007 WL 86942 (S.D.N.Y. Jan. 10, 2007) ..............................................16

*Krantz v. Prudential Invest. Fund Mgmt. LLC*,
   305 F.3d 140 (3d Cir. 2002)...................................................................22

*Limantour v. Cray Inc.*,
   432 F. Supp. 2d 1129 (W.D. Wash. 2006) ..............................................17

*Lorenzo v. SEC*,
   139 S. Ct. 1094 (2019) ...........................................................................12

*Martin v. GNC Holdings, Inc.*,
   2017 U.S. Dist. LEXIS 145530 (W.D. Pa. Sept. 8, 2017) .......................21

*McCabe v. Ernst & Young, LLP*,
   494 F.3d 418 (3d Cir. 2007)...................................................................20

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
   547 U.S. 71 (2006)...................................................................................10

*Morales v. Quintel Entm't, Inc.*,
   249 F.3d 115 (2d Cir. 2001)...................................................................12

*In re NAHC, Inc. Sec. Litig.*,
   306 F.3d 1314 (3d Cir. 2002)..................................................................23

*In re Nutrisystem, Inc. Sec. Litig.*,
   653 F. Supp. 2d 563 (E.D. Pa. 2009) ......................................................17

*In re Parmalat Sec. Litig.*,
   376 F. Supp. 2d 472 (S.D.N.Y. 2005).....................................................15

*Pub. Pension Fund Grp. v. KV Pharma. Co.*,
   679 F.3d 972 (8th Cir. 2012) ..................................................................12

*Rabin v. NASDAQ OMX PHLX LLC*,
   712 Fed. Appx. 188 (3d Cir. 2017).................................................15, 20

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
    311 F.3d 198 (3d Cir. 2002)........................................................................9

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977)................................................................................15

*SEC v. Lucent Techs., Inc.*,
    610 F. Supp. 342 (D.N.J. 2009) ......................................................10, 14

*Stichting Pensioenfonds ABP v. Merck & Co.*,
    No. 05-5060, 2012 U.S. Dist. LEXIS 113813 (D.N.J. Aug. 1, 2012) ....................12

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008)........................................................................10, 14

*In re Synchronoss Sec. Litig.*,
    705 F. Supp. 3d 367 (D.N.J. 2010) ......................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..............................................................10, 17, 18

*United States Football League v. NFL*,
    634 F. Supp. 1155 (S.D.N.Y. 1986)......................................................18

*United States SEC v. Wey*,
    246 F. Supp. 3d 894 (S.D.N.Y. 2017)...................................................14

*Williams v. Globus Medical, Inc.*,
    869 F.3d 235 (3d Cir. 2017)................................................................14

*Winer Family Trust v. Queen*,
    503 F.3d 319 (3d Cir. 2007)..........................................................10, 17

**Statutes**

15 U.S.C.
    § 78u-4(b)(1) ....................................................................................10
    § 78u-4(b)(2) ....................................................................................10

Private Securities Litigation Reform Act of 1995, 15 U.S.C................................ *passim*

**Other Authorities**

17 C.F.R.
    §§ 240.10b-5(a), (c) .........................................................................10
    § 240.13d-1(a)-(c).......................................................................12, 13
    §240.13d-1(b)-(c)............................................................................13

Fed. R. Civ. P.

R. 8(a) ........................................................................................................................9
R. 9(b) ........................................................................................................9, 11, 14, 19
R. 10b-5.......................................................................................................3, 10, 14, 20
R. 10b(5)-(a) ...........................................................................................................2, 10, 11
R. 10b(5)-(a) and (c) ...............................................................................................1, 10, 11
R. 10b-5(b)...............................................................................................................12
R. 10b-5(a) and 10b-5(c)............................................................................................9
R. 10b-5(a) and (c), § 10(b) ....................................................................................12

Defendant Mark Groussman submits this memorandum of law in support of his Motion to Dismiss the Consolidated Amended Class Action Complaint ("Amended Complaint" or "AC") filed by Lead Plaintiff Dr. Stanley Golovac ("Plaintiff") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b) ("PSLRA")

## I.     INTRODUCTION

The gravamen of the Amended Complaint concerns the purported orchestration by Defendant Barry Honig, an individual investor who never acquired more than a minority stake in Riot Blockchain, Inc. ("Riot" or the "Company"), of a vast, secret conspiracy to artificially inflate Riot's stock price and profit from fraudulent "related-party" cross-border transactions.  Plaintiff's efforts to sweep Groussman – another individual investor who was never an employee, director, or officer at Riot – into this alleged international conspiracy fails.  The Amended Complaint is entirely devoid of allegations that Groussman knew about, intentionally participated in, or assisted in Honig's alleged stock manipulation scheme or the "related-party" transactions Plaintiff has attempted to sketch out.  The absence of any relevant allegations against Groussman is striking, given that Plaintiff has had more than 14 months since this action was commenced to research, investigate, and perfect the allegations in the Amended Complaint.

The Amended Complaint – the fourth operative complaint filed in this action – tars Groussman with guilt by association, and nothing more.  In his excessively prolix 440-paragraph Amended Complaint, Plaintiff devotes less than ten paragraphs to describing Groussman's purported activities in connection with Riot.  Plaintiff rests his sole claim against Groussman, Count II for scheme liability under Rule 10b(5)-(a) and (c), on irrelevant, inflammatory background allegations about Groussman's prior investment history with Honig in companies *that have nothing to do with Riot*.  As to Riot, Plaintiff does not allege a single fact to suggest that Groussman agreed to coordinate trades with Honig's alleged "group," took direction from Honig in trading Riot shares, engaged in any manipulative trading or promotional activities to influence

Riot's stock price, or attempted to influence Riot's management.  As a result, Plaintiff fails to plausibly allege that Groussman knowingly or intentionally participated in any manipulative stock scheme, that there was ever any agreement (by anyone) to act together for the purpose of acquiring, holding, voting or disposing of Riot's stock, or that there was even a "group" for Groussman to join.

