# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated, | :<br>:   Civil Action No.: 18-2293(FLW)(TJB)<br>: |
| *Plaintiff*, | :<br>: |
| v. | :   **LEAD PLAINTIFF'S MEMORANDUM**<br>:   **OF LAW IN OPPOSITION TO**<br>:   **DEFENDANTS' MOTION TO STRIKE** |
| RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL, | :   **IMPROPER ALLEGATIONS AND**<br>:   **IMAGES FROM THE CORRECTED**<br>:   **CONSOLIDATED AMENDED CLASS**<br>:   **ACTION COMPLAINT** |
| *Defendants*. | :<br>: |

**LITE DEPALMA GREENBERG**
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com

*Local Counsel for Dr. Stanley Golovac*

**MOTLEY RICE LLC**
William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
bnorton@motelyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

*Counsel for Dr. Stanley Golovac
and Lead Counsel for the Class*

**TABLE OF CONTENTS**

I. LEGAL STANDARDS ................................................................................................. 1
II. ARGUMENT ................................................................................................................. 2
    A. Plaintiff's Use of Images in the Complaint Is Appropriate ................................. 2
    B. The Hospital Images Are Properly Included To Contradict Defendants' Misrepresentations ................................................................................................ 7
III. CONCLUSION ............................................................................................................ 10

...

# TABLE OF AUTHORITIES

**CASES**

*Barcher v. N.Y. Univ. Sch. of Law*, 993 F. Supp. 177 (S.D.N.Y. 1998) .......................... 9

*BB In Tech. Co., Ltd. V. JAF, LLC*, 242 F.R.D. 632 (S.D. Fla. 2007).......................... 10

*Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279
   (D. Del. 1995) ...................................................................................................... 10

*Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, No. 01-cv-8591,
   2005 WL 843297 (N.D. Ill. Jan. 20, 2005).......................................................... 2, 10

*Flammer v. Cty. Of Morris*, No. 05-5039, 2005 WL 1097449
   (D.N.J. Apr. 25, 2006)............................................................................................. 2

*Gardner v. Cont'l Cas. Co.*, No. 4:13-cv-00552, 2013 WL 12069008
   (E.D. Ark. Nov. 27, 2013) ...................................................................................... 6

*Garlanger v. Verbeke*, 223 F. Supp. 2d 596 (D.N.J. 2002) ............................................. 1

*Glenside West Corp. v. Exxon Co., U.S.A. Div. of Exxon Corp.*,
   761 F. Supp. 1100 (D.N.J.) ................................................................................. 1, 3

*Gordon v. Hain Celestial Grp., Inc.*, No. 16-cv-6526 (KBF),
   2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ........................................................... 2

*In re Apple Inc.*, FTC File No. 112-3108, C-4444 (F.T.C. Mar. 25, 2014) ..................... 3

*In re Loewen Grp. Inc. Sec. Litig.*, No. Civ.A. 98-6740, 2004 WL 1853137
   (E.D. Pa. Aug. 18, 2004)......................................................................................... 6

*In re MannKind Sec. Actions*, 835 F. Supp. 2d 797 (C.D. Cal. 2011) ............................ 3

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) ..................................... 10

*In re Shell Oil Refinery*, 144 F.R.D. 75 (E.D. La. 1992) ................................................ 8

*Johnson v. Anhorn*, 334 F. Supp. 2d 802 (E.D. Pa. 2004)............................................. 10

*Johnson v. Van Boenig*, No. 08-cv-428, 2009 WL 1765768
   (W.D. Wash. June 18, 2009)................................................................................... 6

*Lakits v. York*, 258 F. Supp. 2d 401 (E.D. Pa. 2003) ..................................................... 1

*Lewis v. Curtis*, 671 F.2d 779 (3d Cir. 1982) ................................................................. 6

*Mech v. Sch. Bd. of Palm Beach Cty.*, No. 13-cv-80437,
   2014 WL 505163 (S.D. Fla. Feb. 7, 2014) ............................................................. 7

*Nkemakolam v. St. John's Military School*, 876 F. Supp. 2d 1240
   (D. Kan. 2012) ........................................................................................................ 4

