10-K/A 1 majesco10ka_oct312015.htm AMENDMENT NO. 1 TO FORM 10-K

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**WASHINGTON, D.C. 20549**

**FORM 10-K/A**
**(Amendment No. 1)**

**(Mark One)**

☑     Annual Report Pursuant to Section 13 or 15(d) of The Securities Exchange Act of 1934

       For the fiscal year ended October 31, 2015

OR

☐     Transition Report Pursuant to Section 13 or Section 15(d) of the Securities Exchange Act of 1934

       For the Transition Period from      to     

Commission File No. 000-51128

# MAJESCO ENTERTAINMENT COMPANY

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **DELAWARE** | **06-1529524** |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

4041-T Hadley Road
South Plainfield, New Jersey 07080
(Address of principal executive office)

Registrant's telephone number, including area code (732) 225-8910

Securities registered pursuant to Section 12(b) of the Act: NONE

Securities registered pursuant to Section 12(g) of the Act:

| | |
|---|---|
| Common Stock, Par Value $0.001 | NASDAQ Capital Market |
| (Title of class) | (Name of exchange on which registered) |

Indicate by check mark if the registrant is a well known seasoned issuer, as defined in Rule 405 of the Securities Act.  Yes ☐  No ☑

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.  Yes ☐  No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and, (2) has been subject to such filing requirements for the past 90 days.  Yes ☑  No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). Yes ☑  No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405 of this chapter) is not contained herein and, will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.  R

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☐               Accelerated filer ☐               Non-accelerated filer ☐               Smaller reporting company ☑
                                                                          (Do not check if a smaller reporting company)

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).  Yes ☐     No ☑

The aggregate market value of the common stock held by non-affiliates as of April 30, 2015 was $8.5 million.

The outstanding number of shares of common stock as of January 25, 2016 was 11,675,866.

The Registrant's proxy or information statement is incorporated by reference into Part III of this Annual Report on Form 10-K.

**David Rector**, age 69, has been a director for Sevion Therapeutics Inc. since February 2002 and was appointed Interim CEO in January 2015. In July 2015 Mr. Rector was appointed to serve as a Director of Majesco Entertainment Company.  Mr. Rector also served as a director and member of the compensation and audit committee of the Dallas Gold and Silver Exchange Companies Inc. (formerly Superior Galleries, Inc.) from May 2014 to September 2015.  From January 2014 through January 2015, Mr. Rector served on the board of directors of MV Portfolios, Inc. (formerly California Gold Corp.) Since 1985, Mr. Rector has been the Principal of The David Stephen Group, which provides enterprise consulting services to emerging and developing companies in a variety of industries. From November 2012 through January 2014, Mr. Rector served as the CEO and President of Valor Gold. Since February 2012 through January 2013, Mr. Rector served as the VP Finance & Administration of Pershing Gold Corp. From May 2011 through February 2012, Mr. Rector served as the President of Sagebrush Gold, Ltd. From October 2009 through August 2011, Mr. Rector had served as President and CEO of Li3 Energy, Inc. From July 2009 through May 2011, Mr. Rector had served as President and CEO of Nevada Gold Holdings, Inc. From September 2008 through November 2010, Mr. Rector served as President and CEO Universal Gold Mining Corp. Since October 2007 through February 2013, Mr. Rector has served as President and CEO of Standard Drilling, Inc. From May 2004 through December 2006, Mr. Rector had served in senior management positions with Nanoscience Technologies, Inc., a development stage company engaged in the development of DNA Nanotechnology. From 1983 until 1985, Mr. Rector served as President and General Manager of Sunset Designs, Inc., a domestic and international manufacturer and marketer of consumer product craft kits, and a wholly-owned subsidiary of Reckitt & Coleman N.A. From 1980 until 1983, Mr. Rector served as the Director of Marketing of Sunset Designs. From 1971 until 1980, Mr. Rector served in progressive roles in the financial and product marketing departments of Crown Zellerbach Corporation, a multi-billion dollar pulp and paper industry corporation. Mr. Rector received a Bachelor of Science degree in Business/Finance from Murray State University in 1969. As a result of these professional and other experiences, Mr. Rector has a deep business understanding of developing companies. Mr. Rector also brings corporate governance experience through his service on other company boards.

**Michael Beeghley**, age 49, was appointed to our Board of Directors on December 18, 2015.  Mr. Beeghley has 25 years of financial industry experience, including 23 years specifically in corporate finance and financial advisory services. Mr. Beeghley has been serving as President of Applied Economics LLC ("Applied Economics"), a national corporate finance and financial advisory services firm for 18 years. As President of Applied Economics, Mr. Beeghley has initiated managed and closed over $1 billion in corporate finance transactions and has managed, completed and signed over 2,000 financial advisory engagements. Mr. Beeghley is a national expert on mergers & acquisitions and securities valuation, and has been quoted or interviewed for the Atlanta Journal-Constitution, Atlanta Business Chronicle, The Georgia Business Report (GPTV), Catalyst Magazine, and Reuters News Service (New York).  He has spoken on financial topics throughout the United States and has been an instructor for the American Institute of Certified Public Accountants, teaching business valuation to societies in ten states. Additionally, Mr. Beeghley has testified as an expert and provided expert opinions on numerous economic, financial and securities issues. Prior to forming Applied Economics, Mr. Beeghley was a Manager in the Corporate Finance Group of Ernst & Young, LLP and a Senior Analyst in the Corporate Finance Group of PricewaterhouseCoopers.  Mr. Beeghley is qualified to serve as a director due to his extensive corporate finance background.

<u>**Arrangements between Officers and Directors**</u>

To our knowledge, there is no arrangement or understanding between any of our officers and any other person, including Directors, pursuant to which the officer was selected to serve as an officer.

<u>**Family Relationships**</u>

None of our Directors are related by blood, marriage, or adoption to any other Director, executive officer, or other key employees.

-4-

# Exhibit 7

# Exhibit 8

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**FORM 8-K**

**CURRENT REPORT**

**Pursuant to Section 13 or 15(d)**
**of the Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported): September 25, 2015**

**MAJESCO ENTERTAINMENT COMPANY**
**(Exact name of registrant as specified in its charter)**

| **Delaware** | **000-51128** | **06-1529524** |
|---|---|---|
| **(State or other jurisdiction of incorporation)** | **(Commission File Number)** | **(IRS Employer Identification No.)** |

**404I-T Hadley Road**
**S. Plainfield, New Jersey 07080**
**(Address of principal executive offices and zip code)**

**Registrant's telephone number, including area code: (732) 225-8910**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions ( *see* General Instruction A.2. below):

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

<u>Employment Agreements and Restricted Stock Agreements</u>

On September 30, 2015, we entered into Executive Employment Agreements (the "Employment Agreements") with Barry Honig, and John Stetson.  Under the Employment Agreements, both Mr. Honig and Mr. Stetson will serve as Chief Executive Officer and Chief Financial Officer, respectively, and receive a base salary of $120,000 per year. The executives are also eligible for bonus compensation and equity awards as may be approved in the discretion of the Compensation Committee and the Board of Directors.  Upon termination of their employment for any reason, the executives will receive all base salary earned through the termination date, together with all vested share awards, annual bonuses earned, and accrued but unused vacation time as of the termination date.  Further, unless the executives are terminated for cause or unless they terminate their service without good reason (as defined in the Employment Agreements) they will be entitled to receive a cash Separation Payment equal to one hundred percent (100%) of the sum of their base salary, annual bonus and share awards earned during the year immediately preceding the date of termination, or the amount payable (including Executive's base salary, annual bonus and share awards) for the remainder of the employment period then in effect, if greater; provided, that the Executive executes an agreement releasing Company and its affiliates from any liability associated with the Employment Agreement.

The descriptions of the Employment Agreements included herein are incomplete.  The Employment Agreements contain various additional terms and conditions which are included on Exhibits 10.4 and 10.5 hereto and should be reviewed in their entirety.

Also on September 30, 2015, we entered into Restricted Stock Agreements (the "Stock Awards") with certain of our executive officers and directors.  The Stock Awards provide for grants of common stock to our officers and directors under our 2014 Equity Incentive Plan which shall vest at a rate of 1/24 of the stock awarded each month for twenty-four months.  Vesting of the Stock Awards shall accelerate upon the occurrence of a Qualified Transaction. A Qualified Transaction includes one or more acquisitions with an aggregate value of at least $25 million.

The shares of common stock granted to our officers and directors under the Stock Awards are as follows:

| Name | Shares |
|---|---|
| Barry Honig | 400,000 |
| John Stetson | 300,000 |
| Michael Brauser | 400,000 |
| Mohit Bhansali | 25,000 |
| Edward Karr | 50,000 |
| Andrew Kaplan | 50,000 |

**Item 5.02**       **Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

On September 25, 2015, our Board of Directors increased the size of the Board of Directors and appointed Barry Honig, Michael Brauser, Edward Karr and Andrew Kaplan to serve as new members of our Board of Directors.  Further, our Board determined that Michael Brauser, Edward Karr, and Andrew Kaplan will qualify as Independent Directors of the Corporation within the meaning of NASDAQ Rule 5605(a)(2).  As a result, the Company believes it has regained compliance with NASDAQ Rule 5605(c)(2)(A) which the Company had been notified was not satisfied upon the departure of Trent Davis from the Board of Directors on July 27, 2015.

The Board of Directors also appointed Barry Honig to serve as our new Chairman and Chief Executive Officer and appointed John Stetson to serve as our new Chief Financial Officer, Executive Vice President and Secretary. Mr. Brauser was appointed Co-Chairman of the Board of Directors

**Barry Honig** , age 44, is our newly appointed Chairman, CEO, and a member of our Board of Directors.  Mr. Honig has been President of GRQ Consultants, Inc., since January 2004, where he is a private investor and consultant to early stage companies. Mr. Honig is a founder and Director of Pershing Gold (PGLC), a Nasdaq listed emerging gold producer, since September 29, 2010. Mr. Honig was the Founder/Co-Chairman of InterCLICK, Inc. (ICLK) from 2007 until its sale to Yahoo! Inc. in December 2011.. Mr. Honig served as Co-Chairman of Chromadex Corporation (CDXC), a natural products company, from 2011 to 2015. Mr. Honig graduated from George Washington University in 1993 with a BA in Business Administration.  The Company believes Mr. Honig is qualified to serve as a director due to his extensive business and management expertise and his extensive knowledge of capital markets.

**Michael Brauser** , age 59, our newly appointed director, has been a self-employed investor/venture capitalist since 2003 investing in both public and private companies.  He has been the manager of, and an investor with, Marlin Capital Partners, LLC, a private investment company, since 2003. From 1999 through 2002, he served as President and Chief Executive Officer of Naviant, Inc. (eDirect, Inc.), an Internet marketing company.  He was also the founder of Seisant Inc. (eData.com, Inc.).  Between October 2005 and November 2006, he served as Chairman of the Board of Directors of SendTec, Inc. (SNDN), a publicly-traded customer acquisition ad agency.  He served on the Board of Directors of Chromadex Corp. (CDXC) from October 2011 to March 2015 and served on the board of Interclick, Inc. (ICLK) from 2007 until its acquisition by Yahoo!.  Mr. Brauser is currently the Chairman of IDI, Inc. (IDI). The Company believes Mr. Brauser is qualified to serve as a director due to his extensive business and management expertise from his background as an executive officer of a number of public companies and his knowledge of accounting and finance.

**John Stetson** , age 30, our newly appointed Chief Financial Officer, Executive Vice President and Secretary, has been the Managing Member of HS Contrarian Investments LLC, a private investment firm with a focus on early stage companies since 2010. In addition, Mr. Stetson served as Executive Vice President, Chief Financial Officer, and Director of Marathon Patent Group, Inc. (MARA), a Nasdaq listed patent monetization company from June 2012 to February 2015. Mr. Stetson was President & Co-Founder of Fidelity Property Group, Inc. from April 2010 to July 2014, a real estate development group focused on acquisition, rehabilitation, and short-term disposition of single family homes that completed 190 transactions, and generated over $46 million in sales. Mr. Stetson was an Investment Analyst from 2008 to 2009 for Heritage Investment Group and worked in the division of Corporate Finance of Toll Brothers from 2007 to 2008. Mr. Stetson received his BA in Economics from the University of Pennsylvania. The Company believes Mr. Stetson is qualified to serve as a director due to his extensive business and investment expertise.

**Edward M. Karr,** age 46, our newly appointed director, has been founder and Managing Director of Strategic Asset Management S.A. and also is a Director of Pershing Gold Corporation (PGLC), Dataram Corporation (DRAM) and Levon Resources (LVN.TO).  He has more than 20 years of capital markets experience as a financial analyst, money manager and investor. Prior to founding Strategic Asset Management, Mr. Karr managed a private Swiss asset management, investment banking and trading firm based in Geneva, Switzerland for ten years. At the firm, he was responsible for all of the capital market transactions, investment and marketing activities. In 2004, Futures Magazine named Mr. Karr as one of the world's Top Traders. He has been featured on CNBC and has been quoted in numerous financial publications. Prior to moving to Europe, Mr. Karr worked for Prudential Securities in the United States and has been in the financial services industry for over twenty years. Before his entry into the financial services arena, Mr. Karr was affiliated with the United States Antarctic Program and spent thirteen consecutive months working in the Antarctic, receiving the Antarctic Service Medal for winter over contributions of courage, sacrifice and devotion. Mr. Karr studied at Embry-Riddle Aeronautical University, Lansdowne College in London, England and received a B.S. in Economics/Finance with Honours (magna cum laude) from Southern New Hampshire University. Mr. Karr has lived in Geneva since 1997.  He is a current board member, Nominating Committee Chair and past President of the American International Club of Geneva and Chairman of Republican's Overseas Switzerland.

# Exhibit 9

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# SCHEDULE 14A

**Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934**

Filed by the Registrant [X]

Filed by a Party other than the Registrant [ ]

Check the appropriate box:

     [ ]    Preliminary Proxy Statement

     [ ]    Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))

     [X]    Definitive Proxy Statement

     [ ]    Definitive Additional Materials

     [ ]    Soliciting Material Pursuant to Rule Sec.240.14a-12

# PolarityTE, Inc.
**(Name of Registrant as Specified In Its Charter)**

**(Name of Person(s) Filing Proxy Statement, if other than the Registrant)**

Payment of Filing Fee (Check the appropriate box):

[X]    No fee required

[ ]    Fee computed on table below per Exchange Act Rules 14a-6(i) (1) and 0-11.

    (1)  Title of each class of securities to which transaction applies:

    (2)  Aggregate number of securities to which transaction applies:

    (3)  Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

    (4)  Proposed maximum aggregate value of transaction:

    (5)  Total fee paid:

[ ]    Fee paid previously with preliminary materials:

[ ]    Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

    (1)  Amount previously paid:

    (2)  Form, Schedule or Registration Statement No.:

    (3)  Filing Party:

    (4)  Date Filed:

(1) Represents the aggregate grant date fair value for restricted stock awards granted during fiscal years 2016 and 2017, respectively, computed in accordance with FASB ASC Topic 718. See Note 9 to our consolidated financial statements reported in our Annual Report on Form 10-K for our fiscal year ended October 31, 2017 for details as to the assumptions used to determine the grant date fair value of the restricted stock awards.

(2) Represents the aggregate grant date fair value for option awards granted during fiscal years 2016 and 2017, respectively, computed in accordance with FASB ASC Topic 718. See Note 9 to our consolidated financial statements reported in our Annual Report on Form 10-K for our fiscal year ended October 31, 2017 for details as to the assumptions used to determine the grant date fair value of the option awards.

(3) Mr. Honig's service as an officer and director of the Company terminated on December 1, 2016.

(4) Mr. Stetson's service as Chief Financial Officer ended June 20, 2018, when Paul E. Mann became Chief Financial Officer. Mr. Stetson now serves as Chief Investment Officer.

(5) Represents 125,000 shares at a grant date fair value of $3.15 per common share.

(6) Represents 87,500 shares at a grant date fair value of $5.16 per common share.

(7) Represents 175,000 shares at a grant date fair value of $3.15 per common share.

(8) Represents 87,500 shares at a grant date fair value of $5.16 per common share.

(9) Represents 50,000 shares at a grant date fair value of $14.44 per common share.

(10) Represents stock options to purchase 1,000,000 common shares at an exercise price of $3.15 per common share.

(11) Represents stock options to purchase 87,500 common shares at an exercise price of $4.80 per common share.

(12) Represents stock options to purchase 846,000 common shares at an exercise price of $3.15 per common share.

(13) Represents stock options to purchase 87,500 common shares at an exercise price of $4.80 per common share.

(14) Represents stock options to purchase 75,000 common shares at an exercise price of $13.12 per common share.

