**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
Julia M. Beskin (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Jaclyn M. Palmerson
Alexander P. Wentworth-Ping (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
alexspiro@quinnemanuel.com
juliabeskin@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jaclynpalmerson@quinnemanuel.com
alexwentworthping@quinnemanuel.com

*Attorneys for Catherine DeFrancesco*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated, *Plaintiff*, v. RIOT BLOCKCHAIN, INC. f/k/a BIOPTIX, INC., JOHN O'ROURKE, JEFFREY MCGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES and ERIC SO, *Defendants*. | Civil Action No. 3:18-02293 (FLW) (TJB) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**CATHERINE DeFRANCESCO'S MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ...................................................................................................................................2

I.   PLAINTIFF FAILS TO PLEAD THAT MS. DeFRANCESCO BREACHED
     RULES 10b-5(a) OR (c) ...................................................................................................2

     A.   Plaintiff Fails to Allege Any Misconduct That Is Actionable Under Rules
          10b-5(a) or (c) ............................................................................................................2

     B.   Plaintiff Fails to Allege Meaningful Ties to the "Honig Group" .............................6

     C.   Plaintiff Fails to Plead Scienter With the Requisite Particularity ...........................8

CONCLUSION ...............................................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adams v. Amplidyne, Inc.*,
  2000 WL 34603180 (D.N.J. Oct. 24, 2000) ............................................................................ 10

*In re Amarin Corp. PLC*,
  2015 WL 3954190 (D.N.J. June 29, 2015) ............................................................................... 5

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) ..................................................................................................... 9

*In re Delmarva Sec. Litig.*,
  794 F. Supp. 1293 (D. Del. 1992) ............................................................................................ 5

*Fialkov v. Alcobra, Ltd.*,
  2016 WL 1276455 (S.D.N.Y. Mar. 30, 2016) .......................................................................... 9

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004) ..................................................................................................... 9

*Kemp v. Univ. Am. Fin. Corp.*,
  2007 WL 86942 (S.D.N.Y. Jan. 10, 2007) ............................................................................... 2

*Lorenzo v. S.E.C.*,
  139 S. Ct. 1094 (2018) .................................................................................................... 1, 4, 5

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) ................................................................................................ 3, 5

*Oran v. Stafford*,
  34 F. Supp. 2d 906 (D.N.J. 1999) ............................................................................................ 3

*SEC v. Desai*,
  145 F. Supp. 3d 329 (D.N.J. 2015) ........................................................................................ 10

*Trustcash Hldgs., Inc. v. Moss*,
  668 F. Supp. 2d 650 (D.N.J. 2009) ...................................................................................... 2, 4

*In re Viropharma Inc. Sec. Litig.*,
  21 F. Supp. 3d 458 (E.D. Pa. 2014) ....................................................................................... 10

### Rules and Regulations

17 C.F.R. § 240.13d-2 ..................................................................................................................... 6

Fed. R. Civ. P. 8 .............................................................................................................................. 5

Defendant Catherine DeFrancesco submits this reply memorandum of law in further support of her Motion to Dismiss the Consolidated Amended Class Action Complaint.

## PRELIMINARY STATEMENT

Plaintiff's Opposition largely concedes that Plaintiff has no claim against Ms. DeFrancesco. The Moving Brief makes clear that the Amended Complaint fails to allege a manipulative or deceptive act on the part of Ms. DeFrancesco, and the Opposition offers no meaningful response. Plaintiff's claims may be dismissed on this basis alone.

Plaintiff also fails to address that the Kairos and Prive Transactions—the alleged misconduct to which the Amended Complaint purports to connect Ms. DeFrancesco—involved no manipulative trading of RBI securities, and were allegedly misleading solely due to misrepresentations (by RBI), which are actionable under Rule 10b-5(b). Plaintiff's reliance upon *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2018), to hold Ms. DeFrancesco liable under Rules 10b-5(a) and (c) is misplaced. *Lorenzo* held a defendant could be liable under Rules 10b-5(a) or (c) for disseminating misleading statements, even if the defendant did not make those statements. But Plaintiff nowhere alleges that Ms. DeFrancesco disseminated misleading statements. *Lorenzo* did *not* hold that a defendant was liable under Rules 10b-5(a) or (c) for *making* misstatements, which would be actionable under Rule 10b-5(b). As detailed in the Moving Brief, that would amount to aiding and abetting liability for breaches of Rule 10b-5(b), which has been rejected by Congress and the courts. Plaintiff's attempt to tie Ms. DeFrancesco to RBI's alleged misstatements or omissions concerning the Kairos and Prive Transactions therefore fails.

