## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, JEFFREY G. McGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES, and ERIC SO,<br><br>Defendants. | Civil No. 3:18-CV-02293(FLW)(ZNQ)<br><br>MOTION DATE:  November 4, 2019<br><br>**ORAL ARGUMENT REQUESTED** |

---

**REPLY BRIEF IN SUPPORT OF RIOT BLOCKCHAIN DEFENDANTS' MOTION TO DISMISS THE CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

---

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*RIOT BLOCKCHAIN, INC., JOHN O'ROURKE, MICHAEL BEEGHLEY AND JEFFERY G. McGONEGAL*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................1

II.    THE SECTION 10(B) CLAIM SHOULD BE DISMISSED .............................................2

    A.    The Riot Blockchain Defendants Did Not Make Any Actionable
        Misstatements or Omissions .................................................................................2

        1.    The Registration Statements Do Not Contain Misleading
                Statements .............................................................................................2

        2.    Riot Properly Disclosed Related Party Transactions .................................3

        3.    Allegations of Corporate Waste Are Not Actionable ...............................5

        4.    Statements Regarding Riot's Cryptocurrency Investments Cannot
                Support Lead Plaintiff's Section 10(b) Claim .............................................6

    B.    Lead Plaintiff Fails to Specifically Allege that the Riot Blockchain
        Defendants Acted with Scienter .........................................................................8

        1.    The Unrelated Honig Action and the SEC Subpoena Does Not
                Create an Inference of Scienter ................................................................8

        2.    The Riot Blockchain Defendants Did Not Have Motive and
                Opportunity to Commit Securities Fraud ..................................................10

        3.    Messrs. O'Rourke and Beeghley's Statements Regarding Riot Do
                Not Create Any Inference of Scienter .......................................................11

        4.    Mr. O'Rourke's Resignation Does Not Support an Inference of
                Scienter .................................................................................................12

        5.    The SOX Certifications Do Not Add to an Inference of Scienter ...........13

        6.    Taken Together, Lead Plaintiff Fails to Allege a Cogent and
                Compelling Inference of Scienter ............................................................13

III.   THE "SCHEME LIABILITY" CLAIM IS NOT VIABLE ..............................................14

IV.   THE SECTION 20(A) CLAIM SHOULD BE DISMISSED ...........................................14

V.    CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Burlington Coat Factory Secs. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ............................................................................. 6, 10

*In re Cendant Corp. Secs. Litig.*,
76 F. Supp. 2d 539 (D.N.J. 1999) ............................................................................ 15

*City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) ......................................................... 8

*City of Roseville Empls. Ret. Sys. v. Horizon Lines, Inc.*,
686 F. Supp. 2d 404 (D. Del. 2009) ....................................................................... 13

*In re Cognizant Tech. Sols. Corp. Secs. Litig.*,
2018 WL 3772675 (D.N.J. Aug. 8, 2018) ................................................................. 3

*In re Computer Assocs. Class Action Secs. Litig.*,
75 F. Supp. 2d 68 (E.D.N.Y. 1999) .......................................................................... 7

*In re Digital Island Secs. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002) ....................................................................... 15

*Eastwood Enters., LLC v. Farha*,
2009 WL 3157668 (M.D. Fla. Sept. 28, 2009) ...................................................... 10

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009) ..................................................................................... 6

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
235 F. Supp. 2d 549 (S.D. Tex. 2002) ...................................................................... 9

*In re Enzymotec Secs. Litig.*,
2015 WL 8784065 (D.N.J. Dec. 15, 2015) ............................................................... 7

*FindWhat Inv'r Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ................................................................................ 3

*Gannon v. Cont'l Ins. Co.*,
920 F. Supp. 566 (D.N.J. 1996) ................................................................................ 5

*Gelfer v. Pegasystems, Inc.*,
96 F. Supp. 2d 15 (D. Mass. 2000) ........................................................................... 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Gentiva Secs. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ................................................. 10

*Glazer Capital Mgmt., LP v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ........................................................... 9

*In re Heartland Payment Sys., Inc. Secs. Litig.*,
    2009 WL 4798148 (D.N.J. Dec. 7, 2009) ........................................ 11

*In re Heckmann Corp. Secs. Litig.*,
    869 F. Supp. 2d 519 (D. Del. 2012) ............................................... 12

*In re Hertz Glob. Holdings, Inc. Secs. Litig.*,
    2017 WL 1536223 (D.N.J. Apr. 27, 2017), *aff'd sub nom.*
    905 F.3d 106 (3d Cir. 2018) ....................................................... 9, 12

*Hull v. Glob. Digital Sols., Inc.*,
    2017 WL 6493148 (D.N.J. Dec. 19, 2017) ................................... 9, 10

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ......................................................... 10

*In re Intelligroup Secs. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) .............................................. 8, 13

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ..................................................................... 7

*Jones v. Intelli-Check, Inc.*,
    274 F. Supp. 2d 615 (D.N.J. 2003) ............................................... 15

*In re Kidder Peabody Secs. Litig.*,
    10 F. Supp. 2d 398 (S.D.N.Y. 1998) ............................................... 7

*Lorenzo v. S.E.C.*,
    139 S. Ct. 1094 (2019) ................................................................ 14

*Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*,
    2019 WL 1429667 (M.D. Fla. Mar. 29, 2019) .................................... 3

*Monk v. Johnson & Johnson*,
    2012 WL 1884037 (D.N.J. May 22, 2012) ...................................... 15

