## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, JEFFREY G. McGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES, and ERIC SO,<br><br>Defendants. | Civil No. 3:18-CV-02293(FLW)(ZNQ)<br><br>MOTION DATE:  November 4, 2019<br><br>**ORAL ARGUMENT REQUESTED** |

---

### REPLY BRIEF IN SUPPORT OF DIRECTOR DEFENDANTS' JOINDER AND MOTION TO DISMISS THE CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

---

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*ANDREW KAPLAN, ERIC SO, AND JASON LES*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................... 1

II.    THE SECTION 10(B) CLAIM AGAINST THE DIRECTOR
       DEFENDANTS SHOULD BE DISMISSED ........................................... 2

    A.     The Corrected Complaint Does Not Adequately Plead that the
             Director Defendants Acted with Scienter ........................................... 2

        1.     *Purported "Schemes and Business Dealings" Do Not
                    Support an Inference of Scienter* ................................................ 3

        2.     *Lead Plaintiff's Motive and Opportunity Allegations Do
                    Not Support an Inference of Scienter* ........................................ 4

        3.     *The Honig Action, Honig Settlements, and SEC
                    Investigation Do Not Support an Inference of Scienter* ............ 5

        4.     *SOX Certifications Do Not Support an Inference of
                    Scienter* ...................................................................................... 5

        5.     *Lead Plaintiff is Not Entitled to a Core Operations
                    Inference of Scienter* .................................................................. 6

        6.     *Non-Fraudulent Inferences are More Cogent and
                    Compelling than Any Fraudulent Inferences* ............................. 6

    B.     Messrs. Les and So Are Not the "Makers" of Any Material
             Misstatements or Omissions ............................................................... 7

    C.     Lead Plaintiff Does Not Plead a Viable "Scheme Liability"
             Claim ................................................................................................... 9

    D.     Lead Plaintiff's Loss Causation Theory is Without Merit ................ 11

III.   THE SECTION 20(A) CLAIM AGAINST THE DIRECTOR
       DEFENDANTS SHOULD BE DISMISSED ......................................... 13

IV.    CONCLUSION ........................................................................................ 15

-i-

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
 No. 11 Civ. 2279, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012)........................4

*In re Am. Bus. Fin. Servs., Inc. Secs. Litig.*,
 413 F. Supp. 2d 378 (E.D. Pa. 2005)....................................................6

*Belmont v. MB Inv. Partners, Inc.*,
 708 F.3d 470 (3d Cir. 2013) ...............................................................15

*Celestial Cmty. Dev. Corp. v. City of Phila.*,
 901 F. Supp. 2d 566 (E.D. Pa. 2012)..................................................14

*In re Cendant Corp. Secs. Litig.*,
 76 F. Supp. 2d 539 (D.N.J. 1999)........................................................14

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
 511 U.S. 164 (1994)............................................................................11

*Doshi v. Gen. Cable Corp.*,
 2015 WL 366644 (E.D. Ky. Jan. 27, 2015)...........................................1

*In re DVI Inc. Secs. Litig.*,
 No. CIV.A. 03-5336, 2013 WL 56073 (E.D. Pa. Jan. 4, 2013) ....................7, 14

*Glazer Capital Mgmt., LP v. Magistri*,
 549 F.3d 736 (9th Cir.2008) ................................................................3

*In re Hertz Glob. Holdings, Inc. Secs. Litig.*,
 No. CV 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017),
 *aff'd sub nom.*, 905 F.3d 106 (3d Cir. 2018) .....................................3, 6

*In re Intelligroup Secs. Litig.*,
 468 F. Supp. 2d 670 (D.N.J. 2006)......................................................11

*Janus Capital Grp., Inc. v. First Derivative Traders*,
 564 U.S. 135 (2011)..................................................................7, 8, 9, 11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Lorenzo v. SEC*,
  139 S. Ct. 1094 (2019)..................................................................................10, 11

