## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, JEFFREY G. McGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES, and ERIC SO,<br><br>Defendants. | Civil No. 3:18-CV-02293(FLW)(ZNQ)<br><br>MOTION DATE:  November 4, 2019<br><br>**ORAL ARGUMENT REQUESTED** |

---

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE IMPROPER ALLEGATIONS AND IMAGES FROM THE CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

---

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*RIOT BLOCKCHAIN, INC., JOHN O'ROURKE, MICHAEL BEEGHLEY,*
*JEFFREY G. MCGONEGAL, ANDREW KAPLAN, JASON LES, AND ERIC SO*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................1

II.     ARGUMENT....................................................................................2

A.      The Hospital Allegations Do Not Contradict Any Statements
        Made By Defendants...........................................................2

B.      The Images Embedded in the Corrected Complaint Are
        Inappropriate As They Violate Rule 10(c).........................................8

III.    CONCLUSION ..............................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bristol-Myers Squibb Co. v. IVAX Corp.*,
  77 F. Supp. 2d 606 (D.N.J. 2000).....................................................................2, 6

*Cabot v. Wal-Mart Stores, Inc.*,
  No. CIV 11-0260 JB/RHS, 2012 WL 1378529 (D.N.M.
  Apr. 10, 2012).........................................................................................................8

*Collura v. City of Phila.*,
  No. 2:12-cv-4398, 2012 U.S. Dist. LEXIS 180830 (E.D. Pa.
  Dec. 20, 2012).....................................................................................................2, 7

*EEOC v. Bo-Cherry, Inc.*,
  No. 3:13-cv-00210-MOC-DSC, 2013 U.S. Dist. LEXIS 74627
  (W.D.N.C. May 28, 2013)....................................................................................10

*Galvan v. Yates*,
  No. CV F 05-0986 AWI LJO, 2006 U.S. Dist. LEXIS 38427 (E.D.
  Cal. May 24, 2006)................................................................................................5

*Geinko v. Padda*,
  No. 00 C 5070, 2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 26,
  2002).......................................................................................................................5

*In re MannKind Secs. Actions*,
  835 F. Supp. 2d 797 (C.D. Cal. 2011)................................................................10

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 2:10-CV-0302 MRP, 2011 U.S. Dist. LEXIS 125203 (C.D.
  Cal. May 5, 2011)..................................................................................................4

*Murphy v. Cadillac Rubber & Plastics Inc.*,
  946 F. Supp. 1108 (W.D.N.Y. 1996).....................................................................9

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010).......................................................................6

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Plevy v. Haggerty*,
   38 F. Supp. 2d 816 (C.D. Cal. 1998) ...................................................6

*Rivera v. Robinson*,
   No. CV 18-14005, 2019 WL 1326588 (E.D. La. Mar. 25, 2019) ......................8

*Rose v. Bartle*,
   871 F.2d 331 (3d Cir. 1989) ....................................................9

*Rowan v. Sunflower Elec. Power Corp.*,
   No. 15-CV-9227-JWL-TJJ, 2015 WL 8024320 (D. Kan.
   Dec. 4, 2015)..............................................................8

*Sanchez v. Bay Area Rapid Transit Dist.*,
   No. 13-CV-1885 YGR, 2013 WL 4764485 (N.D. Cal.
   Sept. 5, 2013)............................................................9

*In re Shell Oil Refinery*,
   144 F.R.D. 75 (E.D. La 1992) ...................................................6

*Wiggins v. Philip Morris, Inc.*,
   853 F. Supp. 457 (D.D.C. 1994)..............................................4

## Statutes

15 U.S.C. § 78m ("Securities Exchange Act of 1934") ...........................1

## Other Authorities

Fed. R. Civ. P.
   R. 8.......................................................................8
   R. 9.......................................................................8
   R. 10(c) ..........................................................1, 8, 9, 10
   R. 12(f)...................................................................2

## I.    INTRODUCTION

The Opposition offers no plausible justification for the redundant, immaterial, impertinent, and scandalous allegations in the Corrected Complaint.[1] Allegations, videos, and photographs regarding a hospital visit in connection with purported illicit drug use (i.e., the "Hospital Allegations") that occurred three years before the Class Period have nothing to do with claims alleged under the Securities Exchange Act of 1934 regarding a blockchain company.  This is particularly true, given that none of the people identified in these allegations, photographs, and videos had any connection whatsoever with Riot at the time.  The Hospital Allegations are a blatant attempt by Lead Plaintiff to smear Defendants.  Since the allegations do not offer a better understanding of the claims or perform any useful purpose in promoting just disposition of this litigation, they should be stricken.

