## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CREIGHTON TAKATA, Individually and
on behalf of all others similarly situated,

                Plaintiff,

    vs.

RIOT BLOCKCHAIN, INC. F/K/A,
BIOPTIX, INC., JOHN O'ROURKE, and
JEFFREY MCGONEGAL,

                Defendants.

Civil Action No.: 18-2293(FLW)(TJB)

*ORAL ARGUMENT REQUESTED*

### DEFENDANT BARRY C. HONIG'S REPLY BRIEF IN SUPPORT OF HIS MOTION TO DISMISS LEAD PLAINTIFF'S CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

SHEPPARD, MULLIN, RICHTER &
  HAMPTON LLP

*Attorneys for Defendant Barry C. Honig*

Dated:  October 21, 2019

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

ARGUMENT .......................................................................................................3

I.    PLAINTIFF'S DOZENS OF BELATEDLY-SUBMITTED EXHIBITS ARE
      INAPPROPRIATE, IRRELEVANT AND SHOULD BE DISREGARDED. ...................3

II.   THE SOLE CAUSE OF ACTION AGAINST MR. HONIG SHOULD BE
      DISMISSED BECAUSE IT FAILS TO PLEAD HIS PARTICIPATION IN ANY
      "SCHEME" WITH THE HEIGHTENED FACTUAL PARTICULARITY
      REQUIRED BY RULE 9(B) AND THE PSLRA. .............................................4

      A.    Neither The Corrected Complaint Nor The Opposition Identify A Single
            Deceptive or Manipulative Act Committed By Mr. Honig. ...................4

      B.    The Opposition's Reliance Upon Lorenzo v. SEC in Regards to the Claims
            Against Honig is Misplaced, Because Honig Did Not Disseminate Any
            Information. ........................................................................10

      C.    Neither the Corrected Complaint Nor the Opposition Identify Any Facts
            Specifically Relating To Mr. Honig Which Giver Rise To A Strong
            Inference That Mr. Honig Acted With Scienter......................................12

      D.    Neither the Corrected Complaint Nor the Opposition Identify Facts
            Showing That Mr. Honig Caused Plaintiff's Loss.................................13

CONCLUSION .................................................................................................15

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Adami v. Cardo Windows, Inc.*
No. 12-2804 (JBS/JS), 2013 U.S. Dist. LEXIS 102447 . (D.N.J. July 23, 2013) ......................................................................................................................3

*Burlington Coat Factory Sec. Litig.*
114 F.3d 1410 (3d Cir. 1997)......................................................................................3

*California Public Employees' Ret. Sys. v. Chubb Corp.*
394 F.3d 126 ..............................................................................................................14

*De Vito v. Liquid Holdings Grp., Inc.*
No. 15-cv-06969, 2018 WL 6891832 (D.N.J. Dec. 31, 2018)....................................4

*Dura Pharmaceuticals, Inc. v. Broudo*
544 U.S. 336 (2005)....................................................................................................13

*Eli Lilly & Co. v. Roussel Corp.*
23 F. Supp. 2d 460 (D.N.J. 1998) ...............................................................................3

*In re Exxon Mobil Corp. Sec. Litig.*
387 F. Supp. 2d 407 (D.N.J. 2005), *aff'd*, 500 F.3d 189 (3d Cir. 2007), *as amended* (Nov. 20, 2007)............................................................................................12

*Goel v. Bunge, Ltd.*
820 F.3d 554 (2d Cir. 2016)........................................................................................4

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*
286 F.3d 613 (2d Cir.2002)......................................................................................2, 8

*Janus Capital Group, Inc. v. First Derivative Traders*
564 U. S. 135, 131 S.Ct. 2296 (2011)........................................................................10

*Liberty Nat. Ins. Holding Co. v. Charter*
734 F.2d 545 (11th Cir.1984) ..................................................................................2, 8

*Lorenzo v. Securities Exchange Commission*
___ U.S. ___, 139 S.Ct. 1094 (2019).....................................................................10, 11

*McCarthy v. Dun & Bradstreet Corp.*
482 F.3d 184 (2d Cir. 2007).......................................................................................4

*Motient Corp. v. Dondero*
529 F.3d 532 (5th Cir. 2008) ..................................................................................2, 8

