# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>　　v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, JEFFREY G. MCGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES and ERIC SO,<br><br>　　Defendants. | Civil Action No. 18-cv-2293 (FLW) (ZNQ)<br><br>*Document electronically filed*<br><br>**Oral Argument Requested**<br><br>**DEFENDANT MARK GROUSSMAN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS** |

KEVIN G. WALSH
kwalsh@gibbonslaw.com
KATE E. JANUKOWICZ
kjanukowicz@gibbonslaw.com
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
Tel:　973.596.4769
Fax:　973.639.6470

PERRIE M. WEINER (*pro hac vice* to be filed)
perrie.weiner@backermckenzie.com
EDWARD D. TOTINO (*pro hac vice* to be filed)
edward.totino@backermckenzie.com
BAKER & MCKENZIE LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067
Tel:　310.201.4728
Fax:　310.201.4721

*Attorneys for Defendant Mark Groussman*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... i
I.   INTRODUCTION ........................................................................................................ 1
II.  ARGUMENT ................................................................................................................ 3
   A. As The Opposition Confirms, Plaintiff Does Not And Cannot Allege That Groussman Was Part Of The Purported "Honig Group" ........................................................ 3
   B. Plaintiff's Newly-Minted Theory That Groussman Violated Beneficial Ownership Reporting Requirements Is Both Wrong And Irrelevant ..................................... 4
   C. Plaintiff Effectively Concedes Groussman Made No Misrepresentations ......... 6
   D. Plaintiff's Opposition Fails To Salvage His Flawed Theory Of Loss Causation ............... 8
   E. Plaintiff Fails To Address The Remaining Bases For Dismissal Raised In Groussman's Moving Papers ............................................................................................ 9
      1. *Plaintiff Has Not Pled A "Manipulative" Or "Deceptive" Act* ................................ 9
      2. *The Amended Complaint Fails To Adequately Plead Scienter* ................................ 10
      3. *The Amended Complaint Fails To Adequately Plead Reliance* ............................... 12
   F. Plaintiff Should Not Be Given Further Leave To Amend .............................................. 12
III. CONCLUSION ........................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Able Labs. Sec. Litig.*,
  2008 U.S. Dist. LEXIS 23538 (D.N.J. 2008) ...................................................................9

*Affiliated Ute Citizens of Utah v. United States*,
  406 U.S. 128 (1972) ........................................................................................................12

*In re Allergan Erisa Litig.*,
  2018 U.S. Dist. LEXIS 112127 (D.N.J. July 2, 2018) ....................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..........................................................................................................3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ................................................................................................6

*Caiafa v. Sea Containers Ltd.*,
  525 F. Supp. 2d 398 (S.D.N.Y. 2007) .............................................................................11

*Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2014) ..............................................................................................4

*City of Cambridge Retirement System v. Altisource Asset Management Corp.*,
  908 F.3d 872, 69 V.I. 1034 (3d Cir. 2018) .....................................................................12

*Cozarelli v. Inspire Pharmaceuticals Inc.*,
  549 F.3d 618 (4th Cir. 2008) ...........................................................................................11

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*,
  654 F.3d 276 (2d Cir. 2011) ..............................................................................................7

*de la Fuente v. DCI Telecomms., Inc.*,
  259 F. Supp. 2d 250 (S.D.N.Y. 2003) .............................................................................10

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  235 F. Supp. 2d 549 (S.D. Tex. 2002) ............................................................................11

*Geinko v. Padda*,
  2002 U.S. Dist. LEXIS 3316 (N.D. Ill. Feb. 27, 2002) ..................................................11

*Janbay v. Canadian Solar, Inc.*,
  2012 U.S. Dist. LEXIS 47125 (S.D.N.Y. Mar. 30, 2012) ................................................8

*Kemp v. Univ. Am. Fin. Corp.*,
  2007 WL 86942 (S.D.N.Y. Jan. 10, 2007) ...............................................................................10

*Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*,
  2017 U.S. Dist. LEXIS 3039 (S.D.N.Y. Jan. 6, 2017) ............................................................12

*Lipsky v. Commonwealth United Corp.*,
  551 F.2d 887 (2d Cir. 1976) ....................................................................................................11

*In re Merck & Co., Inc. Secs. Litig.*,
  432 F.3d 261 (3d Cir. 2005) ......................................................................................................8

*Meridian OHC Partners, LP v. Davis*,
  2018 U.S. Dist. LEXIS 43185 (D. Nev. Mar. 15, 2018) ...........................................................7

*In re Omnicom Group, Inc. Sees. Litig.*,
  597 F.3d 501 (2d Cir. 2010) ......................................................................................................8

*Polanco v. Omnicell, Inc.*,
  988 F. Supp. 2d 451 (D.N.J. 2013) .....................................................................................7, 12

*Portsmouth Square Inc. v. Shareholders Protective Committee*,
  770 F.2d 866 (9th Cir. 1985) ....................................................................................................6

*SEC v. Lucent Techs., Inc.*,
  363 F. Supp. 2d 708 (D.N.J. 2005) ...........................................................................................3

*Securities Exchange Commission v. Honig, et al.*,
  Case No. Case 1:18-cv-08175-ER (S.D.N.Y.) ........................................................................11

*Strougo v. Barclays PLC*,
  105 F. Supp. 3d 330 (S.D.N.Y. 2015) .....................................................................................10

*Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*,
  2019 U.S. Dist. LEXIS 50310 (S.D.N.Y. Mar. 26, 2019) ....................................................5, 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ..................................................................................................................5

*United States Football League v. NFL*,
  634 F. Supp. 1155 (S.D.N.Y. 1986) ........................................................................................10

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
  No. 13 Civ. 6057(PAC), 2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014) ...................................10

**Statutes**

Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4 ............................................ *passim*

**Other Authorities**

Rule 8 ...................................................................................................................................3

Rule 9(b) ...................................................................................................................3, 4, 9, 13

Rule 10b-5............................................................................................................................7

Rule 11 ....................................................................................................................3, 10, 11

**I.      INTRODUCTION**

The Omnibus Opposition shares many of the same fatal and irreparable characteristics of the Amended Complaint – insinuation and innuendo based on irrelevant "background" allegations unrelated to Mark Groussman's trading history in Riot Blockchain, Inc. ("Riot" or the "Company"); references to unproven allegations from an SEC action involving *different* companies; and a complete absence of facts to support Plaintiff's 10b-5 claim.  The Opposition does nothing to overcome the multiple independent reasons why the Amended Complaint fails to state a claim against Groussman.

Indeed, for all of its verbosity, the Amended Complaint does not even plead facts to connect Groussman to the central premise of Plaintiff's case – that a secretive cabal of investors led by Defendant Barry Honig artificially inflated Riot's stock price and profited from fraudulent "related-party" transactions.  Instead, Plaintiff repeats the same extraneous, irrelevant allegations concerning Groussman's *prior* history with Honig, *involving companies other than Riot*.  Plaintiff also borrows heavily from unproven, hearsay allegations in an unrelated complaint involving other companies filed by the SEC which, unlike Plaintiff in this action, is not subject to the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4.  The SEC and Groussman settled that enforcement action, which did not involve Riot, without any admission of liability or guilt by Groussman.  The Amended Complaint is bereft of any particularized allegations – much less any allegations whatsoever – that Groussman coordinated trading activity in Riot with members of this alleged group, or took direction from Honig in executing purchases and sales of Riot stock.  Nor does Plaintiff suggest in his Opposition that he could possibly allege such facts.  Unable to cure this fundamental defect, Plaintiff's case against Groussman fails at the outset.

