Laura Lestrade
Thomas O. Gorman (*Pro Hac*)
Dorsey & Whitney, LLP
51 West 52nd Street
New York, New York
212-415-9200
202-442-3507
301-602-9988 (mobile)
*Gorman.tom@Dorsey.com*

Stephen Weingold (*Pro Hac*)
Dorsey & Whitney, LLP
1400 Wewatta St. No. 400
Denver Colorado 8020

*Attorneys For Defendant
Mike Dai*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,, <br><br> *Plaintiffs,* <br><br> v. <br> RIOT BLOCKCHAIN, INC. f/k/a BIOPTIX, INC., JOHN O'ROURKE, JEFFREY MCGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES and ERIC SO, <br><br> *Defendants*. | Civil Action No.3:18-02293 (FLW) (TJB) <br><br> ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED
CORRECTED COMPLAINT BY DEFENDANT MIKE DAI**

## Table of Contents

**Page**

ARGUMENT ...................................................................................................................1

A. No Section 10(b) fraudulent scheme by Mr. Dai ..............................................1

    1. The registration statements ....................................................................2

    2. Business transactions .............................................................................4

B. No scienter by Mr. Dai .......................................................................................7

C. No reliance ..........................................................................................................8

D. No Loss Causation .............................................................................................9

CONCLUSION .............................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997)...................................................................................5

*In re Caremark Int. Deriv. Lit.*,
  698 A. 2d 959 (Del. Ch. 1996).................................................................................5

*Cent. Bank, N.A. v. First Interstate Bank, N.A.*,
  511 U.S. 164 (1994).................................................................................................3

*Commer v. Bloom*,
  711 F. Supp. 1264 (D.N.J 1989)..............................................................................9

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)............................................................................................9, 10

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185, 96 S. Ct. 1375 (1976)........................................................................3

*1200 Grand St. Condo. Ass'n v. Tarragon Corp. (In re Tarragon Corp.)*,
  2012 Bankr. LEXIS 75, 2012 WL 71597 (Bankr. D.N.J. Jan. 10, 2012) ............3–4

*Hayes v. Gross*,
  982 F. 2d 104 (3d Cir. 1992)................................................................................8, 9

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011).................................................................................................3

*La. Mun. Police Emples. Ret. Sys. v. Hesse*,
  962 F. Supp. 2d 576 (S.D.N.Y. 2013).....................................................................5

*Lorenzo v. SEC*,
  139 S. Ct. 1094 (2019).............................................................................................3

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*,
  720 F. Supp. 2d 517, 552 (D.N.J. 2010) .................................................................5

*Oran v. Stanford*,
  768 F. 3d 1064 (3rd Cir. 2001) ................................................................................3

*Payne v. DeLuca*,
  433 F. Supp. 2d 547 (W.D. Pa. 2006).....................................................................3

*PR Diamonds, Inc. v. Chandler*,
   364 F.3d 671 (6th 2004) ................................................................................................5

*Santa Fe Indus. v. Green*,
   430 U.S. 462 (1977) ................................................................................................4, 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ......................................................................................................7

**Other Authorities**

17 C.F.R 240 ........................................................................................................................3

Anat Adamati and Paul Pfleiderer, *The Wall Street Walk and Shareholder
   Activism, Exit as a Form of Voice* (2009),
   https://pdfs.semanticscholar.org/e96c/980fb37fff19ecc758937db05069d99744
   e5.pdf ............................................................................................................................4

Fed. R. Civ. P. 11 .................................................................................................................7

Fed. R. Civ. P. 12 .................................................................................................................8

# ARGUMENT

Lead Plaintiff tacitly admits that the Corrected Amended Complaint ("Amended Complaint") alleges virtually nothing about Mr. Dai, let alone the facts required to state a claim. No facts are pleaded establishing he participated in fraudulent acts; no facts are pleaded establishing that he knew prior to his resignation that the new business strategy for the firm would not be beneficial and was a fraudulent sham as Lead Plaintiff claims.

