# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated, | : <br> : Civil Action No.: 18-2293(FLW)(ZNQ) <br> : |
| *Plaintiff*, | : <br> : |
| v. | : **LEAD PLAINTIFF'S MEMORANDUM** <br> : **OF LAW IN OPPOSITION TO** <br> : **DEFENDANTS' MOTIONS FOR** |
| RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL, | : **LEAVE TO FILE SUR-REPLIES IN** <br> : **SUPPORT OF THEIR MOTIONS TO** <br> : **DISMISS LEAD PLAINTIFF'S** |
| *Defendants*. | : **CORRECTED CONSOLIDATED** <br> : **CLASS ACTION COMPLAINT** <br> : |

**LITE DEPALMA GREENBERG, LLC**
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com

*Local Counsel for Dr. Stanley Golovac*

**MOTLEY RICE LLC**
William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
bnorton@motelyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

*Counsel for Dr. Stanley Golovac*
*and Lead Counsel for the Class*

**TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  ARGUMENT .................................................................................................................3

    A.   **Defendants' Proposed Sur-Replies Are Procedurally Improper and Are Actually Requests for Judicial Notice of Riot's Form 8-K**...................3

    B.   **While the Court May Take Judicial Notice of Riot's Form 8-K, the SEC's Private "Letter" to Riot Has Not Been Disclosed and Its Content, Context, and Implications for this Case Are Subject to Reasonable Dispute**..........................................................................................5

    C.   **Recent Court Filings in *SEC v. Honig* Reveal the SEC's Additional Settlements with Defendants O'Rourke and Stetson, Defendants' Pattern of Co-Investing as a Coordinated Group, and the DOJ/FBI's Criminal Investigation into Defendants' Serial Pump-and-Dump Schemes** ...................................................10

III. CONCLUSION ............................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Avram v. Samsung Elecs. Am., Inc.*, No. CIV. 2:11-6973 KM, 2013 WL 3654090
  (D.N.J. July 11, 2013) .................................................................................................. 3

*Ciemniecki v. Parker McCay P.A.*, No. CIV. 09-6450 RBK/KMW,
  2012 WL 113604 (D.N.J. Jan. 13, 2012) ...................................................................... 4

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378
  (D. Del. 2010) ............................................................................................................... 9

*DelRio-Mocci v. Connolly Props. Inc.*, No. CIV. A. 08-2753WJM,
  2009 WL 2989537 (D.N.J. Sept. 16, 2009), *aff'd*, 672 F.3d 241 (3d Cir. 2012) ........ 3

*Hull v. Glob. Digital Sols., Inc.*, No. CV 16-5153(FLW), 2017 WL 6493148
  (D.N.J. Dec. 19, 2017) ................................................................................................ 11

*In re Allergan Generic Drug Pricing Sec. Litig.*, No. CV169449KSHCLW,
  2019 WL 3562134 (D.N.J. Aug. 6, 2019) .................................................................. 12

*In re Delmarva Sec. Litig.*, 794 F. Supp. 1293 (D. Del. 1992) ......................................... 5

*In re Intelligroup Securities Litigation*, 527 F. Supp. 2d 262 (D.N.J. 2007) ................... 7

*In re Zynga Inc. Sec. Litig.*, No. C 12-04007 JSW, 2015 WL 1382217
  (N.D. Cal. Mar. 25, 2015) ............................................................................................. 6

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) ............................... 6

*Levey v. Brownstone Investment Group, LLC*, No. 11-395 (ES),
  2013 WL 3285057 (D.N.J. June 26, 2013) ................................................................... 4

*Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) ........................................................................... 4

*Machulsky v. Hall*, 210 F. Supp. 2d 531 (D.N.J. 2002) .................................................... 3

*McCullough v. Advest, Inc.*, 754 F. App'x 109 (3d Cir. 2018) ......................................... 6

*Metex Mfg. Corp. v. Manson*, No. 05-CV-2948 (HAA), 2006 WL 8458256
  (D.N.J. Aug. 8, 2006) .................................................................................................... 4

*Orabi v. Att'y Gen. of the United States*, 738 F.3d 535 (3d Cir. 2014) ......................... 10

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) ................................................................ 6

*Palermo v. United States*, 776 F. App'x 753 (3d Cir. 2019) ......................................... 11

