# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated, | : : : | Civil Action No.: 18-2293(FLW)(ZNQ) |
| *Plaintiff*, | : : : : | **DECLARATION OF JOSEPH J. DEPALMA IN SUPPORT OF LEAD PLAINTIFF'S** |
| v. | : : : | **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'** |
| RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, JEFFREY G. MCGONEGAL, | : : : : : | **MOTIONS FOR LEAVE TO FILE SUR-REPLIES IN SUPPORT OF THEIR MOTIONS TO DISMISS LEAD PLAINTIFF'S CORRECTED** |
| *Defendants*. | : : | **CONSOLIDATED CLASS ACTION COMPLAINT** |

**LITE DEPALMA GREENBERG, LLC**
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com

*Local Counsel for Dr. Stanley Golovac*

**MOTLEY RICE LLC**
William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
bnorton@motelyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

*Counsel for Dr. Stanley Golovac and Lead Counsel for the Class*

## DECLARATION OF JOSEPH J. DEPALMA

I, Joseph J. DePalma, hereby declare as follows:

1.      I am an attorney admitted to practice in the State of New Jersey and am admitted to practice before this Court in the above-captioned case.  I am a member of Lite DePalma Greenberg, LLC, Local Counsel for Lead Plaintiff Dr. Stanley Golovac.

2.      I respectfully submit to the Court, pursuant to 28 U.S.C. § 1746, this declaration and the attached materials that are referenced in Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Leave to File Sur-Replies in Support of Their Motions to Dismiss Lead Plaintiff's Corrected Consolidated Class Action Complaint.

3.      Submitted herewith are true and correct copies of the following:

| Exhibit | Description |
|---------|-------------|
| A | Letter from U.S. Securities and Exchange Commission ("SEC") to the Hon. Edgardo Ramos, United States District Court Judge, regarding *SEC v. Honig, et al.*, No. 18 Civ. 8175 (ER) (S.D.N.Y.) (ECF No. 208), dated and filed January 21, 2020. |
| B | Email from Dylan Weeks to John Stetson, Mike Brauser, Barry Honig, Mark Groussman, et al., regarding "Subject: MSLP – Share Purchase," dated July 2-3, 2014. |
| C | Opinion letter from Nason Yeager Gerson White & Lioce, P.A., to Corporate Stock Transfer Re: MusclePharm Corporation / Stock Transfer, dated July 2, 2014. |
| D | Opinion letter from Morgan Lewis & Bockius LLP to American Stock Transfer & Trust Company Re: Senesco Technologies, Inc., dated October 2, 2013. |
| E | Email from John Stetson to Tanya regarding Subject: Subscriber List, with Subscriber List attached, dated January 20, 2011. |
| F | Email from John Stetson to Barry Honig regarding Subject: Izea, with Izea Share Breakdown attached, dated January 27, 2012. |

| Exhibit | Description |
|---------|-------------|
| G | Letter from Brian Tuffin, Chief Executive Officer, Fuse Science, Inc. to Securities Transfer Corporation requesting issuance of Shares to Holders, dated November 7, 2013. |
| H | Excerpts from Transcript of Hearing before the Hon. Edgardo Ramos, United States District Judge, held on November 7, 2019 in regard to *SEC v. Honig, et al.*, No. 18 Civ. 8175 (ER) (S.D.N.Y.) (ECF No. 198), filed November 25, 2019. |
| I | Stipulation and Order of the Hon. Edgardo Ramos, United States District Judge, in regard to *SEC v. Honig, et al.*, No. 18 Civ. 8175 (ER) (S.D.N.Y.) (ECF No. 195), filed November 18, 2019. |

I declare under penalty of perjury that the foregoing is true and correct. Executed this 21st day of February, 2020, in Newark, New Jersey.

/s/ Joseph DePalma
Joseph J. DePalma

# Exhibit A



UNITED STATES
**SECURITIES AND EXCHANGE COMMISSION**
NEW YORK REGIONAL OFFICE
200 VESEY STREET, SUITE 400
NEW YORK, NY 10281-1022

NANCY A. BROWN
TELEPHONE: (212) 336-1023
EMAIL: BROWNN@SEC.GOV

January 21, 2020

**Via ECF and UPS Overnight**

Hon. Edgardo Ramos
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

     Re:    SEC v. Honig, et al.;
               No. 18 Civ. 8175 (ER)

Dear Judge Ramos:

     Plaintiff Securities and Exchange Commission ("Commission") respectfully writes to advise the Court that the staff has reached agreements in principle to settle this action with Defendants Michael Brauser, John O'Rourke and John Stetson, and their affiliated entities, Defendants Grander Holdings, Inc., ATG Capital LLC, and Stetson Capital Investments Inc. Because the settlement terms will need to be reviewed and approved by the full Commission, we expect to be able to submit Final Judgments on Consent as to each of these parties within six to eight weeks. With respect to Defendant HS Contrarian Investments, LLC, we expect to be able to submit a partial Judgment on Consent within the same time frame. Should there by any delay, we will alert the Court promptly.

