# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, JEFFREY G. McGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES, and ERIC SO,<br><br>    Defendants. | Civil No. 3:18-CV-02293(FLW)(ZNQ)<br><br>MOTION DATE:  July 6, 2020 |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION FOR LEAVE TO FILE [PROPOSED] CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT

---

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*RIOT BLOCKCHAIN, INC., JOHN O'ROURKE, AND MICHAEL BEEGHLEY*

# Table of Contents

Page

I.      PRELIMINARY STATEMENT ....................................................................... 1

II.     LEGAL STANDARDS ..................................................................................... 4

   A.     Standard for Motions for Leave ................................................................. 4

   B.     The Heightened Pleading Standard Under the Reform Act ................................ 5

III.    THE PROPOSED SECOND AMENDED COMPLAINT IS FUTILE............................ 6

   A.     Defendants Did Not Make Any False or Misleading Statements or
          Omissions in Violation of Section 13(d) .............................................. 6

      1.   Riot Cannot Be Liable For Failing to Disclose a "Group" Under
           Section 13(d) ............................................................................... 8

      2.   Lead Plaintiff Offers Conclusory Allegations that Defendants
           Knew that Honig, Groussman, Stetson, and DeFrancesco Qualify
           as a "Group"................................................................................. 8

   B.     Defendants Did Not Make Any False or Misleading Statements Regarding
          Related-Party Transactions ................................................................ 15

      1.   Riot Did Not Engage In Any Undisclosed Related-Party
           Transactions ............................................................................... 15

      2.   Riot's SEC Filings Concerning the Company's Related-Party
           Transactions Were Not False or Misleading........................................... 20

   C.     The Second Amended Complaint Does Not Give Specific Facts Giving
          Rise to a Strong Inference that the Defendants Acted with Scienter .................. 23

IV.     CONCLUSION.......................................................................................... 25

## Table of Authorities

Page(s)

**Cases**

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999) ................................................................12

*Bell v. United Auto Grp., Inc.*,
   No. CIV.A. 05-2262 (FLW), 2006 WL 231572 (D.N.J. Jan. 30, 2006) ...................................5

*Biofrontera AG v. Deutsche Balaton AG*,
   No. 18 CIV. 5237 (LAP), 2020 WL 1489788 (S.D.N.Y. Mar. 27, 2020) ............................3, 8

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ................................................................5

*Burt v. Maasberg*,
   No. CIV.A. ELH-12-0464, 2013 WL 1314160 (D. Md. Mar. 31, 2013) ...............................14

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   713 F. Supp. 2d 378 (D. Del. 2010) ........................................................23

*Fan v. StoneMor Partners LP*,
   927 F.3d 710 (3d Cir. 2019) ................................................................21

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) ................................................................6

*Kanter v. Barella*,
   489 F.3d 170 (3d Cir. 2007) ................................................................25

*Litzler v. CC Investments, L.D.C.*,
   411 F. Supp. 2d 411 (S.D.N.Y. 2006) ......................................................12

*Lowinger v. Morgan Stanley & Co. LLC*,
   841 F.3d 122 (2d Cir. 2016) ................................................................13

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) .........................................................................6

*In re Progress Energy, Inc.*,
   371 F. Supp. 2d 548 (S.D.N.Y. 2005) ......................................................21

*In re Rockefeller Ctr. Props., Inc. Secs. Litig.*,
   311 F.3d 198 (3d Cir. 2002) ................................................................5

# Table of Authorities

Page(s)

*Rubenstein v. Int'l Value Advisers, LLC*,
  363 F. Supp. 3d 379 (S.D.N.Y. 2019), *aff'd*, 959 F.3d 541 (2d Cir. 2020) ............................10

*In re Sanofi Sec. Litig.*,
  87 F. Supp. 3d 510, 547 (S.D.N.Y. 2015), *aff'd sub nom*......................................................21

*Scott v. Multi-Amp Corp.*,
  386 F. Supp. 44 (D.N.J. 1974) .............................................................................................14

*In re Suprema Specialties, Inc. Secs. Litig.*,
  438 F.3d 256 (3d Cir. 2006)..........................................................................................5, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)...............................................................................................................6

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016).................................................................................................21

*In re Urban Outfitters, Inc. Sec. Litig.*,
  103 F. Supp. 3d 635 (E.D. Pa. 2015) ...................................................................................16

*Warner Commc'ns, Inc. v. Murdoch*,
  581 F. Supp. 1482 (D. Del. 1984)....................................................................................8, 12

*Winer Family Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007).................................................................................................4

**Statutes**

Securities Exchange Act of 1934
  § 10(b)..................................................................................................................................4, 6
  § 13(d) ...................................................................................................................... *passim*
  § 13(d)(3) ...............................................................................................................................7
  § 20(a)....................................................................................................................................4

**Other Authorities**

17 C.F.R.
  § 229.403................................................................................................................................2, 8
  § 229.404........................................................................................................................4, 17, 18
  § 240.13d-5..........................................................................................................................10
  § 240.13d-5(b)(1) ................................................................................................................10
  § 240.13d-101 ........................................................................................................................2

15 U.S.C. § 78u-4(b).................................................................................................................5, 6, 7

# Table of Authorities

Page(s)

Fed. R. Civ. P.

