## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC., et al.,<br><br>Defendants. | Civil Action No. 18-2293(FLW)(ZNQ)<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter comes before the Court on Lead Plaintiff Dr. Stanley Golovac's ("Plaintiff") Motion for Leave to File Consolidated Second Amended Class Action Complaint (the "Motion"). (Mot. for Leave to Amend the Compl. ("Mot."), ECF No. 169.) Defendants Riot Blockchain, Inc. ("Riot") and certain of Riot's directors, officers, and individual investors (collectively with Riot as, "Defendants") opposed,[1] and Plaintiff replied, (Pl.'s Reply, ECF No. 182).[2] The Court has carefully considered the arguments and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's Motion is granted.

---

[1] There are two briefs filed in opposition by certain Defendants. First, Riot, John O'Rourke ("O'Rourke"), and Michael Beeghley ("Beeghley") opposed, (Riot Opp'n, ECF No. 171), in which Defendants Catherine DeFrancesco ("DeFrancesco") (ECF No. 172), Mark Groussman ("Groussman") (ECF No. 175), and John Stetson ("Stetson") (ECF No. 174), joined. Second, Defendant Barry Honig opposed, (Honig Opp'n, ECF No. 173), in which Defendants DeFrancesco (ECF No. 176), Groussman (ECF No. 177), and Stetson (ECF No. 174), joined. Neither the Riot Defendants' opposition nor Honig's opposition make specific arguments of futility on behalf of Defendants DeFrancesco, Groussman, and Stetson.

   Defendant Groussman's request to join in the Riot Opposition Brief, filed as a Motion for Joinder, is hereby **GRANTED**.

[2] Plaintiff initially filed his reply, (ECF No. 180), followed by an amended reply (Pl.'s Reply, ECF No. 182). The Court will consider only the amended reply for purposes of this Motion.

1

## I.     BACKGROUND[3]

Plaintiff filed a Corrected Consolidated Amended Complaint ("CCAC"), (CCAC, ECF No. 73), against various Defendants, who responded with seven separate Motions to Dismiss, (Mots. to Dismiss ("MTDs"), ECF Nos. 107, 108, 112, 118, 131, 132, 134). In his CCAC, Plaintiff alleged that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b- 5 under that statute, 17 C.F.R. § 240.10b-5. Furthermore, Plaintiff asserts that various Defendants are vicariously liable under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). (Mem. Op. at 1, ECF No. 166.) Defendants' MTDs were granted, and Plaintiff's CCAC was dismissed without prejudice.[4] (*See* Mem. Op.)

Specifically, the Court found:

1) As to Count I, that Defendants knowingly and recklessly issued materially false and misleading statements in Riot's securities registration statements and proxy statements to artificially inflate the price of Riot's stock, the Court held *"I find that Plaintiff has failed to adequately allege that any of the statements identified by Plaintiff in Riot's registration statements, proxy statements, or press releases and similar public statements were materially false or misleading."* Though the Court dismissed the complaint on Plaintiff's failure to allege that any of the alleged statements were materially false or misleading, the Court further noted, *"as currently pled, the Complaint does not appear to sufficiently allege*

---

[3] The Court refers the parties to the Court's April 30, 2020 Opinion in response to the seven Motions to Dismiss filed by the Defendants, (Mem. Op., ECF No. 166), for a more detailed overview of the relevant facts and background.

[4] The Court Ordered that Plaintiff may file a separate motion for leave to file a second amended complaint, consistent with its April 30, 2020 Opinion, within thirty (30) days of its April 30, 2020 Order, (April 30, 2020 Order at 2, ECF No. 167), which Plaintiff did.

2

*particularized facts that would support a strong inference of scienter with respect to several individual Defendants."* (*Id.* at 27-28 (emphasis added).)

