# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. McGONEGAL,<br><br>    Defendants. | Civil No. 3:18-CV-02293(FLW)(ZNQ)<br><br>MOTION DATE:  May 3, 2021<br><br>**ORAL ARGUMENT REQUESTED** |

---

## MEMORANDUM OF LAW IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' JOINDER AND MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

---

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*RIOT BLOCKCHAIN, INC., JOHN O'ROURKE, AND MICHAEL BEEGHLEY*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...............................................................................1

II. RELEVANT BACKGROUND AS TO THE INDIVIDUAL
DEFENDANTS.................................................................................4

    A. The Individual Defendants' Positions at Riot.................................4

    B. The Closed SEC Investigation and Settled Honig Action................5

    C. O'Rourke's and Honig's Personal Relationship ............................6

III. THE SECTION 10(B) CLAIM AGAINST THE INDIVIDUAL
DEFENDANTS SHOULD BE DISMISSED.........................................7

    A. The Reform Act's Heightened Pleading Standards With Regard
to Scienter...................................................................................7

    B. The SAC Does Not Contain Specific Facts Giving Rise to a
Cogent and Compelling Inference That the Individual
Defendants Acted with Scienter ...................................................8

        1. The SAC's Core Operations Allegations Fail as a Matter
of Law..............................................................................9

        2. The SAC's Inappropriate Reliance on Unrelated
Proceedings that Have Not Resulted in Findings of
Wrongdoing Cannot Support a Strong Inference of
Scienter.......................................................................... 11

        3. O'Rourke's Personal Relationship With Certain
Individuals Does Not Establish Knowledge Regarding
the Honig Group's Alleged Agreement to Act as a
Group............................................................................. 14

        4. O'Rourke's Stock Sales Were Neither Suspicious nor
Unusual and Cannot Sustain a Strong Inference of
Scienter.......................................................................... 15

        5. Investments Made in Companies Other than Riot is
Irrelevant to the Issue of Scienter. .................................... 17

        6. Certain Defendants' Alleged Failure to Disclose a Group
on Their Schedule 13Ds Cuts Against a Finding of
Knowledge by the Individual Defendants............................ 20

LEGAL_US_W # 106941864.3

**TABLE OF CONTENTS**
(continued)

**Page**

7.   The SAC is Devoid of Particularized Facts Supporting a Strong Inference of Scienter for Beeghley. .......................... 21

8.   Taken Together, the SAC's Generalized and Conclusory Allegations Fail to Create a Strong Inference of Scienter...... 22

IV.   THE SECTION 20(A) CLAIM AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED....................................... 25

V.   CONCLUSION ................................................................................. 26

LEGAL_US_W # 106941864.3

## TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Alpharma Secs. Litig.*,
  372 F.3d 137 (3d Cir. 2004)..................................................................25

*In re Bio–Tech. Gen. Corp. Secs. Litig.*,
  380 F. Supp. 2d 574 (D.N.J. 2005) ................................ 10, 18, 20

*Bird v. Moore Stephens P.C.*,
  No. 10-CV-1091 (DMC)(JAD), 2011 WL 2600721 (D.N.J. June
  29, 2011)..............................................................................................16

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997).............................................. 3, 16

*Burt v. Maasberg*,
  No. CIV.A. ELH-12-0464, 2013 WL 1314160 (D. Md. Mar. 31,
  2013)......................................................................................................15

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d 240 (8th Cir. 2008).........................................................2

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d at 248–49...........................................................................12

*Cioli v. Iravani*,
  625 F. Supp. 2d 276 (E.D. Pa. 2009).......................................13

*City of Roseville Emps.' Ret. Sys. V. Horizon Lines, Inc.*,
  713 F. Supp. 2d 378 (D. Del. 2010) ..........................................8

*In re Columbia Labs., Inc. Sec. Litig.*,
  No. CIV. 12-614 FSH, 2013 WL 5719500 (D.N.J. Oct. 21, 2013),
  *aff'd sub nom. In re Columbia Labs., Inc., Sec. Litig.*, 602 F. App'x
  80 (3d Cir. 2015)............................................................................22, 24

*Davis v. Williamson*,
  No. 4:08-CV-2009, 2009 WL 136815 (M.D. Pa. Jan. 20, 2009)....................17

*In re Equimed, Inc. Secs. Litig.*,
  2000 WL 562909 (E.D. Pa. May 9, 2000)................................25

**TABLE OF AUTHORITIES**
(continued)

Page

*In re FleetBoston Fin. Corp. Sec. Litig.*,
2007 WL 4225832 (D.N.J. Nov.28, 2007) ................................................. 17

*Fox Int'l Relations v. Fiserv Secs. Inc.*,
490 F. Supp. 2d 590 (E.D. Pa. 2007) ......................................................... 25

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008) .................................................................... 13

*In re Heartland Payment Sys., Inc. Secs. Litig.*,
No. 09-1043, 2009 WL 4798148 (D.N.J. Ec. 7, 2009) ....................... 9, 11, 21

*In re Hertz Glob. Holdings Inc.*,
905 F.3d 106 (3d Cir. 2018) ........................................................................ 1

*In re Hertz Glob. Holdings, Inc. Sec. Litig.*,
No. CV 13-7050, 2017 WL 1536223 (D.N.J. Apr. 27, 2017) ...................... 12

*In re Homestore.com, Inc. Sec. Litig.*,
252 F. Supp. 2d 1018 (C.D. Cal. 2003) ................................................. 2, 14

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
537 F.3d 527 (5th Cir. 2008) .................................................................... 24

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ............................................................ *passim*

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
223 F. Supp. 2d 435 (S.D.N.Y. 2001) ....................................................... 18

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*,
720 F. Supp. 2d 517 (D.N.J. 2010) ...................................................... 14, 22

*Oran v. Stafford*,
34 F. Supp. 2d 906 (D.N.J. 1999), *aff'd* 226 F.3d 275 (3d Cir. 2000) .................................................................................................... 16, 17

