**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
Julia M. Beskin (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Jaclyn M. Palmerson
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100
alexspiro@quinnemanuel.com
juliabeskin@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jaclynpalmerson@quinnemanuel.com

*Attorneys for Catherine DeFrancesco*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated, :<br><br>*Plaintiff*, :<br><br>v. :<br><br>RIOT BLOCKCHAIN, INC. f/k/a BIOPTIX, INC., JOHN O'ROURKE, JEFFREY MCGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES and ERIC SO, :<br><br>*Defendants*. | Civil Action No. 3:18-02293 (FLW) (TJB) |

## MEMORANDUM OF LAW IN SUPPORT OF
## CATHERINE DeFRANCESCO'S MOTION TO DISMISS
## THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ........................................................................................................3

    A.    Parties .......................................................................................................3

    B.    Procedural History ...................................................................................4

    C.    The Second Amended Complaint .............................................................5

LEGAL STANDARDS ...............................................................................................5

    A.    Pleading Standards for Section 10(b) and Rule 10b-5.............................5

    B.    Elements of the Causes of Action Under Section 10(b) and Rule 10b-5................6

ARGUMENT .............................................................................................................7

I.      PLAINTIFF FAILS TO PLEAD LIABILITY UNDER RULE 10B-5 ..............................7

    A.    Plaintiff Fails to Plead Any Actionable Breaches of Section 13(d)........................7

        1.    Plaintiff Fails to Plead That Ms. DeFrancesco Was a Member of the Purported Honig Group.........................8

        2.    Plaintiff Fails to Plead That Ms. DeFrancesco Acted With Scienter.........12

        3.    Plaintiff Fails to Plead Loss Causation ....................................................15

II.    PLAINTIFF FAILS TO PLEAD THAT MS. DEFRANCESCO IS A CONTROL PERSON OF RBI .............................................................................................16

III.   PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND.............................17

CONCLUSION...........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................... 5

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013)........................................................................... 16

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)....................................................................................... 15

*IBS Fin. Corp. v. Seidman & Assocs.*,
  136 F.3d 940 (3d Cir. 1998)............................................................................. 8

*In re Royal Dutch/Shell Transport Sec. Litig.*,
  2006 WL 2355402 (D.N.J. Aug. 14, 2006) ...................................................... 6

*In re: MobileMedia Sec. Litig.*,
  28 F. Supp. 2d 901 (D.N.J. 1998) ................................................................... 16

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)....................................................................... 6, 14

*Jones v. Intelli-Check, Inc.*,
  274 F. Supp. 2d 615 (D.N.J. 2003) ........................................................... 16, 17

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)........................................................................... 15

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)........................................................................................... 7

*Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ................................................................ 15

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)............................................................................. 7

*S.E.C. v. Teo*,
  2009 WL 1684467 (D.N.J. Aug. 10, 2010) ...................................................... 6

*Scott v. Multi-Amp Corp.*,
  386 F. Supp. 44 (D.N.J. 1974) ..................................................................... 7, 11

*Stichting Pensioenfonds ABP v. Merck & Co., Inc.*,
  2012 WL 3235783 (D.N.J. Aug. 1, 2012) ........................................................ 6

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)......................................................................................... 7

*Takata v. Riot Blockchain, Inc.*,
  2020 WL 2079375 (D.N.J. Apr. 30, 2020) ................................................... 4, 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................................... 6

*Trustcash Holdings, Inc. v. Moss*,
   668 F. Supp. 2d 650 (D.N.J. 2009)................................................................. 5

*Vladimir v. Bioenvision Inc.*,
   606 F. Supp. 2d 473 (2d Cir. 2009)................................................................ 6

*Wellman v. Dickinson*,
   682 F.2d 355 (2d Cir. 1982)............................................................................ 7

### Rules / Statutes

15 U.S.C. § 10(b) .................................................................................................. 6

15 U.S.C. § 13(d) ...................................................................................... 6, 7, 8, 11

15 U.S.C. § 78m(d) ............................................................................................... 7

15 U.S.C. § 78u–4(b) .................................................................................. 1, 6, 15

17 C.F.R. § 240.13d-101 ...................................................................................... 7

17 C.F.R. § 240.13d-5(b)(1) ................................................................................ 7

Fed. R. Civ. P. 9(b) ..................................................................................... 1, 5, 8

Fed. R. Civ. P.10b-5 ........................................................................................ 6, 11

Fed. R. Civ. P. 12(b)(6) ................................................................................... 1, 5

Defendant Catherine DeFrancesco submits this memorandum of law in support of her Motion to Dismiss the Consolidated Second Amended Class Action Complaint ("Second Amended Complaint" or "SAC") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b) ("PSLRA").

