# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated, | No. 18-CV-2293 (FLW)(ZNQ) |
| *Plaintiff*, | MOTION DATE: May 3, 2021 |
| v. | ORAL ARGUMENT REQUESTED |
| RIOT BLOCKCHAIN, INC., et al., | |
| *Defendants*. | |

## DEFENDANT JOHN STETSON'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED
## <u>SECOND AMENDED CLASS ACTION COMPLAINT</u>

Matthew M. Oliver
LOWENSTEIN SANDLER LLP
One Lowenstein Dr
Roseland, NJ 07068
Tel.: 212-419-5852
Email: moliver@lowenstein.com

Daniel Walfish
WALFISH & FISSELL PLLC
405 Lexington Avenue 8th floor
New York, NY 10174
Tel.: 212-672-0521
Email: dwalfish@walfishfissell.com

*Attorneys for Defendant John Stetson*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................2

   I.   The SAC Does Not Allege that Stetson Committed Any Deceptive Act or Material Omission ...........................................................................2

      A. Stetson's Small Stake in Riot and the Sale of that Stake Was Fully Disclosed ....................................................................................3

      B. The SAC Fails To Establish that Stetson Was a Member of a "Group," or that His Alleged Omission of the Group Was Material.........................5

   II.   Loss Causation Is Unpled Against Stetson....................................................10

   III.   Scienter Is Not Adequately Alleged Against Stetson....................................13

   IV.   The Section 20(a) Claim Against Stetson Fails............................................15

CONCLUSION ...................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

***Cases***

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ............................................................7

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) .......................................................5

*Biofrontera AG v. Deutsche Balaton AG*,
 No. 18 Civ. 5237, 2020 WL 1489788 (S.D.N.Y. Mar. 27, 2020) ..................... 6-7

*Corenco Corp. v. Schiavone & Sons.*, 488 F.2d 207 (2d Cir. 1973) .......................5

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
 286 F.3d 613 (2d Cir. 2002) ......................................................................7

*Inst'l Investors Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009)...........................13

*Lorenzo v. SEC*, 139 S. Ct. 1094 (2019)..................................................................16

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) ....................................................7, 8

*Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1 (1977) ..................................................6

*Quigley Corp. v. Karkus*,
 No. 09-cv-1725, 2009 WL 1383280 (E.D. Pa. May 15, 2009) .................. 5, 8, 10

*Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49 (1975) ............................................6

*Rosenbaum v. Klein*, 547 F. Supp. 586 (E.D. Pa. 1982)...........................................7

*Scott v. Multi-Amp Corp.*, 386 F. Supp. 44 (D.N.J. 1974)...................................5, 10

*Skeway v. China Natural Gas, Inc.*,
 No. 10-cv-728, 2012 WL 2877645 (D. Del. July 6, 2012)...................................15

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008).....16

*Stratte-McClure v. Morgan Stanley*, 776 F.3d 94 (2d Cir. 2015).............................7

*Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ........................14

*United States v. Bilzerian*, 926 F.3d 1285 (2d Cir. 1991) ........................................7

*Vladimir v. Bioenvision, Inc.*, 606 F. Supp. 2d 473 (S.D.N.Y. 2009) ......................9

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d Cir. 2007).....................................9

**Statutes**

Section 13(d) of the Securities Exchange Act of 1934,
  15 U.S.C. § 78m(d) ........................................................................................ *passim*

Section 16 of the Securities Exchange Act of 1934,
  15 U.S.C. § 78p.......................................................................................................16

**Regulations**

SEC Rule 13d-1, 17 C.F.R. § 240.13d-1 ...................................................................5

SEC Rule 13d-5, 17 C.F.R. § 240.13d-5 ....................................................... 5, 6, 12

SEC Rule 405, 17 C.F.R. § 230.405 .......................................................................15

## **INTRODUCTION**

The only thing John Stetson is accused of in this case is not filing Schedule 13Ds regarding *other people's trades*. Stetson's *own* holdings in Riot Blockchain, Inc. ("Riot" or the "Company") were too small to require an independent Section 13(d) disclosure, and Lead Plaintiff does not contend otherwise. However, because Stetson, in Lead Plaintiff's telling, was a member of a larger "group," he allegedly committed fraud because he did not file Schedule 13Ds reporting his and other Defendants' sales of Riot stock.

