# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL,<br><br>Defendants. | Case No. 18-cv-2293 (FLW) (ZNQ)<br><br>*Document Electronically Filed*<br><br>*ORAL ARGUMENT REQUESTED*<br><br>**DEFENDANT MARK GROUSSMAN'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION TO DISMISS LEAD PLAINTIFF'S CORRECTED CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

| | |
|---|---|
| KEVIN G. WALSH<br>kwalsh@gibbonslaw.com<br>KATE E. JANUKOWICZ<br>kjanukowicz@gibbonslaw.com<br>**GIBBONS P.C.**<br>One Gateway Center<br>Newark, New Jersey 07102<br>Tel:   973.596.4769<br>Fax:  973.639.6470 | PERRIE M. WEINER (*pro hac vice*)<br>perrie.weiner@backermckenzie.com<br>EDWARD D. TOTINO (*pro hac vice*)<br>edward.totino@backermckenzie.com<br>**BAKER & MCKENZIE LLP**<br>10250 Constellation Blvd., Suite 1850<br>Los Angeles, California 90067<br>Tel:   310.201.4728<br>Fax:  310.201.4721 |
| Attorneys for Defendant<br>MARK GROUSSMAN | |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................. ii

I.     INTRODUCTION ............................................................................................... 1

II.    ARGUMENT ........................................................................................................ 3

    A.     **Plaintiff's Sole Theory Against Groussman Is That Groussman Should Have Filed A Schedule 13D Instead Of A Schedule 13G** ..................................................... 3

    B.     **Plaintiff Fails To Allege Loss Causation** ..................................................... 4

    C.     **Plaintiff Fails To Adequately Allege That Groussman Had Any Obligation To File A Schedule 13D Instead Of A Schedule 13G** ............................................. 5

    D.     **Plaintiff Cannot Predicate A 10b-5 Claim Based On Groussman's Alleged Failure To File A Schedule 13D Instead Of A Schedule 13G** ................................. 8

    E.     **A Schedule 13D Would Not Have "Revealed" Any Material Information To The Market** .................................................................................................... 11

    F.     **Plaintiff Fails To Plead Facts To Establish That Groussman Was Part Of An Illegal Investor Group** ............................................................................... 12

    G.     **Plaintiff Fails To Plead Facts To Establish A Deceptive Or Manipulative Act** ... 13

    H.     **Plaintiff Offers No Argument As To Scienter** ............................................ 14

    I.     **Plaintiff Does Not Plead Reliance** ............................................................. 14

    J.     **Plaintiff's Section 20 Claim Fails** ............................................................. 15

III.   CONCLUSION .................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Digital*,
   223 F. Supp. 2d 546 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004) ..................15

*In re DVI, Inc. Sec. Litig.*,
   2010 U.S. Dist. LEXIS 92888 (D.N.J. Sep. 3, 2010) ................................................4

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
   95 F. Supp. 2d 169 (S.D.N.Y. 2000)........................................................................13

*Lerner v. Millenco, LP*,
   23 F. Supp. 2d 337 (S.D.N.Y. 1998)........................................................................13

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
   223 F. Supp. 2d 435 (S.D.N.Y. 2001)......................................................................12

*Morales v. Quintel Ent., Inc.*,
   249 F.3d 115 (2d Cir. 2001)..............................................................................6, 13

*Polanco v. Omnicell, Inc.*,
   988 F. Supp. 2d 451 (D.N.J. 2013) .........................................................................14

*Puddu v. 6D Global Technologies, Inc.*,
   2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) ................................................8, 9, 10

*Rains v. Zale Corp.*,
   2011 WL 3331213 (N.D. Tex. Aug. 1, 2011)............................................................7

*Sec. & Exch. Comm'n v. Honig*,
   2021 WL 276155 (S.D.N.Y. Jan. 27, 2021) ...........................................................10

*SEC v. Jammin Java Corp.*,
   2016 WL 6595133 (C.D. Cal. July 18, 2016).........................................................10

*SEC v. Sierra Brokerage Servs., Inc.*,
   608 F. Supp. 2d 923 (S.D. Ohio 2009) ...................................................................10

*SEC v. Strebinger*,
   114 F. Supp. 3d 1321 (N.D. Ga. 2015)...................................................................10

*United States Sec. & Exch. Comm'n v. Place*,
   2019 WL 634638 (E.D. Pa. Feb. 14, 2019) ............................................................14

