# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. McGONEGAL,<br><br>    Defendants. | Civil No. 3:18-CV-02293(FLW)(ZNQ)<br><br>MOTION DATE:  May 3, 2021<br><br>**ORAL ARGUMENT REQUESTED** |

## REPLY BRIEF IN SUPPORT OF INDIVIDUAL DEFENDANTS' JOINDER AND MOTION TO DISMISS THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*RIOT BLOCKCHAIN, INC., JOHN O'ROURKE, AND MICHAEL BEEGHLEY*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................1

II.    THE SECTION 10(B) CLAIM SHOULD BE DISMISSED........................2

    A.    Allegations of Investments in Companies Other than Riot Do Not Support a Strong Inference of Scienter ........................................2

        1.    Lead Plaintiff's Allegations Relating to Other Issuers Do Not Save the SAC From Dismissal............................................2

        2.    Allegations Related to the *Honig 13(d) Action* Are Insufficient ..................................................................................4

        3.    ..................................................................................4

    B.    O'Rourke's Departure from Riot Does Not Support a Strong Inference of Scienter ..........................................................................5

    C.    . ....................................................................................................5

    D.    O'Rourke's Stock Sales Do Not Establish a Strong Inference of Scienter ...............................................................................................7

    E.    Lead Plaintiff's Other Allegations Do Not Establish that O'Rourke and Beeghley Had Anything More Than a Personal Relationship With Certain Defendants................................................10

    F.    Beeghley's Position at Riot Cannot Support Lead Plaintiff's Scienter Allegations ..........................................................................11

    G.    None of the Scienter Allegations in the SAC Relate to the Alleged Omissions Pertaining to the Related Party Transactions .....13

    H.    Non-Fraudulent Inferences are More Cogent and Compelling than Any Fraudulent Inferences .........................................................14

III.    THE SECTION 20(A) CLAIM SHOULD BE DISMISSED .......................15

IV.    CONCLUSION...........................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re Aceto Corp. Sec. Litig.*,
No. 2:18-cv-2425-ERK-AYS, 2019 U.S. Dist. LEXIS 131675
(E.D.N.Y. Aug. 6, 2019)......................................................................................12

*Bldg. Trades United Pension Tr. Fund v. Kenexa Corp.*,
No. 09-2642, 2010 U.S. Dist. LEXIS 102729
(E.D. Pa. Sep. 27, 2010) ........................................................................................9

*Brauser v. Sanders Morris Harris, Inc.*,
No. 2015-11227 (Tex. Dist. Ct. Feb. 26, 2015)....................................................4

*Brendon v. Allegiant Travel Co.*,
412 F. Supp. 3d 1244 (D. Nev. 2019)...................................................................9

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004) ..................................................................8

*Burt v. Maasberg*,
CIV.A. No. ELH-12-0464, 2013 WL 1314160
(D. Md. Mar. 31, 2013)......................................................................................2, 3

*Burt v. Maasberg*,
CIV.A. No. ELH-12-0464, 2014 WL 1291834
(D. Md. Mar. 28, 2014).............................................................................3, 10, 11

*Fox Int'l Relations v. Fiserv Sec. Inc.*,
490 F. Supp. 2d 590 (E.D. Pa. 2007)..................................................................15

*Frederick v. Mechel OAO*,
475 F. App'x 353 (2d Cir. 2012) ........................................................................12

*GSC Partners CDO Fund v. Washington*,
368 F.3d 228 (3d Cir. 2004) ...............................................................................11

*In re Heckmann Corp. Sec. Litig.*,
869 F. Supp. 2d 519 (D. Del. 2012)......................................................................6

# TABLE OF AUTHORITIES
(*continued*)

**Page(s)**

*In re Hertz Glob. Holdings, Inc.*,
  905 F.3d 106 (3d Cir. 2018) ..............................................................................6, 9

*In re Hutchinson Tech., Inc. Sec. Litig.*,
  536 F.3d 952 (8th Cir. 2008) ....................................................................................4

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
  251 F. Supp. 3d 596 (S.D.N.Y. 2017) ...................................................................12

