## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC., et al.,<br><br>*Defendants*. | No. 18-CV-2293 (FLW)(ZNQ)<br><br>MOTION DATE: May 3, 2021<br><br><br>ORAL ARGUMENT REQUESTED |

## DEFENDANT JOHN STETSON'S REPLY
## IN SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED
## SECOND AMENDED CLASS ACTION COMPLAINT

Matthew M. Oliver
LOWENSTEIN SANDLER LLP
One Lowenstein Dr
Roseland, NJ 07068
Tel.: 212-419-5852
Email: moliver@lowenstein.com

Daniel Walfish (admitted *pro hac vice*)
WALFISH & FISSELL PLLC
405 Lexington Avenue 8th floor
New York, NY 10174
Tel.: 212-672-0521
Email: dwalfish@walfishfissell.com

*Attorneys for Defendant John Stetson*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

ARGUMENT ........................................................................................2

I.   The SAC Fails To Establish that Stetson Was a Member of a "Group," or that His Alleged Omission Was Material....................................................2

    A.  The SAC Pleads No "Coordinated Holdings and Sales" Involving Stetson.........................................................................3

    B.  The SAC Fails To Allege That Stetson Was Part of a "Control Group"..4

    C.  Plaintiff Cannot Make Up His Mind Who Was in the "Group"..............6

    D.  Prior Dealings and Relationships Alone Do Not Add Up to a "Group" ..7

    E.  Any Alleged Omission Was Immaterial .................................................10

II.  Loss Causation Is Not Pled Against Stetson .................................................12

III. Scienter Is Not Adequately Alleged Against Stetson....................................14

IV. The Section 20(a) Claim Against Stetson Fails.............................................15

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*Burt v. Maasberg,*
  2013 WL 1314160 (D. Md. Mar. 31, 2013) ................................................ 7, 9, 10

*Burt v. Maasberg,*
  2014 WL 1291834 (D. Md. Mar. 28, 2014) .....................................................9, 10

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.,*
  95 F. Supp. 2d 169 (S.D.N.Y. 2000) ......................................................................8

*In re Adams Gold, Inc. Sec. Litig.,*
  381 F.3d 267 (3d Cir. 2004) ................................................................................11

*In re Bradley Pharmaceuticals, Inc. Secs. Litig.,*
  421 F. Supp. 2d 822 (D.N.J. 2006)......................................................................13

*In re Burlington Coat Factory Secs. Litig.,*
  114 F.3d 1410 (3d Cir. 1997) ..............................................................................11

*In re Galena Biopharma, Inc. Secs. Litig.,*
  2021 WL 50227 (D.N.J. Jan. 5, 2021)..................................................................14

*Lerner v. Millenco, L.P.,*
  23 F. Supp. 2d 337 (S.D.N.Y. 1998) ......................................................................8

*McCabe v. Ernst & Young, LLP,*
  494 F.3d 418 (3d Cir. 2007) ......................................................................... 13, 14

*Morales v. Quintel Entertainment, Inc.,*
  249 F.3d 115 (2d Cir. 2001) ..................................................................................8

*Puddu v. 6D Global Technologies, Inc.,*
  2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021)......................................................12

*Quigley v. Karkus,*
  2009 WL 1383280 (E.D. Pa. May 15, 2009)......................................................5, 7

*SEC v. Honig*,
  2020 WL 906383 (S.D.N.Y. Feb. 25, 2020) ....................................................9, 12

*SEC v. Honig*,
  2021 WL 276155 (S.D.N.Y. Jan. 27, 2021) ................................................. 10, 12

*Vladimir v. Bioenvision Inc.*,
  606 F. Supp. 2d 473 (S.D.N.Y. 2009) ....................................................................3

## *Statutes*

Securities Exchange Act of 1934 § 3(a)(9),
  15 U.S.C. § 78c(a)(9)..............................................................................................15

Securities Exchange Act of 1934 § 13(d),
  15 U.S.C. § 78m(d)........................................................................................ *passim*

Securities Exchange Act of 1934 § 20(a),
  15 U.S.C. § 78t(a) ..................................................................................................15

