**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Alex Spiro (*pro hac vice*)
Julia M. Beskin (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Jaclyn M. Palmerson
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile:  (212) 849-7100
alexspiro@quinnemanuel.com
juliabeskin@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jaclynpalmerson@quinnemanuel.com

*Attorneys for Catherine DeFrancesco*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC. f/k/a BIOPTIX, INC., JOHN O'ROURKE, JEFFREY MCGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES and ERIC SO,<br><br>*Defendants*. | Civil Action No. 3:18-02293 (FLW) (TJB) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
CATHERINE DeFRANCESCO'S MOTION TO DISMISS
THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT .............................................................................................................1

I. PLAINTIFF FAILS TO PLEAD LIABILITY UNDER RULE 10b-5 ...............1

    A. Plaintiff's Opposition Fails to Salvage Plaintiff's Insufficient Allegations That Ms. DeFrancesco Was a Member of the So-Called "Honig Group" ...............1

    B. Plaintiff Fails to Plead That Ms. DeFrancesco Acted With Scienter .......................5

    C. Plaintiff Fails to Plead Loss Causation as to Ms. DeFrancesco .............................8

II. PLAINTIFF FAILS TO PLEAD THAT MS. DEFRANCESCO IS A CONTROL PERSON OF RBI ..................................................................................10

CONCLUSION ........................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*In re Apple Computer Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) .............................................................................. 9

*Bunting v. Bristol-Myers Squibb Co.*,
  2011 WL 2784101 (D.N.J. July 12, 2011) .......................................................... 10

*Dotson v. Atlantic Credit & Finance, Inc.*,
  2019 WL 5394837 (D.N.J. Oct. 22, 2019) .......................................................... 11

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
  95 F. Supp. 2d 169 (S.D.N.Y. 2000) .................................................................... 3

*Harrison Beverage Co. v. Dribeck Importers, Inc.*,
  133 F.R.D. 463 (D.N.J. 1990) ............................................................................. 11

*Leach v. Applicant Insight Inc.*,
  2021 WL 236492 at *2 (D.N.J. Jan. 25, 2021) ................................................... 11

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005) .................................................................................. 8

*Lerner v. Millenco, L.P.*,
  23 F. Supp. 2d 337 (S.D.N.Y. 1998) .................................................................... 3

*Morales v. Quintel Entm't, Inc.*,
  249 F.3d 115 (2d Cir. 2001) .................................................................................. 3

*Scott v. Multi-Amp Corp.*,
  386 F. Supp. 44 (D.N.J. 1974) .............................................................................. 4

*Takata v. Riot Blockchain, Inc.*,
  2020 WL 2079375 at 18 n.20 (D.N.J. Apr. 30, 2020) ..................................... 5, 7

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) .................................................................................. 9

### Rules

Rule 10b-5 ................................................................................................................ 1, 5

Rule 12(b)(6) ............................................................................................................... 11

Rule 15 ........................................................................................................................ 11

**PRELIMINARY STATEMENT**

As Ms. DeFrancesco's Motion to Dismiss made clear, Plaintiff's claims should be dismissed because Plaintiff failed to tie her to any purported "Honig Group," failed to plead any intent on her part to engage in any misconduct, much less fraud, and failed to link any allegations against Ms. DeFrancesco to any investor losses.

Plaintiff's Opposition ("Opp.") largely ignores these arguments in favor of reiterating deficient allegations from its Second Amended Complaint ("SAC"). *First,* Plaintiff fails to salvage its thinly-alleged claims that Ms. DeFrancesco was a member of the so-called "Honig Group." *Second*, Plaintiff fails to plead any "pump and dump" scheme at all, or that Ms. DeFrancesco acted with any intent to mislead. *Third*, Plaintiff fails to plead loss causation as to Ms. DeFrancesco's alleged omissions—in fact, Plaintiff expressly alleges *other* disclosures caused investor losses. And *fourth,* Plaintiff fails to allege that Ms. DeFrancesco was a culpable participant in any of RBI's[1] alleged misstatements—as needed to plead control-person liability—or that she controlled RBI through her passive, minority stake in the company.

For the foregoing reasons, and those discussed herein and in the Motion to Dismiss, the Second Amended Complaint should be dismissed, with prejudice, as to Ms. DeFrancesco.

