# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>  v.<br><br>RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL,<br><br>               Defendants. | Case No. 18-cv-2293 (FLW) (ZNQ)<br><br>***Document Electronically Filed***<br><br>*ORAL ARGUMENT REQUESTED*<br><br>**DEFENDANT MARK GROUSSMAN'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF HIS MOTION TO DISMISS LEAD PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT** |
| KEVIN G. WALSH<br>kwalsh@gibbonslaw.com<br>KATE E. JANUKOWICZ<br>kjanukowicz@gibbonslaw.com<br>**GIBBONS P.C.**<br>One Gateway Center<br>Newark, New Jersey 07102<br>Tel:    973.596.4769<br>Fax:   973.639.6470 | PERRIE M. WEINER (*pro hac vice*)<br>perrie.weiner@backermckenzie.com<br>EDWARD D. TOTINO (*pro hac vice*)<br>edward.totino@backermckenzie.com<br>**BAKER & MCKENZIE LLP**<br>10250 Constellation Blvd., Suite 1850<br>Los Angeles, California 90067<br>Tel:    310.201.4728<br>Fax:   310.201.4721 |
| Attorneys for Defendant<br>MARK GROUSSMAN | |

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................................... I

I.     INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT ............................................................................................................. 3

    A.    **There Is No Private Right Of Action To Seek Damages Under Section 13(d)** ........ 3

    B.    **The Court Should Not Imply A Right Of Action Under Section 13(d)** .................... 6

    C.    **There Is No Right Of Action Under 10b-5 For Violations Of Section 13(d)** ........... 8

    D.    **Even If Section 13(d) Violations Can Serve As A Basis For 10b-5 Claims Under Certain Circumstances, Those Circumstances Are Not Present Here** ................... 10

III.   CONCLUSION ....................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Dreiling v. Am. Online Inc.*,
  578 F.3d 995 (9th Cir. 2009) ...................................................................................6, 7

*Edelson v. Ch'ien*,
  405 F.3d 620 (7th Cir. 2005) ......................................................................................10

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ....................................................................................................11

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
  286 F.3d 613 (2d Cir. 2002) ....................................................................................6, 9

*Hernandez v. Mesa*,
  140 S. Ct. 735 (2020) ............................................................................................10, 11

*Leff v. CIP Corp.*,
  540 F. Supp. 857 (S.D. Ohio 1982) .............................................................................9

*Levie v. Sears Roebuck & Co.*,
  No. 04 C 7643, 2006 WL 756063 (N.D. Ill. Mar. 22, 2006) ....................................12

*Liberty Nat. Ins. Holding Co. v. Charter Co.*,
  734 F.2d 545 (11th Cir. 1984) .....................................................................................6

*Motient Corp. v. Dondero*,
  529 F.3d 532 (5th Cir. 2008) .......................................................................................6

*Musick, Peeler & Garrett v. Emp'rs Ins. of Wausau*,
  508 U.S. 286 (1993) ....................................................................................................11

*Myers v. Am. Leisure Time Enterprises, Inc.*,
  402 F. Supp. 213 (S.D.N.Y. 1975), *aff'd*, 538 F.2d 312 (2d Cir. 1976) ....................7

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) (Alito, J.) ......................................................................13

*Pearlstein v. Just. Mortg. Invs.*,
  No. CA-3-76-1476-D, 1978 WL 1143 (N.D. Tex. Oct. 17, 1978) ...........................12

*Piper v. Chris-Craft Indus., Inc.*,
  430 U.S. 1 (1977) ......................................................................................................4, 9

*Rhyne v. Omni Energy Servs. Corp.*,
　No. CIVA 08-CV-00594, 2009 WL 1844474 (W.D. La. June 23, 2009) ............................. 6, 7

*Rondeau v. Mosinee Paper Corp.*,
　422 U.S. 49 (1975) ..................................................................................................................... 6

*Rosenbaum v. Klein*,
　547 F. Supp. 586 (E.D. Pa. 1982) .............................................................................................. 7

*Rubin v. Posner*,
　701 F. Supp. 1041 (D. Del. 1988) .......................................................................................... 6, 7

*Sanders v. Thrall Car Mfg. Co.*,
　582 F. Supp. 945 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d Cir. 1984) ................................ 6, 7

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
　552 U.S. 148 (2008) ..................................................................................................... 4, 5, 10, 12

