## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated, | : : : : | Civil Action No.: 18-2293(FLW)(ZNQ) |
| *Plaintiff*, | : : : | **LEAD PLAINTIFF'S SUPPLEMENTAL BRIEF** |
| v. | : : : | **PURSUANT TO THE COURT'S FEBRUARY 28, 2022 ORDER** |
| RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., JOHN O'ROURKE, and JEFFREY G. MCGONEGAL, | : : : : | **AND IN FURTHER OPPOSITION TO DEFENDANTS' MOTIONS TO** |
| *Defendants*. | : : : : | **DISMISS THE CONSOLIDATED SECOND AMENDED CLASS ACTION COMPLAINT** |
| | : | |

**LITE DEPALMA GREENBERG & AFANADOR, LLC**
Joseph J. DePalma
Jeremy N. Nash
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
jnash@litedepalma.com

*Local Counsel for Dr. Stanley Golovac*

**MOTLEY RICE LLC**
William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
bnorton@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

*Counsel for Dr. Stanley Golovac and Lead Counsel for the Class*

TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   LEGAL DISCUSSION AND ARGUMENT .................................................3

      A.    Shareholders Have an Implied Private Right of Action Under Section
            10(b) of the Exchange Act to Recover Damages They Sustain as a
            Result of Defendants' Violations of Section 13(d) ..............................3

      B.    While of No Consequence to Plaintiff's Claims Under Section 10(b)
            and 20(a), Courts Do Not Generally Recognize a Private Right of
            Action for Damages Directly Under Section 13(d) ............................14

III.  CONCLUSION.............................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
  568 U.S. 455 (2013) ...............................................................................4

*Amida Cap. Mgmt. II, LLC v. Cerberus Cap. Mgmt.*, L.P.,
  669 F. Supp. 2d 430 (S.D.N.Y. 2009)..................................................9

*Burt v. Maasberg*,
  2014 WL 1291834 (D. Md. Mar. 28, 2014)....................................8, 14

*Diceon Elecs., Inc. v. Calvary Partners, L.P.*,
  772 F. Supp. 859 (D. Del. 1991) .........................................................15

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336, 345 (2005) ......................................................................4

*GAF Corp. v. Milstein*,
  453 F.2d 709 (2d Cir.1971) .................................................................12

*Gruber v. Gilbertson*,
  2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) ........................... 7, 8, 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ...............................................................................4

*In re Luxottica Group S.A. Sec. Litig.*,
  293 F. Supp. 2d 224 (S.D.N.Y. 2003)...................................................9

*In re Phillips Petroleum Securities Litigation*,
  881 F.2d 1236 (3d Cir. 1989) ............................................................5, 6

*In the Matter of Arthur E. Fillmore*,
  60 S.E.C. Docket 689, 1995 WL 560221 (SEC Release No. 36259) (Sept. 21,
  1995).....................................................................................................10

*Jacobs v. Pabst Brewing Co.*,
  549 F. Supp. 1050 (D. Del. 1982) .......................................................15

*Kamerman v. Steinberg*,
  123 F.R.D. 66 (S.D.N.Y. 1988).............................................................6

*Kraft v. Third Coast Mistream*,
  2021 WL 860987 (S.D.N.Y. Mar. 8, 2021) ..........................................8

*Levie v. Sears Roebuck & Co.*,
  2006 WL 1886223 (N.D. Ill. July 5, 2006) ................................... 10, 11

*MTB Inv. Partners, LP v. Siemens Hearing Instruments, Inc.*,
   2013 WL 12149253 (D.N.J. Feb. 19, 2013)..........................................................7

*N. Sound Cap. LLC v. Merck & Co.*,
   938 F.3d 482 (3d Cir. 2019) ...............................................................................3

*Navellier v. Sletten*,
   262 F.3d 923 (9th Cir. 2001) ............................................................................10

*Puddu v. 6D Glob. Techs., Inc.*,
   2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) ........................................ 8, 13, 14

*Puddu v. 6D Glob. Techs., Inc.*,
   742 F. App'x 553 (2d Cir. 2018) ............................................................... 13, 14

*Rondeau v. Mosinee Paper Corp.*,
   422 U.S. 49 (1975) ........................................................................................9, 15

