UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC., et al.,<br><br>*Defendants*. | No. 18-CV-2293 (ZNQ) (TJB)<br><br><br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT JOHN STETSON'S SUPPLEMENTAL BRIEF
IN SUPPORT OF HIS MOTION TO DISMISS THE CONSOLIDATED
<u>SECOND AMENDED CLASS ACTION COMPLAINT</u>**

Matthew M. Oliver
LOWENSTEIN SANDLER LLP
One Lowenstein Dr
Roseland, NJ 07068
Tel.: 212-419-5852
Email: moliver@lowenstein.com

Daniel Walfish (admitted *pro hac vice*)
WALFISH & FISSELL PLLC
405 Lexington Avenue 8th floor
New York, NY 10174
Tel.: 212-672-0521
Email: dwalfish@walfishfissell.com

*Attorneys for Defendant John Stetson*


# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................... ii

I.     Plaintiff Cannot Premise Stetson's Liability on Section 13(d) ........................1

II.    Plaintiff Cannot Premise Stetson's Liability on Section 10(b) .......................2

    A.  The Mere Failure to File a Schedule 13D Is Not a Violation
        of Rule 10b-5(b) or of Rule 10b-5(a) and (c) ..............................................2

    B.  Plaintiff Cannot Premise Liability on a Supposed "Duty to Disclose" .......8

CONCLUSION ........................................................................................................12

# **TABLE OF AUTHORITIES**

Page(s)

## *Cases*

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) ...................... 6

*Azurite Corp. v. Amster & Co.*, 52 F.3d 15 (2d Cir. 1995) ....................................... 7

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ..................................................... 9, 11

*Burt v. Maasberg*, 2014 WL 1291834 (D. Md. Mar. 28, 2014) ............................. 6, 7

*Glazer v. Formica Corp.*, 964 F.2d 149 (2d Cir. 1992) ............................................ 8

*Gruber v. Gilbertson*, 2018 WL 1418188 (S.D.N.Y. Mar. 20, 2018) .................... 6, 7

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
  286 F.3d 613 (2d Cir. 2002) .................................................................................. 2

*In re DVI, Inc. Sec. Litig.*, 639 F.3d 623 (3d Cir. 2011) .......................................... 4

*In re Luxottica S.p.A. Securities Litigation*,
  293 F. Supp. 2d 224 (E.D.N.Y. 2003) ................................................................... 7

*In re Royal Dutch/Shell Transport Sec. Litig.*,
  2006 WL 2355402 (D.N.J. Aug. 14, 2006) ........................................................... 4

*Janus Capital Grp v. First Derivative Traders*, 564 U.S. 135 (2011) ....................... 3

*Oran v. Stafford*, 226 F.3d 275 (3d Cir. 2000) ........................................................ 9

*Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1 (1977) ................................................. 9

*Puddu v. 6D Global Techs, Inc.*,
  2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) .................................................... 6, 7

*Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49 (1975) ............................................ 9

*Rosenbaum v. Klein*, 547 F. Supp. 586 (E.D. Pa 1982) ........................................... 2

*SEC v. Fiore*, 416 F. Supp. 3d 306 (S.D.N.Y. 2019) .................................................................7

*SEC v. Honig*, 2020 WL 906383 (S.D.N.Y. Feb. 25, 2020) ......................................................11

*SEC v. Honig*, 2021 WL 276155 (S.D.N.Y. Jan. 27, 2021) ..................................................8, 11

*SEC v. Jammin Java Corp.*, 2016 WL 6595133 (C.D. Cal. July 18, 2016) ..............................7

*SEC v. Sands*, 902 F. Supp. 1149 (C.D. Cal. 1995) ....................................................................8

*SEC v. Savoy Indus., Inc.*, 587 F.2d 1149 (D.C. Cir. 1978) .......................................................5

*SEC v. Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d 923 (S.D. Ohio 2009) .........................7

*SEC v. Strebinger*, 114 F. Supp. 3d 1321 (N.D. Ga. 2015) .......................................................7

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) ...........................4, 5