To establish a violation under Rule 10b(5)-(a) or (c), a complaint must plead, in addition to all the other essential elements of a 10b-5 claim: (1) what manipulative acts were performed; (2) which defendants performed them; (3) when the manipulative acts were performed; and (4) what effect the scheme had on the market for the securities at issue.  Rather than plead particularized allegations in support of these required elements, Plaintiff can only allege that Groussman: (1) sold shares of Riot's common stock; (2) was a passive investor in two other companies with which Riot dealt; and (3) issued a Schedule 13G disclosing his beneficial ownership in Riot during the class period.  The Amended Complaint does not even attempt to tie these acts to the alleged manipulation scheme and, in any event, none could support liability under Rule 10b-5(a) or (c).

The trading activity described by Plaintiff – of seeking to sell Riot shares to the public, and selling those shares, over the course of nearly a year as Riot's stock declined with the crash of Bitcoin – is entirely unremarkable.[1]  As to any alleged "related-party" transactions, even if it were true that Groussman was a passive investor in two companies with which Riot did business, the Amended Complaint fails to explain how that alleged fact would constitute a "manipulative" or "deceptive" act by Groussman inflating Riot's stock price.  Plaintiff does not allege that Groussman orchestrated or otherwise influenced Riot's business dealings with those two companies.  Nor does Plaintiff allege that Groussman had any role in drafting Riot's press releases and SEC filings describing those transactions.  Finally, the Schedule 13G accurately disclosed Groussman's

---

[1] As set forth in the Motion to Dismiss filed by Honig (Dkt. No. 118-1), there is a strong positive correlation between Riot's stock – which offers investors "pure play" exposure to cryptocurrencies – and the price of Bitcoin.  Indeed, between October 3, 2017 and September 6, 2018, Riot and Bitcoin moved virtually in lockstep.  *See* Dkt. No. 118-1 at 1.

holdings and confirmed – as is one the functions of a Schedule 13G – that Groussman did not acquire his shares in Riot as part of an attempt to take over or otherwise control the Company. Plaintiff does not – and cannot – allege that Groussman ever attempted to exercise a takeover of Riot or ever engaged in any way with Company management.  Therefore, Plaintiff cannot plead that Groussman was disqualified from filing a Schedule 13G, or that anything in that document constituted a misrepresentation.

Unable to even plead a "deceptive" or "manipulative" act by Groussman, the Amended Complaint predictably also falls short of adequately pleading several other essential elements of a Rule 10b-5 claim.  Plaintiff fails to plead the requisite "strong inference" of scienter, as the Amended Complaint does not so much as mention Groussman's intent.  Even if it did, there is no plausible inference of scienter to draw based on the unremarkable and perfectly legal trading history alleged by Plaintiff.  In an effort to establish reliance, the Amended Complaint specifically invokes two doctrines that allow presumptions of reliance when there has been a material misrepresentation or omission.  As Groussman is not alleged to have made any representations other than a fully accurate Schedule 13G, those doctrines have no applicability to him.  Finally, Plaintiff also fails to plead loss causation.  None of the purported corrective disclosures alleged by Plaintiff – primarily media reports discussing already known facts about the Company – have anything to do with Groussman, his trading activity, or his alleged ownership in other companies.

For all these reasons, as set forth in further detail below,[2] the Amended Complaint should be dismissed.  Given that the Amended Complaint is the fourth separate complaint filed in this action, and Plaintiff has had more than a year to investigate his claims and perfect his allegations, such dismissal should be with prejudice.

---

[2] Groussman joins and incorporates herein the arguments made by Defendants Riot, Barry Honig, Catherine DeFrancesco, Andrew Kaplan, Eric So, and Jason Less in support of their Motions to Dismiss.  *See* Dkt. Nos. 107-1, 108-1, 112-1, and 118-1.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Parties

Riot is a publicly-traded corporation on NASDAQ that supports and operates blockchain technologies.   Amended Complaint ¶ 21.   Plaintiff made his initial purchase of Riot stock on December 19, 2017, purchased and sold various amounts of Riot stock over the next several months, and sold all of his holdings in Riot by February 23, 2018.  *See* Dkt. No. 17-2 (Ex. C).  The putative "Class" consists of "all purchasers of the common stock of Riot, between April 20, 2017, and September 6, 2018, inclusive."  Amended Complaint ¶ 1.

Plaintiff has sued certain of Riot's former officers and directors.   Defendant Michael Beeghley was Riot's Chairman and CEO from April 2017 until November 3, 2017, leaving the Company before Plaintiff ever invested in Riot.   Amended Complaint ¶ 25.   Defendant John O'Rourke was Riot's Chairman and CEO from November 3, 2017 until September 8, 2018.  *Id.* ¶ 23. 67.  Defendant Jeffrey McGonegal was Riot's CFO from 2003 to February 28, 2018.  *Id.* ¶ 30. Defendants Andrew Kaplan, Eric So, and Jason Les are former or current directors in the Company.

In addition to these officers and directors, Plaintiff has named as Defendants several individual investors in the Company who were never officers, directors, or employees, and who never held more than a minority stake in Riot.  Defendant Barry Honig first acquired a position in Riot in 2016 when it was a biomedical company called Venaxis, Inc. ("Venaxis").   Amended Complaint ¶¶ 22, 47, 130.  Plaintiff alleges that, as Riot transitioned from a failing medical research business to a provider of blockchain technologies, Honig led a group of investors, including Defendants Catherine DeFrancesco and John Stestson, into acquiring a minority stake in the Company.  Plaintiff alleges that these individuals – which Plaintiff calls the "Honig Group" – then, via "manipulative" trading strategies that the Amended Complaint never identifies or explains, somehow inflated the price of Riot shares.  Finally, Plaintiff alleges that the "Honig Group" then

4

sold their holdings as Riot's stock began to fall with the crash in cryptocurrencies in early 2018. *See* Amended Complaint ¶¶ 138, 140, 163-64, 432.