*Rahman v. Kid Brands, Inc.*, 736 F.3d 237 (3d Cir. 2013) ............................................. 6

*Rieco v. Srtu*, No. 15CV0657, 2016 WL 5253330
   (W.D. Pa. Sept. 22, 2016). ...................................................................................... 7

*Sanchez v. Bay Area Rapid Transit District*, No. 13-CV-1885,
   2013 WL 4764485 (N.D. Cal. Sept. 5, 2013) ................................................................ 4

*Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200 (D.N.J. 1993) ......................................... 2

*Tyson v. Pitney Bowes Long-Term Disability*, No. 07-CV-3105 (DMC),
   2009 WL 2488161 (D.N.J. Aug. 11, 2009) .................................................................. 2

*Vertus v. Citibank, N.A.*, No. 12-cv-80975, 2013 WL 12084489
   (S.D. Fla. Feb. 14, 2013) ................................................................................. 2

*Williams v. Eckerd Family Youth Alternative*, 908 F. Supp. 908
   (M.D. Fla. 1995) ......................................................................................... 7

**STATUTES**

5C Charles Alan Wright, Arthur R. Miller, et al.,
   Federal Practice & Procedure § 1382 (3d ed. 2015) .................................................... 2, 10

**OTHER AUTHORITIES**

Bryan Garner, The Winning Brief 326-33 (2d ed. 2004) ............................................................. 3, 4

Hon. Arno H. Denecke et al., Notes on Appellate Brief Writing,
   51 Or. L. Rev. 351 (1972) ................................................................................ 3

Richard A. Posner, *Judicial Opinions and Appellate Advocacy
   in Federal Courts—One Judge's Views*, 51 Duq. L. Rev. 3, 23 (2013) ................................... 3

Tania Leiman, *Where are the Graphics?  Communicating Legal Ideas Effectively
   Using Images and Symbols*, Legal Education Review,
   Vol. 26: Iss. 1, Article 3 (2017) ....................................................................... 3

**RULES**

Fed. R. Civ. P. 12(f) ........................................................................................ 1

Court-appointed Lead Plaintiff Dr. Stanley Golovac ("Plaintiff"), individually and on behalf of all other persons and entities similarly situated, respectfully submits this memorandum of law in opposition to Defendants' Motion to Strike Improper Allegations and Images from the Corrected Consolidated Amended Class Action Complaint for the Violation of the Federal Securities Laws (the "Motion").  *See* ECF No. 111.[1]

## I.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(f), a court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Motions to strike are highly disfavored.  *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002).[2]  The standard for striking a pleading is strict and only allegations "'so unrelated to plaintiff's claims as to be unworthy of *any* consideration' should be stricken." *Lakits v. York*, 258 F. Supp. 2d 401, 409 (E.D. Pa. 2003).  Accordingly, "[s]triking matters from the record [pursuant to Rule 12(f)] is a drastic remedy to be resorted to only when required for the purposes of justice." *Tyson v. Pitney Bowes Long-Term Disability*, No. 07-CV-3105 (DMC), 2009 WL 2488161, at *10

---

[1] Capitalized terms herein have the same meaning as in the Corrected Consolidated Amended Class Action Complaint (the "Complaint") (ECF No. 73).  Citations to "¶ __" refer to paragraphs of the Complaint.  Citations to "Ex. __" refer Exhibits to the Declaration of Joseph J. DePalma in Support of Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Strike Improper Allegations and Images from the Corrected Amended Consolidated Class Action Complaint.  "Defs.' Br. __" refer to pages of the Motion.  Citations to "Riot Br. _" are to pages of the Memorandum of Law in Support of Riot Blockchain Defendants' Motion to Dismiss (ECF No. 107-1).  All emphasis is added and internal quotations and citations are omitted, unless otherwise noted.