**Narrative Disclosure to Summary Compensation Table**

*Denver Lough's Employment Agreement*

On December 1, 2016, the Company entered into an employment agreement with Dr. Denver Lough. Pursuant to the terms of the agreement, Dr. Lough will serve as Chairman of the Board of Directors and as Chief Executive Officer and Chief Scientific Officer of the Company for a term of one year which shall be automatically renewed for successive one-year periods thereafter unless earlier terminated. Pursuant to the agreement, the Company shall pay Dr. Lough (i) a one-time signing bonus of $100,000, (ii) an annual base salary of $350,000, (iii) an annual discretionary bonus, as determined by the Board of Directors, in an amount up to 100% of Dr. Lough's then current base salary and (iv) 10 year options to purchase up to 1,000,000 shares of the Company's Common Stock at an exercise price of $3.15 per share (equal to 100% of the market price as defined by The NASDAQ Capital Market) which options shall vest in 24 equal installments commencing on the one month anniversary of the agreement. The options were granted pursuant to the 2017 Plan. At the time the employment agreement was entered into the Company paid to Dr. Lough a cash inducement bonus of $100,000.

On November 10, 2017, the Company entered into a new executive employment agreement (the "Lough Agreement") with Dr. Lough, providing for the continuation of his role as the Chief Executive Officer and Chief Scientific Officer of the Company for a term of three years, which term shall be automatically renewed for successive one year periods thereafter unless either party provides the other party with written notice of his or its intention not to renew the Lough Agreement at least three months prior to the expiration of the initial term. Pursuant to the Lough Agreement and in consideration for his services to the Company, Dr. Lough received a $150,000 continuation bonus and will receive a base salary of $530,000 per annum in accordance with the Company's regular payroll practices. For each fiscal year during the term of employment, Dr. Lough shall be eligible to receive a bonus in the amount of 100% of annual salary, if any, as may be determined from time to time by the Board of Directors in its discretion and shall be eligible to participate in any equity- based incentive compensation plan or program adopted by the Company. Dr. Lough, if terminated while not in material breach of the Lough Agreement, shall also have the right to participation payments paid to the Company (or any affiliate) from commercial transactions associated with U.S. Patent Application No. 14/954,335 and PCT International Patent Application No. PCT/US2015/063114 and any and all patents and patent applications, whether domestic or foreign, claiming priority thereto or arising therefrom (including all divisionals, continuations, reissues, reexaminations, renewals, extensions, and supplementary protection certificates of any such patents and patent application) and intellectual property rights associated with the patents (sales or licenses to third parties). The terms of the Lough Agreement supersede any prior employment agreement or arrangement between Dr. Lough and the Company.

18

**Outstanding Equity Awards at Fiscal Year-End**

The following table shows grants of stock options and grants of unvested stock awards outstanding on the last day of the fiscal year ended October 31, 2017, to each of the then executive officers named in the Summary Compensation Table.

| | Option Awards | | | | Stock Awards | |
| Name | Number of Securities Underlying Unexercised Options Exercisable (#) | Number of Securities Underlying Unexercised Options Unexercisable (#) | Option Exercise Price ($) | Option Expiration Date | Number of Shares or Units of Stock That Have Not Vested (#) | Market Value of Shares or Units of Stock That Have Not Vested ($)(1) |
|---|---|---|---|---|---|---|
| Denver Lough | 458,333(2) | 541,667(2) | $ 3.15 | Nov. 30, 2026 | - | $ - |
| Edward Swanson | 387,750(2) | 458,250(2) | $ 3.15 | Nov. 30, 2026 | - | $ - |
| John Stetson | 87,500(2) | -0- | $ 4.80 | Apr. 24, 2026 | - | $ - |
| Cameron Hoyler | 18,750(2) | 56,250(2) | $ 13.12 | Apr. 6, 2027 | 37,500(2) | $ 970,125 |
| Barry Honig | -0- | -0- | — | — | -0- | -0- |

(1)  Market value based on closing stock price of $25.87 on October 31, 2017.
(2)  Vests monthly, at a rate of 1/24 of such shares per month.

**Director Compensation**

The following table shows the total compensation paid or accrued during the fiscal year ended October 31, 2017 to each of our directors, current and former.

| Name | Fees Earned or Paid in Cash ($) | Stock Awards ($) (1) | Option Awards ($) (2) | All Other Compensation ($) | Total ($) |
|---|---|---|---|---|---|
| Steve Gorlin | 5,000 | 237,000(3) | 158,688(5) | — | 400,688 |
| Jon Mogford | 5,000 | 237,000(3) | 158,688(5) | — | 400,688 |
| Jeff Dyer | 5,000 | — | 287,699(6) | — | 292,699 |
| Michael Beeghley (7) | 5,000 | 47,250(4) | — | — | 52,250 |

(1) Represents the aggregate grant date fair value for stock awards granted by us in fiscal year 2017 computed in accordance with FASB ASC Topic 718. See Note 9 to our consolidated financial statements reported in our Annual Report on Form 10-K for fiscal year ended October 31, 2017 for details as to the assumptions used to determine the fair value of the stock awards.
(2) Represents the aggregate grant date fair value for options granted by us in fiscal year 2017 computed in accordance with FASB ASC Topic 718. See Note 9 to our consolidated financial statements reported in our Annual Report on Form 10-K for fiscal year ended October 31, 2017 for details as to the assumptions used to determine the fair value of the option awards.
(3) Represents 50,000 shares at a grant date fair value of $4.74 per common share.
(4) Represents 15,000 shares at a grant date fair value of $3.15 per common share.
(5) Represents stock options to purchase 50,000 common shares at an exercise price of $4.72 per common share.
(6) Represents stock options to purchase 141,000 common shares at an exercise price of $3.12 per common share.
(7) Mr. Beeghley's term as a director of the Company expired on October 18, 2017.

*Non-employee Director Compensation Policy*

During the fiscal year ended October 31, 2017, our directors were compensated in accordance with the following terms. Each non-employee director received an annual cash retainer of $5,000, other than the Chair of the Company's Audit Committee, who received $6,000. In addition, the Chairman of the Board of Directors received an additional annual cash retainer of $10,000.

Each non-employee director was also entitled to receive 5-year options to purchase shares of the Company's Common Stock valued at $10,000, calculated by dividing $10,000 by the closing stock price on the date the award was granted. The options vest in full six months after the grant date, provided the applicable director is still serving on the Board of Directors.

Each non-employee director was entitled to a fee of $2,500 for each Board meeting at which the director was present in person, and each member of our Board committees was entitled to a fee of $800 for each committee meeting at which the director was present in person. Each non-employee director was entitled to a fee of $300 for each teleconference called by either the Chairman of the Board of Directors, the President of the Company or the Chairman of a Board committee.

# Exhibit 10

DATE FILED: December 8, 2016 3:45 PM

| | |
|---|---|
| DISTRICT COURT, DOUGLAS COUNTY, STATE OF COLORADO<br>Douglas County Courthouse<br>4000 Justice Way Ste. 2009<br>Castle Rock, CO 80109<br>(720) 437-6200 | |
| **Plaintiff**:<br><br>BARRY HONIG, in his capacity as trustee of GRQ CONSULTANTS, INC. 401K TRUST AND PLAN,<br><br>v.<br><br>**Defendant**:<br><br>BIOPTIX, INC. f/k/a VENAXIS, INC., a Colorado corporation. | ▲ **COURT USE ONLY** ▲<br><br>Case Number:<br><br>Div.:        Ctrm.: |
| **Attorneys for Plaintiff**:<br>K. C. Groves, #20832<br>Mark E. Haynes, #12312<br>IRELAND STAPLETON PRYOR & PASCOE, PC<br>717 17th Street, Suite 2800<br>Denver, Colorado 80202<br>Telephone:    (303) 623-2700<br>Fax No.:       (303) 623-2062<br>E-mail:         kcgroves@irelandstapleton.com<br>                    mhaynes@irelandstapleton.com | |

**APPLICATION FOR COURT-ORDERED SPECIAL MEETING OF SHAREHOLDERS PURSUANT TO C.R.S. § 7-107-103(1)(b)**

Plaintiff Barry Honig, in his capacity as trustee of GRQ Consultants, Inc., 401K ("GRQ 401K"), by and through his counsel, K.C. Groves, Esq. and Mark E. Haynes, Esq. of IRELAND STAPLETON PRYOR & PASCOE, PC, seeks a summary order from this Court authorizing a special meeting of the shareholders of Bioptix, Inc. f/k/a Venaxis, Inc. ("Venaxis"), and states as follows:

Plaintiff hereby requests that this Court summarily order a special meeting of the shareholders of Venaxis, pursuant to C.R.S. § 7-107-103(1).

2521609.9

size of the Board at not more than six (6) Directors; and the election of five (5) new Directors. *See* **Ex. 1**, p. 5.

18.     On September 14, 2016, Ms. DeFrancesco sent a letter to Mr. Lundy on behalf of CJD Group stating that she owned 341,176 shares of Venaxis, representing approximately 8.8% of the voting shares. Her letter was sent "in support of Barry Honig and his demand for a special meeting of the shareholders of the Company for all of the purposes set forth therein." *See* Letter from C. DeFrancesco to S. Lundy dated September 14, 2016 re: Demand For Special Meeting of the Shareholders of Venaxis, Inc. (the "***CJD September 14, 2016 Demand for Shareholder Meeting***"), attached hereto as **Exhibit 3**.

19.     On September 14, 2016, CJD Group owned 341,176 shares of common stock of Venaxis, representing at least 7.6% of the votes entitled to be cast notwithstanding the dilution of Venaxis's shareholders in the Transaction.

20.     On September 14, 2016, Plaintiff owned 389,159 shares of common stock of Venaxis, representing at least 8.6% of the votes entitled to be cast notwithstanding the dilution of Venaxis's shareholders in the Transaction.

21.     As of September 14, 2016, Plaintiff and the CJD Group owned approximately 730,335 shares of Venaxis common stock, representing at least 16.2% of all outstanding votes entitled to be cast.

22.     Accordingly, Plaintiff and CJD Group's demands for a special meeting were effective under C.R.S. § 7-107-102(1)(b), and Venaxis was required to issue the Notice of the special meeting to its shareholders within thirty days, or by October 14, 2016.

23.     Venaxis refused to issue the required Notice. In refusing to issue a Notice, Venaxis, through counsel, responded to Plaintiff and CJD Group's demands in a letter dated September 19, 2016, attached hereto as **Exhibit 4**. In its letter, Venaxis claimed that a meeting was not required, because (a) GRQ lacked authority to demand a meeting since it owned less than 10% of the shares outstanding, and (b) the demand came from Mr. Honig instead of from GRQ 401K.

24.     It is irrelevant if Plaintiff owed less than 10% of the shares outstanding, because C.R.S. § 7-107-102(1)(b) clearly states that a corporation is required to hold a special meeting if it "receives one or more written demands for the meeting" from "holders of shares representing at least ten percent . . . ." Venaxis is further subject to the requirements of Section 2 of its Amended and Restated Bylaws, attached hereto as **Exhibit 5**, p. 2,[1] which largely mirrors the statute and requires Venaxis to hold a special meeting if it receives one or more written demands

---

[1] This is the most recent copy of the Venaxis Bylaws of which we are aware. Venaxis was originally incorporated as AspenBio, Inc. and has since changed the name of the entity several times.

# Exhibit 11

EDGAR pro
by EDGAR Online®

# RIOT BLOCKCHAIN, INC.

## Filed by

# DEFRANCESCO CATHERINE JOHANNA

# FORM SC 13D/A

### (Amended Statement of Beneficial Ownership)

## Filed 09/20/16

| | |
|---|---|
| Address | 202 6TH STREET, SUITE 401 |
| | CASTLE ROCK, CO, 80104 |
| Telephone | 303-794-2000 |
| CIK | 0001167419 |
| Symbol | RIOT |
| SIC Code | 2835 - In Vitro and In Vivo Diagnostic Substances |
| Industry | Financial & Commodity Market Operators |
| Sector | Financials |
| Fiscal Year | 12/31 |

http://pro.edgar-online.com
© Copyright 2019, EDGAR Online, a division of Donnelley Financial Solutions. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, a division of Donnelley Financial Solutions, Terms of Use.

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

**SCHEDULE 13D/A**
Amendment No. 2
**Under the Securities Exchange Act of 1934**

# <u>Venaxis, Inc.</u>

(Name of Issuer)

**<u>Common stock, no par value</u>**
(Title of Class of Securities)

**<u>92262A206</u>**
(CUSIP Number)

Catherine Johanna DeFrancesco
365 Bay St. Suite 840
Toronto, ON M5H 2V1
Canada
Tel. (416) 362-4441

*Copies to:*

Joe Laxague, Esq.
Laxague Law, Inc.
1 East Liberty, Suite 600
Reno, NV 89501
<u>Tel. (775) 234-5221</u>
(Name, Address and Telephone Number of Person Authorized to
Receive Notices and Communications)

**<u>September 20, 2016</u>**
(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of Sec.Sec.240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box. ☐

**Note:** Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See Rule.13d-7 for other parties to whom copies are to be sent.

* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

1.  Names of Reporting Persons.

Catherine Johanna DeFrancesco

2.  Check the Appropriate Box if a Member of a Group
(a) [ ]
(b) [X]

3.  SEC Use Only

4.  Source of Funds
WC

5.  Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)

6.  Citizenship or Place of Organization
Canada

| Number of Shares Beneficially Owned by Each Reporting Person With: | 7.  Sole Voting Power<br>341,176 [1] |
|---|---|
| | 8.  Shared Voting Power<br>0 |
| | 9.  Sole Dispositive Power<br>341,176 [1] |
| | 10.  Shared Dispositive Power<br>0 |

11.  Aggregate Amount Beneficially Owned by Each Reporting Person
341,176 [1]

12.  Check if the Aggregate Amount in Row (11) Excludes Certain Shares
☐

13.  Percent of Class Represented by Amount in Row (11)
8.80% [2]

14.  Type of Reporting Person
IN

[1] Includes shares beneficially owned through the following entities:

DSB Capital, Ltd., a Turks & Caicos company where Ms. DeFrancesco serves as the Trustee – 64,000 shares
DeFrancesco Motorsports, Inc., an Ontario corporation where Ms. DeFrancesco serves as the President – 59,100 shares
Delavalco Holdings, Inc., an Ontario corporation where Ms. DeFrancesco serves as the President – 81,500 shares
Delavalco Holdings, Inc., an Florida corporation where Ms. DeFrancesco serves as the President – 85,466 shares
Marcandy Investments Corp., an Ontario corporation where Ms. DeFrancesco serves as the President – 5,000 shares
Namaste Gorgie, Inc., an Ontario corporation where Ms. DeFrancesco serves as the President – 46,110 shares

[2] Based on 3,876,961 shares issued and outstanding as of August 10, 2016, as reported on the issuer's Form 10-Q filed August 10, 2016.

**Explanatory Notes**

This Amendment No. 2 further amends and supplements the Schedule 13D and Schedule 13D/A filed with the Securities and Exchange Commission on September 12, 2016 (the "Original Filing") and September 14, 2016 ("Amendment No. 1), respectively, relating to the common stock, no par value (the "Common Stock"), of Venaxis, Inc. a Colorado corporation (the "Issuer"). The address of the principal executive office of the Issuer is 1585 South Perry Street, Castle Rock, Colorado 80104.

Capitalized terms not defined herein shall have the meaning ascribed to them in the Original Schedule 13D. Except as set forth herein, the Original Schedule 13D and Amendment No. 1 are unmodified.

**ITEM 4. PURPOSE OF TRANSACTION**

Item 4 of the Original Filing and Amendment No. 1 are hereby supplemented as follows:

On September 20, 2016, the Reporting Person submitted a letter to the Issuer reiterating her September 14, 2016 demand for special meeting of the Issuer's shareholders, joining in the prior demand of shareholder Barry Honig, and joining in Mr. Honig's director nominations for the Issuer. The letter is attached as Exhibit 99.1.

**ITEM 7. MATERIAL TO BE FILED AS EXHIBITS**

| Exhibit No . | Description |
|---|---|
| 99.1 | Letter to the Issuer dated September 20, 2016 |

**SIGNATURE**

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.


September 20, 2016
Date


/s/ Catherin Johanna DeFrancesco
Catherine Johanna DeFrancesco

Exhibit 99.1

**CATHERINE JOHANNA DEFRANCESCO**
365 Bay St. Suite 840
Toronto, ON M5H 2V1
Canada

September 20, 2016

**By email to:** dwelch@welchconsul.com ; info@venaxis.com

Stephen T. Lundy
Chief Executive Officer
Venaxis, Inc.
1585 South Perry Street
Castle Rock, CO 80104

Re:   *Repeated Demand for Special Meeting of the Shareholders of Venaxis, Inc.*

Mr. Lundy:

I am writing to follow-up on my letter transmitted by e-mail on September 14, 2016. As previously stated, I am the beneficial owner of shares of Venaxis, Inc., a Colorado corporation ("Venaxis" or the "Company"). I beneficially own 341,176 shares representing approximately 8.8% of all the votes entitled to be cast at a meeting of the shareholders of the Company. A copy of my most recent amended Schedule 13D filed with the Securities and Exchange Commission is attached as Exhibit A hereto and incorporated by reference. My shares are beneficially owned through several entities, as set forth in my Schedule 13D, as amended. The shares are held through the following broker-dealers: Richardson GMP Limited, Industrial Alliance Securities Inc., and Merrill Lynch, Pierce, Fenner, & Smith, Inc.