Finally, Plaintiff's failure to allege that Ms. DeFrancesco committed any act *at all* means she could not act with scienter. Plaintiff also fails to plead any motive in connection with the Kairos or Prive Transactions, or that Ms. DeFrancesco was an RBI "insider" when she sold RBI shares, and therefore does not plead an inference of scienter, much less a compelling one.

## ARGUMENT

**I.     PLAINTIFF FAILS TO PLEAD THAT MS. DeFRANCESCO BREACHED RULES 10b-5(a) OR (c)**

**A.     Plaintiff Fails to Allege Any Misconduct That Is Actionable Under Rules 10b-5(a) or (c)**

Plaintiff concedes that claims under Rules 10b-5(a) or (c) require a "manipulative or deceptive act." Opp. 54 (quoting *Trustcash Hldgs., Inc. v. Moss*, 668 F. Supp. 2d 650, 661 (D.N.J. 2009)).[1]  The Moving Brief established, however, that the Amended Complaint pleads no such act on the part of Ms. DeFrancesco.  *See* MTD 9.  The Opposition does not remedy this pleading deficiency, as it fails to identify any allegations that Ms. DeFrancesco played *any* role in the Kairos or Prive Transactions beyond holding minority stakes in each entity.  *See id.*  The Opposition likewise identifies no facts indicating Ms. DeFrancesco held a stake in Kairos at the time of the Prive Transaction—when Kairos was already a subsidiary of RBI—and therefore fails to plead that the Prive Transaction was a "related party" transaction as to Ms. DeFrancesco. *See id.*  Plaintiff therefore fails to allege "with specificity . . . that [Ms. DeFrancesco herself] conducted an 'act, scheme, or course of conduct' to defraud investors."  *See Kemp v. Univ. Am. Fin. Corp.*, 2007 WL 86942, at *1, *17 (S.D.N.Y. Jan. 10, 2007).

As the Moving Brief also established, Plaintiff's claim that RBI paid an exorbitant premium for bitcoin equipment in the Kairos and Prive Transactions is based on the assertion that the same bitcoin equipment was available more cheaply from the manufacturer.  Plaintiff supports this allegation with an archived version of the manufacturer's website.  In other words, the supposed extent of the overpayment—which is critical to Plaintiff's alleged secret "pump and dump" scheme—was *public* information.  *See* MTD 4-6 (noting manufacturer's alleged price

---

[1] Capitalized terms used herein have the same meaning as in the Moving Brief.  The Moving Brief is cited herein as "MTD __"; the Opposition is cited as "Opp. __."

2

was based on public website).  Indeed, Plaintiff's allegations demonstrate that "the market" for RBI's stock would have been aware of the difference between the price RBI paid for bitcoin equipment, and the lower price supposedly available from the manufacturer of that equipment, because the market "promptly digested current information regarding [RBI] from *publicly available sources* and reflected such information in the price of the common stock."  AC ¶¶ 416 (emphasis added).  Plaintiff cannot plead that the market was misled by the prices paid in the Kairos and Prive Transactions while also pleading that the supposed pricing discrepancy was public information.  *See, e.g.*, *Oran v. Stafford*, 34 F. Supp. 2d 906, 914 (D.N.J. 1999), *aff'd*, 226 F.3d 275 (3d Cir. 2000) ("[T]he allegedly omitted information consists primarily of the reports of heart valve damage to which the July 8 press releases referred.  As a matter of law, these facts would not have 'altered the basic mix of information' that had already been disclosed on July 8, 1997.").