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010)...............................................................5, 11, 13

*In re NVE Corp. Secs. Litig.*,
551 F. Supp. 2d 871 (D. Minn. 2007), *aff'd*, 527 F.3d 749 (8th Cir. 2008)............................7

*In re Par Pharm. Secs. Litig.*,
2009 WL 3234273 (D.N.J. Sept. 30, 2009)...........................................................7, 12

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996) .......................................................................15

*Payne v. Deluca*,
433 F. Supp. 2d 547 (W.D. Pa. 2006) ...............................................................6

*In re PTC Therapeutics, Inc. Secs. Litig.*,
2017 WL 3705801 (D.N.J. Aug. 28, 2017) .........................................................12

*In re Qwest Commc'ns Int'l, Inc. Secs. Litig.*,
387 F. Supp. 2d 1130 (D. Colo. 2005) ..............................................................9

*Ronconi v. Larkin*,
253 F.3d 423 (9th Cir. 2001) .......................................................................11

*S. Ferry LP #2 v. Killinger*,
687 F. Supp. 2d 1248 (W.D. Wash. 2009) .........................................................12

*S.E.C. v. Lucent Techs., Inc.*,
363 F. Supp. 2d 708 (D.N.J. 2005)...................................................................14

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977) ..................................................................................5

*Sapir v. Averback*,
2016 WL 554581 (D.N.J. Feb. 10, 2016) ...........................................................14

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
2016 WL 466958 (M.D. Pa. Feb. 8, 2016)..........................................................12

*Shapiro v. UJB Fin. Corp.*,
964 F.2d 272 (3d Cir. 1992) .........................................................................6

*In re Smith & Wesson Holding Corp. Sec. Litig.*,
604 F. Supp. 2d 332 (D. Mass. 2009)................................................................7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Tellium, Inc. Secs. Litig.*,
   2005 WL 2090254 (D.N.J. Aug. 26, 2005) ............................................................4

*Utesch v. Lannett Co.*,
   385 F. Supp. 3d 408 (E.D. Pa. 2019) ...................................................................15

*Washtenaw Cty. Emps. Ret. Sys. v. Avid Tech., Inc.*,
   28 F. Supp. 3d 93 (D. Mass. 2014) ......................................................................10

*Weiner v. Quaker Oats Co.*,
   129 F.3d 310 (3d Cir. 1997) ...................................................................................7

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) .....................................................................6

*Wilson v. Bernstock*,
   195 F. Supp. 2d 619 (D.N.J. 2002) ......................................................................10

**Statutes**

15 U.S.C.

   § 78u-4 (Private Securities Litigation Reform Act of 1995 (the "Reform
   Act")) ...........................................................................................................14, 15

   § 78m (Securities Exchange Act of 1934 (the "Exchange Act")) ......................1, 14

   § 78j ("Section 10(b)") ...............................................................................2, 5, 6, 15

   § 78t ("Section 20(a)") ..........................................................................................14, 15

**Other Authorities**

17 C.F.R. § 229.404.........................................................................................................2, 3

I.      **INTRODUCTION**

The Opposition, relying on *47 exhibits* falling outside the four corners of the Corrected

Complaint, serves only to highlight Lead Plaintiff's multiple pleading deficiencies.[1]  At its core,

the Corrected Complaint assumes that the business activities at Riot must be part of a fraudulent

"pump-and-dump" scheme because the SEC accused a few individuals affiliated with Riot of

conducting pump-and-dump schemes *at other companies*.  But when pressed to establish

fraudulent activity *at Riot* regarding *each of the Riot Blockchain Defendants*, the Opposition is

left with alleging misstatements and/or omissions based on:  (1) a plainly erroneous reading of

Riot's publicly filed documents; and (2) statements of corporate puffery that are not actionable.

The statements are not only accurate, but the Opposition does nothing to rehabilitate the

deficient scienter allegations.  The Opposition hides the Corrected Complaint's failure to allege

scienter specific to each individual through the ubiquitous use of "Defendants."  In reality, the

Opposition rehashes SEC allegations pertaining primarily to a few of Riot's shareholders'

activities at other companies.

The Opposition also does nothing to establish that the Corrected Complaint states viable

scheme liability or control person claims.  The scheme liability claim, which merely recasts the

misrepresentation and omission claims, fails for the same reasons (*i.e.*, no deceptive conduct or

scienter).  The control person claim fails because (1) there is no primary violation of the

Exchange Act, (2) the Riot Blockchain Defendants are not "control persons," and (3) scienter

and/or culpable participation is not pled with particularity.  As such, the claims in the Corrected

Complaint should be dismissed against the Riot Blockchain Defendants in their entirety.

---

[1] The Riot Blockchain Defendants use the defined terms set forth in their Motion (*see* Dkt. No.
107-1).  Defendants refer to Lead Plaintiff's Omnibus Memorandum of Law in Opposition to
Defendants' Motions to Dismiss the Corrected Consolidated Amended Class Action Complaint
(Dkt. No. 136) herein as "Opp." or "Opposition."