*McIntire v. China MediaExpress Holdings, Inc.*,
  927 F. Supp. 2d 105 (S.D.N.Y. 2013) ...............................................................8

*In re Merck & Co., Inc. Secs. Litig.*,
  432 F.3d 261 (3d Cir. 2005) ...........................................................................12

*Monk v. Johnson & Johnson*,
  No. CIV.A. 10-4841 FLW, 2012 WL 1884037
  (D.N.J. May 22, 2012) ......................................................................................15

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010)...............................................................7, 13

*Nelson v. DeVry*,
  No. 074436, 2009 WL 1213640 (E.D. Pa. Apr. 23, 2009)...............................14

*In re Nice Sys., Ltd. Secs. Litig.*,
  135 F. Supp. 2d 551 (D.N.J. 2001)................................................................4, 8

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) .............................................................................4

*Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*,
  No. CIV.A. 06-2204WJM, 2009 WL 4250061
  (D.N.J. Nov. 25, 2009) ......................................................................................7

*In re PDI Secs. Litig.*,
  2006 WL 3350461 (D.N.J. Nov. 16, 2006)........................................................7

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013) .............................................................................6

*In re Retek Inc. Secs. Litig.*,
  621 F. Supp. 2d 690 (D. Minn. 2009) ..............................................................13

-iii-

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Royal Dutch/Shell Transp. Secs. Litig.*,
  No. 04–374 (JAP), 2006 WL 2355402 (D.N.J. Aug. 14, 2006)..........................10

*S.E.C. v. Mercury Interactive, LLC*,
  No. 5:07–cv–02822–WH, 2011 WL 5871020
  (N.D. Cal. Nov. 22, 2011) ....................................................................................9

*Sapir v. Averback*,
  No. CV147331JLLJAD, 2016 WL 554581 (D.N.J. Feb. 10, 2016) ..................14

*Schwartzman v. Morningstar, Inc.*,
  No. CIV.A. 12-1647, 2014 WL 3843875 (E.D. Pa. Aug. 5, 2014)......................7

*Stanley Black & Decker, Inc. v. Gulian*,
  70 F. Supp. 3d 719 (D. Del. 2014) ....................................................................14

*Teamsters Local 456 Pension Fund v. Universal Health Servs.*,
  No. CV 17-2817, 2019 WL 3886839 (E.D. Pa. Aug. 19, 2019) ..........................5

*In re U.S. Bioscience Secs. Litig.*,
  806 F. Supp. 1197 (E.D. Pa. 1992).......................................................................9

*Utesch v. Lannett Co.*,
  316 F. Supp. 3d 895 (E.D. Pa. 2018)....................................................................6

*Utesch v. Lannett Co.*,
  385 F. Supp. 3d 408 (E.D. Pa. 2019)..................................................................14

*Wilson v. Bernstock*,
  195 F. Supp. 2d 619 (D.N.J. 2002)......................................................................4

*Winer Family Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007) ................................................................................2

*XOMA Corp. Secs. Litig.*,
  No. C-91-2252 TEH, 1990 WL 357807 (N.D. Cal. Dec. 27, 1991) ...................9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

15 U.S.C.

§ 78j ("Section 10(b)") ...............................................................2, 6, 15

§ 78t(a) ("Section 20(a)") ....................................................2, 13, 14, 15

§ 78u-4 (Private Securities Litigation Reform Act of 1995 (the "Reform Act")) ...........................................................................2, 9, 15

§ 78m (Securities Exchange Act of 1934 (the "Exchange Act")).................2, 14

## I.    INTRODUCTION

The Opposition fails meaningfully to address the arguments raised by the Director Defendants.[1]  Lead Plaintiff "state[s] a bevy of general allegations related to scienter, perhaps attempting to make up in quantity what they lack in substance." *Doshi v. Gen. Cable Corp.*, 2015 WL 366644, at *6 (E.D. Ky. Jan. 27, 2015).  The bevy of general allegations are particularly weak here, as almost none involve the Director Defendants at all, let alone establish that they "knew and/or recklessly disregarded" the alleged fraud.  (CCAC ¶ 375.)  Instead, the Opposition sweeps Director Defendants under the catchall of "Defendants" to mask the failure to offer specific allegations about Director Defendants in the Corrected Complaint.