Similarly, the Opposition fails to address the incorrect form of pleading in the Corrected Complaint.  Lead Plaintiff simply ignores the pleading requirements under Rule 10(c) of the Federal Rules of Civil Procedure and urges the Court to allow the Images based on a general policy argument that "visual aids" are helpful.

---

[1] Defendants use the defined terms set forth in their Motion (*see* Dkt. No. 111). Defendants refer to Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Strike Improper Allegations and Images from the Corrected Consolidated Amended Class Action Complaint (Dkt. No. 135) herein as "Opp." or "Opposition."

Neither the Federal Rules of Civil Procedure nor the "authority" referenced in the

Opposition provides support for Lead Plaintiff's position.

In sum, the Opposition does nothing to justify the improper inclusion of the

Hospital Allegations and Images in the Corrected Complaint.  Striking the Hospital

Allegations and Images serves to simplify the pleadings and saves the parties time

and expense by excising lurid materials from the Corrected Complaint that have

nothing to do with the claims.  *See Bristol-Myers Squibb Co. v. IVAX Corp.*, 77 F.

Supp. 2d 606, 620 (D.N.J. 2000) (striking allegations irrelevant to plaintiff's

claims because they "are likely to cause unfair prejudice to [the defendant] and

unduly complicate the trial").  As such, Defendants respectfully request the Court

grant the motion to strike.

## II.    ARGUMENT

### A.    The Hospital Allegations Do Not Contradict Any Statements Made By Defendants

Lead Plaintiff does not contest that the Hospital Allegations are

"scandalous" as contemplated under Rule 12(f).  *See* Fed. R. Civ. P. 12(f); *see also*

*Collura v. City of Phila.*, No. 2:12-cv-4398, 2012 U.S. Dist. LEXIS 180830, at

*21-22 (E.D. Pa. Dec. 20, 2012) (scandalous "generally refers to any allegation

that unnecessarily reflects on the moral character of an individual or states

anything in repulsive language that detracts from the dignity of the court").

Instead, Lead Plaintiff contends that the Hospital Allegations show that Honig,

O'Rourke, and Groussman, as well as non-party Kesner, had a "material relationship" outside of being owners of Riot stock (although none is alleged to have Owned Riot stock at the time).  (Opp. at 7-8.)  Lead Plaintiff claims that the purported existence of this "material relationship" contradicts statements made by Riot in various Registration Statements filed with the SEC.  (*Id.* at 8.)  The argument is meritless.

The Registration Statements refer to "material relationships" between Riot and the "selling stockholders."  (*See* CCAC ¶ 389 ("Defendants caused Riot to repeatedly issue stock to retail investors based on the misrepresentation that 'none' of the 'selling stockholders had a material relationship' with Riot or its subsidiaries.").)  A meeting between Honig, O'Rourke, Groussman, and Kesner has no bearing on whether those individuals had a "material relationship" ***with Riot*** several years later.  At most, the meeting suggests that the individuals were acquainted years before Riot became a blockchain company.[2]  Nothing about the Hospital Allegations supports a "material relationship" with Riot of any kind.

Lead Plaintiff's reliance on other spurious justifications for the Hospital Allegations only serves to underscore the weakness of Lead Plaintiff's position.

---

[2] Defendants refer the Court to the detailed arguments in the Riot Blockchain Defendants' Memorandum of Law in Support of the Motion to Dismiss (Dkt. No. 107) that show Lead Plaintiff's blatant misinterpretation of the language in the Registration Statements concerning "material relationships."