*In re Royal Dutch/Shell Transp.*
  No. 04-374(JAP), 2006 WL 2355402 (D.N.J. Aug. 14, 2006)...........................................4, 12

*S.E.C. v. Lucent Techs., Inc.*
  610 F. Supp. 2d 342 (D.N.J. 2009) .......................................................................4, 5, 6

*Securities & Exchange Comm. v. Lorenzo*
  872 F.3d 578 (D.C. Cir. 2017) ...........................................................................10

*Stichting Pensioenfonds ABP v. Merck & Co.*
  2012 WL 3235783 (D.N.J. Aug. 1, 2012) ...............................................................1

*Winer Family Trust v. Queen*
  503 F.3d 319 (3d Cir. 2007)..............................................................................1

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*
  655 F.3d 1039 (9th Cir. 2011) .........................................................................11

Statutes

15 U.S.C. § 78u–4(b)(1) and (2) ........................................................................ *passim*

Private Securities Litigation Reform Act of 1995,
  15 U.S.C. § 78u-4, et seq. ..................................................................1, 3, 4, 11, 12

Securities and Exchange Act *§ 13(d)*........................................................................7, 8

Other Authorities

Rules of Civil Procedure Rule 9(b) ....................................................................1, 4, 14

## INTRODUCTION

The Rule 9(b) and PSLRA[1] requirements for pleading a security fraud claim are straightforward: as to each named defendant, the complaint must allege with particularity the role of each defendant, what specific wrongful act or omission each defendant committed, and with respect to each act or omission, the complaint must allege with particularity facts giving rise to a strong inference that each defendant acted with scienter.[2] A complaint's failure to comply with any of these specific pleading requirements mandates dismissal. 15 U.S.C. § 78u–4(b)(3)(A).

Nowhere in his 158-page Corrected Complaint, 60-page Omnibus Opposition or his wildly excessive 480 pages of supplemental exhibits, does Plaintiff state facts specifying what allegedly wrongful thing shareholder Barry Honig did in connection with his investment in Riot Blockchain. The Corrected Complaint and Opposition also do not contain a single sentence specifically identifying facts giving rise to any inference, much less the requisite *strong* inference, that Mr. Honig acted with fraudulent intent. By failing to identify such specific facts in the Opposition, Plaintiff effectively concedes that the Corrected Complaint fails to assert a claim against Mr. Honig with the heightened particularity required by Rule 9(b) and the PSLRA.

The only cause of action alleged against Mr. Honig in the Corrected Complaint is a claim for violation of Rule 10b-5(a) and (c), which is colloquially referred to as a "scheme liability" claim. This kind of claim can survive dismissal only if the complaint pleads facts showing that the defendant engaged in "manipulative acts" that distort market activity, such as wash sales, matched orders, or rigged prices. Mr. Honig pointed out in his motion that the Corrected Complaint does not contain any such allegations; the Opposition confirms as much by its silence on the point.

---

[1] Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, et seq. ("**PSLRA**").

[2] See 15 U.S.C. § 78u–4(b)(1) and (2); *Winer Family Trust v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007)("The PSLRA requires [plaintiffs] to specify the role of each defendant, demonstrating each Defendant's involvement . . . ."); *Stichting Pensioenfonds ABP v. Merck & Co.*, 2012 WL 3235783, at *7 (D.N.J. Aug. 1, 2012).

Rather than identifying the sort of facts necessary to plead the existence of a Rule 10b-5(a) or (c) claim, the Opposition instead exhausts the reader with overlong references to things that <u>cannot</u> serve as the basis of an actionable claim against Mr. Honig under Rule 10b-5(a) or (c). To wit:

- The Opposition recounts Mr. Honig's and other defendants' investments in dozens of companies ***other than Riot Blockchain***. It is axiomatic that Mr. Honig can not be liable to Riot Blockchain shareholders for any investments he made in other companies;

- The Opposition expends dozens more pages arguing that certain of Riot's SEC filings were false and misleading; however, these facts, even if true, provide no basis for a claim against Mr. Honig, because Mr. Honig is not alleged to have created or disseminated any of those statements;