In an effort to salvage his case, Plaintiff offers a newly-minted and *unpled* theory – that Groussman failed to timely file Schedule 13Gs before and during the putative class period.  What happened before the class period is clearly irrelevant.  But even during the class period, the timing

of Groussman's Schedule 13G filings has no bearing on this case. Plaintiff concedes in his Opposition that Groussman's holdings in Riot were accurately reflected in the Company's multiple S-3 filings. Any purported delay by Groussman in filing a Schedule 13G to disclose already known facts could not deprive investors of material information. Plaintiff suggests that an alleged untimely filing of a Schedule 13G would support an inference of scienter. But Plaintiff does not and cannot explain how any alleged delay here would have illicitly furthered Groussman's rather routine trading strategy in Riot. The market was already fully aware of Groussman's holdings in Riot as a result of multiple S-3s, and Groussman's trading strategy – as described in the Amended Complaint – was merely to slowly reduce his position in Riot as the price of bitcoin fell. That strategy was perfectly unremarkable, economically logical, and, more to the point, entirely legal.

The Opposition either barely addresses – or entirely ignores – the remaining essential elements of Plaintiff's scheme liability claim. Plaintiff does not identify what precise manipulative or deceptive act Groussman supposedly committed. Instead Plaintiff merely repeats generic rhetoric applicable to any purported stock manipulation scheme. Nor does Plaintiff offer any argument at all with respect to reliance. While Plaintiff does offer a further, cursory argument on scienter, it is only to suggest that unproven allegations of misconduct in completely *different* investments, involving *different* companies, *may* demonstrate fraudulent intent with respect to Groussman's trades in Riot. But such strained efforts to create an "air of guilt" based on irrelevant allegations from another case involving different companies do not meet the stringent pleading standards demanded by the PSLRA. The only other 10b-5 element addressed by the Opposition is loss causation. Plaintiff does so by referencing a CNBC article that reveals no fraud, but merely editorializes widely-known facts about Riot, such as its SEC disclosures and the Company's transition to blockchain technologies.

Plaintiff's 10b-5 claim against Groussman cannot survive the scrutiny mandated by the PSLRA. Groussman's motion should be granted, and Plaintiff's Amended Complaint – now the fourth filed in this case – should be dismissed against Groussman with prejudice.

## II. ARGUMENT

### A. As The Opposition Confirms, Plaintiff Does Not And Cannot Allege That Groussman Was Part Of The Purported "Honig Group"

The gravamen the Amended Complaint is that a group of investors led by Honig artificially manipulated the stock price of Riot. Thus, to even come close to pleading a viable claim against Groussman, Plaintiff must at least plead allegations plausibly showing that he was a member of this so-called "Honig Group" that engaged in these alleged actions. Amended Complaint ¶ 79. As Plaintiff's Opposition confirms, the Amended Complaint does not plead – and cannot plead – such basic, threshold allegations.

Far from demonstrating that Groussman conspired with the "Honig Group," the Amended Complaint relies on irrelevant, inflammatory background allegations about Groussman's historical investments in companies ***that have nothing to do with Riot***. *See* Amended Complaint ¶¶ 80, 105-06, 123, 180. In his Opposition, Plaintiff merely repeats these allegations, fixating on Groussman's alleged "prior history" with Honig. *See* Opp. at 9. Plaintiff also continues to reference unproven allegations from a terminated SEC enforcement action that had nothing to do with this case and did not even involve Riot. *Id*. But neither the Amended Complaint, nor the Opposition, offer any discussion as to Groussman's ***current*** purported activities with Honig, as they relate to ***Riot***. Plaintiff's reliance on extraneous allegations does not satisfy his pleading obligations under Rule 9(b) and the PSLRA. In addition to raising Rule 11 issues and being irrelevant, reliance by Plaintiff on a settled SEC enforcement action does not suffice under the PSLRA because the SEC, unlike the private plaintiff, is not subject to its heightened pleading standards. *See SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005) ("the heightened requirements for pleading scienter under the PSLRA do not apply to actions brought by the SEC"). In fact, such allegations do not even satisfy the more forgiving Rule 8 pleading standards, which require that a complaint allege facts showing that liability is "plausible" rather than merely "possible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Besides failing to satisfy basic pleading requirements, Plaintiff does not suggest that, if granted leave to amend, he could plead a single fact to remedy this fundamental defect. Plaintiff does not contend, for instance, that he could allege Groussman agreed to coordinate trades with the purported Honig group; took direction from Honig in trading Riot shares; joined in any alleged manipulative trading or promotional activities to influence Riot's stock price; or worked with Honig to influence Riot's management. Insinuation based on various snippets of alleged prior, unrelated conduct is no substitute for particularized, relevant facts, which the PSLRA requires Plaintiff to plead. *Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2014) ("Cobbling together a litany of inadequate allegations does not render those allegations particularized in accordance with Rule 9(b) or the PSLRA."). Plaintiff's inability to even plead any facts to connect Groussman to the alleged stock manipulation scheme is fatal to his entire claim.