The admission comes in the form of yet another effort to improperly supplement the Amended Complaint with unsupported assertions in briefs, a defendant's brief, and a large stack of additional, meaningless documents. Those materials do nothing to fill the chasm in the Amended Complaint as to Mr. Dai.

Lead Plaintiff attempts to paper-over its failure to present facts as to Mr. Dai by grouping him with select others should be seen as nothing but a "guilt by association" contrivance. First Mr. Dai was added to a complaint which tries but fails to allege a market manipulation without charging him with wrongful, fraudulent conduct. Now he is being lumped into the Omnibus Memorandum of Law in Opposition to Defendants Dai, Grossman, and Stetson's Motions to Dismiss (Dkt. 153) ("Second Omnibus Memorandum"), with two other defendants who, unlike Mike Dai, are alleged to be henchmen of supposed fraud scheme leader Honig and part of his prior difficulties with the Securities and Exchange Commission ("SEC").[1] Whatever the merits of the claims against these other parties, the allegations say nothing about Mr. Dai. When the pending complaint is judged on the merits of the facts presented by the standards applicable to a securities class action complaint, it should be dismissed with prejudice as to Mr. Dai.

 A. No Section 10(b) fraudulent scheme by Mr. Dai

---

[1] Second Omnibus Memorandum at 2–3.

The Omnibus Memoranda[2] filed by Lead Plaintiff do not refute the points presented in Mr. Dai's Motion to Dismiss.[3] Those Memoranda wholly fail to address many of the key points presented by Mr. Dai.

1.  ***The registration statements***: Plaintiff's claims against Mike Dai focus on the fact that Mr. Dai and others signed four S-3 registration statements. Plaintiff ignores the plain text of those filings in an effort create a claim as to Mr. Dai. As detailed in the Motion to Dismiss, each registration statement states that "None of the selling shareholders [listed in each filing] has held any position or office, or otherwise had a material relationship, with *us* or any of our subsidiaries..." Motion to Dismiss at 3. The term "us" is defined in each registration statement to include only the company:

> In this prospectus, "Bioptix," "the Company," "we," "us," and "our" refer to Bioptix, Inc., a Colorado corporation, unless the context otherwise requires.[4]

Despite this clear and unequivocal language the Omnibus Memoranda ignore the obvious in favor of creating an alternate reality, hypothesizing that the word "us" not only references Bioptix but also "encompasses O'Rourke, a Bioptix Board Member and Beeghley, the Bioptix's CEO" and includes "the Company and its officers and directors." Second Omnibus Memorandum at 15, 17.

This assertion is incorrect. The language quoted above from the First Omnibus Memorandum directly contradicts the text of the registration statements. Lead Plaintiff does not

---

[2] Lead Pl.'s Omnibus Mem. in Opp'n to Defs.' Mot. to Dismiss the Corrected Am. Consolidated Class Action Compl. (Dkt. 136) ("First Omnibus Memorandum"), is referred collectively with the Second Omnibus Memorandum as "Omnibus Memoranda" or "Memoranda."

[3] Mike Dai's Mem. in Supp. of Mot. to Dismiss Am. Corrected Compl. (Dkt. 132) ("Motion to Dismiss").

[4] *See, e.g.,* Riot Blockchain, Inc. (f/k/a Bioptix, Inc.) (Securities Registration Statement) (Form S-3/A) (July 19, 2017). Unsworn Declaration of Stephen R. Weingold in Support of Motion to Dismiss Amended Corrected Complaint by Defendant Mike Dai at 157.

assert that the use of the word "us" is an exception to the definition quoted above or offer an explanation for disregarding the text of each registration statement. Nor can he. And, without this incorrect widening of the definition, Lead Plaintiff's claim that the S-3s are misleading cannot stand.[5]

Even assuming *arguendo* that the incorrect reading proffered by the Omnibus Memoranda were adopted, the Amended Complaint still fails to state a claim as to Mr. Dai based on the four registration statements since he did not control their dissemination as required by *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 137–38 (2011) or participate in the kind of fraudulent, manipulative conduct prohibited by Section 10(b) as mandated by *Lorenzo v. SEC*, 139 S. Ct. 1094, 1096 (2019) and *Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 190–91 (1994).