*SEC v. Honig et al.*, No. 18 Civ. 8175 (ER) (S.D.N.Y.) ......................................... 2, 9, 11

*Thomas v. Care Plus of New Jersey, Inc.*, No. 11-CV-3493, 2012 WL 646023
  (D.N.J. Feb. 28, 2012), *aff'd*, 484 F. App'x 692 (3d Cir. 2012) ............................... 10

*United States v. Lloyd*, 807 F.3d 1128 (9th Cir. 2015) .................................................. 11

**RULES**

Fed. R. Evid. 201 .................................................................................................................. 7, 9
Fed. R. Evid. 201(b) ....................................................................................................... 5, 7, 8, 10
Local Civil Rule 7.1(d)(6) ............................................................................................................ 3

**OTHER AUTHORITIES**

Mem. from Sally Quillian Yates, Deputy Att'y Gen., U.S. Dep't of Justice
   to All U.S. Att'ys et al., Individual Accountability for Corporate Wrongdoing
   (Sept. 9, 2015) .......................................................................................................................... 9

SEC Division of Enforcement 2019 Annual Report
   (https://www.sec.gov/enforcement-annual-report-2019.pdf) ..................................................... 9

SEC Nominees Want Enforcement Actions to Target More Individuals,
   WGL-ACCTALERT VOL 11 NO 208 (Oct. 26, 2017) ............................................................ 9

Case 3:18-cv-02293-GC-RLS   Document 163   Filed 02/21/20   Page 4 of 17 PageID: 5288

Court-appointed Lead Plaintiff Dr. Stanley Golovac ("Plaintiff") respectfully submits this memorandum of law in opposition to the motions for leave to file sur-replies (the "Motions") filed by Defendants Riot Blockchain, Inc. ("Riot" or the "Company"), John O'Rourke, Michael Beeghley, Jeffrey G. McGonegal, Andrew Kaplan, Jason Les, and Eric So (the "Riot Defendants") (ECF No. 161) and Mike Dai ("Dai") (ECF No. 162).[1]

## I. PRELIMINARY STATEMENT

Defendants' Motions should be denied as procedurally improper because they seek to file sur-replies in response to their own previous replies (ECF Nos. 145-46 & 157-58), in which they already had the "last word" on their pending motions to dismiss (ECF Nos. 107-08, 132). This is not the procedural purpose of a sur-reply. *See* § II.A *infra*.

In actuality, Defendants are requesting judicial notice of Riot's recent SEC Form 8-K, which in turn summarizes Riot's own press release (that in all likelihood was issued with an eye toward influencing this litigation), which in turn summarizes a private "letter" Riot purportedly received from the SEC. Defendants seek judicial notice to convince the Court of how this non-public letter (which they summarize second-hand but neither attach nor quote directly) affects whether Plaintiff has adequately pled Defendants' mental states in violating Section 10(b) of the Exchange Act of 1934.

---

[1] Capitalized terms herein have the same meanings as in the Corrected Amended Consolidated Class Action Complaint (the "Complaint") (ECF No. 73), paragraphs of which are cited herein as "¶ __." The Riot Defendants' memorandum of law in support of their motion for leave to file a sur-reply (ECF No. 161-2) is cited herein as "Riot Br. __." Dai's memorandum of law in support of his motion for leave to file a sur-reply (ECF No. 162-1) is cited herein as "Dai Br. __." Dai's proposed sur-reply memorandum is cited herein as "Dai Sur-Reply __." References to "Ex. __" are to the Exhibits to the accompanying Declaration of Joseph J. DePalma, filed herewith. All emphasis is added and internal quotations and citations are omitted, unless otherwise noted.