                                     Respectfully submitted,

                                     Nancy A. Brown

cc:    All Defendants via ECF

# Exhibit B

**To:** Jeff Machnij[jeff@bmasecurities.com]
**From:** Ben Brauser
**Sent:** Thur 7/3/2014 9:29:14 AM
**Importance:**        **Normal**
**Subject:**   FW: MSLP - Share Purchase
image001.png

Jeff,


Please see below.  The following entities are buying the following amount of shares of MSLP from COCP:


Michael Brauser - 77K

Grander 401K - 30K

Dan Brauser - 8K

Ben Brauser - 5K


The shares were bought under SPA's at $9 per share.  There is a blanket opinion at the TA as all of the shares tack back, but there is a lockup/leakout agreement that I will go over w/ you in detail.  I will also get you all of the backup.  For now though, to get the certs issued, they need the below from you guys.  Can you please put this together for the four above entities?


Thank you,


Ben Brauser, Esq.

**Law Office of Benjamin S. Brauser, P.A.**

4400 Biscayne Blvd, Ste 850

Miami, FL  33137

Office - (305) 576-9260

SEC-BMA-E-0006221

Fax - (305) 576-9298

Cell - 954-649-1821

Ben@MarlinCapital.com


**From:** Dylan Weeks [mailto:DWeeks@nasonyeager.com]
**Sent:** Wednesday, July 02, 2014 5:58 PM
**To:** 'John Stetson'; erichardson@richardsonpatel.com; tagjohn@gmail.com; Ben Brauser; Mike Brauser; dan@usell.com; shaye@briocapital.com; bcolman@colman-partners.com; Emily Fiel; Darren Goodrich; brhonig@aol.com; John Lemak (john@lemak.net); mgman@bullhunterllc.com; bk@pinnaclefund.com; richard@pointcapitalinc.com; ssmith@smithstag.com
**Cc:** Michael Harris; Brian Bernstein
**Subject:** MSLP - Share Purchase


The transfer agency for Musclepharm Corp has requested brokers representation letters for each transferee which contain the following language:


If at any time the issuer becomes non-current in their SEC filings, we will send any unsold shares back to the transfer agent to have the legend re-instated.


Please send the requested representation letters to me so that I may forward them to the transfer agent. Feel free to contact me with any questions. Thank you!


Best Regards,


cid:image001.png@01CEAD4E.86497B20
Dylan Weeks, Paralegal
**Nason, Yeager, Gerson, White & Lioce, P.A.**
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, Florida 33401

SEC-BMA-E-0006222

Phone: 561-471-3511
Fax: 561-471-0894
DWeeks@nasonyeager.com
www.nasonyeager.com

==========================================================
====================================

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of

the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified

that any dissemination, distribution or copying of this communication is strictly prohibited. If you receive this

communication in error, please notify us immediately by telephone (collect) and return the original message to us at

the above address via the U.S. Postal Service. We will reimburse you for postage and/or telephone expenses. Thank you.

TAX MATTERS - IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we

inform you that any tax advice contained in this communication (including attachments) was not intended or written

to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code

or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

==========================================================
====================================

E Think **Green!** please do not print this e-mail unless absolutely necessary.

SEC-BMA-E-0006223

---

This email has been scanned for email related threats and delivered safely by Mimecast.
For more information please visit http://www.mimecast.com

---

SEC-BMA-E-0006224

# Exhibit C

NASON YEAGER GERSON
WHITE & LIOCE, P.A.
ATTORNEYS AT LAW
*Established in 1960*

MARK A. PACHMAN
Also Admitted In New York

E-MAIL ADDRESS:
mpachman@nasonyeager.com

DIRECT DIAL:
(561) 471-3529

FAX NUMBER:
(561) 686-5442

July 2, 2014

Corporate Stock Transfer
3200 Cherry Creek Drive South
Suite 430
Denver, Colorado 80209
Attention: Ms. Carolyn Bell

    Re:  MusclePharm Corporation / Stock Transfer

Dear Ms. Bell:

   We have been requested to render our opinion regarding the removal of the restrictive legend from 600,000 shares of common stock (the "Shares") of MusclePharm Corporation ("MP") without registration under the Securities Act of 1933 (the "Act") in reliance upon the exemption contained in Rule 144 promulgated thereunder by the Securities and Exchange Commission ("SEC"). The Shares are held by the parties set forth on <u>Exhibit A</u> (the "Holders"). To the extent that this opinion is predicated upon facts, it is solely based upon our review of the documents and upon the communications referred to in this opinion.

   In rendering this opinion, this firm has discussed the matters covered by this opinion with management of Cocrystal Pharma, Inc. ("Cocrystal"), reviewed representation letters submitted by Cocrystal's management and the Holders, reviewed Cocrystal's and MP's SEC filings, and conducted such other inquiries as we deemed appropriate.

   As we understand the facts, on January 2, 2014, MP issued 1,200,000 shares to Cocrystal in connection with the sale of substantially all of the operating assets of Cocrystal making full payment therefor. Since January 2, 2014, Cocrystal has never owned any other shares of MP. According to MP's transfer agent: (i) MP had 11,800,722 shares of common stock outstanding as of March 24, 2014 and (ii) MP had 12,183,722 shares of common stock outstanding as of June 24, 2014 (the "Purchase Date"). Therefore, Cocrystal beneficially owned 10.2% and 9.8% of MP's common stock as of three months prior to the Purchase Date and the Purchase Date, respectively.