R. 9(b) ...................................................................................................................5, 6

R. 12(b)(6)............................................................................................................5, 6

R. 15(a) ....................................................................................................................4

R. 15.1 ...................................................................................................................23

# I.   __PRELIMINARY STATEMENT__

The [Proposed] Consolidated Second Amended Class Action Complaint ("SAC") is the *fourth* attempt by Lead Plaintiff Dr. Stanley Golovac's ("Lead Plaintiff") to state actionable claims against Riot Blockchain, Inc. ("Riot" or the "Company"), Michael Beeghley ("Beeghley"), and John O'Rourke ("O'Rourke") (Beeghley and O'Rourke are referred to as the "Individual Defendants" and collectively with Riot, "Defendants").[1]  The proposed amendment merely dresses up the same set of deficient allegations in a different yet equally unsustainable costume.  (Dkt. No. 169-2.)  As such, Lead Plaintiff's motion for leave to amend should be denied for futility.  (*See* Dkt. No. 169 ("Motion for Leave").)

The SAC repeats Lead Plaintiff's assertions that: (1) Defendants' wrongdoing can be inferred from their purported investments and conduct *at other companies*, and from the conduct of *outside investors*, such as Honig, DeFrancesco, Groussman, and Stetson; and (2) the Coinsquare Ltd. ("Coinsquare") and Kairos Global Technology, Inc. ("Kairos") transactions were related-party transactions that required disclosure.  (*See* SAC ¶¶ 190, 196, 308–09.)  However, the Court already rejected Lead Plaintiff's attempt to conflate allegations that are

---

[1] The SAC no longer names Messrs. McGonegal, Dai, Kaplan, So, and Les as defendants.  (SAC ¶¶ 48, 52, 55.)  Barry Honig ("Honig"), Mark Groussman ("Groussman"), John Stetson ("Stetson"), and Catherine DeFrancesco ("DeFrancesco") are separately represented defendants.  This Opposition is limited to addressing the futility of granting Lead Plaintiff leave to file the SAC as against Defendants.

unconnected to Defendants' purported misconduct *at Riot*.  (*See* Memorandum Opinion Granting Defendants' Motions to Dismiss the Complaint (Dkt. No. 166) (the "Opinion") at 7, 14–27.)  The Court dismissed the prior complaint because none of the statements made in Riot's public filings concerning (i) related-party transactions, (ii) material relationships, or (iii) its investments in blockchain technologies "were false or misleading, or are otherwise actionable under Rule 10b-5."  (Opinion at 15.)

The SAC does nothing to cure the deficient allegations.  For example, Lead Plaintiff alleges that Defendants violated Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act") and Item 403 of Regulation S-K by failing to disclose that Honig, DeFrancesco, Groussman, and Stetson were part of an investing "group" that owned more than 5% shares of the Company's voting stock.  (Motion for Leave at 4.)  Lead Plaintiff misconstrues these disclosure requirements.  First, Defendants cannot be liable under Section 13(d), which applies only to investors (not issuers).  (SAC ¶¶ 293, 302.)  Section 13(d) instead requires investors to disclose if they are part of an investing group to the registrant and to the SEC.  17 C.F.R. § 240.13d-101.

Second, while Item 403 of Regulation S-K applies to issuers, it only requires Riot to disclose investing groups that are actually *known* to the Company.  17 C.F.R. § 229.403 (requiring disclosure of any groups that are "known to the

registrant" to own more than five percent of any class of the Company's voting securities).  Usually, an investor's Schedule 13D will inform a registrant of the existence of a group, which, in turn, would trigger the registrant's disclosure duties under Item 403.  *Biofrontera AG v. Deutsche Balaton AG*, No. 18 CIV. 5237 (LAP), 2020 WL 1489788, at *7 (S.D.N.Y. Mar. 27, 2020) (describing Section 13(d) as an alert system forcing investors to report disclosing information to issuers).  But Lead Plaintiff claims that Honig, DeFrancesco, Groussman, and Stetson failed to disclose their group status to Riot in their Schedule 13Ds, as required under Section 13(d).  (SAC ¶¶ 311, 325, 341, 484.)  Lead Plaintiff provides no factual allegations to suggest that Defendants knew Honig, DeFrancesco, Groussman, and Stetson acted as a group.

Lead Plaintiff makes a similarly futile attempt to revive his claim that Defendants failed to disclose related-party transactions.  With regards to Riot's March 2017 and December 2017 private placements, for example, Lead Plaintiff ignores the fact that Riot contemporaneously disclosed that the "Purchaser has a *prior substantial pre-existing relationship* with the Company . . . ."  (*See, e.g.*, Declaration of D. Scott Carlton In Support of Defendants' Opp. filed concurrently herewith ("Carlton Decl."), Ex. A, at 22 (attaching Exhibit 10.1 to Riot's Form 8-K

filed on Mar. 16, 2017) (emphasis added).)[2]  With respect to the Coinsquare and Kairos transactions, Riot had no affirmative duty to disclose because Honig, Groussman, Stetson, and/or DeFrancesco's interests in those transactions fell below the materiality threshold for Item 404 of Regulation S-K.  17 C.F.R. § 229.404.

Accordingly, the Court should deny the Motion for Leave because the proposed amendments are futile, and again fails to allege that the Defendants made any false or misleading statements that are actionable under Section 10(b) or Section 20(a) of the Exchange Act.