2) As to Count II, that Defendants carried out a plan, scheme, and course of conduct intended to deceive the investigating public, enable Riot to artificially inflate its stock price, and cause Plaintiff and others to purchase the stock at an inflated price, the Court held *"the Complaint fails to allege the first element of Plaintiff's claim, i.e., a 'deceptive or manipulative act,' with respect to defendants Beeghley, O'Rourke, [certain defendants omitted who are not listed as defendants in proposed consolidated second amended class action complaint[5]], DeFrancesco, Groussman, and Stetson. Furthermore, while I find that the Complaint has adequately alleged that Honig committed a 'deceptive or manipulative act' and that he did so with the requisite 'scienter,' I conclude that the Complaint fails to plead the element of loss causation with respect to Honig."* (*Id.* at 40 (emphasis added).)

3) As to Count III, that certain Defendants who were directors, officers, and majority shareholders were vicariously liable as "controlling persons" for any of the false and misleading statements made by Riot, the Court held *"Plaintiff has not adequately alleged any of his claims under Section 10(b) of the Exchange Act, I find that Plaintiff has also necessarily failed to plead any facts showing underlying violation by Riot."* (*Id.* at 41 (emphasis added).)

In addition to dismissing all of Plaintiff's claims, the Court required that if Plaintiff files an amended complaint, *"in addition to addressing the deficiencies identified in this Opinion,*

---

[5] Defendants McGonegal, Kaplan, So, Dai, and Les, are not Defendants in Plaintiff's proposed consolidated second amended class action complaint. (Mot. at 2 fn. 3.)

*[Plaintiff] must include additional scienter allegations that are particularized as to each defendant."* (*Id.* at 40 fn. 19 (emphasis added).)

The Court must now consider whether Plaintiff's Consolidated Second Amended Class Action Complaint (the "CSAC"), (DePalma Decl. Ex. A, ECF No. 169-2), cures the deficiencies highlighted in the Court's April 30, 2020 Memorandum Opinion. Specifically, Plaintiff must sufficiently plead:

  i. All elements of false statement liability under Section 10(b) against all Defendants (Count II in CSAC);

  ii. loss causation against Defendant Honig (Count I in CSAC); and,

  iii. deceptive or manipulative acts, scienter, and loss causation against Defendants Riot, Beeghley, O'Rourke, DeFrancesco, Groussman, and Stetson (Count I in CSAC).

  iv. Count III was dismissed by the Court because it is fully dependent on the adequacy of Counts I and II of Plaintiff's complaint. (Mem. Op. at 41 (because Plaintiff has not adequately alleged any of his claims under Section 10(b) of the Exchange Act, Plaintiff *"necessarily fails"* to plead Count III) (emphasis added).)Therefore, if the Court finds Plaintiff has adequately alleged Counts I and II, he may procced with Count III.

(*See generally* Mem. Op.; Mot. at 1-4.)

## II.   LEGAL STANDARD

### A.   Rule 15(a)(2)

Rule 15(a)(2) authorizes a party to amend its pleadings "only with the opposing party's written consent or the court's leave." Rule 15(a)(2) further instructs that "[t]he court should freely

4

give leave when justice so requires." Though within the discretion of the Court,

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Furthermore, the burden of proof rests with the non-moving party. *Heyl & Peterson Int'l, Inc. v. F.D. Rich Housing, Inc.,* 663 F.2d 419, 426 (3d Cir. 1981).

In evaluating whether a proposed amendment is futile, the Court "applies the same standard of legal sufficiency as applies[sic] under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citations omitted). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (internal quotation marks omitted) (citations omitted). The Court "determines futility by taking all pleaded allegations as true and viewing them in the light most favorable to [the moving party]." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing the pleader is entitled to relief[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual mater, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Analyzing the futility of an amendment "does not require the parties engage in the equivalent of substantive motion practice upon the proposed new claim or defense; [it] does require, however, that the newly asserted [claim

5

or] defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990). "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Id*. at 468. The Third Circuit has contemplated that the standard for denial of amendment is high, stating "[g]enerally, Rule 15 motions should be granted." *United States ex rel. Customs Fraud Investigations, LLC. V. Victaulic Co.*, 839 F. 3d 242, 249 (3d Cir. 2016).