*Percoco v. Deckers Outdoor Corp.*,
No. 12-1001-SLR, 2013 WL 3584370 (D. Del. July 8, 2013) ................. 9, 10

## TABLE OF AUTHORITIES
(continued)

Page

*Rahman v. Kid Brands, Inc.*,
   736 F.3d 237 (3d Cir. 2013)...................................................................10

*Rubenstein v. Int'l Value Advisers, LLC*,
   363 F. Supp. 3d 379 (S.D.N.Y. 2019), *aff'd*, 959 F.3d 541 (2d Cir.
   2020)........................................................................................................18

*S.E.C. v. Lucent Techs. Inc.*,
   No. CIV. 04-2315 (WHW), 2005 WL 1206841 (D.N.J. May 20,
   2005)........................................................................................................12

*In re Salomon Analyst Winstar Litig.*,
   2006 WL 510526 (S.D.N.Y. Feb. 28, 2006)............................................13

*Scott v. Multi-Amp Corp.*,
   386 F. Supp. 44 (D.N.J. 1974)................................................................15

*Securities and Exchange Commission v. Honig, et al.*,
   No. 1:18-cv-08175 (S.D.N.Y.) ........................................................ *passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ..............................................................7, 8, 12, 25

*Utesch v. Lannett Co.*,
   316 F. Supp. 3d 895 (E.D. Pa. 2018)......................................................25

*In re Verisign, Inc., Derivative Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..................................................23

*Vogel v. Sands Bros. & Co.*,
   126 F. Supp. 2d 730 (S.D.N.Y. 2001) ....................................................14

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007)........................................................ 2, 10, 11

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009)..................................................................23

**TABLE OF AUTHORITIES**
(continued)

**Page**

## Statutes

15 U.S.C.
 § 10(b)...................................................................................3, 7, 8
 § 20(a)...................................................................................3, 4, 25
 § 78a...........................................................................................25

Private Securities Litigation Reform Act of 1995 ("PLSRA")..................7, 12, 13

Reform Act.................................................................................3, 7

Securities Exchange Act of 1934 Section 13(d)........................................ *passim*

## Rules

17 C.F.R.
 § 9(b)..........................................................................................7
 § 229.404....................................................................................15
 § 240.13d-5(b)(1)........................................................................18

## I.   __INTRODUCTION__

The Consolidated Second Amended Class Action Complaint (the "SAC") propounds generalized, vague, and conclusory allegations that are insufficient to sustain an actionable claim against Defendants John O'Rourke and Michael Beeghley (together the "Individual Defendants").[1]  More specifically, Lead Plaintiff merely regurgitates his scienter allegations from his previous complaint pertaining to the Individual Defendants that the Court has already determined do "not appear to sufficiently allege *particularized* facts that would support a strong inference of scienter."  (Memorandum Opinion Granting Defendants' Motion to Dismiss the Complaint (Dkt. No. 166) (the "Opinion") at 28, fn. 16.)  The SAC relies on no internal documents, no confidential witness statements, or no other credible information that suggests that the Individual Defendants acted with scienter.  Instead, Lead Plaintiff offers vague, boilerplate assertions that are flatly rejected by the Third Circuit.  *See, e.g.*, *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 115 (3d Cir. 2018).

---

[1] The Individual Defendants fully join and incorporate by reference the brief and supporting papers of Riot Blockchain, Inc.'s ("Riot") Motion to Dismiss, which demonstrates that all of the claims in this case should be dismissed, with prejudice. While the Individual Defendants do so, they also move separately to highlight the lack of meaningful allegations establishing that the Individual Defendants acted with scienter.  The Individual Defendants also move to dismiss on separate grounds with respect to the Section 10(a) claim.

*First*, Lead Plaintiff hinges his scienter allegations on the rare and narrowly-defined "core operations" exception, propounding generalized assertions against "certain Defendants," without demonstrating Beeghley or O'Rourke's involvement in the alleged misstatements and/or omissions. *See Winer Family Trust v. Queen*, 503 F.3d 319, 35-36 (3d Cir. 2007). Simply because Beeghley and O'Rourke held "high-level positions" at Riot does not mean that either individual knew every material fact pertaining to Riot, and it certainly does not mean that they knew about a purported "pump-and-dump" scheme.

*Second*, Lead Plaintiff mistakenly relies on a U.S. Securities and Exchange Commission (the "SEC") investigation and a lawsuit relating to investments in companies other than Riot. Neither the investigation nor lawsuit resulted in a finding of wrongdoing, weighing against an inference of scienter. *See In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248–49 (8th Cir. 2008).

*Third*, the SAC focuses on the personal relationships between O'Rourke and certain of the defendants. But personal relationships are insufficient to establish an inference of scienter that is cogent and compelling. *See In re Homestore.com, Inc. Sec. Litig.*, 252 F. Supp. 2d 1018, 1037 (C.D. Cal. 2003).

*Fourth*, Lead Plaintiff fails to raise a strong inference of scienter by alleging that O'Rourke sold stock to cover his tax obligations and after the purported fraud was disclosed. Allegations of motive and ordinary stock sales by corporate

officers are insufficient under the Reform Act.  *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 277 (3d Cir. 2009); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1424 (3d Cir. 1997).

*Fifth*, assertions that certain individuals invested in **companies other than Riot** and that **other investors** bought Riot stock are irrelevant and do not support any scienter on behalf of the Individual Defendants.

*Sixth*, Lead Plaintiff admits that certain defendants failed to disclose their group status in their Schedule 13Ds to Riot.  This fact cuts against Lead Plaintiff's scienter claims and, instead, leads to an inference that the Individual Defendants could not have known about the alleged group.  In any event, overwhelming non-fraudulent inferences are decidedly more compelling.  In fact, Lead Plaintiff's own allegations lead to a more compelling inference of non-fraudulent conduct.