## PRELIMINARY STATEMENT

Despite multiple opportunities to amend his complaint, Plaintiff still fails to plead a viable cause of action against Ms. DeFrancesco. Plaintiff leaps from a handful of scattered investments alongside another Defendant to accusations of serious and sophisticated fraud. But the particularized facts necessary to sustain such a claim under the securities laws remain absent.

The Court dismissed the initial complaint against Ms. DeFrancesco (the Consolidated Amended Class Action Complaint dated May 9, 2019 ("AC"))—finding Plaintiff failed to plead that Ms. DeFrancesco engaged in deceptive or manipulative conduct arising from her purported role in certain "related party" transactions involving Riot Blockchain, Inc. ("RBI"). The SAC again makes conclusory assertions that Ms. DeFrancesco was required to disclose to RBI investors information concerning those transactions, but now focuses on Ms. DeFrancesco's supposed failures to disclose that she was a member of the purported "Honig Group" of investors in RBI—a term invented by Plaintiff for the litigation—and to disclose that she sold RBI stock after January 2017 by filing an amended Schedule 13D. Although the Court's April 30, 2020 Opinion discussed the allegations that would be necessary to sustain such claims, Plaintiff's SAC still falls far short of pleading an actionable omission:

*First*, Plaintiff asserts that Ms. DeFrancesco failed to disclose that she was a member of the so-called "Honig Group," but Plaintiff fails adequately to plead any such thing. Further, for the reasons discussed in the co-Defendants' motions, Plaintiff has not even adequately pleaded that any such "Honig Group" exists, much less that Ms. DeFrancesco was part of this group.

Plaintiff tries to weave Ms. DeFrancesco into this group by, among other things, referencing dozens of supposed pump-and-dump schemes that the group's members supposedly perpetrated at other companies. But Plaintiff alleges that Ms. DeFrancesco was an investor in *just one* such company—PolarityTE—and alleges *no* misconduct in connection with that company at all. In fact, the SAC allegations regarding PolarityTE do not even mention Ms. DeFrancesco. And, more generally, Plaintiff fails to plead that Ms. DeFrancesco agreed in any respect to buy, sell, vote, or otherwise act in concert with any other member of the so-called "Honig Group" in connection with RBI stock—much less that she actually had any role in any pump-and-dump scheme at RBI. Ms. DeFrancesco could not have failed to disclose membership in the "Honig Group" because Plaintiff fails to plead the group's existence, much less her membership.

*Second*, Plaintiff fails to plead that any purported omission on Ms. DeFrancesco's part was made with scienter. To start, Plaintiff fails to plead that any Defendant misrepresented the nature or viability of RBI's business—in other words, that there was any "pump" of RBI at all, and therefore any "pump-and-dump" scheme. To the extent Ms. DeFrancesco made any omissions, she therefore could not have made them with any intent to participate in a scheme that Plaintiff has failed to plead existed. And this Court already found that the mere failure to file an amended Schedule 13D was not necessarily deceptive absent additional supporting allegations. As to Ms. DeFrancesco, however, such supporting allegations are again absent.

*Third*, Plaintiff fails to plead loss causation. The Court previously dismissed allegations against Honig where Plaintiff failed to plead that the market reacted negatively to the news that Honig failed to file a timely Schedule 13D. Similarly, Plaintiff nowhere alleges that the price of RBI stock declined from any alleged disclosure that Ms. DeFrancesco failed timely to file amended Schedules 13D for her RBI stock. Plaintiff also fails to plead a public disclosure of her

purported membership in the "Honig Group," much less that RBI stock declined in reaction to that disclosure. Plaintiff's claims against Ms. DeFrancesco fail for this independent reason.

*Finally*, Plaintiff fails to plead that Ms. DeFrancesco was a "control person" of RBI under Section 20(a). Rather, Plaintiff pleads expressly that she held a minority stake in the company, and offers no allegations that she did, or could have, controlled the company's alleged public misstatements, nor that she culpably participated in them.

For the foregoing reasons, and those discussed herein, the Second Amended Complaint should be dismissed, with prejudice, as to Ms. DeFrancesco.

## BACKGROUND

### A.    Parties

Defendant Riot Blockchain, Inc. ("RBI") supports and operates blockchain technologies. RBI's shares trade on the NASDAQ. SAC ¶ 22.

Defendant Michael Beeghley was CEO, Chairman, or director of RBI at various times between November 2016 and November 2017, SAC ¶ 28, and Defendant John O'Rourke was Chairman and CEO of RBI from November 3, 2017 until September 8, 2018, and a director of RBI from January 6, 2017 to September 8, 2018. SAC ¶ 24.