The Consolidated Second Amended Class Action Complaint ("SAC") fails to state a claim against Stetson under Rule 10b-5 and the applicable pleading strictures. Stetson's less-than-5% stake in Riot was disclosed to the market, and his intent to sell out of that position was disclosed in advance – meaning there can have been no deception as to his own trades. The SAC also fails to establish that Stetson was a member of a "group." The SAC contains zero in the way of non-boilerplate allegations establishing that Stetson *agreed* with other supposed "group" members to do *anything at all* during the Class Period (the *sine qua non* of a "group"), or even that group members' activities were coordinated in any way. Even if the SAC did not suffer from this incurable flaw (though it does), the omission of Stetson's supposed group membership would have been immaterial given that Stetson never sought to or did exercise any control at Riot during the Class Period.

The SAC also fails to plead loss causation against Stetson on Lead Plaintiff's contrived "missing 13D" theory. Nothing that Stetson is alleged to have omitted caused a drop in Riot's stock price. The SAC is devoid of any allegation of a "corrective disclosure" (*see* ECF No. 166 ("Opinion") at 39) to the market (much less a "corrective disclosure" that impacted price) that Stetson had sold his Riot shares, that there was an investing "group" at Riot, that various group members had sold their shares, or that some form of coordination infected the supposed group's sales of Riot stock. Accordingly, Stetson's supposed "missing 13Ds" (disclosing Stetson's sales, the "group," or the supposed group's sales) cannot have caused a loss to anyone in the proposed class.

Even beyond these defects, the SAC lacks any allegations supporting an inference that Stetson intended to commit fraud with respect to Riot. Finally, the Section 20(a) claim against Stetson also must be dismissed; the SAC wholly fails to establish that Stetson had control over Riot.

## ARGUMENT

### I.    The SAC Does Not Allege that Stetson Committed Any Deceptive Act or Material Omission

The SAC does not establish the basic requirement of any Rule 10b-5 claim – a material misstatement or omission or a deceptive act on Stetson's part.

## A. Stetson's Small Stake in Riot and the Sale of that Stake Was Fully Disclosed

The SAC alleges that Stetson owned a less-than-5% stake in Riot and that the Company's filings disclosed this stake and gave advance disclosure of Stetson's intention to trade out of the position.

On April 20, 2017, Riot filed an initial Form S-3 registration statement for a proposed sale of up to 5,657,161 shares of Riot's stock by certain shareholders of Riot, including Stetson (the "Initial S-3"). SAC ¶ 347; Walfish Decl. Ex. 1 at page 5 of prospectus.[1] The Initial S-3 stated that (i) *before* the proposed sale Stetson (actually Stetson Capital Management, LLC ("SCM"), an entity under Stetson's control[2]), owned 4.99% of Riot's stock, and (ii) Stetson proposed to sell virtually all of these shares. SAC ¶ 347; Walfish Decl. Ex. 1 at page 5 of prospectus (stating that "shares of common stock [to be] beneficially owned [by Stetson] after this offering" was 7,500, compared to 283,400 before the offering).

---

[1] The SAC incorrectly alleges (SAC ¶ 347) that the April 20 filing was a Form S-3/A, that is to say an amendment to a previously filed Form S-3. The Court may take judicial notice of the nature and contents of the Initial S-3 and other SEC filings relied on in the SAC. *See* Stetson's accompanying Request for Judicial Notice.

[2] The SAC proceeds as if there is no relevant distinction between SCM and Stetson himself. Without conceding the correctness of that premise, for purposes of this motion we follow the SAC in treating SCM's shares as if they were Stetson's.