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ............................................................................................... 10

**Statutes**

28 U.S.C. § 636(b)(1)(A) ................................................................................................................ 4

Private Securities Litigation Reform Act, 15 U.S.C. §§ 78u-4 .............................................. 1, 3, 13

**Other Authorities**

17 C.F.R. § 240.13d–5(b)(1) (2000) ................................................................................ 6, 7, 12, 14

17 C.F.R. § 240.10b5-1 ............................................................................................................ 8, 14

## I. INTRODUCTION

The Omnibus Opposition, like the SAC, focuses on the alleged wrongdoing of other Defendants, with Groussman discussed as an afterthought, largely in footnotes. And also like the SAC, the Opposition relies heavily on unproven allegations from an SEC complaint involving ***different investments in different companies***, that were not subject to the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4, not litigated by Groussman, and contain no mention of Riot. Even putting aside Plaintiff's almost singular reliance on an irrelevant SEC enforcement action, the Opposition fails to salvage the sole, defective theory of liability asserted against Groussman. That theory posits that Groussman violated SEC filing regulations by filing a Schedule 13G and timely-amended Schedule 13G, rather than a Schedule 13D – a technical issue that does not amount to securities fraud.

The central problem with Plaintiff's theory is that Groussman's investment conduct is entirely unremarkable, and thus Plaintiff struggles mightily to shove a square peg (SEC regulations on Rule 13D) into a round hole (passive, fully-disclosed stock trading). Indeed, Plaintiff did not develop this theory until now, nearly three years after this action was commenced, and does not assert that an alleged technical violation of these rules by Groussman is attributable to anything beyond his lack of knowledge regarding byzantine SEC filing regulations.

1

The SAC does not and cannot allege that Groussman sought to actively conceal his positions in Riot. Instead, multiple, publicly-available SEC filings all reflected the same trading pattern. Groussman – like tens of thousands of other investors in Riot – purchased shares in the Company following its successful transition to blockchain mining, but then began slowly selling those shares as the price of bitcoin fell in late 2017 and early 2018. The SAC offers no additional allegations to transform these straightforward facts into an illicit scheme to defraud investors, much less transform a hyper-technical violation of SEC regulations into securities fraud. The SAC pleads no specific allegations to plausibly allege an agreement between Groussman and Honig to coordinate their purchase and sell orders in Riot. The SAC does not allege that Honig instructed Groussman on when and how to trade shares in Riot. The SAC does not allege any corrective disclosure "revealing" to the market that Groussman should have filed a Schedule 13D. And finally, the SAC does not allege, or even indirectly suggest, that Groussman ever held any intent or aspiration to influence or control Riot and its management.

While Section 13(d) disclosures may be triggered under certain limited circumstances by an agreement to acquire and sell shares as a group to control management, the purpose of Section 13(d) is not to reveal purported "pump and dump" schemes. Rather, the purpose behind Section 13(d) is to alert the marketplace to large rapid aggregations of an issuer's security, which might reflect a potential

change in corporate control. That purpose was not implicated by Groussman's trading in Riot, and the SAC alleges no facts to the contrary. And even if Groussman had filed a Schedule 13D stating that his shares were beneficially owned with Honig, that disclosure still would never have revealed an illicit, multi-layered, cross-border conspiracy like the one alleged in the SAC.

The Opposition either barely addresses – or entirely ignores – the remaining essential elements of Plaintiff's 10b-5 claims. Plaintiff offers no argument as to Groussman's scienter and instead asserts that other Defendants (but not Groussman) were aware of their obligation to file a Schedule 13D. As to loss causation, Plaintiff only points to the SEC enforcement action. Because the SEC enforcement action did not involve Groussman's investments in Riot, it did not "reveal" any purported fraud regarding those investments, much less a purported regulatory violation regarding the non-filing of a Schedule 13D.

Plaintiff's 10b-5 claim against Groussman cannot survive the scrutiny mandated by the PSLRA. Groussman's motion should be granted, and the SAC – now the fifth complaint filed in this case – should be dismissed with prejudice.