*Janbay v. Canadian Solar, Inc.*,
  No. 10 CIV. 4430, 2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013),
  *aff'd sub nom. Tabak v. Canadian Solar, Inc.*, 548 F. A'ppx 24
  (2d Cir. 2013) ........................................................................................................10

*Kennilworth Partners L.P. v. Cendant Corp.*,
  59 F. Supp. 2d 417 (D.N.J. 1999) ..........................................................................15

*Log on Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
  223 F. Supp. 2d 435 (S.D.N.Y. 2001) ...............................................................3, 11

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ..................................................................................8

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010) ........................................................................10

*In re Par Pharm. Sec. Litig.*,
  No. 06-cv-3226 (PSG), 2008 WL 2559362 (D.N.J. June 24, 2008) ...................13

*In re Par Pharm. Sec. Litig.*,
  No.CIV.A. No. 06-CV-3226 (PGS), 2009 WL 3234273
  (D.N.J. Sept. 30, 2009) ............................................................................................6

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013) ...................................................................................12

*Ressler v. Liz Claiborne, Inc.*,
  75 F. Supp. 2d 43 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 460
  (2d Cir. 1999)...........................................................................................................8

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Rubenstein v. Int'l Value Advisers, LLC,*
   363 F. Supp. 3d 379 (S.D.N.Y. 2019), *aff'd,* 959 F.3d 541
   (2d Cir. 2020)..................................................................................2

*In re Salomon Analyst Winstar Litig.,*
   2006 WL 510526 (S.D.N.Y. Feb. 28, 2006) ........................................5

*Scott v. MULTI-AMP Corp.,*
   386 F. Supp. 44 (D.N.J. 1974)...........................................................13

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.,*
   No. 1:12-CV-00993, 2016 WL 466958 (M.D. Pa. Feb. 8, 2016)....................6, 7

*SEC v. Honig,*
   No. 18 CIV. 8175 (ER), 2020 WL 906383
   (S.D.N.Y. Feb. 25, 2020)..................................................................3, 4

*SEC v. Lucent Techs., Inc.,*
   363 F. Supp. 2d 708 (D.N.J. 2005)....................................................2, 4

*In re Suprema Specialties, Inc. Sec. Litig.,*
   438 F.3d 256 (3d Cir. 2006) ..............................................................8

*In re Vantive Corp. Sec. Litig.,*
   283 F.3d 1079 (9th Cir. 2002), *abrogated on other grounds by*
   *S. Ferry LP v. Killinger*, 542 F.3d 776 (9th Cir. 2008) ........................9

*Vogel v. Sands Bros. & Co.,*
   126 F. Supp. 2d 730 (S.D.N.Y. 2001) ................................................9

## I.    INTRODUCTION

The Opposition does nothing to revive Lead Plaintiff's deficient allegations of scienter with respect to Beeghley and O'Rourke.[1]  The SAC alleges that Beeghley and O'Rourke defrauded Riot investors (*i.e.*, acted with scienter) by facilitating a "pump-and-dump" scheme.  However, after the Court rejected Lead Plaintiff's theory that Beeghley and O'Rourke "pumped" Riot stock by touting the Company's investments in blockchain technology, the SAC offers no new allegations establishing a coherent theory of securities fraud.   Put simply, there are no allegations demonstrating the "pump" of Riot's stock.

Lead Plaintiff, instead, contends that O'Rourke and Beeghley "pumped" Riot's stock by ***failing to disclose*** coordinated activity and discrete related party transactions.  But Lead Plaintiff does not allege with particularity facts that amount to a cogent and compelling inference that O'Rourke and Beeghley engaged in any fraudulent conduct that satisfy the exacting pleading requirements of the PSLRA. The claims should therefore be dismissed with prejudice.

---

[1] Capitalized terms not defined herein are given the meaning assigned to them in the Memorandum of Law in Support of the Individual Defendants' Joinder and Motion to Dismiss the Consolidated Second Amended Class Action Complaint for Violation of the Federal Securities Laws, Dkt. 193-1 (the "Individual Defendants' Motion").