28 U.S.C. § 636 ..............................................................................................................2

## *Other Authorities*

17 C.F.R. § 13d-101..........................................................................................................2

Local Civ. Rule 72.1 .........................................................................................................2

Lead Plaintiff ("Plaintiff") no longer seriously contends that Stetson's sales of his 4.99% stake in Riot Blockchain were not disclosed, or that Stetson's staying under the 5% threshold somehow was deceptive, or that it somehow facilitated a scheme perpetrated by his co-defendants. *See* Stetson Br. 1-4, 8-9, 13-14; Opposition ("Opp.") 41-42; *compare* SAC ¶¶ 342-43 (abandoned theories of liability).

Instead, Plaintiff clarifies that the *sole basis* on which he seeks to hold Stetson liable here is Stetson's alleged failure to disclose that he was a member of the purported Honig Group. Opp. 41-42. But pleading a "group" requires identifying some *common objective* that the purported group members agreed to pursue – or at least identifying some degree of coordination – for a given company. The SAC does no such thing.

Plaintiff's main theory is that Stetson engaged in "coordinated holdings and sales" with the members of the supposed group, Opp. 41, but the SAC's allegations show that Stetson's trading was *not* coordinated with that of the other Defendants. *See* I.A, *infra*. Nor does the SAC even begin to establish Stetson's involvement in some plot to gain hidden control of Riot, let alone engineer a "pump and dump" scheme – as Plaintiff acknowledges between the lines. *See* I.B, *infra*. In fact, Plaintiff cannot even make up his mind who was in the "group" that Stetson supposedly failed to disclose. *See* I.C., *infra*. Plaintiff's "group" allegations rest solely on *prior dealings and relationships* among the group members, but the case law uniformly

rejects attempts to conjure a "group" purely on this basis. *See* I.D., *infra.* Even if Plaintiff somehow could allege a group (he cannot), he wholly fails to explain why Stetson's membership in it would have been material. *See* I.E., *infra*.

On top of all this, Plaintiff fails to address Stetson's arguments that the allegations against him are deficient with respect to loss causation, scienter, and Section 20(a) liability. *See* II.-IV., *infra*. The claims against Stetson have always been an unsubstantiated afterthought. It is time to dismiss him from this case.

## **ARGUMENT**[1]

### I.    The SAC Fails To Establish that Stetson Was a Member of a "Group," or that His Alleged Omission was Material

A Section 13(d) group consists of two or more persons who have combined *in furtherance of a* "*common objective*" or "*common purpose*." Opp. 24-25 (citing Section 13(d) and related case law). Someone filing a Schedule 13D must state his own – or, if there is a group, the group's – "purpose" in acquiring the securities at issue, "including any purpose to acquire control." Opp. 35 (citation and internal quotation marks omitted); *see also* Opp. 20-21; 17 C.F.R. § 13d-101, Item 4

---

[1] Plaintiff suggests that Magistrate Quraishi found that the SAC states a claim against Stetson. But Stetson did not raise his own challenges to the SAC when Plaintiff sought leave to amend, pointedly reserving the right to do so in a motion to dismiss in the event leave was granted. ECF 174. Furthermore, the Magistrate respectfully did not have the authority to make dispositive rulings, *see* Local Civ. Rule 72.1(a); 28 U.S.C. § 636(b)(1)(A), and indeed noted that a Rule 15 futility inquiry "'does *not* require . . . the equivalent of substantive motion practice upon the proposed new claim.'" ECF 187 at 5 (emphasis added).