**ARGUMENT**

**I.  PLAINTIFF FAILS TO PLEAD LIABILITY UNDER RULE 10b-5**

**A.  Plaintiff's Opposition Fails to Salvage Plaintiff's Insufficient Allegations That Ms. DeFrancesco Was a Member of the So-Called "Honig Group"**

The Motion to Dismiss established Plaintiff's failure to plead any intent or agreement on the part of Ms. DeFrancesco to act in concert with the purported "Honig Group" to purchase,

---

[1] Capitalized or abbreviated terms used herein have the same meaning as in the Memorandum Of Law In Support of Catherine DeFrancesco's Motion To Dismiss The Consolidated Second Amended Class Action Complaint (Dkt. No. 195-1) ("MTD").

sell, vote, or otherwise take action as to her shares in RBI.  *See* MTD 8-12.  Plaintiff offers nothing more than threadbare circumstantial assertions that Ms. DeFrancesco formed part of this supposedly "highly-orchestrated and closely-knit partnership" that allegedly engaged in pump-and-dump schemes.  *See* SAC ¶¶ 16, 29.

Plaintiff effectively concedes his failure to plead an express agreement between Ms. DeFrancesco and any member of the Honig Group to control RBI, take action concerning RBI shares, or conduct a "pump and dump" scheme, arguing only that Plaintiff is "not required to plead an 'express agreement.'" Opp. 40.  But Plaintiff's scattered, circumstantial assertions fail to plead even an *implicit* agreement—much less misconduct—that could demonstrate membership in the "Honig Group."

Plaintiff's assertion that Ms. DeFrancesco and Honig were nonetheless "joined at the hip," Opp. 40, is unsupported rhetoric.  Plaintiff attempts to tie Ms. DeFrancesco to other alleged "pump and dump" schemes to establish her "*modus operandi*" in connection with the Honig Group, *see, e.g.,* Opp. 2, 17.  Yet Plaintiff alleges nothing more than Ms. DeFrancesco's ownership of an unspecified number of shares in a single company, PolarityTE, at the same time that other Defendants including Mr. Honig allegedly also owned shares in PolarityTE.  *See* SAC ¶ 159.  Still missing are allegations that Ms. DeFrancesco committed any misconduct at all in connection with this single investment, or that she even sold her stake in PolarityTE, much less as part of any "pump and dump" scheme.  *See* MTD 9.  Plaintiff's Opposition is notably silent on this point.  *See* Opp. 15-16.  As discussed below, Plaintiff similarly fails to allege that Ms. DeFrancesco, as a minority stakeholder in Kairos allegedly at the same time as Honig, had any control over, or role in, RBI's transaction with Kairos, or that the transaction itself was not a legitimate purchase of bitcoin mining equipment.  *See* MTD 12-13.  Plaintiff's failure to plead

misconduct on the part of Ms. DeFrancesco is also fatal to Plaintiff's attempt to link her to the so-called Honig Group—which Plaintiff claims was devoted to "pump and dump" schemes—as well as to plead scienter (discussed below).

Plaintiff's authority on pleading a "group" under Section 13(d) requires significantly more activity, contact, and malfeasance than Plaintiff pleaded here.  *See Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 128 (2d Cir. 2001) (plaintiff alleged "group" by pleading three individuals' "simultaneous acquisition of stock and the joint filing of a single Schedule 13D . . . together owning a closely-held corporation . . . formal agreement to the lock-up provisions . . . simultaneous deposit of shares into trusts, and . . . simultaneous redemption of stock by Quitel."); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F. Supp. 2d 169, 176 (S.D.N.Y. 2000) (group might exist where principals "have long-standing personal relationships," "have been actively involved in previous investments," and "there has been extensive communication between [the defendants] concerning [the target company]"); *Lerner v. Millenco, L.P.*, 23 F. Supp. 2d 337, 344 (S.D.N.Y. 1998) (group might exist where "on numerous prior occasions, [the defendant] coordinated its investments in companies controlled by [group members]," and that the group "acquired the Convertible Debentures [in the target company] on the same day, pursuant to a scheme similar to those in which they had previously participated.").