*In re Suprema Specialties, Inc. Sec. Litig.*,
　438 F.3d 256 (3d Cir. 2006) ..................................................................................................... 11

*Suter v. Artist M.*,
　503 U.S. 347 (1992) .................................................................................................................... 8

*Touche Ross & Co. v. Redington*,
　442 U.S. 560 (1979) ................................................................................................... 4, 8, 11, 12

*Transamerica Mortg. Advisors, Inc. v. Lewis*,
　444 U.S. 11 (1979) ......................................................................................................... 4, 11, 12

*United States v. Bilzerian*,
　926 F.2d 1285 (1991) ............................................................................................................... 13

*Vladimir v. Bioenvision Inc.*,
　606 F. Supp. 2d 473 (S.D.N.Y. 2009) ..................................................................................... 10

*Wisniewski v. Rodale, Inc.*,
　510 F.3d 294 (3d Cir. 2007) .................................................................................................. 8, 9

**Statutes**

15 U.S.C. § 78m (d)(1)(A)–(E) ..................................................................................................... 13

**Other Authorities**

17 C.F.R. § 240.10b-5 ........................................................................................................ *passim*

17 C.F.R. § 240.13d-101 ............................................................................................................... 13

Pursuant to the Court's February 28, 2022 Order (Dkt. No. 216), Defendant Mark Groussman respectfully submits this Supplemental Brief in further support of his Motion to Dismiss.[1]

## I. INTRODUCTION

The answer to both questions posed by this Court -- whether there is (1) an implied private right of action for shareholders to seek damages directly under Section 13(d) of the Securities Exchange Act of 1934; (2) or indirectly under Section 10(b) -- is no.

The absence of any damages remedy for shareholders directly under Section 13(d) is dictated by the text and structure of the statute, well-reasoned, uniform federal case law across multiple circuits, and Plaintiff's own concessions in this case. Plaintiff already conceded to this Court that he was not attempting "to assert a private cause of action . . . for a failure to file a Schedule 13D." *See* Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants Dai, Groussman, and Stetson's Motions to Dismiss the CACC [ECF No. 153] at 11 n.13. His most recent Omnibus Opposition to the Motions to Dismiss makes no effort to argue that a private right of action exists under Section 13(d) independent of 10b-5. And the Second Amended Complaint ("SAC") does not even attempt to state a claim directly under Section 13(d). Even apart from Plaintiff's own concessions, multiple federal courts have already resolved this question -- both for shareholders and issuers -- and uniformly held that based on the language of the statute and Congressional intent, no right of action for damages exists under Section 13(d).

Even apart from Section 13(d), the Supreme Court has long declined to create rights of action under the securities laws. In 1977, the Court refused to recognize a private right of action in favor of defeated tender offers under Section 14(e) of the Securities Exchange Act. *Piper v.*

---

[1] Defendant Groussman respectfully joins in and incorporates by reference the briefs concurrently filed by the Honig and Riot Defendants.

*Chris-Craft Indus., Inc.*, 430 U.S. 1, 24-42 (1977). And in a pair of decisions in 1979, the Court rejected private rights of action under Section 17(a) of the Exchange Act and Section 206 of the Investment Advisers Act of 1940. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568-79 (1979); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979). In one of those cases, the Court recognized that, if there were no bar to inferring private rights of action, "virtually every provision of the securities Acts" would have "an implied private cause of action." *Touche Ross*, 442 U.S. at 577. The Supreme Court understandably refused to accept that untenable result.

Respectfully, this Court should hold that Plaintiff cannot make an end run around this bar through artful pleading, by simply asserting a violation of Section 13(d) under Section 10b-5. The implied private right of action in Section 10(b) is a "judicial construct" that should not be expanded absent Congressional directive. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 167 (2008). Here, there is already clear directive from Congress -- Section 18 of the 1934 Act already provides a private cause of action against persons who "make or cause to be made" materially misleading statements in reports or other documents filed with the SEC. 15 U.S.C. § 78r. Congress makes the laws, and any decision to create an entirely new class of damages remedies for technical violations of Section 13(d) -- beyond what is already provided for in Section 18 -- is better left to legislative judgment, not the courts.