*Rosenbaum v. Klein*,
   547 F. Supp. 586 (E.D. Pa. 1982)......................................................................14

*Ross v. A.H. Robins Co.*,
   607 F.2d 545 (2d Cir. 1979) ...................................................................... 11, 12

*Rubin v. Posner*,
   701 F. Supp. 1041 (D. Del. 1988) ....................................................................14

*S.E.C. v. Teo*,
   746 F.3d 90 (3d Cir. 2014) ..............................................................................4, 5

*Seagoing Uniform Corp. v. Texaco, Inc.*,
   705 F. Supp. 918 (S.D.N.Y. 1989).....................................................................12

*SEC v. Gallagher*,
   1989 WL 95252 (E.D. Pa. Aug. 16, 1989).........................................................7

*Steel Partners II, LP v. Aronson*,
   2006 WL 1044818, (D.N.J. April 19, 2006) .....................................................15

*United States v. Wey*,
   2017 WL 237651 (S.D.N.Y. Jan. 18, 2017)........................................................8

## REGULATIONS

17 C.F.R. § 229.403 .........................................................................................3, 13

17 C.F.R. § 240.13d–1 .........................................................................................6

Court-appointed Lead Plaintiff Dr. Stanley Golovac ("Plaintiff") respectfully submits this supplemental brief pursuant to the Court's February 28, 2022 Order (ECF No. 216) and in opposition to the motions to dismiss ("MTD") the Consolidated Second Amended Class Action Complaint (the "Complaint" or "SAC") filed by Defendants Riot Blockchain, Inc., Barry C. Honig, John O'Rourke, Michael Beeghley, Catherine DeFrancesco, John Stetson, and Mark Groussman (the "Individual Defendants," and together with Riot, "Defendants").[1]

## I.    INTRODUCTION

On February 28, 2022, the Court instructed the parties to submit simultaneous supplemental briefing as to whether "[1] there is an implied private right of action for shareholders to seek damages directly under Section 13(d) of the Securities Exchange Act of 1934 [the "Exchange Act"] or [2] indirectly under Section 10(b)." ECF No. 216.   Because Plaintiff's claims against Defendants are brought under Section 10(b), Plaintiff will address the second question first.

***First***, it is well established that shareholders have an implied private right of action under Section 10(b) of the Exchange Act for violations of Section 13(d).  *See* § II.A, *infra*.   In that regard, the Supreme Court and Third Circuit have long

---

[1] Capitalized terms herein have the same meanings as in the Complaint (ECF No. 188), paragraphs of which are cited as "¶ __."  Plaintiff's MTD opposition (ECF No. 201) is cited as "Pl.'s Br. __."  Defendant Honig's Reply in support of his MTD (ECF No. 210) is cited as "Honig Reply __."  All emphasis is added and internal quotations and citations are omitted, unless otherwise noted.

recognized that shareholders have a private right of action under Section 10(b) and Rule 10b-5 and that private actions to enforce the federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement by the U.S. Securities and Exchange Commission ("SEC"). It is also well established in this Circuit and elsewhere that shareholders may predicate their private right of action under Section 10(b) upon misstatements and omissions made in violation of the disclosure duties created by Section 13(d).

Here, Plaintiff has alleged that during the Class Period certain Riot shareholders—specifically Defendants Honig, DeFrancesco, Stetson, and Groussman—violated their disclosure duties under Section 13(d) by (1) failing to disclose on Schedule 13D that they were acting as a control group (as defined by Section 13(d) and Rule 13d-2) while engaging in a scheme to "pump and dump" Riot common stock at the expense of other public investors (¶¶ 251-302; Pl.'s Br. 24-29); and (2) failing to "promptly" report (as required by Section 13(d) and Rule 13d-2) their material sales of Riot stock as part of that scheme (¶¶ 312-343; Pl.'s Br. 36-42). To facilitate this scheme, Riot's Chairman and CEO, Defendants O'Rourke and Beeghley, who have close and longstanding affiliations with Honig and other group members (¶¶ 290-303; Pl.'s Br. 11-12), concealed Honig's § 13(d) investor group by causing Riot to issue false and misleading Forms S-3, S-3/A, and Schedule 14A that failed to disclose (and affirmatively denied the existence of, *see, e.g.*, ¶¶

354, 367, 370) this § 13(d) group in violation of Item 403 of Regulation S-K (17

C.F.R. § 229.403) and Section 10(b) and Rule 10b-5 generally.[2]

**Second**, although it is of no consequence to Plaintiff's claims under Section

10(b), courts have not generally recognized an implied private right of action for

shareholders for damages directly under Section 13(d). *See* § II.B.  However, many

courts—including in the Third Circuit—recognize an implied private right of action

for shareholders under Section 13(d) for *injunctive* relief.