*Stratte-McClure v. Morgan Stanley*, 776 F.3d 94 (2d Cir. 2015) ..............................................9

*Takata v. Riot Blockchain, Inc.*, 2020 WL 2079375 (D.N.J. April 30, 2020) .....................4, 10

*Vladimir v. Bioenvision, Inc.*, 606 F. Supp. 2d 473 (S.D.N.Y. 2009) .......................................7

**Statutes**

Section 10(b) of the Securities Exchange Act of 1934,
   15 U.S.C. § 78j(b) ............................................................................................... *passim*

Section 13(d) of the Securities Exchange Act of 1934,
   15 U.S.C. § 78m(d) ............................................................................................. *passim*

**Rule**

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ...................................................................... *passim*

John Stetson submits this supplemental brief in response to the Court's February 28, 2022 order [ECF 202].[1]

## INTRODUCTION

Stetson, a former 4.99% shareholder of Riot, filed no Schedule 13Ds at all and is accused solely of failing to file Schedule 13Ds that would have disclosed his alleged membership in a purported "group."[2] Any such alleged failure on Stetson's part is not actionable here under Section 13(d) or Section 10(b) of the Securities Exchange Act of 1934. There is no private right of action for damages under Section 13(d). And a pure failure to file a Schedule 13D, without more, cannot be the basis of a Section 10(b) claim. As far as we know, no court has ever so held, and this Court should not be the first.

### I.  Plaintiff Cannot Premise Stetson's Liability on Section 13(d)

Any alleged obligation on Stetson's part to file Schedule 13Ds was created, if at all, solely by rules promulgated by the SEC under Section 13(d). But there is no implied damages remedy under Section 13(d) for violations of that provision or its

---

[1] Capitalized terms used herein have the meanings assigned in Stetson's Memorandum of Law in Support of His Motion to Dismiss the Consolidated Second Amended Class Action Complaint [ECF 197-1], which is here cited as "Stetson Br." Stetson's Reply Memorandum [ECF 211] is here cited as "Stetson Reply." Plaintiff's Opposition Memorandum [ECF 201] is here cited as "Opp." In quotations, all emphases are added unless otherwise noted.

[2] Plaintiff has not pled the existence of a "group," for reasons previously explained by Stetson and other Defendants. *E.g.*, Stetson Br. 5-10; Stetson Reply 2-10.

implementing rules. *See, e.g.*, *Rosenbaum v. Klein*, 547 F. Supp. 586, 591 (E.D. Pa 1982) (holding that there is no "cause of action for damages by shareholders" based on a "failure to file" reports required by Section 13(d)); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 619 (2d Cir. 2002) (observing that "courts in this circuit have consistently declined to imply a cause of action for shareholders under § 13(d)" and holding that there is also "no private damages remedy for issuers under § 13(d)").

## II.   Plaintiff Cannot Premise Stetson's Liability on Section 10(b)

To get around the fact that Section 13(d) is not privately actionable here, Plaintiff is proceeding as if any alleged violation of Section 13(d) is an automatic predicate for a claim under Section 10(b) and Rule 10b-5. *See* Opp. 22-23.[3] But that is not the law. Section 13(d) is a technical regulatory reporting statute with a very specific purpose. It is not an antifraud provision.

### A.  The Mere Failure To File a Schedule 13D Is Not a Violation of Rule 10b-5(b) or of Rule 10b-5(a) and (c)

The requirements of Section 10(b), which is an antifraud provision, are unsatisfied here. Section 10(b) requires that a defendant, "in connection with the purchase or sale of a security," "use or employ" a "deceptive device or contrivance."

---

[3] Notably, this stance contradicts Plaintiff's earlier insistence that he was not seeking "to assert a private cause of action . . . for a failure to file a Schedule 13D." ECF 153 at 11 n.13. But that is precisely what Plaintiff is doing here as to Stetson.