In Plaintiff's effort to detail that largely unremarkable trading history over 440 paragraphs and 159 pages, the Amended Complaint barely mentions Groussman. Plaintiff alleges that Groussman had acquired – at some unidentified point in time – a non-controlling stake in Riot and slowly sold that stake over the course of nearly a year. *See* Amended Complaint ¶¶ 144, 154, 164. According to Plaintiff, Groussman listed shares for sale as early as April 2017 (*id*. ¶ 144), and had fully sold off his holdings in Riot by February of 2018 – again, around the time that cryptocurrencies had crashed. *Id.* ¶ 164; *see also* Dkt. No. 118-1 at 1. Besides describing an alleged trading history of Riot stock that does not in any way suggest market manipulation, the Amended Complaint identifies no conduct by Groussman specific to Riot other than: (1) his signing of a routine Schedule 13G "short form" disclosing his stake in the Company; and (2) Groussman's small stake in Coinsquare Ltd. ("Coinsquare"), a company in which Riot had invested. Amended Complaint ¶¶ 167, 180.

The only representation Plaintiff alleges Groussman to have made is a perfunctory certification in the Schedule 13G that he did not acquire his stake in Riot in an effort to "chang[e] or influenc[e] the control" of the Company. *Id*. ¶¶ 179-80. As Groussman made no effort to engage in a takeover of the Company or otherwise assume control of it – and Plaintiff himself alleges no such efforts by Groussman – nothing about the Schedule 13G was in any way false. Thus, Plaintiff does not allege that Groussman was disqualified from filing a Form 13G and was instead required to file a Form 13D to reveal any purported involvement in a "control group." Nor does Plaintiff allege that Groussman ever attempted to conceal his prior relationship with Honig, or his trading in Riot.

While Plaintiff presumably is attempting to sweep Groussman into the so-called "Honig Group," the Amended Complaint does not allege that Groussman coordinated his trading in Riot with Honig, does not allege that Groussman traded Riot stock at Honig's instructions, does not

allege that Groussman engaged in promotional activities to drive up the price of Riot stock, and does not allege that Honig and Groussman engaged in any concerted activity in any way related to Riot.  In fact, rather than alleging how Groussman was part of any purported "control group," the Amended Complaint devotes more paragraphs purporting to detail Groussman's activities *outside of Riot*, alleging that Groussman "has a long history of investing" in the same companies as Honig.  Amended Complaint ¶¶ 80, 105-06, 123, 180.

### B.     Riot's Pivot To Blockchain Technologies

Originally called Venaxis, Riot began in the early 2000s as a biomedical company, attempting to develop a blood test for use in the diagnosis and treatment of acute appendicitis.  Amended Complaint ¶ 128.  It never achieved success in that field and, after having burned through tens of millions of dollars in cash with virtually no revenue,[3] in 2015 the FDA declared that the Company's blood test did not meet or exceed the current standard of care, leaving it with no viable product.  *Id*. ¶ 129.  As the Company searched for a new business model, in September 2016, Honig and DeFrancesco wrote a letter to the Company's then-CEO, Stephen Lundy, "touting their combined 16.2%" stake and expressing their dissatisfaction with the Company's direction.  *Id*. ¶¶ 131, 134.  In late 2016, Honig initiated a proxy fight, and filed a lawsuit to force a shareholder meeting.  *Id*. ¶¶ 135, 137.  Three of the Company's directors resigned in early January 2017, (*id*. ¶ 137), replaced by Defendants Beeghley, O'Rourke and Dai.  *Id*. ¶¶ 25, 29, 137.  In April of 2017, Lundy resigned as CEO and was replaced by Beeghley.  *Id*. ¶ 25.  The Amended Complaint does not allege that Groussman participated in any way in the proxy fight, held stock in the Company during this period, or ever had prior dealings (or even knew) Beeghley, Dai, or DeFrancesco.

While the Company had neither a product nor revenue, it did have "plenty of cash" from a $20 million stock offering in 2014.  Amended Complaint ¶¶ 4-5.  With no viable path forward as a biomedical company, the Company explored various strategic alternatives.  On October 4, 2017, as cryptocurrencies like Bitcoin began to gain traction, the Company announced that it would pivot

---

[3] *See* Dkt. No. 118-3 (Venaxis Form 10-K for the year ended Dec. 31, 2015, at p. 23).

its business to blockchain and cryptocurrency technologies. *Id.* ¶ 166. The Company simultaneously announced that it was changing its name to "Riot Blockchain" to reflect its new business focus. *Id.* The Company stated that it would pursue its new strategy for building shareholder value and future prospects by pursuing "acquisitions of businesses serving the blockchain ecosystem." *Id.* The Company then did precisely that, using a portion of its cash holdings and stock to acquire or invest in companies in the blockchain space and to purchase computer equipment necessary to perform Bitcoin mining. *See* Amended Complaint ¶¶ 166, 169, 182, 172, 194, 197 278.

The Amended Complaint does not allege that Groussman played any role in the Company's change in name to Riot or transition to blockchain and cryptocurrency, or in Riot's decision to invest in or acquire other companies and Bitcoin mining equipment. Indeed, the Amended Complaint does not allege that Groussman was involved in any decision-making as to Riot's business, or even communicated with management.

**C.    Plaintiff Attempts To Plead An Alleged Stock Manipulation Scheme That Does Not In Any Way Involve Groussman**

The Amended Complaint purports to plead a scheme to "drive up the price and trading volume of Riot stock through manipulative trading, promotional activity, and false and misleading disclosures," Amended Complaint ¶ 1, to "engage in fraudulent related-party transactions at the expense of the Company and its shareholders," *id.*, and to "dump their shares into the artificially inflated market on unsuspecting retail investors." Amended Complaint ¶¶ 1, 11. Groussman's alleged role in this purported scheme is non-existent. The Amended Complaint alleges that, far from "dumping" his shares, Groussman slowly sold shares over the course of nearly a year. *See id.* ¶¶ 144, 164. The only alleged representation by Groussman is, as noted, a Schedule 13G accurately disclosing his investment in Riot and that he had no intention to engage in a takeover or otherwise control the Company. There are no allegations that Groussman coordinated trading with Honig or other investors, orchestrated transactions or engaged in promotional activities to

artificially drive up the price of Riot stock, attempted to conceal his investment in Riot, or any of the other hallmarks of a stock manipulation scheme.