[2] Defendants' case law acknowledges as much.  In *Glenside West Corp. v. Exxon Co., U.S.A. Div. of Exxon Corp.*, 761 F. Supp. 1100 (D.N.J.), cited by Defendants, *see* Defs.' Br. 5, the court held that "[m]otions to strike an affirmative defense under Rule 12(f) are 'not favored and will not be granted "unless it appears to a certainty that [the moving party] would succeed despite any state of the facts which could be proved in support of the defense."'" 761 F. Supp. at 1114.  "Thus, a motion to strike will not be granted where the sufficiency of a defense depends on disputed issues of fact." *Id.*

(D.N.J. Aug. 11, 2009); *see also Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993) (striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice."). It is therefore no surprise that motions under Rule 12(f) "'are generally looked upon with disfavor' . . . and are 'rarely successful[.]'" *Gordon v. Hain Celestial Grp., Inc.*, No. 16-cv-6526 (KBF), 2017 WL 213815, at *6 (S.D.N.Y. Jan. 18, 2017).

Against this background, "[t]o prevail on a motion to strike, the moving party must demonstrate that the challenged allegations 'have no possible relation to the controversy and may cause prejudice to one of the parties, or . . . the allegations confuse the issues.'" *Flammer v. Cty. Of Morris*, No. 05-5039, 2005 WL 1097449, at *1 (D.N.J. Apr. 25, 2006) (ellipses in original). The burden is therefore on the movant and any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party. *See* 5C Charles Alan Wright, Arthur R. Miller, et al., Federal Practice & Procedure § 1382 (3d ed. 2015) (footnotes omitted).[3]

## II. ARGUMENT

### A. Plaintiff's Use of Images in the Complaint Is Appropriate

As a preliminary matter, Defendants do not contend that any of the images in the Complaint are inaccurate or inauthentic. Rather, Defendants take issue with the images because "Rule 10(c) of the Federal Rules of Civil Procedure . . . only allows the incorporation of 'written instruments'—

---

[3] *See also Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, No. 01-cv-8591, 2005 WL 843297, at *13 (N.D. Ill. Jan. 20, 2005) ("The burden to meet the above strong showing is on the movant, who must specifically explain why the paragraphs are repetitive, immaterial, or scandalous. Even if such a showing is made, however, the motion should be denied if the allegations might serve to achieve a better understanding of the claim . . . or perform some other useful purpose in the just disposition of the litigation."); *Vertus v. Citibank, N.A.*, No. 12-cv-80975, 2013 WL 12084489, at *1 (S.D. Fla. Feb. 14, 2013) ("Where it is unclear whether a motion to strike should be granted, courts should defer action on the motion and leave the sufficiency of the allegations for determination on the merits").

not photographs or images—into a complaint, and are equally immaterial, scandalous, and prejudicial." Defs.' Br. 2. Defendants also contend that "Plaintiff improperly attempts to offer many of the Images as evidence of his allegations." *Id.* As demonstrated below, Defendants' arguments are without merit.[4]

Contrary to Defendants' arguments, the use of illustrative pictures in pleadings is an increasingly recommended practice for improving clarity. *See* Tania Leiman, *Where are the Graphics? Communicating Legal Ideas Effectively Using Images and Symbols*, Legal Education Review, Vol. 26: Iss. 1, Article 3 (2017). Indeed, over a decade ago, respected legal writing instructor and commentator Bryan Garner encouraged advocates to "[u]se charts, diagrams, and other visual aids when you can." Bryan Garner, The Winning Brief 326-33 (2d ed. 2004). Similarly, judges like Judge Richard Posner have criticized attorneys' "surprising reluctance to use pictures." Richard A. Posner, *Judicial Opinions and Appellate Advocacy in Federal Courts— One Judge's Views*, 51 Duq. L. Rev. 3, 23 (2013). As a result, even federal organizations have begun incorporating images into their complaints. *See, e.g.*, *In re Apple Inc.*, FTC File No. 112-3108, C-4444 (F.T.C. Mar. 25, 2014). Accordingly, Plaintiff's use of images is proper and not per se barred by the Federal Rules of Civil Procedure. *See, e.g.*, *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 821 (C.D. Cal. 2011) ("there exists 'no inflexible rule' governing the sort of 'written instruments' that may be attached to a pleading").[5]

---

[4] Defendants' citation to *Glenside West*, *see* Defs.' Br. 5, is inapposite because it concerned a motion to strike affirmative defenses. *See* 761 F. Supp. at 115 ("Motions to strike will therefore be granted when a defense is legally insufficient under any set of facts which may be inferred from the allegations of the pleading."). This case may, of course, be helpful to the Court in considering any affirmative defenses asserted by Defendants.