Pursuant to Section 7-107-102 of the Colorado Revised Statutes, I repeat my demand made September 14, 2016 for a special meeting of the shareholders of the Company (the "Meeting") and join in the demand for a special meeting of the shareholders made by Barry Honig dated September 13, 2016, a copy of which is attached as Exhibit B hereto and incorporated by reference. The purposes of the meeting should be, as set forth in Mr. Honig's meeting demand: (1) to vote on the removal of five (5) directors, aside from you, currently serving on the Board of Directors, (2) to vote on a $7,500,000 shareholder dividend, and (3) to set the size of the board at no more than six (6) directors and for the election of five (5) new directors as follows: John Stetson, John O'Rourke, Jesse Sutton, Michael Beeghley, and David Danziger. I join in Mr. Honig's prior nomination of these individuals to serve as members of the board of directors, a copy of which is attached as Exhibit C hereto and incorporated by reference.

Should you have any questions regarding the foregoing, please do not hesitate to contact Joe Laxague, Esq. at (775) 234-5221.

Very truly yours,

/s/ Catherine Johanna DeFrancesco
Catherine Johanna DeFrancesco

Enclosures

# EXHIBIT A

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

# SCHEDULE 13D/A
**Amendment No. 1**
**Under the Securities Exchange Act of 1934**

**Venaxis, Inc.**
(Name of Issuer)

**Common stock, no par value**
(Title of Class of Securities)

**92262A206**
(CUSIP Number)

Catherine Johanna DeFrancesco
365 Bay St. Suite 840
Toronto, ON M5H 2V1
Canada
Tel. (416) 362-4441

*Copies to:*

Joe Laxague, Esq.
Laxague Law, Inc.
1 East Liberty, Suite 600
Reno, NV 89501
Tel. (775) 234-5221
(Name, Address and Telephone Number of Person Authorized to
Receive Notices and Communications)

**September 13, 2016**
(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box. ☐

**Note:** Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See Rule.13d-7 for other parties to whom copies are to be sent.

\* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

1.  Names of Reporting Persons.

Catherine Johanna DeFrancesco

2.  Check the Appropriate Box if a Member of a Group
(a) [ ]
(b) [X]

3.  SEC Use Only

4.  Source of Funds
WC

5.  Check if Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e)
☐

6.  Citizenship or Place of Organization
Canada

| Number of Shares Beneficially Owned by Each Reporting Person With: | 7.  Sole Voting Power<br>341,176 [1] |
| | 8.  Shared Voting Power<br>0 |
| | 9.  Sole Dispositive Power<br>341,176 [1] |
| | 10.  Shared Dispositive Power<br>0 |

11.  Aggregate Amount Beneficially Owned by Each Reporting Person
341,176 [1]

12.  Check if the Aggregate Amount in Row (11) Excludes Certain Shares
☐

13.  Percent of Class Represented by Amount in Row (11)
8.80% [2]

14.  Type of Reporting Person
IN

[1] Includes shares beneficially owned through the following entities:

   DSB Capital, Ltd., a Turks & Caicos company where Ms. DeFrancesco serves as the Trustee – 64,000 shares
   DeFrancesco Motorsports, Inc., an Ontario corporation where Ms. DeFrancesco serves as the President – 59,100 shares
   Delavalco Holdings, Inc., an Ontario corporation where Ms. DeFrancesco serves as the President – 81,500 shares
   Delavalco Holdings, Inc., an Florida corporation where Ms. DeFrancesco serves as the President – 85,466 shares
   Marcandy Investments Corp., an Ontario corporation where Ms. DeFrancesco serves as the President – 5,000 shares
   Namaste Gorgie, Inc., an Ontario corporation where Ms. DeFrancesco serves as the President – 46,110 shares

[2] Based on 3,876,961 shares issued and outstanding as of August 10, 2016, as reported on the issuer's Form 10-Q filed August 10, 2016.

**ITEM 1. SECURITY AND ISSUER**

(a) Name of Issuer:

Venaxis, Inc.

(b) Address of Issuer's Principal Executive Offices:

1585 South Perry Street
Castle Rock, Colorado 80104

(c) Title of the class of equity securities to which this statement relates:

Common stock, no par value

**ITEM 2. IDENTITY AND BACKGROUND**

If the person filing this statement or any person enumerated in Instruction C of this statement is a corporation, general partnership, limited partnership, syndicate or other group of persons, state its name, the state or other place of its organization, its principal business, the address of its principal office and the information required by (d) and (e) of this Item. If the person filing this statement or any person enumerated in Instruction C is a natural person, provide the information specified in (a) through (f) of this Item with respect to such person(s).

(a)   Name:

Catherine Johanna DeFrancesco

(b)   Residence or business address:

365 Bay St. Suite 840
Toronto, ON M5H 2V1
Canada

(c) Present principal occupation or employment and the name, principal business and address of any corporation or other organization in which such employment is conducted:

Ms. DeFrancesco serves as the President and Owner of Delavalco Holdings, Inc., an Ontario corporation.  Her business address is 365 Bay St. Suite 840, Toronto, ON M5H 2V1.

(d) Whether or not, during the last five years, such person has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors) and, if so, give the dates, nature of conviction, name and location of court, and penalty imposed, or other disposition of the case:

No.

(e) Whether or not, during the last five years, such person was a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of such proceeding was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws; and, if so, identify and describe such proceedings and summarize the terms of such judgment, decree or final order:

No.

(f) Citizenship:

Canada

**ITEM 3. SOURCE AND AMOUNT OF FUNDS OR OTHER CONSIDERATION**

The source of funds was the working capital of the entities, as detailed above, through which Ms. DeFrancesco holds her beneficial ownership.

**ITEM 4. PURPOSE OF TRANSACTION**

The reporting person may engage in discussions with management and security holders of the issuer and other persons with respect to the subject class of securities, the issuer, the issuer's industry, business, condition, operations, structure, governance, management, capitalization, policies, plans, and prospects and related and other matters. In particular, the reporting person may engage in discussions with management and security holders of the issuer regarding the complexion of the issuer's board of directors and options for increasing shareholder value. The reporting person plans and proposes to review and analyze such reporting person's interest in the issuer on a continuing basis and may engage in such discussions, as well as discussions with the issuer, the issuer's directors and officers and other persons related to the issuer, as the reporting person deems necessary or appropriate in connection with the reporting person's interest in the issuer.

Depending upon the factors described below and any other factor that is or becomes relevant, the reporting person plans and proposes to: (a) acquire additional amounts of the subject class of securities or different equity, debt, or other securities of the issuer, derivative securities related to securities of the issuer or other securities related to the issuer (collectively, "Issuer-Related Securities") or a combination or combinations of Issuer-Related Securities, including by purchase or other method, pursuant to open market, private, tender offer, or other transactions, using borrowed or other funds or consideration of or from any source described herein or other source or via a combination or combinations of such methods, transactions, consideration, and sources; (b) dispose of all or part of the securities covered by this statement and any other Issuer- Related Securities, including by sale or other method, pursuant to open market, private, or other transactions or via a combination or combinations of such methods and transactions; (c) engage in financing, lending, hedging, pledging, or similar transactions involving the securities covered by this statement or other Issuer-Related Securities or a combination or combinations of such transactions; (d) engage in discussions and otherwise communicate with the issuer, officers, directors, and security holders of the issuer and other persons related to the issuer with respect to Issuer-Related Securities, the issuer, the issuer's industry, business, condition, operations, structure, governance, management, capitalization, dividend policy, other policies, plans, and prospects and related and other matters; (e) suggest or recommend a transaction or transactions involving the acquisition, sale, or exchange of all or part of the Issuer-Related Securities or assets of the issuer, other actions or a combination or combinations of such actions, in any case, which relates or relate to (or could result in) a change or changes to the issuer's business, condition, operations, structure, governance, management, capitalization, policies, plans, and prospects and similar and other actions and changes; (f) make a proposal or proposals involving the acquisition or sale of all or part of the Issuer-Related Securities or assets of the issuer; (g) make a proposal or proposals to request that the issuer and/or the security holders of the issuer consider an extraordinary or other transaction, such as a merger or reorganization, or a combination or combinations of such transactions; and (h) engage in a combination or combinations of the foregoing plans and/or proposals.

Each such plan or proposal may be subject to, and depend upon, a variety of factors, including (i) current and anticipated trading prices and the expected value of applicable Issuer-Related Securities, (ii) the issuer's financial condition and position, results of operations, plans, prospects and strategies, (iii) general industry conditions, (iv) the availability, form and terms of financing and other investment and business opportunities, (v) general stock market and economic conditions, (vi) tax considerations and (vii) other factors. Each acquisition, disposition, transaction, discussion, communication, suggestion, recommendation, proposal and other action described herein may be effected, made or taken, as applicable, at any time and/or from time to time without prior notice. Although the plans and proposals described herein reflect the plans and proposals presently contemplated by the reporting person with respect to the issuer and the Issuer-Related Securities, as applicable, each such plan and proposal is subject to change at any time and from time to time dependent upon contingencies and assumed and speculative conditions and other factors, including actions taken by the issuer, the issuer's board of directors, other security holders of the issuer and other parties and the outcome of the discussions, communications, transactions and other actions described herein. There can be no assurance that any such plan or proposal will be consummated or pursued or result in any transaction described herein or other transaction or that any action contemplated by any such plan or proposal (or any similar action) will be taken. Except as otherwise described herein, no reporting person currently has any plan or proposal that relates to or would result in any of the actions specified in clause (a) through (h) of Item 4 of Schedule 13D. However, the reporting person may, at any time and from time to time, plan or propose to effect or cause an action or actions relating to or resulting in one or more of the actions specified in clause (a) through (h) of Item 4 of Schedule 13D.

**ITEM 5. INTEREST IN SECURITIES OF THE ISSUER**

(a) The aggregate number and percentage of the subject class of securities beneficially owned by the reporting person is stated (and those securities for which the reporting person has a right to acquire, if any, are identified) in items 11 and 13 on the reporting person's cover page hereto or otherwise herein, based 3,876,960 shares of Common Stock outstanding as of August 10, 2016.

(b) Number of securities for or as to which each reporting person has:

    (i)     Sole power to vote or to direct the vote:

          See Item 7 on the reporting person's cover page hereto.

    (ii)    Shared power to vote or to direct the vote:

          See Item 8 on the reporting person's cover page hereto.

    (iii)   Sole power to dispose or to direct the disposition of:

          See Item 9 on the reporting person's cover page hereto.

(c) During the past sixty days, the only transactions in Common Stock effected by the reporting person were the open market purchases set forth in Exhibit 1.1.

**ITEM 6. CONTRACTS, ARRANGEMENTS, UNDERSTANDINGS OR RELATIONSHIPS WITH RESPECT TO SECURITIES OF THE ISSUER**

There are currently no contracts, arrangements, understandings or relationships (legal or otherwise) between the person named in Item 2 and any other person with respect to any securities of the issuer, including but not limited to transfer or voting of any of the securities, finder's fees, joint ventures, loan or option arrangements, puts or calls, guarantees of profits, division of profits or loss, or the giving or withholding of proxies.

**ITEM 7. MATERIAL TO BE FILED AS EXHIBITS**

| Exhibit No . | Description |
| --- | --- |
| 1.1 | Transactions in Shares |

**SIGNATURE**

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.


September 14, 2016
Date


/s/ Catherine Johanna DeFrancesco
Catherine Johanna DeFrancesco

---

**Transactions in Shares by the Reporting Person**

| Purchasing entity | Trade date | Shares | Price per Share |
|---|---|---|---|
| Delavalco Holdings, Inc. (FL) | 9/14/2016 | 10,100 | 3.78 |
| DeFrancesco Motorsports, Inc. | 9/13/2016 | 10,000 | 4.34 |
| Delavalco Holdings, Inc. | 9/13/2016 | 10,000 | 4.29 |
| Delavalco Holdings, Inc. (FL) | 9/13/2016 | 8,000 | 4.35 |
| Delavalco Holdings, Inc. (FL) | 9/12/2016 | 12,672 | 4.08 |
| Delavalco Holdings, Inc. (FL) | 9/9/2016 | 9500 | 3.91 |
| Delavalco Holdings, Inc. (FL) | 9/8/2016 | 10194 | 3.86 |
| Delavalco Holdings, Inc. (FL) | 9/2/2016 | 35000 | 3.86 |
| Namaste Gorgie, Inc. | 9/2/2016 | 39110 | 3.80 |
| DSB Capital, Ltd. | 9/2/2016 | 25000 | 3.79 |
| DeFrancesco Motorsports, Inc. | 9/2/2016 | 39100 | 3.74 |
| Delavalco Holdings, Inc. | 9/1/2016 | 2500 | 3.85 |
| Delavalco Holdings, Inc. | 9/1/2016 | 5000 | 3.89 |
| Delavalco Holdings, Inc. | 9/1/2016 | 580 | 3.89 |
| Delavalco Holdings, Inc. | 9/1/2016 | 4420 | 3.85 |
| Delavalco Holdings, Inc. | 9/1/2016 | 2443 | 3.84 |
| Delavalco Holdings, Inc. | 9/1/2016 | 2500 | 3.85 |
| Delavalco Holdings, Inc. | 9/1/2016 | 7757 | 3.85 |
| Delavalco Holdings, Inc. | 9/1/2016 | 7300 | 3.91 |
| DSB Capital, Ltd. | 9/1/2016 | 200 | 3.85 |
| Namaste Gorgie, Inc. | 8/31/2016 | 2000 | 3.37 |
| DSB Capital, Ltd. | 8/31/2016 | 724 | 3.74 |
| DSB Capital, Ltd. | 8/31/2016 | 6758 | 3.62 |
| DSB Capital, Ltd. | 8/31/2016 | 5682 | 3.67 |
| DSB Capital, Ltd. | 8/31/2016 | 6836 | 3.69 |
| Delavalco Holdings, Inc. | 8/30/2016 | 25000 | 3.52 |
| Delavalco Holdings, Inc. | 8/30/2016 | 4000 | 3.37 |
| Delavalco Holdings, Inc. | 8/30/2016 | 4000 | 3.35 |
| Delavalco Holdings, Inc. | 8/30/2016 | 1000 | 3.36 |
| Delavalco Holdings, Inc. | 8/30/2016 | 5000 | 3.67 |
| Namaste Gorgie, Inc. | 8/30/2016 | 5000 | 3.36 |
| DSB Capital, Ltd. | 8/30/2016 | 8800 | 3.52 |
| DSB Capital, Ltd. | 8/30/2016 | 6000 | 3.63 |
| DSB Capital, Ltd. | 8/30/2016 | 3000 | 3.59 |
| DSB Capital, Ltd. | 8/30/2016 | 1000 | 3.62 |
| DeFrancesco Motorsports, Inc. | 8/30/2016 | 10000 | 3.64 |
| Marcandy Investments Corp. | 8/30/2016 | 5000 | 3.36 |

# EXHIBIT B

**BARRY HONIG**
555 South Federal Highway, #450
Boca Raton, FL 33432

September 13, 2016

<u>*By Email and UPS Overnight Service*</u>
Stephen T. Lundy
Chief Executive Officer
Venaxis, Inc.
1585 South Perry Street
Castle Rock, CO 80104

Re:   *Demand For Special Meeting of the Shareholders of Venaxis, Inc.*

Mr. Lundy:

Barry Honig (the "Holder") is the beneficial owner of shares of Venaxis, Inc., a Colorado corporation ("Venaxis" or the "Company"). The Holder beneficially owns shares representing greater than ten (10%) percent of all the votes entitled to be cast at a meeting of the shareholders of the Company. I have attached evidence of such ownership which consists of the Broker Statement and Schedule 13D filed with the Securities and Exchange Commission on September 13, 2016 and attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively.

Pursuant to Section 7-107-102 of the Colorado Revised Statutes ("CRS"), the Holder hereby demands a special meeting (the "Meeting") of the shareholders of the Company be held. Notice of the Meeting should be provided by the Company to its shareholders within the timeframe allowed pursuant to the CRS and the Company's Bylaws.