The sole alleged, undisclosed information concerning the Kairos and Prive Transactions was therefore Ms. DeFrancesco's stakes in those entities.  But, as the Moving Brief also established, Plaintiff nowhere alleges that Ms. DeFrancesco played any role in any of RBI's alleged misstatements or omissions, including the statements that no director, officer, or 5% shareholder "has any material interest . . . in any transaction . . . ." AC ¶ 346 (quoting RBI 2017 Proxy Statement).  And Plaintiff offers no response concerning its failure to allege that Ms. DeFrancesco had any disclosure duty to RBI shareholders.  *See* MTD 3, 13.  Plaintiff therefore fails to plead any act *at all*, much less a manipulative one, that can support claims under Rules 10b-5(a) or (c).

The Moving Brief also established, and Plaintiff fails to address, that "market manipulation"—which, again, Ms. DeFrancesco is not alleged to have committed—"refers

3

generally to practices, such as wash sales, matched orders, or rigged prices," *Trustcash*, 668 F. Supp. 2d at 662 (citation omitted), and that the Kairos and Prive Transactions involved no trading of RBI securities. *See* MTD 7-9.[2] And Plaintiff does not deny that the sole alleged reason for claiming the Kairos and Prive Transactions were misleading was alleged misstatements and omissions concerning their supposed "related party" status, which are actionable, if at all, under Rule 10b-5(b). *See* MTD 9-12.

Plaintiff instead relies upon *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2018) to claim that Ms. DeFrancesco, among others, is liable under Rules 10b-5(a) and (c) because they "took part in a deceptive act that was part-and-parcel of a broader scheme to manipulate Riot stock," and that the alleged misstatements and omissions "overlap" with "other well-pled allegations concerning intertwining machinations of Defendants and their Related Parties."[3] Opp. 59. Again, Plaintiff fails to assert *any* deceptive or manipulative conduct on Ms. DeFrancesco's part. *See id.* at 54 (arguing that deceptive or manipulative conduct is necessary to plead claims under 10b-5(a) or (c)). And *Lorenzo* holds that "[t]hose who disseminate false statements with intent to defraud are primarily liable under Rules 10b-5(a) and (c)," 139 S. Ct. at 1104, which Plaintiff does not allege Ms. DeFrancesco ever did. *Lorenzo* does not hold, however, that the *making* of misstatements is actionable under Rules 10b-5(a) or (c), nor that acts that are allegedly misleading solely on account of alleged misrepresentations—such as the Kairos and Prive Transactions—are actionable under Rules 10b-5(a) or (c).

---

[2] The Opposition nowhere mentions the Private Placement, and therefore Plaintiff appears to have abandoned any claims arising from that transaction.

[3] Plaintiff's Exhibit 36 attempts to diagram these supposed "intertwining machinations." The pathways concerning Ms. DeFrancesco, however, offer the unremarkable information that she beneficially owned, at unspecified times and in unspecified amounts, shares in RBI and PolarityTE. Exhibit 36 also illustrates that there is no connection between Ms. DeFrancesco and anyone in the supposed "Honig Group" beyond RBI and a single investment in PolarityTE.

4

*Lorenzo* is further distinguishable. Defendant Lorenzo "sent false statements directly to investors," *id.* at 1101, yet his conduct, "though plainly fraudulent, might otherwise fall outside the scope of the Rule." *Id.* at 1102. But Plaintiff here is not applying Rules 10b-5(a) and (c) to misstatement-related conduct that might fall through the cracks of Rule 10b-5(b). Plaintiff instead seeks to hold Ms. DeFrancesco liable under Rules 10b-5(a) and (c) for misstatements related to the Kairos and Prive Transactions allegedly made, disseminated, and otherwise communicated entirely by others. Thus, as established in the Moving Brief, what Plaintiff seeks to do is create improper aiding and abetting liability under Rule 10b-5(b). *See* MTD 8-10.