II.     **THE SECTION 10(B) CLAIM SHOULD BE DISMISSED**

    A.     **The Riot Blockchain Defendants Did Not Make Any Actionable Misstatements or Omissions**

        1.     *The Registration Statements Do Not Contain Misleading Statements*

Ignoring the actual language in Riot's Registration Statements (Form S-3), Lead Plaintiff insists that Riot's statements regarding "material relationships" included relationships between selling stockholders and Riot's officers and directors.  (Opp. at 28.)  Yet, the plain language of the Registration Statements refers only to relationships between the selling stockholders and Riot (*i.e.*, the registrant).  The Registration Statements unambiguously state that any reference to "'we', 'us', and 'our' refers to Riot."  (*See, e.g.*, Dkt. No. 110 ( "Zaccaro MTD Decl."), Ex. G at 2.)  Moreover, the context of the challenged statement—that none of the selling stockholders had a material relationship with "us or any of ***our subsidiaries***" other than the result of the ownership of "***our shares*** or ***other securities***"—renders Lead Plaintiff's interpretation patently unreasonable.  (*Id.* (emphasis added).)

Instead of addressing the language in the Registration Statements, Lead Plaintiff clings to 17 C.F.R. § 229.404 ("Item 404") on the specious basis that the SEC regulation references "directors" in connection with related party transactions.  (Opp. at 28.)  Lead Plaintiff's reliance on Item 404 is misplaced.  It is undisputed that none of the selling stockholders were directors of Riot, or otherwise held positions at the Company.  Item 404 does not convert the truthful statements made in the Registration Statements into misleading statements.[2]  But even assuming that Riot's reference to "us" included Riot's officers and directors (which it does not), Item 404

---

[2] Lead Plaintiff takes the Riot Blockchain Defendants' reference to Item 404 out of context.  (*See* Opp. at 28.)  The Riot Blockchain Defendants referenced Item 404 to show that a "material relationship" would not include the relationships alleged between Riot's directors and officers and the selling stockholders.  Item 404 does not otherwise modify the language in the Registration Statements at issue.  Nor do the cases cited by Lead Plaintiff lend any support (*See id.* 28 n. 36 (citing cases that recite the general language of Item 404).)

evinces that co-investments between Riot Blockchain Defendants and selling stockholders would not constitute a material relationship.  *See* 17 C.F.R. § 229.404.[3]

Lead Plaintiff also argues that the representations in the Registration Statements are misleading "half-truths."  (Opp. at 31.)  The "half-truths doctrine" requires the disclosure of information that corrects the "natural and normal implication" of a misleading statement.  *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1305 (11th Cir. 2011).  And yet, Lead Plaintiff points to nothing—besides his obvious misinterpretation—in the Registration Statements that imply that the disclosure included Riot's officers and directors.  Indeed, the Registration Statements "conve[y] no message regarding the particular status of [Messrs. O'Rourke, Beeghley, and McGonegal]'s relationship with [the selling stockholders]."  *Mich. Carpenters' Pension Fund v. Rayonier Advanced Materials, Inc.*, 2019 WL 1429667, at *21 (M.D. Fla. Mar. 29, 2019) (statement that the company benefitted from "long-standing customer relationships" did not give rise to a duty to disclose that the company had lost two key customers); *see also In re Cognizant Tech. Sols. Corp. Secs. Litig.*, 2018 WL 3772675, at *22 (D.N.J. Aug. 8, 2018).  The Registration Statements therefore contain no half-truths.

2.      *Riot Properly Disclosed Related Party Transactions*

Lead Plaintiff contends that the Company's December 12, 2017 and March 26, 2018 Definitive Proxy Statements (the "Proxy Statements") failed to disclose that Mr. Honig and Ms. DeFrancesco owned shares in Kairos at the time of Riot's acquisition of Kairos.  (Opp. at 32.) But the Proxy Statements were part of the Audit Committee Report for the Company's "audited financial statements for the year ended December 31, 2016 . . . ."  (Decl. of T. Zaccaro In

---

[3] Lead Plaintiff spends much of his argument describing the alleged "ties" between the selling stockholders and Messrs. O'Rourke and Kaplan.  (*See* Opp. at 29–30.)  Those alleged ties are not relevant because they are not ties *with Riot*.  And even if they were, they still do not establish a material relationship between the selling stockholders and Messrs. O'Rourke and Kaplan.

Support of Defendants' Reply Briefs (filed concurrently herewith) (the "Zaccaro Reply Decl."), Ex. D at 12; Ex. E at 13.)  In fact, the disclosure concerning related party transactions specifically refers to transactions "during the last fiscal year," which ended December 31, 2016. (*Id.*; *see also* DePalma Decl., Exs. 28 and 29.)[4]  Since the Kairos transaction did not occur until November 2017, the disclosures provided in the Proxy Statements were accurate.  In contrast, Lead Plaintiff's contention that Riot admitted in June 2018 "that Honig and DeFrancesco participated in the Kairos transaction" is inaccurate.  (Opp. at 32.)  On April 17, 2018, Riot disclosed Mr. Honig and Ms. DeFrancesco's interests in Kairos in the 2017 Form 10-K for the fiscal year ending December 31, 2017—Riot's first filing after November 2017 that covered fiscal year ending December 31, 2017.  (*See* Zaccaro Reply Decl., Ex. F at 73.)  As such, Riot adequately and timely disclosed the Kairos transaction.[5]

For similar reasons, Riot properly disclosed the Coinsquare transaction.  First, the Coinsquare transaction did not occur until 2017, so any related party transaction was not required to be disclosed in the Proxy Statements.  (*See, e.g.*, Zaccaro Reply Decl., Ex. D at 15) ("no such transaction was entered into with any director or executive officer during the last fiscal year").)  Second, Mr. So became a Riot director only ***after*** the Coinsquare transaction.  (Opp. at 33–34; *compare* Zaccaro MTD Decl., Ex. C at 2 (announcing Bioptix's September 29, 2017 investment into Coinsquare) *with* CCAC ¶ 32 (Mr. So started as a director in October 2017).)  The Coinsquare transaction was therefore not a related-party transaction involving Mr. So.