The scheme liability and loss causation allegations fare not better.  Lead Plaintiff builds a theory of scheme liability based entirely on the Director Defendants having committed deceptive acts via false and/or misleading statements.  The Director Defendants, however, never disseminated any false or misleading statements.  Likewise, Lead Plaintiff premises allegations of loss causation on information concerning the Kairos transaction, but that same information had been revealed to the market months earlier.  Confirmatory

---

[1] Defendants use the defined terms set forth in their Motion (*see* Dkt. No. 108). Defendants refer to Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Corrected Consolidated Amended Class Action Complaint (Dkt. No. 136) herein as "Opp." or "Opposition."

information already known to the market does not constitute a corrective disclosure for purposes of loss causation.

Similarly, Lead Plaintiff devotes a footnote to address whether Messrs. Les or So were the "makers" of any materially false and/or misleading statements. Relying on a single, pre-Reform Act case, Lead Plaintiff erroneously opines that "it is appropriate to hold them responsible" because they were directors and members of the Audit Committee. (Opp. at 34 n.43) The argument is meritless.

Last, the Corrected Complaint does not adequately allege a claim against the Director Defendants under Section 20(a). Lead Plaintiff fails to plead with particularity a primary violation of the Exchange Act, Director Defendants' "control" over a primary violator, or Director Defendants' culpable participation and/or scienter.

## II. THE SECTION 10(B) CLAIM AGAINST THE DIRECTOR DEFENDANTS SHOULD BE DISMISSED

### A. The Corrected Complaint Does Not Adequately Plead that the Director Defendants Acted with Scienter

The Reform Act "requires [Lead Plaintiff] to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions." *Winer Family Tr. v. Queen*, 503 F.3d 319, 335–36 (3d Cir. 2007). The Opposition is noticeably bereft of arguments or citations addressing scienter

for each of the Director Defendants.[2]  Indeed, the Opposition serves only to

highlight the fatal flaws with Corrected Complaint's scienter allegations.

> 1.  *Purported "Schemes and Business Dealings" Do Not Support an Inference of Scienter*

The Opposition contends that an inference of scienter is warranted because

"defendants have engaged in similar misconduct on other occasions."  (Opp. at 42.)

Lead Plaintiff ignores, however, that the "similar misconduct" does not involve

either Riot or any of the Director Defendants.  (*See id.* (citing CCAC ¶¶ 81–102,

357, 360 and referencing only Messrs. O'Rourke, Honig, Stetson, and

Groussman).)  And even if it did, the existence of an SEC probe or a SEC

settlement with does not support such an inference.  *See In re Hertz Glob.*

*Holdings, Inc. Secs. Litig.*, No. CV 13-7050, 2017 WL 1536223, at *17 n.6 (D.N.J.

Apr. 27, 2017), *aff'd sub nom.*, 905 F.3d 106 (3d Cir. 2018) (probe by the SEC

"that has not resulted in charges or any finding of wrongdoing does not support an

inference of scienter"); *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748

(9th Cir.2008) (finding that settlement agreement with SEC by company was "not

sufficient to meet [scienter] pleading requirements" against individual defendant).