Remarkably, Lead Plaintiff claims that the Hospital Allegations are relevant because the "images also independently corroborate the allegations in the SEC's *Honig* Action that 'Honig . . . and O'Rourke were in nearly daily contact . . . .'" (Opp. at 8.)  First, allegations made in an entirely separate SEC action are not relevant to the allegations ***not made*** in the Corrected Complaint.[3]  *See Me. State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 U.S. Dist. LEXIS 125203, at *65 (C.D. Cal. May 5, 2011) ("Plaintiffs cannot rely on allegations from complaints in other cases if the Plaintiffs themselves have not investigated the allegations").  Second, allegations that Honig, O'Rourke, Groussman, and Kesner were at an event together many years ago does not support an inference that Honig and O'Rourke were in daily contact.  Third, the Corrected Complaint already contains allegations regarding Honig's and O'Rourke's relationship (*see, e.g.*, CACC ¶¶ 12-13, 22, 193), making the justification for the Hospital Allegations entirely redundant.  *See Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 457, 458 (D.D.C. 1994) (granting motion to strike plaintiff allegations irrelevant allegations regarding defendant's employee was abusing illegal drugs).

Likewise, Lead Plaintiff makes the specious claim that the Hospital Allegations "support Defendant O'Rourke's alleged statement [in the SEC

---

[3] Lead Plaintiff's reliance on documents and allegations outside the Corrected Complaint highlights the extraordinary lengths Lead Plaintiff must go to justify the inclusion of the Hospital Allegations.

complaint] that 'Barry Honig is a principal investor of our small group.'"  (Opp. at 8).  Lead Plaintiff is again arguing relevance based on allegations made in the SEC complaint, not in the Corrected Complaint.  *See Geinko v. Padda*, No. 00 C 5070, 2002 U.S. Dist. LEXIS 3316, at *21 n.8 (N.D. Ill. Feb. 26, 2002) (holding that plaintiffs could not rely on allegations in a separate SEC complaint).  Moreover, the Hospital Allegations do nothing to support Mr. O'Rourke's alleged statement regarding an investment group, nor does Lead Plaintiff's redundant allegations explain why Mr. O'Rourke's alleged statement requires "corroboration" via the Hospital Allegations.  *See Galvan v. Yates*, No. CV F 05-0986 AWI LJO, 2006 U.S. Dist. LEXIS 38427, at *12 (E.D. Cal. May 24, 2006) (striking declarations that were "in the nature of evidence submitted to bolster Plaintiff's allegation[s] as set forth . . ." in the complaint).

Next, Lead Plaintiff seeks to justify the Hospital Allegations by stating that they are included to contradict a statement by Kesner, Honig's attorney, that "'he didn't know anything about Riot Blockchain and Barry Honig . . . .'"  (Opp. at 8.)  The argument is meritless and clearly a mischaracterization of the statements.  First, the same article that Lead Plaintiff relies on states that Kesner separately represented Honig during various points of time.  (*See* CACC ¶ 337.)  SEC filings also disclose that Kesner was the manager of Paradox Capital Partners LLC ("Paradox"), a "selling stockholder" of Riot.  (*See, e.g.*, Dkt No. 136-1,

Declaration of Joseph J. DePalma in Support of Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Corrected Amended Consolidated Class Action Complaint, Ex. 30 at 10-14.)  The isolated statement is obviously a reference to Kesner's knowledge of the allegations made against Riot and Honig, and not whether Kesner knows anything about Riot *or* Honig.  *Bristol-Myers Squibb Co.*, 77 F. Supp. 2d at 620 (striking allegations that were "superfluous to the 'real issues' of [litigation] . . . .").

Second, and equally as important, Kesner's statements are not relevant to whether the Defendants committed securities fraud.  *See Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 550 (D.N.J. 2010) (non-party actions do not establish scienter on the part of the defendants); *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 834 n.12 (C.D. Cal. 1998) ("[non-defendant] transactions are irrelevant to alleging scienter against the five named Defendants" and their inclusion in the complaint is "misleading").[4]  Lead Plaintiff contends, for the first time in the Opposition, that Kesner's statement shows that he was a

---

[4] Lead Plaintiff relies on a single case, *In re Shell Oil Refinery*, 144 F.R.D. 75, 77 (E.D. La 1992) for the proposition that a court can find a non-party statement relevant.  (Opp. at 8 n.8.)  Lead Plaintiff misses the point.  Kesner's statement is irrelevant to the issue at hand—whether Defendants committed securities fraud.  In contrast, the non-party statement at issue in *Shell Oil Refinery* was "the basis for Shell's claim that the PLC has committed ethical violations."  *Id.* at 77.  Kesner's statement, on the other hand, is not the basis for any of the parties' claims or defenses.