- The Opposition and Corrected Complaint whine that Mr. Honig "hid" the fact that he had a history of co-investing in other companies with several of the other defendants. But this was not a secret; evidence of several of the defendants' past co-investments was publicly disclosed in documents that Plaintiff himself located on the SEC website and submitted with his Opposition; and,

- Lastly, the Opposition argues that Mr. Honig "violated a duty" to "promptly" disclose his sales of Riot stock.[3] But even if Mr. Honig did not disclose his sales in a sufficiently prompt fashion (which Mr. Honig denies), as a matter of law he owed no "duty" to Riot shareholders, and as a matter of law no private right of action exists for a shareholder's failure to promptly report sales.[4]

Plaintiff's entire case against Mr. Honig is a house of cards built upon two baseless and conclusory contentions: (1) that because Mr. Honig *knew* some Riot insiders, he *controlled* them;

---

[3] See Opposition at p. 2.

[4] *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 620 (2d Cir.2002); *Motient Corp. v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008); *Liberty Nat. Ins. Holding Co. v. Charter*, 734 F.2d 545, 564 n. 41 (11th Cir.1984).

and (2) because Mr. Honig was accused of doing something improper in connection with three out of the hundreds of companies in which he has invested over decades,[5] it must be concluded that he did the same thing at Riot. Conclusory allegations such as these, without factual support, do not meet the heightened standards for pleading fraud under the PSLRA.

Riot Blockchain had a Board and Officers who were responsible for running the company and did so; Mr. Honig was a shareholder of Riot, who had no responsibility for running the Company. Plaintiff cannot point to a single fact showing that Mr. Honig directed or controlled the actions of Riot's officers and directors, or engaged in any manipulative act. The Corrected Complaint's Second Cause of Action asserted against Mr. Honig should be dismissed, with prejudice.

## ARGUMENT

### I.     PLAINTIFF'S DOZENS OF BELATEDLY-SUBMITTED EXHIBITS ARE INAPPROPRIATE, IRRELEVANT AND SHOULD BE DISREGARDED.

Plaintiff submitted a declaration containing forty-seven exhibits in support of his Opposition. The majority of those exhibits are not attached to or referenced anywhere in the Corrected Complaint.[6] The declaration includes several charts and graphs, the factual basis for which are not identified. Plaintiff does not request the Court to take judicial notice of any of these materials.

The Court should not consider any of the submitted documents. As a general matter, courts ruling on a motion to dismiss may not consider matters extraneous to the complaint. *Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). This is because a "complaint may not be amended by the briefs in opposition to a motion to dismiss." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 493 (D.N.J. 1998) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Courts in this district and elsewhere often reject

---

[5] The Opposition repeatedly notes that Mr. Honig and Mr. O'Rourke co-invested in at least 75 companies together [CCAC ¶¶ 5, 29], but were only sued in connection with three of those investments.

[6] *See* Exhibits 7-14, 17, 19-22, 26-27, 30-31, and 36-47 to the Declaration of Joseph J. DePalma.

exhibits submitted in opposition to motions to dismiss, because those documents are outside the four corners of the complaint. See, *Adami v. Cardo Windows, Inc.,* No. 12-2804 (JBS/JS), 2013 U.S. Dist. LEXIS 102447 at *7-8.  (D.N.J. July 23, 2013)(when ruling on a  motion to dismiss, the court did not "consider[] any of [the] documents because they [were] outside the four corners of the Amended Complaint."); *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir. 2007) ("In general, our review [of motions to dismiss] is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference."); *see also*, *Goel v. Bunge, Ltd*., 820 F.3d 554, 559 (2d Cir. 2016) (vacating district court's order granting a motion to dismiss because the district court impermissibly considered materials outside the pleadings);

**II.     THE SOLE CAUSE OF ACTION AGAINST MR. HONIG SHOULD BE DISMISSED BECAUSE IT FAILS TO PLEAD HIS PARTICIPATION IN ANY "SCHEME" WITH THE HEIGHTENED FACTUAL PARTICULARITY REQUIRED BY RULE 9(B) AND THE PSLRA.**

**A.     Neither The Corrected Complaint Nor The Opposition Identify A Single Deceptive or Manipulative Act Committed By Mr. Honig.**