### B. Plaintiff's Newly-Minted Theory That Groussman Violated Beneficial Ownership Reporting Requirements Is Both Wrong And Irrelevant

Unable to allege particularized facts showing that Groussman was a participant in the alleged "Honig Group," Plaintiff detours into an irrelevant and erroneous discussion regarding Groussman's reporting obligations under Schedule 13D and 13G. Opp. at 9-10. Though the Amended Complaint takes no issue with the timing of Groussman's beneficial ownership filings, Plaintiff now complains for the first time that Groussman did not timely file a Schedule 13G prior to April 20, 2017. Opp. at 10. But Plaintiff's purported class period **begins** on April 20, 2017. Amended Complaint ¶ 1. Thus, even if there were any purported violation (and there was none) prior to April 20, 2017, it would have no bearing on this action. Further, Plaintiff concedes that, as early as April 20, 2017, Groussman had fully disclosed his holdings in Riot via the S-3/A filed on that date. Opp. at 10. Plaintiff further concedes that, on three separate dates prior to filing his October 13, 2017 Schedule 13G – July 19, August 24, and September 25, 2017 – Groussman disclosed his holdings via three Form S-3s. *Id.* Plaintiff thus does not and cannot claim that the

4

absence of an earlier-filed Schedule 13G deprived shareholders of any critical information regarding Groussman's positions in Riot.

Instead, Plaintiff launches into an equally irrelevant discussion opining that any purported failure to strictly adhere to Schedule 13G's timing requirements – and the Amended Complaint alleges no such failure – "buttress[es]" an inference of fraudulent intent. Opp. at 26 (citing *Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, 2019 U.S. Dist. LEXIS 50310, *28 (S.D.N.Y. Mar. 26, 2019)). But as *Tanzanian Royalty* makes clear, to "buttress" an inference of scienter, the alleged Schedule 13G violations would have to be made in furtherance of an illegitimate trading strategy to take advantage of artificially inflated or depressed stock prices. *See id.* at *29("scienter allegations fall short . . . when 'they amount to no more than allegations of a general business motive to make a profit'"). The Amended Complaint purports to describe a perfectly unremarkable, economically logical – and, at bottom, legal – trading strategy in which Groussman acquired a non-controlling stake in Riot and slowly sold that stake over the course of nearly a year, as Riot's stock began to fall with the crash in cryptocurrencies in early 2018. *See* Amended Complaint ¶¶ 144, 154, 164. Neither the Amended Complaint nor the Opposition assert that Groussman scheduled the timing of his Schedule 13G filings as part of any effort to manipulate Riot's stock price or otherwise conceal trading positions, which were already publicly disclosed in Riot's S-3s. Nor do they otherwise explain what Groussman had to gain by allegedly delaying his Schedule 13G filings.