Rather, the only allegations are that he signed the filings as a director and tagged along with the claimed manipulators. Such acts do not establish control over publication or demonstrate specific conduct by Mr. Dai prohibited by the text of Section 10(b) as *Janus, Lorenzo* and *Central Bank* make clear. See also *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 204 (1976) (Section 10(b) is a catch all but what it catches must be fraud); *Payne v. DeLuca*, 433 F. Supp. 2d 547, 564 (W.D. Pa. 2006); (Complaint must show that any individual defendant took particular steps to control information flow); *1200 Grand St. Condo. Ass'n v. Tarragon Corp. (In re Tarragon Corp.)*, 2012 Bankr. LEXIS 75, at *24–25, 2012 WL 71597, (Bankr. D.N.J. Jan. 10,

---

[5] The citation to Rule 240, 17 C.F.R. in First Omnibus Memorandum at numerous points does not change the analysis. That regulation concerns related party transactions, not the definition of "us" and "Company" in the SEC filings. And, Lead Plaintiff cannot predicate a claim in whole or in part on this assertion since there is no implied cause of action under it. *See, e.g., Oran v. Stanford,* 226 F. 3d 278, 287 (3rd Cir. 2000) (Court rejected effort to imply a cause of action under a rule governing content of filings in an opinion by then Circuit Judge Alito).

3

2012) (Complaint cannot "broadly group all of the defendants together" without showing each defendant's participation in fraud).

2.      ***Business transactions***: Mr. Dai did not participate or take part in any fraudulent business transactions, contrary to the claim that he "played an indispensable role in approving and ratifying the corporate transactions at the he[art] of the Company's deceptive and manipulative pump-and-dump scheme." Second Omnibus Memorandum at 19. To the contrary, it is beyond dispute that shortly after the Company adopted the new crypto business strategy Mr. Dai resigned and walked away.[6] There is no allegation that Mr. Dai took those steps or that he knew about the impending scheme Lead Plaintiff posits existed.[7]

First, the allegation that "Dai participated in the Board's approval of the Company's merger and with the name-change..." and the Kairos deal is unsupported by specific facts despite the citations to new Exs. 12 at 2 and 13 at 2, and to Mr. Honig's brief at 9. Neither Exhibit 12 nor page nine of Mr. Honig's brief mentions Mr. Dai. While Exhibit 12 does state that the board of directors approved the merger of the Company with its wholly owned subsidiary, Riot Blockchain, to effect a name change, it says nothing about a new business strategy. Whether Mr. Dai attended the meeting when the merger/name change was effected, or voted in favor of, abstained or dissented if he did attend, is not stated in Exhibit 12 or the Amended Complaint.

---

[6] *See generally,* Anat Adamati and Paul Pfleiderer, *The Wall Street Walk and Shareholder Activism, Exit as a Form of Voice* , 2446 (2009) (discussing the classic "Wall Street Rule" of voting with your feet rather than remaining at the company); *available at* https://pdfs.semanticscholar.org/e96c/980fb37fff19ecc758937db05069d99744e5.pdf.

[7] While the predicate of the Amended Complaint's allegations seems to be that the Company is, in effect, a fraudulent sham transaction created through a series of transactions, it fails to make such a claim. Rather, it catalogues a series of events which it argues are improper and not part of a cohesive business strategy. Even if it is assumed that those claims have merit, mismanagement and/or ineptitude is not a violation of Exchange Act Section 10(b). *See generally, Santa Fe Indus. v. Green*, 430 U.S. 462, 477 (1977) (section prohibits fraud, not mismanagement).