While Plaintiff does not object to the Court's taking judicial notice of Riot's Form 8-K itself, Plaintiff respectfully submits that the content, context, and implications of the SEC's letter are incapable of accurate and ready determination, are subject to reasonable dispute, and thus are beyond the proper bounds of judicial notice. *See* § II.B *infra*. For example, it is impossible to tell whether this letter reflects an actual change in the SEC's enforcement strategy towards Riot or any of the Individual Defendants in this case, many of whom are also defendants in *SEC v. Honig*,[2] a pending enforcement action by the SEC. Indeed, the SEC's past enforcement strategy toward the Honig Group, ¶ 79, has been to bring formal enforcement actions against (and settle with) the *individual* members of the Honig Group but *not* against the public companies (i.e., Companies A, B, and C, ¶ 81) involved in the Honig Group's various schemes, and instead to seek civil discovery from those companies (like the SEC has sought from Riot). This is consistent with the SEC's stated enforcement policy and general practice of holding *individuals* accountable. Thus, it is reasonably disputable whether the SEC ever planned to pursue a different enforcement strategy with Riot than it did for Companies A, B, and C, or for that matter, the three SEC pump-and-dump scheme complaints attached to Dai's motion. *See* Dai Br. Exs. 2-4 (ECF No. 162-4) (SEC naming *individuals*, but *not* companies, as defendants).

If the Court is inclined to grant the Defendants' Motions and to take judicial notice of Riot's Form 8-K as evidence "relevant to the adjudication of the [Defendants'] Motions to Dismiss," Riot Br. 3, and purportedly "undercut[ting]" Plaintiff's claims, Dai Sur-Reply 2, Plaintiff respectfully requests that the Court also consider several documents recently filed with the court in *SEC v. Honig* and a related federal proceeding that further corroborate Plaintiff's allegations and contribute to a strong inference of Defendants' scienter. *See* § II.C. *infra*. These include (1) the

---

[2] *SEC v. Honig et al.*, No. 18 Civ. 8175 (ER) (S.D.N.Y.).

SEC's recent letter filed with the court announcing that it reached settlements with Defendants O'Rourke and Stetson; (2) emails and correspondence filed by the SEC demonstrating how Defendants O'Rourke, Honig, Stetson, Groussman, and their related entities used emails to coordinate their investments in various public companies while denying their affiliation; and (3) court filings confirming the DOJ and FBI's criminal investigation into the Honig Group.

## II.   ARGUMENT

### A.   Defendants' Proposed Sur-Replies Are Procedurally Improper and Are Actually Requests for Judicial Notice of Riot's Form 8-K

Under Local Civil Rule 7.1(d)(6), "no sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned." Courts in this District generally only grant permission to file a sur-reply when the moving party introduces a new issue or argument for the first time in its reply. *See, e.g.*, *DelRio-Mocci v. Connolly Props. Inc.*, No. CIV. A. 08-2753WJM, 2009 WL 2989537, at *3 (D.N.J. Sept. 16, 2009), *aff'd*, 672 F.3d 241 (3d Cir. 2012) ("[B]ecause Defendant's reply brief did not raise any new arguments nor contain any statements requiring correction or further explanation, a surreply was unnecessary."); *Avram v. Samsung Elecs. Am., Inc.*, No. CIV. 2:11-6973 KM, 2013 WL 3654090, at *5 (D.N.J. July 11, 2013) ("I find that the Defendants' reply briefs do not raise new arguments or contain statements requiring correction. Therefore I do not authorize the filing of a surreply."); *Machulsky v. Hall*, 210 F. Supp. 2d 531, 534 (D.N.J. 2002) (denying plaintiff's request to file a sur-reply based on finding that material in proposed sur-reply was "either [a] reply to issues raised in [plaintiff's own] opposition or corroborate[d] facts contained in [defendant's] initial [motion], thereby not raising any 'new' issues").

Courts in this District have also denied requests for leave to file a sur-reply where the movant "fail[ed] to point to any *exceptional circumstances warranting* the filing of a sur-reply,"

3

*Ciemniecki v. Parker McCay P.A.*, No. CIV. 09-6450 RBK/KMW, 2012 WL 113604, at *2 (D.N.J. Jan. 13, 2012), or "demonstrated no *extraordinary circumstances justifying* the proposed sur-reply," *Metex Mfg. Corp. v. Manson*, No. 05-CV-2948 (HAA), 2006 WL 8458256, at *8 (D.N.J. Aug. 8, 2006).