SEC-Legend-E-0111385

On the Purchase Date, the Holders acquired the Shares from Cocrystal, which was issued the Shares in a transaction not involving a public offering more than six months ago. The Shares are a "restricted security" as that term is defined in Rule 144(a)(3) under the Act.

Rule 144(d)(1)(i) under the Act provides for the holding period of securities acquired from a non-affiliate to be tacked to the non-affiliate's holding period. As described below and as represented in a representation letter from the Chief Executive Officer of Cocrystal as of the Purchase Date and for the three months prior, it was not an affiliate of MP. Additionally, according to a representation letter signed by the Holders, the Holders are not affiliates and have not been affiliates of MP for more than the past three months.

Rule 144 (a)(1) defines an affiliate of an issuer to be "a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer." Although Regulation C promulgated under the Act applies to registered offerings under such Act and not by its terms to exempt offerings, nonetheless reference to Regulation C is illuminating. Rule 405 contained in Regulation C defines an "affiliate" in a similar manner as Rule 144(a). However, it makes no reference to specific ownership or percentage of ownership. Conversely, it defines the term "promoter" to include any person who in connection with the organization of an issuer acquires 10% or more of any class of securities of the issuer except under certain circumstances.

Ultimately the issue of whether or not Cocrystal was an affiliate of MP is an issue of fact based upon whether or not it controlled or had the power to control MP. Although Cocrystal owned more than 10% of MP's common stock during the three months prior to the Purchase Date, certain facts indicate they have not been an "affiliate" of MP within the meaning of Rule 144(a)(1) for more than three months prior to the Purchase Date.

As early as 1972, the Division of Corporation Finance of the SEC held the position that "a person's status as an officer, director, or owner of 10% of the voting securities of a company is not necessarily determinative of whether such person is a control person or member of a controlling group of persons." American-Standard, ['72-'73 Decisions] CCH Fed.Sec.L.Rep. paragraph 79,071 (Avail. Oct. 11, 1972). As the American-Standard interpretive letter recognizes, a person's position of control is a factual issue.

In reaching this conclusion, the staff relied upon the definition of control in Rule 405 referred to above. Interestingly, in defining the term promoter, the SEC specifically referred to ownership of 10% or more of a class of equity securities of an issuer; in defining the term "affiliate" in Rule 144(a), the SEC makes no mention of this 10% requirement although its action in defining "promoter" in Rule 405 shows that it knew how to draft a rule in that fashion. This conscious reference gives support to the Division of Corporation Finance's 1972 interpretation that a 10% ownership status does not necessarily indicate control.

Quoting what he terms a "classic study," one authority (who later served as a Commissioner of the SEC) recognized that control stems from the power to select the board of directors or a majority of the board. Cocrystal has advised us that none of its affiliates are or have served as members of the Board of Directors of MP, nor did it have the power to elect directors of

SEC-Legend-E-0111386

MP. See Sommer, Who's "in Control?"- S.E.C. 21 Bus. Law 559, 562-70 (1966). Another SEC Commissioner once suggested that a very practical criterion for determining whether the person or group was in control was if the individual or group has the power to cause a registration statement under the Act to be signed. Sommer, supra at 566. Prior to the sale of the Shares to the parties listed on Exhibit A, we, on behalf of Cocrystal, requested that MP register Cocrystal's shares of MP common stock at Cocrystal's expense. MP denied this request.

These legal authorities together with the facts set forth above lead us to conclude that Cocrystal was not an affiliate of MP as of the Purchase Date since it did not possess the power to control MP. Each of the parties listed on Exhibit A has also executed representation letters that such parties are not affiliates and were not affiliates within the three months prior to the Purchase Date.

Additionally, Rule 144(b)(1)(i) requires that the issuer has been subject to the reporting provisions of Section 13 or 15(d) of the Securities Exchange Act of 1934 (the "Exchange Act") for at least 90 days prior to the sale (a "Reporting Issuer"). MP was subject to such provisions for more than 90 days prior to the date of this opinion.

For Reporting Issuers, another condition is found in Rule 144(c) which requires that adequate current information about the issuer be available. Rule 144(c)(1) specifies that this test is met if the Reporting Issuer has filed all required reports under Section 13 or 15(d) of the Exchange Act during the 12 months prior to the sale, except Form 8-K. MP has filed all required reports necessary under the Rule. Additionally, Rule 144(c)(ii) requires XBRL information to have been posted on MP's corporate website during the prior 12 months. MP's corporate website contains the required XBRL information.

Based upon the foregoing, and assuming that the factual statements set forth herein are true and correct, it is our opinion that, subject to the Securities Purchase Agreements between MP and the Holders, the Shares may be sold until 5:30 p.m. New York Time on August 14, 2014, and that the restrictive legend may be removed from such sold shares by reason of Rule 144 under the Act.

This opinion speaks of its date and we are not responsible for updating it. Our opinion, inasmuch as it is addressed to you, is not to be quoted in whole or in part or otherwise referred to nor is it to be filed with any governmental agency or other person without the prior written consent of this law firm. Other than you, MP, Cocrystal, the parties on Exhibit A and their broker-dealers, and your counsel, no one else is entitled to rely on this opinion.

Very truly yours,

*Nason Yeager Gerson White & Lioce*

NASON, YEAGER, GERSON, WHITE & LIOCE P.A.