## II.   LEGAL STANDARDS

### A.   Standard for Motions for Leave

Lead Plaintiff's [Proposed] Second Amended Complaint requires leave of this Court.  Fed. R. Civ. P. 15(a).  While leave should be "freely given when justice so requires," a court should "deny leave to amend on the grounds that amendment would cause undue delay or prejudice, or that amendment would be futile."  *Winer Family Tr. v. Queen*, 503 F.3d 319, 330–31 (3d Cir. 2007) (affirming denial of leave to amend on futility grounds because the plaintiff's proffered amendments "failed to cure the scienter deficiencies of the original

---

[2] Defendants respectfully requests that the Court take judicial notice of the documents attached to the Carlton Decl., for the reasons enumerated in Defendants' Request for Judicial Notice In Support of Defendants Opposition to the Motion for Leave, filed concurrently herewith.

complaint") (quoting *In re Alpharma, Inc. Sec. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004)).  To assess the futility of an amendment, the Court "applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also Bell v. United Auto Grp., Inc.*, No. CIV.A. 05-2262 (FLW), 2006 WL 231572, at *4 (D.N.J. Jan. 30, 2006) (applying Rule 12(b)(6) standard to deny plaintiff's motion for leave to amend on futility grounds).

### B.    The Heightened Pleading Standard Under the Reform Act

The securities fraud claims alleged in the SAC are subject to "heightened pleading requirements of Rule 9(b) . . . ."  *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006).  At minimum, Rule 9(b) requires Lead Plaintiff to support all of his allegations of security fraud with the essential factual background that would accompany "the first paragraph of any newspaper story— that is, the who, what, when, where and how of the events at issue."  (*Id.* at 276–77 (internal quotation marks and citation omitted); *see also* Opinion at 12.)  The Private Securities Litigation Reform Act (the "Reform Act") imposes "another layer of factual particularity to allegations of securities fraud."  (*In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002); *see also* Opinion at 12.)  The Reform Act requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is

misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b).

The Reform Act makes a "sharp break with Rule 9(b)," requiring a plaintiff to "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind."  *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (emphasis added).  Thus, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead that the defendant acted with a "mental state embracing intent to deceive, manipulate, or defraud."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  A "strong inference" exists "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw . . . ."  (*Id.* at 324; *see also* Opinion at 13.)  Hence, courts cannot examine any one allegation of scienter in isolation, but rather, after evaluating all the facts as alleged, consider any plausible opposing inferences.  *Tellabs*, 551 U.S. at 326.

## III.   THE PROPOSED SECOND AMENDED COMPLAINT IS FUTILE

### A.   Defendants Did Not Make Any False or Misleading Statements or Omissions in Violation of Section 13(d)

To plead an actionable claim in violation of Section 10(b), Lead Plaintiff must allege with particularity that Defendants made material misrepresentations or omissions.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011).

The Reform Act thus requires that Lead Plaintiff "specify each statement alleged to have been misleading, *the reason or reasons why the statement is misleading*, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b) (emphasis added).

Lead Plaintiff alleges that "Defendants Honig, Groussman, Stetson, and DeFrancesco – were members of a group [that] agreed to acquire, hold, vote, and/or dispose of their shares in coordination with each other." (Motion for Leave at 4.) Lead Plaintiff then argues that Riot's Registration Statements and Annual Report for FY 2017 were misleading because they did not disclose Honig, DeFrancesco, Groussman, and Stetson's "group ownership" for purposes of Section 13(d)(3) and Item 403 of Regulation S-K. (SAC ¶ 349.) These allegations are as flawed as they were in previous iterations of the SAC because: (1) Riot cannot be liable for failing to disclose a "group" under Section 13(d); and (2) the SAC contains only conclusory allegations that Defendants knew that Honig, DeFrancesco, Groussman, and Stetson acted as a group for purposes of Section 13(d). As such, the allegations are futile as they do not state an actionable claim against Defendants.

**1.** **Riot Cannot Be Liable For Failing to Disclose a "Group" Under Section 13(d)**

As a threshold matter, Riot, as an issuer, cannot be liable for failing to disclose an investor group under Section 13(d).  "[Section] 13(d) forces investors who acquire over 5% of a company's equity securities to file a Schedule 13D report disclosing information to the issuer . . . ." *Biofrontera AG*, 2020 WL 1489788, at *7.  District courts within the Third Circuit have thus "found no authority to support the proposition that an issuer may itself be subject to the disclosure provisions of [Section] 13(d).  Nor would such a rule advance the policies underlying [Section] 13(d). . . .  To the contrary, requiring [the Company] to file a 13D statement might confuse some investors."  *Warner Commc'ns, Inc. v. Murdoch*, 581 F. Supp. 1482, 1500 (D. Del. 1984) (dismissing plaintiff's Section 13(d) claim against the issuer).

**2.** **Lead Plaintiff Offers Conclusory Allegations that Defendants Knew that Honig, Groussman, Stetson, and DeFrancesco Qualify as a "Group"**

Item 403 requires Riot to disclose all persons (including groups) that are "known to the [Riot]" who own more than five percent of any class of the Company's voting securities.  17 C.F.R. § 229.403.  Yet, Lead Plaintiff fails to allege any facts whatsoever that suggest it was "known to" Riot that Honig, DeFrancesco, Groussman, and Stetson acted as a group, subject to the

requirements of Section 13(d), to "acquire, hold, vote, and/or dispose of their shares [of Riot] in coordination with each other."  (Motion for Leave at 4.)