### B. <u>Heightened Pleading Standard Under 9(b)</u>

As the Court previously articulated in its April 30, 2020 Memorandum Opinion:

> "Independent of the standard applicable to Rule 12(b)(6) motions," Rule 9(b) of the Federal Rules of Civil Procedure "imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Rule 9(b) states, in pertinent part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, a plaintiff must state the circumstances of its alleged cause of action with "sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004) (alteration in original)). Specifically, the plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id. (citing *Lum*, 361 F.3d at 224). The Third Circuit has further explained that, at a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany 'the

>first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (quoting *In re Rockefeller*, 311 F.3d at 217).

(Mem. Op. at 12.)

### C. Heightened Pleading Standard PSLRA

Furthermore, as the Court previously opined:

>In addition to the plausibility analysis under Rule 12(b)(6) and the heightened pleading requirements of Rule 9(b), Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C § 78u, *et seq.*, to require an even higher pleading standard for plaintiffs bringing private securities fraud actions. *See In re Suprema*, 438 F.3d at 276. This heightened pleading standard is targeted at preventing abusive securities litigation. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007) (stating that the PSLRA was "[d]esigned to curb perceived abuses of the § 10(b) private action—nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers") (citations and internal quotation marks omitted).
>
>The PSLRA's heightened pleading standard has two distinct requirements. First, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Second, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to

7

a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Both provisions require that facts be pleaded "with particularity." *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (stating that "Rule 9(b)'s particularity requirement is comparable to and effectively subsumed by the requirements of . . . the PSLRA") (citations and internal quotation marks omitted). Furthermore, under the second requirement, a "strong inference" exists "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw." *Tellabs*, 551 U.S. at 324 (2007).

(Mem. Op. at 12-13.)

### III. DISCUSSION

#### A. Futility of the Amendment

All of the Defendants present one substantive argument in their oppositions to Plaintiff's Motion: that the Motion should be denied because it is futile.[6] (*See* Riot Opp'n at 6; Honig Opp'n at 3-4.) The Court "applies the same standard of legal sufficiency as applies[sic] under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434 (citations omitted). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (internal quotation marks omitted) (citations omitted). The Court "determines futility by taking all pleaded allegations as true and viewing them in the light most favorable to [the moving party]." *Great W. Mining & Mineral Co.*, 615 F.3d at 175. "Federal Rule

---

[6] Defendants also note that Plaintiff failed to comply with Rule 15(a)(2) because he did not provide a redlined version of the complaint, (Riot Opp'n at 23 fn.17; Honig Opp'n at 2), however Plaintiff alleges it was an error due to file size that did not allow the redlined document to be uploaded, (Pl.'s Reply at 2 fn.4). Without delving further into Plaintiff's response (ECF No. 178) or why this issue required briefing, the Court accepts Plaintiff's explanation and will not deny the Motion on this procedural ground. Moving forward, the parties are strongly encouraged to consider how best to resolve curable issues without seeking Court intervention.

of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing the pleader is entitled to relief[.]" *Bell Atl. Corp.*, 550 U.S. at 555. "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citations and quotation marks omitted). Analyzing the futility of an amendment "does not require the parties engage in the equivalent of substantive motion practice upon the proposed new claim or defense; [it] does require, however, that the newly asserted [claim or] defense appear to be sufficiently well-grounded in fact or law that it is not a frivolous pursuit." *Harrison Beverage Co.*, 133 F.R.D. at 469. "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Id.* at 468.

      a. **Riot Defendants**

Defendants Riot, O'Rourke, and Beeghley[7] (collectively as, the "Riot Defendants") argue that the CSAC is futile because: (1) Section 13(d) does not apply to the Riot Defendants; (2) Plaintiff does not allege facts showing the Riot Defendants knew that Defendants Honig, DeFrancesco, Groussman and Stetson qualified as a "group" (the "Honig group" or the "group"); (3) Riot did not engage in any undisclosed related-party transactions as alleged by Plaintiff; (4) Riot's SEC filings were not false or misleading; and (5) Plaintiff's claims do not give rise to a strong inference of scienter by the Riot Defendants. (Riot Opp'n at 6-24.)