In addition to the SAC's deficient scienter allegations, the Individual Defendants join and incorporate the arguments set forth in Riot's Motion, which cogently depicts the other pleading deficiencies concerning Defendants' alleged omissions (*i.e.*, failure to sufficiently allege falsity or loss causation).  And because the SAC does not adequately allege a primary violation under Section 10(b), the claim for control person liability against the Individual Defendants under Section 20(a) must be dismissed.

## II.   RELEVANT BACKGROUND AS TO THE INDIVIDUAL DEFENDANTS

To minimize redundancy and to promote judicial efficiency, the Individual Defendants join and hereby incorporate the factual background submissions included with Riot's Motion to Dismiss.

### A.   The Individual Defendants' Positions at Riot

Lead Plaintiff attempts to connect the Individual Defendants to the purported misstatements and/or omissions relating to the alleged "pump-and-dump" scheme by relying on the Individual Defendants' positions at Riot.  The SAC alleges that Beeghley was a director at Riot from November 2016 to November 2017 and was CEO from April 2017 to November 2017.  (*See* SAC ¶ 28.)  He also was Chairman of Riot's Board of Directors from January 2017 to November 2017.  (*Id.*)  O'Rourke began his tenure at Riot on January 6, 2017 when he became a director of the Company.  (*Id.* ¶ 24.)  He also served as Riot's President, Secretary, and Treasurer since September 2017 and Riot's CEO and Chairman of the Board of Directors from November 3, 2017 until September 8, 2018.  (*Id.*)

Lead Plaintiff sets forth boilerplate allegations that "by virtue of their high-level positions with the Company, [certain Defendants] directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels, and were privy to confidential proprietary information concerning the Company and its business, operations, financial

statements, and financial condition as alleged herein." (*Id.* ¶ 436.) But the SAC alleges no facts connecting these "high-level positions" to Beeghley and O'Rourke's purported knowledge that certain individuals, including Barry Honig, Mark Groussman, John Stetson, and Catherine DeFrancesco[2] acted as an undisclosed investor group to manipulate Riot's stock. (*Id.* ¶ 251.)

## B.     The Closed SEC Investigation and Settled Honig Action

The SAC alleges that on April 9, 2018, the SEC issued a subpoena to Riot pursuant to a formal order of investigation (the "SEC Investigation"). (*Id.* at ¶ 445.) But the SAC flatly ignores that the Court has already acknowledged that the SEC Investigation was closed by the SEC in 2020. (*See* Opinion at 9, n.6 ("Defendants have subsequently informed the Court, in the form of two separate motions for leave to file sur-replies, that the SEC has determined not to recommend any enforcement action against Riot.").) Riot also formally disclosed the conclusion of the SEC Investigation it its February 3, 2020 Form 8-K filed with the SEC:

> [O]n January 29, 2020, it had received written notice
> from the Division of Enforcement of the [SEC] that the
> SEC had concluded its investigation of Riot (the "SEC
> Investigation"). The SEC Investigation was previously
> disclosed by Riot on its current report on Form 8-K filed
> on April 9, 2018. According to the letter, the SEC has
> concluded its investigation of Riot and, based on the

---

[2] Lead Plaintiff alleges that Honig, Groussman, Stetson, and DeFrancesco comprised the "Honig Group." (SAC ¶ 29.)

> information the SEC had as of the date of the letter, the
> SEC does not intend to recommend an enforcement
> action against Riot, with respect to the matters
> investigated by the SEC.

(*See* Declaration of D. Scott Carlton ("Carlton Decl."), Ex. L, at 2 (Riot's Form 8-K, filed on Feb. 3, 2020).)

Lead Plaintiff also alleges that on September 7, 2018, the SEC filed an action in the Southern District of New York entitled *Securities and Exchange Commission v. Honig, et al.*, No. 1:18-cv-08175 (S.D.N.Y.) (the "*Honig* Action"). (*See* SAC ¶ 16.)  Lead Plaintiff relies on the *Honig* Action to assert that the Individual Defendants acted with scienter, but readily admits that the *Honig* Action involved companies *other than Riot*.  (*See id.* ¶¶ 79-96, Ex. A, Ex. B.)  Moreover, the SAC ignores that O'Rourke settled the *Honig* Action with the SEC without admitting or denying any of the SEC's allegations.  (*See* SAC ¶ 93 n.6; Carlton Decl., Ex. P.)

### C.    O'Rourke's and Honig's Personal Relationship

The SAC incorporates allegations pertaining to the alleged personal relationship between O'Rourke and Honig in an effort to support the glaring weaknesses in his scienter claims.  For example, Lead Plaintiff includes details surrounding a purported meeting that took place between Honig, O'Rourke, Groussman, and Honig's lawyer, Harvey Kesner.  More specifically, Lead Plaintiff references a YouTube video and alleges that "[t]he group appear to be recovering

together in a hospital room after reportedly attending the 2014 Roth Capital Conference." (*Id.*)  Lead Plaintiff also alleges that "[d]uring the '14 Roth Capital conference Barry Honig & his attorney Harvey Kesner allegedly took a bunch of edibles."  (*Id.* ¶ 447, fn. 82.)  Notably, according to the SAC, this meeting took place in 2014, three years before the start of the class period, (*see id.* ¶ 1 (April 1, 2017)), and years before Honig became a Riot shareholder.  (*See id.* ¶ 5 (March 2016).)  Indeed, the event was years before Riot became the blockchain company that is relevant to Lead Plaintiff's claims.  In addition, Lead Plaintiff alleges that O'Rourke, Honig, Groussman, and Stetson shared an office in Boca Raton, Florida.  (*Id.* ¶ 295.)  None of these allegations even relate to Riot.[3]

## III.   THE SECTION 10(B) CLAIM AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

### A.   The Reform Act's Heightened Pleading Standards With Regard to Scienter

Reform Act makes a "sharp break with Rule 9(b)," requiring a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Institutional Investors Group*, 564 F.3d at 253.  Thus, to survive a motion to dismiss, a plaintiff must plead that the defendant acted with a "mental state intent to deceive, manipulate or defraud."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).  But a "strong inference"