Defendants Barry Honig, Mark Groussman, and John Stetson were RBI investors during the Class Period (defined below). *See* SAC ¶¶ 23, 25, 26.

Defendant Catherine DeFrancesco is an indirect shareholder with a small stake in RBI. *See* SAC ¶ 27. Ms. DeFrancesco is not, and has never been, a director or officer of RBI.

Plaintiff Dr. Stanley Golovac purportedly purchased RBI stock between March 15, 2017 and September 6, 2018, inclusive (the "Class Period"), and claims to represent a putative class of similarly situated purchasers. SAC ¶ 1.

3

B.      **Procedural History**

On February 17, 2018, Creighton Takata filed the original complaint, which named only RBI, McGonegal, and O'Rourke as Defendants.  ECF No. 1.  On January 15, 2019, having been appointed lead plaintiff, Golovac filed a Consolidated Class Action Complaint ("CAC") naming Defendants RBI, McGonegal, O'Rourke, and Honig.  ECF No. 52.

On March 28, 2019, Defendants moved to dismiss the CAC.  ECF Nos. 66, 67.  Rather than oppose, Plaintiff sought leave to file a second amended complaint, ECF No. 69, and filed the Consolidated Amended Class Action Complaint ("AC") on May 8, 2019, naming Ms. DeFrancesco for the first time—18 months after the case was first filed.  ECF Nos. 72, 73.

On April 30, 2020, this Court dismissed the AC without prejudice.  *See Takata v. Riot Blockchain, Inc.*, 2020 WL 2079375 (D.N.J. Apr. 30, 2020) ("Op.").  The Court held that Plaintiff failed to plead a "deceptive or manipulative act," or scienter, on the part of Ms. DeFrancesco.  *See* Op. at *14.  The Court found that allegations that Honig failed to "'promptly' file an amended schedule [13D] to . . . disclose[] to the market that he had materially decreased his holdings" in RBI were sufficient to plead a deceptive act, with the important caveat that this failure was "not necessarily deceptive by itself," but only "in the wider context of Plaintiff's allegations that Honig" failed to make a timely filing "in order to conceal his sales from the public as part of a scheme to pump-and-dump" RBI stock.  *Id.* at *15.  The Court "identif[ied] two categories of particularized allegations that support an inference that Honig acted with an intent to deceive": (i) that "Honig and other members of the Honig Group have been implicated in multiple pump-and-dump schemes at other companies"; and (ii) that Honig "had a motive and opportunity to profit from the concealment of his stock sales." *Id.* at *16.

The Court nonetheless dismissed the claims against Honig because the AC was "devoid of any allegation" that the disclosure of Honig's failure to file an amended Schedule 13D "was a

'substantial cause' of shareholders' economic losses or otherwise contributed in any way to a decline in Riot's stock price." *Id.* at *17.

Finally, the Court dismissed Plaintiff's Section 20(a) cause of action because Plaintiff failed to plead an underlying violation of Section 10(b). *Id.* at *18.

### C.    The Second Amended Complaint

Plaintiff asserts three separate counts against Ms. DeFrancesco, each of which relies on allegations that Ms. DeFrancesco (i) failed to disclose her supposed membership in the "Honig Group" and (ii) failed to timely amend her Schedule 13D disclosure upon selling shares of RBI. Based on these allegations, Plaintiff asserts violations of Rule 10b-5(a) and (c) (Count I), *see* SAC ¶¶ 482-487, violations of Rule 10b-5(b) (Count II), *id.* ¶¶ 488-498, and violations of Section 20(a) (Count III), *id.* ¶¶ 490-503.  As detailed below, neither allegation supports a cause of action against Ms. DeFrancesco.

### LEGAL STANDARDS

### A.    Pleading Standards for Section 10(b) and Rule 10b-5

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 653 (D.N.J. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Independent of the standard applicable to Rule 12(b)(6) motions," Rule 9(b) requires a plaintiff to allege "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed and what effect the scheme had on the securities at issue." *In re Royal Dutch/Shell Transport Sec. Litig.*, 2006 WL 2355402, at *7 (D.N.J. Aug. 14, 2006).  The PSLRA further requires the complaint to "specify each statement alleged to have been misleading" and the "reasons why the statement is misleading."  15 U.S.C. § 78u-4(b)(1).

The PSLRA further requires the complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). That inference is proper "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). In assessing whether plaintiff has satisfied the scienter pleading requirement, courts must "weigh the 'plausible nonculpable explanations for the defendant's conduct' against the 'inference favoring the plaintiff.'" *Inst. Inv. Grp. v. Avaya, Inc.*, 564 F. 3d 242, 267 (3d Cir. 2009).