3

On July 19, August 24, and September 25, Riot filed a series of amendments to the Initial S-3, each known as a Form S-3/A filing (the "Amended S-3s").[3] Each of the Amended S-3s contained substantially the same disclosure as to Stetson: that he continued to own almost the identical number of shares listed on the Initial S-3 and that he intended to sell out of substantially all of them.[4]

With Stetson's anticipated exit from its position repeatedly disclosed to the market in advance of when it happened, Lead Plaintiff cannot establish that there was anything deceptive about his sales. The Court previously held that a "deceptive and manipulative act" was alleged against Honig in part because he allegedly breached a requirement to "promptly" disclose his sales *after the fact*. Opinion 34. Had he done so, according to the Opinion, there would have been no deceptive act. It follows *a fortiori* that the disclosure *before Stetson's sales* eliminates the possibility of deception.

---

[3] *See* SAC ¶ 361 & Walfish Decl. Ex. 2 ("Amendment No. 1" to the Initial S-3); SAC ¶ 366 & Walfish Decl. Ex. 3 ("Amendment No. 2" to the Initial S-3); SAC ¶ 369 & Walfish Decl. Ex. 4 ("Amendment No. 3" to the Initial S-3). The SAC at times implies that each of these filings was for a separate offering, *see* SAC ¶ 342 (referring, confusingly, to "each of those four offerings"), but the filings themselves make clear that each is a successive amendment to the Initial S-3 and relates to the same proposed offering.

[4] SAC ¶ 361 & Walfish Decl. Ex. 2 at prospectus p.5; SAC ¶ 366 & Walfish Decl. Ex. 3 at prospectus p.9; SAC ¶ 369 & Walfish Decl. Ex. 4 at prospectus p.9.

### B.  The SAC Fails To Establish that Stetson Was a Member of a "Group", or that His Alleged Omission of the Group was Material

Because Section 13(d) and related rules do not apply to an owner of less than a 5% stake in a corporation's shares, *see* 15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d-1(a), Lead Plaintiff does not and cannot allege that Stetson's sales independently triggered any Schedule 13D requirement. Instead Lead Plaintiff alleges that Stetson failed to file Schedule 13Ds as a member of a supposed "group." SAC ¶¶ 341, 343.[5]

However, the SAC fails to allege a critical prerequisite for a Section 13(d) "group" – an agreement. *See, e.g.*, SEC Rule 13d-5(b)(1), 17 C.F.R. § 240.13d-5(b)(1) (imposing collective disclosure obligation only "when two or more persons *agree to act together . . .*"); *Quigley Corp. v. Karkus*, No. 09-cv-1725, 2009 WL 1383280, at *3 (E.D. Pa. May 15, 2009) ("'There must be agreement to act in concert.'" (citing *Scott v. Multi-Amp Corp.*, 386 F. Supp. 44, 70 (D.N.J. 1974)); *see also Corenco Corp. v. Schiavone & Sons.*, 488 F.2d 207, 217 (2d Cir. 1973) ("absent an agreement . . . a 'group' would not exist.").

Here the SAC contains no non-conclusory allegations that during the Class Period Stetson agreed with anyone to do *anything* in relation to Riot. *Cf. Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007) (under the *lower* standard of Rule 8, to allege

---

[5] In addition to the arguments below, Stetson joins and incorporates by reference Riot's and Barry Honig's arguments explaining why the SAC does not adequately allege a group. *See* ECF No. 192-1 at 12-18; ECF No. 196-1 at 11-13.

a Sherman Act conspiracy – *i.e.* an agreement among the defendants – plaintiff was required to supply "enough factual matter . . . to suggest an agreement was made."). The SAC does not begin to allege coordination on any of the four dimensions delineated in SEC Rule 13d-5(b)(1) and Section 13(d)(3): no coordinated "voting" (Stetson did not vote at all, let alone vote in concert with other Defendants), and no coordinated "acquiring", "holding," or "disposing" of Riot stock. Rather, each supposed group member bought, held, and sold stock at different times and in different quantities. *See* SAC ¶¶ 316-17, 330, 336-340, 342, 347, 357, 361, 366, 369, 374, 383.