## II.     ARGUMENT

### A. Plaintiff's Sole Theory Against Groussman Is That Groussman Should Have Filed A Schedule 13D Instead Of A Schedule 13G

Both the SAC and the Opposition barely contain any references to Groussman. Indeed, Plaintiff's only theory of liability against Groussman is that he

violated 10b-5 by filing a Schedule 13G instead of a Schedule 13D. *See* SAC ¶¶ 264-273; 324-334. Accordingly, Groussman is not similarly situated to other Defendants who, according to the SAC and the Opposition, unlike Groussman allegedly knew of their Schedule 13D filing obligations, engineered a pump-and-dump scheme, communicated with and controlled Riot's management, forced Riot to engage in various corporate transactions, knowingly filed false SEC filings, and were the subject of various media reports regarding their involvement in Riot.[1]

### B. Plaintiff Fails To Allege Loss Causation

A corrective disclosure "must at least relate back to the misrepresentation and not to some other negative information about the company." *In re DVI, Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS 92888, at *24-26 (D.N.J. Sep. 3, 2010) (quoting *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1140 (10th Cir. 2009)). Accordingly, the alleged disclosure here must "relate back" to Groussman's investments in Riot and his non-filing of a Schedule 13D reflecting his purported "beneficial ownership" in Riot. This might include, for instance, Groussman filing a Schedule 13D to supersede or amend his Schedule 13G filings, an announcement by Riot regarding Groussman's purported beneficial ownership in the Company, a newspaper article to the same effect, or an SEC action charging Groussman for

---

[1] The Opposition also repeatedly references Magistrate Judge Quraishi's Order granting leave to amend, as if that Order decides this Motion. Whether Plaintiff "adequately states his claims" is a dispositive determination that this Court must make. *See* 28 U.S.C. § 636(b)(1)(A)

failing to file a Schedule 13D disclosing beneficial ownership in Riot. But none of these events – nor anything close to it – ever occurred.

Plaintiff does not dispute that the news reports identified in the SAC make no mention of Groussman, and therefore cannot possibly constitute a corrective disclosure as to Groussman. *See* Opp. at 50-59. Plaintiff asserts that the complaint filed in the SEC enforcement action is a corrective disclosure because the SEC alleged that Groussman engaged in a pump-and-dump scheme with Honig in companies *other than* Riot. *See id.* at 59 n.55. Unproven allegations about Groussman's trading in these *other* companies does not "relate back" to his decision to file a Schedule 13G instead of 13D in Riot, or his trading in Riot at all.

### C. Plaintiff Fails To Adequately Allege That Groussman Had Any Obligation To File A Schedule 13D Instead Of A Schedule 13G

Plaintiff appears to agree that the standard for filing a Schedule 13D, rather than a 13G, is whether the investor harbors any intent to "chang[e] or influenc[e] the control of the issuer." *See* Opp. at 38. Plaintiff erroneously argues, however, that it "is precisely the case" that Groussman was "hold[ing] the securities [in Riot] for the purpose of effecting change or influencing the control of the issuer." *Id*.

Plaintiff is wrong. The SAC merely offers conclusory allegations that the "Honig Group" "acted in concert to control the management and policies of Riot" (SAC ¶ 325) and that "Groussman falsely identified himself as a passive 13G investor without any intention to influence or control the Company." SAC ¶ 328.

5

The SAC does not allege that Groussman ever voted his shares in any particular way, attempted a takeover of Riot, attempted to influence or control Riot's management, spoke to Riot's management even once about any topic, ever aspired to take control of the company, or ever communicated with the "Honig Group" about controlling or influencing Riot's management. In short, Plaintiff alleges no facts demonstrating that Groussman's trading in Riot implicated the purpose of Section 13D.

This remains true even though Rule 13d–5 defines beneficial ownership by a "group" that includes "[w]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer . . . ." 17 C.F.R. § 240.13d–5(b)(1) (2000). "By requiring the disclosure of information by a potential takeover bidder, the [Williams] Act strikes a careful balance among the interests of the bidder, the incumbent management in defending against such bid by explaining its position, and the shareholders so that they can evaluate the bidders' intentions in deciding whether to throw in their lot with them." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 123 (2d Cir. 2001). Nothing about Groussman's investments in Riot touches upon "takeover bidders" and Plaintiff does not allege that a Section 13D filing here was necessary so that investors could determine whether "to throw in their lot with [takeover bidders]."