## II.     THE SECTION 10(B) CLAIM SHOULD BE DISMISSED.

### A.     Allegations of Investments in Companies Other than Riot Do Not Support a Strong Inference of Scienter.

#### 1.     Lead Plaintiff's Allegations Relating to Other Issuers Do Not Save the SAC From Dismissal.

Lead Plaintiff relies primarily on allegations unrelated to Riot to establish scienter.  (Opp. at 11 ¶¶ a, b, e, f, g, h; *id*. at 12 ¶¶ a, b.)  For example, Lead Plaintiff pulls allegations directly from a SEC complaint to allege that O'Rourke invested in 75 issuers ***unrelated to Riot*** in which certain other defendants also made investments.  As set forth in the Individual Defendant's Motion, the fact that individuals invest together in other companies does not establish an intent to defraud investors ***at Riot***.  (*See* Individual Defendants' Motion, Dkt. 193-1, at Section III.B.5.)  *See Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 392 (S.D.N.Y. 2019), *aff'd*, 959 F.3d 541 (2d Cir. 2020) (must show an intent to pool investments of a particular issuer).  "[T]here must be evidence that indicate[s] an intention to act in concert ***over and above the prior and continuing relationships*** between the various parties.'"  *Burt v. Maasberg* (*Burt I*), CIV.A. No. ELH-12-0464, 2013 WL 1314160, at *17 (D. Md. Mar. 31, 2013); *Burt v.*

Maasberg (*Burt II*), CIV.A. No. ELH-12-0464, 2014 WL 1291834, at *18 (D. Md. Mar. 28, 2014) (emphasis added) (citations omitted).[2]

Although the Opposition relies heavily on *SEC v. Honig*, the case provides no cogent or compelling inference that O'Rourke or Beeghley acted with scienter.[3] First, the case has nothing to do with Riot. *See SEC v. Honig*, No. 18 CIV. 8175 (ER), 2020 WL 906383, at *12 (S.D.N.Y. Feb. 25, 2020); *see also Log on Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 449 (S.D.N.Y. 2001) (allegation that two of the defendants previously jointly invested in companies was insufficient to sustain a claim). In fact, *Honig* held the SEC sufficiently stated a claim only after offering allegations describing negotiations and an ultimate deal between the defendants pertaining to the manipulation of the stock ***of the company at issue in the case***. *Honig*, 2020 WL 906383, at *12. Here, unlike the allegations in *Honig*, Lead Plaintiff does not plead factual allegations establishing concerted

---

[2] Lead Plaintiff contends that Riot overlooked *Burt II*. However, both opinions explicitly hold that "there must be evidence that indicate[s] an intention to act in concert ***over and above the prior and continuing relationships*** between the various parties.'" *Burt I*, 2013 WL 1314160, at *17; *Burt II*, 2014 WL 1291834, at *18 (emphasis added) (citations omitted). Moreover, the plaintiffs in *Burt II* explicitly alleged a specific value the company was able to retain by not disclosing the ownership change, which were sufficient to support scienter. 2014 WL 1291834, at *22. No such motive allegations supporting scienter are alleged here.

[3] Lead Plaintiff wrongly connects this case to Beeghley, who was not a defendant—and not even mentioned—in this case. (*See* Opp. at 38.)

group activity **at Riot**, let alone that O'Rourke or Beeghley knew that information in 2017.[4]

Lead Plaintiff's reliance on the Court's denial in *SEC v. Honig* of the defendant's motion to dismiss is also unavailing because the strict pleading requirements imposed by the PSLRA requiring Lead Plaintiff to plead fraud with particularity are not required in cases brought by the SEC.  *See SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005) (PSLRA does not apply to cases brought by the SEC).   It is, thus, inappropriate—on multiple levels—to compare the allegations in *SEC v. Honig* with the allegations here.  By doing so, Lead Plaintiff only serves to underscore the SAC's deficiencies.