(requiring disclosure on Schedule 13D of specified categories of "plans or proposals" on the part of the reporting person/group). To the extent that Plaintiff's theory is that Stetson omitted to file Schedule 13Ds disclosing his membership in a "group," Plaintiff is required to plausibly allege what the "missing Schedule 13Ds" would have disclosed – that is, who the group members were and *some common objective* that they agreed to pursue (or at the very least some form of coordination).[2] Plaintiff fails to do so.[3]

## A. The SAC Pleads No "Coordinated Holdings and Sales" Involving Stetson

Plaintiff mainly argues that Stetson was a member of a Section 13(d) "group" by dint of "coordinated holdings and sales." Opp. 41. But the allegations in the SAC undermine any notion of coordinated trading. *Compare* SAC ¶ 342 & Walfish Decl. Exs. 1-4 [ECF 197-3 through 197-6] (Stetson kept his holdings steady from April to September 2017) *with* SAC ¶¶ 313, 316 (Honig sold from end March 2017 to November 2017, with some purchases in October and November 2017). *See also* Riot Br. [ECF 192-1] 16-17; Honig Br. [ECF 196-1] 13.

---

[2] Plaintiff quotes *Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 491 (S.D.N.Y. 2009) for the proposition that a complaint need not allege "every term of a 13D filer's plan or purpose" in order "to allege control." Opp. 25. But in *Vladimir* itself, the claims based on missing 13Ds were dismissed at the pleading stage for failure to adequately allege a plan or purpose to change control, 606 F. Supp. 2d at 495, and the claims here are no better pled.

[3] In addition to the arguments set forth below, Stetson joins and incorporates by reference the arguments in Section II.A.2. of Riot's Reply [ECF 208 at 3-9].

Plaintiff contends that the Defendants "***coordinated their trading in Riot stock down to the single share***," Opp. 7, but despite his bolding and italics, the only support he offers for this assertion is paragraphs of the SAC that concern other investors besides the Defendants here and that have nothing to do with Stetson's holdings or trades. Opp. 8 (citing SAC ¶¶ 352, 365, 373-74, 377, 383, 386). In fact, the SAC nowhere alleges any time periods, much less dates, when Stetson purchased and sold his shares and thus cannot show that Stetson coordinated with any other Defendant or anyone else. Plaintiff effectively admits his own failure (and inability) to allege that Stetson coordinated his Riot trading with anyone. *See* Opp. 27.

## B. The SAC Fails To Allege That Stetson Was Part of a "Control Group"

Stetson has explained that the SAC wholly fails to link him to any plan or purpose to exercise control at Riot during the Class Period. Stetson Br. 8-9. The Opposition does not respond to this argument. With no specifics as to Stetson, Plaintiff generically insinuates that all of the individual Defendants conspired in secret to gain control of Riot through a "proxy fight," Opp. 5-7, 19-20, and then (in the words of an argument header that is not substantiated by the text that follows it) "Acted as an Undisclosed Control Group to Pump-and-Dump Riot Stock," Opp. 24; *see also* SAC at 85 (similar unsupported header). The SAC does not begin to support such a theory.

4

What the SAC alleges is that Honig and DeFrancesco had finished their proxy fight and (through resulting changes in board membership) allegedly gained control over Riot in early 2017. SAC ¶¶ 168-176. The proxy fight and alleged change in control were not only completed, but *fully disclosed* well before the Class Period began and long before Plaintiff purchased Riot stock.[4]

Further, while Honig and DeFrancesco put Stetson forward as a part of a proposed slate of new directors (Opp. 6), this too was (1) *long before the start of the Class Period*, let alone any purchase of Riot stock by Plaintiff (SAC ¶¶ 168-171; ECF 191), (2) *fully disclosed at the time* (*see, e.g.*, ECF No. 188 at ECF pages 386, 399), and (3) in any event the appointment never materialized. Stetson Br. 8 n.9. In fact, Plaintiff does not even bother to mention, let alone distinguish, *Quigley v. Karkus*, 2009 WL 1383280, at *4-*5 (E.D. Pa. May 15, 2009), which held that an individual's involvement in discussing a potential proxy contest a year earlier did

---

[4] The SAC alleges that Honig and DeFrancesco were able to install three of their allies on the board of directors, that three incumbent directors resigned, and that upon the eventual resignation of a fourth incumbent, Honig and DeFrancesco "found themselves aligned with a majority of the seats on the board and defacto control of the company." SAC ¶¶ 175-76. But Honig and DeFrancesco's battle to replace the board was fully disclosed in SEC filings. *See* ECF No. 188 [SAC] at ECF pages 382-413. And the ensuing director appointments and resignations were announced in public SEC filings, including on January 6, 2017 and February 9, 2017. *See* Supp. Walfish Decl. Exs. 1 and 2. (Stetson respectfully requests that the Court take judicial notice of these exhibits substantially for the reasons set forth at ECF 197-7; the exhibits are integral to and relied on in the SAC, including in its paragraph 176.) The start of the Class Period is not until March 15, 2017, SAC ¶ 1, and Plaintiff did not purchase Riot stock until December 2017 (ECF 191).