Plaintiff's likewise insufficient allegations about other alleged members of the Honig Group highlight the threadbare nature of the allegations regarding Ms. DeFrancesco's purported membership.  *See* MTD 8-9.  Plaintiff alleges other Defendants employed the same "*modus operandi*" at "dozens" of other companies, *see* SAC ¶¶ 16, 99-159, yet, as above, claims Ms. DeFrancesco held a stake solely in PolarityTE, and pleads no misconduct whatsoever on her part. *See* MTD 9.  Plaintiff also cites the SEC's allegations in *SEC v. Honig*, 2021 WL 276155

3

(S.D.N.Y. Jan. 27, 2021), which nowhere mention Ms. DeFrancesco. *See* MTD 9; SAC ¶ 80 and SAC Ex. B. And, as above, Plaintiff offers no authority for the novel proposition that these limited assertions could establish membership in the so-called Honig Group under Section 13(d).

Plaintiff effectively abandons its allegations concerning Mike Dai by ignoring Ms. DeFrancesco's arguments. As the Motion to Dismiss made clear, allegations that Andrew DeFrancesco—Ms. DeFrancesco's now ex-husband—worked with Mike Dai at a separate company, and that other individuals named "DeFrancesco" held beneficial stakes in that other company, provides no information at all, and certainly no particularized facts, about Ms. DeFrancesco's knowledge or conduct concerning RBI or her affiliation, if any, with other members of the purported "Honig Group." Indeed, Plaintiff pleads no facts indicating Ms. DeFrancesco had ever even heard of Mike Dai. *See* MTD 10-11. Plaintiff likewise fails to address authority that disposes of these allegations. *See* Opp. 16; *see also* MTD 10-11 (gathering cases including *Scott v. Multi-Amp Corp.*, 386 F. Supp. 44, 70 (D.N.J. 1974) ("Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create a group [under § 13(d)] . . . There must be agreement to act in concert.")).

Plaintiff also continues to mischaracterize two letters Ms. DeFrancesco wrote to Venaxis (which became RBI) as signaling her participation, alongside the supposed Honig Group, in a full-blown proxy fight. *See* Opp. 6-7, 27 n.17. Plaintiff nowhere explains how Ms. DeFrancesco's support for Honig's preferred directors amounts to membership in a "group," much less constitutes misconduct. Plaintiff fails even to allege whether or how Ms. DeFrancesco voted her shares in Venaxis in any subsequent election of directors, and so fails to plead any agreement, tacit or otherwise, to vote shares alongside Honig's. Rather, Plaintiff again reiterates bare allegations already answered in the MTD. *See* MTD 9-10; Opp. 7. And, as discussed

4

below, Plaintiff fails to plead a "pump and dump" scheme at all, and therefore fails to plead that Ms. DeFrancesco acted on anything but sincerely-held views on company leadership.

Plaintiff also fails to explain, much less correct, his misleading allegations on this topic. Contrary to Plaintiff's express allegation, neither Honig nor Ms. DeFrancesco wrote letters to the RBI board "touting" their combined stake in RBI. *See* MTD 9-10.  Plaintiff nowhere explains his misrepresentation that Ms. DeFrancesco shared counsel with Honig in connection with the supposed proxy fight. *See id.* 10.  And, regardless of Ms. DeFrancesco's letters concerning her director preferences, Plaintiff lacks any basis in its allegations to claim "Honig and DeFrancesco . . . pursued a proxy fight," Opp. 7, particularly given Plaintiff alleges no role for Ms. DeFrancesco in Honig's related lawsuit. *Id.*

Plaintiff's stitched-together allegations do not come close to pleading Ms. DeFrancesco was part of a group, and offer no facts suggesting her involvement in any schemes.

**B.    Plaintiff Fails to Plead That Ms. DeFrancesco Acted With Scienter**

As established in the Motion to Dismiss, the SAC failed, in at least four ways, to plead scienter as to Ms. DeFrancesco's "supposed omission of her purported membership in the 'Honig Group,' or her alleged failure to file an amended Schedule 13D," in support of any supposed "pump and dump" scheme. *See* MTD 12-15.  Plaintiff responds by repeating deficient and conclusory allegations, *see, e.g.*, Opp. 15, or by ignoring arguments altogether,[2] and thus Plaintiff's claims should be dismissed for failure to make "scienter allegations that are particularized as to [Ms. DeFrancesco]." *Takata v. Riot Blockchain, Inc.*, 2020 WL 2079375 at *18 n.20 (D.N.J. Apr. 30, 2020) ("*Riot*").