Though it is clear that no private right of action for a violation of Section 13(d) should be judicially implied, this Court need not even reach that issue to dismiss the SAC. To satisfy the first prong for Section 10(b) liability, a plaintiff must plead a "misrepresentation or omission" that is "material." The SAC offers no allegations to suggest that Groussman's decision to file Schedule 13Gs rather than 13Ds qualifies as a material omission for purposes of an implied private action to enforce Section 10(b)/Rule 10b-5. The purpose behind Section 13(d) is to alert the marketplace

to large rapid aggregations of an issuer's security, which might reflect a potential change in corporate control. That purpose was not implicated by Groussman's trading in Riot, and the SAC alleges no facts to the contrary. And even if Groussman had filed a Schedule 13D stating that his shares were beneficially owned with Honig, besides being inaccurate that disclosure still would never have revealed an illicit, multi-layered, cross-border conspiracy like the one alleged in the SAC. Accordingly, any purported technical violation of Section 13(d) would not have been material to Plaintiff, whose purchases of Riot stock are purportedly based on omissions that the Company was subject to a "pump and dump" scheme, not a takeover attempt.

At bottom, Plaintiff's efforts to salvage this case by pivoting to alleged technical violations of reporting requirements under Section 13(d) is without merit. The Court should, consistent with Supreme Court precedent, decline to hold that Plaintiff may bring a claim directly under Section 13(d). The Court should further decline to imply a private right of action under Section 10(b) for violations of Section 13(d) reporting requirements, as doing so would impermissibly expand Section 10(b) far "beyond its present boundaries." *Stoneridge Inv.*, 552 U.S. at 165.

## II. ARGUMENT

### A. There Is No Private Right Of Action To Seek Damages Under Section 13(d)

Section 13(d) does not explicitly provide a private right of action. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 62 (1975) (a private claim for relief under Section 13(d) "is not expressly authorized by the statute or its legislative history"). Consistent with the Supreme Court's holding, three Courts of Appeal have held that Section 13(d) provides no private right of action for damages. *See Dreiling v. Am. Online Inc.*, 578 F.3d 995, 1003 (9th Cir. 2009) (holding that Section 13(d) was "not devised to provide private litigants with another means of litigating securities fraud"); *Motient Corp. v. Dondero*, 529 F.3d 532, 536 (5th Cir. 2008) ("there is no

3

private cause of action for money damages under Section 13(d)"); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 619 (2d Cir. 2002) ("Courts in this circuit have consistently declined to imply a cause of action for shareholders under § 13(d).") (collecting cases). Section 13(d) "neither confers rights on private parties nor proscribes any conduct as unlawful. It simply requires persons acquiring a substantial interest in a firm to report their acquisition to the Commission, the exchanges, and the issuer." *Liberty Nat. Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 564 (11th Cir. 1984).

Numerous federal district courts have likewise rejected attempts -- both by shareholders and issuers -- to assert damages claims under Section 13(d). *See, e.g., Rhyne v. Omni Energy Servs. Corp.*, No. CIVA 08-CV-00594, 2009 WL 1844474, at *8 (W.D. La. June 23, 2009) ("All claims for damages based upon the defendants' alleged violations of Section 13(d) must be dismissed, as it provides no private right of action for damages."); *Rubin v. Posner*, 701 F. Supp. 1041, 1051 (D. Del. 1988) ("no implied cause of action for money damages exists under § 13(d)"); *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 960 (S.D.N.Y. 1983) (collecting cases and noting that "courts have consistently refused to imply private rights of action for damages under § 13(d)"), *aff'd*, 730 F.2d 910 (2d Cir. 1984); *Rosenbaum v. Klein*, 547 F. Supp. 586, 591 (E.D. Pa. 1982) (declining "[t]o read into section 13(d) a cause of action for damages by shareholders who do not allege detrimental reliance as purchasers or sellers on misrepresentations in reports filed, but simply a failure to file required reports"); *Myers v. Am. Leisure Time Enterprises, Inc.*, 402 F. Supp. 213, 214 (S.D.N.Y. 1975) (dismissing cause of action under section 13(d) and analogizing to actions under section 13(a) in which "courts have held that private suits for damages are limited to section 18"), *aff'd*, 538 F.2d 312 (2d Cir. 1976).