## II.   LEGAL DISCUSSION AND ARGUMENT

### A.   Shareholders Have an Implied Private Right of Action Under Section 10(b) of the Exchange Act to Recover Damages They Sustain as a Result of Defendants' Violations of Section 13(d)

Courts have long recognized a private right of action for damages under

Section 10(b) and Rule 10b-5.  *See N. Sound Cap. LLC v. Merck & Co.*, 938 F.3d

482, 487 (3d Cir. 2019) (noting that the Supreme Court "has accepted . . . implied

---

[2] This Court's April 30, 2020 Opinion (ECF No. 166) (Wolfson, J.), held that the "failure by Honig to 'promptly' disclose his material decrease in stock holdings" as required by "Section 13(d)" and "SEC Rule 13d-2" was "deceptive when viewed in the wider context of Plaintiff's allegations that Honig did so in order to conceal his sales from the public as part of a scheme to pump-and-dump Riot's stock" and that this illegal conduct "adequately alleged a 'deceptive and manipulative' act by Honig that is actionable under Section 10(b)."  *Id.* at 33-34.  Likewise, this Court's December 23, 2020 Opinion and Order (ECF No. 187) (Quraishi, J.) held that "Plaintiff has sufficiently alleged that Honig made a material misrepresentation and/or omission by, at the very least, not filing a Schedule 13(d) or 13A throughout 2017 and promptly disclosing his material acquisitions or dispositions of Riot stock."  *Id.* at 13.

causes of action" under Section 10(b) of the Exchange Act "under stare decisis and as ratified by Congress in the PSLRA") (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 274–75 (2014)).  "Congress, the Executive Branch, and th[e] [Supreme] Court . . . have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement [by the SEC].'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 478 (2013).

"All civil enforcement actions, whether initiated by the SEC or by a private party through an implied right of action share the same general goal: 'to maintain public confidence in the marketplace.'" *S.E.C. v. Teo*, 746 F.3d 90, 101 (3d Cir. 2014) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005)); *see also id.* at 104 n.24 ("[T]he statutes make [private enforcement suits] available . . . to protect [investors] against those economic losses that misrepresentations actually cause.") (quoting *Dura*, 544 U.S. at 345).

In *Teo*, the Third Circuit described how the defendants had engaged in "collective misreporting" under Section 13(d) and how that "flagrant fraud insulated the valuation of the [defendants'] Musicland stock holdings." *Id.* at 108.  The court observed that "*[t]hese were serious violations of Section 13(d)* enabling the [defendants] to acquire a sizeable ownership interest in a [publicly] traded company without the awareness of company directors, fellow shareholders, the SEC, or the

market-at-large.  Moreover, *all of this was done with conscious intent, violating Section 10(b)*." *Id.* at 109.  The court further recounted how "[t]hese fraudulent acts enabled [defendants] to surreptitiously acquire and hold a large volume of stock that, in turn, netted huge profits when sold to Best Buy." *Id.*  The court concluded:  "*It is precisely this type of shadowy dealing that the Securities Exchange Act—and specifically Section 13(d) and Section 10(b)—was designed to combat in order to uphold the integrity of the stock market*."  *Id*.