2

15 U.S.C. § 78j(b). Section 10(b) has been implemented through SEC Rule 10b-5, which has three prongs, labeled (a), (b), and (c).[4]

Prong (b) of Rule 10b-5, which is the basis for Count II of the SAC, clearly does not apply to Stetson. A prong (b) claim requires that the defendant, in his own name, have either made a materially "untrue statement" or have omitted a material fact such that "statements made" by the defendant are misleading. *E.g.*, *Janus Capital Grp v. First Derivative Traders*, 564 U.S. 135, 141 & n.3, 142-43 (2011). Yet Stetson filed no Schedule 13Ds and made no "statement" at all. Stetson therefore could not have made an "untrue statement" nor a statement that was misleading by omission. Stetson must be dismissed from Count II.

Prongs (a) and (c) of the Rule, which are the basis for Count I of the SAC, also are unsatisfied. They, as well as the text of the underlying statute ("use or

---

[4] Rule 10b-5 provides (17 C.F.R. § 240.10b-5):

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

    (a) To employ any device, scheme, or artifice to defraud,

    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

3

employ . . . a deceptive device or contrivance"), would require that Stetson have engaged in some *affirmative* act of deception in furtherance of a scheme to defraud ("*employ* any *device*, *scheme*, or *artifice* to defraud," or "*engage* in any *act*, *practice*, or *course of business* which operates or would operate as a fraud or deceit upon any person"). To hold a defendant liable under these so-called "scheme liability" provisions, Stetson must have engaged in some *conduct* that is *deceptive*. *E.g.*, *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 643 (3d Cir. 2011) (Rule 10b-5(a) and (c) make "*fraudulent conduct* unlawful"); *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 158 (2008) (deceptive conduct is required in the absence of a specific statement). As this Court has previously stated, liability under Rule 10b-5(a) or (c) "is premised on a *course of deceptive* or manipulative *conduct*." *Takata v. Riot Blockchain, Inc.*, 2020 WL 2079375, at *14 (D.N.J. April 30, 2020). Thus, to satisfy his heightened pleading burden, Plaintiff must specify "what . . . deceptive acts" Stetson performed and "what effect the scheme had on the securities at issue." *Id*. (cleaned up and citing *In re Royal Dutch/Shell Transport Sec. Litig.*, 2006 WL 2355402, at *7 (D.N.J. Aug. 14, 2006)).

Plaintiff wholly fails to meet that pleading burden. The SAC does not allege any deceptive acts or conduct performed by Stetson, let alone what effect any such

non-existent deceptive acts had on Riot's securities.[5] Plaintiff has vaguely argued that he alleges some sort of scheme to gain hidden control of Riot and then pump-and-dump its shares via misleading press releases. The SAC, however, alleges *no facts* that would support such a scheme,[6] much less plead it with the requisite particularity. What is more, the SAC contains *no allegation* connecting Stetson to any such (non-existent) scheme. Stetson Reply 4-6; Stetson Br. 8-9. Stetson therefore must also be dismissed from Count I.

Further, without any filing or deceptive act by Stetson, Plaintiff cannot satisfy the "in connection with the purchase or sale of a security" requirement of Section 10(b) and Rule 10b-5, or the related requirement to allege "transaction causation," *i.e.*, reliance on an alleged misstatement or deceptive act. *See, e.g.*, *Stoneridge*, 552 U.S. at 160-61 (no claim stated where plaintiff did not "rely upon [the defendants'] *own* deceptive conduct," and calling into question whether "in connection with" was satisfied); *cf. SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1171 (D.C. Cir. 1978)

---

[5] Stetson's sales of his 4.99% stake were fully disclosed in advance, so no argument is available that those sales could constitute the requisite "***deceptive*** device" required by Section 10(b) and subsections (a) and (c) of Rule 10b-5. Stetson Br. 3-4. Indeed, Plaintiff eventually abandoned any theory that Stetson's 4.99% stake or the sales of it were somehow deceptive. *See* Stetson Reply Br. 1.

[6] The SAC fails to allege a pump-and-dump (not least because the press releases were not misleading) and equally fails to allege that Stetson or anyone sought or gained undisclosed control of Riot during the Class Period or otherwise. *See, e.g.*, Stetson Br. 7-9 & nn. 9-10; Stetson Reply 4-6, 11.