The only purported "related-party" transactions alleged in the Amended Complaint that even remotely involve Groussman are the company's dealings with Coinsquare, "a leading Canadian Blockchain company," and Kairos Global Technology Inc. ("Kairos"), a provider of Bitcoin mining equipment from Kairos.  Amended Complaint ¶¶ 37, 166, 172.  Neither alleged transaction supports a 10b-5 scheme liability claim against Groussman.  In October of 2017, Riot announced that it had acquired a minority interest in Coinsquare, in which Plaintiff alleges Groussman to be a minority investor.  *Id.* ¶ 166.  In November of 2017, Riot announced that it had acquired 1,200 Bitcoin mining machines from Kairos.  *Id.* ¶ 172.  Plaintiff does not directly allege that Groussman had any involvement or investment in Kairos, but only that he was "reportedly" an owner, citing a website called "sharesleuth." that, in turn, provides no citation for the claim that Groussman ever invested in Kairos.  *Id.* ¶ 173.

While purporting to describe these alleged transactions, the Amended Complaint nowhere explains how they might provide a basis for 10b-5 liability against Groussman.  Plaintiff does not allege that Groussman made any misrepresentation regarding the transactions, or had any disclosure obligations with respect to those transactions.  Instead, Plaintiff alleges that *Riot*, in its various press releases and SEC filings, failed to disclose that shareholders in Riot were also shareholders in Coinsquare and Kairos.  Amended Complaint ¶¶ 167, 173.  Plaintiff does not and cannot allege that Groussman had any role in drafting any of those press releases or SEC filings.

### D.    Procedural History

The Amended Complaint is this action's ***fourth*** operative complaint.  Creighton Takata filed the original complaint on February 17, 2018 ("Takata Action"), which named Riot, McGonegal, and O'Rourke as Defendants.  Dkt. No. 1.  On November 6, 2018, this Court consolidated the Takata Action with a separate action filed on April 18, 2018 by Joseph J. Klapper, Jr. (Dkt. No. 1, 18-cv-8031), and appointed Dr. Stanley Golovac as lead plaintiff.  Dkt. No. 39.

On January 15, 2019, Plaintiff filed a Consolidated Class Action Complaint (Consolidated Complaint) adding Honig as a Defendant. Dkt. No. 52. On March 28, 2019, the Defendants to the Consolidated Complaint filed motions to dismiss. Dkt. Nos. 66. 67. Rather than oppose those motions, on April 18, 2019, Plaintiff sought, and was granted, leave to file another amended complaint. Dkt. No. 69. The Court granted Plaintiff's request and ordered that another amended complaint be filed no later than May 8, 2019. Text Order dated April 24, 2019.

Plaintiff filed the Amended Complaint on May 8, 2019, adding additional Defendants, including Groussman. Dkt. Nos. 72, 73. Groussman is a Defendant only as to Count II, which attempts to plead a claim for scheme liability under Rules 10b-5(a) and 10b-5(c).

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must satisfy Rule 8(a) by stating a claim for relief that is plausible on its face. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted). Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Although the Court must accept factual allegations as true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. After stripping away the "conclusory statements," the court must rely on its "judicial experience and common sense," *id.* at 679, to determine whether the remaining factual allegations "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a). A complaint that fails as a matter of law should be dismissed "at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation and internal quotation marks omitted).

Because Plaintiff's allegations sound in fraud, each alleged misrepresentation, and each alleged act of deception or manipulation, must also meet the heightened pleading standards of Rule 9(b), which requires Plaintiff to, among other things, identify each actor and explain why each act

by that individual was fraudulent, deceptive, or manipulative.  Fed. R. Civ. P. 9(b); *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002).  Plaintiff's claim is also subject to the heightened pleading standard of the PSLRA, which is targeted at preventing abusive securities litigation.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("Private securities fraud actions . . . if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law."); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (identifying "ways in which the class-action device was being used to injure the entire U.S. economy" and listing examples such as "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers of the clients whom they purportedly represent . . .") (quotes and citations omitted).

The PSLRA's heightened pleading standard has two distinct requirements.  First, under 15 U.S.C. § 78u-4(b)(1), the complaint must "specify each allegedly misleading statement, why the statement was misleading, and, if an allegation is made on information and belief, all facts supporting that belief with particularity."  *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) (construing 15 U.S.C. § 78u-4(b)(1)).  Second, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).

## IV.   ARGUMENT

Plaintiff's sole claim against Groussman is under Section 10(b) and Rule 10b-5, for allegedly engaging in a "scheme" to manipulate Riot's stock price.  Rules 10b-5(a) and (c) provide: "It shall be unlawful . . . (a) to employ any device, scheme, or artifice to defraud, . . . [ or] (c) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."  17 C.F.R. §§ 240.10b-5(a), (c).  To state a valid claim under Rule 10b-5(a) or (c), the plaintiff must allege that the defendant "committed a deceptive or manipulative act," in addition to the standard elements of a Section 10(b) violation: (1) scienter; (2) connection

10

with the purchase or sale of securities; (3) reliance; (4) economic loss; and (5) loss causation.  *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 342, 350 (D.N.J. 2009); *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 158 (2008).  Plaintiff fails to adequately plead the vast majority of these elements.

### A.     Plaintiff Fails To Allege That Groussman Engaged In A "Deceptive Or Manipulative" Act

Grouping every single Defendant together without distinction, Plaintiff offers sweeping allegations that "Defendants carried out a plan, scheme, and course of conduct" to "enable Riot to artificially inflate the price of the Company's common stock."  Amended Complaint ¶ 432.  To satisfy Rule 9(b), however, a fraud claim based on alleged market manipulation must set forth "to the extent possible, [1] what manipulative acts were performed, [2] which defendants performed them, [3] when the manipulative acts were performed, and [4] what effect the scheme had on the market for the securities at issue."  *In re Able Labs. Sec. Litig.*, 2008 U.S. Dist. LEXIS 23538, *73 (D.N.J. 2008).  Where, as here, a complaint asserts claims against more than one defendant, Rule 9(b) "require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Dolan v. PHL Variable Ins. Co.*, 2016 U.S. Dist. LEXIS 161414, *15 (M.D. Penn. 2016).