[5] *See also* Hon. Arno H. Denecke et al., Notes on Appellate Brief Writing, 51 Or. L. Rev. 351, 363 (1972) ("Use diagrams, photographs, and tables, if they will clarify your argument . . . . If a picture was necessary to make the facts clear to the jury, it is going to be equally helpful in making the

3

Indeed, Defendants' case law suggest as much. In *Nkemakolam v. St. John's Military School*, 876 F. Supp. 2d 1240 (D. Kan. 2012), which is cited by Defendants, *see* Defs.' Br. 11, the court held that "a photograph could have declarative value, and could properly be admitted or denied as an allegation, such that its inclusion in a pleading would not be improper." 876 F. Supp. at 1247 n.6. Also instructive is *Sanchez v. Bay Area Rapid Transit District*, No. 13-CV-1885, 2013 WL 4764485 (N.D. Cal. Sept. 5, 2013), in which the court denied motion to strike an expert report and photos attached to complaint, explaining that such materials are "commonly attached to complaints" and noting that it "expresse[d] no opinion as to whether Sanchez's materials would be ultimately admissible in evidence for purposes of trial, summary judgment, or other proceedings." *Id.* at *9.

A similar result is appropriate here. For example, if the pictures of Bitmain's website were stricken, the Complaint will lose the substantive text embedded within those images that shows Bitmain not only contemporaneously offered to sell its Antminer L3, A3, and S9 servers at a steep discount to what Riot paid, *see* ¶¶ 174-77, 195-98, but stood ready to begin shipping those same servers in approximately one month from the time of order. Specifically, as the images show, on October 29, 2017, Bitmain advertised that its Antminer A3 servers were available for "Shipping" on "1-10 Dec" and that its Antminer L3 servers were available for "Shipping" on "Dec. 21-30." ¶ 176. Similarly, on February 13, 2018, Bitmain advertised that its Antminer A3 servers were available for "Shipping" on "March 15-22" and that its Antminer S9 servers were available for "Shipping" on "March 21-31, 2018." ¶ 195. Thus, in both cases, Riot could have ordered those servers and would have received them in approximately one month.

---

facts clear to the court . . . ."); Bryan Garner, The Winning Brief 448 (3d ed. 2014) ("A picture can be worth . . . well, it can help win a lawsuit" (ellipses in original)).

4

This material information, which is only contained in the images of Bitmain's website (preserved by archive.org, ¶ 176 n.18), contradicts Defendants' argument that these servers were "in short supply." Riot Br. 7. The images also contradict Defendant O'Rourke's justification to CNBC on February 16, 2018 regarding the "difficulties of getting [the servers] directly from the manufacturer." ¶ 337.

Likewise, on November 15 and 17, 2017, Defendant O'Rourke appeared as "CEO OF RIOT BLOCKCHAIN" in two separate online video interviews published by CBS's TechRepublic. ¶¶ 275-85. O'Rourke's November 17 appearance was titled "HOW TO GET STARTED WITH BLOCKCHAIN TECH." ¶ 283. During his interview, O'Rourke emphasized that Riot, in particular, was the best way for the "average person" to "get started with blockchain":

> I would say the best first steps to get involved in bitcoin or blockchain -- *so it's kind of a difficult thing right now for the average person to get exposure to bitcoin or to blockchain technologies. One of our driving forces at Riot Blockchain was to try to provide that access and gateway to blockchain through potential investment in Riot Blockchain*. . . . So that's what we're attempting to solve. That's a problem we're attempting to solve to provide, you know, *one way where a person could potentially, you know, get exposure to the industry through a traditional capital markets company that's listed on the NASDAQ.*