Pursuant to CRS 7-108-108, shareholders may remove one or more directors with or without cause. A director may be removed by the shareholders only at a meeting called for the purpose of removing the director. The purpose of this Meeting demanded by the Holders is to vote on the removal of five (5) directors, aside from you, currently serving on the Board of Directors. Additionally, proposals for a $7,500,000 dividend, to set the size of the board at no more than six (6) directors and for the election of five (5) new directors shall take place at the Meeting. These purposes shall be described in the notice of the Meeting you are required to provide to the shareholders under applicable Colorado law, to be substantially in the form of the form of such proposals included herewith as <u>Exhibit C</u>.

Should you have any questions regarding the foregoing, please do not hesitate to contact Harvey Kesner, Esq. at (212) 930-9700.

Very truly yours,

/s/ Barry Honig

_____
Barry Honig
Shares Beneficially Owned: 389,159 (10.04%)

-1-

**Exhibit A**

Balances & Positions for customer 82963941 (GRQ CONSULTANTS INC 401K)          Page 1 of 2

---

### Balances & Positions
Tue, 13 Sep 2016 7:15:00 am EDT

**Account**

| 82963941 (GRQ CONSULTANTS INC) ∨ |

---

#### Balance Summary

| | |
|---|---|
| **Total Account Value** | **Trading Cash** |
| **Market Value of Securities** | **Available Cash** |
| **Money Market Funds** | |

---

#### Balance Detail

| Account Type | Trade Date Balance | Market Value | Equity | Total Account Value |
|---|---|---|---|---|

---

| Total | | | | |
|---|---|---|---|---|

---

#### Assets

| Symbol | Description | Quantity | Price | Start of Day | Current Value | Today's G/L | Account | P |
|---|---|---|---|---|---|---|---|---|
| Cash | | | | | | | | |

---

Equities

| APPY | VENAXIS INC NEW | 389,159 | $ 4.11 | $ 1,599,443.49 | $ 1,599,443.49 | | CASH | |
|---|---|---|---|---|---|---|---|---|

https://corclearing.automatedfinancial.com/accounts/balance_page.html          9/13/2016

**<u>Exhibit B</u>**

[Omitted]

B-1

**Exhibit C**

**PROPOSAL NO. 1**

**APPROVAL OF DIVIDEND**

**RESOLVED:**

The Company shall be authorized and hereby is directed to declare and pay a special cash dividend to shareholders of record on the close of business on a date that shall be determined by the Board of Directors (not later than 30 days following shareholder authorization) such dividend to be paid on outstanding shares of the Company's common stock, in the amount of $7,500,000 .  The dividend paid shall constitute a reduction in capital of the Company.

**Vote Required**

The affirmative vote of a majority of the votes cast (either in person or by proxy) and entitled to vote on the matter is required to approve Proposal 1.

**PROPOSAL NO. 2**

**APPROVAL TO FIX THE MAXIMUM NUMBER OF DIRECTORS OF THE COMPANY AT SIX (6) DIRECTORS**

**RESOLVED:**

The Company shall be authorized and hereby is directed to establish the size of the Board of Directors and does hereupon fix the number of directors of the Company at a maximum of six (6) directors, such maximum number not to be revised except upon further shareholder authorization as provided in this resolution.

**Vote Required**

The affirmative vote of a majority of the votes cast (either in person or by proxy) and entitled to vote on the matter is required to approve Proposal 2.

C-2

**PROPOSAL NO. 3**

**REMOVAL FROM OFFICE OF DIRECTORS**

**RESOLVED:**

Colorado Revised Statute (C.R.S.) Section 7-108-108 states that shareholders of the Company may remove one or more directors with or without cause at a meeting called for the purpose of removing the director.  The shareholders of the Company do hereby remove at a meeting called for the purpose of removal, the following directors from the Board of Directors of the Company:

| Name | Age | Date First Elected or Appointed | Position(s) |
|------|-----|------------|-------------|
| Gail S. Schoettler | 72 | 2001 | Non-Executive Chair and Director |
| Susan A. Evans | 68 | 2012 | Director |
| Daryl J. Faulkner | 67 | 2009 | Director |
| David E. Welch | 68 | 2004 | Director |
| Stephen A. Williams | 56 | 2013 | Director |

Biographical information concerning the directors can be found in the Company's Annual Report on Form 10-K for the year ended December 31, 2015.

**Vote Required**

The number of votes cast in favor of removal exceeds the number of votes cast against removal of each named director is required for Proposal 3.

C-3

PROPOSAL NO. 4

**ELECTION OF FIVE (5) DIRECTORS**

**RESOLVED:**

The following persons are hereby nominated for election to the Board of Directors of the Company, and are hereby elected to serve as directors and to serve until their successor(s) are duly qualified and elected on or following  the 2017 annual meeting of shareholders of the Company, such directors may only be removed "for cause" or resignation. Although it is not contemplated that any person will decline or be unable to serve as a director, in such event, the remaining Board members are authorized to fill any such vacancies created.

| Name | Age |
|------|-----|
| John Stetson | 31 |
| John O'Rourke | 31 |
| Jesse Sutton | 47 |
| Michael Beeghley | 49 |
| David Danziger | 59 |

**John Stetson** has been the Managing Member of HS Contrarian Investments LLC, a private investment firm with a focus on early stage companies since 2010. In addition, Mr. Stetson served as Executive Vice President, Chief Financial Officer, and Director of Marathon Patent Group, Inc. (NASDAQ:MARA) June 2012 to February 2015, engaged in patenting, and patent acquisition, enforcement and monetization. Mr. Stetson was President & Co-Founder of Fidelity Property Group, Inc. from April 2010 to July 2014, a real estate development group focused on acquisition, rehabilitation, and short-term disposition of single family homes. Prior, Mr. Stetson held positions at Heritage Investment Group and Toll Brothers.  Mr. Stetson also served as Chief Financial Officer, Executive Vice President and Secretary of Majesco Entertainment Company (NASDAQ:COOL) since September 2015.  Mr. Stetson received his BA in Economics from the University of Pennsylvania.

**John O'Rourke** is an analyst and investor who currently serves as Managing Member of ATG Capital LLC, an investment fund focused on small and mid-cap growth companies possessing distinct competitive advantages and superior management teams.  Mr. O'Rourke currently serves on the Board of Directors of Customer Acquisition Network Inc., a leading global performance based marketing company that reaches more than two billion users per month.  Mr. O'Rourke formerly served on the Board of Directors of Rant, Inc., an innovator in U.S. digital media, prior to its sale to a Nasdaq listed company. He was formerly CFO of Fidelity Property Group, a real estate development company with a focus in California. He received his Bachelor of Science in Accounting with Honors from the University of Maryland and a Master of Science in Finance from George Washington University.

**Jesse Sutton** is a consultant for various analytic and gaming related companies. Mr. Sutton founded Majesco Entertainment Company (NASDAQ: COOL) in 1998 and served as its Chief Executive Officer until July 2015 , as well as a director from December 17, 2003 until February 6, 2006 and again from August 23, 2006 until December 17, 2014. During this period, Mr. Sutton oversaw the successful launch and development of Zumba! Fitness which sold over $300 million in games, among many other successful brands brought to market like Cooking Mama, Jillian Michaels Fitness and Disney's Phineus and Ferb and Alvin and the Chipmunks.  Mr. Sutton consults with various online and digital companies engaged in internet commerce and game development. Mr. Sutton attended Yeshiva University in New York.

**Michael Beeghley** has been President and founder of Applied Economics LLC ("Applied Economics"), a national corporate finance and financial advisory services firm for 18 years. Mr. Beeghley has testified as an expert and provided expert opinions on numerous economic, financial and securities issues. Mr. Beeghley advises pharmaceutical, biologics and medical device companies.  Recently, Mr. Beeghley served as advisor to a drug distribution company sale to a major private equity firm in a leveraged buy-out.  Prior to forming Applied Economics, Mr. Beeghley was a Manager in the Corporate Finance Group of Ernst & Young, LLP and a Senior Analyst in the Corporate Finance Group of PricewaterhouseCoopers.  Mr. Beeghley currently serves as a director of Majesco Entertainment Company (NASDAQ:COOL) since December 2015.

**David Danziger** is an Assurance Partner in MNP LLP's Toronto office. He is the Senior Vice President of Assurance for the firm as well as the National Leader of MNP's Public Companies practice. An accounting professional since 1980, Mr. Danziger is proficient in his field, serving in both the audit function and as a compliance advisor to public companies as well as to private firms looking to become public. His years of experience are a benefit to clients engaging in any form of public market transaction. Mr. Danziger also assists clients with significant transactions, complex accounting matters and regulatory issues as well as prospectus filing and other publicly filed documents. Mr. Danziger 's experience with US Reporting Issuers as well as Canadian Reporting Issuers has required him to be fluent in both IFRS and US GAAP. Mr. Danziger has served as a Director for public companies for many years and currently has significant director positions with TSX, TSXV, NYSE and AMEX-listed public companies.   Mr. Danziger graduated from the University of Toronto with a Bachelor of Commerce in 1980 and completed the School of Accountancy in 1983.

There are no family relationships between these nominees and any director or executive officer of the Company and there were no related party transactions between this nominee and the Company. No nominee has had any involvement in any legal proceedings (10 years) pursuant to Item 401 of Regulation S-K.

**Vote Required**

The affirmative vote of the holders of a plurality of the common stock present at the special meeting of stockholders is required for election of each director nominee set forth in this proposal.

# EXHIBIT C

**BARRY HONIG**

555 South Federal Highway, #450
Boca Raton, FL 33432
T:   561-961-4237
F:   561-235-5379
E:   brhonig@aol.com

September 13, 2016

*By E-Mail and Overnight UPS Mail*
Daryl Faulkner
Chair, Nominating Committee
c/o Venaxis, Inc.
1585 South Perry Street
Castle Rock, Colorado 80104

Re:   *Nomination of Five (5) Director Candidates of Venaxis, Inc.*

Dear Mr. Faulkner:

I am a record and beneficial holder of shares of Venaxis, Inc., a Colorado corporation ("Venaxis" or the "Company").  Directly and as trustee of GRQ Consultants, Inc. 401K, I beneficially own shares representing greater than ten (10%) percent of common stock, of the Company. I have attached evidence of such ownership which consists of the Broker Statement and Schedule 13D filed with the Securities and Exchange Commission on September 13, 2016 and attached hereto as Exhibit A and Exhibit B , respectively.

Pursuant to the procedures for nominating a director candidate to the Board of Directors (the "Board") of the Company, I hereby wish to nominate the following candidates to stand for election at the special meeting of the shareholders of the Company called to take place on a date of the Company's choosing within the timeframe allowed pursuant to the CRS and the Company's Bylaws:

1.  John Stetson
a.  68 Fiesta Way, Boca Raton, FL 33432
b.  T: 561-961-4371, F: 561-235-5379, E: stetson.john@gmail.com
c.  Mr. Stetson has been the Managing Member of HS Contrarian Investments LLC, a private investment firm with a focus on early stage companies since 2010. In addition, Mr. Stetson served as Executive Vice President, Chief Financial Officer, and Director of Marathon Patent Group, Inc. (NASDAQ:MARA) June 2012 to February 2015, engaged in patenting, and patent acquisition, enforcement and monetization. Mr. Stetson was President & Co-Founder of Fidelity Property Group, Inc. from April 2010 to July 2014, a real estate development group focused on acquisition, rehabilitation, and short-term disposition of single family homes. Prior, Mr. Stetson held positions at Heritage Investment Group and Toll Brothers.  Mr. Stetson also served as Chief Financial Officer, Executive Vice President and Secretary of Majesco Entertainment Company (NASDAQ:COOL) since September 2015.  Mr. Stetson received his BA in Economics from the University of Pennsylvania.
d.  There are no family relationships between this nominee and any director or executive officer of the Company.
e.  No involvement in any legal proceedings (10 years).
f.  This nominee's security ownership of the Company is as follows: No ownership.
g.  There were no related party transactions between this nominee and the Company.

2.  John O'Rourke
a.  808 Solar Isle Dr., Fort Lauderdale, FL 33301
b.  T: 610-247-3917, F: 561-235-5379, E: john@atgcapitalllc.com
c.  Mr. O'Rourke is an analyst and investor who currently serves as Managing Member of ATG Capital LLC, an investment fund focused on small and mid-cap growth companies possessing distinct competitive advantages and superior management teams.  Mr. O'Rourke currently serves on the Board of Directors of Customer Acquisition Network Inc., a leading global performance based marketing company that reaches more than two billion users per month.  Mr. O'Rourke formerly served on the Board of Directors of Rant, Inc., an innovator in U.S. digital media, prior to its sale to a Nasdaq listed company. He was formerly CFO of Fidelity Property Group, a real estate development company with a focus in California. He received his Bachelor of Science in Accounting with Honors from the University of Maryland and a Master of Science in Finance from George Washington University.
d.  There are no family relationships between this nominee and any director or executive officer of the Company.
e.  No involvement in any legal proceedings (10 years).
f.  This nominee's security ownership of the Company is as follows:

| Title of Class | Amount and Nature o f Beneficial Ownership | Percent of Class |
|---|---|---|
| Common Stock | 12,500 Shares [1] | .32% [2] |

(1)   Represents 12,500 shares of common stock held by ATG Capital LLC ("ATG"). Mr. O'Rourke is the sole manager and member of ATG and in such capacity holds voting and dispositive power over the securities held by ATG.

(2)   Calculated based on 3,876,961 shares of the Common Stock outstanding as of August 10, 2016, as reported in the Company's Form 10-Q for the period ended June 30, 2016 filed with the SEC on August 10, 2016.

g.  There were no related party transactions between this nominee and the Company.

-l-

3. Jesse Sutton

a. 1989 East 2nd Street, Brooklyn, NY 11223

b. T: 732-233-0436, F: 732-225-8408, E: jesutton@majescoent.com

c. Mr. Sutton is a consultant for various analytic and gaming related companies. Mr. Sutton founded Majesco Entertainment Company (NASDAQ: COOL) in 1998 and served as its Chief Executive Officer until July 2015 , as well as a director from December 5, 2003 until February 6, 2006 and again from August 23, 2006 until December 17, 2014. During this period, Mr. Sutton oversaw the successful launch and development of Zumba! Fitness which sold over $300 million in games, among many other successful brands brought to market like Cooking Mama, Jillian Michaels Fitness and Disney's Phineus and Ferb and Alvin and the Chipmunks. Mr. Sutton consults with various online and digital companies engaged in internet commerce and game development. Mr. Sutton attended Yeshiva University in New York.

d. No involvement in any legal proceedings (10 years).

e. This nominee's security ownership of the Company is as follows: No ownership.

f. There were no related party transactions between this nominee and the Company.

4. Michael Beeghley

a. 825 West Peachtree Street, Suite 250, Atlanta, GA 30308

b. T: 404-214-3600, F: 404 - 214 - 3601, E: michael@appliedecon.com

c. Mr. Beeghley has been President and founder of Applied Economics LLC ("Applied Economics"), a national corporate finance and financial advisory services firm for 18 years. Mr. Beeghley has testified as an expert and provided expert opinions on numerous economic, financial and securities issues. Mr. Beeghley advises pharmaceutical, biologics and medical device companies. Recently, Mr. Beeghley served as advisor to a drug distribution company sale to a major private equity firm in a leveraged buy-out. Prior to forming Applied Economics, Mr. Beeghley was a Manager in the Corporate Finance Group of Ernst & Young, LLP and a Senior Analyst in the Corporate Finance Group of PricewaterhouseCoopers. Mr. Beeghley currently serves as a director of Majesco Entertainment Company (NASDAQ:COOL) since December 2015.

d. There are no family relationships between this nominee and any director or executive officer of the Company.

e. No involvement in any legal proceedings (10 years).

f. This nominee's security ownership of the Company is as follows: No ownership.

g. There were no related party transactions between this nominee and the Company.

5. David Danziger

a. 903 – 10 Bellair Street, Toronto, Ontario M5R 3T8

b. T: 647-296-3658, F: n/a, E: david.danziger@mnp.ca

c. Mr. Danziger is an Assurance Partner in MNP LLP's Toronto office. He is the Senior Vice President of Assurance for the firm as well as the National Leader of MNP's Public Companies practice. An accounting professional since 1980, Mr. Danziger is proficient in his field, serving in both the audit function and as a compliance advisor to public companies as well as to private firms looking to become public. His years of experience are a benefit to clients engaging in any form of public market transaction. Mr. Danziger also assists clients with significant transactions, complex accounting matters and regulatory issues as well as prospectus filing and other publicly filed documents. Mr. Danziger 's experience with US Reporting Issuers as well as Canadian Reporting Issuers has required him to be fluent in both IFRS and US GAAP. Mr. Danziger has served as a Director for public companies for many years and currently has significant director positions with TSX, TSXV, NYSE and AMEX-listed public companies. Mr. Danziger graduated from the University of Toronto with a Bachelor of Commerce in 1980 and completed the School of Accountancy in 1983.

d. No involvement in any legal proceedings (10 years).

e. This nominee's security ownership of the Company is as follows: No ownership.

f. There were no related party transactions between this nominee and the Company.