In an apparent attempt to remedy Plaintiff's failure to plead actionable conduct, the Opposition asserts for the first time that Ms. DeFrancesco failed to file timely reports on Schedule 13D. The Moving Brief does not address this assertion because it is *not pleaded in the Amended Complaint*. "It is axiomatic that a plaintiff may not amend his Complaint through an opposition brief." *In re Amarin Corp. PLC*, 2015 WL 3954190, at *1, *9 (D.N.J. June 29, 2015) (Wolfson, J.); *see also* Fed. R. Civ. P. 8 (requiring a "short and plain statement"). The Court should therefore disregard Plaintiff's new allegations, as well as Plaintiff's numerous other unpleaded assertions and exhibits.[4] Furthermore, Plaintiff cites no authority that failing to file timely reports on Schedule 13D is actionable as anything but an omission under Rule 10b-5(b). *See* MTD 9-12. Regardless, the Opposition fails to argue—and, as discussed, the Amended Complaint fails to plead—which, if any, alleged sales resulted in the "material change" that

---

[4] Plaintiff's assertion that the Court may take judicial notice of facts that are included in SEC filings does not mean Plaintiff may effectively amend its already-Amended Complaint by introducing new facts and documents in the Opposition brief. Plaintiff's authority is no help. *See In re Delmarva Sec. Litig.*, 794 F. Supp. 1293, 1299 (D. Del. 1992) (taking judicial notice of SEC filings cited by *Defendants*); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (judicial notice, on appeal, of limited additional facts where there was *no objection*).

5

might require filing an amended report on Schedule 13D.  *See* 17 C.F.R. § 240.13d-2(a) ("If any material change occurs in the facts set forth in the Schedule 13D . . . the person or persons who were required to file the statement shall promptly file . . . an amendment disclosing that change."). Plaintiff thus fails to plead at all, much less with particularity, "what manipulative acts were performed . . . when the manipulative acts were performed and what effect the scheme had on the securities at issue." MTD 7 (quoting *In re Royal Dutch/Shell Transport Sec. Litig.*, 2006 WL 2355402, at *7 (D.N.J. Aug. 14, 2006)).

### B.    Plaintiff Fails to Allege Meaningful Ties to the "Honig Group"

Plaintiff relies heavily on unpleaded assertions to tie Ms. DeFrancesco to the "Honig Group"—a term Plaintiff defined for purposes of this litigation. *See* MTD 5 n.3. The sum of Plaintiff's actual allegations is that Ms. DeFrancesco wrote a letter to RBI's prior CEO, and that she previously invested in one other company in which Honig also invested.

The Opposition makes clear from the outset that, according to a March 8, 2019 Complaint filed by the Securities and Exchange Commission ("SEC Complaint," Pl. Ex. 1), it was Defendants "'Honig, Brauser, Stetson and O'Rourke'" who allegedly "operated as a 'partnership.'" Opp. 3 (quoting SEC Complaint ¶ 55). The SEC Complaint nowhere mentions Ms. DeFrancesco. Plaintiff's assertion that the Defendants had "prior involvement in six additional companies," Opp. 5, ignores that Ms. DeFrancesco is alleged to have beneficially owned shares only in PolarityTE.[5]  *See* MTD 4 n.1. And the Opposition still fails to identify

---

[5] Plaintiff appends certain PolarityTE Form 4 filings to its Opposition.  *See* Pl. Exs. 38-45. The Court should likewise disregard these unpleaded documents.

facts indicating Ms. DeFrancesco played any role whatsoever in the supposed scheme involving that entity.  *See id.*[6]

Plaintiff further relies on unpleaded materials to revise its story concerning Ms. DeFrancesco's supposed role in reconstituting the RBI board.  The Amended Complaint alleges repeatedly that Honig deployed a strategy to install new directors at RBI.  *See* AC ¶ 8 ("After suing several longtime members of the [RBI predecessor] Board, Honig successfully ousted them."); *id.* at ¶ 133 ("Honig attempted to nominate his own slate of new directors . . . ."); *id.* at ¶ 135 ("Honig waged a proxy fight . . . .").  Ms. DeFrancesco's alleged involvement in this maneuver is limited to "touting" that she and Honig together held 16% of RBI stock in a letter, the contents of which are unpleaded, and that Ms. DeFrancesco acquired RBI shares.  *See* AC ¶¶ 6, 132, 138.  The Opposition, however, introduces statements from that letter, and from another letter dated September 20, 2016, apparently signed by Ms. DeFrancesco, Opp. 7-8, that are found nowhere in the Amended Complaint, and should therefore be disregarded.