---

[4] Mr. Beeghley left Riot by November 2017 (CCAC ¶ 25), so there is no viable claim against him based on these alleged misstatements.

[5] In addition, Lead Plaintiff fails to allege that he suffered a loss as a result of these disclosures, which is also fatal to his claim.  *See In re Tellium, Inc. Secs. Litig.*, 2005 WL 2090254, at *2 (D.N.J. Aug. 26, 2005) (failing to allege a loss following a corrective disclosure fatal to claim). Lead Plaintiff sold all his stock in Riot months before any disclosures taking place in April 2018. (*See* Dkt. No. 17-2, Ex. C (Lead Plaintiff's stock sales).)

Last, the Opposition offers no meaningful argument that the Prive, Tess, and Cresval transactions were undisclosed related party transactions. Instead, Lead Plaintiff reframes these transactions as being "connected to certain members of the Honig Group." (Opp. at 35.)[6] Even accepting this assertion as true, the "connections" do not amount to related party transactions Riot was required to disclose. And even accepting that they were related party transactions (which they are not), the transactions were not required to be disclosed in the Proxy Statements covering information for the fiscal year ending December 31, 2016.

### 3. *Allegations of Corporate Waste Are Not Actionable*

It is well-settled law that corporate mismanagement is not actionable under Section 10(b). *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479 (1977). Lead Plaintiff nevertheless argues that classic corporate mismanagement allegations can form the basis of securities fraud. For instance, Lead Plaintiff contends that Riot overpaid in its transactions with Kairos and Prive, and that Riot "has written the value of its Tess shares, which have now been diluted only 9% of Tess, at only $90,174." (Opp. at 38–39.) But even if these transactions were wasteful (they were not), they do not support Lead Plaintiff's fraud claim. *See Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 541 n.20 (D.N.J. 2010) (dismissing Section 10(b) claim based on corporate mismanagement).[7]

---

[6] Lead Plaintiff bought and sold his shares of Riot well before the Ingenium transaction. *See Gannon v. Cont'l Ins. Co.*, 920 F. Supp. 566, 578 (D.N.J. 1996) ("[A] plaintiff cannot rely on statements made subsequent to his purchase in order to state a securities fraud claim . . . .").

[7] Lead Plaintiff also mischaracterizes Riot's investments. (*See* Opp. at 35–36, 38.) For example, Lead Plaintiff asserts Riot paid a $19 million premium on the Prive transaction, but glosses over the fact that the transaction included a large number of cryptocurrency mining machines that were not available in large quantities at retail prices and access to operating facilities, support services, and related equipment. (*Compare* Opp. at 38 *with* Zaccaro MTD Decl., Ex. I at 4.)

4.    *Statements Regarding Riot's Cryptocurrency Investments Cannot Support Lead Plaintiff's Section 10(b) Claim*

Statements of corporate optimism and puffery are also not actionable under Section 10(b).  *See Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1245–46 (N.D. Cal. 1998) (on motion to dismiss, holding defendant's statements that it "represents a pure play in the emergence of" an industry that was "finally coming of age[,]" that it was a "leader in a rapidly growing market[,]" and that it was well positioned, were "not specific enough to perpetrate fraud on the market"). Lead Plaintiff insists, however, that the Riot Blockchain Defendants falsely stated that:  (1) Riot is a "pure play Blockchain company"; (2) Riot's team had the "insight and network to effectively grow and develop blockchain assets"; and (3) Riot was "poised to take advantage of the blockchain revolution."  (Opp. at 36–39.)  The argument is meritless.

Lead Plaintiff asserts these statements are not puffery because they "went to the heart of Riot's operations."  (*Id.* at 39.)  Yet, statements regarding a company's core operations are still puffery if they are—as is the case here—"too general to cause a reasonable investor to rely upon them."  *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (statements regarding financial discipline and risk-management practices are puffery even though they concerned key business operations).  Indeed, all of the challenged statements are emblematic of the "general, non-specific statement[s] of optimism or hope" that are too vague to be actionable.  *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1427 (3d Cir. 1997) (statement that company could "continue to grow net earnings at a faster rate than sales . . . " is puffery).[8]

_____

[8] Cases cited in the Opposition undermine any contention that the challenged statements are actionable.  *See Payne v. Deluca*, 433 F. Supp. 2d 547, 599 (W.D. Pa. 2006) (statement that "recent contract awards demonstrate our excellent reputation with a diverse range of clients and our broad and sophisticated skill base" is puffery); *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 283