---

[2] Lead Plaintiff asserts "[n]umerous allegations go to the Director Defendants' scienter."  (Opp. at 43 n.52 (citing CCAC ¶¶ 184, 221–22, 231–32, 235–36, 272–73, 293, 324, 346).)  However, none of the paragraphs referenced by Lead Plaintiff touch on allegations of scienter.  Lead Plaintiff instead references paragraphs in the Corrected Complaint that contained allegedly misleading statements or omissions, but do not address the Director Defendants' state of mind.  (*See id.*)

2. *Lead Plaintiff's Motive and Opportunity Allegations Do Not Support an Inference of Scienter*

Lead Plaintiff contends that "Defendants were motivated to profit at the expense of Riot's nonaffiliated public . . . ." (Opp. at 43.)  Allegations that officers and directors are motivated by corporate profits do not move the scienter needle. *See, e.g.*, *In re Nice Sys., Ltd. Secs. Litig.*, 135 F. Supp. 2d 551, 584 (D.N.J. 2001) ("[T]he allegation that [d]efendants made false and misleading statements to secure market share is [ ] insufficient to demonstrate that [d]efendants had a motive to commit fraud").  Lead Plaintiff cannot identify any illicit profit obtained by the *Director Defendants*.  *See Wilson v. Bernstock*, 195 F. Supp. 2d 619, 633 (D.N.J. 2002) ("Motive entails allegations that the individual corporate defendants stood to gain in a concrete and personal way from one or more of the allegedly false or misleading statements and wrongful nondisclosures").  Moreover, any inference drawn from Mr. O'Rourke's stock sales cannot be imputed to the Director Defendants.  *See Oran v. Stafford*, 226 F.3d 275, 290 (3d Cir. 2000).[3]

---

[3] Lead Plaintiff's reliance on *In re Advanced Battery Techs., Inc. Secs. Litig.*, No. 11 Civ. 2279, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) is unavailing.  In that case, plaintiffs alleged that foreign investigators uncovered that the company's operations and efficiency could not possibly account for its high profit margins relative to competitors, and also alleged discrepancies over nearly four years that included a reported SAIC operation loss of $1 million compared to a reported SEC profit of $10 million.  *Id.* at *2–*3.  In contrast, Lead Plaintiff makes speculative allegations regarding "various individuals" "business connections," and "co-investments" that *were not* fraudulently omitted from Riot's SEC filings.

### 3. *The Honig Action, Honig Settlements, and SEC Investigation Do Not Support an Inference of Scienter*

The Honig Action and the related settlements do not provide any inference with respect to the Director Defendants. Setting aside the obvious fact that the Honig Action has nothing to do with activities at Riot, none of the Director Defendants are involved in Honig Action or the related settlements. The pending SEC investigation involving Riot also does not implicate the Director Defendants. Regardless, courts in this Circuit afford no weight to SEC investigations that have not resulted in any formal charges or findings of wrongdoing. *See Teamsters Local 456 Pension Fund v. Universal Health Servs.*, No. CV 17-2817, 2019 WL 3886839, at *40 (E.D. Pa. Aug. 19, 2019) ("it is well-established that an 'investigation that has not resulted in charges or any finding of wrongdoing does not support an inference of scienter'").[4]

### 4. *SOX Certifications Do Not Support an Inference of Scienter*

Since none of the Director Defendants signed SOX certifications, they provide no inference of scienter. Even so, a false SOX certification "does not add to the scienter puzzle in the absence of any allegation that the defendant knew he

---

[4] Public statements made by Messrs. O'Rourke and Beeghley concerning Riot's "operations and business" do not provide an inference that Director Defendants acted with scienter. (Opp. at 44.) Likewise, Mr. O'Rourke's departure from Riot does not implicate the Director Defendants' scienter. (*See id.* at 47.) Nor has Lead Plaintiff alleged that the Director Defendants concealed any third-party transactions involving the Director Defendants. (*Id.* at 48.)

was signing a false SEC filing or recklessly disregarded inaccuracies contained in

an SEC filing." *In re Hertz*, 905 F.3d at 118.  The Corrected Complaint is devoid

of any such factual allegations with respect to the Director Defendants.[5]