"Selling Stockholder" with a "material relationship" to Riot.  (Opp. at 8.)  Yet,

Kesner's relationship with a Selling Stockholder, Paradox, was disclosed by Riot.

(Declaration of Thomas A. Zaccaro in Support of Reply Briefs in Support of

Defendants' Motions to Dismiss and Motion to Strike Improper Allegations and

Images from the Corrected Consolidated Amended Class Action Complaint, Ex. A

(Riot Blockchain, Inc. Form S-3 (Feb. 7, 2018)), at 9.)  Paradox itself did not have

a separate "material relationship" with Riot.  (*See id.*)  There was clearly nothing

misleading about this disclosure.  In any event, the Hospital Allegations do nothing

to establish a "material relationship" between any of the parties or non-parties.

They are improperly offered to impugn the character of anyone connected to Riot.

*See Collura,* No. 2:12-cv-4398, at *21-22.

Last, Lead Plaintiff claims that the Hospital Allegations are appropriate

"even though they may be scandalous or prejudicial."  (Opp. at 10.)[5]  The

argument simply assumes that the Hospital Allegations are relevant to this action.

(*See id.*)  They are not.

---

[5] Lead Plaintiff contends that Defendants "overlook[ed] . . . allegations of Honig's
potentially illegal conduct  . . . may be relevant to Plaintiff's allegations."  (Opp. at
10 n.11.)  Defendants have not overlooked any allegations.  Instead, Lead Plaintiff
is conflating allegations regarding Honig, who is a named defendant, with
irrelevant allegations related to a non-defendant.  Moreover, any illegal conduct
related to the Hospital Allegations has nothing to do with the allegations in the
Corrected Complaint.

**B.      The Images Embedded in the Corrected Complaint Are Inappropriate As They Violate Rule 10(c)**

Lead Plaintiff argues that inclusion of Images in the Corrected Complaint is appropriate because "illustrative pictures in pleadings is an increasingly recommended practice for improving clarity." (Opp. at 3.)  This is a policy argument that is unsupported by the Federal Rules of Civil Procedure.

The Opposition does not address the limitations governing the content of pleadings set forth in Rule 10(c).  *See Cabot v. Wal-Mart Stores, Inc.*, No. CIV 11-0260 JB/RHS, 2012 WL 1378529, at *7 (D.N.M. Apr. 10, 2012) ("the plain language of the applicable federal rules does not contemplate objects, such as photographs, within the body of parties' pleadings").[6]  Instead, Lead Plaintiff relies on articles regarding "Appellate Advocacy," brief writing, and, "Appellate Brief Writing" to justify the improper use of the Images in the Corrected Complaint. (*Id.*)  Lead Plaintiff is confusing the content of "pleadings" with the content of briefs or other advocacy materials that are designed to analyse evidence.  None of the articles plausibly suggests that Rule 10(c) permits illustrations embedded in court *pleadings*.

---

[6] "[A]s other courts have observed, the Federal Rules 'consistently describe pleadings as containing 'statements' and 'allegations', *see* Fed. R. Civ. P. 8, 9, and such language does not contemplate photographs or other objects." *Rivera v. Robinson*, No. CV 18-14005, 2019 WL 1326588, at *4 (E.D. La. Mar. 25, 2019); *see also Rowan v. Sunflower Elec. Power Corp.*, No. 15-CV-9227-JWL-TJJ, 2015 WL 8024320, at *2 (D. Kan. Dec. 4, 2015) (same).

Lead Plaintiff's reliance on a complaint filed by the Federal Trade Commission (FTC) is similarly unavailing.  (*Id.* (citing *In the Matter of Apple Inc.*, 2015-1 Trade Cas. (CCH) ¶ 17050 (MSNET Mar. 25, 2014).)  The fact that the FTC appears to have filed a pleading in violation of Rule 10(c)—which went unchallenged by Apple Inc.—does not support Lead Plaintiff's inclusion of the Images in the Corrected Complaint.