Plaintiff agrees that to adequately plead a claim for violation of Rule 10b–5(a) and (c), a plaintiff must plead with particularity: (1) that each defendant committed a deceptive or manipulative act, (2) in furtherance of an alleged scheme to defraud, (3) with scienter, and (4) reliance. Opposition at 54 (*citing Trustcash Holdings, Inc. v. Moss*, 668 F.Supp.2d 650, 661-62 (D.N.J. 2009)); *accord S.E.C. v. Lucent Techs., Inc*., 610 F. Supp. 2d 342, 350 (D.N.J. 2009). To avoid dismissal, each of these elements must be pleaded with factual particularity including "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed and what effect the scheme had on the securities at issue." *In re Royal Dutch/Shell Transp.*, No. 04-374(JAP), 2006 WL 2355402, at *7 (D.N.J. Aug. 14, 2006). A "manipulative act" is an act that goes beyond a misrepresentation or omission and generally is "intended to mislead investors by artificially affecting market activity, such as wash sales, matched orders, or rigged prices." *See De Vito v. Liquid Holdings Grp., Inc.*, No. 15-cv-

06969, 2018 WL 6891832, at *41-43 (D.N.J. Dec. 31, 2018) (*quoting Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476 (1977)). For a "scheme liability" claim to survive dismissal, a plaintiff must identify deceptive or manipulative acts that are separate and apart from any alleged misrepresentations or omissions that form the basis of a Rule 10b-5(b) claim. *Lucent Techs.,* 610 F. Supp. 2d at 361.

Plaintiff's Complaint does not come close to meeting the heightened standards for pleading a scheme liability claim against Mr. Honig. The Corrected Complaint does not identify any specific "manipulative act" done by Mr. Honig. Rather, the Corrected Complaint points to inherently benign acts such as buying/selling Riot stock, and having existing relationships with certain people, and then with nothing more, attempts to bootstrap those facts into a "scheme." A close examination of the few specific statements made about Honig in the Opposition are instructive:

> *"Honig . . . maintained close business, investment, and/or personal ties to nearly every Individual Defendant in this case, including O'Rourke, Beeghley, Stetson, Groussman, Defrancesco, Kaplan and So."*[7]

There is, of course, nothing improper about a person being acquainted with officers, directors or other shareholders of a company in which one makes an investment. To plead an actionable claim against Mr. Honig, Plaintiff must plead facts explicitly showing that Mr. Honig committed a manipulative act in furtherance of a fraudulent scheme. The "close ties" that the Corrected Complaint mentions come nowhere close to being a "manipulative act."

The Corrected Complaint alleges only the following sparse allegations regarding the individuals named above. Defendant Kaplan joined Riot's Board in May 2017. [CCAC ¶ 32]. The only "tie" alleged between he and Mr. Honig is that Kaplan previously had been the director of a company in which Mr. Honig invested. [CCAC ¶¶ 67, 119]. There are no allegations that Mr. Honig had anything to do with Mr. Kaplan's appointment to Riot's Board, that Kaplan was

---

[7]  Opposition at p. 56.

directed by Mr. Honig to do any act in his position as a Riot Director, and there is no allegation that the two of them even communicated with each other during the Class Period.[8]

Eric So joined Riot's Board on October 23, 2017 [CCAC ¶ 32], after the Company changed its business model and made several acquisitions, and he served for only a short time until February 2018. [*Id*.]  Similar to defendant Kaplan, his <u>only</u> alleged "tie" to Mr. Honig is that he previously served as the chief legal and development officer at a company in which Mr. Honig invested. [*Id*.]  The CCAC does not allege Mr. So of doing anything in particular, does not allege that Mr. Honig had anything to do with his appointment to Riot's Board, and does not even allege if Mr. Honig and Mr. So even really know each other.

Defendants Stetson, Groussman and Defrancesco were outside investors in Riot. While it is not disputed that Mr. Honig had, at previous times, invested in other companies with these people, the Corrected Complaint contains no allegations showing that any of them "coordinated" their investments in Riot beyond purchasing shares in a private placement. Further, the Corrected Complaint contains no allegations establishing that any of them had any control or influence over the Company's Board or Management.