Accordingly, Plaintiff's theories regarding the timing of those filings have no bearing on this case. Further, even if unpled purported Schedule 13G violations could "buttress" an inference of scienter, which they cannot, this presumes there is even an inference to support. That, in turn, would require that Plaintiff have "state[d] with particularity facts giving rise to a strong inference of scienter" on Groussman's part. *See* 15 U.S.C. § 78u-4(b)(2). Here, Plaintiff fails to offer such allegations, and his purported description of Groussman's slow disposition of Riot shares as the price of bitcoin crashed does not suffice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (holding that an inference of scienter will not sustain a fraud claim unless "a

reasonable person would deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged"); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007) (holding that properly pleading scienter is particularly important in manipulation claims because "in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation"). Further, even if Plaintiff could establish scienter based solely on the timing of Schedule 13G filings – and he cannot – Plaintiff would still need to adequately allege all the other essential elements of a 10b-5 claim. As described below, he has failed to do so.

### C. Plaintiff Effectively Concedes Groussman Made No Misrepresentations

The Amended Complaint alleges only a single representation by Groussman – a certification in his October 13, 2017 Schedule 13G that his holdings in Riot "were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction having that purpose or effect." Amended Complaint ¶¶ 179-80. As explained in Groussman's moving papers, that Schedule 13G was fully accurate, and no Schedule 13D was necessary, because Groussman did not acquire shares in Riot as part of a takeover bid or to engage with Riot's management on corporate transactions. *See* Mot. at 13. The Amended Complaint does not even allege as much.

In his Opposition, Plaintiff offers no response to this, instead arguing that the Schedule 13G certification was false based on "Groussman's prior connections to Honig, Stetson, O'Rourke, and other members of the Honig Group." Opp. at 23. But Groussman's Schedule 13G certification concerned his holdings in Riot, not any other company. That is consistent with the function of a Schedule 13G, which is to provide disclosures about the accumulation of large positions in a stock, not detail an investor's prior unrelated trading history in other companies. *See Portsmouth Square Inc. v. Shareholders Protective Committee*, 770 F.2d 866, 872 (9th Cir. 1985) ("Congress enacted Section 13(d) in 1968, in response to a sharp increase in corporate takeover bids . . . to provide for

6

full disclosure in connection with cash tender offers and other techniques for accumulating large blocks of equity securities of publicly held companies.") (quoting *GAF Corp. v. Milstein*, 453 F.2d 709, 717 (2d Cir. 1971)).  Groussman's Schedule 13G thus made no representations – and was not required to make any disclosures – regarding alleged "prior connections" to Honig that had nothing to do with Riot.

Plaintiff offers absolutely no relevant argument suggesting that the Schedule 13G was false because Groussman, in fact, did not intend to change or influence control of Riot.  Plaintiff thereby effectively concedes the Schedule 13G certification was true.  *See Polanco v. Omnicell, Inc.,* 988 F. Supp. 2d 451, 465 (D.N.J. 2013) ("[The] opposition does not address this specific argument . . . and . . . [therefore] concedes [it].").

In any event, a purported misrepresentation in Groussman's Schedule 13G – and there was none – would be entirely academic.  Section 13(d) of the Exchange Act does not expressly authorize a private right of action, and it would appear no federal appellate court has ever held that such an action for damages under Section 13(d) exists for individual investors.  *Cf Meridian OHC Partners, LP v. Davis*, 2018 U.S. Dist. LEXIS 43185, *11 (D. Nev. Mar. 15, 2018) (noting the absence of case law allowing a private right of action under Section 13(d) but holding that "the need for truthful and complete Schedules 13D . . . seems to support a private right of action for ***curative injunctive*** relief") (emphasis added).  Plaintiff also explicitly disavows any attempt to bring a private right of action under Section 13(d).  *See Opp.* at 11 n.13.