Exhibit 13 only states that the transaction was approved by the Company—it says nothing about Mr. Dai or the board. Vague, speculative allegations are not sufficient to support a claim of fraudulent conduct under the PSLRA. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 694 (6th Cir. 2004) (plaintiff must plead specific facts to meet heightened PSLRA pleading standard); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (plaintiff alleging securities fraud must allege "specific facts" showing participation of each defendant).

If it is assumed that Mr. Dai voted for the merger and the Kairos deal, those acts still would not support the claimed violation of Section 10(b) by him. Those transactions would, however, have been consistent with his duties as a director since they were in anticipation of the adoption by the Company of a new business strategy and there are no fact allegations establishing Mr. Dai knew the series of events to be unrolled were a fraudulent scheme, as Lead Plaintiff tries to argue. *Cf. In re Caremark Int. Deriv. Lit.*, 698 A. 2d 959, 968 (Del. Ch. 1996) (corporate directors duty is to monitor the business; act in its best interest). Indeed, adopting a new and apparently beneficial business strategy for a failing company is what good corporate directors should do. *See generally La. Mun. Police Emples. Ret. Sys. v. Hesse*, 962 F. Supp. 2d 576, 586 (S.D.N.Y. 2013) (dismissing complaint that board member participated in company's decision to engage in "illegal" tax strategy where no allegation that he knew the strategy was wrong—knowledge could not be inferred from the board member's participation in the company); *see also Caremark; Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 552 (D.N.J. 2010) (executives' efforts to go about goals and aspirations common to the business community, including a desire to inflate the value of a company's stock, were not proof of fraud). There is no evidence that Mr. Dai knew prior to his resignation that the

Company's shift in direction away from a failing business strategy and towards a new business opportunity was inappropriate or wrongful.

Second, there is no support for the claim that Mr. Dai participated in the decision to approve the Coinsquare transaction or file the investor presentations with the SEC. While the Coinsquare deal was approved by the Company as Exhibit 12 states, neither that Exhibit nor the paragraphs of the Amended Complaint cited in the Second Omnibus Memorandum at 19 state that the board of directors approved the deal. And, in any event, no specific facts are pleaded demonstrating that Mr. Dai was not monitoring the business, or that he knew at the time that the path being taken was not in its best interest.

Finally, there is no support for the claim that Mr. Dai and/or the board of directors approved or directed that the cited investor presentations be filed with the SEC. The citations to the Amended Complaint offered by Lead Plaintiff state only that the materials were filed with the SEC. *See, e.g.* Pl.'s Am. Compl. ¶ 243, (Dkt. 73) ("[o]n October 5, 2017, Riot filed a Form 8-K with an attached 'Investor Presentation' with the SEC. . . ").

In the end, the only claim as to Mr. Dai in the Amended Complaint, aside from those based on the four registration statements, is that he "acted along with" the Honig group as to these transactions. *See, e.g.,* Pl.'s Am. Compl. ¶¶ 166–68, 239–42, 243–46, 251–54 (Dkt. 73). The validity of this claim is more than evidenced by the fact that most of those events took place after Mr. Dai's resignation and they are unsupported by specific factual allegations. The Amended Complaint should be dismissed as to him.[8]

---

[8] Lead Plaintiff's claim that the omission from the Amended Complaint of Mr. Dai's resignation date from the board of directors, effective November 1, 2017, was inadvertent is at odds with the repeated paragraphs of that Complaint asserting without any factual support that he continued after this resignation date to participate in Company activities. *See, e.g.* Pl.'s Am. Compl. ¶¶ 259–298 (Dkt. 73).

### B. No scienter by Mr. Dai

The Amended Complaint wholly fails to present facts which, when considered in their totality, support a strong, cogent inference of scienter as required by *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). To the contrary, the Amended Complaint wholly fails to demonstrate or even allege that he breached his duty as a director during his short period of service.