Here, the Riot Defendants and Dai collectively filed three previous reply briefs and their proposed sur-replies do not respond to any new arguments or issues raised in those replies. Thus, having already had the last word, Defendants can point to no "exceptional" or "extraordinary" circumstances justifying their proposed sur-replies. Defendants' case law does not help them and, in fact, cuts against their arguments. Both the Riot Defendants and Dai cite to *Levey v. Brownstone Investment Group, LLC*, No. 11-395 (ES), 2013 WL 3285057 (D.N.J. June 26, 2013), but ignore that this case – which is marked as "NOT FOR PUBLICATION" and was written "solely for the parties," *id.* at *1 – concerned a plaintiff's request to file a sur-reply to a defendant's reply. Here, by contrast, Defendants seek to file sur-replies to their own replies. Defendants also conveniently ignore that the plaintiff's request for leave to file a sur-reply in *Levey* was *denied*. *Id.* at *4.

Accordingly, Defendants' Motions should be denied as procedurally improper. Instead, Defendants' Motions should properly be considered as requests for judicial notice of Riot's recently issued Form 8-K.[3]

---

[3] Dai's proposed sur-reply (ECF No. 162-1) attaches three SEC complaints (ECF No. 162-4) that Dai argues typify the "fundamental building blocks" of a "pump-and-dump market manipulation claim[.]" Dai Sur-Reply 3; *see also* Dai Exs. 2-4. While Rule 10b-5(a) and (b) "capture a wide range of conduct," *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019), a cursory comparison of the allegations in those SEC complaints reveals how strikingly similar the conduct alleged in those cases is with the Honig Group's pump-and-dump scheme at Riot. For example:

- *Compare* Dai Ex. 2 at 1 ¶¶ 1 & 7-9 ¶¶ 17-19, 21 (alleging that "the Group's scheme included at least five different penny stock issuers" including several "Nevada corporation[s]" involved in "cannabinoid products," "marijuana legalization," and a Nevada corporation that "underwent several changes to its business plan before characterizing itself . . . as a provider of unmanned aerial vehicle services"), *with* Dai Ex. 3 at 7 ¶¶ 33-34 (alleging that pump-and-

### B. While the Court May Take Judicial Notice of Riot's Form 8-K, the SEC's Private "Letter" to Riot Has Not Been Disclosed and Its Content, Context, and Implications for this Case Are Subject to Reasonable Dispute

Although not formally styled as such, Defendants' Motions are at their core a "request that the Court take judicial notice of Riot's [February 3, 2020] Form 8-K filed with the SEC." Riot Br. 3 n.2. "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

"SEC filings fall within this category of public records that can be judicially noticed." *In re Delmarva Sec. Litig.*, 794 F. Supp. 1293, 1299 (D. Del. 1992); *see also Oran v. Stafford*, 226

---

dump issuers included two "Nevada corporation[s]" both "with a focus on the cannabis industry"), *with* ¶ 9 ("After abandoning their idea to pivot Bioptix [a "Nevada corporation," ¶ 21] into the marijuana business, Defendants instead . . . set out to reinvent Bioptix as a new player in cryptocurrency.").

- *Compare* Dai Ex. 2 at 11 ¶ 28 ("Each pump-and-dump fraud began with the Group acquiring control of a shell company either having, or that it soon outfitted with, what the Group considered to be an appealing-to-penny-stock investors business plan, and over which it installed, as CEO, either a Group employee or a figurehead it recruited, whose activities the Group could, and did, direct."), *with* ¶ 8 ("Finally, Honig and his associates achieved complete control over the Company, with Beeghley becoming CEO and O'Rourke joining the Board.").

- *Compare* Dai Ex. 2 at 3 ¶ 5 ("[T]he Group . . . formulated materially misleading 'story arcs' for each Issuer. Each 'story arc' set forth the Issuer's supposed line of business and a detailed timeline for when the Issuer would disseminate press releases and what those releases would say."), *with* Dai Ex. 3 at 3 n.1 ("In a 'pump-and-dump' scheme, a group of individuals who control the 'free trading' shares of an issuer with a thinly-traded stock, inflate the issuer's share price and trading volume through, among other things, . . . issuing false or misleading press releases . . . ."), *with* Dai Ex. 4 at 15 ¶ 60 ("D'Amaro arranged with Playstar's CEO to have the company issue numerous . . . misleading press releases" that "helped further boost the price of the company's stock"), *with* ¶ 11 ("Defendants artificially 'hype[d]' the Company's prospects by issuing a flurry of press releases . . . designed to give investors the false impression that Riot was a serious cryptocurrency company.").