SEC-Legend-E-0111387

Exhibit A

| Holder | No. Of Shares (1) |
|---|---|
| | |
| Melechdavid, Inc. | |
| Barry and Renee Honig Charitable Foundation, Inc. | 20,000 |
| Stetson Capital Investments, Inc. | 15,000 |
| | |
| Michael Brauser | 77,000 |
| Grander Holdings, Inc. 401K Profit Sharing Plan | 30,000 |
| Ben Brauser | 5,000 |
| Dan Brauser | 8,000 |

SEC-Legend-E-0111388

| | |
|---|---|
| ATG Capital LLC | 5,000 |

███████████████████████████████████████

**Total**                                            **600,000**

(1) Under the Stock Purchase Agreements executed by MP and the Holders, each of the Holders is limited to selling 12.5% of the Shares in a calendar month (with the first month beginning the date of this opinion and ending July 31, 2014). Beginning March 2, 2015, there is no limit to the amount of shares permitted to be sold (assuming Holder is not an affiliate at the time of, or the three months prior to, sale). Additionally, sales at or above $14.50 will not be included in the maximum amount allowed to be sold in any calendar month

H:\9974\Stock Transfer\MP Opinion - 6-30-14v6 - Clean.docx/bsb

SEC-Legend-E-0111389

# Exhibit D

Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, NJ 08540
Tel: 609.919.6600
Fax: 609.919.6701
www.morganlewis.com

# Morgan Lewis

COUNSELORS AT LAW
A Pennsylvania Limited Liability Partnership

RANDALL B. SUNBERG
Partner-in-Charge

October 2, 2013

Via Email (opinions@amstock.com)
American Stock Transfer & Trust Company
6201 15th Avenue
Brooklyn, NY 11219

       Re:    Senesco Technologies, Inc.

Ladies and Gentlemen:

       We have acted as counsel for Senesco Technologies, Inc., a Delaware corporation (the "Company"), in connection with the issuance by the Company of an aggregate of 69,000,000 shares (the "Shares") of the Company's common stock, par value $0.01 per share (the "Common Stock"), to be issued pursuant to the Securities Purchase Agreement, dated September 30, 2013 (the "Purchase Agreement"), by and among the Company and the investors named on Exhibit A attached hereto (collectively, the "Holders") pursuant to which the Company is issuing to the Holders the Shares, and, in such capacity, have been requested by the Company to furnish you with this opinion with respect to the Shares.

       As a basis for this opinion, we have examined and are familiar with and have relied upon the Company's Amended and Restated Certificate of Incorporation, as amended, and its Amended and Restated By-Laws, records of meetings of the Board of Directors of the Company as provided to us by the Company, corporate proceedings of the Company in connection with the authorization and issuance of the Shares, the Purchase Agreement, the Registration Statement on Form S-1 (File No. 333-189998) filed by the Company with the U.S. Securities and Exchange Commission (the "Commission") (the "Registration Statement"), the effectiveness order posted by the Commission on its Electronic Data Gathering and Retrieval System indicating that as of 4:00 P.M., Washington, D.C. time, on September 30, 2013 the Registration Statement had been declared effective and such other documents as we have deemed necessary as a basis for the opinions hereinafter expressed.

       In our examination of the foregoing documents, we have made no independent investigation, and we have assumed the genuineness of all signatures, the completeness of all corporate and stock records provided to us, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as copies, the authenticity of the originals of such latter documents and the legal competence of all signatories to such documents.

Almaty  Beijing  Boston  Brussels  Chicago  Dallas  Frankfurt  Harrisburg  Houston  Irvine  London  Los Angeles  Miami
Moscow  New York  Palo Alto  Paris  Philadelphia  Pittsburgh  Princeton  San Francisco  Tokyo  Washington  Wilmington

**Morgan Lewis**
COUNSELORS AT LAW
A Pennsylvania Limited Liability Partnership

American Stock Transfer & Trust Company
October 2, 2013
Page 2

We express no opinion herein as to the laws of any state or jurisdiction other than the state laws of the State of New Jersey, the Delaware General Corporation Law statute and the federal laws of the United States of America.  To the extent that any other laws are applicable to the matters as to which we are opining herein, we have assumed with your permission and without independent investigation that such laws are identical to the state laws of the State of New Jersey, and we express no opinion as to whether such assumption is reasonable or correct.  We express no opinion with respect to the compliance or noncompliance with the "blue sky" laws of any state, or with the antifraud provisions of state and federal laws, rules and regulations concerning the issuance of securities.

Based upon and subject to the foregoing, we are of the opinion that as of the date of this opinion the Shares are registered for sale under the Securities Act under the effective Registration Statement and may be issued without a restrictive legend.

Based upon and subject to the foregoing, we are of the opinion that the Shares have been duly authorized for issuance and, when the Shares are issued in accordance with the terms and conditions of the Purchase Agreement, the Shares will be validly issued, fully paid and nonassessable.

This opinion is based upon currently existing statutes, rules, regulations and judicial decisions and is rendered as of the date hereof, and we disclaim any obligation to advise you of any change in any of the foregoing sources of law or subsequent developments in law or changes in facts or circumstances which might affect any matters or opinions set forth herein.