Lead Plaintiff offers only generalized and speculative allegations to support his theory:  (1) Messrs. O'Rourke and Beeghley had invested in companies *other than Riot* that members of the "Honig Group" also made investments (*id.* ¶¶ 293, 302); (2) *other investors*—not Honig, DeFrancesco, Groussman, and Stetson— coordinated their trades of Riot's stock (*id.* ¶¶ 352, 365, 373, 386); (3) Messrs. O'Rourke and Beeghley must have known that Honig, DeFrancesco, Groussman, and Stetson were acting as a "group" based solely on O'Rourke and Beeghley's status as officers or directors of Riot (*id.* ¶ 345); and (4) Mr. O'Rourke had shared an office with Mr. Honig (*id.* ¶ 295).  These allegations fall woefully short of the exacting pleading requirements of the Reform Act.

*First*, the fact that Messrs. O'Rourke and Beeghley invested in other companies that Honig, DeFrancesco, Groussman, and Stetson also invested does not provide a plausible inference that the Individual Defendants knew the others were acting as a Section 13(d) group in connection with Riot.  (*See id.* ¶ 293, 302.) In fact, the SAC acknowledges that, as reported in the Registration Statements, Riot was specifically informed by "[e]ach selling stockholder . . . that it does not have any written or oral agreement or understanding, directly or indirectly, with

any person to distribute the Common Stock." (*See, e.g.*, *id.* ¶¶ 354, 362, 367, 370, 375, 378, 384.)[3]

Moreover, Rule 13d-5 provides that, when "two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities *of an issuer*, the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of *that issuer* beneficially owned by any such persons." 17 C.F.R. 240.13d-5(b)(1) (emphasis added). These provisions therefore require the "members of the 'group' to have agreed to act together for the purpose of acquiring *not just any security*, but securities of a particular issuer." *Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 392 (S.D.N.Y. 2019), *aff'd*, 959 F.3d 541 (2d Cir. 2020) (emphasis added) (dismissing plaintiff's Rule 13d-5(b)(1) claim because allegations that defendants shared common investment objectives did not imply an intent to pool their voting interests of any particular securities).[4]

---

[3] Lead Plaintiff contends this statement was also false and misleading. (*See, e.g.*, SAC ¶ 354.) However, Lead Plaintiff does not provide any allegations that show that Riot was not, in fact, *informed* by "[e]ach selling stockholder . . . that it does not have any written or oral agreement or understanding, directly or indirectly, with any person to distribute the Common Stock." (*See, e.g.*, *id.*) As with other alleged misstatements, Lead Plaintiff deliberately distorts the actual information disclosed by Riot.

[4] Lead Plaintiff relies on the SEC's allegation in the unrelated *Honig* action that on February 3, 2014, Mr. O'Rourke had emailed an officer of a different company that "Barry Honig is the principal investor of our small group," as evidence that Mr. O'Rourke had previously participated in an investor group. (SAC ¶ 294.) But

*Second*, Lead Plaintiff relies on trades made by investors other than Honig, Groussman, Stetson, or DeFrancesco to insinuate that Defendants should have been aware that Honig, Groussman, Stetson, and DeFrancesco acted as an investor group at Riot.  (*See, e.g.*, SAC ¶¶ 352, 365, 373, 386.)  This is nonsensical.  For instance, Lead Plaintiff argues that Defendants should have been aware of Honig, Groussman, Stetson, and DeFrancesco's group activities because Robert O'Braitis and JAD Capital had both, at one point in time, reported owning 1.48% of the Company's common stock.  (*Id.* ¶ 352.)  Lead Plaintiff also alleges that alleges that JAD Capital's CEO, Jason Theofilos, was also the CEO of MUNDOmedia, a company that Mr. O'Rourke, Honig, Stetson, and Groussman had invested in.  (*Id.*)  However, at most, these investors have only a tenuous connection with Honig, Groussman, Stetson, and DeFrancesco.  Those allegations in no way suggest that Honig, Groussman, Stetson, and DeFrancesco acted as a group for purposes of Section 13(d).[5]  These purported connections thus do not suggest that Defendants

---

this hardly suggests that he knew Honig was part of a group at Riot that is subject to the disclosure requirements of Section 13(d).

[5] Lead Plaintiff's other examples of concerted "control group" actions are equally as nebulous.  For example, Lead Plaintiff alleges that Michael Ference and Paradox Capital Partners LLC ("Paradox") had both reported owning exactly 4,444 of the Company's shares at one point.  (*Id.* ¶ 386.)  According to Lead Plaintiff, Ference was a partner at Sichenzia Ross Ference LLP ("SRF"), and Paradox, was owned by Harvey Kesner, who was also a partner at SRF, and Defendant Honig's attorney.  (*Id.*)  Again, these connections simply have nothing to do with whether Defendants knew that Honig, Groussman, Stetson, or DeFrancesco acted as an investor group at Riot.  In fact, these connections would not even prove that any of

were aware, or should have been aware, of Honig, Groussman, Stetson and

DeFrancesco purported group activities.

*Third*, Lead Plaintiff's conclusion that "O'Rourke and Beeghley, as Riot

executives and/or Board members who signed Riot's SEC filings, had full

knowledge . . . that [the Honig Group] were all acting in concert," is erroneous.

(*Id.* ¶ 345.)  "Generalized imputations of knowledge do not suffice [to allege

knowledge], regardless of the defendants' positions within the company."  *In re*

*Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999) (alteration added).

Lead Plaintiff also deceptively relies on allegations that Honig acquired and

sold the Company's shares without filing the requisite Schedules 13D and 13/A at

certain times from January 2017 until October 2017.  (SAC ¶¶ 303, 317, 423.)