Plaintiff counters the Riot Defendants' futility arguments with: (1) alleging the Riot Defendants misconstrue Plaintiff's allegations regarding Schedule 13(d) and stating the Riot Defendants' obligations stemmed from Item 403 of Regulation S-K which required them to disclose in their Forms S-3 knowledge of any group, as defined under Section 13D (Pl.'s Reply at

---

[7] As well as DeFrancesco, Groussman, and Stetson, who have all joined in the brief, *supra* fn. 1.

5-11); (2) the Riot Defendants did in fact know that Defendants Honig, DeFrancesco, Groussman, and Stetson were a group because of their prior investments as a group in other corporations (*Id.*); (3) the Riot Defendants had a duty to disclose related-party transactions and material transactions between Riot and its insiders or directors and officers under Item 404 and ASC 850 (*Id.*); (4) because the Riot Defendants failed to disclose the related-party transactions as required under Item 404 and ASC 850, their SEC filings were materially false and misleading (*Id.*); and (5) the Riot Defendants had knowledge of their duties under Item 404 and ASC 850 evidenced by O'Rourke's and Beeghley's knowledge of prior litigation involving many of the same Defendants (CSAC ¶¶ 292, 302).

First, the Riot Defendants argue that Section 13(d) does not apply to them because they are issuers and not investors. (Riot Opp'n at 8.) Plaintiff, however, clarifies that he is not alleging that the Riot Defendants violated Section 13(d), rather Plaintiff alleges "as an issuer of public securities, Riot's 'disclosure obligations' were 'imposed' by 'Item 403 of Regulation S-K,' which required Riot to disclose in its Forms S-3 and 10-K 'any 'group' as that term is used in section 13(d)(3).'" (Pl.'s Reply at 5; CSAC ¶¶ 246-247.) The Court agrees with Plaintiff that he is, in fact, not alleging that the Riot Defendants violated Section 13(d), but rather, is only applying the definition of a "group" from Section 13(d) to the Riot Defendants' disclosure obligations under Item 403 of Regulation S-K. (CSAC ¶¶ 246-247.)

Next, the Riot Defendants argue that Plaintiff did not adequately allege that the Riot Defendants knew Honig, DeFrancesco, Groussman, and Stetson acted as a group. (Riot Opp'n at 8-9.) The Riot Defendants further assert that prior parallel investments of the alleged group have no bearing on the Riot Defendants knowledge of the existence of a group in this circumstance. (*Id.*) Plaintiff, however, argues that he has provided more than the Riot Defendants' knowledge of

10

the alleged group's prior parallel investments. (Pl.'s Reply at 6-7.) Plaintiff argues that the CSAC alleges that O'Rourke shared an office and fax number with members of the alleged group, O'Rourke's involvement in the prior parallel investments, and Beeghley's involvement in prior parallel investments with the alleged group, among other allegations. (*Id.* at 7-8.) The Court finds that these allegations are sufficient for a rational trier of fact to find that the Riot Defendants knew Honig, DeFrancesco, Groussman, and Stetson acted as a group. *See Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 127 (2nd Cir. 2001) ("[I]t would be reasonable to infer that a company in [Riot's] position would perceive the [] shareholders as a single unit; and it is undisputed that their aggregate holdings were large enough to trigger the statutory presumptions that they not only enjoyed access to inside information, but also posed a possible threat to corporate control.") (citations omitted). Furthermore, other Courts have similarly imputed the knowledge of a group on a corporation based on knowledge of the alleged group's prior parallel investments and the defendant's involvement in those prior parallel investments. *See, e.g., Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F. Supp. 2d. 169 (S.D.N.Y. 2000) (citing defendants' "long standing personal relationships" and their active involvement in "previous investments" in upholding Plaintiff's allegations forming the basis for a group). Though a trier of fact may ultimately reject Plaintiff's allegations, based upon the allegations presented in the CSAC, Plaintiff has provided the Court with sufficient facts alleging the Riot Defendants' knowledge that Honig, DeFrancesco, Groussman and Stetson acted as a group. Therefore, Plaintiff has sufficiently pleaded that the Riot Defendants either filed a false and misleading statement by a material omission, or engaged in a deceptive act, under Rule 10b of the Exchange Act.