---

[3] Lead Plaintiff alleges no facts regarding *any* relationship between Beeghley and the purported group that worked to control Riot's operations.

exists "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw . . . ." *Id.* at 324. Hence, courts cannot examine any one allegation of scienter in isolation, but rather, after evaluating all the facts as alleged, consider any plausible opposing inferences. *Id.*

### B. The SAC Does Not Contain Specific Facts Giving Rise to a Cogent and Compelling Inference That the Individual Defendants Acted with Scienter

Lead Plaintiff also fails to state cognizable Section 10(b) claims because the SAC lacks facts establishing a cogent and compelling inference of scienter.[4]  The Court previously held that "the Complaint does not appear to sufficiently allege *particularized* facts that would support a strong inference of scienter." (Opinion at 9, n.6.)  The SAC's scienter allegations remain essentially the same.  Lead Plaintiff offers the generalized and conclusory allegations, including (1) vague and sweeping assertions to unsuccessfully invoke the "core operations" theory; (2) details regarding unrelated proceedings against O'Rourke; (3) allegations related to

---

[4] To evaluate the scienter of a corporate defendant (*e.g.,* Riot), courts "look to the state of mind of the individual corporate official or officials who make or issue the statement . . . ." *City of Roseville Emps.' Ret. Sys. V. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 402 (D. Del. 2010).  Therefore, a corporate defendant cannot be held liable "absent a showing that at least one individual officer who made, or participated in the making of a false or misleading statement did so with scienter." *Id.* at 403.  Since Lead Plaintiff does not specifically allege that the Individual Defendants—who are the only parties in this action who are officers or directors of the Company—acted with the requisite scienter, Lead Plaintiff also fails to allege that Riot acted with the requisite scienter.

purported personal relationships between O'Rourke and other individuals that as a matter of law do not require disclosure; and (4) O'Rourke's stock sales, which occurred after the supposed fraud was disclosed to the public. (*See* SAC ¶¶ 432-53.) In a feeble attempt to meet the pleading standard, Lead Plaintiff proffers additional allegations relating to the Honig Group's investments in ***other companies*** and ***other investors'*** investments in Riot that have, at most, a dubious connection to any purported knowledge by the Individual Defendants. (*Id.* ¶¶ 290-303.) Put simply, Lead Plaintiff is grasping at straws to meet its pleading requirements.

## 1. The SAC's Core Operations Allegations Fail as a Matter of Law.

In an effort to support an inference of scienter, Lead Plaintiff relies on the narrow "core operations" exception in lieu of alleging particularized facts, asking the Court to assume the Individual Defendants had the requisite knowledge based on their positions at Riot. (SAC ¶¶ 345, 434-39.) *See Percoco v. Deckers Outdoor Corp.*, No. 12-1001-SLR, 2013 WL 3584370, at *5 (D. Del. July 8, 2013) ("Only in rare instances can core operations alone allow inferences of scienter[.]") But it cannot be "automatically assumed that a corporate officer is familiar with certain facts just because these facts are important to the company's business; there must be other, individualized allegations that further suggest that the officer had knowledge of the fact in question." *In re Heartland Payment Sys., Inc. Secs. Litig.*,

-9-

No. 09-1043, 2009 WL 4798148, at *7 (D.N.J. Ec. 7, 2009); *In re Bio–Tech. Gen. Corp. Secs. Litig.*, 380 F. Supp. 2d 574, 596 (D.N.J. 2005) (same).  In other words, Lead Plaintiff is required to "specify the role of ***each*** defendant, demonstrating ***each*** defendant's involvement in [the] misstatements and omissions." *Winer Family Trust*, 503 F.3d at 35-36 (emphasis added) ("group pleading doctrine is no longer viable in private securities actions").  Accordingly, Lead Plaintiff's bald assertion that "Defendants are presumed to have knowledge of all material facts regarding Riot's core business" is plainly wrong.  (SAC ¶ 437.)

        Moreover, the "core operations" exception in the Third Circuit requires a plaintiff to allege facts showing that "'it would be 'absurd' to suggest that [Defendants were] without knowledge'" of the challenged statements' falsity, *Percoco v. Deckers Outdoor Corp.*, 2013 WL 3584370, at *5 (D. Del. July 8, 2013), or that "specific information conveyed to" Defendants showed those statements to be false when made, *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246-47 (3d Cir. 2013).  The SAC does not come close to meeting this requirement.  Rather, Lead Plaintiff generally alleges that "certain of the Defendants[']" roles within Riot, vaguely alluding to their status as officers or directors, but failing to introduce any allegations that connect each individual's roles to each of their individualized involvement in and knowledge of the alleged omissions concerning

-10-

related-party transactions or investor "groups."[5]  These allegations fall well below

the core operation exception's high bar and are incapable of sustaining an

inference of scienter.  *See In re Heartland Payment Sys., Inc. Sec. Litig.*, 2009 WL

4798148, at *7 (D.N.J. Dec. 7, 2009) (rejecting assumption "that a

corporate officer is familiar with certain facts just because these facts are important

to the company's business[]").

### 2. The SAC's Inappropriate Reliance on Unrelated Proceedings that Have Not Resulted in Findings of Wrongdoing Cannot Support a Strong Inference of Scienter.

The SAC renews Lead Plaintiff's attempt to rely on an SEC investigation

and the *Honig* Action to support his scienter allegations in utter disregard of

several, readily apparent fatal flaws.  (*See* SAC ¶¶ 445-46.)  First, Lead Plaintiff's

allegation that "the SEC's investigation remains 'ongoing'" is flatly false.  (*See id.*

¶ 451.)  Indeed, as the Court acknowledged in its April 30, 2020 Opinion, "the

SEC has determined not to recommend any enforcement action against Riot," (*see*

Opinion at 9, n.6), and Riot's Form 8-K filed on February 3, 2020 with the SEC

confirms the same.  (*See* Carlton Decl., Ex. L, at 2 (Riot's Form 8-K, filed on Feb.