**B.      Elements of the Causes of Action Under Section 10(b) and Rule 10b-5**

"There is no private right of action under section 13(d) of the Exchange Act." *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 490–91 (2d Cir. 2009). To plead an actionable breach of Section 13(d), plaintiff must therefore plead that a breach of Section 13(d) is actionable under Section 10(b). *See S.E.C. v. Teo*, 2009 WL 1684467, at *7 (D.N.J. Aug. 10, 2010).

The elements of Plaintiff's first cause of action under Rule 10b-5(a) and (c) are a "(1) . . . manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud [investors], (3) scienter, and (4) reliance." *Stichting Pensioenfonds ABP v. Merck & Co., Inc.*, 2012 WL 3235783, at *7 (D.N.J. Aug. 1, 2012). To state a claim under Plaintiff's second cause of action pursuant to Rule 10b-5(b), Plaintiff must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

**ARGUMENT**

Plaintiff's reliance on attenuated associations and innuendo falls far short of the particularized allegations necessary to establish Ms. DeFrancesco's membership in any supposed RBI-stock related group, and Plaintiff fails to plead scienter or loss causation as to Ms. DeFrancesco's alleged failure to amend her Schedule 13D. Indeed, Plaintiff fails to plead the "pump" portion of the supposed "pump-and-dump" scheme at all, as the AC is devoid of non-conclusory allegations that RBI had not, in fact, engaged in the business of mining bitcoin, or that the Defendants' representations falsely hyped RBI stock.

## I.    PLAINTIFF FAILS TO PLEAD LIABILITY UNDER RULE 10b-5

### A.    Plaintiff Fails to Plead Any Actionable Breaches of Section 13(d)

Two requirements of Section 13(d) of the Exchange Act are relevant here. First, that two or more persons constitute a "group" under 13(d) when they "agree to act together for the purposes of acquiring, holding, voting or disposing of equity securities of an issuer." 17 C.F.R. § 240.13d-5(b)(1). "'The touchstone of a group within the meaning of Section 13(d) is that the members combined in furtherance of a common objective.'" *Roth v. Jennings*, 489 F.3d 499, 508 (2d Cir. 2007) (quoting *Wellman v. Dickinson*, 682 F.2d 355, 363 (2d Cir. 1982)). "Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create a group which is deemed to be a statutory person." *Scott v. Multi-Amp Corp.*, 386 F. Supp. 44, 70 (D.N.J. 1974). Rather, plaintiff must allege an "agreement to act in concert." *Id.*

Second, that any person or group that becomes the beneficial owner of more than 5% of any registered equity security must make certain disclosures by filing a Schedule 13D. *See* 15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-101. "This section was designed to alert the marketplace to every large, rapid aggregation or accumulation of securities, regardless of technique employed, which might represent a potential shift in corporate control." *IBS Fin. Corp. v.*

*Seidman & Assocs.*, 136 F.3d 940, 945–46 (3d Cir. 1998) (internal quotations and citations omitted).  Plaintiff's allegations concur, explaining that Section 13(d) is "meant to prevent evasion of the disclosure requirement when two or more persons act together but keep their individual holdings below the reporting threshold."  SAC ¶ 242.

### 1.    Plaintiff Fails to Plead That Ms. DeFrancesco Was a Member of the Purported Honig Group

Plaintiff offers no allegations that Ms. DeFrancesco intended or agreed to act in concert with the supposed "Honig Group" to purchase, sell, vote, or otherwise act as to her shares in RBI, and therefore fails to plead she was a member of any undisclosed group.

To start, Plaintiff alleges no facts that Ms. DeFrancesco made any *express* agreement with any member of the Honig Group concerning RBI stock—much less to effectuate a pump-and-dump scheme.  Plaintiff fails to plead particularized facts about any such agreement, speculating instead that each Defendant acted under unspecified "explicit or tacit agreements." *See, e.g.*, SAC ¶ 8.  This generic, unparticularized assertion does not satisfy the pleading standards of Rule 9(b), the PSLRA, or this Court's requirement that Plaintiff's amended complaint "clearly identify the *particularized* allegations."  Op. at *18 n.20.