Even if the SAC had adequately alleged a group (it does not), the SAC fails to establish materiality. The purpose of Section 13(d) is not to disclose share ownership for its own sake, but to alert the marketplace to *the possibility of a change in control* over a corporation. *See, e.g.*, *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 35 (1977) ("The sole purpose of the Williams Act[6] was the protection of investors who are confronted with a tender offer."); *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 59-60 (1975) (where a large stockholder had failed to file timely Schedule 13Ds but had "not attempted to gain control of" the corporation, "[n]one of the evils to which the Williams Act was directed has occurred or is threatened"); *Biofrontera*

---

[6] The Williams Act added Section 13(d) to the Securities Exchange Act of 1934 in 1968 and 1970.

6

*AG v. Deutsche Balaton AG*, No. 18 Civ. 5237, 2020 WL 1489788, at *7 (S.D.N.Y. Mar. 27, 2020) (Section 13(d) is an "alert system for potential changes in corporate control").[7]

It follows that, where a purpose to effect a change of control is lacking, an alleged group member's failure to file a Schedule 13D is not a material omission.[8] "[A] violation of [mandatory] reporting requirements does not automatically give rise to a material omission under Rule 10b-5." *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000); *see also Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100-01 (2d Cir. 2015) (mere "failure to make a required disclosure [in an SEC filing] is not by itself sufficient to state a claim for securities fraud under Section 10(b)"). Rather, the alleged omission must satisfy the materiality standard of *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), which balances "'both the indicated probability that the [relevant] event will occur and the anticipated magnitude of the event in light of the

---

[7] Lead Plaintiff admits that "'Section 13(d)'s purpose is to alert investors to potential changes in corporate control.'" Reply in Support of Motion for Leave to File [ECF No. 180], at 5 n.8 (quoting *United States v. Bilzerian*, 926 F.3d 1285, 1297 (2d Cir. 1991) (internal quotations omitted)).

[8] Section 13(d) and related rules are not independently actionable in a private damages action, *see, e.g.*, *Rosenbaum v. Klein*, 547 F. Supp. 586, 591 (E.D. Pa. 1982); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 619 (2d Cir. 2002), and Lead Plaintiff previously disclaimed any intent "to assert a private cause of action . . . for a failure to file a Schedule 13D." Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants Dai, Groussman, and Stetson's Motions to Dismiss the CACC [ECF No. 153] at 11 n.13. Yet that is exactly what Lead Plaintiff is now trying to do here.

totality of the company activity.'" *Stratte-McClure*, 776 F.3d at 102-03 (quoting *Basic*, 485 U.S. at 238); *see also Oran*, 226 F.3d at 288 (same). Where a group (or given group member) lacks any control purpose, the "probability" that the group (or the group member) will effectuate a change in control – the relevant event where Section 13(d) is concerned – is essentially zero, and the alleged group member's failure to file a Schedule 13D is by definition immaterial.

Here, the SAC contains no non-boilerplate allegations that during the Class Period Stetson (whether alone or in combination with others) ever exercised control over Riot, intended or sought to exercise control over Riot, helped or sought to help others to exercise control over Riot, or coordinated with anyone to do any of these things.[9] There is, for example, no allegation that Stetson took *any* action, cast *any* vote, had *any* communications, or participated in *any* discussion regarding Riot during the Class Period, much less did these things with a view towards effectuating

---

[9] The closest Lead Plaintiff comes is to allege that Stetson was part of a proposed slate of new directors that Honig and DeFrancesco attempted to nominate as part of a hostile outside bid for control in 2016 when Riot was still known as Venaxis – that is, the year *before* the start of the Class Period. SAC ¶¶ 169, 171, 173. That proposed appointment – which was fully disclosed in Venaxis' SEC filings, *see* ECF No. 188 [SAC] at ECF pages 382-413 – never came about, and Lead Plaintiff does not allege Stetson's involvement in anything of the sort *during* the Class Period. *See Quigley Corp.*, 2009 WL 1383280, at *4-*5 (individual's involvement in discussion of a potential proxy contest a year earlier had "only the most dubious relevance now" and did not mean that, a year later, that individual was part of a "group" staging an actual proxy contest).

a change in control. Although the SAC conclusorily alleges in a header that the outside investors "Acted as an Undisclosed Control Group to Pump-and-Dump Riot Stock," SAC 85; *see also id*. ¶ 2, it wholly fails to link Stetson to any supposed "pump."[10] The SAC therefore simply does not demonstrate that Stetson's alleged failure to file Schedule 13Ds as a "group" member was material (even assuming *arguendo* that he was a member of a "group", which he was not).