And even if an agreement to trade shares together, without takeover ambitions, triggered Schedule 13D requirements, Plaintiff's theory still fails. The

6

SAC alleges no facts that, if true, would permit the legal conclusion that Groussman "agree[d] to act [with others] . . . for the purpose of acquiring, holding, voting or disposing of" Riot common stock. 17 C.F.R. § 240.13d–5(b)(1). Rather, Plaintiff argues that, despite the absence of any factual allegations, the Court should draw inferences of an illicit agreement regarding Riot because the SEC made similar allegations regarding *other* companies. But under that logic, the Court should likewise draw inferences from the SEC's considered decision – after a lengthy investigation in Riot and three other companies – to pursue an enforcement action as to those latter three other companies, but ***not*** Riot. *See* Opp., Ex. 2.

Plaintiff fails to explain why he is entitled to favorable, one-sided inferences based on an SEC enforcement action involving other companies, but no inferences may be drawn as to the SEC's more relevant decision not to include Riot in that or any other enforcement action. Plaintiff simply contends, "[w]hat the SEC may or may not have done is irrelevant to Plaintiff's allegations." Opp. at 39, n.32. But by putting the SEC investigation at issue to establish Groussman's purported wrongdoing, and purported participation in the "Honig Group," Plaintiff has opened the door regarding the true scope and outcome of the SEC's investigation and enforcement action, which specifically does not include Riot. *See Rains v. Zale Corp.*, 2011 WL 3331213, at *6 (N.D. Tex. Aug. 1, 2011) ("the fact that the SEC

7

declined to charge Higgins with fraud supports an inference of nonfraudulent intent").

Here the SEC vigorously investigated Groussman, several of the other investor Defendants, three other companies, and even Riot. If the SEC thought Groussman's or the other Defendants' investments in Riot violated 10b-5, it would have taken no significantly greater effort to include those investments in the enforcement action that Plaintiff repeatedly references. Clearly, the SEC's decision was not guided by abstract determinations on conserving resources, and the Court should take this into consideration in deciding this Motion. Plaintiff should not be able to have his cake and eat it too by basing his entire case against Groussman on actions by the SEC but disregarding the one action by the SEC that is directly on point – the decision not to pursue any claims relating to Riot.

### D. Plaintiff Cannot Predicate A 10b-5 Claim Based On Groussman's Alleged Failure To File A Schedule 13D Instead Of A Schedule 13G

While there may be circumstances in which a failure to file a Schedule 13D constitutes a violation of Rule 10b-5, those circumstances do not exist here. Plaintiff's cases are not to the contrary. All but one of the civil actions cited by Plaintiff involve takeover attempts, proxy contests, and similar efforts to exercise control over the issuer. *See* Opp. at 22-23. The only civil action outside this context is *Puddu v. 6D Global Technologies, Inc.*, 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021). But the facts of *Puddu* are far afield from the facts alleged here.

In *Puddu*, defendant Benjamin Wey was a single investor in the issuer, 6D, acted as the "unofficial CEO" of 6D, and allegedly held 46% of 6D secretly through a Chinese-based investment bank. *Puddu* did not involve an alleged "investor group," and thus the court had no occasion to determine whether the complaint alleged facts establishing an agreement by a group of investors. Nor did Wey publicly disclose his holdings in 6D via a Schedule 13G or other SEC filings.

Rather, the central objective of Wey's alleged scheme was to hide his relationship with 6D completely. Thus, he is alleged to have "actively conceal[ed]" his holdings, and the concealment was so critical to the alleged scheme that a 6D executive "instructed other 6D employees not to discuss or mention Wey in any emails, except in an emergency, and to use a code word to refer to Wey." *Id.* at *2. Wey's decision to not file a Schedule 13D "was consistent with the other allegedly deceptive efforts to hide his relationship to 6D." *Id*. at *6. Further, as the "unofficial CEO," Wey actively engaged in controlling and influencing management, personally reviewing drafts of the company's SEC filings, designing the company's capital market strategy, selecting the company's executives, auditors, and lawyers, and even preparing the company's document retention policy. *See id*. at *9. Thus, Wey did indeed intend to exercise control and influence company management, while at the same completely concealing his role. Nothing remotely close to that is alleged here as to Groussman.