        2.    <u>Allegations Related to the *Honig 13(d) Action* Are Insufficient.</u>

Lead Plaintiff cites *Brauser v. Sanders Morris Harris, Inc.*, No. 2015-11227 (Tex. Dist. Ct. Feb. 26, 2015) (the "*Honig 13(d) Action*") to argue that O'Rourke was "specifically aware of his disclosure obligations under Section 13(d)."  (Opp. at 30.)  This allegation is conclusory.  Lead Plaintiff does not establish that O'Rourke's general awareness of a regulatory obligation transforms into a cogent and compelling inference that O'Rourke had specific knowledge that Honig,

---

[4] Curiously, Lead Plaintiff attempts to revive the terminated SEC investigation against Riot by speciously twisting the words of the SEC's letter to O'Rourke and Honig that he himself admits are "boilerplate."  (Opp. at 38, fn. 19.)  The law holds that a dismissed SEC investigation does not meaningfully contribute to an inference of scienter at the pleading stage.  *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 962 (8th Cir. 2008).

Groussman, Stetson, and DeFrancesco were working together as an investor group that required disclosure under Section 13(d).  There is no connection.

Indeed, the *Honig 13(d) Action* had nothing to do with Riot; it was a proceeding filed by Honig against an unrelated company in which Honig had invested.  Lead Plaintiff hinges the entire argument on the allegations that O'Rourke discussed with Honig and Stetson their "respective understandings of the requirements imposed by Section 13(d) via emails with each other when they exchanged drafts of the complaint in the *Honig 13(d) Action*."  (*Id.* at 23.)  Nothing in the SAC (or in the Opposition) shows how O'Rourke, in allegedly understanding the general requirements under Section 13(d), knew that certain individuals were acting together as a group triggering those requirements with respect to Riot.

### B.  O'Rourke's Departure from Riot Does Not Support a Strong Inference of Scienter.

Continuing the tactic of relying on unrelated events to allege scienter, Lead Plaintiff argues that O'Rourke resigned the day after the SEC initiated the *Honig Action*, which, again, did not involve Riot.[5]  (SAC ¶ 91.)  If any reasonable

---

[5] Lead Plaintiff only conclusorily asserts that O'Rourke is barred from issuing penny stocks without addressing (i) that the bar resulted from a proceeding that had nothing to do with Riot and (ii) O'Rourke settled with the SEC without admitting or denying the SEC's allegations.  (*See* Carlton Decl., Ex. P.)  *See In re Salomon Analyst Winstar Litig.*, 2006 WL 510526, at *8 (S.D.N.Y. Feb. 28, 2006) (rejecting

inference can be made about the circumstances of O'Rourke's resignation, it is that O'Rourke decided to focus on the defense of the SEC matter and not allow it to distract from his responsibilities at Riot.  It does not create a cogent and compelling inference that O'Rourke made any misstatements or omissions specifically about Riot.  Lead Plaintiff is required to set forth "particularized allegations connecting the departure[ ] to the ***alleged fraud***" at issue, not some unrelated alleged fraud.  *In re Hertz Glob. Holdings, Inc.*, 905 F.3d 106, 118 (3d Cir. 2018) (emphasis added).

This is precisely why Lead Plaintiff's legal authority does not help the scienter allegations.  In all three cases cited by Lead Plaintiff, the plaintiff had already alleged facts supporting a strong inference of scienter, so that plaintiff was able to connect the resignation of the company's officer(s) to the purported fraud at issue in the cases.[6]  Here, unlike in the cases cited in the Opposition, Lead Plaintiff

---

attempt to plead scienter by citing to a settlement in which the defendant did not admit to any allegations).