*not* mean that, a year later, the individual was part of a Section 13(d) "group." As Stetson explained without rejoinder from Plaintiff, the SAC alleges *nothing at all* that Stetson did at Riot *during the Class Period* to exercise or seek control. Stetson Br. 8-9 & n.9.[5] And as Stetson also explained, again without meaningful rejoinder, the SAC's references to a "pump and dump" are conclusory and unsubstantiated – and they certainly do not implicate Stetson. Stetson Br. 9 & n.10.

### C. Plaintiff Cannot Make Up His Mind Who Was in the "Group"

Plaintiff keeps flip-flopping as to who was in the supposed Section 13(d) group. The SAC defines "Honig Group" as the six individual Defendants here. SAC ¶ 29; *see also* Opp. 7 n.5. The SAC appears to allege that this set of six individuals, or perhaps a sub-set of the six, was the undisclosed Section 13(d) group of which Stetson was a member. SAC ¶ 341; *see also, e.g., id.* ¶¶ 13, 238, 299, 311, 324, 349, 484, 491. Yet Plaintiff now contends that the undisclosed Section 13(d) group alleged in the SAC included all of the individual Defendants here *plus* additional persons and entities (*see* Opp. 7 n.5) – basically anyone who ever knew or invested alongside Barry Honig, or appears in the same SEC filing as him.[6] The

---

[5] For instance, the SAC contains not a single allegation regarding any vote that Stetson cast at Riot. In fact, *Stetson cast no votes at Riot*, let alone voted in coordination with other Defendants. Again, the only Riot-related voting or potential voting alleged in the SAC involved Honig and DeFrancesco, and pre-dated the Class Period. *See* Opp. 27 n.17.

[6] *See also* SAC ¶¶ 93, 351 n.78 (using the term "Honig Group" to refer to a wide assortment of non-parties).

PSLRA and Rule 9(b) do not allow a plaintiff to accuse Stetson of fraud for omitting to disclose his membership in a "group" when the plaintiff himself cannot even settle on the most basic fact about the "group": who was in it.

### D. Prior Dealings and Relationships Alone Do Not Add Up To a "Group"

At the end of the day, Plaintiff's "group" allegations rest *solely* on allegations of prior dealings and pre-existing informal relationships among the purported group members. But numerous cases cited in Defendants' opening briefs hold that such history and relationships are insufficient, *without more*, to infer the agreement needed for a Section 13(d) group in the case at hand.[7] Plaintiff ignores or fails to coherently distinguish these cases.

Plaintiff instead cites less than a handful of cases, all of them out of Circuit, for the proposition that "courts frequently *consider* individuals' history of co-investment in determining whether an alleged 'group' exists under Section 13(d)." Opp. 26 (emphasis added); *see also* Opp. 31. Even if courts may *consider* such history, none of these cases begins to suggest that history *by itself is sufficient* to plead a Section 13(d) group:

---

[7] *See* Stetson Br. 9-10 (citing, *inter alia*, the E.D. Pa.'s *Quigley* decision); Riot Br. 12-18 (citing, *inter alia*, the first opinion in *Burt v. Maasberg*, 2013 WL 1314160 (D. Md. Mar. 31, 2013) ("*Burt I*")); *see also* Honig Br. 11-13 (citing cases from around the country on the need to go beyond conclusory allegations of an agreement); DeFrancesco Br. 11 (citing additional cases).