---

[2] Plaintiff makes no scienter argument as to Ms. DeFrancesco in support of Count II—violations of Rule 10b-5(b)—and that Count can therefore be dismissed as to Ms. DeFrancesco for this reason alone. *See generally* Opp. 34-50.

5

First, the Motion to Dismiss established Plaintiff's failure to plead the "pump" portion of the supposed "pump and dump" scheme by failing to plead a single misrepresentation concerning RBI's entry into the cryptocurrency business. *See* MTD 12-14. Plaintiff responds by repeating the SAC's general, deficient allegations, which nowhere plead that any Defendant made misrepresentations concerning the nature of RBI's business. *See, e.g.*, Opp. 6 ("[Defendants] pumped up the price and trading volume of Riot stock through false, misleading, and incomplete disclosures regarding various corporate transactions. [AC] ¶¶ 177, 188-201."). Plaintiff also fails to respond to the fact that, even if the Kairos Transaction was a related-party transaction, that in no way means it was not a legitimate purchase of bitcoin mining equipment. *See* MTD 12-13. Nor does Plaintiff explain how or why two private placement transactions could artificially inflate RBI's stock price. *See* AC ¶¶ 188-189, 200-201. Plaintiff's failure to make a *single allegation* that RBI did not intend to build a legitimate cryptocurrency business means Plaintiff has failed to plead misrepresentations that artificially inflated RBI stock. *See* MTD 12-14. Plaintiff cannot allege a "pump and dump" without the "pump." *See id.* 13-14.

Second, the Motion to Dismiss distinguished between the failure to file a Schedule 13D when *acquiring* shares of a company, and the failure to do so when selling stock. In particular, Plaintiff pleads that the purpose of Section 13(d) is to prevent a group of individuals from concealing their control of a company. *See* MTD 7-8, 14; SAC ¶ 242. Plaintiff nowhere alleges any failure on the part of Ms. DeFrancesco to make appropriate disclosures when she acquired shares in RBI. *See* MTD 14. On the face of the SAC, the inference that Ms. DeFrancesco simply "misconstrued the reporting requirements" for Section 13(d) upon selling her RBI stock is far more compelling than the idea that she tried to conceal sales in aid of a "pump and dump"

scheme that Plaintiff has failed to plead even existed, and for which Plaintiff has failed to plead any conduct or knowledge on the part of Ms. DeFrancesco. *See* MTD 14.

Third, Plaintiff cannot assume that, because Ms. DeFrancesco omitted to disclose certain stock sales, she must have been seeking to *conceal* them. *See* MTD 14-15. As this Court has noted, the failure to file Schedules 13D "is not necessarily deceptive by itself," *Riot*, at *15, and Plaintiff fails to plead anything more as to Ms. DeFrancesco, such as any meaningful allegations that she participated in any schemes at any time.³ Plaintiff resorts effectively to asserting that "ignorance of the law is no excuse," *see* Opp. 34. In fact, the inference that Ms. DeFrancesco misconstrued the reporting requirements *would* defeat any notion that she acted with intent to conceal her stock sales or intent to participate in a "pump and dump" scheme. *See* Opp. 34.

Plaintiff also repeatedly emphasizes the purported failure of Ms. DeFrancesco, Honig, Groussman, and Stetson to "report their membership in the **same group** and their undisclosed sales of stock in the **same company** ([RBI]) during the **same time period** in violation of the **same statute** . . . ." *See, e.g.*, Opp. 16. This assertion, too, is misleading as to Plaintiff's own allegations. First, Plaintiff pleads that Stetson's holdings during this time period remained constant—not that he "dumped" shares. *See* SAC ¶ 342. Second, Plaintiff concedes that Groussman's holdings and sales were *disclosed* through Forms S-3 or Schedules 13G, *id.* ¶ 330. And although Plaintiff claims Groussman's February 15, 2018 Schedule 13G/A (which actually disclosed a slight *increase* in his RBI holdings) was untimely, Plaintiff's allegations show that, by December 28, 2017, Groussman's RBI holdings had fallen below the 5% reporting threshold,

---

³ The Opposition also misrepresented to the Court that "DeFrancesco . . . proceeded to acquire . . . Riot stock while failing to fulfill [her] own legal duties to make timely and appropriate Section 13(d) filings and amendments reflecting [her] acquisitions . . . ." Opp. 8. In fact, Plaintiff alleges only that Ms. DeFrancesco failed to file Schedules 13D in connection with certain sales. *See* AC ¶ 337.