Plaintiff, who does not attempt to assert a claim directly under Section 13(d) in the Second Amended Complaint, cannot seriously dispute this. In fact, Plaintiff conceded to this Court that he was not attempting "to assert a private cause of action . . . for a failure to file a Schedule 13D." *See* Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants Dai, Groussman, and Stetson's Motions to Dismiss the CACC [ECF No. 153] at 11 n.13. In a footnote in his most recent Opposition Brief, Plaintiff now contends that the above-line of cases regarding Section 13(d) is limited only to actions by issuers, not shareholders. *See* Opp. at 23 fn. 14. To the contrary, several of these decisions rejecting direct claims for damages under Section 13(d) involved suits filed by shareholders, rather than issuers. *See, e.g., Dreiling*, 578 F.3d at 997; *Rhyne*, 2009 WL 1844474, at *1-2; *Myers*, 402 F. Supp. at 214; *Sanders*, 582 F. Supp. at 950; *Rubin*, 701 F. Supp. at 1043.

Accordingly, no carve-out exists for Section 13(d) claims brought by shareholders. As one federal court summarized based on its accurate review of the case law, Section 13(d) "does not, 'by its terms, purport to create a private cause of action in favor of **anyone**.'" *Sanders*, 582 F. Supp. at 960 (emphasis added). And while some cases concerned suits brought by issuers, no decision -- and certainly none cited by Plaintiff -- has ever held that shareholders have a direct cause of action for damages under Section 13(d). Plaintiff himself admits as much, as he brings no claim directly under the statute, previously conceded he was not asserting a direct claim under Section 13(d), and the only case law cited in his latest opposition concerns implied claims under 10b-5.

In sum, the question of whether there "is an implied private right of action for shareholders to seek damages directly under Section 13(d) of the Securities Exchange Act of 1934" must be answered in the negative. No case law holds that Section 13(d) confers shareholders with a direct

claim for damages. Nor is there any reason for the Court to diverge from the current state of the law to create an entirely new private right of action under Section 13(d), as Plaintiff has never presented the issue as a matter for decision in either his briefing, or even in his pleadings.

### B. The Court Should Not Imply A Right Of Action Under Section 13(d)

Even assuming the issue were properly before the Court -- and it is not because the Second Amended Complaint pleads no direct claim under Section 13(d) -- Plaintiff has the burden to establish that he has a private right of action. *Suter v. Artist M.*, 503 U.S. 347, 363 (1992). That "a federal statute has been violated and some person has been harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). Determining whether a private right of action exists has two steps: "(1) Did Congress intend to create a personal right?; and (2) Did Congress intend to create a private remedy? Only if the answer to both of these questions is 'yes' may a court hold that an implied private right of action exists under a federal statute." *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 301 (3d Cir. 2007). Because Plaintiff cannot demonstrate either element -- much less both -- the statute provides him no private right of action, and plaintiff's complaint must be dismissed.

In evaluating whether a personal right exists under Section 13(d), the Court must review the "'text and structure' of the statute to determine whether the statute contained 'rights-creating' language that focuses on the 'individual protected' rather than 'the person regulated.'" *Wisniewski*, 510 F.3d at 301-02. The Second Circuit has already conducted this analysis with respect to Section 13(d), noting that the statute "does not contain rights-creating language; it simply requires investors to file certain statements . . . and [s]tatutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." *Hallwood Realty Partners*, 286 F.3d at 619 (citations and internal quotations omitted).

6

To determine whether Congress intended to create a private remedy, courts look to "factors related to the text and structure of the statute in question, including the existence of a comprehensive remedial scheme in the statute and the explicit creation of a private right of action elsewhere in the same statute." *Wisniewski*, 510 F.3d at 303. Several federal courts have already engaged in this analysis, correctly concluding that no private remedy exists. Reasons include that (1) "the relevant legislative history reveals 'an absence of legislative intent to imply a right of action under § 13(d);'" *Hallwood Realty Partners*, 286 F.3d at 620; (2) there is already "an express remedy under § 18(a) of the Williams Act, available to those shareholders who can prove reliance on misleading filings," *id.* at 2; (3) the terms of § 13(d) contain only a "reporting requirement" *Leff v. CIP Corp.*, 540 F. Supp. 857, 864 (S.D. Ohio 1982); and (4) "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Id.*

In deciding whether to create an implied right here, the Court should also take into consideration that Congress' intent in enacting Section 13(d) has nothing to do with the claims asserted against Groussman. As the Supreme Court has held, "the sole purpose of the Williams Act was the protection of investors who are confronted with a tender offer." *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 35 (1977). Instructive here is *Edelson v. Ch'ien*, 405 F.3d 620 (7th Cir. 2005). In that case, the plaintiff-shareholder who was not re-elected to the company's board sued a rival director under Section 13(d), alleging that the rival director had an intent to influence the company and therefore should have been filed a Schedule 13D (not a 13G). *Id.* at 623-24. The Seventh Circuit affirmed the district court's dismissal, noting that the dispute did not concern a tender offer or other contest for control, and the rival director's "action in voting against the [shareholder-plaintiff] simply is not the type of activity which Congress intended to regulate through private enforcement under § 13(d)." *Id*. at 164.