Courts in this Circuit and across the country routinely recognize that failing to disclose information required by Section 13(d)—such as failing to file a Schedule 13D, filing a false or misleading Schedule 13D, or failing to promptly update a Schedule 13D—can serve as predicate conduct creating liability in a private action for damages under Section 10(b) and Rule 10b-5.  For example, in *In re Phillips Petroleum Securities Litigation*, 881 F.2d 1236 (3d Cir. 1989), shareholders brought a class action under Section 10(b) alleging that the defendant partnership "should have amended its Schedule 13–D . . . to reflect [its] change of intent" and that, as a result, "they [were] liable under the federal securities laws . . . for failing to communicate that change of intention promptly" as required by "Rule 13d–2, 17 C.F.R. § 240.13d–1." *Id.* at 1245-46 n.14.  Although the court held that "on this record" defendants' "delay in disseminating its change of intent could not have proximately caused the plaintiffs' injury," the court nonetheless observed that

"[t]here can be no doubt that a duty exists to correct prior statements, if the prior statements were true when made but misleading if left unrevised." *Id.* at 1245 (citing Rule 13d–2, 17 C.F.R. § 240.13d–1). The *Phillips Petroleum* court also noted the "[s]trong policy considerations" underlying "the 'prompt' amendment requirement" of Rule 13d–2, which "require[s] where 'any material change occurs in the facts set forth' in Schedule 13D, that the person required to file the Schedule 13D 'promptly' file 'an amendment disclosing such change' with the [SEC], the issuer of the security, and with any exchange on which the security is traded." *Id.* at 1245-46.

Thus, the *Phillips Petroleum* court recognized that Section 13(d) and Rule 13d–2 create an "obligation to amend" Schedule 13D that renders a violator "liable under the federal securities laws . . . for failing to communicate that change of intention promptly." *Id.* at 1245-46. As support, the *Phillips Petroleum* court cited *Kamerman v. Steinberg*, 123 F.R.D. 66 (S.D.N.Y. 1988), a private securities class action brought under Section 10(b) in which the court certified a class of stock purchasers "who were allegedly damaged as a result of Steinberg's failure to disclose" under Section 13(d). The *Kamerman* court stated that "[s]ince we do not believe that the Williams Act in general and Section 13(d) in particular were meant to excuse or justify conduct arguably fraudulent under the 1934 Act, we hold that Plaintiffs' subclass claim will lie under Section 10(b) and Rule 10b–5." *Id.* at 74.

Similarly, in *MTB Investment Partners, LP v. Siemens Hearing Instruments, Inc.*, 2013 WL 12149253 (D.N.J. Feb. 19, 2013), an investment fund sued a corporation in a private action under Section 10(b) for its "materially false or misleading" statements in "a schedule 13D." *Id.* at *2.  In denying the motion to dismiss, the court held that the plaintiff had "sufficiently pled that [the defendant] made a material misstatement and omission" in violation of Section 10(b).  *Id.* at *4. *See also SEC v. Gallagher*, 1989 WL 95252, at *4 (E.D. Pa. Aug. 16, 1989) (noting that "courts have found liability under Section 10(b) and Rule 10b–5 where . . . publicly traded companies filed inaccurate public reports with the SEC" and that such "liability" can be found "for filing [an] inaccurate Schedule 13D").

Like courts in the Third Circuit, courts in the Second Circuit routinely recognize that a violation of Section 13(d)'s disclosures obligation can form the basis for a private shareholder action under Section 10(b).  For example, in *Gruber v. Gilbertson*, 2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018), the court denied the defendants' motion to dismiss a private securities class action under Section 10(b) based on violations of Section 13(d).  Specifically, the court held that "[t]he omission concerning [defendants'] ownership interest is actionable because they had a duty to disclose it.  Section 13(d) . . . requires 'certain disclosures to be filed on a Schedule 13D by a person that acquires an interest in more than 5% of certain classes of securities.'"  *Id.* at *13.  The court further found that the defendants' "intentional

7

failure to disclose beneficial ownership information when disclosure was expressly required was . . . both a communicative and deceptive act: it signaled falsely to investors that there was no such ownership to disclose." *Id.* (quoting *United States v. Wey*, 2017 WL 237651, at *8 (S.D.N.Y. Jan. 18, 2017)).