5

("[S]ection 10(b)'s 'in connection with' requirement is satisfied by *the filing of the Schedule 13D*, coupled with the public trading in Savoy stock. . . . [T]his requirement is satisfied whenever it may reasonably be expected that *a publicly disseminated document will cause reasonable investors to buy or sell securities in reliance thereon*."). Stetson's silence cannot have induced any investor to transact in a security, nor can it be said in any sense to have been "in connection with" any securities transaction.[7]

We have been unable to locate any case in which an investor's mere failure to make an allegedly required Section 13(d) filing, unaccompanied by any affirmative filing or alleged deceptive act, was held sufficient for liability under Section 10(b).[8]

---

[7] Plaintiff purports to rely on the so-called *Affiliated Ute* presumption of reliance on an omission. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972); SAC ¶¶ 478-80. This effort fails; *Affiliated Ute* does not apply to the allegations against Stetson. Plaintiff proffers two grounds for invoking the *Affiliated Ute* presumption: (1) that "this action involves Defendants' failure to disclose material adverse information regarding Riot's business operations and financial performance," SAC ¶ 478, and (2) that "a defendant (Honig) has engaged in conduct that amounts to manipulation." SAC ¶ 479. As to the first, Stetson is not accused of any omissions relating to Riot's business operations and financial performance. As to the second, there are no allegations that Stetson manipulated Riot's stock.

[8] In *Burt v. Maasberg*, 2014 WL 1291834, at *17 (D. Md. Mar. 28, 2014), *Puddu v. 6D Global Techs, Inc.*, 2021 WL 1198566, at *6 (S.D.N.Y. Mar. 30, 2021), and *Gruber v. Gilbertson*, 2018 WL 1418188, at *13 (S.D.N.Y. Mar. 20, 2018), the plaintiffs alleged not only failures to file Schedule 13Ds, but also a course of deceptive conduct in the markets in *addition* to the alleged omissions. *See Puddu*, 2021 WL 1198566, at *6 (complaint "also pleads facts alleging that Wey engaged in deceptive conduct," including a market manipulation scheme, "and that his failure

In fact, the SEC itself consistently charges omitted Schedule 13Ds only as a violation of Section 13(d), not of Section 10(b).[9] This Court should not pioneer a different approach here.

---

to file the Schedule 13D was consistent with the other allegedly deceptive efforts to hide his relationship to [the company]"); *Burt*, 2014 WL 1291834, at *4 (market manipulation scheme in which defendants "'secretly dr[o]ve down [the company's] stock price so [defendants] could acquire a dominant stake in [the company] at bargain basement prices'"); *Gruber*, 2018 WL 1418188, at *1-*4 (elaborate stock manipulation scheme). Also worth nothing is that all three cases, unlike this one, concerned a hidden controlling person or persons, rendering the omitted information material. *Puddu*, 2021 WL 1198566, at *3, *6, *9; *Burt*, 2014 WL 1291834, at *4; *Gruber*, 2018 WL 1418188, at *1. This case is completely different. *See* pages 9-12, *infra*; Stetson Br. 7-10; Stetson Reply 4-6.

      Plaintiff (Opp. 22-23) has cited other cases in which the defendant *did* make an affirmative Schedule 13D filing and which are unhelpful to Plaintiff for other reasons, too. For example, in *Vladimir v. Bioenvision, Inc.*, 606 F. Supp. 2d 473 (S.D.N.Y. 2009), the claims were dismissed for failure to allege a control purpose plausibly and with particularity (*id*. at 492-95) – a glaring failure here too. And Plaintiff (Opp. 23) incorrectly quoted from *Azurite Corp. v. Amster & Co.*, 52 F.3d 15, 18 (2d Cir. 1995). In that case, no Section 13(d) violation was alleged, period, and so the case did not reach the question whether, let alone hold that, a Section 13(d) violation can be a predicate for a Section 10(b) claim. Finally, in *In re Luxottica S.p.A. Securities Litigation*, 293 F. Supp. 2d 224, 234-236 (E.D.N.Y. 2003), the Section 10(b) claims were dismissed for failure to allege reliance, so any statements about the actionability of a Section 13(d) violation were dicta.