The Complaint contains no particularized allegations that Groussman performed any manipulative or deceptive acts in connection with the alleged stock manipulation scheme.  Instead, the Amended Complaint contains background allegations that: (1) Groussman sold shares of Riot's common stock; (2) was a passive investor in two other companies with which Riot dealt; and (3) filed a Schedule 13G that accurately and fully reflected Groussman's holdings in Riot during the class period.  The Amended Complaint does not even attempt to tie these acts to the alleges scheme and, in any event, none of these acts could support liability under Rule 10b-5(a) or (c).

11

1.      *Plaintiff Does Not Allege Groussman Misrepresented Or Omitted Any Material Fact*

Claims brought under Rule 10b-5(a) and (c) are referred to as "scheme liability" claims, because they "make deceptive conduct actionable, ***as opposed to*** . . . deceptive statements." *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 643 n.29 (3d Cir. 2011) (emphasis added).  Thus courts in the Third and other Circuits generally premise scheme liability on misconduct separate from misrepresentations and omissions violating Rule 10b-5(b).  *See Stichting Pensioenfonds ABP v. Merck & Co.*, No. 05-5060, 2012 U.S. Dist. LEXIS 113813, at *25 (D.N.J. Aug. 1, 2012) ("scheme liability claim cannot, however, be premised on the alleged misrepresentations or omissions that form the basis of a Rule 10b-5(b) claim"); *Pub. Pension Fund Grp. v. KV Pharma. Co*., 679 F.3d 972, 987 (8th Cir. 2012) ("We join the Second and Ninth Circuits in recognizing a scheme liability claim must be based on conduct beyond misrepresentations or omissions actionable under Rule 10b-5(b).").  As such, under existing Third Circuit precedent, any effort by Plaintiff to predicate scheme liability on an alleged misrepresentation by Groussman fails as a matter of law.

Recently, in *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019), the Supreme Court held that "[t]hose who disseminate false statements . . . are primarily liable under Rules 10b-5(a) and (c), § 10(b), . . . even if they are secondarily liable under Rule 10b-5(b)." *Id.* at 1104.  Even assuming the Supreme Court's ruling in *SEC v. Lorenzo* abrogated the requirement that scheme liability must be predicated on conduct apart from 10b-5(b) misrepresentations,[4] the only alleged statement Plaintiff attributes to Groussman is contained in the October 13, 2017 Schedule 13G disclosing Groussman's beneficial ownership of 5.93% of Riot common stock.  Nothing about that statement is misleading.

---

[4] As set forth in the Motion to Dismiss filed by Riot (Dkt. No. 107-1), *Lorenzo* had no occasion to resolve – and did not resolve – the extent to which a misrepresentation can serve as a basis for scheme liability when a private plaintiff fails to adequately allege actionable misrepresentations or omissions.  Dkt. No. 107-1 at 28.  Because Plaintiff fails to allege particularized allegations of a purported misrepresentation by Groussman – or that any such misrepresentation was made in connection with a "scheme" to inflate Riot's stock – any reliance by Plaintiff on *Lorenzo* would be misplaced.

Under the Exchange Act, stockholders who own more than 5% of an issuer's shares must report their ownership on a Schedule 13D or 13G.  *See* 17 C.F.R. § 240.13d-1(a)-(c).  Schedule 13D is the standard form, and is designed to "requir[e] the disclosure of information by a potential takeover bidder."  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 122-23 (2d Cir. 2001).  Schedule 13G, by contrast, is a short-form version of Schedule 13D available to investors who did not acquire the securities to "chang[e] or influenc[e] the control of the issuer."  17 CFR 240.13d-1(b)-(c).  Thus, as the SEC has explained, a Schedule 13G is the proper form when the investor's involvement is limited to "[e]ngagement on corporate governance topics," but it is inappropriate if the investor "engages with the issuer's management on matters that specifically call for the sale of the issuer to another company, the sale of a significant amount of the issuer's assets, the restructuring of the issuer, or a contested election of directors."  SEC, *Exchange Act Sections 13(d) and 13(g) and Regulation 13D-G Beneficial Ownership Reporting* (July 14, 2016).[5]

The statement Plaintiff attributes to Groussman is merely the advisory statement commonly found in all Schedule 13Gs – that the securities "were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect."  Amended Complaint ¶¶ 179-80.  Plaintiff does not allege that Groussman acquired shares in Riot as part of a takeover bid; that Groussman was intending to engage with management on matters calling for the sale or restructuring of the company; that he was required to instead file a Schedule 13D; or that the boilerplate certification set forth in the Schedule 13G was otherwise false or misleading in any way.

Nor can Plaintiff make such allegations, given Plaintiff's contention that Honig had already "obtained control" of Riot by March of 2017 (Amended Complaint ¶¶ 138-39) and replaced its CEO in April of 2017 (*id.* ¶ 142), several months *before* Groussman filed the Schedule 13G. Further, any allegation that Groussman was somehow attempting to engineer a takeover or otherwise gain control of Riot in October of 2017 would not be credible in light of Plaintiff's

[5] Available at https://www.sec.gov/divisions/corpfin/guidance/reg13d-interp.htm#103.11.

allegations that Groussman was, between April and September of 2017, actually trying to sell hundreds of thousands of shares in Riot.  Amended Complaint ¶¶ 143-44, 146, 154-55.

While Plaintiff vaguely alleges that Groussman sought to "dispel any notion" that his ownership in Riot was part of a "control group" (Amended Complaint ¶ 179), Plaintiff adds no factual allegations explaining what that "control group" was, what actions it carried out with respect to Riot's business or stock, how Groussman was in any way involved with the group, what actions Groussman took, or that Groussman was in any way involved in Riot's business. Significantly, Plaintiff fails to allege that Groussman participated in the management of Riot, was involved in its day-to-day operations, was privy to the Company's proprietary, confidential information, or otherwise exercised a scintilla of control or influence over the Company.  *See* Amended Complaint ¶ 378.  The most Plaintiff can allege is that Groussman had a "close financial relationship" and "history of investing" with Honig.  *Id*. ¶ 180.  But Plaintiff fails to explain how Groussman would have had any obligation to disclose that alleged history (which did not involve Riot) to investors.  Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information."  *Williams v. Globus Medical, Inc.*, 869 F.3d 235, 241 (3d Cir. 2017).