¶ 286. If the images of O'Rourke's interview on CBS are stricken, the Complaint will lose the substantive text within those images that provides the context of how O'Rourke, appearing on CBS with the banner of "CEO OF RIOT BLOCKCHAIN," explained to "average person[s]" about "HOW TO GET STARTED WITH BLOCKCHAIN TECH" by "get[ting] exposure to bitcoin . . . through a traditional capital markets company that's listed on the NASDAQ" through an "investment in Riot Blockchain." *Id.*[6]

---

[6] Defendants' request to strike the image of an abandoned mine operation at Cresval Capital Corp. ("Cresval"), *see* Defs.' Br. 13 (citing ¶ 187), is equally devoid of merit. That image demonstrates that Cresval was an undercapitalized mineral exploration company with no relation to bitcoin "mining," and not, as Defendants represented, part of a legitimate strategy to develop blockchain

5

Defendants' next argument, that the images constitute an improper attempt to introduce evidence, *see* Defs.' Br. 10-13, are equally unpersuasive. While a plaintiff is not required the plead evidence, there is no categorical bar to doing so. As one court has explained:

> The pleading of "evidence" presents a somewhat different problem than does pleading in conclusory terms. Pleading in conclusory terms may hinder the opposing party's preparation of a responsive pleading and justify a motion for a more definite statement under Rule 12(e); by way of contrast, the pleading of evidence will rarely prejudice the opposing party or make it impossible for him to frame a responsive pleading . . . . [I]t is contrary to the spirit of the federal rules to assert a technical objection of this character to a pleading that has given fair notice of the claim for relief. . . . Thus, many federal courts have overlooked the presence of evidentiary material in a complaint. Although the complaint goes beyond the requirements of Rule 8(a) and pleads evidence, there is no prejudice to the defendants and no reason to strike those allegations from the complaint.

*Gardner v. Cont'l Cas. Co.*, No. 4:13-cv-00552, 2013 WL 12069008, at *1-2 (E.D. Ark. Nov. 27, 2013); *see also Johnson v. Van Boenig*, No. 08-cv-428, 2009 WL 1765768, at *2 (W.D. Wash. June 18, 2009) (holding that evidentiary allegations and exhibits "supplying background or historical material or other matter of an evidentiary nature, [] will not be stricken unless unduly prejudicial to defendants.").[7]

---

technology. *See* ¶¶ 316-18. Likewise, the image of Defendant O'Rourke closing the door on the CNBC reporter, ¶ 332, is relevant because it shows that CNBC's attempt to speak with Defendant O'Rourke was part of an investigation into wrongdoing by Defendants. *See id.* (noting "CNBC INVESTIGATES"). "Reliance on an article in *The Wall Street Journal* is not reliance on an insubstantial or meaningless investigation." *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982); *see also In re Loewen Grp. Inc. Sec. Litig.*, No. Civ.A. 98-6740, 2004 WL 1853137, at *6 (E.D. Pa. Aug. 18, 2004) ("The articles plaintiffs rely upon were published in . . . reputable newspapers (e.g.[,] *The Wall Street Journal*) and meet the requirements of being independent and reliable. Therefore, I will consider them in determining whether plaintiffs have met their pleading burden.").

[7] Permitting the pleading of evidence is particularly appropriate in cases under the PSLRA, where plaintiffs are required to meet heightened pleading standards. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241 (3d Cir. 2013) ("The PSLRA established heightened pleading requirements for a plaintiff to meet in order to plead a cause of action successfully in class actions alleging securities fraud.").

While Plaintiff's images are properly included in the Complaint, if the Court finds that any of this evidence is not admissible at trial, it can exclude it.  In any event, "[p]leadings such as a Complaint and an Amended Complaint are not evidence and are generally not admissible as evidence during trial."  *Rieco v. Srtu*, No. 15CV0657, 2016 WL 5253330, at *2 (W.D. Pa. Sept. 22, 2016).  As such, Defendants' suggestion that they would be prejudiced by the inclusion of the images in the Complaint therefore ignores federal court practice as pleadings are not presented to the jury.  *See Mech v. Sch. Bd. of Palm Beach Cty.*, No. 13-cv-80437, 2014 WL 505163, at *4 (S.D. Fla. Feb. 7, 2014) ("Whether these allegations have any relevance to this case need not be determined at this time.  These allegations and the attached article are not so scandalous or impertinent as to require the drastic remedy of striking.  If appropriate at the time of a trial, reference to these matters can be precluded by order of the Court.").