Furthermore, attached hereto as Exhibit C , are the signed written consents of the nominees for election as director of the Company.

Should you have any questions regarding the foregoing, please do not hesitate to contact our counsel Harvey Kesner, Esq. at (212) 930-9700.

Very truly yours,

/s/ Barry Honig

_____
Barry Honig

**Exhibit A**

Balances & Positions for customer 82963941 (GRQ CONSULTANTS INC 401K)          Page 1 of 2

## Balances & Positions
Tue, 13 Sep 2016 7:15:00 am EDT

| | Account |
|---|---|
| | 82963941 (GRQ CONSULTANTS INC) ∨ |

**Balance Summary**

| | |
|---|---|
| Total Account Value | Trading Cash |
| Market Value of Securities | Available Cash |
| Money Market Funds | |

**Balance Detail**

| Account Type | Trade Date Balance | Market Value | Equity | Total Account Value |
|---|---|---|---|---|

| Total | | | | |
|---|---|---|---|---|

**Assets**

| Symbol | Description | Quantity | Price | Start of Day | Current Value | Today's G/L | Account | P |
|---|---|---|---|---|---|---|---|---|
| Cash | | | | | | | | |

| Equities | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| APPY | VENAXIS INC NEW | 389,159 | $ 4.11 | $ 1,599,443.49 | $ 1,599,443.49 | | CASH | |

**<u>Exhibit B</u>**

[Omitted]

B-1

Exhibit C

## CONSENT TO NOMINATION AS DIRECTOR

I, **John Stetson,** do hereby consent to my nomination for membership of the board of directors (the "Board") of Venaxis, Inc., a Colorado Corporation (the "Company").

1. Should I be elected to the Board, I am willing and able to serve and agree to serve for compensation not greater than that described in the Company's most recent proxy statement.

2. I am deemed to be "independent" as that word is defined by Rule 5605(a) of the NASDAQ listing standards.

3. I do hereby attest to the accuracy of the information submitted hereto.

DATED:  September 9, 2016

*John Stetson*

Name: John Stetson

C-1

## CONSENT TO NOMINATION AS DIRECTOR

I, John O'Rourke, do hereby consent to my nomination for membership of the board of directors (the "Board") of Venaxis, Inc., a Colorado Corporation (the "Company").

1. Should I be elected to the Board, I am willing and able to serve and agree to serve for compensation not greater than that described in the Company's most recent proxy statement.

2. I am deemed to be "independent" as that word is defined by Rule 5605(a) of the NASDAQ listing standards.

3. I do hereby attest to the accuracy of the information submitted hereto.

DATED: September 12, 2016

Name:

## CONSENT TO NOMINATION AS DIRECTOR

I, _Jesse Sutton_ **,** do hereby consent to my nomination for membership of the board of directors (the "Board") of Venaxis, Inc., a Colorado Corporation (the "Company").

1.  Should I be elected to the Board, I am willing and able to serve and agree to serve for compensation not greater than that described in the Company's most recent proxy statement.

2.  I am deemed to be "independent" as that word is defined by Rule 5605(a) of the NASDAQ listing standards.

3.  I do hereby attest to the accuracy of the information submitted hereto.

DATED: September , 2016
                  12

_____
Name

## CONSENT TO NOMINATION AS DIRECTOR

I, _**Michael M. Beeghley,** do hereby consent to my nomination for membership of the board of directors (the "Board") of Venaxis, Inc., a Colorado Corporation (the "Company").

1.  Should I be elected to the Board, I am willing and able to serve and agree to serve for compensation not greater than that described in the Company's most recent proxy statement.

2.  I am deemed to be "independent" as that word is defined by Rule 5605(a) of the NASDAQ listing standards.

3.  I do hereby attest to the accuracy of the information submitted hereto.

DATED:  September 8, 2016



## CONSENT TO NOMINATION AS DIRECTOR

I, **David Danziger,** do hereby consent to my nomination for membership of the board of directors (the "Board") of Venaxis, Inc., a Colorado Corporation (the "Company").

1. Should I be elected to the Board, I am willing and able to serve and agree to serve for compensation not greater than that described in the Company's most recent proxy statement.

2. I am deemed to be "independent" as that word is defined by Rule 5605(a) of the NASDAQ listing standards.

3. I do hereby attest to the accuracy of the information submitted hereto.

DATED:  September 12, 2016

Name: David Danziger

# Exhibit 12

**EDGAR** pro
by EDGAR®Online®

# RIOT BLOCKCHAIN, INC.

## FORM 8-K
(Current report filing)

## Filed 01/06/17 for the Period Ending 01/06/17

| | |
|---|---|
| Address | 202 6TH STREET, SUITE 401 |
| | CASTLE ROCK, CO, 80104 |
| Telephone | 303-794-2000 |
| CIK | 0001167419 |
| Symbol | RIOT |
| SIC Code | 2835 - In Vitro and In Vivo Diagnostic Substances |
| Industry | Financial & Commodity Market Operators |
| Sector | Financials |
| Fiscal Year | 12/31 |

http://pro.edgar-online.com
© Copyright 2019, EDGAR Online, a division of Donnelley Financial Solutions. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, a division of Donnelley Financial Solutions, Terms of Use.

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**WASHINGTON, DC 20549**

# FORM 8-K

### CURRENT REPORT

### PURSUANT TO SECTION 13 OR 15(d) OF THE
### SECURITIES EXCHANGE ACT OF 1934

**Date of Report (Date of earliest event reported) January 6, 2017**

# Bioptix, Inc.

**(Exact name of Registrant as specified in its charter)**

| Colorado | 001-33675 | 84-155337 |
|---|---|---|
| **(State or other jurisdiction of incorporation or organization)** | **(Commission File Number)** | **(I.R.S. Employer Identification No.)** |

| 1775 38 th Street<br>Boulder, Colorado | 80301 |
|---|---|
| **(Address of principal executive offices)** | **(Zip Code)** |

**Registrant's telephone number, including area code:**      **(303) 545-5550**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

[ ] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
[ ] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)
[ ] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))
[ ] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 5.02.   Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

On January 6, 2017, Bioptix, Inc. (the "Company") appointed John O'Rourke and Mike Dai as directors of the Company following the resignation of Gail S. Schoettler, Susan A. Evans and David E. Welch from the Board of Directors of the Company.  Mr. O'Rourke and Mr. Dai constitute independent non-employee directors as defined by NASDAQ Rule 5605(a)(2).  Mr. O'Rourke constitutes an audit committee financial expert within the meaning of Item 407(d)(5)(ii) of Regulation S-K promulgated under the Securities Act of 1933, as amended.  Mr. Beeghley, Mr. O'Rourke and Mr. Dai were each appointed to the Nominating and Governance Committee (Mr. Beeghley, Chairman), Audit Committee (Mr. O'Rourke Chairman) and Compensation Committee (Mr. Dai Chairman) and all other directors were removed from such committees.

Mr. O'Rourke is an analyst and investor who currently serves as Managing Member of ATG Capital LLC, an investment fund focused on small and mid-cap growth companies possessing distinct competitive advantages and superior management teams.  Mr. O'Rourke currently serves on the Board of Directors of Customer Acquisition Network Inc., a leading global performance based marketing company that reaches more than two billion users per month.  Mr. O'Rourke formerly served on the Board of Directors of Rant, Inc., an innovator in U.S. digital media, prior to its sale to a Nasdaq listed company. He was formerly CFO of Fidelity Property Group, a real estate development company with a focus in California. He received his Bachelor of Science in Accounting with Honors from the University of Maryland and a Master of Science in Finance from George Washington University.

Mr. Dai has been an associate with ALOE Finance Inc., a financial consulting and transaction advisory firm since 2012. Prior to his involvement with ALOE Finance, Mr. Dai held various roles at Grant Thornton LLP, an audit, tax and advisory firm between 2007 and 2012. Mr. Dai also serves as chief financial officer and director of Santa Maria Petroleum Inc. (TSXV:SMQ.H), a position he has held since 2014.

Each of the resigning directors affirmed that the resignation was not related to any disagreement or concerns related to the financial status or financial statements of the Company.

**Item 9.01.  Financial Statements and Exhibits.**

(d)      Exhibits

**Exhibits**

99.1     Letter of Resignation

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

Bioptix, Inc. (formerly known as Venaxis, Inc.)
(Registrant)

January 6, 2017                              By:    /s/ Jeffrey G. McGonegal

                                                    Name:    Jeffrey G. McGonegal
                                                    Title:    Chief Financial Officer

**EXHIBIT INDEX**

| Exhibit No. | Description |
|---|---|
| 99.1 | Letter of Resignation |

Exhibit 99.1

January 6, 2017

Bioptix, Inc.
1775 38th Street
Boulder, CO 80301
Attn:  Chief Executive Officer

Dear Steve:

On December 8, 2016, Barry Honig, the beneficial owner of more than ten percent of the outstanding shares of Bioptix, Inc. (the "Company"), commenced a legal action in Colorado State court to compel the Company to hold a special meeting of shareholders to remove Gail Schoettler, Susan Evans and David Welch from the Company's Board of Directors and to elect three nominees proposed by Mr. Honig.  The members of the Board of the Company have engaged in discussions with principal shareholders of the Company subsequent to the commencement of such action, and, based on such discussions, have determined that if such special meeting were to be held, the proposals submitted by Mr. Honig would be approved by the shareholders.  Therefore, in the best interests of the Company and its shareholders, in order to preserve the assets of the Company to be used for business purposes, each of the undersigned directors hereby resigns from the Board and each Committee of the Board on which he or she serves, effective as of January 6, 2017.

Each of the undersigned resigning directors affirms that this resignation is not related to any disagreement or concerns related to the financial status or financial statements of the Company.

Sincerely,


 /s/ Gail Schoettler
Gail Schoettler

 /s/ Susan Evans
Susan Evans

/s/ David Welch
David Welch

# Exhibit 13

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# FORM 8-K

### CURRENT REPORT

**Pursuant to Section 13 or 15(d)
of the Securities Exchange Act of 1934**

Date of Report (Date of earliest event reported):   December 1, 2016

# MAJESCO ENTERTAINMENT COMPANY
(Exact name of registrant as specified in its charter)

| Delaware | 000-51128 | 06-1529524 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**404I-T Hadley Road
S. Plainfield, New Jersey 07080**
(Address of principal executive offices and zip code)

Registrant's telephone number, including area code: **(732) 225-8910**

*Please send copies of all communications to:*

Harvey J. Kesner, Esq.
Sichenzia Ross Ference Kesner LLP
61 Broadway, 32nd Floor
New York, New York 10006
Telephone: (212) 930-9700

(Former name or former address, if changed since last report.)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐   Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐   Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐   Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐   Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

***Oversight in the industry might affect the manner in which Polarity may compete in the marketplace.***

There are laws and regulations that govern the means by which companies in the healthcare industry may market their treatments to healthcare professionals and may compete by discounting the prices of their treatments, including for example, the federal Anti-Kickback Statute, the federal False Claims Act, the federal Health Insurance Portability and Accountability Act of 1996, state law equivalents to these federal laws that are meant to protect against fraud and abuse and analogous laws in foreign countries. Violations of these laws are punishable by criminal and civil sanctions, including, but not limited to, in some instances civil and criminal penalties, damages, fines, exclusion from participation in federal and state healthcare programs, including Medicare and Medicaid. In addition, federal and state laws are also sometimes open to interpretation, and from time to time Polarity may find itself at a competitive disadvantage if Polarity's interpretation differs from that of our competitors.

***Polarity may have significant liability exposure and its insurance may not cover all potential claims.***

Polarity is exposed to liability and other claims in the event that its treatment is alleged to have caused harm. Polarity may not be able to obtain insurance for the potential liability on acceptable terms with adequate coverage or at reasonable costs. Any potential product liability claims could exceed the amount of Polarity's insurance coverage or may be excluded from coverage under the terms of the policy. Polarity's insurance may not be renewed at a cost and level of coverage comparable to that then in effect.

***If the NASDAQ Stock Market determines that the Merger with Polarity and the issuance of the Merger Consideration results in a change of control of the Company, the Company may be required to submit a new application under NASDAQ's original listing standards and if such application is not approved, the Company's common stock may be delisted from The NASDAQ Capital Market.***

In connection with the Merger, the Company will issue 7,050 shares of Series E Preferred Stock, which are convertible into an aggregate of 7,050,000 shares of the Company's common stock.  NASDAQ Rule 5110(a) provides that a Company must apply for initial listing in connection with a transaction whereby a company combines with a non-NASDAQ entity, resulting in a change of control of such company and potentially allowing the non-NASDAQ entity to effectively obtain NASDAQ listing.  In determining whether a change of control has occurred, NASDAQ considers all relevant factors including, changes in management, board of directors, voting power, ownership and financial structure of the Company.  If The NASDAQ Stock Market determines that a change of control does in fact result from the consummation of the Merger and the issuance of the Merger Consideration and an original listing application has not been approved prior to the consummation of Merger, the Company will be in violation of NASDAQ Rule 5110(a) and the Company's common stock could be delisted from The NASDAQ Capital Market.

### Item 5.02      Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.

The disclosure set forth above in Item 1.01 of this Current Report is incorporated by reference herein.

Effective December 1, 2016, Mr. Honig resigned from his position as Chief Executive Officer and Co-Chairman of the Board. Mr. Honig remains a director of the Board.

Effective December 1, 2016, Michael Brauser resigned from his position as Co-Chairman of the Board. Mr. Brauser remains a director of the Board.

Effective December 1, 2016, David Rector, a Class I director, Edward Karr, a Class I director and Andrew Kaplan, a Class II director resigned as members of the Board.

Each director resignation was not the result from any disagreement with the Company, the Company's management or the Board.

Exhibit 2.1

## AGREEMENT AND PLAN OF REORGANIZATION

This AGREEMENT AND PLAN OF REORGANIZATION (this " Agreement "), dated as of December 1, is by and among Majesco Entertainment Company ., a Delaware corporation (the " Parent "), Majesco Acquisition Corp., a Nevada corporation and wholly-owned subsidiary of Parent (" Merger Sub "), Polarityte, Inc., a Nevada Corporation (the " Company "), and Denver Lough, the owner of 100% of the issued and outstanding shares of capital stock of Company (the " Seller "). Each of the parties to this Agreement is individually referred to herein as a " Party " and collectively as the " Parties ."

## BACKGROUND AND RECITALS

The Company has Ten Thousand (10,000) shares of common stock, par value $0.001 per share (the " Company Shares ") outstanding, all of which are held by Seller. In connection with a recapitalization of Parent, and subject to the terms and conditions of this Agreement, including without limitation the closing of the Transactions (as defined below) and execution and delivery of the Constituent Agreements (as defined below), the parties hereto have agreed to effect the merger of Merger Sub with and into the Company (the " Merger ") pursuant to the terms of this Agreement.

As a result of the Merger, among other effects, the Company Shares will be canceled and exchanged for an aggregate of 7,050 shares of Series E Preferred Stock (the " Preferred E Stock ") pursuant to a Certificate of Designation substantially in the form of **Exhibit A** hereto, convertible into seven million fifty thousand (7,050,000 ) newly issued shares of common stock (the " Parent Stock "), par value $0.001 per share, of the Parent, (the " Parent Common Stock ") and the Company will be the entity surviving the Merger, with such Preferred E Stock having a right to vote on all matters put to vote of the shareholders of the Company on the basis of 2 votes for every 1 share of Common Stock into which such Preferred E Stock shall then be convertible, as adjusted for stock splits, recapitalization, stock dividends and similar events affecting the rights of stockholders equally.

The Merger is intended to constitute a reorganization within the meaning of the Internal Revenue Code of 1986, as amended (the " Code "), or such other tax free reorganization or restructuring provisions as may be available under the Code:

A. Seller is the owner of that certain invention described more fully below, and which relates to "Methods for Development and Use of Minimally Polarized Functions Cell Micro-Aggregate Units in Tissue Applications Using LGR4, LGR5 and LGR6 Expressing Epithelial Stem Cells", (a.k.a the Purchased Patents); and

B. Seller has assigned the application for the Purchased Patents, together with all related intellectual property, (a.k.a. the Purchased Intellectual Property) to the Company which is contemplated to be acquired by Parent by virtue of the transactions contemplated herein, upon satisfaction of the conditions to Closing set forth herein and in the Transaction Documents; and

C. Seller has agreed Company will merge with Merger Sub, with Company as the surviving entity; and

D. Seller and Company acknowledge that the transactions contemplated hereby are subject to various actions and events that are not under the control of Seller and Company: (i) the Parent obtaining approval from its stockholders by the affirmative approval of the Merger and issuance of the Preferred E Stock; (ii) acquisition of appropriate laboratory and other equipment for the business of the Company and the development of the technology; (iii) leasing of new commercial space for use in the business of the Company for testing, laboratory work, and other operational space; (iv) the negotiation and execution by the Parent of executive employment agreements with certain key employees of the Company; and (v) raising of additional capital to be used by the Company in the development of the Patent and the related intellectual property and for corporate and general working capital purposes.