Plaintiff also pleads that "three of [RBI predecessor]'s board members resigned, on the basis that *Defendant Honig* was likely to prevail in his legal fight . . . ."  *Id.* at ¶ 138 (emphasis added).  By contrast, the Opposition introduces an unpleaded letter from the same three board members, *see* Pl. Ex. 12, in which they state they would resign after "discussions with principal shareholders," which the Opposition argues is a "clear reference" to Honig *and* Ms. DeFrancesco.  Opp. 8-9 n.12.  The Opposition also explains, however, that at this time "Honig's

---

[6] The Opposition also asserts that "O'Rourke had also co-invested with Beeghly, Stetson, Groussman, DeFrancesco, and Kaplan in various prior companies," Opp. 10, obscuring that Ms. DeFrancesco's single alleged prior activity alongside any Defendant was an unquantified investment, at an unspecified time, in PolarityTE.  *See id.*  Similarly, Plaintiff's claim that certain members of the "Honig Group" "*coordinat[e]d their trades down to the single share*," Opp. 30, is unsupported by any allegations about Ms. DeFrancesco.  *See id.* at 30-31.

7

'friends and relatives'" came to "control[] more than 55% of [RBI's] outstanding shares," citing Amended Complaint allegations concerning RBI share ownership that *do not refer to Ms. DeFrancesco*. *See* Opp. 8. Plaintiff's new narrative that Ms. DeFrancesco played *any* role—much less a primary role beside Honig—in effecting changes to RBI's board is unsupported by the allegations in the Amended Complaint.

Regardless, the Amended Complaint pleads no factual support for the notion that Ms. DeFrancesco's (unpleaded) letters were false or misleading, or that her purpose in allegedly preparing them was to further the purported scheme.[7]

### C. Plaintiff Fails to Plead Scienter With the Requisite Particularity

Plaintiff's sparse allegations about Ms. DeFrancesco do not support a compelling inference that she acted with scienter. As the Moving Brief made clear, Plaintiff fails to plead that she acted *at all*. *See* MTD 13-15. Rather, Plaintiff alleges that Ms. DeFrancesco held stakes in RBI and Kairos at the time of the Kairos Transaction, and in RBI and Prive at the time of the Prive Transaction, when Kairos was already a subsidiary of RBI. *See*, *e.g.*, *id.* at 9. Plaintiff alleges no actions whatsoever on the part of Ms. DeFrancesco to advance the transactions. *See id.* at 13. Because Ms. DeFrancesco could not form intent to commit non-existent acts, scienter is not relevant, much less pleaded.

---

[7] The Opposition also claims that "Honig (with DeFrancesco's support)" "nominated Beeghley as CEO," but cites only Amended Complaint Paragraphs 136-42 and (unpleaded) Plaintiff's Exhibits 7, 8, and 9, none of which supports this assertion. *See* Opp. 29 n. 37. The Opposition's claim that "Honig and DeFrancesco" "hid[] their control through false and misleading Forms S-3/A and Proxy Statements, and other beneficial ownership disclosure violations under Section 13(d)," Opp. 56-57, is guilt-by-association that also finds no support in Plaintiff's actual allegations. And Plaintiff's assertion that Honig maintained "close business, investment, and/or personal ties" to Ms. DeFrancesco is based on insufficient allegations, such as Ms. DeFrancesco's letter, which are addressed herein. *See* Opp. 56 n.68.

8

Plaintiff rightly explains that establishing motive is insufficient, on its own, to plead scienter. Opp. 43. Regardless, Plaintiff fails to plead motive. Plaintiff asserts that Ms. DeFrancesco was "motivated by [her] opportunity to participate in lucrative related-party transactions with" RBI, Opp. 43, but the motivation to obtain value for an investment is universal, and would be insufficient even if pleaded as to Kairos' officers and directors. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) ("In every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a successful transaction. Such allegations alone cannot give rise to a 'strong inference' of fraudulent intent."); *Fialkov v. Alcobra, Ltd.*, 2016 WL 1276455, at *1, *7 (S.D.N.Y. Mar. 30, 2016) ("Motives shared by virtually all corporate insiders include the desire to sustain 'the appearance of corporate profitability' or the 'success of an investment.'" (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)). And, again, Plaintiff's failure to plead acts on the part of Ms. DeFrancesco makes scienter irrelevant.