Lead Plaintiff also claims that the Riot Blockchain Defendants inaccurately described Coinsquare as a "strategic investment" and "a leading cryptocurrency exchange." (Opp. at 38.) Both of these statements are puffery. *See In re NVE Corp. Secs. Litig.*, 551 F. Supp. 2d 871, 897 (D. Minn. 2007), *aff'd*, 527 F.3d 749 (8th Cir. 2008) (statement that defendant's licensees were "leading the race" is puffery); *In re Kidder Peabody Secs. Litig.*, 10 F. Supp. 2d 398, 413 (S.D.N.Y. 1998) (statements regarding "strategic planning" are puffery). But even if they are not, Lead Plaintiff's own allegations support the truth of the statements. The Corrected Complaint acknowledges that the Coinsquare investment tripled in value. (CCAC ¶ 182.) Coinsquare was among the top three-cryptocurrency exchanges in Canada. (*See* DePalma Decl., Ex. 35.) Similarly, Riot's statement that Tess's proposed merger with Cresval would give Tess "access to traditional capital markets," is buttressed by the allegation that Cresval was a "mineral exploration company (i.e., gold and copper mining, not bitcoin 'mining')." (CCAC ¶¶ 186–87.)[9]

In addition, Lead Plaintiff suggests that Riot's "pump-and-dump scheme" renders the statements by the Riot Blockchain Defendants misleading. (Opp. at 40.) Lead Plaintiff relies on (1) allegations of purported pump-and-dump schemes at other companies (CCAC ¶¶ 80–127) and (2) allegations that Riot's investments "generate[d] a misleading picture of market interest in

---

(3d Cir. 1992) (statement that "[the Company] looks to the future with great optimism" is puffery); *Weiner v. Quaker Oats Co.*, 129 F.3d 310, 321 (3d Cir. 1997) (statement that "we are committed to achieving a real earnings growth of at least 7 percent over time" is puffery). The other cases are inapposite; they address statements of historical and verifiable facts. *See In re Enzymotec Secs. Litig.*, 2015 WL 8784065, at *11 (D.N.J. Dec. 15, 2015) (statements that company achieved "increased market penetration"); *In re Smith & Wesson Holding Corp. Sec. Litig.*, 604 F. Supp. 2d 332, 342 (D. Mass. 2009) (statements regarding past demand and backlog orders); *In re Par Pharm. Secs. Litig.*, 2009 WL 3234273, at *10 (D.N.J. Sept. 30, 2009) (SEC filings containing historical facts); *In re Computer Assocs. Class Action Secs. Litig.*, 75 F. Supp. 2d 68, 73 (E.D.N.Y. 1999) (statement that there was "strong worldwide demand").

[9] The press release regarding the Cresval transaction quotes the CEO of Tess, Jeff Mason. (*See* CCAC ¶ 186.) The Riot Blockchain Defendants are not even the "makers" of this statement. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 143 n.6 (2011).

the company's stock . . . ."  (Opp. at 57.)  *First*, accusations that certain Defendants participated in pump-and-dump scheme at ***other companies*** have no bearing on whether the Riot Blockchain Defendants' statements were false and misleading.  Moreover, the recent SEC settlements of Messrs. Honig and Groussman, neither of whom are Riot Blockchain Defendants, did not result in any admissions or findings of fact whatsoever (*see* DePalma Decl., Ex. 3).  *Second*, Riot's extensive investments in the cryptocurrency business demonstrate that Riot was fulfilling its plan to gain "exposure to the blockchain ecosystem through targeted investments in the sector, with a primary focus on the Bitcoin and Ethereum blockchains."  (CCAC ¶¶ 166, 169, 172, 178, 186, 195.)  Thus, Lead Plaintiff's contention rests entirely on the erroneous and non-actionable allegations that the investments were wasteful and involved undisclosed related parties.[10]

### B. Lead Plaintiff Fails to Specifically Allege that the Riot Blockchain Defendants Acted with Scienter

#### 1. *The Unrelated Honig Action and the SEC Subpoena Does Not Create an Inference of Scienter*

The crux of Lead Plaintiff's scienter argument is (1) that "defendants have engaged in similar misconduct on other occasions" and (2) that the SEC issued a subpoena to Riot.  (Opp. at 42, 45.)  The argument is unavailing.

The SEC's allegations in the *Honig* action do not pertain to any purported misconduct at Riot, and therefore do not create any inference of scienter against the Riot Blockchain Defendants.  *In re Intelligroup Secs. Litig.*, 527 F. Supp. 2d 262, 284 (D.N.J. 2007) ("[P]laintiffs'

---

[10] In a footnote, Lead Plaintiff claims that Messrs. O'Rourke and McGonegal's SOX certifications were false because they "could not have truthfully fulfilled their responsibilities under SOX while signing Riot's false and misleading Form S-3s."  (Opp. at 40 n.47.)  Setting aside the fact that Riot's Form S-3s were not false or misleading, *see supra*, Section II(A)(1), the Corrected Complaint fails to allege any facts pertaining to Riot's internal structure for financial reporting and controls.  *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 2011 WL 4357368, at *22 (S.D.N.Y. Sept. 19, 2011) (holding that the plaintiffs' conclusory allegations of the lack of the company's internal controls could not survive a motion to dismiss).

allegations as to defendants' motive to defraud investor with respect to a certain matter cannot be matched with plaintiffs' facts that defendants committed fraud with respect to another matter.").[11]  But even if the Court accepts that the allegations contained in the *Honig* action are relevant, it still would not support a strong inference of scienter because neither the *Honig* action nor settlements resulted in any factual determinations or any admissions of fault.  *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) (holding SEC settlement agreements that "were largely legal conclusions" failed to allege a strong inference of scienter).  Moreover, Lead Plaintiff's reliance on *Gelfer v. Pegasystems, Inc.*, 96 F. Supp. 2d 15 (D. Mass. 2000) is misplaced.  (*See* Opp. at 42.)  *Gelfer* involved similar allegations against the exact same defendants concerning their accounting practices ***at the exact same company***.  *See id.* at 15.[12]