> ### 5. *Lead Plaintiff is Not Entitled to a Core Operations Inference of Scienter*

The Third Circuit requires Lead Plaintiff to allege "some additional

allegations of specific information conveyed to management and related to fraud"

for the core operations inference to apply, *Rahman v. Kid Brands, Inc.*, 736 F.3d

237, 247 (3d Cir. 2013).  (Opp. at 49.)  The Corrected Complaint contains

absolutely no allegations specific to the Director Defendants connecting them to

the alleged fraud.  *See In re Am. Bus. Fin. Servs., Inc. Secs. Litig.*, 413 F. Supp. 2d

378, 402 (E.D. Pa. 2005) (dismissing Section 10(b) claim against outside director

where plaintiffs failed to allege that the outside director "was an active participant

in the alleged fraudulent scheme")

> ### 6. *Non-Fraudulent Inferences are More Cogent and Compelling than Any Fraudulent Inferences*

Under a holistic assessment of the scienter allegations, non-fraudulent

inferences also far outweigh any fraudulent inferences.  *See, e.g.*, *Utesch v. Lannett*

*Co.*, 316 F. Supp. 3d 895, 902 (E.D. Pa. 2018) ("Read holistically, the scienter

---

[5] Director Defendants believed that that the Corrected Complaint was attributing SOX certifications to Mr. Kaplan.  Lead Plaintiff appears to acknowledge that Mr. Kaplan did not sign SOX certifications.  (*See* Opp. at 48.)

allegations do not give rise to a strong inference that Defendants acted with fraudulent intent . . . .").  Lead Plaintiff offers no internal documents, confidential witnesses, or other sources of information that show "how and in what manner each [Director Defendant] knew the falsity of any given statement." *Pathfinder Mgmt., Inc. v. Mayne Pharma, Inc.*, No. CIV.A. 06-2204WJM, 2009 WL 4250061, at *7 (D.N.J. Nov. 25, 2009).  When coupled with the fact that the Director Defendants received no concrete or personal benefits from the alleged fraud, the non-fraudulent inferences are overwhelming.  *See In re PDI Secs. Litig.*, 2006 WL 3350461, at *16 (D.N.J. Nov. 16, 2006); *see also Nat'l Junior Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 558 (D.N.J. 2010).

## B.  Messrs. Les and So Are Not the "Makers" of Any Material Misstatements or Omissions

The maker of a statement "is the person or entity with ultimate authority over a statement and others are not." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 143 n.6 (2011).  "The maker of the statement is not necessarily the creator of that statement, but rather the party who 'takes credit—or blame—for what is ultimately said.'" *Schwartzman v. Morningstar, Inc.*, No. CIV.A. 12-1647, 2014 WL 3843875, at *17 (E.D. Pa. Aug. 5, 2014).  Thus, the Supreme Court has "ruled that 'attribution is necessary' for any liability under Rule 10b–5(b)." *In re DVI Inc. Secs. Litig.*, No. CIV.A. 03-5336, 2013 WL 56073, at *7 (E.D. Pa. Jan. 4, 2013) (quoting *Janus*).

Lead Plaintiff concedes that Mr. O'Rourke is the sole signatory on the Proxy Statements.  (*See* Opp. at 32 n.41.)  The only allegation in the Corrected Complaint is that Messrs. Les and So "likely approved" the Proxy Statement filed on December 12, 2017.  (CCAC ¶ 185.)[6]  The Supreme Court has categorically rejected the assumption that "approval" of a statement establishes Messrs. Les or So as makers of the statement.  *See Janus*, 564 U.S. at 141 (an individual is not a maker of statement even if the individual "played a role in preparing or approving the content of" the allegedly false prospectuses).  Thus, an allegation of "likely approval" does not support a conclusion that Messrs. Les and So had "ultimate authority" over the Proxy Statements.  *See McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 138 (S.D.N.Y. 2013) (dismissing securities claims against defendant because defendant was not alleged to have "ultimate authority" over the statement); *see also Nice,* 135 F. Supp. 2d at 572–73 (allegations based on information and belief fail to satisfy the PSLRA's requirements if unaccompanied by the source). [7]

Lead Plaintiff argues that "it is appropriate to hold them responsible" because of "Riot's small size and the fact that Les was" active in the industry.