While Rule 10(c) allows Lead Plaintiff to incorporate exhibits into the pleadings, the incorporation of exhibits only encompasses "written instruments" and requires such instruments to be attached to, rather than embedded in, the complaint.  Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Murphy v. Cadillac Rubber & Plastics Inc.,* 946 F. Supp. 1108, 1115 (W.D.N.Y. 1996) ("A 'written instrument' is a document evidencing legal rights or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement.").[7]  The Images are neither "written instruments," nor attached as exhibits to the Corrected Complaint.  *See Rose v.*

---

[7] Lead Plaintiff, for example, relies on *Sanchez v. Bay Area Rapid Transit Dist.*, No. 13-CV-1885 YGR, 2013 WL 4764485 (N.D. Cal. Sept. 5, 2013), but that case involved photographs attached to the complaint.  *Id.* at *9  While Defendants respectfully disagree with *Sanchez* that photographs can be *attached* to a complaint under Rule 10(c), Lead Plaintiff did not attach the Images to the Corrected Complaint.  Instead, Lead Plaintiff embedded the Images into the pleading.  Thus, *Sanchez* is distinguishable.

*Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (holding that an affidavit is not a "written instrument" under Rule 10(c)).[8]  Lead Plaintiff nevertheless argues that the Corrected Complaint "will lose the substantive text embedded within those images" that purportedly supports Lead Plaintiff's claims.  (Opp. at 4.)  Yet, the Opposition, without the benefit of the Images, provides the same information that Lead Plaintiff claims would be lost if the Images are stricken.  (*See id.* at 4-5.) Lead Plaintiff even quotes the exact words displayed in the Images in the body of the Corrected Complaint.  (*See* CCAC ¶ 283 (". . .CBS TechRepublic published further footage of O'Rourke's interview in which O'Rourke touted Riot as a means for investors to 'Get Started with Blockchain Tech.'").)

Finally, Lead Plaintiff claims that the Images should not be stricken because the Corrected Complaint is not evidence and is generally inadmissible as evidence during trial.  (Opp. at 6-7.)  Although Defendants accept Lead Plaintiff's concession that the Images in the Corrected Complaint cannot be introduced as evidence during trial, the concession does not save the Images from being stricken. *EEOC v. Bo-Cherry, Inc.,* No. 3:13-cv-00210-MOC-DSC, 2013 U.S. Dist. LEXIS 74627, at *7-8 (W.D.N.C. May 28, 2013) (cases "unequivocally hold that

---

[8] Lead Plaintiff's citation to *In re MannKind Secs. Actions*, 835 F. Supp. 2d 797 (C.D. Cal. 2011) is also inapposite.  That case held that an *expert report* properly found as a "written instrument" could be permitted to be *attached* to the complaint, not that an *image* could be *embedded* within the pleadings.

photographs should not be attached as exhibits to either a complaint or an answer").[9]

## III.  CONCLUSION

For the foregoing reasons, as well as those in Defendants' Motion to Strike, Defendants respectfully request that the Court strike the Hospital Allegations and the Images from the Corrected Complaint.

---

[9] The Opposition relies on a court decision declining to strike evidentiary material in a *pro se* prisoner's complaint.  (*See* Opp. at 6 (citing *Johnson v. Van Boening*, No. C08-5428FDB-KLS, 2009 WL 1765768, at *2 (W.D. Wash. June 18, 2009)).)  The court relied on the extraordinarily liberal approach taken by the Ninth Circuit to pleadings by *pro se* prisoners as the basis for the decision.  *See id.*

DATED:  October 22, 2019

PAUL HASTINGS LLP

By:  */s/ Chad J. Peterman*
        CHAD J. PETERMAN

chadpeterman@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

Attorneys for Defendants
RIOT BLOCKCHAIN, INC.,
JOHN O'ROURKE, MICHAEL
BEEGHLEY, JEFFREY G.
MCGONEGAL, ANDREW
KAPLAN, JASON LES, AND ERIC
SO