As to defendant O'Rourke, it is not disputed that he also had previously invested in some of the same companies in which Mr. Honig invested, and that the two of them shared office space. But those facts are a far cry from the factually baseless conclusion to which Plaintiff jumps, which is that sharing office space with someone establishes "control" over that person.

> "Beginning in 2016, Honig used these close ties to gain control the Company [sic] through coordinated share purchases of Bioptix stock with many of these same defendants"[9]

---

[8]  Mr. Honig noted in his Motion that the Plaintiff did not identify a single "communication that Mr. Honig had with any Riot director or officer during the Class Period." Honig Br. p. 2. In response, the Opposition argues that "Honig communicated with Riot's officers and directors on numerous occasions," citing only paragraphs 6, 134, 332 and 337 of the CCAC. [Opp. At p. 57, n. 71].  But paragraphs 6 and 134 of the CCAC concern *pre-Class Period* communications concerning Vanaxis, paragraph 332 is an excerpt from a CNBC report in which O'Rourke said "he was [present] for a meeting with Honig,"and paragraph 337 is an excerpt from a CNBC report in which Mr. Honig says only that he and O'Rourke "speak often." This is hardly the type of particularized pleading of facts necessary to sustain a fraud cause of action.

As noted above and in Mr. Honig's motion to dismiss, there simply are no facts alleged which establish that Mr. Honig controlled Riot or directed the decisions of its Board of Directors. Mr. Honig owned less than 10% of Riot's outstanding stock during the alleged Class Period. While he was acquainted with some other Riot shareholders, the Corrected Complaint does not assert any facts establishing that Mr. Honig coordinated his voting or sales of Riot stock with any of those persons.

> *"Honig and DeFrancesco, working together, were able place others within Honig's inner circle, namely Beeghley, O'Rourke, Kaplan, and So, in positions of management and/or on Riot's board of directors"[10]*

The Corrected Complaint does not allege any facts establishing that Mr. Honig had anything to do with the appointment of Kaplan and So to Riot's Board. It is undisputed that Mr. Honig nominated Beeghley and O'Rourke to the Company's Board (when it was still called Venaxis) in January 2017 as part of a proxy contest.  But so what? Mr. Honig, like any shareholder, had the right to nominate new directors. The nominations occurred long before the putative Class Period in this case. Once those new directors were on the Company's Board, they, not Mr. Honig, were responsible for making business decisions for the Company. And they did so independently. There are no facts alleged showing that Mr. Honig "controlled" or "directed" the Board in any way.

> *"Once in control, Honig, Defrancesco and these newly placed insiders took steps to hide their control through false and misleading Forms S-3/A and Proxy Statements, and other beneficial ownership disclosure violations under Section 13(d) of the Securities and Exchange Act."[11]*

The Corrected Complaint does not allege a single fact establishing that Mr. Honig had anything to do with the drafting, filing of dissemination of Riot's Forms S-3/A, Proxy Statements or any of the Company's other SEC filings. The assertion that Mr. Honig committed "beneficial ownership disclosure violations under Section 13(d) of the Securities Exchange Act" is denied,

---

[9]  Opposition at p. 56.

[10]  Opposition at p. 56.

[11] Opposition, pp. 56-57.

and more importantly, even if true is non-actionable: there exists no private right of action for a disclosure violation under Section 13(d). *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 620 (2d Cir.2002) ("Courts in this circuit have consistently declined to imply a cause of action for shareholders under § 13(d)"); *Motient Corp. v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008)("No other Circuit has found a private right of action for money damages under Section 13(d)."); *Liberty Nat. Ins. Holding Co. v. Charter*, 734 F.2d 545, 564 n. 41 (11th Cir.1984) ("there is no basis in the statute's language for implying a private right of action in anyone, and . . . [its] legislative history contains no suggestion that Congress intended such a right of action.").

> *"Honig's insiders 'generate[d] a misleading picture of market interest in the company's stock, priming investor interest,' by touting a series of acquisitions that (1) obscured Honig and other Defendants' personal financial interests, or otherwise (2) were of questionable tangible benefit to Riot Blockchain"[12]*

The accuracy of any disclosures made by Riot were the sole responsibility of, and were in fact made by, the Company's management; not by Mr. Honig. The Corrected Complaint does not assert a single fact alleging that Mr. Honig played any role in the drafting or dissemination of information about Riot. Likewise, any and all acquisitions made by Riot were the responsibility of Riot's management, subject to approval by Riot's Board. There are no facts alleged establishing that Mr. Honig had any influence over Riot's business decisions or even communicated with the Board about those decisions during the alleged Class Period.