While Plaintiff contends that a violation of Section 13(d) might support a claim under Rule 10b-5 (*see id.*), the purpose of Section 13 disclosures "is to alert the marketplace to every large, ***rapid aggregation or accumulation*** of securities which might represent a potential shift in corporate control." *CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 286 (2d Cir. 2011) (emphasis added).  During the class period for which Plaintiff seeks to impose 10b-5 liability, Plaintiff alleges Groussman was ***selling*** Riot stock, not accumulating it.  Thus, any purported violation of Section 13(d) would be irrelevant to – and certainly not in furtherance of–

7

Groussman's alleged 10b-5 conduct. Finally, "the interests of §13(d) 'are fully satisfied when the shareholders receive the information required to be filed.'" *Tanzanian Royalty Expl. Corp.*, 2019 U.S. Dist. LEXIS 50310, at *35. As noted above, Plaintiff concedes that Riot's S-3s fully disclosed Groussman's sales in Riot shares. Groussman further filed a Schedule 13G/A on February 15, 2018 to provide an updated disclosure on his position in Riot. *See* Reply Declaration of Kevin Walsh, Ex. A. This would "cure" any alleged failure to timely file a Schedule 13G. *See Tanzanian Royalty Expl. Corp.*, 2019 U.S. Dist. LEXIS 50310, at *35.

### D. Plaintiff's Opposition Fails To Salvage His Flawed Theory Of Loss Causation

The only 10b-5 element Plaintiff specifically addresses in his Opposition besides scienter is loss causation, but the cursory argument Plaintiff offers does little to remedy the defects in the Amended Complaint. To establish loss causation, Plaintiff must plead the public revelation of previously unavailable material information. S*ee In re Merck & Co., Inc. Secs. Litig.*, 432 F.3d 261, 270–71 (3d Cir. 2005). As Groussman explained in his moving papers, the media reports Plaintiff references in support of loss causation reveal no new "truth" but involve either: (1) punditry opining on known, previously disclosed events; or (2) Defendant O'Rourke's trading activity. Mot. at 21. In response, Plaintiff refers to a February 16, 2018 CNBC article reprinted in the Amended Complaint that purportedly "reveal[ed] numerous 'red flags.'" Opp. at 30. In fact, every purported "red flag" listed in the CNBC article concerned a matter that had already been long disclosed, well before that article was ever published. The article merely summarizes prior, publicly-known events such as SEC filings and Riot's transition to blockchain, and asks a stock analyst to opine on them. *See* Amended Complaint ¶ 337. Editorializing of known facts is not a corrective disclosure. *See e.g., In re Omnicom Group, Inc. Sees. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010) ("A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions."); *Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430, 2012 U.S. Dist. LEXIS 47125, 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012) ("the raising of questions and speculation by analysts and commentators does not reveal any 'truth' about an alleged fraud").

8

### E.   Plaintiff Fails To Address The Remaining Bases For Dismissal Raised In Groussman's Moving Papers

Groussman's opening brief showed that, in addition to loss causation, Plaintiff failed to plead facts establishing several other essential elements of a 10b-5 claim: (1) a manipulative or deceptive act; (2) scienter; or (3) reliance.  Plaintiff fails to address, much less rebut, these arguments.

#### 1.   *Plaintiff Has Not Pled A "Manipulative" Or "Deceptive" Act*

To satisfy Rule 9(b), a fraud claim based on alleged market manipulation must set forth "to the extent possible, [1] what manipulative acts were performed, [2] which defendants performed them, [3] when the manipulative acts were performed, and [4] what effect the scheme had on the market for the securities at issue." *In re Able Labs. Sec. Litig.*, 2008 U.S. Dist. LEXIS 23538, *73 (D.N.J. 2008)  Far from satisfying this standard, the Amended Complaint merely contains background allegations that: (1) Groussman sold shares of Riot's common stock; (2) was a passive investor in two other companies with which Riot dealt; and (3) filed a Schedule 13G that accurately and fully reflected Groussman's holdings in Riot during the class period.  None of these come close to a "manipulative" or "deceptive" act.