Eschewing the facts, the Second Omnibus Memorandum attempts to tie together the new collection of documents with the Amended Complaint to create what does not exist. First, the Second Omnibus Memorandum introduces new material about Canadian Oil Company Santa Maria Petroleum from years past to claim that Mr. Dai knew Andy DeFrancesco, husband of Defendant Catherine DeFrancesco, and others named as defendants in this matter from the time he served as CFO of that firm. Even if one credits this latest effort to again amend the complaint, there is no assertion that Santa Maria was involved in any impropriety during the term Mr. Dai served at that firm. Rather, this appears to be nothing more than another effort at guilt by association: If Mr. Dai knew people in the past which the Amended Complaint now claims are scofflaws, he must also be one. This type of supposition has no place in these proceedings. *Cf.*, Fed. R. Civ. P.11.

Equally specious is the claim that Mr. Dai's resignation was "sudden" and somehow tied to that of Mr. Beeghley which occurred on November 3 (Ex. 13 at 3). The basis for the "sudden" claim, like the predicate for the link to the departure of Mr. Beeghley, is undisclosed for the obvious reason that there is none.

Finally, the supposition that Mr. Dai failed to act appropriately when terminating his relationship with the Company by not blowing the whistle is absurd. After serving faithfully for

no real benefit, Mr. Dai resigned—the Amended Complaint does not claim he knew of the forth coming fraud at the time—invoking the Wall Street Rule before much of it had been rolled out. That fact, when coupled with all of the others here, more than demonstrates not just a failure of the Amended Complaint to properly present facts to establish the key element of scienter but demonstrates a failure to present facts which must be held against it under *Tellabs*. After serving faithfully for no benefit, Mr, Dai resigned, invoking the Wall Street Rule before much of the claimed fraud had been rolled out.

  C.  **No reliance**

After admitting that reliance is a key element of an Exchange Act Section 10(b) claim, the Second Omnibus Memorandum seeks to avoid consideration of the question by first claiming that it is premature and then arguing that the point is reserved for experts, despite the fact that the question involves a key element of the cause of action alleged as to Mr. Dai. These arguments are simply incorrect.

Consideration of the sufficiency of the Amended Complaint's allegations as to an element of the cause of action—here, reliance—is a question of proper pleading under Federal Rule of Civil Procedure 8(a). As the Third Circuit held in *Hayes v. Gross,* 982 F. 2d 104, 107 (3d Cir. 1992)*,* quoted by the Second Omnibus Memorandum at 28:

> "[T]he question on a motion to dismiss is not whether plaintiff has proved an efficient market [to excuse proof of individual reliance] but whether he has pleaded one."

This is because questions of whether the pleading rules have been properly followed are reserved for the court's consideration on a Motion to Dismiss. Fed. R. Civ. P. 12. While Lead Plaintiff correctly notes that ultimately the issue of market efficiency may be the subject of expert testimony—there is no requirement to present such testimony—at the pleading stage the question is a legal one reserved for the court. *Hayes v. Gross,* 982 F. 2d at 107.

8

The leading case on this point, as Lead Plaintiff admits, is *Commer v. Bloom,* 711 F. Supp. 1264 (D.N.J 1989) and its multi-factor test. *See also* Motion to Dismiss at 19–23 (Dkt. 132) (discussing each factor). Inexplicably, the Amended Complaint wholly fails to discuss the *Commer* factors. The Second Omnibus Memorandum completely ignores the discussion of each factor in the Motion to Dismiss.

Rather, the Second Omnibus Memorandum simply claims that since the stock is listed on NASDAQ and on some days has a large trading volume, it must be efficient. Yet it is beyond dispute that these factors, standing alone, do not begin to plead facts demonstrating that proof of reliance should be excused based on the efficient market theory. Motion to Dismiss at 20. Absent basic factual allegations to support the claim of market efficiency, the complaint fails to adequately plead reliance as required by *Commer*, and should be dismissed.

D.     **No Loss Causation**

The Amended Complaint also fails to plead facts sufficient to establish loss causation. This failure is exemplified by the Second Omnibus Memorandum which devotes two sentences to this key point, essentially denying Mr. Dai's claim of insufficiency.