- *Compare* Dai Ex. 2 at 14 ¶ 36 ("[T]he Group lined up thirty-seven straw purchasers to purportedly fully subscribe to every last share in the . . . offering."), *with* ¶ 79 (listing 23 previously affiliated Honig Group members who Defendants lined up to invest in Riot).

5

F.3d 275, 289 (3d Cir. 2000) (ruling that courts may take judicial notice of SEC filings in ruling on a motion to dismiss). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). *See also McCullough v. Advest, Inc.*, 754 F. App'x 109, 111 (3d Cir. 2018) (noting that "we may consider 'the *fact* that . . . regulatory filings contained certain information, without regard to the truth of their contents'" (emphasis in original)).

The above principals have particular applicability here because "Plaintiff contests the accuracy of the contents of [Riot's] public filings . . . ."[4] *In re Zynga Inc. Sec. Litig.*, No. C 12-04007 JSW, 2015 WL 1382217, at *4 n.1 (N.D. Cal. Mar. 25, 2015) ("[B]ecause Plaintiff contests the accuracy of the contents of the company's public filings, the Court does not adopt the representations made in the documents for the truth of the matters asserted, but merely accepts that the public filings were made.").

Here, Plaintiff does not object to the Court taking judicial notice of the fact that Riot filed its Form 8-K with the SEC on February 3, 2020, in the form attached to its motion. Nor does Plaintiff dispute that Riot's 8-K attached a press release issued by Riot on January 30, 2020 (although neither the Riot Defendants nor Dai attach the actual press release to their Motions). Plaintiff does object, however, to the judicial inferences that the Riot Defendants and Dai would seek to draw in their favor from their assertions that on January 29, 2020, the Company received

---

[4] *See, e.g.*, ¶¶ 235-42, 249-58, 259, 261-62, 264-68, 279-82, 287-91, 295-98 (alleging that Riot's press releases were materially false and misleading); ¶¶ 243-46, 260-62 (alleging that Riot's Forms 8-K were materially false and misleading); ¶¶ 210-14, 220-34 (alleging that Riot's Forms S-3/A were material false and misleading); ¶¶ 215-19 (alleging that Riot's Form 10-K/A was materially false and misleading); ¶¶ 269-74 (alleging that Riot's Form 10-Q was materially false and misleading; ¶¶ 292-94 (alleging that Riot's Form DEF 14A was materially false and misleading).

6

a private "letter" from someone at the SEC stating that "the SEC has concluded its investigation of Riot and, *based on the information the SEC had* as of the date of the letter, the *SEC does not intend to recommend an enforcement action against Riot, with respect to the matters investigated by the SEC*." Riot Br. 3.  Plaintiff disputes that the Court can take judicial notice that the SEC's letter is "highly relevant," Riot Br. 3, or "highly significant," Dai Br. 2.

<u>*First*</u>, neither Riot nor the SEC have published or disclosed the SEC's actual private letter to Riot or its specific content, quoted any of the letter's specific language, or revealed its specific author(s) or addressee(s).  Because so many details about the letter itself remain unknown, the letter's meaning and implications cannot be accurately or readily determined, may be reasonably questioned, and are not capable of judicial notice.  Fed. R. Evid. 201.[5]

<u>*Second*</u>, Riot's Form 8-K states that "the SEC does not intend to recommend an enforcement action *against <u>Riot</u>*" based on "<u>*information* the SEC had</u> as of the date of the letter." Riot Br. 3.  But it is entirely unknown (and Riot's 8-K does not reveal) what "information" the SEC "had" that formed the basis of the SEC's purported decision only as to "Riot." *Id.*  Without any of this informational context, which Riot represents that the SEC said formed the basis of the SEC's decision as to its recommendation (or lack thereof), the letter's meaning and its implications for this case cannot be accurately or readily determined, are reasonably questionable, and are incapable of judicial notice.  Fed. R. Evid. 201(b).

---

[5] The SEC's nonpublic letter to Riot is very different than the "SEC no-action Letter" referenced in *In re Intelligroup Securities Litigation*, 527 F. Supp. 2d 262, 274 (D.N.J. 2007), which the Riot Defendants cite as supporting "judicial notice," Riot Br. 4.  The no-action letter in *Intelligroup* was a publicly available document, which the court was able to quote "in its entirety" in its decision, and whose author (the "SEC Assistant Director") was specifically identified.  527 F. Supp. 2d at 274 n.2.  The same cannot be said here regarding the SEC's private letter.