Please note that we are opining only as to the matters expressly set forth herein, and no opinion should be inferred as to any other matters.  This opinion is being delivered to you solely in connection with your service as the Transfer Agent and Registrar of the Common Stock, and may not be relied upon by any other party or used for any other purpose without our prior written consent.

Very truly yours,

Morgan, Lewis & Bockius LLP



# EXHIBIT A

## List of Holders and Number of Shares Purchased

| Holder | Number of Shares |
|---|---|
| Barry Honig | 30,000,000 |
| Michael Brauser | 16,000,000 |
|  |  |
| Daniel Brauser | 1,000,000 |
| Ben Brauser | 1,000,000 |
|  |  |
|  |  |
| Joshua Brauser | 1,000,000 |
| Melechdavid Inc. Retirement Plan |  |
| Erica Groussman C/F Alicia Groussman UTMA/FL |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

SEC-Legend-E-0664241

# Exhibit E

| From: | John Stetson [stetson.john@gmail.com] |
|---|---|
| Sent: | 1/20/2011 12:58:59 PM |
| To: | Tanya [tanya@tarmacmanagement.com] |
| Subject: | Subscriber List |
| Attachments: | Subscriber List.xlsx |

Hi Tanya,

Here is the subscriber list. I have checked off the docs from which I forwarded and wires that you received based on what you told me. Please update with anything missing.

As of yesterday, here were the currency rates we were given:

50,356 - 50,000 CAD
75,521 - 75,000
100,681 - 100,000
201,329 - 200,000
301,993 - 300,000

Thanks,

John

Confidential Treatment Requested by JS/SCI/HSCl

**Passport Potash, Inc.**

| Entity Name | Subscription $ | Doc's Rec'd? | Wire Rec'd? | |
|---|---|---|---|---|
| Frost Gamma Investments Trust | $ ███████ | Yes | Yes | |
| GRQ Consultants, Inc. 401K | $ 300,000 | Yes | | |
| Barry Honig | $ 200,000 | Yes | Yes | |
| ███████████████████████████ | | | | |
| Michael Brauser | $ 711,079 | Yes | Yes | *Michael Brauser wire |
| Josh Brauser | $ 10,000 | Yes | Yes | Wire included in Micha |
| Ben Brauser | $ 10,000 | Yes | Yes | Wire included in Micha |
| Dan Brauser | $ 10,000 | Yes | Yes | Wire included in Micha |
| Brauser Family Trust | $ 70,296 | Yes | Yes | |
| Grander Holdings | $ 22,000 | Yes | Yes | |
| | $ 5,513,375 | | | |

d for Michael, Josh, Ben, Dan,  + a portion of Grandor 401K

ael's

ael's

ael's

ael's

# Exhibit F

| | |
|---|---|
| **From**: | John Stetson [stetson.john@gmail.com] |
| **Sent**: | 1/27/2012 10:05:16 AM |
| **To**: | BRHonig@aol.com [brhonig@aol.com] |
| **Subject**: | Izea |
| **Attachments**: | Breakdown(1).xlsx |

Confidential Treatment Requested by JS/SCI/HSCI

**IZEA Share Breakdown**

| Entity | Post Split Shares |
|---|---|
| Mike Brauser | 3,250,000 |
| Melechdavid (Mark Groussman) | █████████ |
| Barry Honig | 1,940,023 |
| HS Contrarian Investments LLC (John Stetson) | 1,400,000 |
| ████████████████ | ███████████ |
| Ben Brauser | 250,001 |
| John Stetson | 225,000 |
| Frost Gamma Investments Trust | ████████ |
| ████████████████ | ███████████ |
| ████████████████ | ███████████ |
| Josh Brauser | 84,444 |
| Dan Brauser | 84,444 |
| ████████████████ | ███████████ |
| **TOTAL** | **12,500,000** |

# Exhibit G



6135 N.W. 167th Street, Suite E-21 · Miami Lakes, Florida 33015
Phone: 305-503-3873 · www.fusescience.com

November 7, 2013

Securities Transfer Corporation
2591 Dallas Parkway, Suite #102
Frisco, Texas  75034

Ladies and Gentlemen:

We are requesting that you issue an aggregate of 37,500,000 shares of common stock (the "**Shares**") of Fuse Science, Inc. (the "**Company**") to the following persons (the "**Holders**"):

| Name | Address/ Tax ID | Number of Shares |
|---|---|---|
| GRQ Consultants, Inc. 401(K) | 555 S. Federal Highway #450 Boca Raton, FL 33432 ■■■■■■ | 20,250,000 |
| Grander Holdings, Inc. 401(K) Profit Sharing Plan | 4400 Biscayne Blvd. #850 Miami, FL 33117 ■■■■■■ | 5,500,000 |
| Daniel Brauser | ■■■■■■ | 125,000 |
| Benjamin Brauser | ■■■■■■ | 125,000 |
| Greg Brauser | ■■■■■■ | 125,000 |
| Joshua Bauser | ■■■■■■ | 125,000 |
| Melechdavid, Inc. Retirement Plan | ■■■■■■ | ■■■■■■ |
| Stetson Capital Investments, Inc. | ■■■■■■ | 2,250,000 |

7783508_1

SEC-BMA-E-0045187

| John O'Rourke | | 2,250,000 |
|---|---|---|
| | | 1,000,000 |

The Shares are being issued in an exchange offer exempt from registration pursuant to Section 3(a)(9) under the Securities Act of 1933, as amended. In accordance with the enclosed opinion of counsel, the certificates evidencing the Shares may be issued to the Holder free of legends or other restriction.