This confuses the matter.  Lead Plaintiff conflates Honig's belated filings of

Schedules 13D and 13/A, showing Honig's investment in Riot exceeded 1% of the

Company's outstanding shares, with Defendants' purported knowledge that Honig,

Groussman, Stetson, and DeFrancesco agreed to act as a control group.  There are

simply no facts in the SAC that suggest that Defendants would know of an

undisclosed group.  But in any event, it was Honig's—not Defendants'—

---

the investors had acted as a group.  *See Litzler v. CC Inves., L.D.C.*, 411 F. Supp.
2d 411, 415 (S.D.N.Y. 2006) (finding allegations of "parallel investments"
insufficient to plead the existence of a "group").

responsibility to timely file the Schedules 13D and 13/A. *Murdoch*, 581 F. Supp. at 1500 (dismissing plaintiff's Section 13(d) claim against the issuer).

Indeed, Messrs. O'Rourke and Beeghley could not have known that Honig, DeFrancesco, Groussman, and Stetson acted as a group because the SAC alleges that those investors failed to describe their group status in their Schedule 13Ds, as they are required to do under Section 13(d). (*See, e.g.*, SAC ¶ 311 (alleging that Honig failed to disclose his group membership in his Schedule 13D filings); ¶ 325 (alleging that "Groussman never made a Schedule 13D filing disclosing his membership in a group"); ¶ 341 (alleging that "Stetson never made a Schedule 13D filing disclosing his membership in a group"); ¶ 484 (alleging that DeFrancesco failed to file a Schedule 13D revealing her group membership).) Moreover, Defendants also could not have known that they acted as a group, because the SAC does not allege that Honig, DeFrancesco, Groussman, and Stetson acted in concert at Riot.[6]

---

[6] The SAC in fact suggests the opposite. Honig, Groussman, Stetson, and DeFrancesco did not coordinate their trades of Riot stock. (SAC ¶ 316 (claiming that Honig made sporadic purchases and sales of Riot stock throughout March 2017 until November 2017); ¶ 330 (showing Groussman's purchases of stock from April 2017 to September 2017, and sales occurring in October 2017, January 2018, and February 2018); ¶ 337 (describing DeFrancesco's purchases from September 2016 to July 2017, then sales from January 2018 to February 2018); ¶ 342 (alleging that Stetson purchased stock from April 2017 to September 2017, with a small sale of stock in July 2017). Lead Plaintiff thus cannot allege that Defendants failed to disclose an investor group subject to Section 13(d). *See Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 132 (2d Cir. 2016) (affirming dismissal of

*Fourth*, Lead Plaintiff maintains that Mr. O'Rourke knew "Honig, Stetson, and Groussman were part of his investing group with respect to Riot because O'Rourke shared Honig's office with them in Boca Raton." (*Id.* ¶ 295.) At most, Lead Plaintiff's allegations establish the existence of a professional or personal relationship between Mr. O'Rourke and Honig. But "[t]he existence of personal or professional relationships between individuals does not establish a 'group' under § 13(d)." *Burt v. Maasberg*, No. CIV.A. ELH-12-0464, 2013 WL 1314160, at *17 (D. Md. Mar. 31, 2013); *see also Scott v. Multi-Amp Corp.*, 386 F. Supp. 44, 70 (D.N.J. 1974) ("Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create a group which is deemed to be a statutory person."). Simply because Mr. O'Rourke may have shared an office with Honig does not show that he knew of, or participated in, an investor group at Riot.

The SAC is simply devoid of any facts suggesting the Individual Defendants' participation in, or knowledge of, this allegedly coordinated action. *In re Suprema*, 438 F.3d at 276 (requiring plaintiffs bringing securities fraud claims to allege the "who, what, when, where and how" of the fraud at issue). Lead Plaintiff's conclusory assertions are not sufficient to show the Individual Defendants' knowledge of any "group" actions by other outside investors. *See Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 449

---

plaintiff's failing to disclose a group subject to Section 13(d) claim because the plaintiff failed to provide any allegations of coordinated activities).

(S.D.N.Y. 2001) (holding generalized allegations unaccompanied by specific allegations showing that defendants acted together could not sustain a Section 13(d) claim).  In fact, the SAC supports the exact opposite.  The Individual Defendants did not trade or otherwise act in concert with the other outside investors.[7]  (*See* SAC ¶ 206 (alleging that Mr. O'Rourke sold shares of Riot on December 29, 2017, which did not occur in concert with any outside investor).)

## B.  Defendants Did Not Make Any False or Misleading Statements Regarding Related-Party Transactions

### 1.  <u>Riot Did Not Engage In Any Undisclosed Related-Party Transactions</u>

The SAC asserts that Defendants failed to disclose four related-party transactions pertaining to Riot:  (1) a March 2017 private placement; (2) the Coinsquare Agreement; (3) the Kairos Transaction; and (4) a December 2017 private placement.  (SAC ¶¶ 188–201.)  But none of these transactions provides a basis for an actionable securities fraud claim against Defendants.

Lead Plaintiff alleges that Riot had *failed to disclose* that the Company had entered into a private placement offering with Honig, a related-party, on March 15, 2017.  (*Id.* ¶ 188–89.)  But this is false.  Riot's Form 8-K attached as an exhibit the

---

[7] Relying on the SEC's allegations in the unrelated *Honig* action, Lead Plaintiff claims that "Honig worked with Stetson to ensure that members of his groups voted their shares in unison."  (*See, e.g.*, SAC ¶¶ 83, 278)  But Lead Plaintiff does not provide any specific allegations that Honig and Stetson coordinated votes at Riot.