As to the related-party transactions, the parties' dispute rests on whether the Riot Defendants' disclosures were sufficient. Namely, Plaintiff argues that in two of the exhibits in

11

which the Riot Defendants suggest that they disclosed the related-party transactions, the Riot Defendants did not mention Honig by his full name, as required by 17 C.F.R. § 229. 404(a) and ASC 850. (Pl.'s Reply at 9-10.) Furthermore, Plaintiff argues in that in the final exhibit, although the Riot Defendants purported to show they disclosed the related-party transactions, they only disclosed Honig as an investor in the transaction but did not disclose that Honig was a related party. (*Id.*) The Riot Defendants argue that these related-party transactions were not required to be disclosed and, even if they were required to be disclosed, the Riot Defendants disclosed them in previous SEC filings. (Riot Opp'n at 20-22.) The Court finds that the Plaintiff has sufficiently alleged that the Riot Defendants filed a false or misleading statement, or deceptive act, by leaving out specific details such as the investor's (Honig's) name and that his investment was a related-party transaction in their Item 404 of Regulation S-K forms.

In the broader allegations Plaintiff has made, that the Riot Defendants knew of the alleged group and purposely did not report the group under Item 403 to facilitate the group's alleged fraud to manipulate Riot's stock price, the Court finds, for the purposes of this Motion, that Plaintiff has alleged a strong inference of scienter. (CSAC ¶¶ 432-453.) Additionally, the Riot Defendants' failure to disclose the investor's name (Honig's) and specifically state that his investment was a related-party transaction provides a strong inference of scienter. (*Id.*)

As to loss causation, the Court notes that loss causation is subject to the lower, notice pleading standards of Rule 8. *See Hall v. Johnson & Johnson,* No. 18-1833, 2019 WL 7207491, *27 (D.N.J. Dec. 27, 2019); (Pl.'s Reply at 8 fn. 5). Here, the Court finds that Plaintiff sufficiently alleges loss causation, as to the Riot Defendants, for purposes of this Motion. Plaintiff's loss causation allegations include drawing connections between revelations of the Riot Defendants' materially false and misleading statements or omissions and the responsive change in Riot's stock

12

price. (CSAC ¶¶ 463-467.) As a result of Rule 15(a)(2)'s and this Court's liberal approach toward granting leave to file amendments, the Court finds that Plaintiff's allegations against the Riot Defendants are not futile and Plaintiff may proceed with Count II of its CSAC.[8] Therefore, Plaintiff may proceed with Count II of its CSAC against the Riot Defendants.

Furthermore, Plaintiff's allegations in Count I and Count II rest on nearly identical factual allegations. Thus, for the same reasons the Court grants Plaintiff leave to file its amended complaint as to Count II, it does for Count I, as well. (CSAC ¶¶ 482-498.)

### b. Defendants Honig, DeFrancesco, Groussman, and Stetson

As to Honig, Plaintiff alleges that Honig, i) in all of his 13(d) filings, failed to disclose his membership in a group, ii) failed to file a Schedule 13(d) throughout 2017 after numerous material acquisitions and dispositions of Riot stock, iii) failed to file Forms 4 as required for shareholders owning more than 10% and trading the respective stock, and iv) failed to disclose that he was issued warrants by the issuer. (CSAC ¶¶ 310-323.) Defendant Honig does not address these allegations at all in his opposition. (*See generally* Honig Opp'n.) The Court finds that Plaintiff has sufficiently alleged that Honig made a material misrepresentation and/or omission by, at the very least, not filing a Schedule 13(d) or 13A throughout 2017 and promptly disclosing his material acquisitions or dispositions of Riot stock. (Mem. Op. at 33-34.) The same allegations Plaintiff made in the CCAC against Honig regarding a deceptive act, which were found sufficient in the Court's Opinion, are made in the CSAC regarding a false statement and material misrepresentation or omission. (*Id.*)

---

[8] The Riot Defendants also request the Court take Judicial Notice of the documents attached to the Carlton Declaration. (Riot Opp'n at 4 fn. 2; Suppl. Request, ECF No. 171-1.) Because Plaintiff filed no opposition to this request in their Reply, and the Court finds the Riot Defendants' arguments persuasive, the Riot Defendants' request (ECF No. 171-1) is hereby **GRANTED**.