3, 2020).)  As such, "[a]n SEC investigation that has not resulted in charges or any

---

[5] Lead Plaintiff does not even mention O'Rourke or Beeghley by name; rather, Lead Plaintiff makes a sweeping assertion that "certain of the Defendants" had "high-level positions" or "were senior executives" at Riot.  (*See e.g.,* SAC ¶¶ 436-37.)  This undoubtedly fails to demonstrate *each* defendant's particular knowledge. *See Winer Family Trust*, 503 F.3d at 35-36.

finding of wrongdoing does not support an inference of scienter." *In re Hertz Glob. Holdings, Inc. Sec. Litig.*, No. CV 13-7050, 2017 WL 1536223, at *17 n.6 (D.N.J. Apr. 27, 2017) (citing *Cozzarelli v. Inspire Pharm.*, 549 F.3d 618, 628 n.2 (4th Cir. 2008) (pending SEC investigation is "too speculative to add much, if anything, to an inference of scienter")); *see also In re Ceridian Corp. Sec. Litig.*, 542 F.3d at 248–49 (holding that an SEC investigation that did not result in any findings of fraud undermined an inference of scienter).

In fact, the SEC's decision to terminate the SEC investigation weighs in favor of drawing an inference of non-fraudulent conduct by the Individual Defendants because the SEC has extensive fact-gathering tools and an easier pleading burden than Lead Plaintiff to pursue enforcement matters. *See Tellabs*, 551 U.S. at 324 ("A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least compelling as any opposing inference one could draw from the facts alleged."); *see also S.E.C. v. Lucent Techs. Inc.*, No. CIV. 04-2315 (WHW), 2005 WL 1206841, at *5 (D.N.J. May 20, 2005) ("[B]ecause the PSLRA does not apply [to actions brought by the SEC], the SEC is exempt from the PSLRA's additional requirement of pleading scienter with particularity.").

Second, Lead Plaintiff's allegations regarding the *Honig* Action and subsequent settlements do nothing to salvage their inadequate pleadings with

regard to scienter.  (*See* SAC ¶ 451.)  Setting aside the fact that neither Riot nor

Beeghley are involved in or implicated by the *Honig* Action, the SAC readily

admits—and indeed, sets forth in detail—that the litigation  is entirely unrelated to

the purported conduct Lead Plaintiff now targets in regard to Riot.  (*See id.* ¶ 91.)

Moreover, Lead Plaintiff's heavy reliance on O'Rourke's settlement of the *Honig*

Action further ignores that O'Rourke consented to the SEC's order ***without***

***admitting or denying the SEC's allegations***.  (*See id.* ¶ 93 n.6; *see also* Carlton

Decl., Ex. P.)  *See In re Salomon Analyst Winstar Litig.*, 2006 WL 510526, at *8

(S.D.N.Y. Feb. 28, 2006) (rejecting plaintiffs attempt to plead scienter by citing to

a settlement in which the defendant did not admit to any allegations); *see also Cioli*

*v. Iravani*, 625 F. Supp. 2d 276, 289 (E.D. Pa. 2009) (striking as immaterial

portions of complaint that relied on settlement negotiations that took place in

connection with a different action); *Glazer Capital Mgmt., LP v. Magistri*, 549

F.3d 736, 748 (9th Cir. 2008) (settlement agreements involving defendants with

the DOJ and SEC were not sufficient to meet the pleading requirements of the

Reform Act because the admissions were largely legal  conclusions rather than

particularized facts giving rise to a strong inference of scienter).  Thus, Lead

Plaintiff's attempts to plead scienter through use of the *Honig* Action is meritless.

### 3.  O'Rourke's Personal Relationship With Certain Individuals Does Not Establish Knowledge Regarding the Honig Group's Alleged Agreement to Act as a Group.

Lead Plaintiff next attempts to hinge his scienter allegations on the purported personal relationship between O'Rourke, Honig, Groussman, and non-party Harvey Kesner.  (*See e.g., id.* ¶ 447.)  However, Lead Plaintiff fails to draw even a remote connection between any personal relationship and the alleged scheme in the SAC.  *See In re Homestore.com, Inc. Sec. Liti.,* 252 F. Supp. 2d at 1037 (holding no allegation of scienter based upon defendant's personal relationship with former CFO); *Vogel v. Sands Bros. & Co.,* 126 F. Supp. 2d 730, 739 (S.D.N.Y. 2001) ("close relationship . . . [is] insufficient to show an improper motive.") (citations omitted).

Lead Plaintiff offers a futile attempt to tie the allegations to the actual claims, claiming the allegations are "specifically included" to contradict a statement by Kesner about not knowing anything about Riot or Honig.  (*Id.* ¶ 450.) However, in addition to not being contradictory (*i.e.*, the meeting has nothing to do with Riot), what a non-party knows or does not know does not have any bearing on the alleged scienter of O'Rourke or Beeghley.  *See Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.,* 720 F. Supp. 2d 517, 550 (D.N.J. 2010) (non-party actions do not establish scienter on the part of the defendants).