Unable to plead an express agreement, Plaintiff relies on a grab bag of circumstantial assertions regarding the Honig Group's supposed prior history of engaging in pump-in-dump schemes.  But Plaintiff's allegations concerning prior pump-and-dump schemes supposedly engineered by the "Honig Group" only highlight Plaintiff's failure to implicate Ms. DeFrancesco.  Plaintiff asserts, among other things, that *other* Defendants "had been engaged in the same fraudulent *modus operandi* at RBI that they had perfected a[t] dozens of previous [companies]," SAC ¶ 16; *see also* SAC ¶¶ 99-159 (identifying prior companies).  Beyond PolarityTE, discussed below, Plaintiff nowhere pleads that Ms. DeFrancesco had any connection

to these "dozens" of companies, much less participated in or was even accused of misconduct. Plaintiff attaches to the Amended Complaint an SEC filing dated March 16, 2020—18 months after the end of the putative class period—that likewise alleges misconduct on behalf of *other* individuals but, again, *not* Ms. DeFrancesco.  *See* SAC ¶ 80 and SAC Ex. B.  These allegations only highlight the failure to allege Ms. DeFrancesco's membership in any group.

The mere fact that Ms. DeFrancesco beneficially owned an unspecified stake in PolarityTE does not establish that she was a part of the supposed Honig Group, or participated in its alleged attempt to pump-and-dump RBI stock.  Plaintiff alleges that Honig and Ms. DeFrancesco held shares in PolarityTE, *see* SAC ¶ 159, but pleads no conduct on the part of Ms. DeFrancesco in connection with that company or any related scheme.  The section of the SAC devoted to alleging misconduct at PolarityTE does not mention Ms. DeFrancesco.  SAC ¶¶ 132-136.  And Plaintiff fails to allege Ms. DeFrancesco even sold her shares of PolarityTE, which means Plaintiff fails to plead that Ms. DeFrancesco participated in any pump-and-dump scheme as to that company (or any other).  *See* SAC ¶¶ 132-136.

That Ms. DeFrancesco wrote letters to Venaxis (which became RBI) likewise fails to establish membership in a group that agreed to pump-and-dump RBI shares.  *See* SAC ¶¶ 164-176.  According to Plaintiff, Honig wrote a letter to RBI on September 13, 2016 demanding a special meeting of shareholders and a vote on certain proposals, and Ms. DeFrancesco wrote a letter on the same day.  Plaintiff misleadingly alleges that each of their letters "tout[ed] their combined 16.2% stake in the company."  *See* SAC ¶¶ 168-170.  In fact, Plaintiff identifies no language from Honig's September 13, 2016 letter in which he discusses Ms. DeFrancesco's stake, nor supports the allegation that Ms. DeFrancesco even wrote a letter on September 13, 2016.  *See* SAC ¶ 168.  Nor does Plaintiff allege that Ms. DeFrancesco's September 14, 2016 or

September 20, 2016 letters referenced Honig's and her combined share total.  Indeed, the portion of Ms. DeFrancesco's September 20, 2016 letter quoted in the SAC does not refer even to her own holdings, much less to any agreement between her and Honig concerning their RBI shares. Plaintiff alleged at best that Ms. DeFrancesco supported Honig's proposals.  *See* SAC ¶ 175.

Notably, Plaintiff pleads that Ms. DeFrancesco concluded her September 20, 2016 letter, *see* SAC Ex. O, by referring to "***our counsel Harvey Kesner, Esq***."  SAC ¶ 172 (emphasis original).  Plaintiff claims this supposed sharing of counsel "made clear that [Ms. DeFrancesco] was working with Honig."  *See id.*  In reality, Ms. DeFrancesco concluded her September 20, 2016 letter by stating "[s]hould you have any questions regarding the foregoing, please do not hesitate to contact Joe Laxague, Esq. . . . ."  *See* SAC Ex. O (ECF page 436).  Plainly, Plaintiff's false allegation cannot support a claim against Ms. DeFrancesco.

Plaintiff also asserts that the concurrent failure of several Defendants, including Ms. DeFrancesco, to disclose their membership in the "Honig Group" demonstrates the existence of the Honig Group.  *See* SAC ¶ 287.  If Plaintiff's circular assertion could plead with particularity the existence of a group, Plaintiff could link together, on the basis of their silence, any collection of people or entities who had invested in the same company.  The much more cogent and simple explanation for Ms. DeFrancesco's failure to report membership in the "Honig Group"— particularly given the lack of other allegations that she participated in any scheme—is that she was not a member of any such group (if such group even existed).