This Court has already held that Lead Plaintiff is required to "allege *specific facts that show the false or misleading nature*" of acts claimed as a basis for a Rule 10b-5 claim and Lead Plaintiff's allegations must be "particularized as to each defendant." Opinion 27 n.14, 40 n.19 (emphasis added); *see also Winer Family Trust v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007) (holding that "[t]he PSLRA requires plaintiffs to specify the *role of each defendant*" in an asserted fraud). The SAC contains literally no facts establishing that Stetson formed an agreement to join a group, coordinated his trading with any group members, or had any control (or change-of-control) purpose in relation to Riot. *See Vladimir v. Bioenvision, Inc.*, 606 F. Supp. 2d 473, 495 (S.D.N.Y. 2009) (dismissing claim based on alleged Schedule

---

[10] The Court has previously found that Lead Plaintiff failed to allege that Riot issued any false or misleading statements regarding Riot's business (Opinion 21-27), and the SAC adds nothing in this regard – meaning that Lead Plaintiff has not alleged any actionable "pump," and certainly not one that implicates Stetson.

13D omission where "plaintiffs have pled allegations of a [shareholder's] plan or purpose to change control of [the company at issue] inadequately.").

Lead Plaintiff instead sprinkles his complaint with irrelevant allegations about Stetson's activities at *other* companies (*e.g.*, SAC ¶¶ 83, 96-97, 132-36, 140-41, 154, 158, 159). These allegations are lifted verbatim from an SEC case that pointedly *excludes* Riot (*e.g.*, *id.* ¶¶ 99-131) and/or were in the prior iteration of the complaint (*see* ECF No. 73 ¶¶ 80, 81-102, 105-07, 119-21, 123, 127) and found insufficient there, too. Also irrelevant is the shared office space allegation (SAC ¶¶ 87-88); the Court has already opined that this and the dealings at other companies are seemingly immaterial. *See* Opinion 18-19 n.10 (doubting the materiality of alleged ties that Lead Plaintiff cited in ECF No. 136 at 29-30). *See also Quigley Corp.*, 2009 WL 1383280, at *3 ("'Mere relationship, . . . whether family, personal or business, is insufficient to create a group which is deemed to be a statutory person.'" (citing *Scott*, 386 F. Supp. at 70).

## II.    Loss Causation Is Unpled Against Stetson

A Rule 10b-5 plaintiff is required to "'plead that the very misrepresentation at issue proximately caused them an economic loss.'" Opinion 38. The SAC does not fulfill this requirement for the claims against Stetson – it does not point to any price decline causally related to anything Stetson is alleged to have withheld here.

Insofar as the SAC alleges Stetson did not disclose his *own* trading – there is no allegation that his own trades ever were disclosed *after* they were completed, let alone that such a disclosure resulted in a price decline.[11] *See* SAC ¶¶ 456-66 (loss causation allegations); *see also* Opinion 38-39 (holding that prior complaint failed to plead loss causation for Honig's sales).

Insofar as the SAC alleges (inadequately, *see* Section I above) that Stetson hid his membership in a secret "group" at Riot that plotted in unspecified ways to control the company and/or sell off shares together – the SAC does not explain how this supposed omission *caused a loss*. The SAC is missing any allegation that either the supposedly concealed "group" or coordinated sales of Riot stock by any of the group members ever came to light,[12] let alone produced a decline in the stock price when the information emerged. The SAC thus alleges zero "corrective disclosures" regarding the existence of an investment group at Riot (much less a group that included Stetson) or trades by the "group" or its members as such. SAC ¶¶ 456-66.

Lead Plaintiff may try to hang his hat on the SAC's allegation that on September 7, 2018, the SEC filed the so-called "*Honig* Action," which "finally

---

[11] As noted above, the sales were disclosed *before* they occurred. The SAC does not (and cannot) allege that the filing of the Initial or Amended S-3s disclosing the planned sales caused a drop in Riot's stock price.