Also distinguishable are Plaintiff's citations to decisions involving federal prosecutions or SEC enforcement actions. In *United States v. Bilzerian*, 926 F.2d 1285, 1297 (2d Cir. 1991), the defendant was convicted on nine counts of securities fraud and, similar to the defendant in *Puddu*, secretly accumulated stock through a nominee. While the four SEC actions cited by Plaintiff involved alleged "pump and dump" schemes, only two involved alleged groups, and in both decisions, the SEC adequately alleged or adduced clear evidence of an illicit agreement to coordinate trading in the issuer's stock. *See SEC v. Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d 923, 956-60 (S.D. Ohio 2009) (defendants pooled their money to purchase shares which they then apportioned amongst themselves); *SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *18 (C.D. Cal. July 18, 2016) (SEC supported its claim with specific factual allegations of "coordinated activity among the defendants," including that timing of defendants' sales coincided with one another and volume and price spikes). In *Sec. & Exch. Comm'n v. Honig*, 2021 WL 276155, at *7 (S.D.N.Y. Jan. 27, 2021), the remaining defendant – who is not a defendant in this case – did not argue the SEC failed to plead the existence of a group. Finally, in *SEC v. Strebinger*, 114 F. Supp. 3d 1321 (N.D. Ga. 2015), the defendant actively concealed his investment position in the issuer by trading via Swiss accounts, while hiring research firms to promote the stock. *Id.* at 1325.

### E. A Schedule 13D Would Not Have "Revealed" Any Material Information To The Market

The SAC alleges that, by not filing a Schedule 13D "disclosing his membership in a group," Groussman "further conceal[ed] from the market the size of the Honig Group's position and coordination." SAC ¶ 325. But the SAC does not allege that the purported concealment of an alleged agreement to purchase and sell shares together in Riot inflated the price of Riot's stock. Instead, Plaintiff alleges that Riot's inflated stock price was the result of Honig's surreptitious control of Riot, management's "hype" of the company "to give investors the false impression that Riot was a serious cryptocurrency company," and Riot's investment in related-party transactions with entities controlled by Honig and his "associates." *See* SAC ¶¶ 4, 8, 233. A Schedule 13D would not have revealed this to the market. At most, it would only have disclosed that Groussman agreed to purchase and sell shares together with other alleged beneficial owners, assuming such an agreement ever existed or was even adequately pled by in the SAC (it was not).

The SAC also alleges that by filing a Schedule 13G instead of Schedule 13D, Groussman avoided "promptly" disclosing his sales of Riot stock. SAC ¶ 333. But as the SAC itself demonstrates, SEC filings in April, July, August, September and October 2017, and then in January and February of 2018, fully and regularly disclosed Groussman's position in Riot. *See* SAC ¶ 330. Plaintiff also fails to explain how more "prompt" disclosures of Groussman's sales would have been material to

the market. For instance, the SAC alleges that Groussman "conceale[d]" his stock sales by waiting until February 15, 2018, to file an amended Schedule 13G, instead of filing a Schedule 13D weeks earlier.[2] But Plaintiff does not allege that Riot's stock price declined in response to that amended Schedule 13G. Accordingly, there is no reason to conclude that a few weeks' earlier disclosure of Groussman's sales would have been material to the market.

### F. Plaintiff Fails To Plead Facts To Establish That Groussman Was Part Of An Illegal Investor Group

Even assuming that an agreement to buy and sell stock together with other investors triggers Schedule 13D obligations, the SAC pleads no facts to establish that Groussman ever entered such an agreement. Plaintiff argues that circumstantial evidence and inferences alone – in the form of Defendants' alleged trading history in other companies – suffices to establish the existence of an agreement. Plaintiff is wrong. Plaintiff must still plead facts to "specify how Defendants acted together with a common objective to acquire, hold, vote, or dispose of [Riot] stock." *Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 449 (S.D.N.Y. 2001) (allegations that defendants invested in other companies in the past, and engaged in similar unlawful conduct in other companies, insufficient to establish an agreement).

---

[2] As the SAC concedes, Rule 13d-2(b), permits amendment of a Schedule 13G "[45] days after the end of the calendar year."

The cases cited by Plaintiff are not to the contrary. While those decisions note the defendants' prior trading history, they also discuss numerous other factors that were dispositive of whether a group was established. *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 125-26 (2d Cir. 2001) (existence of written agreement evidenced agreed purposes under Section 13(d)); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F. Supp. 2d 169, 175 (S.D.N.Y. 2000) (plaintiff alleged that defendants held "extensive communications" regarding their plans with the issuer, and defendant had made admissions in separate pleading indicating its goal was to acquire control of the issuer); *Lerner v. Millenco, LP*, 23 F. Supp. 2d 337, 344 (S.D.N.Y. 1998) (complaint alleged that one member reduced ownership "by the exact same percentage" as another over same time period, and that all members of group specifically agreed to particular modification of terms to their securities). Other decisions cited by Plaintiff pre-date the PSLRA, and thus did not apply heightened pleading standards. *See* Opp. at 25.