[6] *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, No. 1:12-CV-00993, 2016 WL 466958, at *5 (M.D. Pa. Feb. 8, 2016) (plaintiff presented confidential witnesses who alleged observations about the failures of internal controls, the company's own admission regarding those failures, and the timing and remedies required by enforcement actions, among other allegations); *In re Heckmann Corp. Sec. Litig.*, 869 F. Supp. 2d 519, 541 (D. Del. 2012) (defendant demanded the other defendant with which it was merging to restate its tax liability, indicating both defendants' knowledge of the reporting discrepancies); *In re Par Pharm. Sec. Litig.*, No.CIV.A. No. 06-CV-3226 (PGS), 2009 WL 3234273, at *7 (D.N.J. Sept. 30, 2009) (confidential informants established that the defendants elected to use

does not offer confidential witness statements, internal documents, or any other factual allegations suggesting O'Rourke and Beeghley were aware and knowingly participated in a fraudulent scheme at Riot.[7]

### D.    O'Rourke's Stock Sales Do Not Establish a Strong Inference of Scienter.

In Lead Plaintiff's previous attempt to state a claim and support his deficient scienter allegations, Lead Plaintiff tried to rely on O'Rourke's stock sale that occurred *after* claims of Riot's purported illegitimacy as a blockchain company had already publicly surfaced in news articles.  (*See* CCAC (Dkt. No. 73.) ¶¶ 299, 301, 304; *see also* Opinion (Dkt. 166) at p.7.)  In fact, the CCAC even highlighted that the stock price fell 34.75% ***after*** these claims were published and ***prior*** to O'Rourke's sale.  (*Id*. at ¶ 304.)

Lead Plaintiff omits from the SAC these fatal facts alleged in the CCAC; instead, Lead Plaintiff focuses on the allegation that O'Rourke's sale occurred

---

Excel sheets that were manipulated by the defendants rather than the more accurate reports and that defendants failed to write off inventory, despite the need to do so).

[7] Importantly, the court in *Orrstown* noted that the timing of the resignation of senior management was only a "potential factor" in the scienter analysis.  2016 WL 466958, at *5.  Moreover, the sufficiency of the allegations in *Orrstown* were examined through the lens of a motion for leave to amend, which, of course, involves a different and less stringent standard.  *Id*.  The court specifically held, not that the plaintiff had sufficiently pleaded scienter, but that it could not conclude that permitting an amendment would be futile because it could not conclude at the time that it failed to raise an inference of scienter.  *Id*.  The court further noted that it "ma[de] this finding for purposes of [that] motion only."  *Id*. at n.3.

"after the market closed on the day before New Year's holiday weekend" (Opp. at 33) to suggest he chose a popular day "to avoid raising attention." (*Id.*)  Of course, this overlooks the equally, if not more, compelling inference that O'Rourke was simply one of the many stockholders seeking to sell stock on the last day of the year for tax purposes. *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (stock sales were not "unusual" where they demonstrated "a consistent pattern of trading undertaken primarily . . . to pay taxes").[8]  Indeed, Lead Plaintiff acknowledges in the SAC that O'Rourke's purpose for selling the stock was "to cover tax obligations."  (SAC ¶ 422.)

The circumstances surrounding O'Rourke's sale weigh against an inference of scienter.  For example, courts consider: (1) the profit made; (2) the quantity of stock sold; (3) the ratio of stock sold compared to the amount retained; (4) the number of insiders who sold stock; (5) whether the sales were "normal and routine"; and (6) "whether the profits were substantial relative to the seller's ordinary compensation." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 277 (3d Cir. 2006) (citation omitted).  First, O'Rourke sold less than 10% of his overall stock position.  (SAC ¶ 422.) *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) (no scienter even when one defendant

---

[8] *See also Ressler v. Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 60 (E.D.N.Y. 1998) (recognizing that a stock sale that coincides with an impending tax increase may weigh against an inference of scienter), *aff'd*, 189 F.3d 460 (2d Cir. 1999).