- In *Morales v. Quintel Entertainment, Inc.*, 249 F.3d 115, 127 (2d Cir. 2001), there was "coordinated action": the three alleged group members deposited their stock on the same day "in identical trusts all naming the same person as trustee," and then, 18 months later, the three individuals simultaneously redeemed their holdings. Nothing of the kind is alleged here.

- In *Lerner v. Millenco, L.P.*, 23 F. Supp. 2d 337, 344 (S.D.N.Y. 1998), members of one of the alleged groups "acquired [the securities at issue] on the same day," and members of another alleged group "reduced [their] ownership of [the securities at issue] by the exact same percentage . . . over the same time period," and also agreed to a modification of the securities' terms. Nothing comparable is alleged here.

- *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F. Supp. 2d 169 (S.D.N.Y. 2000) upheld a Section 13(d) claim where the plaintiff alleged that a defendant's purpose in acquiring shares of a company was to eventually take over the company and where the defendant had reason to "enlist covert allies," namely to avoid triggering a poison pill. *Id*. at 175-77. The "long-standing personal relationships" discussed by the court *corroborated* the *independently supported* inference that the defendants were acting together to gain control. *Id*. at 176.

- In *SEC v. Honig*, the court found that the complaint concretely alleged: coordination in relation to a stock acquisition deal; "collaboration" in orchestrating MGT's so-called McAfee transaction; "coordination between Honig and Brauser to match trades and create the appearance of an active market . . . the day the [McAfee] deal was announced"; and "the simultaneous negotiation between [MGT's CEO] and each member of the Honig Group to allow the group to exercise their warrants immediately after the successful stock bump from the McAfee announcement." 2020 WL 906383, at *12 (S.D.N.Y. Feb. 25, 2020) ("*Honig I*"). The court made a point of treating prior conduct alleged by the SEC as "context" and "background," *id*. – *not* as a substitute for plausible and particularized allegations of coordination and control in relation to MGT.

In each of Plaintiff's cases, there were allegations that the purported group members shared an articulable change-of-control purpose, or some other plausible indication of coordination – and, of course, there was clarity about who was actually in the alleged group. Those prerequisites of a well-pled "group" are missing here.

Finally, Plaintiff finds it significant that *Burt II*, unlike *Burt I*, held that a "group" was adequately pled. Opp. 29. But *Burt II* came out differently from *Burt I* because the amended pleading, unlike the original one, contained enough facts pertaining to *the stock at issue in the case* to rise above pure speculation about the

9

existence of a group. 2014 WL 1291834, at *18-*22 (D. Md. Mar. 28, 2014). For example, the amended complaint set forth defendants' admissions that there was a joint plan to drive down Lyris' stock price and then buy up its stock, and that members of the Comfort family "jointly managed *their investment in Lyris*" (court's emphasis). *Id*. at *20. The amended pleading also plausibly alleged that Bill Comfort directed other defendants to acquire Lyris' stock, and that two members of the Comfort family at one point demanded a release of *all* defendants in relation to Lyris and its stock. *Id*. No comparable allegations exist here as to Riot. The SAC, in other words, is firmly akin not to the amended pleading in *Burt II* but to the original pleading in *Burt I*, which the court dismissed because allegations of familial relationships, past dealings, and business ties are not, without more, enough to make out a group. 2013 WL 1314160, at *19-*21 (D. Md. Mar. 31, 2013). To sum up: the Section 13(d) case law is not on Plaintiff's side.

### E. Any Alleged Omission Was Immaterial

Even if Plaintiff *had* somehow adequately alleged that Stetson was a member of a "group" (he has not), the omission of Stetson's membership in it would have been immaterial. Plaintiff does not seriously dispute that a violation of an SEC-mandated affirmative disclosure requirement is not automatically a material omission. Stetson Br. 7 (citing controlling authority); *see also SEC v. Honig*, 2021 WL 276155, at *8 (S.D.N.Y. Jan. 27, 2021) ("*Honig II*") ("[T]he mere fact that [the

Section 13(d) group disclosure] was required by the SEC does not make it 'material *per se*'."). And Plaintiff admits that "Section 13(d)'s purpose is to alert investors to potential changes in corporate control." Opp. 38 n.31 (cleaned up); *see also* Stetson Br. 6-7.