7

alleviating his responsibility to file the Schedule 13G/A that he filed on February 15, 2018. *See, e.g.*, SAC ¶ 240 (pleading that reporting obligations commence at the 5% ownership threshold).[4] Plaintiff's allegations of coordinated, hidden stock sales as to four individual defendants is therefore misleading.  And third, Plaintiff fails to plead that Ms. DeFrancesco and Honig had any agreement, coordination, or even any communication about selling RBI stock during the same year-long time period without filing Schedules 13D, particularly given Plaintiff's failure to plead any misconduct or intent as to Ms. DeFrancesco.

### C. Plaintiff Fails to Plead Loss Causation as to Ms. DeFrancesco

The Motion to Dismiss made clear that Plaintiff has failed to plead loss causation as to either of Ms. DeFrancesco's alleged omissions, which is an independent reason to dismiss the claims against her. *See* MTD at 15-16.  As discussed in the Motion to Dismiss, Plaintiff pleads that Ms. DeFrancesco's alleged failure to file Schedules 13D was disclosed no later than January 5, 2018, when RBI's Form S-3 reported her then-current RBI holdings. *See id.*  But Plaintiff expressly attributes that day's decline in RBI stock to *other* disclosures, and *not* to this supposed disclosure.  *See id.*; *see also* SAC ¶¶ 209-211 (attributing decline to firing of RBI's auditor and the Kairos Transaction); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (Plaintiff must plead that a "misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.").  And Plaintiff has never alleged when, if ever, Ms. DeFrancesco's supposedly undisclosed membership in the "Honig Group" became public, or that such disclosure caused RBI's stock to decline.  MTD 16.

---

[4] Plaintiff generally makes confused and contradictory allegations as to what Groussman filed and when. *Compare* SAC ¶ 194 (Groussman "was a greater than 5% shareholder based on his Form 13D filings with the SEC") *with* SAC ¶ 326 ("Not only did Groussman fail to disclose that he was investing in a group, but he also failed to file a Schedule 13D at all . . . .").

Plaintiff's responses do not save this element of its claims. First, Plaintiff argues, in a footnote, that "the purpose of a Form S-3 is not to disclose stock sales." Opp. 57 n.52. But Plaintiff cannot and does not dispute that the market "promptly digested" information about Ms. DeFrancesco's RBI shares from RBI's Form S-3, SAC ¶ 477, nor that it was reflected "in the price of [RBI's] common stock." SAC ¶ 477; *see also* ¶ 476 (RBI's market was efficient because, "as a regulated issuer, Riot filed periodic public reports with the SEC and the NASDAQ."). Plaintiff does not get to argue that the market absorbs information only from the SEC filings Plaintiff claims were misleading, but ignores SEC filings that are contrary to Plaintiff's theory of the case. Plaintiff also misleadingly cites *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1114 (9th Cir. 1989) for the proposition that "omissions by corporate insiders are not rendered immaterial by the fact that the omitted facts are otherwise available to the public." *Id.* at 1114; Opp. 57 n.52. Setting aside that loss causation and materiality are different elements, *the very next sentence* of that case explains that "*[t]he situation is different in a fraud on the market case*," where "[p]rovided that they have credibly entered the market through other means, the facts allegedly omitted by the defendant *would already be reflected in the stock's price; the mechanism through which the market discovered the facts in question is not crucial.*" *See id.* at 1114 (emphasis added).

Second, Plaintiff continues to offer no explanation for when, if ever, Ms. DeFrancesco's supposed membership in the Honig Group was disclosed to the market, either through corrective disclosure or other events, nor what effect it had on RBI's stock price. *See* MTD 16; *see also In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261-62 (2d Cir. 2016) ("[w]hether the truth comes out by way of a corrective disclosure . . . or through events constructively disclosing the fraud, does not alter the basic loss-causation calculus.").