The same applies here. Plaintiff does not allege that Groussman was part of some tender offer or otherwise sought to effect a change in control of Riot. Accordingly, the purpose of the statute is not even implicated here. As such, Plaintiff cannot meet his burden to establish that he has a private right of action under Section 13(d).

### C. There Is No Right Of Action Under 10b-5 For Violations Of Section 13(d)

Recognizing that some earlier courts have concluded otherwise,[2] Groussman respectfully submits that the Court should decline to hold that a violation of Section 13(d) can serve as a predicate for a 10b-5 claim. The private right of action under §10(b) and Rule 10b-5 is a "judicial construct that Congress did not enact in the text of the relevant statutes." *Stoneridge Inv. Partners*, 552 U.S. at 164. Rather, it is the product of an era when "the [Supreme] Court assumed it to be a proper judicial function to provide such remedies as are necessary to make effective a statute's purpose." *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020). That era is over. The Supreme Court now "appreciate[s] . . . the tension between this practice and the Constitution's separation of legislative and judicial power." *Id*. "When a court recognizes an implied claim for damages on the ground that doing so furthers the 'purpose' of the law, the court risks arrogating legislative power." *Id*.

Accordingly, any argument that the Rule 10b-5 private right of action should cover technical reporting violations of Section 13(d) must be taken to the legislature. In *Touche Ross*, the Supreme Court clearly understood that inferring a right of action there would have meant "that virtually every provision of the securities Acts gives rise to an implied private cause of action" -- an untenable, absurd result that the Supreme Court "decline[d]" to accept. 442 U.S. at 577. That same logic counsels against implying a right of action under Section 10(b) for violations of Section

---

[2] *See, e.g., Vladimir v. Bioenvision Inc.*, 606 F. Supp. 2d 473, 490–91 (S.D.N.Y. 2009).

8

13(d). Indeed, there is no need to resort to implication, as "'[o]bviously, … when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly.'" *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 21 (1979). In fact, there are already "eight express liability provisions contained in the 1933 and 1934 Acts," as amended over the years: Sections 11, 12, and 15 of the Securities Act of 1933, and Sections 9, 16, 18, 20, and 20A of the Securities Exchange Act of 1934. *Musick, Peeler & Garrett v. Emp'rs Ins. of Wausau*, 508 U.S. 286, 296 (1993). Each of these "carefully drawn express civil remedies" contains "carefully drawn procedural restrictions" that "Congress regarded … as significant." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195, 210 & n.30 (1976).

And one of those "express civil remedies" -- Section 18 -- already addresses the harm alleged here. "Section 18 creates a private remedy for damages resulting from the purchase or sale of a security in reliance upon a false or misleading statement contained in any document or report filed with the SEC pursuant to the Exchange Act." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 283 (3d Cir. 2006). There is "evidence to support the view that § 18(a) was intended to provide the *exclusive* remedy for misstatements contained in any reports filed with the Commission." *Touche Ross*, 442 U.S. at 573-74 (emphasis added). For one, "it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.'" when it passed the Williams Act. *Transamerica*, 444 U.S. at 20. For another, to state a claim under Section 18, a plaintiff must "plead actual, as opposed to presumed, reliance upon a false or misleading statement." *Id.* If a Section 18 claim could avoid pleading reliance by bringing them under Section 10b, the practical effect "would be to erase Section 18 from the statute." *Pearlstein v. Just. Mortg. Invs.*, No. CA-3-76-1476-D, 1978 WL 1143, at *4 (N.D. Tex. Oct. 17, 1978).