Numerous other courts in the Second Circuit and elsewhere have endorsed private shareholder actions under Section 10(b) predicated on violations of Section 13(d). *See, e.g.*, *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *6 (S.D.N.Y. Mar. 30, 2021) (holding that "the allegation that Wey was obligated to file the Schedule 13D—and opted not to do so—is enough to adequately plead a material omission for purposes of Plaintiffs' 10(b) claim" and observing that "[b]ecause Plaintiffs plead sufficient facts at this juncture to support their contention that Wey had a duty to disclose, they have also plausibly established that Wey's failure to file a Schedule 13D was a material omission that can give rise to liability"); *Kraft v. Third Coast Mistream*, 2021 WL 860987, at *17 (S.D.N.Y. Mar. 8, 2021) (holding that "[defendant] can be liable under Section 10(b) for a failure to disclose information on [defendant's] 13D Form . . . if Schedule 13D required that information to be disclosed"); *Burt v. Maasberg*, 2014 WL 1291834, at *17 (D. Md. Mar. 28, 2014) (holding that "[t]he failure to file or amend a Schedule 13D, as required, serves as a predicate for liability under § 10(b) and Rule 10b-5(b)" and "the failure to file or disclose information in a Schedule 13D is actionable"); *Amida*

*Cap. Mgmt. II, LLC v. Cerberus Cap. Mgmt., L.P.*, 669 F. Supp. 2d 430, 439 (S.D.N.Y. 2009) ("The parties agree that liability under § 10(b) may be imposed for failure to amend a Schedule 13D as required by § 13(d) and the rules thereunder."); *In re Luxottica Grp. S.A. Sec. Litig.*, 293 F. Supp. 2d 224, 234 (S.D.N.Y. 2003) (noting where "if an individual files a Schedule 13D in an untimely manner . . . injured parties . . . have a remedy because those individuals 'who allegedly sold at an unfairly depressed price have an adequate remedy by way of an action for damages'" and holding that "defendants have not demonstrated that, as a matter of law, the failure to file a Schedule 13D regarding their April 19, 2000 purchases, was not in violation of Section 10(b)'s prohibition on false and misleading statements") (quoting *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 60 (1975)).

Indeed, in *Rondeau*, the Supreme Court held that "a showing of irreparable harm is necessary for a private litigant to obtain injunctive relief in a suit under [Section] 13(d) of the Securities Exchange Act." 422 U.S. at 50-51. In so holding, the court further explained that "those persons who allegedly sold at an unfairly depressed price have an adequate remedy by way of an action for damages" and noted that "such a suit is now pending in the District Court and class action certification has been sought" and that such a class action for damages "provides a potential sanction for petitioner's violation of the Williams Act." *Id.* at 60 n.10.

9

In sum, federal courts have unanimously held that shareholders have a private right of action under Section 10(b) when they are damaged by material violations of Section 13(d).  Moreover, this is consistent with the SEC's own interpretation of Sections 13(d) and 10(b), which is that "anyone who knowingly or recklessly makes a material misstatement or omission in connection with a Schedule 13D filing violates, as well, Section 10(b) of the Exchange Act and Rule 10b-5 thereunder." *In the Matter of Arthur E. Fillmore*, 60 S.E.C. Docket 689, 1995 WL 560221, at *3 (SEC Release No. 36259) (Sept. 21, 1995).  *See also Navellier v. Sletten*, 262 F.3d 923, 945 (9th Cir. 2001) ("[T]he SEC's reasonable interpretation of a statute that it administers . . . is entitled to deference."); *S.E.C. v. Drexel Burnham Lambert Inc.*, 837 F. Supp. 587, 608 (S.D.N.Y. 1993) ("A violation of section 13(d) may also constitute a violation of section 10(b) and Rule 10b–5 thereunder.").

Despite this overwhelming weight of authority, Defendants may argue that "[o]ne complaining of a false or misleading statement in a Schedule 13D may seek damages only under Section 18(a) of the Act."  Honig Reply (ECF No. 210) at 19.  This argument is misplaced for the reasons discussed in *Levie v. Sears Roebuck & Co.*, 2006 WL 1886223 (N.D. Ill. July 5, 2006).  In *Levie*, the plaintiff alleged that the defendants had "violated § 10(b) and Rule 10b-5 by failing to amend" a "Schedule 13G or to file an accurate Schedule 13D once [they] had formulated an intent to effect the change and control of Sears." *Id.* at *2.  In moving to dismiss,

the defendants argued that plaintiffs had failed to state a claim "because there is no private right of action for damages under § 13(d), and that the exclusive remedy for a violation of § 13(d) is a claim under § 18(a), 15 U.S.C. § 78t(a), which provides an explicit remedy to shareholders who purchased or sold securities in reliance on a false or misleading statement in a § 13(d) filing." *Id.* The court rejected this argument, holding that "plaintiff's claims that defendants 'failed to file' the required schedules fall outside of § 18(a), which provides a remedy to persons who purchased or sold securities in reliance on statements in an SEC filing that was false or misleading at the time it was made." *Id.* The court observed that "Plaintiff is not alleging that the Schedule 13D . . . was misleading when made, but rather that defendants 'failed to file' required amendments or updated documents." *Id.* at *3.