[9] *See, e.g.*, *SEC v. Strebinger*, 114 F. Supp. 3d 1321, 1329, 1331 (N.D. Ga. 2015) (omission of Schedule 13Ds was charged under Section 13(d); for Section 10(b) claim, SEC alleged "with sufficient particularity Mr. Strebinger's participation in the alleged pump-and-dump scheme," including by contributing to and disseminating false and misleading research reports); *SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *19-*20, *22 (C.D. Cal. July 18, 2016) (similar); *SEC v. Sierra Brokerage Servs., Inc.*, 608 F. Supp. 2d 923, 926, 957-968 (S.D. Ohio 2009) (similar); *SEC v. Fiore*, 416 F. Supp. 3d 306, 317-18 (S.D.N.Y. 2019) (Section 13(d) claim rested on failure to file Schedule 13D; Section 10(b) claim was based on

### B. Plaintiff Cannot Premise Liability on a Supposed "Duty to Disclose"

Citing *dicta* in prior cases, Plaintiff has argued that omissions can be actionable under Section 10(b) when there is a duty to disclose, and that "a duty to disclose may arise when there is a 'statute or regulation requiring disclosure.'" Opp. 37 (citing *dicta* in *Glazer v. Formica Corp.*, 964 F.2d 149, 157 (2d Cir. 1992)). There are at least two problems with relying on such dicta here.

The first is that the "duty to disclose" cases are not "pure omissions" cases; they invariably involve at least *some* SEC filing or affirmative deceptive conduct by a defendant. *See, e.g.*, *SEC v. Honig*, 2021 WL 276155, at *6 (S.D.N.Y. Jan. 27, 2021) (*Honig II*[10]) ("To adequately allege that a defendant is liable [under Rule 10b-5] for failing to make a required regulatory disclosure, the SEC must plead that the 'defendant failed to comply with [the regulation]' *in a public filing*"); *see also* footnote 8 above. As explained above, that is simply not Stetson's fact pattern.

---

separate "deceptive conduct in connection with purchase, sale, and promotion of [the] stock"); *SEC v. Sands*, 902 F. Supp. 1149, 1155-56 (C.D. Cal. 1995) (omission of Schedule 13Ds was charged only under Section 13(d); affirmative misstatements were charged under Section 10(b)).

[10] Although *SEC v. Honig* is named for Barry Honig, the opinions concern allegations against a different individual, Robert Ladd. Further, the SEC case arises from allegations relating to companies that have nothing to do with Riot. In fact, neither Honig nor Stetson nor anyone else in this case has ever been charged by the SEC with wrongdoing in relation to Riot. The SEC investigated, and decided not to file charges against or relating to Riot. *See* ECF 161-2, ECF 165-1.

8

The second problem with trying to premise liability for an omission on a "duty to disclose" theory is that, even if one could do so, any alleged omission would still have to be *material*. That is a hurdle that Plaintiff simply cannot clear. The Third Circuit has been very clear that (even for a defendant who, unlike Stetson, has actually made an SEC filing) violating a given "reporting requirement[] does not automatically give rise to a material omission under Rule 10b-5." *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000); *see also Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 100-03 (2d Cir. 2015) (mere "failure to make a required disclosure is not by itself sufficient to state a claim for securities fraud under Section 10(b)."). The materiality analysis for Rule 10b-5 (as Stetson has previously explained without rejoinder, *see* Stetson Br. 7-8; Stetson Reply 11) balances "the indicated probability that the [relevant] event will occur and the anticipated magnitude of the event." *Oran*, 226 F.3d at 288 (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 237 (1988)).