2.    *Groussman's Publicly-Disclosed Trading In Riot Does Not Constitute A "Deceptive" or "Manipulative" Act*

To state a scheme liability claim based on allegations that multiple defendants collectively acted, Plaintiff must show that **_each_** defendant committed a manipulative or deceptive act in furtherance of the scheme.  *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 191 (1994).  There is no private "aiding and abetting" or "conspiracy" liability under § 10(b) of the Securities and Exchange Act, or Rule 10b-5 promulgated thereunder.  *See Central Bank*, 511 U.S. at 191.  Accordingly, Groussman may only be liable as a primary actor; meaning Plaintiff must plead that **_Groussman_** committed a deceptive or manipulative act in furtherance of the scheme upon which Plaintiff relied.  *See Stoneridge*, 552 U.S. at 639-40.  As claims of fraud, these

14

allegations are also subject to the heightened pleading requirements of Rule 9(b).  *United States SEC v. Wey*, 246 F. Supp. 3d 894, 916 (S.D.N.Y. 2017).

Plaintiff alleges neither deception nor manipulation.  "[D]eception, at a minimum, has to involve an act that gives the victims a false impression."  *Lucent*, 610 F. Supp. 2d at 360 (citing *United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008)).  "Manipulation" by contrast, is "virtually a term of art when used in connection with securities markets.'"  *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977).  The term refers to "practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity.'"  *Rabin v. NASDAQ OMX PHLX LLC*, 712 Fed. Appx. 188, 193 n.7 (3d Cir. 2017).

The only trading in which Groussman is alleged to have engaged is the slow disposition of his holdings in Riot over the course of nearly a year.  There is nothing inherently deceptive or manipulative in selling common stock in the open market, and Plaintiff does not allege that Groussman concealed trades, coordinated his trades with other Defendants, misrepresented anything regarding his trading, or engaged in trades in a way that otherwise artificially altered Riot's stock price.  *See GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 207 (3d Cir. 2001) (manipulation involves "artificially depressing or inflating the price of the security").  Nor were Grossman's stock sales in any way deceptive, particularly where, as here, Plaintiff alleges that his trading was public knowledge.  *See* Amended Complaint ¶¶ 144, 154, 164.

"Participation in a legitimate transaction, which does not have a deceptive purpose or effect, would not allow for a primary violation even if the defendant knew or intended that another party would manipulate the transaction to effectuate a fraud."  *See In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987, 992 (8th Cir. 2006) (refusing to impose primary liability "on a business that entered into [a] . . . transaction with an entity that then used the transaction to publish false and misleading statements to its investors and analysts"); *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 505 (S.D.N.Y. 2005) ("At worst, the banks designed and entered into the transactions knowing or even intending that Parmalat or its auditors would misrepresent the nature of the

arrangements.  That is, they substantially assisted fraud with culpable knowledge – in other words, they aided and abetted it.").  Groussman's unremarkable – and fully disclosed – trading history in Riot does not constitute a "manipulative" or "deceptive" act, and is not a primary violation of the securities laws.

3.    *The Coinsquare And Kairos Transactions Are Not Actionable Against Groussman Under 10-b5*

To the extent Plaintiff purports to rely on the Coinsquare and Kairos transactions – and the Amended Complaint nowhere suggests that Groussman is subject to liability for them – Plaintiff does not allege that Groussman had any actual role in those transactions, other than as a passive investor.  Plaintiff does not allege Groussman exercised control or influence over whether those transactions were completed, nor any role in drafting the press releases and SEC filings describing those transactions.  Plaintiff thus fails to allege that Groussman – in being an alleged passive investor in Coinsquare and Kairos – engaged in any "'act, scheme, or course of conduct' to defraud investors."  *See Kemp v. Univ. Am. Fin. Corp.*, 2007 WL 86942, at *17 (S.D.N.Y. Jan. 10, 2007).  Indeed, Plaintiff does not even allege that the Coinsquare and Kairos transactions were carried out in furtherance of the alleged stock manipulation scheme.

Rather than allege any deceptive or manipulative conduct that would support a Section 10(b) claim, the Amended Complaint merely states that "[t]he various elements of Defendants' scheme are laid out in detail in Section V."  Amended Complaint ¶ 432.  Section V of the Amended Complaint is one paragraph vaguely defining the "Honig Group" as shareholders in Riot that had a "material relationship" with Honig.  *Id.* ¶ 79.  Section V does not even so much as mention Groussman.  And nowhere does Plaintiff allege that, as a minority shareholder in Riot, Groussman had any disclosure obligation to its shareholders, much less one he deliberately flouted.

Meanwhile, the following section, Section VI.a., is comprised of irrelevant allegations regarding Groussman's purported involvement in companies other than Riot, years before he invested in Riot.  Allegations regarding events pre-dating the Class Period have no bearing on

Plaintiff's claim here.  *In re Clearly Canadian Sec. Litig.*, 875 F. Supp. 1410, 1420 (N.D. Cal. 1995) ("As the class period defines the time during which defendants' fraud was allegedly alive in the market, statements made or insider trading allegedly occurring before or after the purported class period are irrelevant to plaintiffs' fraud claims.").

### B.      Plaintiff Fails To Adequately Allege That Groussman Acted With Scienter

With respect to each manipulative or deceptive act alleged to have been committed by each Defendant – and again, Plaintiff alleges none against Groussman – the PSLRA requires Plaintiff to plead "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Winer Family Trust*, 503 F.3d at 335 (citing 15 U.S.C. § 78u-4(b)(2)); *see also In re Nutrisystem, Inc. Sec. Litig.*, 653 F. Supp. 2d 563, 575 (E.D. Pa. 2009) (the PLSRA "requires the plaintiff to establish a culpable state of mind on the part of each defendant individually").  Determining whether an inference is "strong" involves a comparative inquiry, and "plausible, nonculpable explanations for the defendant's conduct" must be considered in addition to any inferences favoring the plaintiff.  *Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 323-24 (2007).  An "inference of scienter must be more than merely 'reasonable' or 'permissible.'" *Id.* at 324.  It must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.*

Plaintiff alleges no facts in Count II, much less facts with particularity, supporting a strong inference that Groussman committed any act with an intent to deceive, manipulate or defraud. Plaintiff offers no witnesses, sources, or any contemporaneous documents to show that Groussman was ever in league with any "group" to artificially inflate Riot's stock.  *See Limantour v. Cray Inc.*, 432 F. Supp. 2d 1129, 1152 (W.D. Wash. 2006) (plaintiffs failed to allege scienter because they alleged no witnesses or facts to support assertion that defendants intended to inflate the company's stock in furtherance of a pump-and-dump scheme).  Plaintiff does not even allege that Groussman purposefully timed his trading to coincide with the trading of any member of the so-called "Honig Group."