Given the foregoing analysis, it is no surprise that courts have characterized motions to strike such as this as mostly "time wasters."  *Williams v. Eckerd Family Youth Alternative*, 908 F. Supp. 908, 910 (M.D. Fla. 1995).  The same conclusion applies here.

### B.     The Hospital Images Are Properly Included To Contradict Defendants' Misrepresentations

Defendants also challenge Plaintiff's inclusion of two pictures showing Defendants Honig and O'Rourke, along with Related Party Kesner, meeting with Defendant Groussman in 2014.  In particular, Defendants argue that "[a]llegations of a hospital visit do not relate to Plaintiff's claims for securities violations and would serve only to negatively affect the perception of certain of the Defendants' characters."  Defs.' Br. 2.

Contrary to Defendants' assertion that the images "simply serve to prejudice Defendants," *id.* at 6, the Complaint makes clear that this meeting "confirm[s] that Honig, O'Rourke, Groussman, and Kesner knew they were part of a concerted group of associates with a close

7

'material relationship' outside the context of their being merely owners of Riot stock," ¶ 391. This contradicts Defendants' representations in Riot's Securities Registration Statements on Forms S-3/A dated April 20, 2017, ¶¶ 210-14; July 19, 2017, ¶¶ 220-24; August 24, 2017, ¶¶ 225-29; September 25, 2017, ¶¶ 230-34; January 5, 2018, ¶ 309; and February 7, 2018, ¶ 322. These images also independently corroborate the allegations in the SEC's *Honig* Action that "Honig . . . and O'Rourke were in nearly daily contact . . . . ." Ex. 1 ¶ 57. They also support Defendant O'Rourke's alleged statement that "Barry Honig is the principal investor of our small group." *Id.*

The Complaint also makes clear that "[t]he above allegations are specifically included to contradict Kesner's statement to CNBC" that "'he didn't know anything about Riot Blockchain and Barry Honig.'" ¶ 392.[8] Moreover, the images are also included in the Complaint to contradict Defendants' representations that Kesner, as a Selling Stockholder in Riot's January 5 and February 7, 2018 Forms S-3/A, had no "material relationship" with the Company. ¶¶ 310, 323. Specifically, Kesner, through his entity Paradox Capital Partners ("Paradox"), was a Selling Stockholder in Riot's January 5 and February 7, 2018 Forms S-3/A. ¶¶ 309, 322. Kesner was also: (1) a member of the Honig Group, ¶ 79; (2) Defendant Honig's long-time lawyer, *id.*; (3) Honig's legal counsel in connection with his investments in Riot and MabVax; (4) an investor alongside Honig in Riot and MabVax, ¶ 44; and (5) legal counsel to Defendants' O'Rourke, Beeghley, and Stetson in connection with Honig and DeFrancesco's demands in September 2016 that O'Rourke, Beeghley, and Stetson be appointed to Riot's Board of Directors. Ex. 2 at 26 ("please do not hesitate to

---

[8] Given that Plaintiff alleges that the Honig Group – of which Kesner was a member – operated surreptitiously, "Kesner's alleged statement" is not "immaterial to this action." Defs.' Br. 7. That Kesner "is not even a defendant in this action" is simply of no moment and Defendants are wrong when they argue that "a nonparty's statement [is] completely irrelevant to the issues in this litigation." *Id.* Courts routinely hold that non-party statements are relevant. *See, e.g.*, *In re Shell Oil Refinery*, 144 F.R.D. 75, 77 (E.D. La. 1992) ("The Court finds that the [non-party] statement is relevant.").

8

contact our counsel Harvey Kesner, Esq."). *See also* ¶ 44 (*Barron's* article stating that "'nearly two dozen public companies backed by Honig, or other defendants in last month's SEC complaint, used' Kesner 'until he retired . . . just before the [*Honig*] action. Those companies also happened to use [EST]'"); ¶ 79 (listing companies in which Kesner participated in Honig Group pump-and-dump schemes).