E. Seller intends that the Merger of Company and Merger Sub, and the Closing of all related transactions, will proceed if and when the conditions described above and the other conditions of Closin g set forth herein, have been met.

SECTION 5.02 <u>Deliveries of the Parent</u>. At Closing, as a further condition thereof, concurrently with the Closing, the Parent shall deliver to Seller and the Company:

(a) a certificate to the Company and Seller from the Parent, signed by its Secretary or Assistant Secretary certifying that the attached copies of the Parent Charter, Parent Bylaws and resolutions of the Board of Directors of the Parent approving this Agreement and the transactions contemplated hereunder, including any required amendments to the Parent Charter, are all true, complete and correct and remain in full force and effect;

(b) a certificate executed by the Chief Executive Officer of the Parent, dated as of the Closing Date, certifying the representations and warranties set forth in Article IV are true, complete and accurate in all material respects

(c) a certificate representing the new shares of Preferred E Stock issued to the Seller;

(d) the Constituent Agreements, duly executed by the Parent (or such other parties as are parties thereto);

(e) Evidence of the resignations, to be effective on the eleventh day following the date on which Parent meets its information obligations under the Exchange Act (as applicable), of the following officers and directors of the Parent: Barry Honig, Michael Brauser, Edward Karr, Andrew Kaplan, Mohit Bhansali, David Rector and Michael Beeghley, _____;

(f) Evidence of termination of the employment agreements of Barry Honig;

(g) Evidence of the appointment of the following individuals as officers of the Parent, at such positions as are set forth below:

(i) Denver Lough- Chairman, President and Chief Executive Officer

(ii) John Stetson- Chief Financial Officer

(iii) Christine Hashimoto- General Counsel

(iv) Edward Swanson- Executive Vice President, Chief Operating Officer and Secretary

(v) Michael Neumeister- Chief Medical Officer

(vi) Jeff Dyer- Chief Strategist

(vii) Devin Miller- Director of Translational Medicine and Regulatory Strategy

(viii) Mary Dyer- Office Manager and Clinical Research Coordinator

(ix) Anthony Blum- Laboratory Manager

(x) Carrie Harrison- Clinical Research Coordinator

(h) Evidence of the election of the following individuals to the Parent's Board of Directors, which shall become effective on the eleventh day following the date on which Parent meets its information obligations under the Exchange Act: John Stetson, [TBD], Denver Lough, Edward Swanson, Jeff Dyer and Michael Neumeister.

# Exhibit 14

# RIOT BLOCKCHAIN, INC.

## FORM 8-K
(Current report filing)

## Filed 05/08/17 for the Period Ending 05/05/17

| | |
|---|---|
| Address | 202 6TH STREET, SUITE 401 |
| | CASTLE ROCK, CO, 80104 |
| Telephone | 303-794-2000 |
| CIK | 0001167419 |
| Symbol | RIOT |
| SIC Code | 2835 - In Vitro and In Vivo Diagnostic Substances |
| Industry | Financial & Commodity Market Operators |
| Sector | Financials |
| Fiscal Year | 12/31 |

http://pro.edgar-online.com
© Copyright 2019, EDGAR Online, a division of Donnelley Financial Solutions. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, a division of Donnelley Financial Solutions, Terms of Use.

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**WASHINGTON, DC 20549**

# FORM 8-K

### CURRENT REPORT

**PURSUANT TO SECTION 13 OR 15(d) OF THE
SECURITIES EXCHANGE ACT OF 1934**

**Date of Report (Date of earliest event reported) May 5, 2017**

# Bioptix, Inc.

**(Exact name of Registrant as specified in its charter)**

| Colorado | 001-33675 | 84-155337 |
|---|---|---|
| **(State or other jurisdiction of incorporation or organization)** | **(Commission File Number)** | **(I.R.S. Employer Identification No.)** |

| 834-F South Perry Street, Suite 443 Castle Rock, CO | 80104 |
|---|---|
| **(Address of principal executive offices)** | **(Zip Code)** |

**Registrant's telephone number, including area code:**       **(303) 545-5550**

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (see General Instruction A.2. below):

[_] Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

[_] Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

[_] Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

[_] Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Indicate by check mark whether the registrant is an emerging growth company as defined in as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b2 of the Securities Exchange Act of 1934 (§240.12b2 of this chapter).

Emerging growth company [_]

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. [_]

**Item 5.02    Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers; Compensatory Arrangements of Certain Officers.**

On May 5, 2017, Bioptix, Inc. (the "Company") appointed Andrew Kaplan as a director of the Company.  Mr. Kaplan is deemed an "independent" non-employee director as defined by NASDAQ Rule 5605(a)(2).  There are no family relationships between Mr. Kaplan and any of our other officers and directors. Mr. Kaplan shall receive the Company's equity award for new independent directors of 12,000 restricted stock units as compensation, which shall vest in 24 equal monthly installments over a two year period, beginning on the one month anniversary of the date of issuance. Mr. Kaplan was appointed to the Nominating and Governance Committee (Chairman), Audit Committee and Compensation Committee of the Board of Directors.

Set forth below is the biographical information of the newly appointed director, as required by Item 401 of Regulation S-K.

Mr. Kaplan age 50, is a founder of A to B Capital Management, and manages the A to B Capital Special Situations Fund, LP which was launched on January 1, 2009. The fund invests in the small cap sector through private, pre-public and publicly traded companies. In addition, he has been a Vice President of Barry Kaplan Associates for the past 22 years, a leading financial public relations firm for both public and private companies in the US, Canada and abroad. Prior to working at BKA, he had six years experience working at major investment banks involved in deal structure, mergers and acquisitions and trading. Mr. Kaplan is a member of the Board of Directors of Naked Brand Group (NAKD) and Coral Gold Resources, Ltd. (CLH.V) and a former member of the Board of PolarityTE, Inc. (COOL).  He holds a BSBA from the University of Hartford in Finance and Insurance.  Mr. Kaplan is qualified to serve as a director due to his extensive business and management expertise and his extensive knowledge of capital markets.

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

Bioptix, Inc.
(Registrant)

May 8, 2017                                          By:     /s/ Jeffrey G. McGonegal
                                                            Name:      Jeffrey G. McGonegal
                                                            Title:       Chief Financial Officer

# Exhibit 15

As filed with the Securities and Exchange Commission on February 7, 2018

Registration No. 333-222450

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
**Washington, DC 20549**

**Amendment No. 1 to**
**FORM S-3**
**REGISTRATION STATEMENT**
**UNDER**
**THE SECURITIES ACT OF 1933**

# RIOT BLOCKCHAIN, INC.

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Nevada** | **84-155337** |
| (State or other jurisdiction of | (I.R.S. Employer |
| incorporation or organization) | Identification No.) |

**202 6 th Street, Suite 401**
**Castle Rock, CO 80104**
**(303) 794-2000**
(Address, including zip code, and telephone number, including
area code, of registrant's principal executive offices)

**Jeffrey G. McGonegal**
**Chief Financial Officer**
**202 6 th Street, Suite 401**
**Castle Rock, CO 80104**
**(303) 794-2000**
(Name, address, including zip code, and telephone number, including area code, of agent for service)

*With copies to:*
**Harvey Kesner, Esq.**
**Sichenzia Ross Ference Kesner LLP**
**1185 Avenue of the Americas, 37th Floor**
**New York, New York 10036**
**(212) 930-9700**

**Approximate date of commencement of proposed sale to the public:** From time to time after the effective date of this registration statement.

If the only securities being registered on this Form are being offered pursuant to dividend or interest reinvestment plans, please check the following box. ☐

If any of the securities being registered on this Form are to be offered on a delayed or continuous basis pursuant to Rule 415 under the Securities Act of 1933, other than securities offered only in connection with dividend or interest reinvestment plans, check the following box. ☒

If this Form is filed to register additional securities for an offering pursuant to Rule 462(b) under the Securities Act, please check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

If this Form is a post-effective amendment filed pursuant to Rule 462(c) under the Securities Act, check the following box and list the Securities Act registration statement number of the earlier effective registration statement for the same offering. ☐

**TABLE OF CONTENTS**

|                                             | Page |
|---------------------------------------------|------|
| OUR BUSINESS                                | 1    |
| RISK FACTORS                                | 5    |
| FORWARD-LOOKING STATEMENTS                  | 5    |
| USE OF PROCEEDS                             | 6    |
| SELLING STOCKHOLDERS                        | 6    |
| PLAN OF DISTRIBUTION                        | 10   |
| DESCRIPTION OF CAPITAL STOCK                | 11   |
| LEGAL MATTERS                               | 12   |
| EXPERTS                                     | 12   |
| WHERE YOU CAN FIND MORE INFORMATION         | 13   |
| INCORPORATION OF DOCUMENTS BY REFERENCE     | 13   |

**Company References**

In this prospectus, "Riot Blockchain," "the Company," "we," "us," and "our" refer to Riot Blockchain, Inc. (f/k/a: Bioptix, Inc.), a Nevada corporation, unless the context otherwise requires.

**OUR BUSINESS**

**Blockchain Strategic Investments**

In September 2017, pursuant to a subscription agreement, we purchased for $3,000,000 in cash, an approximate 10.9% ownership in goNumerical Ltd., a leading Canadian Blockchain company known as Coinsquare Ltd., one of Canada's leading exchanges for trading digital currencies. In connection with the foregoing transaction, we also received warrants to purchase shares of Coinsquare's Common Stock, which would result in an additional 3.8% net ownership interest, if exercised in full.

On October 20, 2017, we acquired approximately 52% of Tess Inc., a private Ontario company which is developing blockchain solutions for telecommunications companies, in consideration for our payment of $320,000 and 75,000 shares of our Common Stock. As a result, Tess, Inc. became our majority owned subsidiary.

On November 1, 2017, we acquired 100% of Kairos Global Technology, Inc. ("Kairos") in consideration for the issuance of 1,750,001 shares of our Series B Convertible Preferred Stock, which are convertible into an aggregate of 1,750,001 shares of our Common Stock, which we issued to the shareholders of Kairos. Kairos is the owner of certain new computer equipment and other assets used for the mining of cryptocurrency, specifically servers consisting of 700 AntMiner S9s and 500 AntMiner L3s, all manufactured by Bitmain. Certain of the shareholders of Kairos also received a royalty to be paid from cash flow generated from operations, which shall entitle such shareholders to receive 40% of the gross profits generated on a monthly basis until they have received a total of $1,000,000, at which point the royalty is extinguished.

We are continuing our strategy of pursuing opportunistic investments in new and emerging technologies. In November 2017, we made a minority convertible note investment totally $200,000, in Verady, Inc., which recently launched VeraNet, a decentralized network of financial reporting and accounting tools targeted at the cryptocurrency community .

# Exhibit 16

**Cost of Revenues**

Cost of revenue for the year ended December 31, 2018 of approximately $5,820,000 consisted primarily of direct production costs of the mining operations, including rent and utilities, but excluding depreciation and amortization which are separately stated. The cost of revenue for the year ended December 31, 2017 was approximately $25,000.

**Selling, General and Administrative Expenses**

Selling, general and administrative expenses for the year ended December 31, 2018 totaled approximately $20,857,000, which is approximately $13,543,000, or a 185% increase, as compared to $7,314,000 in the 2017 period. Stock compensation increased by approximately $1,697,000 for the year ended December 31, 2018 as compared to the 2017 period relating to additional stock awards in 2018 primarily related to new hires. Consulting fees increased by approximately $4,096,000 for services related to our digital currency miners. Investor, public relations and public company expenses increased by approximately $760,000 related to expanded public company activities in the 2018 period. Legal fees increased by approximately $2,962,000 due to legal matters associated with the SEC regulatory matters, litigation and increased general level of corporate activities in the 2018 period. Audit and related professional fees increased by approximately $56,000 due primarily increased level of operations and acquisitions and other reporting matters. Compensation related expenses increased by approximately $1,271,000 due primarily to increased payroll related to the Company's additional hiring activities in late 2017 and early 2018 in addition to compensation expenses for Tess being for a full year in 2018 as compared to a partial year in 2017. Sales and marketing expenses incurred by Tess increased by approximately $578,000 for the year ended December 31, 2018 as compared to a partial year in 2017. General and administrative operating expenses increased by approximately $1,297,000 for the year ended December 31, 2018, due to increases of approximately $826,000 in insurance expenses plus general overhead expenses relating to the Company's acquisitions and related activities in late 2017 and early 2018.

**Depreciation and Amortization**

Depreciation and amortization expenses in the year ended December 31, 2018 totaled approximately $5,267,000, which is an approximately $4,376,000, or 83%, increase as compared to $891,000 during the year ended December 31, 2017. The increase was due to the depreciation associated with the assets acquired after September 30, 2017, for the digital currency mining operations.

**Asset Impairment Charges**

Asset impairment charges of $35,266,000 were recognized during the year ended December 31, 2018. The impairment charges consisted of approximately $29,238,000 related to impairments of our digital currency mining equipment, $3,501,000 related to the impairment of our digital currencies accounted for as intangible assets, $2,140,000 consisting of the impairment charges of $799,000 of goodwill and $1,341,000 for the impairment of intangible rights acquired of associated with the Tess Investment, and impairment charges of $387,000 of goodwill related to our original acquisition of the animal health legacy business.   Asset impairment charges of $5,218,000 were recognized for the year ended December 31, 2017, related to impairments of our digital currency miners.

**Other Income and Expense**

Interest expense for the year ended December 31, 2018 totaled approximately $123,000, compared to $4,807,000 for the year ended December 31, 2017. In 2017 interest expense included the expenses recognized based on accretion of values allocated to the value of the warrants and the beneficial conversion feature computed upon the release of the securities from escrow in 2017. For the year ended December 31, 2018, the Company recorded a loss of $266,000 related to the amendment of the BMSS deferred purchase price which was recorded as a loss on extinguishment of debt.

For the year ended December 31, 2018, the Company recorded a gain on sale of digital currencies of approximately $26,000.

For the year ended December 31, 2018, the Company recorded other expenses of approximately $1,350,000, which is primarily related to the penalty accrual of $1,358,000 for our registration rights agreement associated with our private placement on December 19, 2017. The agreement provided that the Company register our securities by the effectiveness date of March 5, 2018. The registration rights were not registered by the effectiveness date and the Company recognized a contingency.

For the year ended December 31, 2017, the Company recognized an inducement expense of $174,000, recorded as the estimated inducement value of warrants exercised at a reduced exercise price for a temporary period.

For the year ended December 31, 2018, the Company recorded investment income of approximately $70,000 compared to investment income of $99,000 in the 2017 period, generally due to a lower level of average outstanding interest-bearing investments.

**Income Taxes**

For the years ended December 31, 2018 and 2017, the Company's income tax benefit totaled $699,000 and $1,609,000, respectively, and resulted from the difference in book and tax basis of the Kairos mining equipment and its deprecation and impairment expense for the years ended December 31, 2018 and 2017.

36

**LIQUIDITY AND CAPITAL RESOURCES**

At December 31, 2018, we had negative working capital of approximately $4,348,000, which included cash and cash equivalents of $225,000.  We reported a net loss of $60,213,000, consisting of a net loss from continuing operations of $60,309,000 and net income from discontinued operations of approximately $96,000, during the year ended December 31, 2018.  The net loss from continuing operations included $45,041,000 in non-cash items consisting of an impairment charges of $35,266,000, stock-based compensation totaling $4,660,000, common stock issued for services totaling $403,000, stock issued for the extinguishment of the BMSS payable of $265,000, and depreciation and amortization totaling $5,267,000, net of $699,000 of deferred income tax benefit and other noncash items totaling $124,000.

Effective November 29, 2018, Kairos entered into the second amendment to the lease agreement for the approximate 107,600 square foot warehouse located in Oklahoma City, Oklahoma, including improvements thereon. The amendment extends the lease term to August 2019, provides renewal options for two three-month periods, revises the monthly rent to a base rent, currently $190,000 per month and includes an electrical cost based upon actual usage.

Commencing February 2018 certain class action and derivative suits have been filed against the Company and certain officers and directors. The costs to respond to and defend these actions has, and may continue to have significant impact the Company's resources and management's time.

On March 26, 2018, we acquired 92.5% of Logical Brokerage Corp., a futures introducing broker headquartered in Miami, Florida, registered with the Commodity Futures Trading Commission ("CFTC"), and a member of the National Futures Association ("NFA"). We are investigating launching a digital currency exchange within the United States.  To this end, we formed a wholly-owned subsidiary, RiotX Holdings Inc ("RiotX") has obtained a CFTC license, a Money Service Business license with FinCEN, and a Money Transmitter License from the state of Florida. RiotX is pursuing additional Money Transmitter licenses from other states within the United States. We are also vetting and negotiating with several third parties as service providers to the proposed exchange.