Plaintiff also argues that it alleged "numerous suspicious insider sales by" Ms. DeFrancesco. Opp. 45 n. 55 (citing AC ¶¶ 160-163). The complaint paragraphs cited in support of this claim do not mention Ms. DeFrancesco. And as the Moving Brief demonstrated—and Plaintiff does not dispute—Plaintiff fails to plead that Ms. DeFrancesco was an insider at RBI after October 10, 2017, because RBI's issuances of additional shares diluted Ms. DeFrancesco's alleged holdings to well below 10% of outstanding shares. *See* MTD 14; *see also Fast Answers – Forms 3, 4, 5*, SEC, ("Corporate insiders – meaning a company's officers and directors, and any beneficial owners of more than ten percent of a class of the company's equity securities registered under Section 12 of the Securities Exchange Act of 1934 – must file with the SEC a

9

statement of ownership regarding those securities.").[8] Consequently, Plaintiff cannot attribute "insider" sales to Ms. DeFrancesco, and cannot use such sales to support an inference of scienter. And, as discussed above, Plaintiff's sole allegation that Ms. DeFrancesco wrote a letter "touting" her ownership of shares in RBI does not constitute misconduct, and does not remotely support a compelling inference that Ms. DeFrancesco participated in a "pump and dump" scheme.

Plaintiff's authority does not support scienter. Plaintiff cites *In re Viropharma Inc. Securities Litigation*, 21 F. Supp. 3d 458 (E.D. Pa. 2014) for the notion that "a court can find an inference of scienter even when only some defendants had insider sales during the class period." Opp. 45 n.55. In *Viropharma*, however, the individual defendants were the President/CEO, Vice President/CFO, Vice President for Strategic Initiatives, and General Counsel. *See* Amended Class Action Complaint, *Castro v. Viropharma Inc. et al.,* 2:12-cv-02714-CDJ (E.D. Pa. Oct. 19, 2012), ECF No. 35, ¶¶ 32-35. Ms. DeFrancesco is nowhere alleged to have held any similar insider roles at RBI, Kairos, or Prive. Equally inapposite is *SEC v. Desai*, 145 F. Supp. 3d 329, 337 (D.N.J. 2015), which Plaintiff uses to argue that concealing misconduct is a sign of scienter. But the Amended Complaint nowhere alleges that Ms. DeFrancesco engaged in misconduct, much less covered it up. And even if Plaintiff had pleaded that Ms. DeFrancesco failed to timely file an amended Schedule 13D, the mere fact of an omission is insufficient to plead the omission was undertaken with scienter. If, as Plaintiff appears to claim, that were sufficient, the separate elements of falsity and scienter would merge.[9]

---

[8] *Available at* https://www.sec.gov/fast-answers/answersform345htm.html (last visited October 22, 2019).

[9] Plaintiff's allegations concerning RBI's "core operations" fail as to Ms. DeFrancesco because Plaintiff nowhere alleges that she was part of the group of "high-level employees, such as officers and directors." Opp. 49 (quoting *Adams v. Amplidyne, Inc.*, 2000 WL 34603180 (D.N.J. Oct. 24, 2000)).

## CONCLUSION

For the reasons stated above and in the Moving Brief, Ms. DeFrancesco respectfully requests an Order dismissing the Amended Complaint as against her, with prejudice, and any further relief the Court deems just and proper.

DATED: New York, New York
October 22, 2019

Respectfully submitted,

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP


By:  */s/ Jaclyn M. Palmerson*
   Alex Spiro (*pro hac vice*)
   Julia M. Beskin (*pro hac vice*)
   Jacob J. Waldman (*pro hac vice*)
   Jaclyn M. Palmerson
   Alexander P. Wentworth-Ping (*pro hac vice*)
   51 Madison Avenue, 22nd Floor
   New York, New York  10010-1601
   Telephone:  (212) 849-7000
   alexspiro@quinnemanuel.com
   juliabeskin@quinnemanuel.com
   jacobwaldman@quinnemanuel.com
   jaclynpalmerson@quinnemanuel.com
   alexwentworthping@quinnemanuel.com

   *Attorneys for Catherine DeFrancesco*