The SEC subpoena issued to Riot also does not create a strong inference of scienter against the Riot Blockchain Defendants.  "An SEC investigation that has not resulted in charges or any finding of wrongdoing does not support an inference of scienter."  *In re Hertz Glob. Holdings, Inc. Secs. Litig.*, 2017 WL 1536223, at *17 (D.N.J. Apr. 27, 2017), *aff'd sub nom.* 905 F.3d 106 (3d Cir. 2018) (listing cases).  Lead Plaintiff fails to cite any binding authority to the contrary.  Lead Plaintiff relies on this Court's decision in *Hull v. Glob. Digital Sols., Inc.*, 2017 WL 6493148 (D.N.J. Dec. 19, 2017), but *Hull* provides no help.  The Court credited the defendants' ***admissions*** in the SEC's civil enforcement proceedings concerning their knowledge

---

[11] Mr. O'Rourke is the only Riot Blockchain Defendant involved in the *Honig* action.  However, the *Honig* action has not resulted in findings of fact against Mr. O'Rourke and does not concern Mr. O'Rourke's conduct at Riot.

[12] None of the cases cited by Lead Plaintiff supports his broad assertion.  *See In re Qwest Commc'ns Int'l, Inc. Secs. Litig.*, 387 F. Supp. 2d 1130, 1147 (D. Colo. 2005) (finding the "scope and magnitude of the accounting manipulations and misrepresentations" support inference of scienter, but not involving defendants' purported misconduct at different companies); *In re Enron Corp. Secs., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 689 (S.D. Tex. 2002) (allowing allegations of defendants' time-barred conduct at Enron to support allegations of scheme liability and scienter).

of a transaction at issue in a related matter. *Id.* at \*22. By contrast, the SEC's subpoena has not resulted in any admissions or findings of facts supporting any of Lead Plaintiff's allegations.[13]

> 2.  *The Riot Blockchain Defendants Did Not Have Motive and Opportunity to Commit Securities Fraud*

Lead Plaintiff contends that he has pled allegations supporting motive and opportunity, which lends to an inference of scienter. (Opp. at 43.) The allegedly undisclosed related party transactions do not supply the Riot Blockchain Defendants with any motive. (Opp. at 43.) None of the Riot Blockchain Defendants are alleged to have personally benefited from those transactions, (*see* CCAC ¶¶ 166–88). *See Wilson v. Bernstock*, 195 F. Supp. 2d 619, 633 (D.N.J. 2002) (motive necessitates that individual "stood to gain in a concrete and personal way from one or more of the allegedly false or misleading statements and wrongful nondisclosures").

Lead Plaintiff only alleges that Mr. O'Rourke received a personal benefit via his stock sales during the Class Period. (Opp. at 44.) However, courts "'will not infer fraudulent intent from the mere fact that some officers sold stock.'" *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 279 (3d Cir. 2009). Lead Plaintiff must allege that the stock sales "'were unusual in scope or timing . . .'" to support an inference of scienter. *Id.* Lead Plaintiff provides "no information as to whether such trades were normal and routine for [him]." *Burlington Coat Factory*, 114 F.3d at 1423. In fact, Lead Plaintiff sold 22,500 shares of Riot stock just three days before Mr. O'Rourke's sale of 30,383 shares. (*Compare* Dkt. No. 17-2, Ex. C *with* CCAC ¶

---

[13] Lead Plaintiff relies on out-of-circuit authority that, at best, indicate that pending SEC investigations might contribute to a finding of scienter, but cannot independently support a strong inference of scienter. *Washtenaw Cty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 114 (D. Mass. 2014) ("[G]overnmental investigation[s] can be considered in an analysis of scienter, although it is insufficient in and of itself."); *In re Gentiva Secs. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (same); *Eastwood Enters., LLC v. Farha*, 2009 WL 3157668, at \*4 (M.D. Fla. Sept. 28, 2009) (finding investigations into the company by multiple government agencies bolstered inference of scienter that was already supported by confidential witnesses and by the company's admissions of wrongdoing contained in a deferred prosecution agreement).

308.)[14]  Mr. O'Rourke sold less than 10 percent of his overall position in Riot (CCAC ¶ 337),

which suggests that his sales were not unusual in scope.  *See Ronconi v. Larkin*, 253 F.3d 423,

435 (9th Cir. 2001) (stock sales of 10 and 17 percent of executives' holdings were not suspicious

in amount).  Moreover, Mr. O'Rourke sold his shares ***after*** the purported fraud was already

disclosed, making it improbable that his trades were made pursuant to a pump-and-dump

scheme.  (*See, e.g.*, CCAC ¶¶ 299, 301.)[15]

> 3.   *Messrs. O'Rourke and Beeghley's Statements Regarding Riot Do Not
>      Create Any Inference of Scienter*

Lead Plaintiff asserts that Messrs. O'Rourke and Beeghley's statements regarding Riot's

operations and business "implied that they had first-hand knowledge of the subject."  (Opp. at