---

[6] Mr. So left Riot's Board in February 2018, so he was not even a member of the Board when the Proxy Statement was filed on March 26, 2018.  (CCAC ¶ 32.)

[7] For these same reasons, Mr. Kaplan also cannot be held liable for statements made in the Proxy Statements.

(Opp. at 32 n.41.)  The only support Lead Plaintiff offers for this position is the pre-Reform Act and pre-*Janus* decision, *In re U.S. Bioscience Secs. Litig.*, 806 F. Supp. 1197, 1203 (E.D. Pa. 1992).  (*Id.*)  *U.S. Bioscience* addressed the question of whether four outside directors who *signed* the SEC filing could be held liable for false and misleading statements contained in the SEC filing.  *Id.* at 1203; *but see XOMA Corp. Secs. Litig.*, No. C-91-2252 TEH, 1990 WL 357807, at *5 (N.D. Cal. Dec. 27, 1991) (holding "no liability against an outside director who signed a group published document because plaintiffs did not claim that the outside director had helped to prepare the document").  Here, in stark contrast, Messrs. Les and So did not sign the Proxy Statements.  *See S.E.C. v. Mercury Interactive, LLC*, No. 5:07–cv–02822–WH, 2011 WL 5871020, at *2 (N.D. Cal. Nov. 22, 2011) (holding that officer's failure to sign statement meant that statements in those filings were not attributable to her under *Janus*).[8]

### C.    Lead Plaintiff Does Not Plead a Viable "Scheme Liability" Claim

Lead Plaintiff does not dispute that a scheme liability claim requires a plaintiff to plead that each defendant "committed a manipulative or deceptive act." (Opp. at 54 (quoting *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 661–

---

[8] Relying on information from outside the Corrected Complaint, Lead Plaintiff claims that a reference to "By Order of the Board" indicates that Messrs. Les and So are the "makers" of statements contained in the Proxy Statements.  (*See* Opp. at 32 n.41.)  Not so.  The Board formally calling the annual meeting does not suggest that they were the maker statements in the Proxy Statements.

62 (D.N.J. 2009)).)  In this case, Lead Plaintiff claims that the manipulative or deceptive act by the Director Defendants occurred via the dissemination of allegedly "false and misleading statements."  (Opp. at 55.)  However, conclusory assertions of manipulative or deceptive acts are not sufficient.  Lead Plaintiff must allege with *specificity* "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed and what effect the scheme had on the securities at issue."  *In re Royal Dutch/Shell Transp. Secs. Litig.*, No. 04–374 (JAP), 2006 WL 2355402, at *7 (D.N.J. Aug. 14, 2006).

Lead Plaintiff does not allege with specificity the manipulative or deceptive acts conducted by the Director Defendants.  *See id.*  Instead, Lead Plaintiff repackages his deficient misrepresentation claims as scheme liability claims.  Inadequately pled misrepresentations cannot form the basis of a scheme liability claim against the Director Defendants.  (*See* CCAC ¶¶ 432–34 (describing Director Defendants' participation in the alleged scheme based solely upon purported misrepresentations and/or omissions).)