In any event, Mr. Honig's motion to dismiss demonstrates that the acquisitions did in fact provide substantial tangible financial benefits to Riot and all of its shareholders. Riot tripled the value of the assets on its balance sheet, and added a viable revenue stream which in its first year generated over *ten times* the revenue that the Company generated in the prior five years combined. *See* Mr. Honig's Motion to Dismiss at § I.F., and evidence cited therein.

---

[12] Opposition, p. 57.

-8-

*"Honig made numerous false and misleading public statements in SEC filings and on CNBC . . . ."* [13]

This assertion, buried in a footnote of the Opposition, is outrageously wrong and completely unsupportable. Plaintiff cites four paragraphs of the Corrected Complaint in support ¶¶ 134, 323, 334 and 337; but in the Complaint, Plaintiff does not allege that <u>any</u> of the statements were false.

- Paragraph 134 contains excerpts from Mr. Honig's pre-Class Period letter notifying the Company's then-CEO of Mr. Honig's intention to commence a proxy fight; there is nothing false stated in the letter.

- Paragraph 323 references a Form S-3 filed by Riot, the drafting and filing of which Mr. Honig had nothing to do with.

- Paragraphs 334 and 337 are excerpts from CNBC reports in which Mr. Honig was quoted as making non-controversial statements such as "I'm a successful investor," "I'm a comfortable person," and "My history of investing's pretty good."

That *these* statements are the only ones that Plaintiff attempts to pin on Mr. Honig, speaks to how baseless the claim against Mr. Honig really is.

*"Plaintiff has also alleged numerous suspicious insider sales by Honig . . ."* [14]

No, Plaintiff has not. Mr. Honig was not an "insider" – he was an outside shareholder of Riot. Plaintiff does not allege any facts suggesting that Mr. Honig traded upon "inside" information, either. Quite to the contrary, the sales by Mr. Honig noted in the Corrected Complaint [*see* CCAC ¶¶ 160-63], were made *after* Riot publicly disclosed truthful positive news to the public. There is nothing "suspicious" about an investor taking profits following a positive increase in an investment's value; as evidenced by Riot's trading volume during this period, many other shareholders were doing the same thing.

---

[13] Opposition, p. 53, n. 63.

[14] Opposition, p. 45, n. 55 (*citing* CCAC ¶¶ 160-63).

> "*Before Riot's investors (other than the Individuals Defendants) learned of, among other things, Honig's highly unusual ties to O'Rourke (Riot's CEO and Board Chairman) and what this could portend for the Company's future prospects, Mr. Honig [sold his shares]*"[15]

It is unclear what Plaintiff means by use of the term "unusual relationship." If he means that Mr. Honig and Mr. O'Rourke knew each other and had previously made investments together, that was no secret. Plaintiff himself submitted with his Opposition numerous documents publicly available through the SEC Edgar system, from 2016, which show that Mr. Honig and Mr. O'Rourke both invested in a company called PolarityTE. If Plaintiff could review SEC filings to glean this information, so could have anyone else.

The more important points are, first, whether the "relationship" between Mr. O'Rourke and Mr. Honig was required to be disclosed by SEC regulations; the answer to this first question is "no."[16] Secondly, even if some disclosure was required, that would be the responsibility of Riot, not Mr. Honig. Mr. Honig cannot be held liable for any failure of the Company to satisfy a reporting obligation. Third, and most significantly, whether Messrs. Honig and O'Rourke knew each other is completely irrelevant to whether Mr. Honig violated Rule 10b–5(a) and (c). What *is* relevant is whether the Corrected Complaint alleges facts showing that Mr. Honig committed a deceptive or manipulative act. The Corrected Complaint simply does not allege any facts on that score.

### B.    The Opposition's Reliance Upon *Lorenzo v. SEC* in Regards to the Claims Against Honig is Misplaced, Because Honig Did Not Disseminate Any Information.