First, Groussman's Schedule 13G representation was true – a fact that Plaintiff now concedes.  *See* Section II.C.  Accordingly, the Schedule 13G cannot possibly serve as a "manipulative" or "deceptive" act.  Second, Groussman's trading history, as alleged in the Amended Complaint, merely reflects the slow disposition of his holdings in Riot over the course of nearly a year.  Far from concealing that trading history, and as Plaintiff admits, Groussman's sales of Riot stock were evident from his Schedule 13G and numerous S-3s filed by Riot.  Opp. at 10-12. The Amended Complaint does not allege, and Plaintiff nowhere in his Opposition suggests he could supply allegations of, coordinated trading in Riot, or any other form of manipulative trading.  Third, with respect to the Kairos and Coinsquare transactions, the Amended Complaint does not allege, and the Opposition does not even argue, that Groussman had any actual role in

9

those transactions, other than as a passive investor.  Nowhere in his Opposition does Plaintiff explain how these transactions could otherwise serve as the basis for scheme liability against Groussman.  In sum, the Amended Complaint fails to allege that Groussman engaged in any "act, scheme, or course of conduct' to defraud investors."  *See Kemp v. Univ. Am. Fin. Corp.*, 2007 WL 86942, at *17 (S.D.N.Y. Jan. 10, 2007).

### 2. *The Amended Complaint Fails To Adequately Plead Scienter*

As explained in Groussman's moving papers, the Amended Complaint alleges no facts with particularly – let alone any facts at all – to support an inference that Groussman committed any act with an intent to deceive, manipulate or defraud.  *See* Mot. at 17-19.  In Opposition, Plaintiff responds only in cursory fashion.  Besides his newly-minted theory on the timing of Schedule 13G filings, Plaintiff argues that alleged wrongdoing in an entirely separate SEC enforcement action, involving *different* companies, can establish scienter as to Groussman's trading in Riot.  *See* Opp. at 25.  Plaintiff, however, cannot rely on ***unproven*** allegations relating to ***different*** investments in ***different*** companies to create an "aura of guilt" as to Riot or "to imply new wrongdoing from past wrongdoing."  *See United States Football League v. NFL*, 634 F. Supp. 1155, 1173 (S.D.N.Y. 1986).

To justify his exclusive reliance on an unrelated SEC enforcement action, Plaintiff cites inapposite cases in which the government enforcement actions targeted the very same conduct, involving the very same companies, as the civil complaints.  *See Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. 13 Civ. 6057(PAC), 2014 WL 3891351, at *4 (S.D.N.Y. Aug. 8, 2014) (allowing plaintiffs to rely on SEC complaint targeting alleged investment scheme involving same company and defendant as in plaintiff's action); *de la Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003) (holding that plaintiff did not violate Rule 11 by relying on SEC complaint in civil action involving same company and same defendant); *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015) (declining to strike under Rule 11 allegations that referenced a complaint filed by the New York Attorney General targeting the same alleged

misconduct involving the same company and defendants where plaintiffs represented they reached out to New York Attorney General to verify its allegations). None of these cases suggests that Plaintiff may state a claim – nor even satisfies his Rule 11 burden to conduct an adequate investigation – based upon allegations in a completely different case about completely different companies.[1]

The issue for the scienter analysis is whether Plaintiff has pleaded specific facts showing that Groussman intended to defraud *Riot* shareholders. Unrelated, unproven allegations involving other companies provide no basis to infer – let alone draw a strong inference – that Groussman's unremarkable trading strategy in Riot was actually designed to manipulate the Company's s share price. *See Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 411 (S.D.N.Y. 2007) ("allegations about [defendant] contained in pleadings from an unrelated lawsuit . . . are inadmissible"); *Geinko v. Padda*, 2002 U.S. Dist. LEXIS 3316, at *21 n.8 (N.D. Ill. Feb. 27, 2002) (refusing to consider as "improper" the allegations copied or referred to from SEC and other civil complaints because they were "hearsay allegations . . . and therefore superfluous"); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 892-94 (2d Cir. 1976) (likening consent decree between defendant and SEC to inadmissible plea of nolo contendere, and holding that references to consent decree and SEC complaint that proceeded it were immaterial and could not be used to prove liability). Even if the SEC enforcement action did involve Riot – and it does not – that would still not support an inference of scienter. Groussman settled that action without any admission of liability,[2] and thus the SEC case does not "add much, if anything, to an inference of scienter." *See Cozarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 628 n.2 (4th Cir. 2008) (allegation of SEC investigation in