The critical point under *Dura Pharm. Inc. v. Broudo,* 544 U.S. 336, 342 (2003) is not the price rise or drop as the Amended Complaint seems to suggest, but the reasons for the price drop. As the Court in *Dura* stated: "Normally, in cases such as this one (i.e., fraud-on-the-market cases), an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Id.* Rather, it is the price drop coupled with the unmasking of the fraud which ties the claimed losses of plaintiffs who purchased at the artificial high price to the price drop and ultimately to injury that may be compensated.

If the Honig Group conducted a pump-and-dump market manipulation as claimed in the Amended Complaint, then loss causation can only be established if the price drop revealed that fact. The facts cited in the Amended Complaint, however, do not establish or even suggest that a pump-and-dump market manipulation occurred. To the contrary, the cited reports and materials reveal little more than possible mismanagement, focusing on points such as: The hotel for the annual meeting was not properly booked (Pl.'s Am. Compl. (Dkt. 73) ¶ 332); O'Rourke sold stock on December 31 to pay his taxes (*Id.* ¶ 333); five years ago Mr. Honing was involved with another company that changed its name to Blockchain and the stock price rose dramatically (*Id.* ¶ 335); the Company had not been in the crypto business long and the firm was losing money (*Id.* ¶ 337); and the company might hold the annual meeting in Boca Raton (*Id.* ¶ 306). This is not the stuff of a market manipulation.

In the end, if the new crypto strategy was a failure as the Amended Complaint suggests, that is nothing more that mismanagement, a state law claim. *See, e.g. Santa Fe Indus. v. Green*, 430 U.S. 462, 477 (1977) (Section 10(b) only covers fraud not state law claims for mismanagement). It is not market manipulation. It is not the revelation of the truth that would tie a price rise to the fall and establish *Dura* loss causation. It is nothing. And, that is precisely what the Motion to Dismiss established—there is no loss causation and no Section 10(b) cause of action for damages as to Mr. Dai.

## CONCLUSION

The Amended Complaint, as pleaded with respect to Mike Dai, is a tangle of unsupported allegations and uneconomic, illogical, economically irrational and nonsensical claims—the essence of the Shakespearian "sound and fury signifying nothing"—it should be dismissed with prejudice:

- Its claims are unsupported because they repeatedly use phrases such as Mr. Dai "acted along with" others without furnishing any facts to support the claim.

- It is illogical because it repeatedly claims that S-3 registration statements are materially incomplete and false while ignoring the plain text of the filings which flatly contradicts the assertion.

- It is economically irrational because it claims that throughout the period the so-called manipulators caused S-3 registration statements to be filed, acts which were often directly contrary to their economic interests as the SEC rules cited in the Motion to Dismiss at 12–13 demonstrate.

- It is nonsensical because it claims that Mr. Dai, who had no motive to participate in a fraudulent scheme and walked out before most of it was unrolled, has been named as a defendant.

The Amended Complaint fails to properly plead the key elements of a Section 10(b) cause of action as to Mr. Dai.

WHEREFORE, for the foregoing reasons, as well as those set forth in the Motion to Dismiss, the Amended Complaint should be dismissed with prejudice as to Mike Dai.

Dated: November 18, 2019

Respectfully submitted,
Dorsey & Whitney LLP

By: /s/ Laura Lestrade
Laura Lestrade
Thomas O. Gorman
Dorsey & Whitney LLP
51 West 52nd Street
New York, New York
Telephone: 212-415-9200

Stephen Weingold
Dorsey & Whitney
Suite 400
1400 Wewatta St.
Denver, Colorado 80202

11

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on this 18th day of November 2019, copies of the foregoing **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED CORRECTED COMPLAINT BY DEFENDANT MIKE DAI**, was filed electronically through the Court's ECF system. Notice of such filing will be sent to all parties of record by operation of the Court's electronic filing system. The parties may access this filing through the Court's system. In addition, Defendant Mike Dai was served by e-mail.

Date: November 18, 2019              Dorsey & Whitney LLP

                                     By: /s/ Laura Lestrade
                                     **Laura Lestrade**