7

*Third*, Riot's Form 8-K states that "the SEC does not *intend to recommend* an enforcement action against Riot" but does not specify whether or not the SEC ever actually considered recommending such an action in the first place, or whether the SEC changed its mind, and if so, when and based on what "information" and rationale. Because these aspects of the letter's background and context are unknown, the letter's implications for this case cannot be accurately or readily determined. Fed. R. Evid. 201(b).[6]

*Fourth*, while Defendants argue that the SEC's letter "wholly undermine[s]" this case and "disposes of any inference . . . of [the Riot] Defendants' scienter," Riot Br. 1, and is "highly significant," Dai. Br. 2, the validity of these arguments is subject to reasonable dispute because the letter itself remains private and its content, context, and implications for this case are therefore not capable of accurate and ready determination. Fed. R. Evid. 201(b).

*Fifth*, given that Defendants O'Rourke, Honig, Stetson, Groussman, and Honig Group members Brauser, ¶ 37, Melechdavid, ¶ 58, GRQ Consultants, ¶ 74, ATG Capital LLC, ¶ 34, Stetson Capital, ¶ 71, and Grander Holdings, Inc., ¶ 46, have *all* settled[7] with the SEC in the face of charges that they engaged in a series of fraudulent pump-and-dump schemes, Defendants fail to explain how the SEC's undisclosed letter undermines the cogent inference that these same

---

[6] Given the SEC's nearly two-year investigation of Riot, it is likely that Riot and the SEC have exchanged numerous pieces of correspondence that have not precipitated press releases by Riot (or the SEC) and thus remain undisclosed to the public.

[7] *See* Ex. A (SEC letter filed with court in *SEC v. Honig* announcing "agreements in principal to settle" with Defendants O'Rourke and Stetson, and Honig Group members Brauser, Grander Holdings Inc., ATG Capital LLC, and Stetson Capital); *see also* ECF No. 136-3 (detailing terms of Honig's settlement with SEC, including being "permanently barred from participating in any offering of penny stock," and disgorgement and penalties to be determined); *see also* ¶ 372 (alleging Groussman's settlement with SEC, five-year ban from penny-stock investing, and $1.38 million in disgorgement and penalties); *see also* ECF No. 136-4 (same); ECF No. 136-5 (detailing terms of Melechdavid's settlement with SEC).

individuals and entities engaged in a similar pump-and-dump scheme at Riot while falsely disclaiming that this group had any "material relationship." ¶¶ 211, 215, 221, 226.

*Sixth*, the context, reasons, and implication of the SEC's purported decision "not to recommend enforcement action" against Riot as a corporate entity is "subject to reasonable dispute," Fed. R. Evid. 201, in light of the SEC's stated policy of "holding accountable *individual* wrongdoers,"[8] as demonstrated by the SEC's decision to file its enforcement action against the *individual* members of the Honig Group – including Defendants Honig, O'Rourke, Stetson, and Groussman – but *not* against Companies A, B, or C.[9]  Indeed, courts "look to the state of mind of *the individual corporate official* or officials who make or issue the statement . . . ." *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 402 (D. Del. 2010).

---

[8] SEC Division of Enforcement 2019 Annual Report (https://www.sec.gov/enforcement-annual-report-2019.pdf) at 5, 17 ("A central pillar of our program is holding accountable *individual* wrongdoers . . . Holding *individuals* accountable is the Commission's *most effective method of achieving deterrence*."); *see also* SEC Nominees Want Enforcement Actions to Target More Individuals, WGL-ACCTALERT VOL 11 NO 208 (Oct. 26, 2017) ("Both nominees to the SEC voiced support for holding more *individual* executives accountable for corporate misconduct, instead of just the companies themselves."); Mem. from Sally Quillian Yates, Deputy Att'y Gen., U.S. Dep't of Justice to All U.S. Att'ys et al., Individual Accountability for Corporate Wrongdoing (Sept. 9, 2015), https://www.justice.gov/archives/dag/file/769036/download ("One of the most effective ways to combat corporate misconduct is by seeking accountability from the *individuals* who perpetrated the wrongdoing.").