Upon issuance, the Shares should be delivered by DWAC pursuant to instructions to be furnished to you by the respective Holders.

Sincerely,

Brian Tuffin
Chief Executive Officer

SEC-BMA-E-0045188

| Holders | Issue Date | Common Stock | Agreement | Board/Committee Consent | Conversion/Exercise Notice | TA Instruction |
|---|---|---|---|---|---|---|
| | | | | | | |
| Series D conversion #1 - HS Contrarian | 6-Apr-15 | 300,000 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Series D conversion #2 - HS Contrarian | 9-Apr-15 | 400,000 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Series D conversion #1 - Grander Holdings 401(k) | 9-Apr-15 | 450,000 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Cashless exercise of wts | 13-Apr-15 | 914,292 | N/A | ?? | ?? | ?? |
| Cashless exercise wts | 14-Apr-15 | 305,488 | N/A | ?? | ?? | ?? |
| Series D conversions - ATG | 17-Apr-15 | 47,200 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Series D conversion #2 - Grander Holdings 401(k) - April 30, 2015 | 30-Apr-15 | 300,000 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Series D conversions - Ben Brauser - May 7, 2015 | 7-May-15 | 22,900 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Series D Conversions Daniel Brauser - May 7, 2015 | 7-May-15 | 234,200 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Series D Conversion #3 HS Contrarian - May 7, 2015 | 7-May-15 | 300,000 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Series D Conversion #1 GRQ consultants - May 14, 2015 | 14-May-15 | 226,200 | N/A | Board Minutes 3.25.15 | Yes | Yes |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY MABVAX THERAPEUTICS HOLDINGS, INC.

MABVAX0173273

| | | | | | | |
|---|---|---|---|---|---|---|
| Series D conversion #3 - Grander Holdings 401(k) - May 19, 2015 | 19-May-15 | 150,000 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Ben Brauser (from GRQ) | 5-Jun-15 | 169,400 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Daniel Brauser (from GRQ & HS Cont.) | 5-Jun-15 | 84,700 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| | | | | | | |
| ATG Capital (John O'Rourke) | 15-Jun-15 | 373,600 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Grander Holdings Inc. 401(k) | 19-Jun-15 | 214,700 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| HS Contrarian | 19-Jun-15 | 400,000 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| MelechDavid | 23-Jun-15 | ▮▮▮ | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Grander Holdings Inc. 401(k) | 7-Jul-15 | 165,600 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| HS Contrarian | 16-Jul-15 | 500,000 | N/A | Board Minutes 3.25.15 | Yes | Yes |
| Total as of August 3, 2015 | | 25,891,072 | | | | |

FOIA CONFIDENTIAL TREATMENT REQUESTED BY MABVAX THERAPEUTICS HOLDINGS, INC.

# Exhibit H

JB77SEC1

<table>
<tr><td>1</td><td>UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK</td></tr>
<tr><td>2</td><td>------------------------------------x</td></tr>
<tr><td>3</td><td>SECURITIES AND EXCHANGE COMMISSION</td></tr>
<tr><td>4</td><td>               Plaintiff,</td></tr>
<tr><td>5</td><td>         v.                      18 Civ. 8175 (ER)</td></tr>
<tr><td>6</td><td>BARRY C. HONIG, et al.,</td></tr>
<tr><td>7</td><td>               Defendants.</td></tr>
<tr><td>8</td><td>------------------------------------x</td></tr>
<tr><td>9</td><td>                      New York, N.Y.<br>                      November 7, 2019<br>                      4:45 p.m.</td></tr>
<tr><td>10</td><td>Before:</td></tr>
<tr><td>11</td><td>                HON. EDGARDO RAMOS</td></tr>
<tr><td>12</td><td>                            District Judge</td></tr>
<tr><td>13</td><td>                  APPEARANCES</td></tr>
<tr><td>14</td><td></td></tr>
<tr><td>15</td><td>NANCY BROWN<br>JACK KAUFMAN<br>    Attorneys for Plaintiff SEC</td></tr>
<tr><td>16</td><td></td></tr>
<tr><td>17</td><td>RICHARD & RICHARD P.A.<br>    Attorneys for Defendants Michael Brauser and Grader<br>    Holdings, Inc.</td></tr>
<tr><td>18</td><td>BY:  DENNIS RICHARD</td></tr>
<tr><td>19</td><td>COOLEY LLP<br>    Attorneys for Defendant Robert Ladd</td></tr>
<tr><td>20</td><td>BY:  RANDALL LEE<br>    MICHAEL BERKOVITZ</td></tr>
<tr><td>21</td><td></td></tr>
<tr><td>22</td><td>WILMER CUTLER PICKERING HALE & DORR LLP<br>    Attorneys for Defendant Robert Ladd</td></tr>
<tr><td>23</td><td>BY:  CHRIS JOHNSTONE</td></tr>
<tr><td>24</td><td></td></tr>
<tr><td>25</td><td></td></tr>
</table>

Case 3:18-cv-02293-GC-RLS Document 163-1 Filed 02/21/20 Page 35 of 44 PageID: 5336
Case 4:18-cv-08175-PH Document 195 Filed 11/25/19 Page 21 of 380
JB77SEC1

1    you have an individual or two that's identified as an

2    appropriate person to give testimony on that particular topic.