Securities Purchase Agreement that was entered into by the Company and Honig, which informed investors that the transaction was with a related-party. (*See* Carlton Decl., Ex. A, at 22.)  This agreement specifically disclosed that the "Purchaser represents and warrants that: (i) Purchaser has a *prior substantial pre-existing relationship* with the Company . . . ." (*Id.* (emphasis added).)[8]  Riot then identified Honig as an investor who had participated in the March 2017 private placement offerings in the Company's July 19, 2017 Registration Statement. (*See* Carlton Decl., Ex. C, at 2–4 (attaching Form S-3/A filed on July 19, 2017).)  Thus, Riot adequately disclosed that the March 2017 private placement involved a related party.

But even if the Court finds this disclosure to be insufficient (it should not), Lead Plaintiff cannot rely on Riot's purported failure to disclose information regarding the March 2017 private placement to allege a material misrepresentation or omission against the Defendants.  Lead Plaintiff's first began purchasing Riot shares in December 2017—nearly *five months* after Riot's July 2017 registration statement disclosed Honig's participation in the private placement.[9]  *See In re*

---

[8] Moreover, mere days following this disclosure, Riot filed a Notice of Exempt Offering of Securities on Form D that disclosed that the private placement of $2,250,000 in promissory notes and purchase warrants was sold to an inside investor. (*See id.*, Ex. B, at 4 (attaching Form D filed on March 22, 2017).)

[9] Indeed, each plaintiff that sought to serve as lead plaintiff purchased their Riot shares on or after November 2017. (*See* Decl. of Joseph J. DePalma In Support of Dr. Stanley Golovac's Motion for Appointment As Lead Plaintiff (Dkt. No. 17-2),

*Urban Outfitters, Inc. Sec. Litig.*, 103 F. Supp. 3d 635, 650 (E.D. Pa. 2015) ("An

alleged misstatement or omission concerning a fact already made publicly

available cannot be materially misleading, because 'reasonable investors . . .

exercise due investment diligence.'") (quoting *In re Discovery Labs. Sec. Litig.*,

2006 WL 3227767, No. 06-1820, at *11 (E.D. Pa. Nov. 1, 2006)).  Lead Plaintiff

thus cannot allege that he was misled by the related-party transaction.

Lead Plaintiff's allegation that Riot failed to disclose Honig's involvement

in the Coinsquare transaction is similarly unavailing.  Lead Plaintiff contends that

Riot failed to disclose that it paid $50,000 to Honig for consulting fees related to

the Coinsquare transaction.  (SAC ¶ 225.)  However, under Item 404 of Regulation

S-K, transactions with related parties that do not exceed $120,000 are immaterial,

and do not need to be disclosed.[10]  17 C.F.R. § 229.404.

---

Ex. C; Decl. of James E. Cecchi In Support of Motion of Saroor Alam for
Appointment as Lead Plaintiff (Dkt. No. 10-2), Ex. C (listing purchases beginning
on December 2017); Decl. of Sherief Morsy In Support of Wai Lau's Motion for
Appointment as Lead Plaintiff (Dkt. No. 18-2), Ex. C (listing purchases beginning
on November 2017); Decl. of Donald J. Enright (Dkt. No. 19-3), Ex. 3 (listing
purchases beginning on December 2017 and January 2018).)

[10] Despite having no obligation to do so, Riot still disclosed in the Company's
Form 10-K for FY 2017 that the Coinsquare transaction involved a $50,000
payment to a company that was related to Honig on April 17, 2018.  (Carlton
Decl., Ex. D, at 73 (attaching Form 10-K for fiscal year ended Dec. 31, 2017)
("GRQ consultants, Inc., a related party of Mr. Honig received a cash payment of
$50,000 for diligence services in connection with the Company's investment in
Coinsquare.").)

Lead Plaintiff also claims that Honig, Groussman, DeFrancesco, and Stetson were related parties to the Coinsquare transactions since they were Coinsquare investors.  (SAC ¶ 193.)  But Instruction 6 to Item 404 of Regulation S-K states that a "person who has a position or relationship with a firm, corporation, or other entity that engages in a transaction with the registrant shall not be deemed to have an indirect material interest . . . where . . . [t]he interest arises only . . . [f]rom the direct or indirect ownership by such person . . . , in the aggregate, *of less than ten percent equity interest* in another person (other than a partnership) which is a party to the transaction."  17 C.F.R. § 229.404 (emphasis and alterations added).  According to the SAC, Honig, Groussman, and Stetson owned only 0.9%, 0.3%, and 0.1%, respectively, of Coinsquare's equity.  (SAC ¶ 193; *see also* Carlton Decl., Ex. E, at 4 (attaching Ex. 10.1 of Riot's Form 8-K/A filed on May 25, 2018) (stating that Coinsquare's authorized capital was 20,595,589 shares total).)  Meanwhile, Lead Plaintiff does not allege that DeFrancesco owned any shares in Coinsquare.  (SAC ¶ 193.)  Thus, Riot was not required to disclose their interests in Coinsquare, since their interests were less than ten percent, and were immaterial for purposes of Item 404.[11]

---

[11] Riot nevertheless disclosed that Honig, Groussman, and Stetson had an interest in Coinsquare in the Company's Form 8-K/A, filed on May 25, 2018.  (Carlton Decl., Ex. E, at 4.)