Furthermore, the Court finds Honig's failure to promptly disclose, when taken together with Plaintiff's allegations that Honig knew of his obligation to promptly file a Schedule 13(d), 13A, and 13G as evidenced by his 2016 practice (CSAC ¶313) and his apparent motives to profit (*Id.* ¶316; *see e.g. Id.* at 110 fn. 50), gives rise to a strong inference that Honig acted with scienter.[9] (*See* Mem. Op. at 37.)

As to Defendants DeFrancesco and Groussman, Plaintiff alleges that each of these two Defendants' Schedule 13 filings were materially false, misleading, deficient, and untimely. (CSAC ¶¶ 324-343.) For example, Plaintiff claims Groussman violated his duties to file a Schedule 13D or 13G (*Id.* ¶¶ 324-334); and, Plaintiff claims DeFrancesco owned 11.45% of Riot's outstanding stock on January 10, 2017 per her Schedule 13D and she never filed another Schedule 13D though, Riot's January 5, 2018 S-3 disclosure revealed DeFrancesco substantially divested her interest down to 1.2% (*Id.* ¶¶ 335-340). These are the same allegations the Court found to be similar to the allegations Plaintiff made against Honig, which are now properly pleaded in Plaintiff's CSAC. (Mem. Op. at 3-4.) Furthermore, the Court having no direct opposition from these Defendants and when taken together with Plaintiff's allegations as a whole against Defendants who are part of the Honig group, Plaintiff's allegations give rise to a strong inference of scienter on the part of Defendants DeFrancesco and Groussman.

Additionally, as to Defendant Stetson, who owned less than 5% of Riot's outstanding shares during the class period, Plaintiff alleges that Stetson's motive to stay under 5% ownership of Riot was to enable other members of the Honig group and to further their plan to manipulate Riot's stock price. (*Id.* ¶¶ 341-343.) The Court finds that Plaintiff's allegations against Stetson, taken as true for purposes of this Motion, with no opposition from Defendant Stetson, and with

---

[9] The Court has already found that Plaintiff had sufficiently alleged a deceptive act committed with requisite scienter for Count II of CSAC, which was Count I in the CCAC. (Mem. Op. at 40.)

Plaintiff's overall allegations against all Defendants, sufficiently plead that Stetson failed to report he was part of a group in a Schedule 13D, which he allegedly never filed. The Court finds that this could lead to an inference that Stetson's consistent 4.99% ownership interest was a deceptive act. Again, the Court finds that in the broader context of Plaintiff's allegations against all Defendants and for the purposes of this Motion, Stetson acted with requisite scienter.

As to all four of these Defendants, under the liberal approach applied to pleading loss causation, discussed above, Plaintiff has sufficiently alleged their actions individually and collectively contributed to change Riot's stock price. (*See, e.g.*, CSAC ¶¶ 454-455.) Thus, Plaintiff may proceed with Counts I and II against Defendants Honig, DeFrancesco, Groussman, and Stetson.

Finally, because the Court finds that Plaintiff has sufficiently alleged violations of Section 10b of the Exchange Act, and none of the relevant Defendants have provided any opposition to Count III, he may proceed with Count III against all defendants (except Riot). (CSAC ¶¶ 499-503.)

## IV. CONCLUSION

In summary, the Court finds that Plaintiff's CSAC adequately states his claims against all Defendants by pleading more particularized facts as to each Defendant to support every element of each of his claims.

For the reasons stated above, and for other good cause shown,

**IT IS** on this 23rd day of December, 2020 **ORDERED** that:

1. Plaintiff's Motion for Leave to File his Consolidated Second Amended Complaint (ECF 169) is hereby **GRANTED.**

                s/ Zahid N. Quraishi
                _____
                **ZAHID N. QURAISHI**
                **UNITED STATES MAGISTRATE JUDGE**