Lead Plaintiff's allegation that O'Rourke shared Honig's office in Boca Raton is similarly unavailing.  (*Id.* ¶ 295.)  Again, Lead Plaintiff alleges no particularized facts that provide a cogent and compelling inference that sharing an office implicates a fraudulent intent.  *See Burt v. Maasberg*, No. CIV.A. ELH-12-0464, 2013 WL 1314160, at *17 (D. Md. Mar. 31, 2013) ("The existence of personal or professional relationships between individuals does not establish a 'group' under § 13(d)."); *see also Scott v. Multi-Amp Corp.*, 386 F. Supp. 44, 70 (D.N.J. 1974) ("Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create a group which is deemed to be a statutory person.").[6]

### 4.   O'Rourke's Stock Sales Were Neither Suspicious nor Unusual and Cannot Sustain a Strong Inference of Scienter.

Lead Plaintiff also alleges that O'Rourke's stock sales reveal "his motive to commit fraud."  (SAC ¶ 444.)  As an initial matter, the Third Circuit precludes Lead Plaintiff from hinging scienter allegations on "motive and opportunity."  *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 277 (3d Cir. 2009) ("'motive and opportunity' may no longer serve as an independent route to scienter . . .");

---

[6] Importantly, there is no duty to disclose any purported personal relationship as detailed in the SAC.  Rather, Riot was only obliged to disclose transactions with "related parties," as defined under 17 C.F.R. § 229.404—which excludes co-investors or personal relationships from its definition.  As demonstrated in Riot's motion to dismiss, Riot satisfied its disclosure obligations.

*Bird v. Moore Stephens P.C.*, No. 10-CV-1091 (DMC)(JAD), 2011 WL 2600721, at *6 (D.N.J. June 29, 2011) (same).

Moreover, the Third Circuit "will not infer fraudulent intent from the mere fact that some officers sold stock." *In re Burlington Coat Factory,* 114 F.3d at 1424. Lead Plaintiff must allege specific facts showing "that the trades were made at times and in quantities that were suspicious enough to support the necessary 'strong inference of scienter.'" *Oran v. Stafford,* 34 F. Supp. 2d 906, 910 (D.N.J. 1999), *aff'd* 226 F.3d 275 (3d Cir. 2000) (quoting *Burlington,* 114 F.3d at 1423 (stating also that where "plaintiffs choose to allege fraudulent behavior based on what they perceive as 'suspicious' trading, they have to allege facts that support that suspicion")). Yet, Lead Plaintiffs' own allegations establish that O'Rourke sold his shares in the "normal course of events" as a "corporate executive." *Id.* In fact, Lead Plaintiff concedes that O'Rourke sold less than 10% of his shares in Riot and did so "to cover tax obligations." (*Id.* ¶ 422.)

Equally fatal, Lead Plaintiff's own allegations from his prior complaint confirm that O'Rourke's trade occurred *after* claims related to Riot's legitimacy as a blockchain company publicly surfaced. (*See* CCAC (Dkt. No. 73.) ¶ 299 (Andrew Left claimed Riot "misrepresent[ed] the fact that nothing that they have is a real player in the crypto industry."), ¶ 301 ("Riot's name change to include the word 'Blockchain' was a publicity stunt"), ¶ 304.) Lead Plaintiff cannot avoid

dismissal by omitting these allegations from the SAC.  *See Davis v. Williamson*, No. 4:08-CV-2009, 2009 WL 136815, at *4 (M.D. Pa. Jan. 20, 2009) (holding plaintiff bound by "admissions made in his original complaint and cannot simply erase these details by omitting them from his amended complaint"); *In re FleetBoston Fin. Corp. Sec. Litig.,* 2007 WL 4225832, at *29 (D.N.J. Nov.28, 2007) (same).  Accordingly, the timing and scope of O'Rourke's stock trades undermine Lead Plaintiff's scienter allegations.  *See Oran*, 226 F.3d at 290.

### 5.  <u>Investments Made in Companies Other than Riot is Irrelevant to the Issue of Scienter.</u>

Lead Plaintiff also relies on allegations that O'Rourke and Beeghley invested in companies other than Riot at which Honig, DeFrancesco, Groussman, and Stetson maintained investments.  (*See* SAC ¶¶ 293, 302.)  These allegations come nowhere close to providing a plausible inference that (i) the Individual Defendants knew the others were acting as a group in connection with Riot or (ii) the Individual Defendants intended to omit that information in Riot's public filings.  (*See* SAC ¶¶ 293, 302.)  In fact, Lead Plaintiff concedes that Riot was informed by "[e]ach selling stockholder . . . that it does not have any written or oral agreement or understanding, directly or indirectly, with any person to distribute the Common Stock." (*See e.g., id.* ¶¶ 354, 362, 367, 370, 375, 378, 384.)[7]  Regardless,

---

[7] Lead Plaintiff contends this statement was also false and misleading.  (*See, e.g.*, SAC ¶ 354.)  However, Lead Plaintiff does not provide any allegations that show

simply because individuals invested in other issuers does not mean that Riot knew

that those same individuals invested in Riot to acquire, hold, vote, or dispose of

securities of Riot as a coordinated group.[8]  *See* 17 C.F.R. 240.13d-5(b)(1); *see*

*Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 392 (S.D.N.Y.

2019), *aff'd*, 959 F.3d 541 (2d Cir. 2020) (emphasis added); *Log On Am., Inc. v.*

*Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 448 (S.D.N.Y. 2001).  The

connection is simply too tenuous to sustain a claim.[9]

Moreover, Lead Plaintiff alleges that the disclosures contained in Riot's

Form S-3/A were materially false and misleading for failing disclose a group

pursuant to Item 403 of Regulation S-K, but similarly fails to tie this to any

---

that Riot was not, in fact, *informed* by "[e]ach selling stockholder . . . that it does
not have any written or oral agreement or understanding, directly or indirectly,
with any person to distribute the Common Stock." (*See, e.g.*, *id.*)  As with other
alleged misstatements, Lead Plaintiff deliberately distorts the actual information
disclosed by Riot.

[8] Lead Plaintiff's reliance on the SEC's allegation in the unrelated *Honig* Action
that *on February 3, 2014*, O'Rourke had emailed an officer of a different company
that "Barry Honig is the principal investor of our small group" in connection with
investments in a different company is similarly misplaced.  This does not suggest
that O'Rourke knew, years later, that Honig was part of a group at Riot that was
subject to the disclosure requirements of Section 13(d).