Finally, Plaintiff alleges that Mike Dai's appointment to the RBI board supports that Ms. DeFrancesco "knew that she was investing alongside the Honig Group."  SAC ¶ 288.  Plaintiff's assertion that Ms. DeFrancesco was "investing alongside" the Honig Group suggests she was *not* a member.  Regardless, Plaintiff essentially pleads that Ms. DeFrancesco must have been aware

of Mr. Dai's connections to the Honig Group because Mr. Dai and Ms. DeFrancesco's now ex-husband worked together at a separate company that was beneficially owned, in part, by other people with the last name "DeFrancesco." *See id.* Plaintiff pleads no facts indicating that Ms. DeFrancesco had any knowledge of, or ownership in, that company. The attenuated lengths to which Plaintiff goes to link Ms. DeFrancesco to the "Honig Group" demonstrate the weakness of his theory and fall far short of the particularized allegations called for by the PSLRA and well-settled law in this District. *See Scott v. Multi-Amp Corp.*, 386 F. Supp. 44, 70 (D.N.J. 1974) ("Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create a group [under § 13(d)] . . . There must be agreement to act in concert."); *Polaroid Corp. v. Disney*, 698 F. Supp. 1169, 1180 (D. Del. 1988) ("The existence of a limited partnership relationship is not a basis for presuming the parties acted as a group. . . . ") (internal quotation marks and citations omitted), *vacated in part on other grounds*, 862 F.2d 987 (3d Cir. 1988); *Transcon Lines .v A.G. Becker Inc.*, 470 F. Supp. 356, 375 (S.D.N.Y. 1979) ("Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create the group which is deemed to be a statutory person.") (internal quotation marks and citations omitted); *Mgmt. Assistance Inc. v. Edelman*, 584 F. Supp. 1016, 1019 (S.D.N.Y. 1984) (same).

Plaintiff also alleges that Ms. DeFrancesco "concealed . . . [her] control over [RBI's] management and policies," thus "making materially false and misleading filings under Section 13(d)." SAC ¶ 491. But Plaintiff offers no facts as to how Ms. DeFrancesco supposedly exercised such control, which policies she supposedly controlled or changed, or when she undertook any of these acts. These generic assertions are not the particularized facts necessary to state a claim under the federal securities laws. *See In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1418 (3d Cir. 1997) ("boilerplate and conclusory allegations will not suffice" to meet the Rule 9(b) pleading standard); *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) ("Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of securities fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue.") (quoting *In re Burlington*, 114 F.3d at 1422).

### 2.    Plaintiff Fails to Plead That Ms. DeFrancesco Acted With Scienter

Plaintiff also fails to plead that Ms. DeFrancesco's supposed omission of her purported membership in the "Honig Group," or her alleged failure to file an amended Schedule 13D, were done with any intent to deceive or manipulate, as necessary to plead a claim under Rules 10b-5(a), (b), or (c).  Plaintiff's scienter allegations fail for the following reasons:

*First*, Plaintiff's claims are premised on the assertion that Ms. DeFrancesco acted in concert with the "Honig Group" to "pump" the value of RBI stock and then profit from the artificial pricing through undisclosed sales.  The SAC posits that "Riot and its executives"—which did not include Ms. DeFrancesco—"issu[ed] a flurry of press releases, SEC filings, and interviews with television and newspaper journalists" that were "designed to give investors the false impression that Riot was a serious cryptocurrency company."  SAC ¶ 4.  In reality, according to Plaintiff, "Riot's so-called investments in cryptocurrency were . . . related-party transactions with Honig and his associates and entities that were secretly controlled by him."  *Id.*

For instance, Plaintiff alleges that RBI's purchase of a company called Kairos (the "Kairos Transaction") was a "related party" transaction because Honig and Ms. DeFrancesco held minority stakes in Kairos at the time RBI purchased Kairos.  *See, e.g.*, SAC ¶¶ 196-199, 209-210.  But Plaintiff makes the unsupported leap that a "related-party" transaction cannot also be a "serious" investment in cryptocurrency mining: Plaintiff fails to plead misrepresentations

concerning the mining machines acquired in the transaction, that RBI failed to use them to mine bitcoin, or that the potential returns of mining did not justify the purchase price for the machines. Furthermore, and notably, Plaintiff omits from the SAC its previous allegations that the per-unit, retail price of the 1,200 mining machines purchased in the Kairos Transaction was public information, *see* AC ¶¶ 176-177 (ECF No. 73).  As a result, investors could compare the alleged purchase value of approximately $13 million, conveyed in 1,750,001 shares of Riot, *see* SAC ¶ 196, to the retail value of the machines, and calculate any disparity for themselves.  *See also* AC ¶ 172 (alleging the purchase consideration—1,750,001 shares of RBI—had been public since November 3, 2017).  Not only does Plaintiff fail to allege that RBI misrepresented its business model—and therefore fail to allege any Defendant intentionally "pumped" RBI's stock price— but Plaintiff has actively alleged that the terms of the Kairos Transaction were public knowledge, which means they cannot be the basis for an omission.[1]

The remainder of the SAC is similarly devoid of allegations that Defendants "pumped" RBI stock by misrepresenting RBI's business or business model, or by misrepresenting its progress in obtaining bitcoin.  Plaintiff's failure to plead the "pump" portion of the scheme—*i.e.* that Defendants artificially inflated the price of RBI stock—defeats any notion that Ms.