[12] They could not have come to light, because there was no group and there were no coordinated sales.

11

reveal[ed] that . . . Honig, O'Rourke, Groussman, and Stetson . . . together had been engaged in the same fraudulent *modus operandi* at Riot as at [three] previous companies." SAC ¶ 465.

But the *Honig* Complaint had nothing to do with Riot and made no mention of Riot or any sales of Riot stock, much less revealed any "*modus operandi* at Riot." The SEC's allegations were limited to a separate set of three companies and describe entirely different conduct from what Plaintiffs allege here in relation to Riot. (In fact, the SEC has expressly *declined* to take any enforcement action in relation to Riot. *See* ECF No. 161-2; Opinion 9 n.6 (taking judicial notice of SEC's determination).)[13] The SEC's Complaint, therefore, was not a "corrective disclosure" as to any sales of Riot stock by Stetson, let alone that those sales were part of "group" activity.

Furthermore, a "group" is necessarily specific to particular plans for a particular company, and of course is defined by its membership.[14] Lead Plaintiff

---

[13] The obvious reason for the September 7, 2018 price drop alleged in the SAC is that the Company's *sitting CEO* (O'Rourke) had just been named a defendant in an SEC enforcement action – an untenable situation for any public company even when, as here, the allegations have nothing to do with the Company itself. *See id*. ¶ 24 (O'Rourke resigned as CEO upon the filing of the SEC's complaint).

[14] *See* 17 C.F.R. § 13d-5(b)(1) ("When two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities *of an issuer*, the group formed thereby shall be deemed to have acquired beneficial ownership, for purposes of sections 13(d) and (g) of the [1934] Act, *as of the date of such agreement*, of all equity securities *of that issuer* beneficially owned by any such persons.") (emphasis added).

appears to contend that the "group" at Riot consisted of Honig, DeFrancesco, Beeghley, O'Rourke, Groussman, and Stetson. *E.g.*, SAC ¶¶ 29, 237, 344. But neither DeFrancesco – who seems to have had among the largest holdings of anyone in the supposed "group" during the Class Period (*see id.* ¶¶ 337, 357) – nor Beeghley (Riot's CEO for much of the Class Period) was even named in the *Honig* Action, and so the filing of the *Honig* Action could not possibly have represented a corrective disclosure that such a "group" existed, let alone that it had secretly invested in Riot.

## III.   Scienter Is Not Adequately Alleged Against Stetson

The SAC does not identify a single action or utterance by Stetson to support the assertion that he intended to deceive anyone. *See Inst'l Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009) (Rule 10b-5 plaintiff must "allege facts giving rise to a 'strong inference' of 'either reckless or conscious'" misbehavior).

Lead Plaintiff suggests that it was somehow deceptive of Stetson to keep his holdings under the 5% filing trigger, and that this was somehow a ploy to help conceal the "group" and its trading. SAC ¶¶ 274, 342. This theory does not compute. In staying under 5%, Stetson avoided – entirely lawfully – incurring the obligations and burdens (including legal fees for initial and amended Schedule 13Ds) associated with being an individual Section 13(d) filer. (He did not avoid disclosure of his 4.99% position, which as discussed in Section I above was set forth in Riot's Initial and Amended S-3s.) But avoiding becoming an *individual* Section 13(d) filer has

13

nothing to do with allegedly concealing the *group* and the *group*'s transactions. Other Defendants here exceeded 5%, filed Schedule 13Ds individually, and are still accused of concealing a group. In fact Lead Plaintiff alleges that Stetson would have done the same had *he* reached 5% (SAC ¶ 342). It follows that Stetson's staying under 5% is not remotely probative of an intent to conceal a group.