### G. Plaintiff Fails To Plead Facts To Establish A Deceptive Or Manipulative Act

Plaintiff alleges no "manipulative" conduct by Groussman, and his only alleged deceptive misconduct here – his decision to file a Schedule 13G instead of a 13D – are purported misrepresentations and omissions. As such, they cannot establish scheme liability. "[C]ourts within the Third Circuit 'premise scheme liability on misconduct separate from misrepresentations and omissions violating

13

Rule 10b-5(b).'" *United States Sec. & Exch. Comm'n v. Place*, 2019 WL 634638, at *12 (E.D. Pa. Feb. 14, 2019).

### H. Plaintiff Offers No Argument As To Scienter

The Opposition fails to offer any argument that the SAC adequately pleads scienter against Groussman, effectively conceding that it does not. *See* Opp. at 29-34; *Polanco v. Omnicell, Inc.,* 988 F. Supp. 2d 451, 465 (D.N.J. 2013) ("[The] opposition does not address this specific argument . . . and . . . [therefore] concedes [it]."). Indeed, while Plaintiff argues that certain defendants "were specifically aware of [their] disclosure obligations under Section 13(d)," neither the Opposition nor the SAC even suggest Groussman was likewise aware. Accordingly, there are no allegations to suggest that, to the extent Groussman was required to file a Schedule 13D, his failure to do so was anything more than a mistake attributable to the complexity of U.S. securities regulations. Indeed, Plaintiff himself did not happen upon this purported, novel violation of the securities laws until now. In the first four iterations of the operative complaint in this action, Plaintiff never alleged that Groussman's trading triggered an obligation to file a Schedule 13D.

### I.  Plaintiff Does Not Plead Reliance

Plaintiff's only argument as to reliance is to purposefully conflate Groussman with Honig. Plaintiff argues that, as the Court concluded with respect to Honig in its prior order, Groussman likewise had "had a duty to 'promptly' disclose his sales of

Riot's stock by filing an amended schedule with the SEC." Opp. at 59, n.54. But the market was well-aware of Groussman's sales through multiple SEC filings, and the SAC does not allege that the purported timing of those disclosures has had any impact on Riot's stock price.

### J. Plaintiff's Section 20 Claim Fails

Because the SAC fails to allege sufficient facts to establish a primary violation of the securities laws by Riot, Plaintiff's Section 20 claim necessarily fails. *See In re Digital*, 223 F. Supp. 2d 546, 561-63 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004). Further, Plaintiff's only argument in support of his Section 20 claim against Groussman is that Groussman "also exercised control as members of the Honig Group, who represented an undisclosed control group that beneficially owned and controlled more than 55% of Riot's common stock during the Class Period." Opp. at 60. In addition, "to establish controlling person liability under [Section 20(a)], a defendant must possess 'actual control over the transactions in question.'" *Id.* at 561. As to Groussman, the SAC is silent, alleging nothing whatsoever.

## III. CONCLUSION

For the foregoing reasons and those stated in his Opening Memorandum, Groussman respectfully requests that this Court dismiss this action with prejudice.

Dated: April 26, 2021

          By:   s/ Kate Janukowicz
                Kevin G. Walsh, Esq.
                Kate E. Janukowicz, Esq.
                **GIBBONS P.C.**
                One Gateway Center
                Newark, New Jersey 07102-5310
                Telephone: (973) 596-4500
                kwalsh@gibbonslaw.com
                kjanukowicz@gibbonslaw.com

                **BAKER & MCKENZIE LLP**
                Perrie M. Weiner (*pro hac vice*)
                perrie.weiner@bakermckenzie.com
                Edward D. Totino (*pro hac vice*)
                Edward.totino@bakermckenzie.com
                **BAKER & MCKENZIE LLP**
                10250 Constellation Blvd., Suite 1850
                Los Angeles, CA 90067
                Tel:    310.201.4728
                Fax:   310.201.4721

              *Attorneys for Defendant Mark Groussman*