sold 37% of his stock holdings and another sold 100%).  Second, the profits from O'Rourke's sales were only approximately $870,000, compared to the $3 million O'Rourke received in compensation in 2017.  (SAC ¶ 24.)  Third, the Class Period is 15 months long—Lead Plaintiff would be hard-pressed to establish that it was unusual for an officer to sell stock sometime within this period.  *In re Hertz*, 905 F.3d at 120; *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) (inference of scienter lessened due to "unusually long class period of sixty-three weeks [fifteen months]"), *abrogated on other grounds by S. Ferry LP v. Killinger*, 542 F.3d 776 (9th Cir. 2008).  All of these factors taken together more strongly suggest an inference of non-fraudulent behavior and ordinary stock sales during O'Rourke's tenure at Riot.[9]  *Bldg. Trades United Pension Tr. Fund v. Kenexa Corp.*, No. 09-2642, 2010 U.S. Dist. LEXIS 102729, at *37-39 (E.D. Pa. Sep. 27, 2010) (stock sales totaling $764,858 "did not contribute to an inference of scienter" where they comprised 77% of the defendant's total holdings and his compensation was $2.3 million).

---

[9] Lead Plaintiff misconstrues the court's statement in *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1261 (D. Nev. 2019).  The court found that "stock sales conducted pursuant to a pre-determined Rule 10b5-1 trading plan may 'rebut [ ] an inference of scienter," but it never found, as Lead Plaintiff suggests, that this is the *only* way to rebut an inference of scienter.  *Id*.

### E.   Lead Plaintiff's Other Allegations Do Not Establish that O'Rourke and Beeghley Had Anything More Than a Personal Relationship With Certain Defendants.

"[A]llegations of a close relationship fail to establish . . . fraudulent or reckless intent." *Vogel v. Sands Bros. & Co.*, 126 F. Supp. 2d 730, 743 (S.D.N.Y. 2001).[10]  Nevertheless, Lead Plaintiff relies on conclusory allegations that O'Rourke shared an office with Honig and others sometime in 2018.  The Opposition offers no authority nor explanation why this is sufficient.  It is not.

Lead Plaintiff attempts to use O'Rourke and Beeghley's alleged relationship with Harvey Kesner to invoke scienter is similarly futile.  (Opp. at 12.)  Simply stated, a nonparty's actions are irrelevant to Lead Plaintiff's claims.  *See Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*, 720 F. Supp. 2d 517, 550 (D.N.J. 2010).  Lead Plaintiff establishes nothing more than allegations that O'Rourke and Beeghley had (in Lead Plaintiff's own words) "*personal* ties" with Kesner and that the individuals had previously invested in companies *other than Riot* together.  (Opp. at 12, fn. 9.)  *Burt II*, 2014 WL 1291834, at *18 (not enough that the defendants are "related through blood, marriage, business or social relationships") (citation omitted).  Lead Plaintiff also muddles his own allegations, claiming that the SAC shows that O'Rourke and Beeghley had an

---

[10] *See also Janbay v. Canadian Solar, Inc.*, No. 10 CIV. 4430, 2013 WL 1287326, at *11 (S.D.N.Y. Mar. 28, 2013), *aff'd sub nom. Tabak v. Canadian Solar, Inc.*, 548 F. A'ppx 24 (2d Cir. 2013).

attorney-client relationship with Kesner in relation to Riot, while citing sections in the SAC, which pertain only to Kesner's independent investments in Riot. [11]  (Opp. at 12, fn. 9.)  Regardless, "the existence of a group will not be inferred solely because defendants explored business dealings or exchanged information related to the issuer." *Burt II*, 2014 WL 1291834, at *18.

### F.    Beeghley's Position at Riot Cannot Support Lead Plaintiff's Scienter Allegations.

The Opposition demonstrates that the crux of Lead Plaintiff's allegations against Beeghley amount to "must have known" allegations that do not create a strong inference of scienter.[12]  (Opp. at 12 ¶¶ c, d, e.)  *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004) ("it is not enough for