Here, Plaintiff simply fails to explain *why* Stetson's "missing 13Ds" would have mattered to other investors. As Stetson explained without rejoinder, the materiality analysis balances the indicated probability of the relevant event occurring with the anticipated magnitude of the event. Stetson Br. 7-8 (citing controlling case law on materiality).[8] Here the probability of the relevant event for Section 13(d) purposes (a change in control) occurring was essentially zero. There is no serious suggestion that Stetson had, or was involved in obtaining, any hidden control over Riot or was involved in any scheme to issue misleading press releases about Riot. Stetson Br. 7-8; Opp. 41-42; I.B, *supra*. There is also no showing that Stetson coordinated his trading with anyone. I.A., *supra*. On top of all that, Stetson's stake in Riot and his sales were fully disclosed. Stetson Br. 1-4.

---

[8] Plaintiff argues that an assessment of materiality is "inappropriate for resolution on a motion to dismiss." Opp. 41. But Plaintiff's only support for that statement is *In re Adams Gold, Inc. Sec. Litig.*, 381 F.3d 267 (3d Cir. 2004), a non-fraud case arising under the Securities Act of 1933, where the complaint was held not to be subject to the PSLRA or Rule 9(b). *Id*. at 273 n.5. In reality, "complaints alleging securities fraud often contain claims of omissions or misstatements that . . . courts can rule [] immaterial as a matter of law at the pleading stage." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (Alito, J.).

11

This case is thus quite different from *Honig II* (cited at Opp. 42). The court there initially *granted* a motion to dismiss because the SEC had failed to adequately allege "that the omission of the existence of the group was material." *Honig I*, 2020 WL 906383, at *1, *10. Subsequently the court found materiality adequately pled because the SEC alleged that undisclosed group ownership "enabled the [group] *to exercise control* over MGT policies in fact, such as through negotiating the McAfee transaction," which was hyped with public statements that (unlike Riot's press releases here) the court found to be misleading. *Honig II*, 2021 WL 276155, at *6, *8 (emphasis added). *Honig II* emphatically does *not* stand for the proposition that alleged group ownership is inherently material in the absence of control, or a control purpose, or some other nefarious scheme not pled here. In fact, *Honig II* found that *other* alleged violations of SEC ownership reporting requirements were *not* material. *Id*. at *10, *14.[9]

## II.   Loss Causation Is Not Pled Against Stetson

The only purported "corrective disclosure" *involving Stetson* identified in the SAC was the SEC's *Honig* Complaint, which did not disclose Stetson's holding and

---

[9] Similarly off-point is *Puddu v. 6D Global Technologies, Inc.*, 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021), cited in Plaintiff's supplemental letter [ECF 202]. *Puddu* did not involve a "group" at all, and the defendant there was alleged – plausibly and with particularity – to be running the company at issue behind the scenes. *Id*. at *3, *6, *9. Again, the individual's *undisclosed control* is what would have made his omitted Schedule 13Ds material.

sales of Riot stock (they had already been disclosed more than a year earlier), did not disclose coordinated trading at Riot (there was no coordinated trading), and to boot made no mention of two members of the group (DeFrancesco, Beeghley) that Stetson supposedly was required to disclose. Stetson Br. 10-13. Plaintiff has no meaningful response to these arguments. Opp. 58-59.

Nor does Plaintiff cite any authority for his theory that the SEC complaint, which concerned other companies, constituted a "corrective disclosure" of a group at Riot. Opp. 59. In *In re Bradley Pharmaceuticals, Inc. Secs. Litig.*, 421 F. Supp. 2d 822, 827-29 (D.N.J. 2006), the SEC investigation that came to light in fact concerned the exact sham transaction that had inflated the company's financials. *Bradley* does not begin to suggest that, as Plaintiff argues here, an SEC investigation or enforcement action involving alleged misconduct X at company ABC can, when disclosed, constitute a corrective disclosure relating to alleged omission Y involving company DEF. In such a scenario, unlike in *Bradley*, there is simply *no causal relationship* between, on the one hand, any price impacts resulting from the disclosure and, on the other, the alleged omission. (Recall, too, that the SEC expressly decided not to take enforcement action relating to Riot. ECF 201-1 Ex. 2.)