9

Third, Plaintiff argues, for the first time, that Ms. DeFrancesco is responsible for the damage caused by the alleged misstatement concerning the Kairos Transaction. *See* Opp. 57 n.52. But "arguments made in Plaintiff's opposition brief cannot be used to amend [a] complaint." *Bunting v. Bristol-Myers Squibb Co.*, 2011 WL 2784101, at *4 (D.N.J. July 12, 2011) (Wolfson, J.). Regardless, Plaintiff admits the alleged misstatement is attributable to RBI, and not Ms. DeFrancesco. Opp. 45-50. Furthermore, Plaintiff nowhere alleges Ms. DeFrancesco had a role in effectuating the Kairos Transaction, in causing RBI to make alleged misstatements or omissions, even *knew* about RBI's Kairos-related statements, or had any obligation to anyone to make any related disclosures. Plaintiff cannot plead *securities fraud* because Ms. DeFrancesco owned shares in two parties to a transaction. Regardless, Plaintiff failed to plead the Kairos Transaction was not a legitimate acquisition of bitcoin equipment.

## II. PLAINTIFF FAILS TO PLEAD THAT MS. DEFRANCESCO IS A CONTROL PERSON OF RBI

The Motion to Dismiss explained in detail Plaintiff's failure to "plead *any* facts supporting Ms. DeFrancesco's control of RBI or its public statements," *see* MTD 16-17, including any at all that she was a culpable participant in any of RBI's alleged misstatements, as necessary to plead liability under Section 20(a). *See id.* In response, Plaintiff claims Ms. DeFrancesco was part of the purported Honig Group, Opp. 60, which allegation is addressed above. Plaintiff also claims, for the first time and in a footnote, that the Kairos Transaction is somehow evidence that Ms. DeFrancesco controlled RBI. Opp. 60 n.56. This new assertion should likewise be ignored. *See Bunting*, 2011 WL 2784101, at *4. Regardless, Plaintiff pleads only Ms. DeFrancesco's minority stakes in RBI and Kairos, and no other involvement, influence, or control over the transaction; indeed, Plaintiff fails to plead she was even in favor of it. *See* SAC ¶¶ 499-503. Plaintiff's allegations that Ms. DeFrancesco somehow controlled RBI and

RBI's specific alleged misconduct as a non-officer and non-director with a minority stake fail to plead any control or culpable participation, and thus fail to plead liability under Section 20(a).[5]

## CONCLUSION

For the reasons stated above and those set forth in the Motion to Dismiss, Ms. DeFrancesco respectfully requests an Order dismissing the Second Amended Complaint as against her, with prejudice, and any further relief the Court deems just and proper.

DATED: New York, New York
April 26, 2021

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Jaclyn M. Palmerson*
Alex Spiro (*pro hac vice*)
Julia M. Beskin (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
Jaclyn M. Palmerson
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
alexspiro@quinnemanuel.com
juliabeskin@quinnemanuel.com
jacobwaldman@quinnemanuel.com
jaclynpalmerson@quinnemanuel.com

*Attorneys for Catherine DeFrancesco*

---

[5] Plaintiff's reliance on Magistrate Judge Quraishi's opinion is misplaced. *See, e.g.*, Opp. 3-5. First, "the Rule 15 standard is less demanding than Rule 12(b)(6)." *Leach v. Applicant Insight Inc.*, 2021 WL 236492 at *2 (D.N.J. Jan. 25, 2021). Second, Magistrate Judge Quraishi did not "require the parties [to] engage in the equivalent of substantive motion practice upon" Plaintiff's claims, ECF No 187 at 5, and courts often permit a Rule 15 amendment so long as it is not "facially and patently futile," so that "it can [later] be challenged under the full weight of Rule 12(b)(6)." *Id.*, 2021 WL 236492 at *2 (citing *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990)). Finally, the current motion is made pursuant to Rule 12(b)(6) and the PSLRA, and so there is no deference due to Magistrate Judge Quraishi's opinion. *See, e.g.*, *Dotson v. Atlantic Credit & Finance, Inc.*, 2019 WL 5394837, at *1 (D.N.J. Oct. 22, 2019) (clear error standard applies to uncontested Report and Recommendation).