While one district court has held that Section 18 may be unavailable where the "claims are based on a failure by defendants to file required documents rather than on documents that were misleading when filed," *see Levie v. Sears Roebuck & Co.*, No. 04 C 7643, 2006 WL 756063, at *4 (N.D. Ill. Mar. 22, 2006), here Plaintiff alleges that Groussman's 13G filings were misleading not missing, and that other defendants filed misleading 13Ds.  *See* SAC ¶¶ 179-80, 310-312. Accordingly, there is no statutory gap for Plaintiff's newly-minted theory under Section 13(d), and, so far as Plaintiff is concerned, Section 18 remains the exclusive remedy for any claim for money damages under his theory of the case.

### D. Even If Section 13(d) Violations Can Serve As A Basis For 10b-5 Claims Under Certain Circumstances, Those Circumstances Are Not Present Here

The Court need not reach the broader question of whether a technical violation of Section 13(d) can ever serve as the basis for a 10b-5 claim. Rule 10b-5 "encompasses only conduct already prohibited by § 10(b)." *Stoneridge Inv. Partners*, 552 U.S. at 157. To establish liability under Rule 10b5, a plaintiff must, among other things, plead facts showing that the "misrepresentation or omission" was "material." 17 C.F.R. § 240.10b-5. Accordingly, Plaintiff cannot turn judgment calls about whether to file Schedule 13Gs or 13Ds into an independent cause of action for securities fraud because "a violation of [mandatory] reporting requirements does not automatically give rise to a material omission under Rule 10b-5." *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000) (Alito, J.). As the Second Circuit has held, "the information required to be disclosed in 13D is [not] material *per se* for purposes of § 10(b) simply because such disclosure is required under the securities laws." *United States v. Bilzerian*, 926 F.2d 1285, 1298 (1991).

Even assuming Plaintiff adequately alleged a violation of reporting requirements under Section 13(d) against Groussman -- and Plaintiff does not -- that alleged conduct would not constitute a material misrepresentation. The gravamen of Plaintiff's 10b-5 claim is an allegedly

10

secret trading group coordinating trades to "pump and dump" Riot stock. But the information set forth in a Schedule 13D would not reveal the existence of an allegedly concealed "pump-and-dump" scheme. A Schedule 13D Form merely requires an investor to disclose its background and identity, the investor's purpose for acquiring the stock, the number of shares that are beneficially owned, and "arrangements or understandings" with respect to any securities of the issuer, such as "joint ventures, loan or option arrangements, puts or calls, guaranties of loans, guaranties against loss or guaranties of profits, division of losses or profits, or the giving or withholding of proxies." 15 U.S.C. § 78m (d)(1)(A)–(E); 17 C.F.R. § 240.13d-101. Such information is not intended to alert the market to potential "pump and dump" schemes or simply to disclose "investor groups."

The SAC does not attempt to state claims against Groussman based on an allegedly concealed attempt to change control of the Company. Even if it did, the SAC offers no non-conclusory allegations that Groussman was a member of an investor group -- to "pump and dump" shares, effect a change in control of the company, direct management, or otherwise. The SAC merely offers conclusory allegations that the "Honig Group" "acted in concert to control the management and policies of Riot" (SAC ¶ 325) and that "Groussman falsely identified himself as a passive 13G investor without any intention to influence or control the Company," SAC ¶ 328. The SAC does not allege facts that Groussman engaged in any attempt to "influence or control the Company," does not allege that Groussman ever voted his shares in any particular way, attempted a takeover of Riot, attempted to influence or control Riot's management, spoke to Riot's management even once about any topic, ever aspired to take control of the company, or ever communicated with the "Honig Group" about controlling or influencing Riot's management. In short, Plaintiff alleges no facts demonstrating that Groussman's trading in Riot implicated the

purpose of Section 13D. Accordingly, Plaintiff cannot explain why Groussman's "missing 13Ds" would have made any difference to reasonable investors.

### III. CONCLUSION

For the foregoing reasons and those stated in his Opening Memorandum and Reply, Groussman respectfully requests that this Court dismiss this action with prejudice.

Dated: March 14, 2022

By: s/ Kate Janukowicz
Kevin G. Walsh, Esq.
Kate E. Janukowicz, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4500
kwalsh@gibbonslaw.com
kjanukowicz@gibbonslaw.com

**BAKER & MCKENZIE LLP**
Perrie M. Weiner (*pro hac vice*)
Edward D. Totino (*pro hac vice*)
**BAKER & MCKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Tel:     (310)201-4728
perrie.weiner@bakermckenzie.com
Edward.totino@bakermckenzie.com

*Attorneys for Defendant Mark Groussman*