Here, Defendants Honig, Groussman, Stetson, and DeFrancesco not only filed misleading Schedules 13D and 13G that concealed their group status, but as in *Levie*, these individuals also ***failed to file*** the required amendments to their Schedules 13D that would have alerted the market to their massive—and coordinated—stock sales as part of their pump-and-dump scheme.  ¶¶ 308-43.

Similarly, in *Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979), the court concluded that although "Section 18 expressly creates a private remedy for 'false or misleading' statements contained in 'any application, report or document' filed with the S.E.C. pursuant to the 1934 Act in favor of any person 'who, in reliance upon

such statement, shall have purchased or sold a security at a price which was affected by such statement,'" *id.* at 551, Section 18 was not the exclusive basis upon which liability for misstatements in filed reports can be found.  The Court concluded that "even as to those documents filed with the S.E.C., plaintiffs may seek to prosecute their claim under § 10(b) and Rule 10b–5." *Id.* at 556.

Likewise, in *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F. Supp. 918 (S.D.N.Y. 1989), the court observed that "Section 13(d) . . . 'was intended to alert investors to potential changes in corporate control so that they could properly evaluate the company in which they had invested or were investing.  Disclosure which is false or misleading subverts this purpose.'" *Id.* at 926 (quoting *GAF Corp. v. Milstein*, 453 F.2d 709, 720 (2d Cir. 1971)).  "Hence," the court found, "a section 13(d) false filing would violate 'one of the antifraud provisions, for example, section 10(b).'" *Id.* (quoting *GAF Corp.*, 453 F.2d at 720).  The court further held "that where a 13(d) violation also involves 'a purchase or sale of securities, section 10(b) will apply.'" *Id.* (quoting *GAF Corp.*, 453 F.2d at 720 & n. 22).  Thus, the court concluded, "even though plaintiff has not asserted a . . . private action under section 18, the court finds that this action can be maintained under section 10(b), provided that the allegations are found to be sufficient to establish the essential elements of a section 10(b) claim." *Id.* at 927.

In addition to knowingly participating in a scheme to violate Section 13(d), Defendants O'Rourke and Beeghley also caused the Company to violate Item 403 of Regulation S-K, 17 C.F.R. § 229.403.[3]  *See Puddu v. 6D Glob. Techs., Inc.*, 742 F. App'x 553, 555 (2d Cir. 2018) (reversing dismissal of private shareholder action under § 10(b) and holding that under "17 C.F.R. § 229.403(a)) . . . 6D was required, but failed," to disclose that its 45% shareholder "'beneficially owned' more than 5% of the securities of 6D," which was sufficient to establish a "material misstatement or omission" as to the 6D under § 10(b)); *see also Puddu*, 2021 WL 1198566, at *7 ("6D's failure to disclose this information pursuant to SEC regulations (including 17 C.F.R. § 229.403(a)) was sufficient to establish a material misstatement or omission as to the 6D Defendants").  Here, as in *Puddu*, Plaintiff alleges that O'Rourke and Beeghley's conduct as the CEO and Chairman of Riot caused the Company to violate Item 403, and in turn, Section 10(b) by issuing material misstatements and omissions to the market.

---

[3] This Court's December 23, 2020 Order (ECF No. 187), noted that "'as an issuer of public securities, Riot's "disclosure obligations" were "imposed" by "Item 403 of Regulation S-K," which required Riot to disclose in its Forms S-3 and 10-K "any 'group' as that term is used in section 13(d)(3).'" *Id.* at 10.  The Court further found that "Plaintiff has provided the Court with sufficient facts alleging the Riot Defendants' knowledge that Honig, DeFrancesco, Groussman and Stetson acted as a group.  Therefore, Plaintiff has sufficiently pleaded that the Riot Defendants either filed a false and misleading statement by a material omission, or engaged in a deceptive act, under Rule 10b of the Exchange Act." *Id.* at 11.