The purpose of Section 13(d) is not to disclose share ownership for its own sake, but to alert the marketplace to *the possibility of a change in control* over a corporation. Stetson Br. 6-7; *see also* Stetson Reply 10-11; *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 35 (1977) ("[T]he sole purpose of the Williams Act [which added Section 13(d)] was the protection of investors who are confronted with a tender offer."); *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 59-60 (1975) (where a large stockholder had failed to file timely Schedule 13Ds but had "not attempted

9

to obtain control of" the corporation, "none of the evils to which the Williams Act was directed ha[d] occurred or [was] threatened.").

The purpose of Section 13(d) is not actually in dispute. Plaintiff concedes it expressly. Opp. 38 n.31 ("'Section 13(d)'s purpose is to alert investors to potential changes in corporate control.'"). It follows from that purpose that, when considering the materiality of an alleged Section 13(d) omission, the relevant "event" whose probability must be evaluated is a change of control. But on the allegations of the SAC, the probability of that event occurring during the Class Period was essentially zero. There is no serious suggestion, let alone well-pled allegations, that Stetson (or any of the investors in the alleged group) sought or was involved in obtaining a change of control over Riot during the Class Period,[11] or even was involved in any scheme to issue press releases, misleading or otherwise,[12] about Riot. Stetson Reply 4-6; Stetson Br. 7-10. Thus even if Plaintiff somehow *had* adequately alleged the existence of a Section 13(d) group (he emphatically has not), Plaintiff has failed to

---

[11] As we previously noted, any alleged change of control accomplished by Honig and DeFrancesco was (1) fully disclosed, (2) completed well before the Class Period began, and (3) completed long before Plaintiff purchased Riot stock. Stetson Reply 5 & n.4.

[12] The Court has previously found that there was nothing wrong with Riot's press releases. *Takata*, 2020 WL 2079375, at *12-*13 ("I find that all of the challenged statements from Riot's press releases or similar public statements . . . either constitute inactionable puffery or are not adequately alleged to have been false or misleading when made.").

10

allege that Stetson's membership in this group would be material under the test of *Basic*.

The decisions in *SEC v. Honig* are instructive. The court there initially *granted* a motion to dismiss because the SEC had failed to adequately allege "that the omission of the existence of the group was material." *SEC v. Honig*, 2020 WL 906383, at *1, *10 (S.D.N.Y. Feb. 25, 2020) (*Honig I*). Subsequently the court found materiality adequately pled in part because the SEC's amended complaint alleged that undisclosed group ownership "enabled the [group] *to exercise control* over MGT policies in fact, such as through negotiating the McAfee transaction," which was hyped with public statements that (unlike Riot's press releases here) the court found to be misleading. *Honig II*, 2021 WL 276155, at *6, *8.

Contrary to Plaintiff's suggestion (Opp. 42), *Honig II* does not stand for the proposition that the existence of an alleged group is inherently material in the absence of control, or a control purpose, or some other nefarious scheme not pled here. 2021 WL 276155, at *8. ("[T]he mere fact that [a] disclosure was [allegedly] required by the SEC does not make it 'material *per se*' for securities fraud purposes."). In fact, *Honig II* found that *other* alleged violations of the SEC's requirements for reporting beneficial ownership were *not* adequately alleged to be material. *Id*. at *10, *14. Because Plaintiff fails to properly allege, much less tie Stetson or really anyone in the alleged "group" to, anything that could arguably

11

matter to investors (hidden control, misleading press releases, manipulative transactions), Plaintiff fails to establish the materiality of any omission alleged here.

## CONCLUSION

For the foregoing reasons and all of those set forth in Stetson's opening and reply briefs, Stetson should be dismissed from this action.

Dated: March 14, 2022

Respectfully submitted,

LOWENSTEIN SANDLER LLP

By:   s/ Matthew M. Oliver
    Matthew M. Oliver
    One Lowenstein Dr
    Roseland, NJ 07068
    Tel.: 212-419-5852
    Email: moliver@lowenstein.com

    Daniel Walfish (*admitted pro hac vice*)
    WALFISH & FISSELL PLLC
    405 Lexington Avenue 8th floor
    New York, NY 10174
    Tel.: 212-672-0521
    Email: dwalfish@walfishfissell.com

*Attorneys for Defendant John Stetson*