Plaintiff's only specific reference to Groussman's purported scienter is that he was "part of a concerted group of associates with a close 'material relationship' outside the context of . . . being merely [an] owner[] of Riot stock."  Amended Complaint ¶ 391.  Even assuming *arguendo* that Groussman had a "material relationship" with this purported group,[6] there is no allegation that Groussman had any fraudulent intent with respect to that purported "relationship;" that he traded Riot shares in concert with those other shareholders; that he had an obligation to disclose the purported relationship; or that he believed his trading activity was in any way unlawful.  In evaluating scienter, "the reviewing court must ask: when the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?"  *Tellabs,* 551 U.S. at 326.  Here, the facts alleged give rise to a far more compelling "opposing inference of nonfraudulent intent," *id. at* 314: that Groussman believed his trading strategy – which according to Plaintiff did *not* involve any agreement to buy, hold, or sell shares in concert with other Defendants – was perfectly legal.

Unable to plead scienter with particularity, Plaintiff instead invites the Court to assume scienter based on allegations that Groussman was subject to an SEC investigation involving his investment in companies ***other than Riot.***  Plaintiff's efforts to establish scienter in this case based on Groussman's purported scienter in other cases fails as a matter of law.  *Cortina v. Anavex Life Scis. Corp.*, 2016 U.S. Dist. LEXIS 179905, *25 (S.D.N.Y. Dec. 29, 2016) ("the fact that Anavex had a history of involvement in stock promotion schemes does not come close to suggesting that Defendants had knowledge of the alleged scheme during the Class Period"); *United States Football League v. NFL*, 634 F. Supp. 1155, 1173 (S.D.N.Y. 1986) (striking allegations of prior judgments against defendant which would have permitted plaintiff to "create an 'aura of guilt' or to imply new wrongdoing from past wrongdoing.").

---

[6] The group with whom Groussman allegedly had a "material relationship" includes Harvey Kesner, a non-defendant to this action who is not alleged to have ever been a shareholder in Riot. Amended Complaint ¶¶ 44, 391.  Accordingly, any purported "material relationship" to a group that includes individuals who did not invest in Riot, and are not alleged to have engaged in any promotional activities in connection with Riot, is entirely irrelevant to Plaintiff's alleged "scheme."

Plaintiff fares no better with his bald assertion that "Defendants acted with scienter since they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading."   Amended Complaint ¶ 374.   Besides improperly grouping every Defendant together, the allegation has no possible application to Groussman, who is not alleged to have issued, or even been involved with, any document or statement in the name of Riot.

Finally, to the extent Plaintiff seeks to establish Groussman's scienter through motive and opportunity – and he pleads no such facts as to Groussman – the Third Circuit has rejected the proposition that motive, even when coupled with opportunity, may give rise to a strong inference of scienter.   "It cannot be said that, in every conceivable situation in which an individual makes a false or misleading statement and has a strong motive and opportunity to do so, the nonculpable explanations will necessarily not be more compelling than the culpable ones.   And if that is true, then allegations of motive and opportunity are not entitled to a special, independent status." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 277 (3d Cir. 2009).   Here, the inference is equally strong – if not stronger – that Groussman believed his fully-disclosed trading in Riot shares was a completely legal trading strategy.   His desire to generate a profit (or minimize his losses) from that trading strategy does not, by itself, create a strong inference of scienter.

## C.      Plaintiff Fails To Adequately Allege Reliance

To survive a motion to dismiss, Plaintiff must also plead reliance, subject to the heightened pleading standards of the PSLRA and Rule 9(b).   *See In re Synchronoss Sec. Litig.*, 705 F. Supp. 3d 367, 397 (D.N.J. 2010).   Plaintiff alleges he is entitled to a presumption of reliance under both *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), and the fraud-on-the-market doctrine.   Amended Complaint ¶¶ 413-19.   Neither presumption is applicable.

The presumption of reliance recognized in *Affiliated Ute* requires an allegation that the defendant made a material omission or misstatement.   *See id*. at 153-54.   The only alleged representation Plaintiff attributes to Groussman is the October 13, 2017 Schedule 13G disclosing

Groussman's beneficial ownership of Riot common stock.  As explained above, Plaintiff does not allege how Groussman's Schedule 13G misrepresented or omitted any material fact, as a Schedule 13G is merely a short-form statement reporting a 5% or more stake in an issuer, acquired without the intent to attempt a takeover or otherwise exercise control over the company.  Nor is Plaintiff entitled to an *Affiliated Ute* presumption based on Groussman's trading strategy.  In the Third Circuit, "those engaged in manipulation have [no] duty to disclose such conduct to other market participants." *Rabin*, 712 Fed. Appx. at 194.

Plaintiff's reliance on the "fraud-on-the-market" presumption of reliance is also unavailing. This presumption is based on the hypothesis that the price of a stock "in an open and developed securities market . . . is determined by the available material information regarding the company and its business." *Basic, Inc. v. Levinson*, 485 U.S. 224, 241 (1988).  Accordingly, "the presumption is usually available only if there are material omissions or misrepresentations concerning an actively traded security." *Rabin*, 712 Fed. Appx. at 194-95.  Because Plaintiff alleges no omission or misrepresentation attributable to Groussman, this theory of reliance is inapplicable.