Given Defendants' misrepresentations about Honig, O'Rourke, and Groussman's participation in an alleged pump-and-dump scheme at Riot; Kesner's investment in Riot through Paradox; and Kesner's direct involvement as the lawyer for several of the Defendants (including Honig *and* O'Rourke) in connection with their appointment to Riot's Board of Directors, it is not "difficult to imagine how such allegations would have any bearing on the issues at hand." Defs.' Br. 6.[9]

Put simply, the images from the hospital – which, as Defendants acknowledge, are from "2014, three years before the start of the class period . . . and years before Honig became a Riot shareholder," Defs.' Br. 6 – demonstrate that, contrary to Defendants' Class Period representations, a material relationship existed between Riot (and its CEO, O'Rourke) and Selling Stockholders including Honig, Groussman, and Kesner.[10] Accordingly, the images of Defendant Honig are relevant because "*[a]ny* information that sheds light on whether class period statements

---

[9] Given this background, it is no surprise that Defendants are forced to backtrack somewhat by acknowledging that Plaintiff's allegations "are—at most—***tangentially related to the issue of scienter***." Defs.' Br. 8 (emphasis added).

[10] That the images from the hospital "depict events that occurred so long before the start of the class period," Defs.' Br. 8, does not help Defendants, but rather shows that the individuals pictured therein had a longstanding material relationship. *See Barcher v. N.Y. Univ. Sch. of Law*, 993 F. Supp. 177, 181 (S.D.N.Y. 1998) ("While the Court recognizes that plaintiff's sexual harassment claims arise from unproven and unreported events that allegedly occurred over twenty years ago, the Second Circuit has stated clearly that district courts should be wary when deciding whether to grant a Rule 12(f) motion on the ground that the matter is impertinent and immaterial.").

9

were false or materially misleading is relevant." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).[11]

Finally, when, as here, the material included in the pleading is relevant to a cause of action, they will not be struck from the pleading even though they may be scandalous or prejudicial. *See Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1292 (D. Del. 1995) ("When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike." (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 695-96 (2d ed. 1990)); *Johnson v. Anhorn*, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004) (under the "strict" standard of Rule 12(f), "only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken."); *Extra Equipamentos*, 2005 WL 843297, at *13 ("Even if such a showing [of scandalous material] is made . . . the motion should be denied if the allegations might serve to achieve a better understanding of the claim . . . or perform some other useful purpose in the just disposition of the litigation.").

Regardless of how they may portray certain of the Defendants, Plaintiff's use of images in a limited number of allegations is relevant, material, pertinent, and properly before the Court.

### III. CONCLUSION

In sum, Defendants' motion to strike is not only without merit, but counterproductive to them in that it serves only to focus the Court's attention on the wrongdoing alleged by Plaintiff.

---

[11] Defendants also overlook that the allegations of Honig's potentially illegal conduct contained in ¶¶ 389-90 may be relevant to Plaintiff's allegations. *See BB In Tech. Co., Ltd. V. JAF, LLC*, 242 F.R.D. 632, 641 (S.D. Fla. 2007) (denying motion to strike term "illegal conduct" in fraud count of complaint because "[c]omitting fraud is illegal conduct, and it describes the acts and causes of action relevant to this case.").

10

For the reasons set forth above, Defendants' motion should be denied in its entirety.

Dated: October 1, 2019

Respectfully submitted,

**LITE DEPALMA GREENBERG**

By: */s/ Joseph J. DePalma*
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com

*Local Counsel for Lead Plaintiff Dr. Stanley Golovac*

**MOTLEY RICE LLC**
William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
bnorton@motelyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

*Lead Counsel for Lead Plaintiff Dr. Stanley Golovac and Lead Counsel for the Class*

David P. Abel
**US. MARKET ADVISORS LAW GROUP PLLC**
5335 Wisconsin Ave. NW, Ste. 440
Washington, D.C. 20015
202-274-0237 Telephone
202-686-2877 Facsimile
dabel@usmarketlaw.com

*Counsel for Lead Plaintiff Dr. Stanley Golovac*