The time and costs to advance development of the RiotX exchange are expected to grow as expansion into additional states is pursued.  Such costs include expenses for additional development, current and additional service providers, insurance and bonding requirements, sales and marketing activities to support the launch and general overhead and IT costs.   Such costs could be significant and there is no assurance that the exchange will be able to generate significant revenues needed to obtain profitability.

We expect to continue to incur losses from operations for the near-term and these losses could be significant as we incur costs and expenses associated with recent and potential future acquisitions and development of the RiotX exchange platform, as well as public company, legal and administrative related expenses being incurred. We are closely monitoring our cash balances, cash needs and expense levels.

On January 28, 2019, we completed a private placement issuing a series of Senior Secured Convertible Promissory Notes (the "Notes"), to investors for a net cash investment amount of $3,000,000. The Notes are convertible into shares of the Company's common stock at any time after the issuance date, subject to terms and conditions as defined in the agreements. The Notes mature twelve months from date of issuance and accrue interest at a rate of 8% per annum (guaranteed interest).

We believe that in order for us to meet our obligations arising from normal business operations for the next twelve months, we require additional capital either in the form of equity or debt.  Without additional capital, our ability to continue to operate will be limited. If we our unable to obtain adequate capital, we could be forced to cease or reduce our operations. We are currently pursuing capital transactions in the form of debt and equity, however, we cannot provide any assurance that we will be successful in our plans. These financial statements do not include any adjustments to the recoverability and classification of recorded assets amounts and classification of liabilities that might be necessary should we not be able to continue as a going concern.

Funding our operations on a go-forward basis will rely significantly on our ability to continue to mine digital currency and the spot or market price of the digital currency we mine.  We expect to generate ongoing revenues from the production of digital currencies, primarily bitcoin currency rewards, for example, in our mining facilities and our ability to liquidate bitcoin currency rewards at future values will be evaluated from time to time to generate cash for operations.  Generating bitcoin currency rewards, for example, which exceed our production and overhead costs will determine our ability to report profit margins related to such mining operations, although accounting for our reported profitability is significantly complex. Furthermore, regardless of our ability to generate revenue from the sale of our digital currency assets, we will need to raise additional capital in the form of equity or debt to fund our operations and pursue our business strategy.

The ability to raise funds as equity, debt or conversion of digital currency to maintain our operations is subject to many risks and uncertainties and, even if we were successful, future equity issuances would result in dilution to our existing stockholders and any future debt or debt securities may contain covenants that limit our operations or ability to enter into certain transactions. Our ability to realize revenue through bitcoin production and successfully convert bitcoin into cash or fund overhead with bitcoin is subject to a number of risks, including regulatory, financial and business risks, many of which are beyond our control. Additionally, the value of bitcoin currency rewards has been extremely volatile recently and such volatility has recently been lower and future prices cannot be predicted.

If we are unable to generate sufficient revenue from our bitcoin production when needed or secure additional sources of funding, it may be necessary to significantly reduce our current rate of spending or explore other strategic alternatives.

During 2018, the Company was named a defendant in several lawsuits seeking class action status, and other lawsuits as more fully described in Part II – Item 1. Legal Proceedings, of this report. In addition, the Company has received comments, inquiries and subpoenas from regulatory bodies, including NASDAQ and the SEC, which are costly and time consuming to respond to. While the Company maintains policies of insurance, such policies may not cover all of the costs or expenses associated with responding to such matters or any liability or settlement associated with any lawsuits and are subject to significant deductible or retention amounts.

**Riot Blockchain, Inc. and Subsidiaries**
**Consolidated Balance Sheets**

| | December 31, 2018 | December 31, 2017 |
|---|---|---|
| **ASSETS** | | |
| Current assets | | |
| Cash and cash equivalents | $ 225,390 | $ 41,651,965 |
| Prepaid expenses and other current assets | 1,378,534 | 538,812 |
| Digital currencies | 706,625 | 200,164 |
| Current assets of discontinued operations | - | 44 |
| Total current assets | 2,310,549 | 42,390,985 |
| Property and equipment, net | 26,269 | 4,294,166 |
| Intangible rights acquired | 700,167 | 754,244 |
| Long-term investments | 9,412,726 | 3,000,000 |
| Security deposits | 703,275 | - |
| Other long-term assets, net: | | |
| Patents, net | 507,342 | 509,649 |
| Goodwill | - | 1,186,496 |
| Convertible note | 200,000 | 200,000 |
| **Total assets** | **$ 13,860,328** | **$ 52,335,540** |
| | | |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities | | |
| Accounts payable | $ 3,829,315 | $ 410,029 |
| Accrued expenses | 1,516,252 | 216,883 |
| Deferred purchase price - BMSS | 1,200,000 | |
| Notes and other obligations, current | - | 135,574 |
| Deferred revenue, current portion | 96,698 | 96,698 |
| Current liabilities of discontinued operations | 16,340 | 181,340 |
| Total current liabilities | 6,658,605 | 1,040,524 |
| | | |
| Demand note, Tess subsidiary | 1,696,083 | - |
| Deferred revenue, less current portion | 871,919 | 968,617 |
| Deferred income tax liability | 142,709 | 699,000 |
| **Total liabilities** | **9,369,316** | **2,708,141** |
| | | |
| **Commitments and contingencies - Note 15** | | |
| | | |
| **Stockholders' equity** | | |
| Preferred stock, no par value, 15,000,000 share authorized: | | |
| 2% Series A Convertible stock, 2,000,000 shares authorized; no shares issued and outstanding as of December 31, 2018 and 2017, respectively | - | - |
| 0% Series B Convertible stock, 1,750,001 shares authorized; 13,000 and 1,458,001 shares issued and outstanding as of December 31, 2018 and 2017, respectively; liquidation preference over common stock, equal to carrying value | 69,059 | 7,745,266 |
| Common stock, no par value; 170,000,000 shares authorized; 14,519,058 and 11,622,112 shares issued and outstanding as of December 31, 2018 and 2017, respectively | 202,917,443 | 180,387,518 |
| Accumulated deficit | (197,199,197) | (139,263,480) |
| Total Riot Blockchain stockholders' equity | 5,787,305 | 48,869,304 |
| Non-controlling interest | (1,296,293) | 758,095 |
| Total stockholders' equity | 4,491,012 | 49,627,399 |
| **Total liabilities and stockholders' equity** | **$ 13,860,328** | **$ 52,335,540** |

See Accompanying Notes to Consolidated Financial Statements.

**Riot Blockchain, Inc. and Subsidiaries**
**Consolidated Statements of Operations**

| | Years Ended December 31, | |
| --- | --- | --- |
| | **2018** | **2017** |
| Revenue: | | |
| Revenue - digital currency mining | $ 7,748,634 | $ 172,959 |
| License fees | 96,698 | 96,698 |
| Total Revenue | 7,845,332 | 269,657 |
| | | |
| Costs and expenses: | | |
| Cost of revenues  (exclusive of depreciation and amortization shown below) | 5,819,925 | 25,186 |
| Selling, general and administrative | 20,857,078 | 7,313,626 |
| Depreciation and amortization | 5,267,372 | 890,889 |
| Impairment of property and equipment | 29,237,719 | 5,218,004 |
| Impairment of goodwill | 1,186,496 | - |
| Impairment of intangible rights acquired | 1,341,013 | - |
| Impairment of digital currencies | 3,501,250 | (27,205) |
| Loss on sale of property and equipment | - | 3,639 |
| Total costs and expenses | 67,210,853 | 13,424,139 |
| Operating loss from continuing operations | (59,365,521) | (13,154,482) |
| | | |
| Other income (expense) | | |
| Interest expense | (122,973) | (4,806,637) |
| Realized gain on sale of digital currencies | 26,443 | - |
| Non-compliance penalty for SEC registration requirement | (1,350,390) | (1,237) |
| Warrant inducement expense | - | (173,867) |
| Loss on extinguishment of BMSS payable | (265,500) | - |
| Investment income | 70,281 | 99,255 |
| Total other expense | (1,642,139) | (4,882,486) |
| | | |
| Loss from continuing operations before income taxes | (61,007,660) | (18,036,968) |
| | | |
| Deferred income tax benefit | 699,000 | 1,609,000 |
| | | |
| Loss from continuing operations | (60,308,660) | (16,427,968) |
| | | |
| Discontinued operations | | |
| Income (loss) from operations | 96,132 | (923,645) |
| Escrow forfeiture gain | - | 134,812 |
| Impairment loss | - | (2,754,131) |
| Income (loss) from discontinued operations | 96,132 | (3,542,964) |
| | | |
| Net loss | (60,212,528) | (19,970,932) |
| | | |
| Net loss attributable to non-controlling interest | 2,204,755 | 125,059 |
| | | |
| Net loss attributable to Riot Blockchain | $ (58,007,773) | $ (19,845,873) |
| | | |
| Basic and diluted net loss per share: | | |
| Continuing operations attributable to Riot Blockchain | $ (4.34) | $ (2.71) |
| Discontinued operations attributable to Riot Blockchain | 0.01 | (0.59) |
| Net loss per share | $ (4.33) | $ (3.30) |
| | | |
| Basic and diluted weighted average number of shares outstanding | 13,403,846 | 6,019,817 |

See Accompanying Notes to Consolidated Financial Statements.

**Riot Blockchain, Inc. and Subsidiaries**
**Consolidated Statement of Stockholders' Equity**
**Years Ended December 31, 2018 and 2017**

| | Preferred Stock | | Common Stock | | Accumulated deficit | Total Riot Blockchain stockholders' equity | Non-controlling interest | Total stockholders' equity |
|---|---|---|---|---|---|---|---|---|
| | Shares | Amount | Shares | Amount | | | | |
| **Balance as of January 1, 2017** | - | $ - | 4,503,971 | $124,775,635 | $(109,855,276) | $ 14,920,359 | $ - | $ 14,920,359 |
| Private placement of common stock | - | - | 900,000 | 1,913,509 | - | 1,913,509 | - | 1,913,509 |
| Common shares in escrow forfeited and retired | - | - | (32,801) | (134,812) | - | (134,812) | - | (134,812) |
| Equity rights redemptions | - | - | - | (392,007) | - | (392,007) | | (392,007) |
| Discount on convertible debt arising from values of: | | | | | | | | |
| Warrants | - | - | - | 2,325,151 | - | 2,325,151 | - | 2,325,151 |
| Beneficial conversion feature | - | - | - | 2,424,849 | - | 2,424,849 | - | 2,424,849 |
| Preferred stock issued upon conversion of notes payable | 19,194.72 | 4,798,671 | - | - | - | 4,798,671 | | 4,798,671 |
| Common stock issued for acquisition | - | - | 75,000 | 636,750 | - | 636,750 | - | 636,750 |
| Cash dividend paid | - | - | - | - | (9,562,331) | (9,562,331) | - | (9,562,331) |
| Preferred stock issued for acquisition | 1,750,001 | 9,296,443 | - | - | - | 9,296,443 | | 9,296,443 |
| Exercise of common stock purchase warrants | - | - | 620,000 | 1,860,000 | - | 1,860,000 | - | 1,860,000 |
| Value of inducement upon temporary price reduction of common stock purchase warrants | - | - | - | 173,867 | - | 173,867 | - | 173,867 |
| Cashless exercise of common stock purchase warrants | - | - | 1,335,408 | - | - | - | - | - |
| Preferred stock converted to common stock | (311,194.72) | (6,349,848) | 2,211,472 | 6,349,848 | - | - | - | - |
| Exercise of stock options | - | - | 50,800 | 149,136 | - | 149,136 | - | 149,136 |
| Private placement of common stock | - | - | 1,646,113 | 36,537,543 | - | 36,537,543 | - | 36,537,543 |
| Common stock issued for services | - | - | 138,067 | 1,178,237 | - | 1,178,237 | - | 1,178,237 |
| Stock-based compensation | - | - | 174,082 | 2,589,812 | - | 2,589,812 | - | 2,589,812 |
| Non-controlling interest - Tess | - | - | - | - | - | - | 883,154 | 883,154 |
| Net loss attributable to non-controlling interest | - | - | - | - | - | - | (125,059) | (125,059) |
| Net loss | - | - | - | - | (19,845,873) | (19,845,873) | - | (19,845,873) |
| **Balance as of December 31, 2017** | 1,458,001.00 | $ 7,745,266 | 11,622,112 | $180,387,518 | $(139,263,480) | $ 48,869,304 | $ 758,095 | $ 49,627,399 |
| Common stock issued for asset purchase - Prive | - | - | 800,000 | 8,480,000 | - | 8,480,000 | | 8,480,000 |
| Common stock escrow shares issued for asset purchase - Prive | - | - | 200,000 | - | - | - | - | - |
| Preferred stock converted to common stock | (1,353,505) | (7,190,157) | 1,353,505 | 7,190,157 | - | - | - | - |
| Preferred stock canceled | (91,496) | (486,050) | - | 486,050 | - | - | - | - |
| Exercise of warrants | - | - | 100,000 | 350,000 | - | 350,000 | - | 350,000 |
| Stock-based compensation | - | - | - | 4,660,406 | - | 4,660,406 | - | 4,660,406 |
| Exercise of stock options | - | - | 19,533 | 78,522 | - | 78,522 | | 78,522 |
| Common stock issued for services | - | - | 43,277 | 402,941 | - | 402,941 | - | 402,941 |
| Refund of escrow dividend | - | - | - | - | 72,056 | 72,056 | - | 72,056 |
| Sale of Riot shares held by 1172767 B.C. Ltd. | - | - | - | 505,729 | - | 505,729 | - | 505,729 |
| Stock issued for the extinguishment of the BMSS payable | - | - | 50,000 | 265,500 | - | 265,500 | | 265,500 |
| Cashless exercise of stock purchase warrants | - | - | 3,215 | - | - | - | - | - |
| Delivery of common stock underlying restricted stock units | - | - | 327,416 | | | | | |
| Non-controlling interest - Logical Brokerage | - | - | - | - | - | - | 40,541 | 40,541 |
| Net loss attributable to non-controlling interest | - | - | - | - | - | - | (2,204,755) | (2,204,755) |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Sale of common shares by 1172767 B.C. Ltd. | - | - | - | 110,620 | - | 110,620 | 109,826 | 220,446 |
| Net loss | - | - | - | - | (58,007,773) | (58,007,773) | - | (58,007,773) |
| **Balance as of December 31, 2018** | **13,000** | **$   69,059** | **14,519,058** | **$ 202,917,443** | **$ (197,199,197)** | **$   5,787,305** | **$   (1,296,293)** | **$   4,491,012** |