44.)  Lead Plaintiff's argument is absurd.  A company's executives opining on their general

expertise regarding the blockchain industry does not suggest that they had first-hand knowledge

of any fraud.[16]  These statements imply Messrs. O'Rourke and Beeghley's general knowledge of

Riot's business (i.e., its strategic investments in cryptocurrency businesses).  (*See, e.g.*, CCAC ¶

247 (quoting Mr. Beeghley's statement that Riot had invested in cryptocurrency business to

allow "shareholders [to] participate in this very exciting industry that's like the beginning of the

internet"), *id.* ¶ 283 (quoting Mr. O'Rourke's statement that Riot had tried to provide

---

[14] Riot's replacement of its auditor at the end of the year did not stem from "any disagreements
as defined in Item 304 of Regulation S-K . . . on any matter of accounting principles or practices
. . . ."  (Zaccaro Reply Decl., Ex. G at 2 (attaching January 4, 2018 Form 8-K).)  Riot canceled
the 2017 Annual Shareholder meeting for the lack of a quorum.  (CACC ¶ 320.)

[15] It is typical for investors to sell stock at the end of the year for tax purposes, as both Plaintiff
and Mr. O'Rourke did.

[16] For these same reasons, Lead Plaintiff's reliance on the "core operations" doctrine does not
bolster the inference of scienter, (*see* Opp. at 49).  *See In re Heartland Payment Sys., Inc. Secs.
Litig.*, 2009 WL 4798148, at *8 (D.N.J. Dec. 7, 2009) (rejecting core business doctrine where
there were no facts suggesting that the fraud was ever conveyed to the individual defendants);
*see also Nat'l Junior Baseball*, 720 F. Supp. 2d at 556 ("Plaintiff cannot rely on this doctrine
when it has failed to allege other individualized allegations that [the CEO and CFO] had
knowledge of the facts at issue.").

shareholders with investment exposure to blockchain technologies).)  Lead Plaintiff provides no

authority indicating an inference of scienter should be drawn from such general statements.[17]

4.      *Mr. O'Rourke's Resignation Does Not Support an Inference of Scienter*

"For a resignation to add to an inference of scienter, a pleading must set forth allegations

suggesting a compelling inference that the resignation was the result of something other than 'the

reasonable assumption that the resignation occurred as a result of' the release of bad news."

*Hertz Glob.*, 905 F.3d at 118.  Lead Plaintiff does not connect Mr. O'Rourke's resignation to the

release of any bad news concerning Riot.  Instead, Lead Plaintiff attempts to connect Mr.

O'Rourke's departure to the SEC's filing of the *Honig* action—which, again, did not involve

Riot whatsoever.  (CCAC ¶¶ 201, 203.)  It is certainly not unusual for an executive to step down

to avoid management distractions when facing significant personal lawsuits unrelated to their

corporate position.  Since the Corrected Complaint lacks any "particularized allegations

connecting" Mr. O'Rourke's resignation to the alleged fraud at Riot, the Court should not draw

an inference of scienter.[18]

---

[17] Lead Plaintiff relies on cases involving factual representations that are far more specific than
Messrs. O'Rourke and Beeghley's public statements.  *See In re PTC Therapeutics, Inc. Secs.
Litig.*, 2017 WL 3705801, at *16 (D.N.J. Aug. 28, 2017) (finding defendants' statements
regarding the outcome of clinical trials for a drug implied that the defendants had first-hand
knowledge of the actual results of the clinical trials); *S. Ferry LP #2 v. Killinger*, 687 F. Supp. 2d
1248, 1260 (W.D. Wash. 2009) (finding a CEO's numerous statements demonstrated his
"intimate knowledge" of the company's information delivery, risk-management structure, and
hedging capacity suggested that his misrepresentations on those topics were made with scienter).

[18] Cases cited by Lead Plaintiff do not support the sweeping assumption that Mr. O'Rourke's
resignation creates any inference of scienter.  *See Se. Pa. Transp. Auth. v. Orrstown Fin. Servs.,
Inc.*, 2016 WL 466958, at *5 (M.D. Pa. Feb. 8, 2016) (for purposes of a motion for leave to
amend, the court could not conclude that the amendments failed to support a reasonable
inference of scienter); *In re Heckmann Corp. Secs. Litig.*, 869 F. Supp. 2d 519, 536 (D. Del.
2012) (involving an executive's resignation followed by the company's lawsuit against him); *Par
Pharm.*, 2009 WL 3234273, at *2 (finding an executive's departure supportive of scienter
because he resigned due to the results of an independent investigation).

5.     *The SOX Certifications Do Not Add to an Inference of Scienter*

Lead Plaintiff contends the SOX certifications signed by Messrs. O'Rourke, Beeghley, and McGonegal create a strong inference of scienter.  (Opp. at 48.)  However, an erroneous SOX certification supports an inference of scienter only if the "complaint asserts facts indicating that . . . defendants knew or consciously avoided any meaningful exposure to the information that was rendering their SOX certification erroneous."  *Intelligroup*, 527 F. Supp. 2d at 290 ("*de minimis*" weight afforded to SOX certifications).  The Corrected Complaint lacks specific allegations establishing that Messrs. O'Rourke, Beeghley, and McGonegal ***knew*** that the SOX certifications were false, such as facts regarding Riot's accounting practices or any facts "indicating a breakdown in [Riot]'s internal controls."  *City of Roseville Empls. Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 419 (D. Del. 2009).  Lead Plaintiff's conclusory allegations regarding Riot's internal controls do not support an inference of scienter.