Lead Plaintiff's reliance on *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) does not revive Lead Plaintiff's scheme liability theory.  In *Lorenzo*, the Supreme Court assumed that the defendant committed deceptive and manipulative acts by "knowingly disseminating false information to prospective investors."  *Id.* at 1100.  Although the defendant was not the "maker" of the false and misleading

-10-

statements, *see Janus*, 564 U.S. at 146, the Supreme Court held that the defendant could still be held liable under a theory of scheme liability. *Lorenzo*, 139 S. Ct at 1100, 1104. In this case, Lead Plaintiff has not and cannot plead that the Director Defendants "knowingly disseminating false information to prospective investors." *Id.* at 1100; *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177–78 (1994).[9] Moreover, the Corrected Complaint does not plead the requisite level of scienter for any allegedly manipulative acts. As such, *Lorenzo* does not lend support to Lead Plaintiff's scheme liability theory.

## D.   Lead Plaintiff's Loss Causation Theory is Without Merit

Lead Plaintiff acknowledges that he "must plead that defendant's misrepresentation 'concealed something from the market that, when disclosed*, negatively affected the value of the security[,]'" *In re Intelligroup Secs. Litig.*, 468 F. Supp. 2d 670, 692 (D.N.J. 2006). (*See* Opp. at 50–51.) Lead Plaintiff contends that a *CNBC* article published on February 16, 2018, revealed the true nature of Riot's acquisition of Kairos Global Technologies, Inc. ("Kairos"). (*See id.*) Because Riot's stock price allegedly declined following the publication of the

---

[9] The Opposition references "close business, investment, and/or personal ties" between Mr. Honig and certain Defendants, including Messrs. So and Kaplan. (Opp. at 56.) Mr. Kaplan was apparently a Board member of Majesco Entertainment Company when Mr. Honig was CEO. (*See, e.g.*, CCAC ¶ 28.) Mr. So was the chief legal and development officer at MUNDOmedia Ltd., in which Mr. Honig allegedly maintained an investment. (*See, e.g., id.* ¶ 32.) These connections, of course, are not deceptive or manipulative acts, nor were they concealed from investors.

*CNBC* article, Lead Plaintiff contends that loss causation has been adequately pled against the Director Defendants.  (*Id.*)  The argument is unavailing.

Loss causation requires pleading the public revelation of *previously unavailable* unavailable.  *See In re Merck & Co., Inc. Secs. Litig.*, 432 F.3d 261, 270–71 (3d Cir. 2005) (holding that the *Wall Street Journal*'s analysis of previously available information is not a corrective disclosure).  The information regarding the Kairos acquisition was publicly available at least *three months* before the CNBC article was published on February 16, 2018.  (*See* Declaration of Thomas Zaccaro In Support of Reply Briefs in Support of Defendants' Motions to Dismiss and Motion to Strike Improper Allegations and Images from the Corrected Consolidated Amended Class Action Complaint ("Zaccaro Reply Decl."), Ex. C (*Seeking Alpha*, Riot Blockchain:  Sudden Business Pivot, Suspicious Acquisitions, Questionable Special Dividend (Dec. 11, 2017)).)  An article from *Seeking Alpha*, dated December 11, 2017, contains almost verbatim the information referenced in the CNBC article.  (*See id.*)  The article notes that Kairos was formed two weeks before the Riot acquisition, argues that Riot "grossly" overpaid for Kairos, speculates that "Riot's acquisition of Kairos's assets is highly irregular," and questions whether the "selling parties in Kairos transactions were in

any way related." (*Id.* at 2–4.)[10]  Not surprisingly, Lead Plaintiff ignores the previous disclosures because Riot's stock price continued to rise the days and weeks following the publication of the *Seeking Alpha* article.  (*See* Dkt. No. 110, Ex. H.)  As such, Lead Plaintiff has not and cannot plead loss causation with respect to the Kairos transaction.  *See In re Retek Inc. Secs. Litig.,* 621 F. Supp. 2d 690, 705 (D. Minn. 2009) ("[C]onfirmatory information—that information already known to the market—may not constitute such a corrective disclosure").

To the extent that Lead Plaintiff relies on any other "disclosures" generally questioning business practices, those disclosures are too "vague and speculative" for purposes of loss causation.  *Nat'l Junior Baseball*, 720 F. Supp. 2d at 562 n.34.  Therefore, Lead Plaintiff has not sufficiently alleged the element of loss causation.