The Opposition trumpets the recent decision in *Lorenzo v. Securities Exchange Commission*, ___ U.S. ___, 139 S.Ct. 1094 (2019) as providing a legal basis for Plaintiff's Rule 10b-5(a) and (c) scheme liability claim against Mr. Honig.  It does not. At most, *Lorenzo* only extends liability under Rule 10b-5(a) and (c) to a person who "disseminates" false or misleading statements – Mr. Honig is not alleged to have made or disseminated any false or misleading statement about Riot.

---

[15] Opposition, p. 57.

[16] *See*, Riot Blockchain's Motion to Dismiss.

*Lorenzo* concerned an appeal from an SEC enforcement action against a defendant who represented himself as "Vice President-Investment Banking" for a registered broker-dealer. The defendant sent two emails to prospective investors at the direction of his boss, who supplied the content and approved the messages. Both e-mails stated that they were sent "[a]t the request of " the defendant's boss. Those emails contained false and misleading information about the client's business; the defendant knew the information he was forwarding contained false or misleading statements.

The SEC brought an enforcement action. It determined that defendant violated Rule 10b-5, and issued a $15,000 fine and bar order. Defendant appealed. He argued that he could not be held liable under Rule 10b-5(b), which prohibits "mak[ing] any untrue statement of a material fact," because he was not the "maker" of the statements in the emails at issue within the meaning of *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U. S. 135, 131 S.Ct. 2296 (2011).[17] The D.C. Circuit Court of Appeals agreed. *See Securities & Exchange Comm. v. Lorenzo,* 872 F.3d 578 (D.C. Cir. 2017). The Court of Appeals nevertheless held that defendant's conduct violated Rule 10b-5(a) and (c) which prohibit "employ[ing] any device, scheme, or artifice to defraud" and "engag[ing] in any act, practice, or course of business which operates or would operate as a fraud or deceit." The D.C. Circuit's decision conflicted with decisions in other Circuits holding that alleged misconduct involving misstatements in violation of Rule 10b-5(b) cannot also give rise to "scheme liability" under Rule 10b-5(a) and (c). *See, e.g., WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039 (9th Cir. 2011).

The Supreme Court affirmed the decision of the D.C. Circuit, relying heavily upon the plain language of the Rule and dictionary definitions of its terms. "It would seem obvious that the words in [Rule 10b-5(a) and (c)] are, as ordinarily used, sufficiently broad to include within

---

[17] In *Janus*, the Supreme Court was confronted with the question of who was a "maker" subject to liability under the provisions of Rule 10b–5(b), which forbids the "mak[ing]" of "any untrue statement of a material fact." The Court held that the "*maker* of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." 564 U.S. at 142 (emphasis added).  .

their scope the dissemination of false or misleading information with the intent to defraud." The

Court also seemed influenced by its view of the egregiousness of the facts of the case:

> [W]e see nothing borderline about this case, where the relevant
> conduct (as found by the [SEC]) consists of disseminating false or
> misleading information to prospective investors with the intent to
> defraud. And while one can readily imagine other actors
> tangentially involved in dissemination—say, a mailroom clerk—
> for whom liability would typically be inappropriate, the petitioner
> in this case sent false statements directly to investors, invited them
> to follow up with questions, and did so in his capacity as vice
> president of an investment banking company.

*Lorenzo*, 139 S.Ct. at 1101.

The Supreme Court expressly limited its decision to situations involving a person who

***disseminated*** a false or misleading statement. *Id.* at 1100-01. ("we conclude that . . .

dissemination of false or misleading statements with intent to defraud can fall within the scope of

subsections (a) and (c) of Rule 10b–5, as well as the relevant statutory provisions. In our view,

that is so even if the disseminator did not 'make' the statements and consequently falls outside

subsection (b) of the Rule.")

*Lorenzo* is clearly distinguishable to this case on its facts – Mr. Honig is not alleged to

have either made or disseminated any statements about Riot.

### C.     Neither the Corrected Complaint Nor the Opposition Identify Any Facts Specifically Relating To Mr. Honig Which Giver Rise To A Strong Inference That Mr. Honig Acted With Scienter.