---

[1] Equally unavailing is Plaintiff's reliance on *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549 (S.D. Tex. 2002). In that case, the court found the scienter requirement "partially satisfied" by allegations that – with respect to the same exact company (Enron) – defendants repeatedly structured transactions whose "intrinsic nature" was fraudulent. *Id.* at 694. The Amended Complaint does not allege that Groussman engaged in any pattern of "intrinsically" fraudulent transactions with respect to Riot, let alone a single fraudulent transaction.

[2] Groussman's settlement with the SEC in *Securities Exchange Commission v. Honig, et al.*, Case No. Case 1:18-cv-08175-ER (S.D.N.Y.) has been filed in that case as Dkt. No. 93.

private securities complaint does not aid inference of scienter where "the SEC's investigation has already settled without a finding of culpability for securities fraud.").

### 3. The Amended Complaint Fails To Adequately Plead Reliance

In the Amended Complaint, Plaintiff alleges he is entitled to a presumption of reliance under both *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), and the fraud-on-the-market doctrine.  Amended Complaint ¶¶ 413-19.  As Groussman explained in his moving papers, neither presumption applies here because the sole representation by Groussman alleged in the Amended Complaint – his Schedule 13G certification – is true.  *See* Mot. at 19-20.  In his Opposition, Plaintiff does not address this argument nor otherwise attempt to argue that he has established reliance on any representation by Groussman.  Plaintiff thus effectively concedes he cannot establish this essential element of a 10b-5 claim.  *See Polanco*, 988 F. Supp. 2d at 465.

### F. Plaintiff Should Not Be Given Further Leave To Amend

Having already been given four opportunities to file an actionable complaint – and having failed all four times – the Amended Complaint should be dismissed with prejudice.  *See In re Allergan Erisa Litig.*, 2018 U.S. Dist. LEXIS 112127, *20 (D.N.J. July 2, 2018) ("Plaintiffs have now filed four complaints.  There is nothing to suggest that providing another opportunity to amend the pleadings would be beneficial or result in a different outcome.").  Plaintiff makes only a fleeting mention of amendment in a footnote (Opp. at 30), but never suggests how he could possibly remedy the defects identified in Groussman's moving papers.  *Kirschner v. Fitzsimons (In re Tribune Co. Fraudulent Conveyance Litig.)*, 2017 U.S. Dist. LEXIS 3039, 2017 WL 82391, at *20 (S.D.N.Y. Jan. 6, 2017) (denying leave to amend where the request was cursory and failed to indicate how the complaint's defects would be cured).  There is no reason to believe another bite at the apple will result in an actionable complaint, and therefore leave to amend should be denied.  *See City of Cambridge Retirement System v. Altisource Asset Management Corp.*, 908 F.3d 872, 879, 69 V.I. 1034 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'").

### III. CONCLUSION

For the foregoing reasons and those stated in his Opening Memorandum, Groussman respectfully requests that this Court dismiss this action with prejudice for failure to satisfy the heightened pleading requirements of Rule 9(b) and 15 U.S.C. § 78u-4(b).

Dated: November 4, 2019

                                              **GIBBONS P.C.**

                                  By: s/ Kevin G. Walsh
                                        Kevin G. Walsh
                                        kwalsh@gibbonslaw.com
                                        GIBBONS P.C.
                                        One Gateway Center
                                        Newark, New Jersey 07102
                                        Tel: 973.596.4769
                                        Fax: 973.639.6470

                                        *Attorneys for Defendant Mark Groussman*