[9] The SEC's pending enforcement action against the Honig Group, *SEC v. Honig et al.*, No. 18 Civ. 8175 (ER) (S.D.N.Y.), did not name Companies A, B, and C as defendants; instead, the SEC named only individual defendants, including Defendants O'Rourke, Honig, Stetson, and Groussman. *See* ECF No. 136-2 (*SEC v. Honig*, First Amended Complaint).  Tellingly, in each of the three SEC complaints involving pump-and-dump schemes that Dai attaches to his motion, the SEC brought suit against the *individuals* alleged to have orchestrated those schemes, but *not* against the issuing companies that (like Riot) were the corporate vehicles for those frauds. *See* Dai Br. Exs. 2-4 (ECF No. 162-4).

### C. Recent Court Filings in *SEC v. Honig* Reveal the SEC's Additional Settlements with Defendants O'Rourke and Stetson, Defendants' Pattern of Co-Investing as a Coordinated Group, and the DOJ/FBI's Criminal Investigation into Defendants' Serial Pump-and-Dump Schemes

This Court "may take judicial notice of the contents of another Court's docket." *Orabi v. Att'y Gen. of the United States*, 738 F.3d 535, 537 (3d Cir. 2014); *see also Thomas v. Care Plus of New Jersey, Inc.*, No. 11-CV-3493, 2012 WL 646023, at *4 (D.N.J. Feb. 28, 2012), *aff'd*, 484 F. App'x 692 (3d Cir. 2012) (drawing facts, in ruling on motion to dismiss, from "prior state court proceedings against [defendant]").

Here, if the Court is inclined to take judicial notice of Riot's recent Form 8-K in considering whether Plaintiff has adequately pled Defendants' scienter, Plaintiff respectfully requests that the Court take judicial notice of the following recent additions to the record in the *SEC v. Honig* action, which Plaintiff respectfully submits provide more accurate, readily determinable, and reliable indicia of Defendants' scienter than Riot's Form 8-K. Fed. R. Evid. 201(b).

*First*, as stated in a letter from counsel for the SEC filed with the court in *SEC v Honig*, the SEC recently reached additional settlements with several of the same Defendants and related parties in this case, including Defendants O'Rourke and Stetson, and Honig Group members Brauser, ATG Capital LLC, Stetson Capital Investments Inc., and Grander Holdings, Inc. *See* Ex. A.[10] *See Hull v. Glob. Digital Sols., Inc.*, No. CV 16-5153(FLW), 2017 WL 6493148, at *5 (D.N.J.

---

[10] These settlements follow the SEC's previous settlement with Defendant Honig, in which he agreed, among other things, to (1) be "permanently barred from participating in any offering of penny stock"; (2) be "permanently prohibited" from holding greater than 4.99% of any penny stock company; and (3) "pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty" to be determined upon a forthcoming motion by the SEC. ECF No. 136-3. Defendant Groussman's settlement with the SEC binds him to a similar five-year ban. ECF No. 136-4 at 5.

Dec. 19, 2017) (finding scienter adequately pled against defendants who were "charged in the SEC Complaint" and had "settled the claims").[11]

*Second*, several emails among Defendants O'Rourke, Honig, Groussman, Stetson, and/or related-party Brauser, which were filed in court by the SEC, confirm that these individuals personally coordinated their investments in numerous public companies such as Passport Potash, Inc.; IZEA, Inc.; Senesco Technologies, Inc.; Fuse Science, Inc.; and MusclePharm Corporation.[12]

*Third*, the FBI and DOJ have been pursuing a criminal investigation into the Honig Group's pump-and-dump schemes, pursuant to which the FBI interviewed Defendant Honig and the DOJ made those FBI Form FD-302[13] interview notes available to the SEC.[14] *See In re Allergan Generic*

---

[11] Unlike the SEC's letter to Riot, which Riot's February 3, 2020 Form 8-K neither attaches nor directly quotes, the SEC's January 21, 2020 letter to the court in *SEC v. Honig* is a publicly available document signed by counsel for the SEC, filed "Via ECF," and addressed to the court in that action. *See* Ex. A.