3         Look, I think at the end of the day even if we could

4    formulate -- and again I don't want to carry your water -- but

5    even if you were to formulate some sort of very limited search

6    or limited in terms of dates, limited in terms of individuals,

7    limited in terms of maybe even something less than 96

8    individuals, that at the end of the day that you're going to

9    get anything worthwhile, and therefore I find that that

10   request, given the nature of the case, is too broad, too

11   burdensome.

12        MR. LEE:  The last category -- before we get to

13   302s -- that we're seeking are additional searches of

14   communications with third parties by SEC officials about the

15   application or interpretation of Section 13.  This is again a

16   topic that we discussed a couple of days ago.  We made a

17   proposal.  We have not heard back from the SEC on their

18   response to our proposal as a way to narrow that search.  So

19   even after we filed our motion we continue to engage in a meet

20   and confer, but the SEC has not responded.

21        THE COURT:  OK.  Well, respond at some point.  OK.

22   What else?

23        MR. JOHNSTONE:  I can speak to the 302 issue

24   concisely.  As you heard from Mr. Lee, the SEC's case revolves

25   about Barry Honig, who the SEC says orchestrated a fraud

JB77SEC1

1    against three public companies.  As such, Mr. Honig is the

2    SEC's central witness in this case.  What is interesting is

3    that he is taking the Fifth, and thus we have no access to his

4    testimony about what happened.

5         So the parties on this issue have gone through great

6    lengths to narrow the issues, and it's not a lot of distance

7    between the two of us.  We agree with the SEC -- as they said

8    in their letter brief -- that an in camera review of its notes

9    of Mr. Honig's 302s would be an appropriate step forward.  The

10   only question is where should the Court draw the line between

11   the portions of those notes that should be produced to us and

12   those that can be withheld.

13        Our request here is very narrow, that the SEC produce

14   notes of what Mr. Honig said to the government.  And we have no

15   interest in their attorney impressions or anything, ideas about

16   what he said.

17        So, in drawing the line it's helpful to kind of step

18   back and understand why the SEC has notes of Mr. Honig's 302s

19   but doesn't have the 302s themselves.  The answer is that the

20   SEC has gone through great lengths here to keep Mr. Honig's

21   statements out of this case.  They requested review of the

22   302s.  They sat down, they reviewed them, they wrote their own

23   notes about them.  They gave the 302s back to the Department of

24   Justice and then now are withholding those notes from us.

25        But Mr. Honig's statements about what happened in this

JB77SEC1

1   case should be produced.  We're not seeking any attorney

2   impressions, but we have a substantial need for what he said

3   about what happened, and we have exhausted all other options --

4   which is an important point.  The SEC did not take any

5   testimony of Mr. --

6           THE COURT:  What have you done?

7           MR. JOHNSTONE:  First I'll say that the SEC did not

8   take investigative testimony of Mr. Honig in this case, so we

9   don't have his statements from that.  Second, we served a

10  subpoena on the Department of Justice, with whom we have met

11  and conferred, and they have refused to produce the Honig 302

12  to us.  So we have taken that big step, served the subpoena,

13  meet and conferred with federal prosecutors, and they will not

14  give it to us.

15          THE COURT:  Are there multiple 302s?

16          MR. JOHNSTONE:  There is one 302 listed in the

17  privilege log.  I would not be surprised if there are more.

18          THE COURT:  OK.  What else?

19          MR. JOHNSTONE:  Third, we have attempted to depose him

20  in this case, and we have heard from his attorney that he

21  intends to assert his Fifth Amendment rights.  So, there is no

22  other option for us to go to get his statements about what

23  happened in the case.  All we are asking for is what the SEC

24  wrote down about what he said, that's it.

25          THE COURT:  Ms. Brown?

Case 3:18-cv-02293-GC-RLS Document 163-1 Filed 02/21/20 Page 38 of 44 PageID: 5339
Case 4:18-cv-08175-JPC Document 195 Filed 11/26/19 Page 24 of 38
JB77SEC1

1          MS. BROWN:  Yes, your Honor.  Mr. Honig hasn't been

2     deposed yet, so it's news to me that he plans to assert the

3     Fifth.  I did not know that.  And I'm not sure any of us know

4     that until he sits in the chair or he provides the declaration.

5     That's not to say we shouldn't discuss this issue now.

6          THE COURT:  Remind me, is he under criminal

7     investigation?  Has he been indicted?  Has he been convicted?

8          MS. BROWN:  I've seen no public record of his criminal

9     status, but he has become a cooperator.

10          THE COURT:  So he is cooperating.

11          MS. BROWN:  Yes.

12          THE COURT:  And you tell me if you -- you know more

13     about this than I do.  In such circumstances if the civil

14     related matter is not otherwise stayed, do cooperators testify

15     and give testimony, or do they ask that that deposition be

16     stayed for some period?

17          MS. BROWN:  I think it can vary with the

18     circumstances.  It depends what the status of their cooperation

19     is.  It depends upon the status of their criminal proceeding.