Likewise, Lead Plaintiff's reliance on the Kairos transaction is also misplaced.  Lead Plaintiff alleges that Riot's November 2, 2017 Form 8-K failed to disclose that Honig and DeFrancesco owned 8.6% and 6.3% of Kairos, respectively.  (SAC ¶ 198.)  But Riot was not required to disclose Honig and DeFrancesco's interests in Kairos, because they owned less than 10% of Kairos at the time of the transaction.[12]  (SAC ¶ 198.)

Lastly, Lead Plaintiff alleges that Riot had failed to disclose that the Company's December 19, 2017 private placement was a related-party transaction involving Honig and DeFrancesco.  (SAC ¶¶ 200–01.)  Lead Plaintiff, however, again ignores the fact that the Company's Form 8-K disclosed that the December private placement involved a related-party.  Riot's Form 8-K attached as an exhibit a Securities Purchase Agreement that discloses that the "Purchaser represents and warrants that: (i) the Purchaser has *a prior substantial pre-existing relationship with the Company* . . . ."  (Carlton Decl., Ex. F, at 11 (attaching Exhibit 10.1 of the Form 8-K filed on December 19, 2017) (emphasis added).)[13]  Then, on April 17, 2018, Riot identified both Honig and DeFrancesco as participants in the December

---

[12] Like the Coinsquare transaction, despite having no obligation to do so, Riot still disclosed Honig and DeFrancesco's interests in Kairos in the Company's Form 10-K for FY 2017.  (Carlton Decl., Ex. D, at 73.)

[13] Also, on December 27, 2017, Riot filed a Notice of Exempt Offering of Securities on Form D that disclosed that the December 19, 2017 private placement was offered solely to inside investors.  (*Id.*, Ex. H, at 4 (attaching Form D, filed on Dec. 27, 2017).)

2017 private placement in the Company's Form 10-K for FY 2017, which was the Company's first quarterly or annual report covering the period for this private placement.  (*See* Carlton Decl., Ex. D, at 73.)  Accordingly, all of Riot's purported related-party transactions that are identified by Lead Plaintiff were either fully disclosed by the Company or did not need to be disclosed under Item 404 of Regulation S-K.

### 2.   Riot's SEC Filings Concerning the Company's Related-Party Transactions Were Not False or Misleading

Lead Plaintiff asserts that Riot's Form 10-K filed on March 31, 2017 was false and misleading because it failed to disclose that the "March Private Placement Agreement was a transaction with a related party, namely Honig, a greater than 5% shareholder of Riot."  (SAC ¶ 393.)  It did not.  Riot's Form 10-K "[i]ncorporated by reference from the Registrant's Report on Form 8-K, effective March 15, 2017 and filed March 17, 2017," which disclosed that the March 2017 private placement involved a related party.  (Carlton Decl., Ex. G, at 51 (attaching Riot's Form 10-K for FY 2016, filed on Mar. 31, 2017).)

Lead Plaintiff also argues that Riot's Form 10-Q, filed on November 13, 2017, was false or misleading because it briefly mentioned the March 2017 private placement, without disclosing that it involved a related party.  (SAC ¶ 402.)  Of course, the March 2017 private placement had already been disclosed eight months earlier in Riot's 8-K.  In any event, Lead Plaintiff ignores the fact that the reporting

-20-

period for this Form 10-Q was for the quarterly period *ending in September 30, 2017*, and did not require disclosure of a transaction before that period.  (Carlton Decl., Ex. I, at 1 (attaching Riot's Form 10-Q, filed on Nov. 13, 2017).

Moreover, because Riot already disclosed that the March 2017 involved a related party, additional disclosures of the same were unnecessary.  "It is well-established law that the securities laws do not require disclosure of information that is publicly known . . . ."  *In re Progress Energy, Inc. Sec. Litig.*, 371 F. Supp. 2d 548, 552–53 (S.D.N.Y. 2005) (listing cases).  Riot's previous disclosures renders any purported omission of the same information immaterial.[14]

According to Lead Plaintiff, Riot's 2017 Proxy Statements, filed on December 12, 2017 and again on March 16, 2018, were misleading because the Audit Committee's report—which clearly indicated that it based its review of the Company's financials in the fiscal year ending on December 31, 2016—stated that Riot did not engage in any related-party transactions.  (*Id.* ¶ 412.)  Lead Plaintiff argues that this disclosure was false or misleading, because the Proxy Statements elsewhere reference events that occurred during FY 2017.  (*Id.*)  But the Court has

---

[14] *See Fan v. StoneMor Partners LP*, 927 F.3d 710, 716–17 (3d Cir. 2019) (finding that the company's public disclosures rendered the challenged misstatements and omissions immaterial); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 547 (S.D.N.Y. 2015), *aff'd sub nom.  Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016) ("Although the complete disclosures were important when made in the first instance, a reasonable investor would not expect repetition at every opportunity.  And the securities laws do not require such regurgitation . . . .").

already considered—and rejected—the Lead Plaintiff's argument.[15]  (Opinion at 20 ("The proxy statements unambiguously state that the challenged statements only refers to transactions that occurred 'during the last fiscal year.'").)  And the section in the Proxy Statements discussing related-party transactions explicitly describes the Audit Committee's findings, which were based on its review of the Company's FY 2016 financials.  (Carlton Decl., Ex. J, at 12, 15 (attaching DEF 14A, filed on Dec. 12, 2017).)