[9] Lead Plaintiff's conclusory allegations that O'Rourke and Beeghley were "acting
in concert" with Honig, DeFrancesco, Groussman, and Stetson to coordinate their
acquisitions and voting of Riot stock, and to control direction of the management
and policies of Riot," (*see* SAC ¶¶ 290, 299) do not bridge the gap.  *In re Bio-Tech.*
*Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 595 (D.N.J. 2005) ("Conclusory
allegations that the defendants 'knew' or 'must have known' that their statements
were false do not create a strong inference of scienter as a matter of law."); *Log on*,
223 F. Supp. 2d at 449.

scienter allegations.  (*See e.g.,* ¶¶ 349-388.)  In fact, Lead Plaintiff glosses over scienter all together, and instead relies on the same conclusory statements that Beeghley and O'Rourke knew that these individuals were "previously affiliated" because they had invested in other companies.  (*Id.* ¶¶ 356, 360, 382.)  But, as explained, a "previous affiliation" is irrelevant.  Without more, Lead Plaintiff does not establish any intentional or reckless conduct from O'Rourke or Beeghley or rule out the possibility that the purported failure to disclose was, at most, a negligent error.

Similarly, Lead Plaintiff relies on trades made by investors other than Honig, Groussman, Stetson, or DeFrancesco to insinuate that the Individual Defendants should have been aware that Honig, Groussman, Stetson, and DeFrancesco acted as an investor group at Riot.  (*See e.g., id.* ¶¶ 352, 365, 373, 386.)  This is nonsensical.  For instance, Lead Plaintiff alleges that JAD Capital was owned by the CEO (Theofilos) of MUNDOMedia Ltd., a company that the individuals allegedly owned shares in and owned 1.48% of Riot's common stock.  (*See id.* ¶ 352.)  Lead Plaintiff leaves the obvious flaw in logic unresolved and alleges no facts to show that (i) the Individual Defendants knew that there was, at best, a nebulous connection between JAD Capital and Honig, Groussman, and Stetson, or

-19-

(ii) the connection somehow would lead to the conclusion that those individuals must be acting to control Riot's operations. [10]

### 6.   Certain Defendants' Alleged Failure to Disclose a Group on Their Schedule 13Ds Cuts Against a Finding of Knowledge by the Individual Defendants.

Notably, Lead Plaintiff's own allegations actually provide support for the Individual Defendants' *lack* of knowledge regarding Honig, DeFrancesco, Groussman, and Stetson's purported scheme to act as a group to control Riot. Indeed, O'Rourke and Beeghley, and accordingly, Riot, could not have known about the alleged group because the SAC propounds that those investors failed to describe their group status in their Schedules 13Ds, as they are required to do under Section 13(d).  (*See, e.g.*, *Id.* ¶ 311 (alleging that Honig failed to disclose his group membership in his Schedule 13D filings); ¶ 325 (alleging that "Groussman never made a Schedule 13D filing disclosing his membership in a group"); ¶ 341 (alleging that "Stetson never made a Schedule 13D filing disclosing his membership in a group"); ¶ 484 (alleging that DeFrancesco failed to file a Schedule 13D revealing her group membership).)  Since Lead Plaintiff fails to

---

[10] The other examples of concerted "control group" actions are equally weak.  For example, the SAC alleges that Michael Ference and Paradox Capital Partners LLC ("paradox") had both reported owning exactly 4,444 of the Company's shares at one point.  (SAC ¶ 386.)  According to Lead Plaintiff, Ference was a partner at Sichenzia Ross Ference LLP ("SRF"), and Paradox, was owned by Harvey Kesner, who was also a partner at SRF and Defendant Honig's attorney.  (*Id.*)  Again, these allegations do nothing to show that Defendants knew that Honig, Groussman, Stetson, or DeFrancesco acted as an investor group at Riot.

allege particularized facts showing the Individual Defendants' purported knowledge through any other means, this weighs heavily in favor of a non-fraudulent inference.

### 7. The SAC is Devoid of Particularized Facts Supporting a Strong Inference of Scienter for Beeghley.

Lead Plaintiff's scienter allegations regarding Beeghley rely almost exclusively on Beeghley's former status as CEO of Riot and conclusory assertions that he knew that certain individuals invested in companies other than Riot.[11] (*See Id.* ¶¶ 299-303.) As explained in detail *supra*, such vague, generalized, and conclusory allegations do not give rise to a strong inference of scienter or support that Beeghley knew that Honig and others were a group as defined under Section 13(d), *see In re Heartland Payment*, No. 09-1043, 2009 WL 4798148, at *7 (D.N.J. Dec. 7, 2009) (requiring individualized allegations that suggest the officer has knowledge of the fact in question). (*See* also Opinion at 9, n.6 (stating that same allegations are "insufficient to raise an inference of scienter—much less a 'strong inference.'").)

_____

[11] The purported misstatements and/or omissions occurring after Beeghley resigned from the Board of Directors at Riot cannot be attributed to him. These include the November 3, 2017 Form 8-K; November 13, 2017 Form 10Q; the December 12, 2017 Form 10Q; December 19, 2017 Form 8-K; January 5, 2018 Form S-3; February 7, 2018 Form S-3/A; February 16, 2018 Form 8-K; and March 26, 2018 Form DEF 14A. (*See* SAC ¶¶ 398-425.)

In the SAC, Lead Plaintiff now contends, "Beeghley knew Honig was violating his disclosure obligations under Section 13(d)" because Honig was required to file an amended Schedule 13D/A.  (SAC ¶ 303.)  But this improperly conflates Beeghley's knowledge of Honig's individual reporting requirements under Section 13(d) with knowledge that Honig, Groussman, Stetson, and DeFrancesco were, together, under an agreement to acquire or hold Riot's shares. This is an illogical  inference to draw from the factual allegations.

### 8.    Taken Together, the SAC's Generalized and Conclusory Allegations Fail to Create a Strong Inference of Scienter.