---

[1] Plaintiff points to Honig and Ms. DeFrancesco's simultaneous minority stakes in Kairos, *see* SAC ¶ 260, but offers no allegations of actual conduct on the part of Ms. DeFrancesco concerning Kairos, nor how this investment supports her membership in a group that acted in concert with respect to a different company.  This is the type of threadbare allegation routinely rejected by courts.  *See, e.g.*, Op. at *18 n.20 ("Plaintiff must . . . clearly identify the *particularized* allegations.").  Furthermore, Plaintiff still pleads no reason that Ms. DeFrancesco had a duty to RBI shareholders to disclose information concerning the Coinsquare transaction (for which Plaintiff actually pleads no facts indicating the Ms. DeFrancesco's involvement), the Kairos Transaction, or any other purported related-party transactions.  *See, e.g.*, SAC ¶¶ 188-201; *see also* Apr. Op. at *10 ("While [information concerning related party transactions] may have been helpful to investors had it been disclosed, the failure . . . to make that information available is not actionable absent allegations that [there is] a duty to do so.").

DeFrancesco's failure to make disclosures under Section 13(d) could have been done with an intent to support a "pump-and-dump" scheme or to deceive investors.

*Second*, Plaintiff asserts that Ms. DeFrancesco must have intentionally failed to file an amended Schedule 13D after January 2017 because she previously filed amended Schedules 13D, and therefore understood the requirement.  In fact, Plaintiff alleges that Ms. DeFrancesco filed amended Schedules 13D when her holdings of RBI stock *increased*.  *See* SAC ¶ 337 (chart of 13D filings and holdings).  There is nothing in Ms. DeFrancesco's Schedule 13(d) filing history indicating that she was aware that amended Schedules 13D were required upon the *sale* of RBI stock.  As Plaintiff himself alleges, Section 13(d) is designed to "prevent evasion of the disclosure requirement when two or more persons act together but keep their individual holdings below the reporting threshold."  SAC ¶ 242.  There are no allegations that Ms. DeFrancesco acted to contravene this purpose: Plaintiff pleads expressly that she (and Honig) filed Schedules 13D disclosing accumulations of RBI stock through January 2017.  The more compelling inference on these allegations is that Ms. DeFrancesco did not intentionally fail to file a Schedule 13D, but misconstrued the reporting requirements.

*Third*, as discussed above, the Court noted that Honig's failure to file a Schedule 13D was "not necessarily deceptive by itself," Op. at *15, but only when combined with the alleged history of pump-and-dump schemes and motive and opportunity.  *See id.*  As discussed above, however, Plaintiff offers no meaningful allegations that Ms. DeFrancesco engaged in *any* prior "pump-and-dump" schemes or *any* misconduct of any kind.  *See* Argument § A.1 (explaining, *inter alia*, that Plaintiff failed to allege any misconduct, including in connection with PolarityTE).  And the remaining factor—motive and opportunity—is insufficient by itself to support scienter.  *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 277 (3d Cir. 2009)

("'motive and opportunity' may no longer serve as an independent route to scienter."). Plaintiff's additional assertion—that Ms. DeFrancesco sought to conceal her sales, *see* SAC ¶ 340—effectively assumes away the scienter requirement, since *every* omission necessarily conceals information. And Plaintiff's additional argument that Honig likewise failed to file a Schedule 13D concerning sales of RBI stock, without particularized allegations of coordination with Ms. DeFrancesco—which, as discussed above, are absent—is likewise insufficient to raise a compelling inference that Ms. DeFrancesco was acting with intent to deceive. SAC ¶ 285. Plaintiff's allegations of scienter therefore fail.

### 3.    Plaintiff Fails to Plead Loss Causation

To sustain claims under any provision of Rule 10b-5, Plaintiff must plead "loss causation," *i.e.*, that *each* "act or omission . . . caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4); *see also Nat'l Junior Baseball League v. Pharmanet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 559 (D.N.J. 2010) (Plaintiff must "plead that the very misrepresentation at issue proximately caused them an economic loss.") (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005)).