By far the most "plausible," "cogent," and "compelling" inference here, *Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007), is that Stetson was aware of his obligations and was trying to *comply with* the securities laws, not to *evade* them – hardly an indication of a culpable mind. In a similar vein, Lead Plaintiff alleges that some years ago *Honig* "circulated" to *Stetson*, "seeking [Stetson's] comments," a draft complaint in which Honig proposed to assert Section 13(d) violations in another case. Stetson was not a party to that case, and the SAC does not say what comments Stetson had, or if he had any. SAC ¶¶ 250, 276. The most this allegation reasonably establishes is the unremarkable proposition that Stetson, a professional investor, was familiar with Section 13(d). But "familiar with Section 13(d)" is of course not the same thing as "intended to deceive the market by violating Section 13(d)."

As for the other scienter allegations against Stetson, they all either concern *other* Defendants' alleged failures to comply with disclosure requirements (*id*. ¶¶ 279, 280), which of course have no bearing on *Stetson*'s state of mind; or they

14

concern dealings at *other* companies (*id.* ¶¶ 275, 277, 278, 281, 282), but these "do not independently support an inference" of scienter in *this* case. Opinion 36.[15]

## IV.    The Section 20(a) Claim Against Stetson Fails

"A plaintiff alleging a Section 20(a) violation must plead facts showing: (1) an underlying violation by the company; and (2) circumstances establishing defendant's control over the company's actions." Opinion 40 (citation and internal quotation marks omitted). *See also, e.g.*, *Skeway v. China Natural Gas, Inc.*, No. 10-cv-728, 2012 WL 2877645, at *1 (D. Del. July 6, 2012) (a Section 20(a) plaintiff "must state with particularity the circumstances of the defendant's control of the primary violator"; "boilerplate and generalities" are insufficient).

Riot's motion papers explain that the SAC fails to plead an underlying violation by Riot. Additionally, the SAC does not plead *any* facts or circumstances establishing Stetson's control over Riot's actions. *See* Section II. above. Stetson was never an officer or director of Riot, and his stake in the company never exceeded 4.99% – a level that does *not* confer the "power to direct or cause the direction of [Riot's] management and policies," 17 C.F.R. § 230.405 (SEC's definition of

---

[15] In fact, of the dozens of other companies that Stetson is alleged to have invested in alongside Honig (SAC ¶ 275), he has been accused of membership in an undisclosed Section 13(d) group at just two of them – by the SEC, which pointedly avoided leveling this accusation for the main company ("Company A") featured in its action. *See* ECF No. 188 Ex. A (SEC Complaint) ¶ 4.

control); *cf.* 15 U.S.C. § 78p(a), (b) (disclosure and disgorgement requirements applicable to 10% or greater shareholders). Stetson played no role, and is not alleged to have played any role, in formulating, influencing, or distributing Riot's public statements. The SAC never explains how Stetson was in a position to control Riot's statements beyond nakedly asserting that he was (*see* SAC ¶ 502), which of course is insufficient.[16]

## CONCLUSION

The SAC's claims against Stetson should be dismissed with prejudice.

---

[16] Additionally, to the extent the SAC alleges that Stetson somehow has *primary* liability under Section 10(b)/Rule 10b-5 for alleged misstatements or omissions in *Riot's* SEC filings pertaining to his *de minimis* Coinsquare investment or to anything else (*e.g.*, SAC ¶¶ 192-93, 226, 280, 282), that theory fails too, as Stetson is not alleged to have had (and in fact had no) involvement in the preparation or issuance of Riot's SEC filings. *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1103 (2019) (an individual who "neither *makes* [as the identified speaker] nor *disseminates* false information" is not culpable under Rule 10b-5); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 158-61 (2008) (no private Rule 10b-5 liability for a third party that entered into transactions alleged to have been improperly disclosed by a public company).

Dated: February 8, 2021           Respectfully submitted,

LOWENSTEIN SANDLER LLP

By:   s/  Matthew M. Oliver
       Matthew M. Oliver
       One Lowenstein Dr
       Roseland, NJ 07068
       Tel.: 212-419-5852
       Email: moliver@lowenstein.com

       Daniel Walfish (*admitted pro hac vice*)
       WALFISH & FISSELL PLLC
       405 Lexington Avenue 8th floor
       New York, NY 10174
       Tel.: 212-672-0521
       Email: dwalfish@walfishfissell.com

       *Attorneys for Defendant John Stetson*