---

[11] Notably, Lead Plaintiff alleges in the SAC that DeFrancesco shared the same counsel (*i.e.*, Kesner) as Honig in connection with her ownership in Venaxis/Bioptix.  (SAC ¶ 172.)  But the letter in Lead Plaintiff's Exhibit O actually sets forth that her attorney was Joe Laxague.  (*Id.*, Ex. O at p. 436.)  Moreover, Lead Plaintiff claims that "O'Rourke, Honig, and Beeghley were jointly represented by '*our counsel*, Harvey Kesner' . . . in waging their proxy fight to gain seats on the Company's board of directors."  (Opp. at 12, ¶ i.)  However, Exhibit O demonstrates that Honig was nominating certain individuals "[d]irectly and as trustee of GRQ Consultants, Inc. 401K."  (SAC, Ex. O at p. 446.)  The more cogent and compelling inference is that Honig's reference to "our counsel" actually referred to the attorney for himself and GRQ Consultants, Inc. 401K.  In any event, none of these allegations pertain to an agreement between the purported Honig Group to *invest* in Riot as a group.  *Log on Am.*, 223 F. Supp. 2d at 449 (allegation that defendants were represented by the same law firm was insufficient to allege a Section 13D group).

[12] Lead Plaintiff offers no argument in the Opposition regarding O'Rourke's role as CEO at Riot to support the scienter allegations.  However, any allegations relating solely to O'Rourke's position at Riot fail for the same reasons.  (SAC ¶¶ 290-98.)

plaintiffs to merely allege . . . that defendants 'must have known' their statements were false.") (citations omitted).  Lead Plaintiff relies exclusively on Beeghley's position as CEO and Chairman of Riot without alleging "specific information conveyed to management and related to the fraud."[13]  *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013) ("corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter").

Lead Plaintiff contends that, as CEO, Beeghley should have been aware that Honig should have filed a Schedule 13D/A.  The SAC, however, contains no factual allegations that Beeghley knew of any information about the purported Honig Group that would require its disclosure as a Section 13D group on Riot's Form S-3/A or Form 10-K.  (Opp. at 12 ¶¶ c, e.)  These are two separate alleged misstatements, only the latter of which could potentially implicate Beeghley or Riot.  (SAC ¶ 345.)[14]  However, Lead Plaintiff's failure to allege any specific facts

---

[13] Lead Plaintiff's allegations amount to an attempt to invoke the core operations doctrine, the validity of which has been questioned by numerous courts following the enactment of the PSLRA.  *Frederick v. Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012).  At most, it "constitutes 'supplemental support' for alleging scienter but does not independently establish scienter."  *In re Aceto Corp. Sec. Litig.*, No. 2:18-cv-2425-ERK-AYS, 2019 U.S. Dist. LEXIS 131675, at *30 (E.D.N.Y. Aug. 6, 2019) (citation omitted); *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F. Supp. 3d 596, 624 (S.D.N.Y. 2017) ("Where, as here, Plaintiff's other scienter allegations . . . are not persuasive, the Court declines to find that Plaintiff's reliance on the core operations theory yields the cogent and compelling inference required.").

[14] The SAC acknowledges that Riot disclosed that Honig, DeFrancesco, and Groussman had a greater than five percent ownership interest in the Company's voting securities.  (SAC ¶¶ 349, 357.)

showing that Beeghley was provided information pertaining to other individuals'

agreement to act as a group to invest in and control Riot prohibits any inference of

such implication.[15]  Lead Plaintiff's bald assertions cannot sustain an inference of

scienter.  *See In re Par Pharm. Sec. Litig.*, No. 06-cv-3226 (PSG), 2008 WL

2559362, at *10 (D.N.J. June 24, 2008) ("generalization that [defendant]

participated in the management of the company and was privy to sensitive

information because of his high-level position . . . is not enough . . . on its own[.]").

## G. None of the Scienter Allegations in the SAC Relate to the Alleged Omissions Pertaining to the Related Party Transactions.

The allegations discussed *supra* and set forth in the SAC only

(unsuccessfully) address O'Rourke and Beeghley's purported awareness of the

coordinated activity at Riot.  (*See* SAC ¶¶ 290-303.)  None of these allegations