Plaintiff's burden is to allege "that the very facts misrepresented or omitted by [the defendant] were a substantial factor in causing [the plaintiff's] economic loss," *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 428-29 (3d Cir. 2007); *see*

13

*also In re Galena Biopharma, Inc. Secs. Litig.*, 2021 WL 50227, at \*7 (D.N.J. Jan. 5, 2021) (plaintiff may satisfy its burden by alleging that "the materialization of the undisclosed risk caused the alleged loss" (citing *McCabe*, 494 F.3d at 429)).

Here, the "very fact" that Stetson is accused of omitting is his alleged membership in a Section 13(d) group at Riot. Opp. 41. By contrast, the risk that allegedly materialized here is *not* that a takeover of the company occurred (which is the risk that a Schedule 13D is designed to disclose), or even that some hidden group orchestrated manipulative trades that damaged the stock price. Rather, as regards Stetson, the only risk alleged to have materialized here is that the SEC filed charges relating to *companies other than Riot* (including charges against the CEO of Riot, which of course would cause the stock price to decline). Stetson was under no duty to disclose his dealings at *other* companies on any Schedule 13D filed for *Riot*. Stetson's alleged non-disclosures did not cause the losses here.

## III.   Scienter Is Not Adequately Alleged Against Stetson

Plaintiff ignores Stetson's arguments that his scienter is not adequately alleged. *See* Stetson Br. 13-15. Plaintiff's core scienter allegation against Stetson is that years before the events at issue in this case, Honig and Brauser sent to Stetson drafts of a complaint in a Section 13(d) case *filed by Honig and Brauser*. Opp. 14, 23, 30-31; SAC ¶¶ 250, 276. But the SAC (despite misleading paraphrasing in the Opposition brief) does not allege what Stetson's response was, or if he had any, let

alone allege that Stetson *made comments indicative of an intent to deceive*. In any case, just because Stetson may have been *familiar* with Section 13(d) does not mean that he *knew of and intentionally omitted* a group at Riot. Stetson Br. 14.

## IV.  The Section 20(a) Claim Against Stetson Fails[10]

With no non-conclusory allegations that Stetson had control over Riot, Plaintiff tries to hang Section 20(a) liability entirely on his (insufficiently alleged) theory that Stetson was a member of a "group" that "controlled more than 55% of Riot's common stock." Opp. 60. But the text of Section 20(a) requires that the defendant be a "***person*** *who . . . controls*" the primary violator, 15 U.S.C. § 78t(a) – not a member of a *group* that *collectively* has an alleged controlling stake in the primary violator. *See id*. § 78c(a)(9) (defining "person" for purposes of Section 20(a) as a "natural person, company, [or] government"); *cf.id*. § 78m(d)(3) (providing that *for purposes of Section 13(d) only*, a "group" is "deemed a 'person'"). Plaintiff had to plausibly allege that Stetson *individually* had control over Riot, and of course Plaintiff cannot do so. Stetson Br. 15-16.

---

[10] Plaintiff abandons any suggestion that Stetson has *primary* liability for any of Riot's filings. *See* Stetson Br. 16 n.16.

Dated: April 26, 2021                    Respectfully submitted,

                                         LOWENSTEIN SANDLER LLP

                                         By:   s/  Matthew M. Oliver
                                              Matthew M. Oliver
                                              One Lowenstein Dr
                                              Roseland, NJ 07068
                                              Tel.: 212-419-5852
                                              Email: moliver@lowenstein.com

                                              Daniel Walfish (*admitted pro hac vice*)
                                              WALFISH & FISSELL PLLC
                                              405 Lexington Avenue 8th floor
                                              New York, NY 10174
                                              Tel.: 212-672-0521
                                              Email: dwalfish@walfishfissell.com

                                              *Attorneys for Defendant John Stetson*

16