In his reply, Defendant Honig cited *Puddu*, 2021 WL 1198566, and asserted that "[t]he notion that a mere failure to update a Form 13D can alone form the basis of a private right of action for violation of securities laws is *dicta*." Honig Reply 20. This is incorrect, and overlooks the Second Circuit's earlier reversal of dismissal on this very issue, *Puddu*, 742 F. App'x at 555-56, and ignores the many similar decisions by courts across the country. *See, e.g.*, *Gruber*, 2018 WL 1418188, at *13 (holding that defendants' "intentional failure to disclose beneficial ownership information when disclosure was expressly required [by Section 13(d)] was . . . both a communicative and deceptive act"); *Burt*, 2014 WL 1291834, at *17 (holding that "[t]he failure to file or amend a Schedule 13D, as required, serves as a predicate for liability under § 10(b) and Rule 10b-5(b)").

**B.     While of No Consequence to Plaintiff's Claims Under Section 10(b) and 20(a), Courts Do Not Generally Recognize a Private Right of Action for Damages Directly Under Section 13(d)**

Courts have not generally recognized an implied private right of action for damages directly under Section 13(d). *See, e.g.*, *Rubin v. Posner*, 701 F. Supp. 1041, 1051 (D. Del. 1988) ("conclud[ing] that no implied cause of action for money damages exists under § 13(d)"); *Rosenbaum v. Klein*, 547 F. Supp. 586, 591 & n.1 (E.D. Pa. 1982) (declining "[t]o read into section 13(d) a cause of action for damages by shareholders who do not allege detrimental reliance as purchasers or sellers on misrepresentations in reports filed, but simply a failure to file required reports" but

14

noting that "[b]y contrast, there is strong authority that section 13(d) will ground a suit for injunctive relief against the filing of false or misleading reports").

In contrast to money damages, many courts—including in the Third Circuit—have recognized an implied private right of action under Section 13(d)—for both shareholders and issuers—for *injunctive relief*. *See, e.g.*, *Steel Partners II, LP v. Aronson*, 2006 WL 1044818, at *4 (D.N.J. Apr. 19, 2006) (allowing shareholder's action under § 13(d) seeking order requiring defendant to file a Schedule 13D, and explaining that "[a]lthough Section 13(d) does not, by its terms, create a private right of action to redress a violation, federal courts have recognized an implied private right of action for violations") (citing *Rondeau*, 422 U.S. at 62); *see also Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859, 865 (D. Del. 1991) (holding that "an implied private right of action for equitable relief is appropriate under § 13(d)"); *Jacobs v. Pabst Brewing Co.*, 549 F. Supp. 1050, 1054 (D. Del. 1982) (holding that "the bulk of the decisional authority supports" that "a right of action exists for shareholders seeking injunctive relief pursuant to Section 13(d)").

## III.  CONCLUSION

As explained above, shareholders have an implied right of action under Exchange Act Section 10(b) for misstatements and omissions made in violation of Exchange Act Section 13(d).  Accordingly, and for the reasons set forth in Plaintiff's MTD opposition, Defendants' dismissal motions should be denied in their entireties.

Dated:  March 14, 2022          Respectfully submitted,

**LITE DEPALMA GREENBERG &
AFANADOR, LLC**

*/s/ Joseph J. DePalma*
Joseph J. DePalma
Jeremy N. Nash
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
jnash@litedepalma.com

*Local Counsel for Lead Plaintiff Dr. Stanley Golovac*

**MOTLEY RICE LLC**
William S. Norton (*pro hac vice*)
Joshua C. Littlejohn (*pro hac vice*)
Christopher F. Moriarty (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
bnorton@motelyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com

*Lead Counsel for Lead Plaintiff Dr. Stanley Golovac
and Lead Counsel for the Class*

**US. MARKET ADVISORS LAW GROUP PLLC**
David P. Abel
5335 Wisconsin Ave. NW, Ste. 440
Washington, D.C.  20015
202-274-0237 Telephone
202-686-2877 Facsimile
dabel@usmarketlaw.com

*Counsel for Lead Plaintiff Dr. Stanley Golovac*

16