### D.    Plaintiff Fails To Adequately Allege Loss Causation

Loss causation is "a distinct legal element" of Rule 10b-5 claims, requiring "a causal connection between the material misrepresentation and the loss." *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 632 (3d Cir. 2011) (quoting *Dura Pharms.*, 544 U.S. at 342).  "Although a drop in a security's price may be a result of the correction of a previous misrepresentation, it may also have been caused by changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events." *Id.* (quoting *Dura*, 544 U.S. at 343). Therefore, Plaintiff must "show that the revelation of th[e] misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-26 (3d Cir. 2007).  The requirement ensures "that the individual allegedly responsible for the misrepresentation or

omission does not become an insurer against all the risks associated with the investment." *Id.* at 425 n.3.

Plaintiff's mere reference to media reports (Amended Complaint ¶¶ 300, 304, 308, 321, 338, 398-402) fails to establish loss causation. Plaintiff must show that "the share price fell significantly after the truth became known." *See Dura*, 544 U.S. at 347; *see also In re Ikon Office Solutions, Inc. Sec. Litig.*, 131 F. Supp. 2d 680, 687 (E.D. Pa. 2001) (stating that to prove loss causation in the Third Circuit, plaintiff must show that he/she purchased a security at an inflated price due to the alleged misrepresentation, and that the stock price dropped in response to disclosure of the alleged misrepresentation). The media reports Plaintiff references reveal no new "truth" but involve either: (1) punditry opining on the "legitimacy" of the known fact of Riot's pivot to blockchain; or (2) descriptions of O'Rourke's trading activity. Not a single one of those articles reveals a previously undisclosed fact, let alone one concerning Groussman.

Equally unavailing is the Complaint's reliance on three additional "disclosures:" (1) a Form S-3, which announced a new offering for the sale of shares and warrants and additional details about the Kairos transaction; (2) the April 17, 2018 10-K, which stated that the Company had received a subpoena from the SEC; and (3) the SEC's filing of an enforcement action against Honig and others arising out of alleged investments in companies other than Riot. None of these documents reveals any purported "falsity" concerning Groussman's investments in Riot. The Form S-3 merely offers to sell Riot securities to the public; Plaintiff does not allege that Riot – and certainly not Groussman – ever represented that the Company or its shareholders would never engage in public offerings. The S-3's discussion of Kairos merely details Riot's acquisition of the company (*see* RJN Ex. A) and, in any event, Plaintiff does not allege that Groussman had any role whatsoever in that transaction. The 2018 10-K notes that the Company received a subpoena from the SEC, but does not in any way reference Groussman. Further, that Riot received a subpoena from the SEC merely constitutes "allegations of unproven misconduct," which "is not a corrective disclosure which revealed" any "fraudulent conduct to the market." *Martin v. GNC Holdings, Inc.*, 2017 U.S. Dist. LEXIS 145530, at *54 (W.D. Pa. Sept. 8, 2017). Similarly, the SEC's enforcement

21

action regarding companies other than Riot nowhere reveals any purported "falsity" or other alleged misconduct concerning Groussman's trading in Riot; it does not mention Riot whatsoever.[7]

"[T]he plaintiff is required to plead that the decline in the stock price was caused by the market's discovery of defendant's fraud." *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 295 (D.N.J. 2007); *see also In re DVI, Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 92888, at *24-26 (D.N.J. Sep. 3., 2010) ("[The disclosure] must at least relate back to the misrepresentation and not to some other negative information about the company.") (quoting *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009)).  None of the alleged disclosures even remotely relates to Groussman's alleged participation in a scheme to manipulate Riot's stock price, and thus does not suffice to establish loss causation.

**E.      The Amended Complaint Should Be Dismissed With Prejudice**

This action was commenced more than 19 months ago, on February 17, 2018.  Dkt. No. 1. After this action was consolidated with another, Plaintiff filed the Consolidated Complaint on January 15, 2019.  Dkt. No. 52.  When Defendants filed motions to dismiss pointing out the various pleading deficiencies in the Consolidated Complaint, Plaintiff sought and received an opportunity to amend.  Despite having been afforded an opportunity to amend the Consolidated Complaint, and more than a year to further investigate the facts and the law, Plaintiff still cannot plead a viable claim against Groussman.  This is true even with the added benefit of information gathered and made public in numerous media reports, the SEC subpoena disclosed by Riot in its May 17, 2018 10-Q (Amended Complaint ¶ 350), and motions to dismiss the Consolidated Complaint.

Despite all of that guidance and time, nowhere in the overlong 440 paragraph, 159 page Amended Complaint does Plaintiff plead relevant conduct by Groussman to suggest that he was in any way involved in an alleged stock manipulation scheme.  Because the legal defects in the Amended Complaint cannot be cured, and because Groussman would be unduly prejudiced by

---

[7] While the SEC's complaint refers to the companies at issue as only "Company A," "Company B," and "Company C," the Amended Complaint identifies the three companies as "'Company A' (Biozone), 'Company B' (MGT), and 'Company C' (MabVax)."  Amended Complaint ¶ 81.

having to respond to yet another pleading in this case, Count II should be dismissed as to Groussman with prejudice. *See Krantz v. Prudential Invest. Fund Mgmt. LLC*, 305 F.3d 140, 144 (3d Cir. 2002) (affirming denial of leave to amend where plaintiff was on notice of potential defects in complaint from motions to dismiss); *In re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 153-54 (3d Cir. 2004) (affirming denial of leave to amend where plaintiffs had filed previous complaints and been given an extension to file a consolidated complaint); *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332-33 (3d Cir. 2002) (affirming denial of leave to amend and quoting with approval district court's observation that PSLRA's objective would be thwarted if "plaintiffs were liberally permitted leave to amend").

## V.      CONCLUSION

For the foregoing reasons, the Court should dismiss Count II of the Amended Complaint with prejudice for failure to state a claim pursuant to Rules of Civil Procedure 9(b) and 12(b)(6), and the PSRLA.


Dated: September 30, 2019

**GIBBONS P.C.**

By: s/ Kevin G. Walsh
Kevin G. Walsh
kwalsh@gibbonslaw.com
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
Tel: 973.596.4769
Fax: 973.639.6470

*Attorneys for Defendant Mark Groussman*