See Accompanying Notes to Consolidated Financial Statements

F-5

**Riot Blockchain, Inc. and Subsidiaries**
**Consolidated Statements of Cash Flows**

| | Years Ended December 31, | |
|---|---|---|
| | **2018** | **2017** |
| **Cash flows from operating activities** | | |
| Net loss | $ (60,212,528) | $ (19,970,932) |
| Income (loss) from discontinued operations | 96,132 | (3,542,964) |
| Loss from continuing operations | (60,308,660) | (16,427,968) |
| Adjustments to reconcile net loss from continuing operations to net cash used in operating activities of continuing operations: | | |
| Stock-based compensation | 4,660,406 | 2,589,812 |
| Depreciation and amortization | 5,267,372 | 890,889 |
| Deferred income tax benefit | (699,000) | (1,609,000) |
| Amortization of license fee revenue | (96,698) | (96,698) |
| Amortization of debt discount | - | 4,750,000 |
| Common stock issued for services | 402,941 | 1,178,237 |
| Loss on extinguishment of BMSS payable | 265,500 | - |
| Inducement expense on warrant exercises | - | 173,867 |
| Impairment of property and equipment | 29,237,719 | 5,218,004 |
| Impairment of digital currencies | 3,501,250 | - |
| Goodwill impairment charge | 1,186,496 | - |
| Acquired rights impairment charge | 1,341,013 | - |
| Realized gain on sale of digital currencies | (26,443) | - |
| Loss on sale of property and equipment | - | 3,639 |
| Changes in assets and liabilities: | | |
| Prepaid expenses and other current assets | (839,722) | (41,386) |
| Digital currencies - mining, net of mining pool operating fees | (7,593,661) | (200,164) |
| Accounts payable | 3,419,286 | 90,022 |
| Accrued expenses | 1,299,369 | (40,641) |
| Net cash used in operating activities of continuing operations | (18,982,832) | (3,521,387) |
| Net cash used in operating activities of discontinued operations | (68,824) | (918,663) |
| Net cash used in operating activities | (19,051,656) | (4,440,050) |
| | | |
| Cash flows from investing activities - continuing operations: | | |
| Proceeds from sale of digital currencies | 9,237,225 | - |
| Purchase of digital currencies | (5,624,832) | - |
| Purchases of property and equipment | (20,195,290) | - |
| Purchases of other investments | (6,412,726) | (3,200,000) |
| Proceeds from sale of short-term investments | - | 7,506,761 |
| Net cash acquired from purchase of subsidiaries | - | 1,329,324 |
| Security deposits | (703,275) | - |
| Purchases of patent and trademark application costs | (59,597) | (61,094) |
| Investment in Logical Brokerage, net of cash acquired | (516,917) | - |
| Purchase of developed technology by 1172767 B.C. Ltd. | (586,769) | - |
| Net cash (used in) provided by investing activities of continuing operations | (24,862,181) | 5,574,991 |
| Net cash provided by investing activities of discontinued operations | - | 4,004 |
| Net cash (used in ) provided by investing activities | (24,862,181) | 5,578,995 |
| | | |
| Cash flows from financing activities - continuing operations: | | |
| Proceeds from issuance of convertible notes | - | 4,750,000 |
| Proceeds from issuance of common stock, net of $500,000 in offering expenses | - | 38,451,052 |
| Redemption of equity rights | - | (392,007) |
| Special dividend payment | - | (9,562,331) |
| Proceeds from notes payable | 1,696,083 | - |
| Payments on BMSS purchase agreement | (300,000) | - |
| Repayment of notes payable and other obligations | (135,574) | (272,678) |
| Proceeds from exercise of warrants | 350,000 | 1,860,000 |
| Proceeds from exercise of stock options | 78,522 | 149,136 |
| Proceeds from sale of Riot shares held by 1172767 B.C. Ltd. | 505,729 | - |
| Proceeds from common shares sold by 1172767 B.C. Ltd., net | 220,446 | - |
| Refund of escrow dividend | 72,056 | - |
| Net cash provided by financing activities of continuing operations | 2,487,262 | 34,983,172 |

| | | | | |
|---|---|---|---|---|
| Net (decrease) increase in cash and cash equivalents | | (41,426,575) | | 36,122,117 |
| Cash and cash equivalents at beginning of year | | 41,651,965 | | 5,529,848 |
| Cash and cash equivalents at end of year | $ | 225,390 | $ | 41,651,965 |
| | | | | |
| Supplemental disclosure of cash flow information: | | | | |
| Cash paid for interest | $ | 6,585 | $ | 5,605 |
| Cash paid for taxes | $ | - | $ | - |
| | | | | |
| Supplemental disclosure of noncash investing and financing activities: | | | | |
| Value of shares issued for Prive asset acquisition | $ | 8,480,000 | $ | - |
| Value of preferred shares issued for Kairos asset acquisition | $ | - | $ | 9,296,443 |
| Value of common shares issued for Tess asset acquisition | $ | - | $ | 636,750 |
| Conversion of preferred stock to common stock | $ | 7,190,157 | $ | 6,349,848 |
| Deferred purchase price for BMSS | $ | 1,500,000 | $ | - |
| Preferred stock canceled | $ | 486,050 | $ | - |
| Deferred tax liability for Logical Brokerage | $ | 142,709 | $ | - |
| Acquisition of assets for installment obligations | $ | - | $ | 268,640 |

See Accompanying Notes to Consolidated Financial Statements

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**FORM 10-K**

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2018**
or
☐   **TRANSITION REPORT UNDER SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from            to**

**Commission file number** 001-33675

**RIOT BLOCKCHAIN, INC.**

(Exact name of registrant as specified in its charter)

| **Nevada** | **84-1553387** |
|---|---|
| (State or other jurisdiction of Incorporation or organization) | (I.R.S. Employer Identification No.) |

| **202 6 th Street, Suite 401, Castle Rock, CO** | **80104** |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code **(303) 794-2000**

Securities registered under Section 12(b) of the Exchange Act:

| **Common Stock no par value per share** | **The NASDAQ Stock Market LLC** |
|---|---|
| (Title of class) | (Name of each exchange on which registered) |

Securities registered pursuant to Section 12(g) of the Exchange Act: None.

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act Yes ☐ No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. Yes ☐ No ☒
Note - Checking the box above will not relieve any registrant required to file reports pursuant to Section 13 or 15(d) of the Exchange Act from their obligations under those Sections.

Indicate by check mark whether the registrant (1) filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☒ No ☐

Indicate by check mark if disclosure of delinquent filers in response to Item 405 of Regulation S-K (§229.405 of this chapter) is not contained herein, and will not be contained, to the best registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendments to this Form 10-K. ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer ☐ | Accelerated filer ☒ |
|---|---|
| Non-accelerated filer ☐ | Smaller reporting company ☒ |
| Emerging growth company ☐ | |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act). Yes ☐   No ☒

The aggregate market value of the common stock, no par value, held by non-affiliates of the registrant, based on the closing sale price of registrant's common stock as quoted on the Nasdaq Stock Market LLC on June 29, 2018 (the last business day of the registrant's most recently completed second fiscal quarter), was approximately $85.0 million. Accordingly, the registrant qualifies under the SEC's revised rules as a "smaller reporting company."

As of April 1, 2019, the registrant had 14,762,809 shares of common stock outstanding.

## DOCUMENTS INCORPORATED BY REFERENCE

**Portions of Riot Blockchain, Inc.'s definitive Proxy Statement to be delivered to stockholders in connection with its Annual Stockholders' Meeting to be held in 2019 are incorporated by reference into Part III of this Form 10-K.**

# Exhibit 17



# Exhibit 18

February 16, 2018



# Riot Blockchain Provides Shareholder Update

*Riot Blockchain Responds to CNBC*

CASTLE ROCK, Colo., Feb. 16, 2018 /PRNewswire/ -- Riot Blockchain, Inc. (Nasdaq: RIOT) (the "Company") provides the following update to shareholders from Chairman and Chief Executive Officer John O'Rourke about its progress and accomplishments to date.

Dear Shareholders,

Thank you for your support in our vision to build a leading blockchain technology company. I believe we are well positioned at the forefront of this industry with many exciting opportunities on the horizon.

Today, CNBC released a negative one-sided piece on companies that seek to jump on the blockchain bandwagon by changing their name and profiled our company. Had the journalist used even a modest amount of professional diligence, CNBC would have also reported on the numerous achievements we have made in becoming an early entrant in the support of blockchain and cryptocurrency technologies. To my knowledge, we were also the first Nasdaq listed company to have blockchain in its name and had no idea what the market reaction would be when the transition was made.

Not to be deterred, I wish to provide an update of where Riot Blockchain stands today and respond to some of their attacks. We have made significant inroads in building a diversified portfolio of investments and to begin securing digital assets.

Riot Blockchain initially entered the blockchain sector with an investment in goNumerical ltd (dba "Coinsquare"). Coinsquare has grown into the leading digital currency exchange in Canada and recently raised an institutional round of financing at a CAD $430 million valuation, led by a global asset manager with over a trillion dollars in assets. This valuation is over 15x higher than the valuation at which Riot first invested. Riot currently owns approximately 12.5% of Coinsquare, a stake now valued over CAD $50 million.

**<u>Several other recent business highlights:</u>**

- Riot closed on a $37 million financing at $22.50 per share in restricted stock with several billion-dollar institutions as investors. Canaccord Genuity acted as the financial advisor on the financing.

- Riot now owns a total of 8,000 ASIC cryptocurrency mining machines. This consists of 7,500 Antminer S9 Bitcoin miners and 500 L3+s, all manufactured by Bitmain.

- When deployed in full, Riot's bitcoin mining operation's expected hashing power is over 110 Petahash of SHA 256 Bitcoin mining computing power and 252 Gigahash of Scrypt for Litecoin mining based just on current equipment that Riot owns. Additional expansion opportunities based on power capacity are available.

- Riot has entered a Letter of Intent to acquire a CFTC licensed registrant. Riot intends to pursue launching a digital currency exchange and futures brokerage in the United States.

- Strategic investment in Verady. Bo Shen co-invested in Verady as well and joined the board of Verady. Bo Shen is a well-regarded investor in the space and a general partner of Fenbushi Capital http://fenbushi.vc

- Successfully registered in and acquired 500 bitcoins in the U.S. Marshals Service bitcoin auction.

- Acquired a majority interest in Tess, which is developing a blockchain technology solution for the telecom industry. Tess has since entered a definitive agreement for a merger with a Canadian public company.

- Significantly enhanced the management, operational, and advisory team with the appointment of several key personnel with experience at market leaders such as IBM, Bitfury, Facebook, INVESCO, Coinsquare, Ocular, Safenet, Hyperblock, Globalive, and Dunbar Security Solutions.

When I joined the board of Bioptix in January 2017 the Company had been reeling from a failed FDA approval and an acquisition of a new venture bleeding cash. I feel obligated to state unequivocally that pivoting away from these legacy ventures to Riot Blockchain was the right course. The company announced on January 20, 2017 the decision to streamline the workforce in an effort to cut costs, while reviewing possible strategic alternatives for the business.

We also discussed exploring strategic alternatives with the ultimate goal of maximizing shareholder value and evaluated other options. It is not uncommon for businesses to pivot and change their business strategy. Amazon started off selling books.

The company was able to successfully streamline its workforce and significantly reduce its burn by July 2017. In the interim, the board and management continued reviewing various different potential transactions that we thought could be accretive. In August 2017, we were presented with the opportunity to invest in Coinsquare.

I had been evaluating many different investment opportunities in the blockchain sector. I have been personally invested in bitcoin since 2012 and I have personally invested in several blockchain companies since then. I am a believer that blockchain technology will be one of the most disruptive technologies of my lifetime and will do for the flow of transactions what the internet did for the flow of information.

It is worth noting that CNBC recently highlighted an infamous short seller complaining he could not borrow shares and adequately short Riot, which seems to be an impetus to distort the real facts about our company.

Other comments to address media concerns:

1. We adjourned our shareholder's meeting which is not uncommon when unable to garner a quorum. With the fast pace at which everything has been moving operationally, we did not have requisite time to obtain this quorum and we have other corporate action items that may require shareholder approval as well. It did not make sense to go through the time and expense of potentially having two shareholder meetings within a matter of months. As a result, we adjourned the meeting which will be reconvened in the second quarter.

2. At the end of 2017, I personally sold some stock that I held in our company. I sold less than 10% of my overall position and did so to cover tax obligations. I could have sold more stock in the same timeframe if I so desired. I truly believe in what we are building and the shareholder value it will create

3. Barry Honig has been a supportive shareholder of Riot Blockchain. Prior to my involvement with Bioptix, Mr. Honig filed a lawsuit against the company and its management as a shareholder because he believed the old management and board was not properly deploying shareholders' cash. This led to the eventual re-examination by the board and management of the failing business, which ultimately led to the board's decision that it was in shareholders' best interest to evaluate other opportunities with its cash on hand.

4. We have assembled a management team, board, and advisors with exceptional industry credentials that have helped guide us and continue to create opportunities with meaningful technology and initiatives. Other companies may have tried to hop on the "cryptocurrency bandwagon", perhaps partially as a result of our success.

5. After I was accosted without notice by certain reporters from CNBC, I had no interest in further dialogue with those reporters. We will continue to inform the markets of our activities through appropriate means such as press releases and our regulatory filings. The CNBC one-sided narrative has failed to tell the full story and latched on to innuendo and "empty chair" reporting.

## Riot Blockchain Transformation

Coinsquare stood out to the board and management due to its exceptional management team and platform. We decided to make an initial investment at a $28 million valuation and form Riot Blockchain. We are proud of the value this has since generated for all legacy shareholders of Bioptix, as this investment alone is now worth close to double what the entire market cap of Bioptix was prior to the transition.

Part of the further thesis around forming Riot Blockchain was to provide investors a way to get exposure to this growing technology with the transparency and disclosure obligations that come with operating a Nasdaq listed and fully SEC reporting company. To my knowledge, we were the first Nasdaq listed company to have blockchain in its name. The management and board had no idea what the market reaction would be to this shift in focus. We have brought on seasoned advisors, board members, and management in conjunction with this shift to focus on investing in and operating blockchain technologies. Unfortunately, as with many new hot sectors, it attracted some bad actors trying to capitalize on the hype that appeared to quickly change their name and tout their new focus on this sector.

This all followed Riot's successful transition.

One of our internal focuses has been on building our bitcoin mining operation. We now own 7,500 Antminer S9 Bitcoin miners and 500 L3+s, all manufactured by Bitmain. We expect to have a sizable portion of our operation up and running by the end of this quarter, and to be fully operational with the current equipment on hand by the end of Q2 2018. When deployed in full, the operation's expected hashing power is over 110 Petahash of SHA 256 Bitcoin mining computing power and 252 Gigahash of Scrypt for Litecoin mining. I believe this will position us as one of the largest publicly listed bitcoin mining operations.

We are also focused on pursuing the launch of our own digital currency exchange. We have engaged a team of top legal counsel to assist us in this endeavor. We announced that we have entered a Letter of Intent to acquire a CFTC licensed registrant which would also allow us to launch a futures brokerage. Neither the CFTC nor the NFA regulate spot-market digital currency exchanges or activity, although the CFTC's jurisdiction is implicated when there is fraud or manipulation involving a virtual currency traded in interstate commerce.

I believe there is a major market need for additional competitors for digital currency exchange offerings in the United States. We are embracing regulatory and compliance requirements in this regard with the hope of establishing a fully transparent and secure platform to help handle the growing demand of people wishing to transact in digital currencies.

We take our SEC reporting obligations seriously and diligently file all reports and filings. We have expended enormous effort to inform investors of the risks of our foray into uncharted territory. We have an open and expansive dialogue with the SEC Division of Corporation Finance about our registration statements and other filings with a goal to satisfy the collective sentiment of the staff of the various divisions of the SEC that are struggling to find common ground around how best to regulate our industry. We support full disclosure and will continue to work with the staff of the SEC whenever new regulations provide definition to this emerging sector. As has been noted by the Chairman in recent testimony, the regulators need to catch up with the business developments and we hope to remain at the forefront as a fully compliant reporting company.

In closing, we are well capitalized with a strong team, strong assets, and growing operations. I originally came on as Chairman and CEO in November 2017 due to the tremendous opportunities that exist for blockchain technologies. I have never felt better about Riot Blockchain's prospects of capitalizing on these opportunities.

Warm regards,

John O'Rourke
Chairman and CEO

**About Riot Blockchain**

Riot Blockchain, Inc. is leveraging its expertise and a network of professional advisors to build and support blockchain technologies. It is establishing an Advisory Board with technical experience intending to become a leading authority and supporter of blockchain, while providing investment exposure to the rapidly growing Bitcoin and blockchain ecosystems. For more information, visit http://www.RiotBlockchain.com/.

**Investor Notice**

Investing in our securities involves a high degree of risk. Before making an investment decision, you should carefully consider the risks, uncertainties and forward-looking statements described under "Risk Factors" in Item 1A of our most recent Form 10-Q for the period ended September 30, 2017 filed with the Securities and Exchange Commission (the "SEC") on November 13, 2017 and in Item 1A of our most recent Annual Report on Form 10-K for the fiscal year ended December 31, 2016 filed with the SEC on March 31, 2017, as amended as of April 27, 2017 and August 15, 2017. If any of these risks were to occur, our business, financial condition or results of operations would likely suffer. In that event, the value of our securities could decline, and you could lose part or all of your investment. The risks and uncertainties we describe are not the only ones facing us. Additional risks not presently known to us or that we currently deem immaterial may also impair our business operations. In addition, our past financial performance may not be a reliable indicator of future performance, and historical trends should not be used to anticipate results in the future. See "Safe Harbor" below.

**Safe Harbor**

The information provided in this press release may include forward-looking statements relating to future events or the future financial performance of the Company. Because such statements are subject to risks and uncertainties,

actual results may differ materially from those expressed or implied by such forward-looking statements. Words such as "anticipates," "plans," "expects," "intends," "will," "potential," "hope" and similar expressions are intended to identify forward-looking statements. These forward-looking statements are based upon current expectations of the Company and involve assumptions that may never materialize or may prove to be incorrect. Actual results and the timing of events could differ materially from those anticipated in such forward-looking statements as a result of various risks and uncertainties. Detailed information regarding factors that may cause actual results to differ materially from the results expressed or implied by statements in this press release relating to the Company may be found in the Company's periodic filings with the Securities and Exchange Commission, including the factors described in the sections entitled "Risk Factors", copies of which may be obtained from the SEC's website at www.sec.gov. The parties do not undertake any obligation to update forward-looking statements contained in this press release.

**Media Contacts**
Karen Chase or Travis Kruse
Russo Partners, LLC
(646) 942-5627
(212) 845-4272
karen.chase@russopartnersllc.com
travis.kruse@russopartnersllc.com

**Investor Contact**
IR@RiotBlockchain.com

View original content:http://www.prnewswire.com/news-releases/riot-blockchain-provides-shareholder-update-300600208.html

SOURCE Riot Blockchain, Inc.