6.     *Taken Together, Lead Plaintiff Fails to Allege a Cogent and Compelling Inference of Scienter*

Collectively, the non-fraudulent inferences far outweigh any inference that the Riot Blockchain Defendants acted with scienter.  Lead Plaintiff relies primarily on the unrelated *Honig* action and the SEC's subpoena issued to Riot, neither of which has resulted in any admissions or findings of fact involving the Riot Blockchain Defendants.  (Opp. at 42, 45–47, 50.)  Lead Plaintiff also fails to allege any motive on behalf of the Riot Blockchain Defendants; Lead Plaintiff only points to the timing of Mr. O'Rourke's stock sales—which occurred after the purported fraud was disclosed and three days after Lead Plaintiff's own sales.  Even if stock sales are relevant, Messrs. Beeghley and McGonegal lack of stock sales during the Class Period undermines a finding of scienter.  *Nat'l Junior Baseball*, 720 F. Supp. 2d at 550.  To make

matters worse, Lead Plaintiff offers no witnesses, sources, or documents that evince Messrs. O'Rourke, Beeghley, or McGonegal's knowledge or reckless disregard of any fraud.

III.   **THE "SCHEME LIABILITY" CLAIM IS NOT VIABLE**

Lead Plaintiff attempts to save the misrepresentations and omissions claims by recasting them under "scheme liability." (Opp. at 54–59.) Lead Plaintiff concedes, however, that scheme liability requires a "deceptive or manipulative act" and scienter. (*Id.* at 54.) The only deceptive or manipulative acts that Lead Plaintiff attributes to the Riot Blockchain Defendants are the allegedly fraudulent statements and/or omissions addressed above. (*See id.* at 55–56.) Since the Riot Blockchain Defendants did not make or disseminate any fraudulent statements or omissions, let alone with the requisite scienter, the scheme liability claim fails as a matter of law.

Even assuming the Supreme Court's holding in *Lorenzo v. S.E.C.*, 139 S. Ct. 1094 (2019) applies to actions subject to the Reform Act,[19] the case provides no aid to Lead Plaintiff. (*See* Opp. at 54–55.) In *Lorenzo*, the Court assumed that the defendant helped disseminate fraudulent and misleading statements and acted with scienter. 139 S. Ct. at 1100, 1102. Since the defendant was not the "maker" of the statements, however, the question before the Court was whether the defendant could be held liable under scheme liability. *Id.* In sharp contrast, here, Lead Plaintiff has not adequately alleged fraudulent and misleading statements *or* that the Riot Blockchain Defendants acted with scienter. *Lorenzo* is thus inapplicable.

IV.   **THE SECTION 20(A) CLAIM SHOULD BE DISMISSED**

The Court should also dismiss the Section 20(a) claim. *First*, Lead Plaintiff does not allege a primary violation of the Exchange Act, and therefore cannot allege a violation of Section 20(a). *See Sapir v. Averback*, 2016 WL 554581, at \*14 (D.N.J. Feb. 10, 2016). *Second*, Lead

---

[19] The pleading requirements of the Reform Act do not apply to actions brought by the SEC. *See S.E.C. v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005).

Plaintiff fails to "state with particularity the circumstances of [ ] the defendants' control of the primary violator . . . ." *In re Digital Island Secs. Litig.*, 223 F. Supp. 2d 546, 561 (D. Del. 2002). Lead Plaintiff relies only on Messrs. O'Rourke, Beeghley, and McGonegal's positions as senior executives, and their authority to "make public statements and sign SEC filings on Riot's behalf." (Opp. at 60.) Lead Plaintiff instead must offer specific allegations that suggest that Messrs. O'Rourke, Beeghley, and McGonegal managed Riot's day-to-day affairs and of their actual control over the purportedly fraudulent conduct. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (CEO not alleged to direct the day-to-day affairs of a corporation was not a controlling person over the challenged transaction). *Third*, as explained above, Lead Plaintiff has not alleged particularized facts that suggest Messrs. O'Rourke, Beeghley, or McGonegal acted with the requisite scienter. *See Monk v. Johnson & Johnson*, 2012 WL 1884037, at *2 (D.N.J. May 22, 2012) (allegations of control person liability insufficient because plaintiff failed to meet the scienter requirement of the Reform Act).[20]

## V.   CONCLUSION

Accordingly, the Riot Blockchain Defendants respectfully request that the Court dismiss in their entirety the Section 10(b) and Section 20(a) claims brought against them.

DATED:       October 22, 2019          PAUL HASTINGS LLP
                                       By:  /s/ *Chad J. Peterman*
                                       _____
                                            CHAD J. PETERMAN
                                       Attorneys for Defendants
                                       RIOT BLOCKCHAIN, INC., JOHN O'ROURKE,
                                       MICHAEL BEEGHLEY, AND JEFFERY G.
                                       MCGONEGAL

---

[20] The Riot Blockchain Defendants recognize that this Court has found that "culpable participation does not have to be plead in order to survive a motion to dismiss." *Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 645 (D.N.J. 2003). Nevertheless, courts have required culpable participation to be pled. *See Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 425 (E.D. Pa. 2019). Here, Lead Plaintiff has not pled "particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud." *In re Cendant Corp. Secs. Litig.*, 76 F. Supp. 2d 539, 548–49 n.5 (D.N.J. 1999).