## III.   THE SECTION 20(A) CLAIM AGAINST THE DIRECTOR DEFENDANTS SHOULD BE DISMISSED

The Corrected Complaint alleges Section 20(a) claims against Messrs. Kaplan and So (CCAC ¶ 436), but provides no defense for those claims in the Opposition.  (*See* Opp. at 60.)[11]  Since Lead Plaintiff fails to address the arguments raised by Messrs. Kaplan and So, their Motion to Dismiss the Section

---

[10] Michael Ho's connection to the transaction was also publicly known; as President of Kairos, Mr. Ho was the named signatory on the Share Exchange Agreement between Kairos and Riot that was filed with the SEC on November 13, 2017.  (Zaccaro Reply Decl., Ex. B (Share Exchange Agreement (Nov. 3, 2017).)

[11] Lead Plaintiff does not allege a Section 20(a) claim against Mr. Les.  (*See* CCAC ¶¶ 435–40.)

20(a) claim should be "granted as uncontested." *Celestial Cmty. Dev. Corp. v. City of Phila.*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012); *see also Nelson v. DeVry*, No. 07-4436, 2009 WL 1213640, at *10 (E.D. Pa. Apr. 23, 2009).

The Court should also dismiss the claim on the merits. *First*, Lead Plaintiff does not allege a primary violation of the Exchange Act, and therefore a Section 20(a) claim cannot stand. *See Sapir v. Averback*, No. CV147331JLLJAD, 2016 WL 554581, at *14 (D.N.J. Feb. 10, 2016). *Second*, Lead Plaintiff is required to establish that Messrs. Kaplan and So "had actual power or influence over the allegedly controlled person." *In re DVI,* 2005 WL 1307959, at *12. Messrs. Kaplan and So's status as directors of Riot is insufficient to establish that they are "control persons." *See Stanley Black & Decker, Inc. v. Gulian*, 70 F. Supp. 3d 719, 732 (D. Del. 2014) ("courts have found that position—such as being a director—is not alone sufficient to establish control over a particular transaction") (citation omitted). *Third*, Lead Plaintiff has not pled culpable participation by Messrs. Kaplan or So. *See Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 425 (E.D. Pa. 2019); *In re Cendant Corp. Secs. Litig.*, 76 F. Supp. 2d 539, 548–49 n.5 (D.N.J. 1999) ("to adequately plead 'culpable participation' by a controlling person, a plaintiff must plead 'particularized facts of the controlling person's conscious misbehavior as a culpable participant in the fraud'"). To the

extent that the Court holds that pleading culpable participation is not required,[12] the claim still fails.  As explained above, Lead Plaintiff has not alleged particularized facts that suggest Messrs. Kaplan or So acted with the requisite scienter.  *See Monk v. Johnson & Johnson*, No. CIV.A. 10-4841 FLW, 2012 WL 1884037, at *2 (D.N.J. May 22, 2012) (Wolfson, J.) (holding that allegations of control person liability insufficient because Section 20(a) failed to meet scienter requirement of the Reform Act).  Accordingly, the Section 20(a) claim should be dismissed.

## IV.    CONCLUSION

For the reasons stated above, the Director Defendants' Motion, and the Riot Blockchain Defendants' moving papers and reply, the Director Defendants respectfully request that the Court dismiss all of the Section 10(b) and Section 20(a) claims brought against them with prejudice.

DATED:      October 22, 2019          PAUL HASTINGS LLP


By: */s/ Chad J. Peterman*
 CHAD J. PETERMAN

 Attorneys for Defendants
 JASON LES, ERIC SO, AND, ANDREW KAPLAN

---

[12] Director Defendants recognize that there remains an unresolved split within the Third Circuit regarding whether "culpable participation" is required to be pled. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 485 (3d Cir. 2013).