The PSLRA requires a complaint to plead facts "giving rise to a strong inference that the

defendant acted with the required state of mind," as required by the PSLRA's heightened

pleading standards. 15 U.S.C. § 78u–4(b)(2). "[A] plaintiff may establish the [PSLRA's]

requisite strong inference of scienter by stating either: "(1) facts which show that defendants had

both motive and opportunity to commit fraud"; or (2) "by setting forth facts that constitute

circumstantial evidence of either recklessness or conscious behavior." *In re Royal Dutch*, 2006

WL 2355402, at *3.

Mr. Honig pointed out in his original moving papers that the Corrected Complaint's generalized boilerplate scienter allegations were precisely the type of pleading that this Court found deficient in *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 428 (D.N.J. 2005), *aff'd*, 500 F.3d 189 (3d Cir. 2007), *as amended* (Nov. 20, 2007). In response, the Opposition did not address *Exxon* at all, nor does the Opposition point to any specific allegation of fact giving rise to an inference that Mr. Honig (distinct from other defendants) acted with fraudulent intent. The Opposition points to facts alleged in the Corrected Complaint which Plaintiff suggest raise an inference of *other* defendants' scienter, but nothing connected to Mr. Honig aside from the conclusory assertion that he has "multifarious and intertwined relationships" with certain of the other defendants. *See* Opp. at 41-48 and 59-60.

Lastly, Mr. Honig noted in his Motion the existence of certain facts which tend to negate any inference that he acted with scienter; specifically, that Mr. Honig sold large amounts of his Riot stock *before* the alleged price inflation scheme commenced,[18] and then he later *bought* $500,000 of Riot shares in December 2017 as the stock price neared its all-time high.  [CCAC ¶ 189]. The Opposition completely avoids addressing these facts, which are precisely the opposite actions of a person alleged to be participating in a stock price inflation scheme.

### D.     Neither the Corrected Complaint Nor the Opposition Identify Facts Showing That Mr. Honig Caused Plaintiff's Loss.

To adequately plead a Section 10(b) claim, a plaintiff must allege a defendant's misrepresentation or other fraudulent conduct proximately caused the plaintiff's economic loss. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

The Opposition confirms that all of Plaintiff's alleged loss was caused by pulic representations that Mr. Honig had no role in making or disseminating. The Opposition states:

> *"The Complaint alleges that Riot's stock price was inflated by material misstatements*
> *and omissions concerning (1) the Selling Stockholders' 'material relationship' with the*

---

[18] *See* CCAC ¶¶ 143, 154 and 158; *see also* discussion at page I.C., *infra,* and Weber Decl. Exs. F, G and H.

> *Company; (2) the legitimacy of Riot's purported 'strategic transactions and investments;*
>
> *and (3) the Company's purported 'business strategy' and 'explosive growth.'"*

Opposition at p. 53. Mr. Honig had nothing to do with any of the disclosures of which Plaintiff complaints. The Corrected Complaint does not allege that Plaintiff's loss was actually caused by any specific act done by Honig. Nor can Plaintiff point to a single statement made by Mr. Honig upon which Plaintiff relied. Because Lead Plaintiff fails to allege causation and reliance, and his Section 10(b) and Rule 10b-5(a) and (c) claim against Mr. Honig should be dismissed.

## CONCLUSION

For the reasons set forth above and in his motion to dismiss, Mr. Honig respectfully asks the Court to grant his motion to dismiss Count II of the Corrected Complaint for failure to state a claim pursuant to Rules of Civil Procedure 9(b) and 12(b)(6), and the PSRLA. As the Corrected Complaint is the fourth failed attempt to plead a claim against Mr. Honig, further leave to amend would be futile, so Mr. Honig accordingly asks that the dismissal be made with prejudice. *See California Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 166 at fn. 28 (3d Cir. 2004) (district court properly dismissed claims with prejudice where the district court found that further amendment would be futile).

Respectfully submitted,

Dated:  October 22, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 653-8700

By:  /s/ *Tyler E. Baker*
      Tyler E. Baker, ESQ.
      New Jersey Bar No. 44392011
      tbaker@sheppardmullin.com

and

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Robert D. Weber (admitted *pro hac vice*)
1901 Avenue of the Stars, 16th Floor
Los Angeles, CA 90067
(310) 228-3700

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Christopher Bosch (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, NY 10112
(212) 653-8700