[12] *See* Exs. B, C, D, E, F & G. These documents, which the SEC filed in opposition to a motion to quash subpoenas issued in *SEC v. Honig*, No. 1:18-cv-08175-ER (S.D.N.Y.), confirm Defendants' pattern of falsely denying their group affiliation to further their investment goals. For example, on July 2, 2014, Defendants Honig, Stetson, Groussman, and related party Brauser received an email from a lawyer requesting "representation letters" for the "transfer agent" for "Musclepharm Corp." *See* Ex. B at 7 of 21. That same day, this lawyer issued an opinion letter, Ex. C, to that transfer agent stating that these same individuals (listed in the "Exhibit A" to his letter, *id.* at 19-20 of 25) had "executed representation letters that such parties are not affiliates and were not affiliates within the three months prior to the Purchase Date," *id.* at 17-18 of 25. But as noted above, these same emails demonstrate that this same group of individuals had closely coordinated their affiliated co-investments in numerous penny-stock companies over the previous several years. *See* Exs. B, C, D, E, F & G.

[13] "After FBI agents conduct a formal interview, they incorporate [ ] their handwritten notes into a more complete report of the interview on the FBI's Interview Report Form FD-302, known colloquially as a '302.'" *Palermo v. United States*, 776 F. App'x 753, 754 (3d Cir. 2019) (quoting *United States v. Lloyd*, 807 F.3d 1128, 1158 n.11 (9th Cir. 2015) (alteration in original)).

[14] *See* Ex. H at 21-25 (counsel informing the court that "the SEC has notes of [Barry] Honig's [FBI Form FD-] 302s," which the SEC "requested," "reviewed," and "gave the 302s back to the [DOJ]" and counsel for the SEC confirming that the SEC had "review[ed] the 302s" from Honig's interview). *See also* Ex. I (Stipulation and Order in *SEC v. Honig* providing for disclosure by SEC of "notes taken by the [FBI] at an April 23, 2019 interview of a witness").

*Drug Pricing Sec. Litig.*, No. CV169449KSHCLW, 2019 WL 3562134, at *12 (D.N.J. Aug. 6, 2019) (finding "DOJ's criminal . . . investigation" was "a significant piece of the puzzle" when "taking a 'holistic' view of the purported facts as they relate to scienter").

### III. CONCLUSION

For the reasons set forth above, Defendants' Motions to file sur-replies should be denied as procedurally improper. Defendants' request for judicial notice of Riot's Form 8-K should be narrowly construed because the content, context, and implications of the matters asserted therein cannot be accurately or readily determined and are subject to reasonable dispute as they pertain to this case.

Alternatively, if the Court does take judicial notice of the Form 8-K for the purposes Defendants' requests, the Court should also take judicial notice of the fact that the SEC has uncovered corroborating evidence regarding, and reached settlements with, Defendants O'Rourke, Honig, Stetson, and Groussman, and at least six other members of the Honig Group. This evidence, these settlements, and the DOJ and FBI's ongoing criminal investigation into the Honig Group all contribute to a strong and cogent inference of Defendants' scienter.

Dated: February 21, 2019                    Respectfully submitted,

**LITE DEPALMA GREENBERG, LLC**

By: */s/ Joseph J. DePalma*
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com

*Local Counsel for Lead Plaintiff Dr. Stanley Golovac*

**MOTLEY RICE LLC**
William S. Norton (*pro hac vice*)

12

>Joshua C. Littlejohn (*pro hac vice*)
>Christopher F. Moriarty (*pro hac vice*)
>28 Bridgeside Blvd.
>Mt. Pleasant, SC 29464
>Telephone: (843) 216-9000
>Facsimile: (843) 216-9450
>bnorton@motelyrice.com
>jlittlejohn@motleyrice.com
>cmoriarty@motleyrice.com
>
>*Lead Counsel for Lead Plaintiff Dr. Stanley Golovac and Lead Counsel for the Class*
>
>David P. Abel
>**US. MARKET ADVISORS LAW GROUP PLLC**
>5335 Wisconsin Ave. NW, Ste. 440
>Washington, D.C.  20015
>202-274-0237 Telephone
>202-686-2877 Facsimile
>dabel@usmarketlaw.com
>
>*Counsel for Lead Plaintiff Dr. Stanley Golovac*