20     So, if they are sentenced already, they can testify.

21          So -- and I don't have any idea what he is doing to

22     cooperate, so I don't have much information to share with you.

23     All I know is he has not yet been deposed.

24          MR. JOHNSTONE:  Your Honor, Mr. Honig's attorneys have

25     represented to us that if he is deposed he will assert his

JB77SEC1

1    Fifth Amendment rights, so we know that.

2            THE COURT:  OK.  And I take it -- again this is more

3    out of curiosity -- that would not be a violation of his

4    cooperation agreement.

5            MS. BROWN:  I don't know, your Honor.  I will say so

6    that the Court is clear and so the record is clear, that our

7    notes of 302s -- which themselves as the Court knows are not

8    verbatim notes of what people say -- are highly selective

9    material.  We go in and we review the 302s, as Mr. Johnstone

10   just explained, but we don't write down everything that appears

11   in the 302, we write down what is of interest to us.

12           (Continued on next page)

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit I

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————x
SECURITIES AND EXCHANGE COMMISSION, :
                                    :
            Plaintiff,              :
                                    :        18 Civ. 8175 (ER)
      – against –                   :
                                    :        ECF CASE
BARRY C. HONIG, MICHAEL BRAUSER,    :
JOHN STETSON, JOHN R. O'ROURKE III, :
ROBERT LADD, ELLIOT MAZA, BRIAN KELLER, :
JOHN H. FORD, ATG CAPITAL LLC, GRQ  :
CONSULTANTS, INC., HS CONTRARIAN    :
INVESTMENTS, LLC, GRANDER HOLDINGS, INC., :
and STETSON CAPITAL INVESTMENTS INC., :
                                    :
            Defendants.             :
—————————————————————x

### STIPULATION AND ORDER

WHEREAS the Plaintiff Securities and Exchange Commission ("Commission") has

agreed to provide Defendants Ladd and Brauser with a copy of its notes of the notes taken by the

Federal Bureau of Investigation at an April 23, 2019 interview of a witness (the "Notes"),

provided that Defendants agree to certain conditions;

WHEREAS Defendants Ladd and Brauser have agreed to those conditions;

IT IS HEREBY STIPULATED AND AGREED, by and among counsel for Defendants

Ladd and Brauser (collectively, "Defendants") and the Commission, that

1.     Notwithstanding paragraph 3 of the Stipulation and Confidentiality Order, entered

June 5, 2019 (DE 134) (the "Confidentiality Order"), the Commission may designate the Notes

as "Confidential" and the Notes shall thereafter be deemed "Confidential Discovery Materials"

for all purposes under the Confidentiality Order.

2.    Notwithstanding any other paragraph of the Confidentiality Order, should any

party to this Stipulation wish to share a copy of the Notes with any other person or party, he or it

must first obtain that person's or parties' agreement to abide by the terms of this Stipulation, in

addition to the Confidentiality Order, in the form appended hereto as Exhibit A.

3.    By disclosing the Notes to Defendants, the Commission has not waived, does not

intend to waive, and shall not be deemed to have waived, any of the privileges or protections it

has asserted with respect to the Notes or any like material.

Dated: New York, New York
       November 14, 2019

ROBERT LADD

By: _____
              Randall Lee

Cooley LLP
1333 2nd Street
Suite 400
Santa Monica, CA  90401
310-883-6485

Attorneys for Defendant Robert Ladd


MICHAEL BRAUSER and GRANDER
HOLDINGS, INC.

By: _____
              Dennis Richard

Richard and Richard, PA
Tower III – 17th Floor 825 Brickell Bay Drive
Miami, FL  33131
305-374-6688

Attorneys for Defendant Michael Brauser


SECURITIES AND EXCHANGE
COMMISSION

By: _____
              Nancy A. Brown

200 Vesey Street
Suite 400
New York, NY  10281
212-336-1023

Attorneys for Plaintiff Securities and Exchange
Commission

2

So Ordered:

Edgardo Ramos, U.S.D.J
Dated: Nov. 18, 2019
New York, New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

SECURITIES AND EXCHANGE COMMISSION,    :

                Plaintiff,    :

      – against –    :      18 Civ. 8175 (ER)

                          :      ECF CASE

BARRY C. HONIG, MICHAEL BRAUSER,    :
JOHN STETSON, JOHN R. O'ROURKE III,    :
ROBERT LADD, ELLIOT MAZA, BRIAN KELLER,  :
JOHN H. FORD, ATG CAPITAL LLC, GRQ    :
CONSULTANTS, INC., HS CONTRARIAN    :
INVESTMENTS, LLC, GRANDER HOLDINGS, INC., :
and STETSON CAPITAL INVESTMENTS INC.,    :

                Defendants.    :

------------------------------------------------------------x

## EXHIBIT A

## AGREEMENT TO ABIDE BY STIPULATION AND ORDER

      I have read the Stipulation and Order, entered November __, 2019. I understand its terms and agree to be bound by them, and hereby submit to the jurisdiction of the United States District Court for the Southern District of New York for purposes of the enforcement of the Stipulation and Order. I further understand that failure to abide by the terms of the Stipulation and Order may result in legal action and sanctions.

Dated: _____          Agreed: _____

4