Finally, Lead Plaintiff claims that Riot's January 5, 2018 and February 7, 2018 Registration Statements were false or misleading because it stated that the selling stockholders (including Honig) did not have a "material relationship, with us or any of our subsidiaries within the past three years other than as a result of the ownership of our shares or other securities."  (SAC ¶¶ 418, 421.)  Riot's statement is indeed accurate:  Honig's material relationship with the Company stems from his ownership of Riot's common stock.  (*See* Opinion at 18 (finding that the "challenged statements in Riot's registration statements convey no message regarding the relationship between the *officers or directors* of Riot and the selling stockholders," and were not false or misleading) (emphasis in the original).)

_____

[15] As Lead Plaintiff concedes in the Motion for Leave, the Court's prior ruling on Riot's Proxy Statements are "the law of the case."  (Motion for Leave at 1–2.)

**C.    The Second Amended Complaint Does Not Give Specific Facts Giving Rise to a Strong Inference that the Defendants Acted with Scienter**

In addition to failing to allege actionable misstatements or omissions, the SAC did nothing to rehabilitate Lead Plaintiff's deficient scienter allegations.[16] While not needing to reach the issue, the Court observed that Lead Plaintiff's allegations did not "appear to sufficiently allege *particularized* facts that would support a strong inference of scienter with respect to several individual Defendants." (Opinion at 28, n.16 (emphasis in the original).) The Court also noted that "the only scienter allegations mentioned with respect to Beeghley and McGonegal are those particular defendants personally attested in SOX certifications that they had taken steps to verify the adequacy of Riot's internal controls. These allegations are, by themselves, insufficient to raise an inference of scienter—much less a 'strong inference.'" (*Id.* (citing 15 U.S.C. § 78u-4(b)(2)(A).) The SAC does not appear to address these deficiencies.[17]

---

[16] To evaluate the scienter of a company (*e.g.*, Riot), courts "look to the state of mind of the individual corporate official or officials who make or issue the statement . . . ." *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 402 (D. Del. 2010). Therefore Riot cannot be held liable "absent a showing that at least one individual officer who made, or participated in the making of, a false or misleading statement did so with scienter." *Id.* at 403.

[17] Lead Plaintiff fails to provide a complete copy of the SAC that "indicate[s] in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added." (L.Civ.R. 15.1; s*ee* Dkt. No. 169-2.) Because of this rule violation by Lead Plaintiff, it is

Aside from the fact that Mr. Beeghley had signed Riot's purportedly false SEC filings (SAC ¶¶ 300–03), which the Court intimated does not raise a strong inference of scienter, Lead Plaintiff asserts that "Beeghley knew that Honig was violating his disclosure obligations under Section 13(d)." (*Id.* ¶ 303.) But even if this was true, it hardly suggests that Mr. Beeghley acted with scienter. As explained above, it is Honig's, not Mr. Beeghley's, responsibility to comply with Section 13(d). (*See supra*, Section III(A)(1).)

Lead Plaintiff's allegations as to Mr. O'Rourke's scienter are similarly deficient. (*See, e.g.*, SAC ¶ 290 (asserting that Mr. O'Rourke knowingly or recklessly signed false and misleading SEC filings).) Lead Plaintiff heavily relies on Mr. O'Rourke alleged knowledge of Honig, Groussman, Stetson, and DeFrancesco's purported group activities at Riot. (*Id.* ¶¶ 290–98.) However, as explained above, Lead Plaintiff offers only conclusory allegations that Mr. O'Rourke had any knowledge of, or involvement with, Honig, Groussman, Stetson, and DeFrancesco's purported group activities at Riot. (*See supra*, Section III(A)(2).) The SAC is thus futile on the additional grounds that it fails to allege Defendants' scienter with the requisite specificity.[18]

---

difficult for Defendants (and the Court) to determine how the SAC's scienter allegations materially differ from Lead Plaintiff's prior pleadings.

[18] Because the SAC repeats many of Lead Plaintiff's scienter allegations made in his prior pleadings, Defendants respectfully refer the Court to their prior briefings

## IV.    CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court

deny the Motion for Leave, because the SAC is futile and is Lead Plaintiff's fourth

attempt to state adequate claims against Defendants.  Defendants thus also request

that the Court dismiss Lead Plaintiff's claims against them with prejudice.  *See*

*Kanter v. Barella*, 489 F.3d 170, 181 (3d Cir. 2007) (affirming dismissal with

prejudice because the plaintiff's proposed amendment would be futile).

DATED:      June 22, 2020               PAUL HASTINGS LLP


                                        By:  /s/ *Chad J. Peterman*
                                              CHAD J. PETERMAN

                                        *chadpeterman@paulhastings.com*
                                        200 Park Avenue
                                        New York, NY 10166
                                        Telephone:  1(212) 318-6000
                                        Facsimile:  1(212) 319-4090


                                        THOMAS A. ZACCARO
                                        *thomaszaccaro@paulhastings.com*
                                        D. SCOTT CARLTON
                                        *scottcarlton@paulhastings.com*
                                        515 South Flower Street, 25th Floor
                                        Los Angeles, CA 90071-2228
                                        Telephone:  1(213) 683-6000
                                        Facsimile:  1(213) 627-0705

---

for a further discussion of Lead Plaintiff's deficient scienter allegations.  (*See* the
Riot Blockchain Defendants' Motion to Dismiss (Dkt. No. 107).)

Attorneys for Defendants
RIOT BLOCKCHAIN, INC.,
JOHN O'ROURKE, AND MICHAEL
BEEGHLEY