As a whole, the SAC fails to plead particularized facts individually  as to O'Rourke and Beeghley demonstrating that any defendant had the requisite intent to deceive.  *See e.g.*, *In re Columbia Labs., Inc. Sec. Litig.*, No. CIV. 12-614 FSH, 2013 WL 5719500, at *5 (D.N.J. Oct. 21, 2013), *aff'd sub nom. In re Columbia Labs., Inc., Sec. Litig.*, 602 F. App'x 80 (3d Cir. 2015); *Pharmanet Dev. Grp.*, 720 F. Supp. 2d at 558 (plaintiff's complaint, even when viewed in its entirety, failed to establish a strong inference of scienter where the court had already found the plaintiff's insider trading, group pleading, and GAAP violation allegations to be insufficient).  The generalized allegations  advanced by Lead Plaintiff establish nothing more than that O'Rourke and Beeghley were in high-level positions at Riot and may have had a personal relationship with some of the Defendants, and that, O'Rourke sold stock in his ordinary course of conduct as an officer of Riot.  (*See*

Sections D.1-8.)  *See Avaya, Inc.*, 564 F.3d at 253 ("[M]otives that are generally

possessed by most corporate directors and officers do not suffice; instead, plaintiffs

must assert a concrete and personal benefit to the individual benefit to the

individual defendants resulting from this fraud.") (alteration in original).

Lead Plaintiff has failed to allege any facts bridging the gap between

O'Rourke and Beeghley's statuses and relationships and the purported knowledge

that Lead Plaintiff must show to avoid dismissal of his claims.  Indeed, Lead

Plaintiff does not set forth a single fact suggesting that the Individual Defendants

were privy to any specific information that would suggest that O'Rourke and

Beeghley knew that the Honig Group was working to acquire stock and control

Riot's operations.  *See e.g., In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d

1173, 1207 (N.D. Cal. 2007) (granting a motion to dismiss because "[t]he

assertions of scienter [were] entirely conclusory, and the CAC contain[ed] no

specific allegations of contemporaneous reports or data supporting the assertions of

scienter—not a single fact showing what each defendant knew, when he/she knew

it, or how he/she acquired that knowledge").  In fact, as explained in detail in

Riot's Motion to Dismiss, the SAC fails to establish that a group existed in

connection with Riot that even required disclosure.  Where, as here, the alleged

misstatement or omission is not obviously false or did not clearly need to be

disclosed, an inference of non-fraudulent conduct is more compelling.  *See Zucco*

-23-

*Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009)

("[R]eporting false information will only be indicative of scienter where the falsity

is patently obvious—where the 'facts [are] prominent enough that it would be

absurd to suggest that top management was unaware of them.'") (quoting *Berson v.*

*Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008)); *see also Indiana*

*Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 536

(5th Cir. 2008). Lead Plaintiff also does not identify any confidential witness or

point to any records or contemporaneous documents to support its claims. These

are critical pleading deficiencies that in and of themselves weigh strongly against a

finding of scienter. *Columbia Labs.*, No. CIV. 12-614 FSH, 2013 WL 5719500, at

*5; *Avaya, Inc.*, 564 F.3d at 253 ("Omissions and ambiguities count against

inferring scienter").

Lead Plaintiff instead heavily relies on unrelated proceedings that have been

settled and/or dismissed without any finding of fault, as well as on investments in

***other companies*** and ***by other investors*** in Riot, that require a logical leap that is

simply insufficient to raise an inference of scienter, let alone a strong inference of

scienter. These weaknesses in the SAC, in conjunction with Lead Plaintiff's

allegations—including the fact that O'Rourke's trades were after the purported

fraud was disclosed and that Honig, DeFrancesco, Groussman, and Stetson failed

to file a Schedule 13D disclosing them as a group to Riot—create a more

-24-

compelling inference of non-fraudulent conduct.  *See Tellabs*, 551 U.S. at 319;

*Utesch v. Lannett Co.*, 316 F. Supp. 3d 895, 902 (E.D. Pa. 2018) ("Read

holistically, the scienter allegations do not give rise to a strong inference that

Defendants acted with fraudulent intent[.]").  Accordingly, Lead Plaintiff has not

satisfied his high pleading burden.

## IV.   THE SECTION 20(A) CLAIM AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

For Section 20(a) liability, a plaintiff must show: (1) a person controlled

another person or entity; (2) that the controlled person or entity committed a

primary violation of the securities laws; and (3) that the defendant was a culpable

participant in the fraud.  *Fox Int'l Relations v. Fiserv Secs. Inc.*, 490 F. Supp. 2d

590, 601 (E.D. Pa. 2007).  If no controlled person is liable, no control person

liability exists.  *In re Alpharma Secs. Litig.*, 372 F.3d 137, 153 (3d Cir. 2004).

As demonstrated above and in Riot's Motion to Dismiss, Lead Plaintiff

cannot plead either a primary violation of the Exchange Act or culpable

participation in the alleged fraud, and therefore the Section 20(a) claim must be

dismissed.  *See In re Equimed, Inc. Secs. Litig.*, 2000 WL 562909, at *10 (E.D. Pa.

May 9, 2000) ("The heightened standards of the Reform Act apply to a § 20(a)

claim, so a plaintiff must plead particularized facts of the controlling person's

conscious misbehavior as a culpable participant in the fraud.") (internal quotation

marks omitted)).

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Individual Defendants respectfully request that the Court dismiss the Section 10(b) and Section 20(a) claims brought against them with prejudice.

DATED:      February 8, 2021               PAUL HASTINGS LLP


By:  /s/ *Chad J. Peterman*
      CHAD J. PETERMAN

chadpeterman@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

THOMAS A. ZACCARO
thomaszaccaro@paulhastings.com
D. SCOTT CARLTON
scottcarlton@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

Attorneys for Defendants
RIOT BLOCKCHAIN, INC., JOHN
O'ROURKE, AND MICHAEL
BEEGHLEY