Plaintiff alleges that Ms. DeFrancesco failed to amend her prior Schedules 13D to disclose sales of RBI stock after January 10, 2017, SAC ¶ 336, and that this alleged omission was disclosed to the market in an RBI Form S-3 filed on January 5, 2018. SAC ¶ 340. But the SAC nowhere pleads that information about Ms. DeFrancesco's sales "was a 'substantial cause' of shareholders' economic losses, or contributed in any way to a decline in Riot's stock price." Op. at *17. Rather, the SAC alleges that the "market reacted negatively" to the filing of the January 5, 2018 Form S-3 because that filing disclosed that RBI had (i) fired its auditor and (ii) purchased bitcoin mining equipment in the Kairos Transaction allegedly at well over its market value. *See* SAC ¶¶ 209-211. In the absence of any allegation of a causal link between

15

the 'corrective disclosure' [through RBI's Form S-3] on January 5, 2018 of [Ms. DeFrancesco's] stock sales and an economic loss that Plaintiff allegedly suffered," Plaintiff has failed to adequately allege loss causation.  Op. at *17.  Furthermore, as discussed above, the economics of the Kairos Transaction had been public information since no later than November 3, 2017, *see supra* Argument § A.2, and therefore could not constitute a new disclosure to the market.  *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (plaintiff must plead that a "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.").

Plaintiff similarly fails to plead when, if ever, Ms. DeFrancesco's purported membership in the "Honig Group" was disclosed to the market, nor whether or how RBI stock reacted to any such disclosure.  Plaintiff therefore likewise fails to plead loss causation relating to any alleged failure to disclose membership in the "Honig Group."

## II.    PLAINTIFF FAILS TO PLEAD THAT MS. DEFRANCESCO IS A CONTROL PERSON OF RBI

To plead a claim under Section 20(a), Plaintiff must allege "(1) an underlying violation by the company; and (2) circumstances establishing defendant's control over the company's actions."  *Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 644–645 (D.N.J. 2003).  "To establish that a defendant is a control person, a plaintiff must demonstrate that the defendant had actual power or influence over the allegedly controlled company."  *Id.* at 645 (citing *In re: MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 940 (D.N.J. 1998) (internal quotation marks and alteration omitted).  The Defendant must also be a culpable participant in the act or acts constituting the violation.  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013).

Plaintiff fails to plead any of these elements.  For the reasons discussed above, and for those discussed in the co-Defendants' motions, Plaintiff fails to plead an underlying violation, and therefore cannot plead liability under Section 20(a).

Second, Plaintiff fails to plead that Ms. DeFrancesco controlled, or could control, RBI. Plaintiff makes the general assertion that "Honig and the other Honig Group members . . . were able to, and did, control the contents of the various reports, press releases, and public filings . . . ."  SAC ¶ 502.  But Plaintiff fails to plead *any* facts supporting Ms. DeFrancesco's control of RBI or its public statements.  Ms. DeFrancesco never held more than a minority stake in RBI, was never an officer or director of RBI, Plaintiff fails to plead that she even communicated with the officers and directors about RBI, and Plaintiff fails to plead that she participated at all—much less culpably—in RBI's public statements (or that she could have).  Plaintiff thus fails to allege that Ms. DeFrancesco "had actual power or influence over" RBI.  *Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 645 (D.N.J. 2003).

## III.    PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND

Plaintiff should not be permitted to amend its complaint as to Ms. DeFrancesco.  As discussed above, the allegations that Ms. DeFrancesco breached Section 13(d) are based on supposed facts concerning her Schedules 13D that were available at the time Plaintiff filed the AC.  That Plaintiff failed to find additional facts between the AC and SAC indicates Plaintiff has pleaded whatever it can, and further opportunity to amend would be futile.

**CONCLUSION**

For the reasons stated above, Ms. DeFrancesco respectfully requests an Order dismissing the Second Amended Complaint as against her, with prejudice, and any further relief the Court deems just and proper.

DATED:   New York, New York          Respectfully submitted,
         February 8, 2021

                                     QUINN EMANUEL URQUHART &
                                       SULLIVAN, LLP


                                     By: */s/ Jaclyn M. Palmerson*
                                          Alex Spiro (*pro hac vice*)
                                          Julia M. Beskin (*pro hac vice*)
                                          Jacob J. Waldman (*pro hac vice*)
                                          Jaclyn M. Palmerson
                                          51 Madison Avenue, 22nd Floor
                                          New York, New York  10010-1601
                                          Telephone:  (212) 849-7000
                                          alexspiro@quinnemanuel.com
                                          juliabeskin@quinnemanuel.com
                                          jacobwaldman@quinnemanuel.com
                                          jaclynpalmerson@quinnemanuel.com

                                     *Attorneys for Catherine DeFrancesco*