relate to the alleged related party transactions (*i.e.*, the March 2017 Private

Placement, the Coinsquare Agreement, the Kairos Transaction, or the December

---

[15] O'Rourke and Beeghley were, in fact, provided the opposite information.  If Honig, DeFrancesco, Groussman, and Stetson were acting as a "group" with respect to Riot, they failed to disclose their group status to Riot in their Schedule 13Ds.  (SAC ¶¶ 311, 325, 341, 484.)  Lead Plaintiff only conclusorily asserts that knowledge of the Honig Group is "establish[ed]" by "O'Rourke [and] Beeghley's participation in, [and] knowledge of the Honig Group's concerted activities at Riot."  (Opp. at 32, fn. 21.)  In doing so, Lead Plaintiff cites to the same allegations relating to O'Rourke and Beeghley's personal relationships, past investments, and positions at Riot that are plainly insufficient to support an inference of scienter. (*Id.*; *see* Section II.A-E.)  Moreover, Lead Plaintiff points to O'Rourke and Beeghley's public Consent to Nomination as Director, but fails to explain how that constitutes an agreement between the purported Honig Group to control Riot. *Scott v. MULTI-AMP Corp.*, 386 F. Supp. 44, 70 (D.N.J. 1974).

2017 Private Placement).  (*Id*. ¶¶ 188-201.)  Thus, to the extent Lead Plaintiff's claims rely on the failure to disclose related party transactions, they fail.

### H. Non-Fraudulent Inferences are More Cogent and Compelling than Any Fraudulent Inferences.

Lead Plaintiff's claims are premised on the narrative that the Individual Defendants were perpetuating a pump-and-dump scheme at Riot.  Yet, the Court already rejected Lead Plaintiff's allegations relating to Beeghley and O'Rourke's public statements promoting Riot as a blockchain company, and Lead Plaintiff abandoned such allegations in the SAC.  (Opinion, Dkt. 166, at pp. 21-28.)  What is left are allegations relating to omissions regarding purported coordinated activity and related-party transactions at Riot that fail to establish the "pump" for the pump-and-dump theory propounded by Lead Plaintiff.

Moreover, Lead Plaintiff hinges its theory of fraud on Riot, Beeghley, and O'Rourke's failure to disclose who was behind the curtain at Riot, but simultaneously acknowledges that Honig and DeFrancesco nominated certain defendants to Riot's board in 2016 (well before the Class Period) through a *public* proxy fight.  (SAC, Ex. O.)  After the basis of Lead Plaintiff's pump-and-dump theory was rejected by the Court, the SAC stitches together even weaker scienter allegations that, ultimately, make no sense.

Indeed, in light of this, the SAC as a whole fails to create a strong inference of scienter sufficient to state a claim.  Lead Plaintiff makes assertions about

Beeghley and O'Rourke's personal relationships, positions at Riot, and past investments without (i) connecting them to any actual knowledge about the alleged coordinated activity or related-party transactions or (ii) why they would want to mislead investors about the same in the absence of a pump-and-dump. *Kennilworth Partners L.P. v. Cendant Corp.*, 59 F. Supp. 2d 417, 430 (D.N.J. 1999) ("plaintiffs do not sufficiently link the defendants, directly and specifically, with incidents or circumstances which, apart from their positions or roles . . . connect them to wrongdoing and create a 'strong inference' of scienter."). Without such connection, the more compelling inference is one of non-fraudulent conduct.

## III.   THE SECTION 20(A) CLAIM SHOULD BE DISMISSED.

As explained above, Lead Plaintiff fails to plead a primary violation of the Exchange Act or culpable participation in the alleged fraud sufficient to sustain a claim under Section 20(a). *Fox Int'l Relations v. Fiserv Sec. Inc.*, 490 F. Supp. 2d 590, 601 (E.D. Pa. 2007). The claims must be dismissed.

## IV.   CONCLUSION

For the reasons stated above and for the reasons set forth in the Individual Defendants' Motion and the Riot Blockchain Defendants' moving papers and reply, the Individual Defendants respectfully request that the Court dismiss all of the Section 10(b) and Section 20(a) claims brought against them with prejudice.

DATED:    April 26, 2021       PAUL HASTINGS LLP


By: */s/ Chad J. Peterman*
CHAD J. PETERMAN

Attorneys for Defendants
RIOT BLOCKCHAIN, INC., JOHN
O'ROURKE, AND MICHAEL
BEEGHLEY