<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

**CREIGHTON TAKATA**, individually and on behalf of all others similarly situated,

Plaintiff,

v.

**RIOT BLOCKCHAIN, INC. F/K/A BIOPTIX, INC., JOHN O'ROURKE, JEFFREY G. MCGONEGAL, BARRY HONIG, CATHERINE DEFRANCESCO, MICHAEL BEEGHLEY, JOHN STETSON, MARK GROUSSMAN, ANDREW KAPLAN, MIKE DAI, JASON LES,** and **ERIC SO**,

Defendants.

Civil Action No. 18-02293 (ZNQ) (TJB)

**OPINION**

---

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** is a putative class action brought by shareholders against defendants Riot Blockchain, Inc. ("Riot") and certain of Riot's current and former officers, current and former directors, and large shareholders (collectively with Riot, "Defendants"). The lead plaintiff, Dr. Stanley Golovac ("Plaintiff"), alleges that he, and other shareholders, purchased Riot's stock between April 20, 2017, and September 6, 2018 (the "Class Period"), and asserts that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated under that statute, 17 C.F.R. § 240.10b-5. Plaintiff also assert that several individual Defendants are vicariously liable under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). In summary, the Plaintiff's Second Amended Complaint alleges that

Defendants, conspiring with one another and acting in concert with an undisclosed control group of other Riot shareholders to: (1) amass a controlling interest in Riot; (2) conceal their control through false and misleading statements and omissions regarding Riot's beneficial ownership in violation of Section 13(d) of the Exchange Act, Regulation 13d, and Items 403 and 404 of Regulation S-K; (3) drive up the price and trading volume of Riot stock through manipulative trading, promotional activity, and false and misleading disclosures; (4) engage in undisclosed related-party transactions at the expense of the Company and its shareholders; and (5) dump their shares into the artificially inflated market on unsuspecting retail investors.  (*See* Second Amended Complaint ¶ 1, ECF No. 188.)

Presently before the Court are six separate motions brought by Defendants to dismiss the Second Amended Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure[1] and one motion for joinder[2]. For the reasons set forth below, Defendants' motions to dismiss are **GRANTED**, and the Second Amended Complaint is dismissed without prejudice. Plaintiff's generalized request for leave to amend is denied at this time; however, Plaintiff may file a separate motion seeking leave to amend his complaint in a manner consistent with this Opinion.

I.       **PROCEDURAL HISTORY**

Plaintiff filed the initial complaint (ECF No. 1) on February 17, 2018 and filed a corrected and consolidated amended complaint ("CCAC", ECF No. 73) on May 9, 2019. Defendants Riot and other individuals[3] filed seven motions to dismiss the CCAC (ECF Nos. 107, 108, 112, 118,

---

[1] The separate motions to dismiss are as follows: ECF No. 192 by Riot Blockchain, Inc., Michael Beeghley, and John O'Rourke; ECF No. 193 by Michael Beeghley and John O'Rourke; ECF No. 194 by Mark Groussman; ECF No. 195 by Catherine DeFrancesco; ECF No. 197 by John Stetson; and ECF No. 198 by Barry Honig.

[2] Beeghley and O'Rourke join Riot in its motion to dismiss and filed a separate motion "to highlight the lack of meaningful allegations establishing . . . scienter" and "on separate grounds with respect to the Section 10(a) claim." (ECF No. 193 at 1.)

[3] Plaintiff named the following individuals as defendants in the CCAC: Riot Blockchain, John O'Rourke, Jeffrey G. McGonegal, Barry Honig, Catherine DeFrancesco, Michael Beeghley, John Stetson, Mark Groussman, Andrew

131, 132, and 134).  Chief Judge Wolfson granted the motions without prejudice and allowed Plaintiff to file a separate motion for leave to amend the CCAC.  ("Memorandum Opinion" or "Mem. Op.," ECF No. 166.)  After the parties filed briefs on the motion for leave (ECF Nos. 169, 171–177, and 182), I granted the motion for leave to amend the CCAC in a manner consistent with the Memorandum Opinion.  ("Leave Mot.," ECF No. 187.)  Thereafter, Plaintiff filed the Second Amended Complaint, the operative complaint in the matter.  ("Second Amended Complaint," ECF No. 188.)

Shortly after, Defendants filed the following motions to dismiss and briefs in support: the "Riot MTD" (ECF No. 192) and "Riot Br." (ECF No. 192-1) by Riot Blockchain, Inc., Michael Beeghley, and John O'Rourke; the "Beeghley MTD" (ECF No. 193) and "Beeghley Br." (ECF No. 193-1) by Michael Beeghley and John O'Rourke; the "Groussman MTD" (ECF No. 194) and "Groussman Br." (ECF No. 194-1) by Mark Groussman; the "DeFrancesco MTD" (ECF No. 195) and "DeFrancesco Br." (ECF No. 195-1) by Catherine DeFrancesco; the "Stetson MTD" (ECF No. 197) and "Stetson Br." (ECF No. 197-1) by John Stetson; and the "Honig MTD" (ECF No. 196) and "Honig Br." (ECF No. 196-1) by Barry Honig.

Requiring further clarification on the justiciability of the action, the Court requested the parties to submit simultaneous supplemental briefings on whether there is an implied private right of action for shareholders to seek damages (1) directly under Section 13(d) of the Securities Exchange Act of 1934 or (2) indirectly under 10(b).  (ECF No. 216.)  The parties submitted responses on March 14, 2022.  (ECF Nos. 217–222.)

---

Kaplan, Mike Dai, Jason Les, and Eric So. In the Second Amended Complaint, the defendants are Riot Blockchain, Honig, DeFrancesco, Beeghley, Stetson, Groussman, Although there are inconsistencies between the electronic docket or PACER caption and Second Amended Complaint, the Court will perceive the relevant defendants to be the ones named in the Second Amended Complaint.

## II.        <u>BACKGROUND</u>

The following facts are drawn from the allegations in the Second Amended Complaint and are accepted as true for the purposes of this present motion.[4]  The Second Amended Complaint alleges substantially the same facts as contained in the Court's prior Memorandum Opinion; where there are differences or additions, the Court accepts them as true and notes them below.

### A.  Defendants and the "Honig Group"

Honig is a shareholder of Riot since September 2016.  (Second Amended Complaint ¶ 2.) Honig also had voting and dispositive power as Trustee of GRQ Consultants, Inc. Roth 401K, which owned Riot holdings since at least September 2016.  (*Id.* ¶¶ 23, 40.)  Honig was Chairman and CEO of PolarityTE from September 2015 to December 2016.  (*Id.* ¶ 23.)  Honig (along with Groussman, O'Rourke, Stetson, and others) was a defendant in an SEC action (the "*Honig* Action").  (*Id.*)  Alleged in the Second Amended Complaint, Honig owned: 335,175 shares of Riot (8.65%) in April 2016; 386,581 shares (9.97%) in May 2016; 373,899 shares (9.6%) on September 8, 2016; 389,159 shares (10.04%) in Sept. 14, 2016; 452, 585 shares (10.05%) in November 2016; 500,000 shares (11.10%) in December 2016; and 504,000 (11.19%) in January 2017.  (*Id.* ¶ 313.) On April 18, 2018, Honig disclosed a variety of purchases and sales after January 2017, including at least three periods in which Honig sold more than 1% of Riot's total outstanding shares; Honig stated, in a *Wall Street Journal* article, that Honig still owned 1% of Riot as of January 31, 2018. (*Id.* ¶¶ 316–318.)  The same day the *Wall Street Journal* published the article, Riot's stock price fell from $14.50 to $13.75, a decline of more than 5%.  (*Id.* ¶ 318.)

---

[4] While the Court may take judicial notice of certain publicly available documents, such as SEC filings and court filings, it may only do so to establish the existence of those records and the statements contained therein, and not (as Plaintiff again asks the Court to do) for the truth of the matter asserted in those documents. *See Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (Wolfson, J.) (citations omitted); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

O'Rourke was a director of Riot from at least 2017, CEO and Chairman from November 2017 to September 2018. (*Id.* ¶ 24.) O'Rourke also owns and operates ATG Capital LLC, a Florida corporation. (*Id.* ¶¶ 24, 33.) O'Rourke has longstanding business ties with Honig, Groussman, and Stetson; worked out of the same office as Honig, Groussman, and Stetson; used the same fax number as Honig and Stetson; and resides approximately 800 feet away from Stetson. (*Id.* ¶ 24.) In his independent director nomination form on September 13, 2016, O'Rourke disclosed that he owned 12,500 shares of Riot. (*Id.*, Ex. C at p. 400.) O'Rourke earned Riot shares as part of his executive compensation. (*Id.* ¶ 24.)

Beeghley was a director of Riot from November 2016 to November 2017, was CEO from April 2017 to November 2017, was Chairman from January 2017 to November 2017. (*Id.* ¶ 28.) Beeghley was a director of PolarityTE from December 2015 to October 2017. (*Id.* ¶ 28.) In his independent director nomination form on September 13, 2016, Beeghley disclosed that he did not own shares of Riot as of September 13, 2017 (*Id.*, Ex. C at p. 400); he subsequently earned shares Riot as part of his executive compensation. (*Id.* ¶ 28.)

Groussman owns Melechdavid, Inc., which owned Riot shares. (*Id.* ¶ 25.) Groussman is also a custodian for two Uniform Transfer to Minors Act ("UTMA") funds, which hold Riot shares. (*Id.* ¶ 366.) Groussman purchased his house in Florida with a $700,000 mortgage loan from Honig. (*Id.* ¶ 25.) According to public filings, Groussman owned: 500,000 shares of Riot (approximately 9.05% of all shares) in April, July, August, and September 2017; 399,202 shares (5.93%) in October 2017; 131,945 shares (1.13%) in January 2018; and 188,888 (1.62%) as of February 2018. (*Id.* ¶ 330.) Groussman allegedly did not file a Schedule 13D or 13G until October 13, 2017. (*Id.* ¶ 332.)

Stetson owns Stetson Capital and is the former CFO of Polarity. (*Id.* ¶¶ 26, 72.) He is a "Selling Stockholder" in numerous Riot Forms S-3 and was a defendant in the *Honig* action. (*Id.* ¶ 26.) In his independent director nomination form on September 9, 2016, Stetson disclosed that he had no ownership of Riot. (*Id.*, Ex. C at p. 400.) According to public filings, Stetson owned 283,400 shares of Riot (4.99% of all shares) in April 2018; 283,300 shares (4.99%) in July and August 2017; and 285,150 (4.99%) shares in September 2017, all through Stetson Capital. (*Id.* ¶ 342.)

At certain points before and during the Class Period, DeFrancesco owned more than 10% of Riot shares through six different entities.[5] (*Id.* ¶ 27.) DeFrancesco allegedly controls all six corporations. (*Id.* ¶¶ 58, 63.) She began acquiring Riot shares in August 2016 and is a "Selling Stockholder" in numerous Riot Forms S-3. (*Id.* ¶ 27.) According to several public filings, DeFrancesco owned: 341,176 shares (7.49% to 8.80% of all Riot shares) between September and October 2018; 515,777 shares (11.5%) between January and July 2017; and 155,904 shares (1.3%) on January 5, 2018 and again on February 7, 2018. (*Id.* ¶¶ 336, 337.) Plaintiff alleges that DeFrancesco never filed a Schedule 13D or an amendment after January 10, 2017.

Plaintiff refers to Honig, O'Rourke, Groussman, Stetson, DeFrancesco, and Beeghley as the "Honig Group". (*Id.* ¶ 29.) The Court will refer to them as the "Stockholder Defendants". Plaintiff refers to Riot, O'Rourke, and Beeghley as the "Riot Defendants", which the Court will also refer to them as. (*Id.* ¶ 30.)

Plaintiff now mentions DeFrancesco's letter to the Board, which requested a reconstitution of Riot's board, demanded a special dividend, and supported the election of John Stetson, John

---

[5] According to the Second Amended Complaint, DeFrancesco owns and controls: DSB Capital, Ltd., a Turks & Caicos company; DeFrancesco Motorsports, Inc., an Ontario corporation; Delavalco Holdings, Inc., an Ontario corporation; Delavalco Holdings, Inc., a Florida corporation; Marcandy Investments Corp., an Ontario corporation; and Namaste Gorgie, Inc., an Ontario corporation. (Second Amended Complaint ¶¶ 27, 58.)

O'Rourke, Michael Beeghley, and others. (*Id.* ¶¶ 169–171.)  DeFrancesco allegedly included, in her letter, that the Board should "contact our counsel Harvey Kesner, Esq.", who was also Honig's (and other Stockholder Defendants') lawyer.  (*Id.* ¶ 172.)  During telephone conversations with members of the then-existing board of Venaxis (Riot's prior corporate identity), Honig implied that he had control of 40% of Venaxis's shares through his stock ownership and the stock ownership of Mr. Honig's friends and relatives, according to a former Venaxis Board member present during the conversations.  (*Id.* ¶ 168.)  Moreover, O'Rourke noted that "Barry Honig is the principal investor of *our small group*" in a February 3, 2014 email sent to an officer of a potential merger target.  (*Id.* ¶ 82.)

### B.  False and Misleading Statements and Omissions and Other Deceptive Conduct

Plaintiff alleges that, during the Class Period, Riot and the Stockholders made various materially false and misleading statements and omissions, and engaged in other deceptive conduct, in violation of Section 10(b) of the Exchange Act and Rule 10(b)(5).  (*Id.* ¶ 1.)  Quoting various Riot public filings, Riot press releases, and related amendments, the Second Amended Complaint also now incorporates each of the Stockholder Defendants' Schedules 13D and 13G as potential 10(b) violations.  (*Id.*).

### C.  Issues Decided in Prior Motion

In its prior opinion, the Court concluded that: (1) Plaintiff failed to plead any actionable misrepresentations or omissions in Riot's registration and proxy statements because Plaintiff failed to allege that any of the alleged statements were materially false or misleading (Mem. Op. at p. 27–28); (2) Plaintiff failed to allege a "deceptive or manipulative act" with respect to Beeghley, O'Rourke, DeFrancesco, Groussman, Stetson, and other now-omitted defendants (*Id.* at p. 40); (3) Plaintiff adequately alleged that Honig committed a "deceptive or manipulative act" and with the

requisite scienter but failed to plead the element of loss causation with respect to Honig (*Id.*); and (4) Plaintiff failed to plead any facts showing underlying violations by Riot because Plaintiff did not adequately allege any of his claims under Section 10(b) of the Exchange Act (*Id.* at p. 41).

### D. Plaintiff's Current Claims

Plaintiff asserts the following three counts in the Second Amended Complaint.  (*Id.* ¶¶ 482–503.)  Count I alleges violations of Section 10(b) of the Exchange Act and Rule 10b-5, subsections (a) and (c), against all Defendants. Plaintiff claims that Defendants Honig, Groussman, Stetson, and DeFrancesco knowingly or recklessly issued materially false and misleading statements in their individual Schedule 13(d) statements by failing to disclose the existence of the Stockholder Defendants' "group", as defined in Section 13(d) of the Exchange Act.  (*Id.* ¶ 484.) Furthermore, Plaintiff alleges that O'Rourke and Beeghley, the individual Riot Defendants, failed to ascertain and disclose the true facts (i.e., that the Stockholder Defendants' "group" controlled Riot) made by them or other personnel of Riot and thus materially misrepresented Riot's beneficial ownership in its public filings (Forms S-3, S-3/A, and 10-K) in violation of Section 13(d) and Items 403 and 404 of Regulation S-K.  (*Id.* ¶ 485.)  According to Plaintiffs, Beeghley and O'Rourke also violated the same sections because they misrepresented and concealed various material related-party transactions between and among the Company and controlling (i.e. greater-than-5%) shareholders of Riot.  (*Id.* ¶ 485.)

Count II alleges violations of Section 10(b) of the Exchange Act and Rule 10b-5, subsection (b), against all Defendants. Plaintiff claims that Defendants disseminated or approved false statements and failed to disclose facts necessary to make the statements made, in light of the circumstances made, not materially misleading.  (*Id.* ¶ 490.)  Plaintiff claims that the Stockholder Defendants obtained and exercised undisclosed control of the management and policies of Riot

and failed to disclose such control in violation of Section 13(d).  (*Id.* ¶ 491.)  Similarly, O'Rourke and Beeghley failed to disclose the existence of a group and the related-party transactions in violation of Section 13(d) and Item 403 of Regulation S-K.  (*Id.* ¶¶ 492-493.)  Plaintiffs allege that Riot is similarly liable because O'Rourke and Beeghley had actual knowledge of the misrepresentations and omissions.  (*Id.* ¶ 494.)

Count III asserts liability under Section 20(a) of the Exchange Act against the Individual Riot Defendants and the Stockholder Defendants. Plaintiff claims that the Riot Defendants and the Stockholder Defendants are vicariously liable as "controlling persons" for any materially false and misleading statements made by Riot.  (*Id.* ¶¶ 500–503.)

## III.      LEGAL STANDARD

As with the facts, the applicable legal standard was stated in the Court's prior Memorandum Opinion.  (*See* Mem. Op. at p. 11–13 (Wolfson, J.))  As a reminder, The Private Securities Litigation Reform Act's ("PSLRA's") higher pleading requirements applies to "any private action arising under [Chapter 15 of the Code] in which the plaintiff alleges that the defendant (A) made an untrue statement or a material fact; or (B) omitted to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading." 15 U.S.C. § 78u-4(b); *see also Taseko Mines Ltd. v. Raging River Capital*, 183 F.Supp.3d 134, 140 (D.C. 2016).

## IV.      DISCUSSION

Plaintiff's claims primarily focus on one specific allegation: Defendants were an undisclosed control group engaging in undisclosed insider sales.  (Second Amended Complaint ¶ 16.)  To this end, Plaintiff alleges that Defendants either made materially false and misleading filings on their Schedules 13D and 13G by not disclosing they were part of a group (*see, e.g.*, *id.*

¶ 182) or failing to make or amend Schedules 13D or 13G to disclose the existence of their group (*see id.*).  As such, it is necessary to discuss Section 13(d) and its relation to the other sections of the Exchange Act, particularly with respect to Section 10(b) and Rule 10b-5.

An important threshold question remains before the Court which has not been directly answered by binding precedent: are damages available as a remedy when liability for Section 10(b) arises from a Section 13(d) violation?

### A.  Implied Right of Action under Section 13(d)

Given that section 13(d) does not provide an express right of action for private plaintiffs, courts have read such a right into the section or through other sections.  Although there is no private right of action for damages under section 13(d) of the Exchange Act, circuits have recognized an implied right of action for injunctions.  *See Motient Corp. v. Dondero et al.* (5th Cir. 2008) (no private right of action for monetary damages under Section 13(d)); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 620 (2d Cir. 2002) (same); *Liberty Nat. Ins. Holding Co., v. Charter*, 734 F.2d 545, 564 (11th Cir. 1984) (same). Moreover, some courts have found that a plaintiff may point to a violation of section 13(d) as the predicate for a 10b-5 claim. *See Vladimir v. Bioenvision Inc.*, 606 F.Supp.2d 473, 490-491 (S.D.N.Y. 2009) *aff'd.*, *Thesling v. Bioenvision*, 374 Fed.App'x. 141 (2d Cir. 2010) (quoting *GAF Corp. v. Milstein*, 453 F.2d 709 (2d Cir. 1971), *cert denied*, 406 U.S. 910 (1972)). Unlike prior cases, plaintiffs have asked the Court for damages, rather than injunctive relief. *Id.*

"Cases raised under an implied right in the Securities Acts rely upon analogous cases at common law." *S.E.C. v. Teo*, 746 F.3d 90, 101 (3d Cir. 2014); *see Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 60, n.10 (1975).  Although courts surmise that a private right of action for damages may exist for Section 13(d), they do not provide further guidance on the justiciability of

such actions.  *See Rondeau*, 422 U.S. at 60, n.10 ("Although we intimate no views regarding the merits of [the class action for damages in the lower court], it provides a potential sanction for petitioner's violation of the Williams Act."); *GAF Corp.*, 453 F.2d at 714 ("[W]e see no compelling reason to open the door to issuers to bring the broad range of fraud actions, in some instances seeking more than 'injunction' relief for [Section 13(d) violations], which are cognizable under section 10(b)."); *CSX Corp. v. Children's Inv. Fund Management (UK) LLP*, 654 F.3d 276, 287 (2d Cir. 2011) ("The inappropriateness of share sterilization [for Section 13(d) violations] leaves open the question of what remedies might be appropriate when disclosure that is timely with respect to a proxy contest is not made, and we do not reach that issue here.")  To this end, the Court requested the parties to answer whether there is an implied private right of action for shareholders to seek damages directly under 13(d) or indirectly under 10(b).  (ECF No. 216.)

### i.  Plaintiff's Arguments

Plaintiff argues that it is well established that shareholders have an implied private right of action for damages under Section 10(b) of the Exchange Act. To this end, Plaintiff discusses several Third Circuit cases and Second Circuit cases.  ("Pl. Reply Br.," ECF No. 201, at p. 23, 25, 35, 36, 39; Pl. Supp. Br. at p. 3–14.)

First, the Court will turn to the SEC case cited by Plaintiff.  In *S.E.C. v. Teo*, the SEC argued that failures to file or amend Schedule 13D violations could lead to Section 10(b) violations. 746 F.3d at 91.  The district court agreed and required the defendant to disgorge his profit. *Id.* at 100–101.  On appeal, the defendants challenged this action, arguing that granting such remedy is an abuse of discretion. *Id.* at 101.  Ultimately, the Third Circuit affirmed the district court's order to disgorge profit resulting from a tender offer in which the defendant falsely stated that he had no control over shares. *Id.*  However, in doing so, the Third Circuit noted that SEC-initiated civil

enforcement actions have different underlying policies (and thus relief) when compared to private enforcement actions.  *See id.* at 101–103 & 108–109.  Simply put, the SEC plays by different rules than private plaintiffs.[6]  *See id.*

Plaintiff points to *In re Phillips* as support for the proposition that failing to disclose information required by Section 13(d) can serve as predicate conduct creating liability in a private action for damages under Section 10(b) and Rule 10b-5.  (Pl. Supp. Br. at p. 5–6); 881 F.2d 1236 (3d Cir. 1989).  *In re Phillips* involved an appeal from a consolidated plaintiff class of individual stockholders who sued the Mesa Partnership which attempted to acquire control of Phillips Petroleum, and individual members of Mesa, among others.[7]  881 F.2d at 1238.  After acquiring 5.7% of Phillips and releasing a statement that Mesa would "not sell any Phillips shares owned by it back to Phillips except on an equal basis with all other shareholders," Mesa filed a Schedule 13-D the following day reiterating its intention to not sell back its shares except on an equal basis with all shareholders.  *Id.*  However, after entering into private negotiations, Mesa received a put to sell all its shares at a certain price if shareholders did not approve a proposed recapitalization program and received compensation for its certified expenses in waging the takeover.  *Id.* at 1239–41.  When Mesa updated its Schedule 13-D the day after the agreement was announced, it stated that it would not pursue its attempt to gain control of Phillips and would dispose of all its shares but did not make a revision in the equal basis statement.  *Id.* at 1241.  Importantly, other stockholders were not provided the same terms as Mesa in Phillips' proposed recapitalization program.  *Id.*

---

[6] As additional support, the Court notes that the PSLRA does not apply to SEC-initiated actions. *See* 15 U.S.C. § 78u-4(b).

[7] Although the Third Circuit opinion does not include whether the plaintiffs requested relief, the district court opinion indicates that plaintiffs requested monetary damages on a breach of contract or quasi-contract claim. *In re Phillips Petroleum Securities Litigation*, 697 F.Supp. 1344, 1357–59 (D.Del. 1988).

Correctly pointed out by Plaintiff (Pl. Supp. Br. at p. 6), the Third Circuit in *Phillips* noted that a duty exists to correct prior statements if the prior statements were true when made but misleading if left unrevised and held that a delay in disseminating its change of intent may constitute a material misstatement or omission. 881 F.2d at 1245. Yet in later cases, the Third Circuit narrowed when this duty arises. *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1433–34 (3d Cir. 1997) ("Where the initial disclosure relates to the announcement of a *fundamental change* in the course the company is likely to take, there *may be* room to read in an implicit representation by the company that it will update the public with news of any radical change in the company's plans – e.g., news that the merger is no longer likely to take place") (emphasis added) (discussing *Phillips*, 881 F.2d at 1245). At the very most, *In re Phillips*, as interpreted by *In re Burlington*, implies that a duty to update by certain parties will arise only if the company undergoes a fundamental change in its course. *See Id.* However, it does not answer whether a private plaintiff may sustain a suit for damages under the same theory. *See id.*

At the summary judgment stage, the court in *Kamerman v. Steinberg* allowed a subclass to proceed in a suit for damages related to a 13(d) violation as a predicate to Section 10(b) and Rule 10b-5 violation under the theory that "the Williams Act in general and Section 13(d) in particular were [not] meant to excuse or justify conduct arguably fraudulent under the 1934 Act." 123 F.R.D. 66, 74 (S.D.N.Y. 1988). Yet, Plaintiff did not recognize that, on appeal, the Second Circuit held that "one complaining of a false or misleading statement in a Schedule 13D may seek damages only under Section 18(a) of the Act." *Kamerman v. Steinberg*, 891 F.2d 424, 430 (2d Cir. 1989); *see also Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945, 960 (S.D.N.Y. 1983), *aff'd*, 730 F.2d 910 (2d. Cir. 1984) (per curiam) (adopting district court opinion). Upon considering Kamerman's 10b-5 derivative claim that "the assertedly false statements of purpose in [a defendant's] Schedule

13D filings constituted violations of Rule 10b-5," the Second Circuit held that "a plaintiff must have purchased or sold stock in reliance upon the alleged misrepresentation by the defendant" to recover on such a claim. *Id.* at 431.

Plaintiffs also raise *MTB Investment Partners, LP v. Siemens Hearing Instruments, Inc.*, Civ. No. 12-00340, 2013 WL 12149253 (D.N.J. Feb. 19, 2013) as support. (Pl. Supp. Br. at p. 7.) MTB Investment, an investment fund and shareholder of HearUSA, sued Siemens, the largest shareholder of and seller of hearing aids to HearUSA[8]. 2013 WL 12149253, at *1. Around December 2008, Siemens became HearUSA's largest shareholder by converting its HearUSA debt into common stock. *Id.* In January 2011, Siemens filed a Schedule 13D, which MTB alleged contained four materially false or misleading statements. *Id.* at *2. The alleged 13D statements were: Siemens had "acquired and held shares since [2008] without any purpose of, and without the effect of, changing or influencing the control of [HearUSA]" even though it was in the advanced stages of a negotiated buyout of HearUSA one month prior; SHI would wait to determine what action it would take with its HearUSA shares until it possessed all the necessary information, even though it had all the necessary information and intended to acquire HearUSA in a bankruptcy sale; Siemens stated that HearUSA would be unable to pay the trade payables due in December 2010 even though it had received a letter from HearUSA stating that it would; and Siemens incorrectly and falsely implied that HearUSA's common stock was worthless. *Id.* at *2.

The Court agreed with MTB that these four statements were misstatements or omissions of material fact that would support a Section 10(b) and 18(a) claim. *Id.* at *4. Yet, the Court put substantial weight on the fact that largest shareholder was at fault for many of the company's

---

[8] Siemens extended HearUSA a line of credit for trade payables on the condition that HearUSA purchase 90% of its hearing aids from SHI. *Id*. at *1.

issues.  *See id.*  Moreover, the court in *MTB Investment* did not address whether a private action for damages can be sustained under Section 10(b) for such a violation.  *See id.*

In *Gruber v. Gilbertson*, Civ. No. 16-9727, 2018 WL 1418188, at *1 (S.D.N.Y. Mar. 20, 2018), the district court examined "a multi-faceted scheme to manipulate the stock of a" company. The company's promissory notes included an "additional payment" provision if the average stock price exceeded a nominal figure during the first twenty days in which its stock was publicly traded. *Id.*  The defendants then convinced the Company's management to reverse merge into a shell company whose unrestricted stock could easily be transferred from place to place.  *Id.*  After convincing friends and family to purchase stock from a third-party brokerage account, the stock price jumped from pennies to nearly $12; the "additional payment" provision triggered and the defendants received enough stock to mandate a Schedule 13D filing. However, the defendants never did, even after the company subsequently raised money in a debt offering to finance the "additional payments" at the direction of a defendant.  *Id.* at *4.

The district court in *Gruber* ultimately held that "the omission concerning [the defendants'] ownership interest is actionable because they had a duty to disclose it."  *Id.* at *13.  Their "intentional failure to disclose beneficial ownership information when disclosure was expressly required was . . . both a communicative and deceptive act: it signaled falsely to investors that there was no such ownership to disclose." *Id.*  Noting that the defendants "made virtually every material decision on the Company's behalf," the Court ultimately held that the plaintiff had sufficiently pled a claim under Rule 10b-5(b) against the defendants.[9]  *Id.* at *14.

---

[9] According to the operative complaint, the plaintiffs requested compensatory damages against all defendants, reasonable costs and expenses, and other and further relief. *See Gruber v. Gilbertson*, Civ. No. 16-09727, 2017 WL 4117744, at ¶ 198 (S.D.N.Y. July 10, 2017).

*Puddu v. 6D Glob. Techs., Inc.* involved a similar situation to *Gruber*; the defendant exercised substantial control over the company, owned a substantial portion of the company stock, and never filed a Schedule 13D. Civ. No. 15-08061, 2021 WL 1198566, at *2 (S.D.N.Y. Mar. 30, 2021). The court stated that "an intentional failure to disclose beneficial ownership information *when disclosure was expressly required* signals falsely to investors that there is no such ownership to disclose." *Id.* at *6 (emphasis added).

Plaintiff relies on *Levie v. Sears Roebuck & Co.*, 2006 WL 1886223 (N.D. Ill. July 5, 2006), a motion of reconsideration and motion to certify for immediate appeal. The court observed that "Plaintiff is not alleging that the Schedule 13D . . . was misleading when made, but rather that defendants 'failed to file' required amendments or updated documents. *Levie v. Sears Roebuck & Co.*, 2006 WL 1886223, at *3 (N.D. Ill. July 5, 2006). The court refused to consider whether § 18(a) provides the exclusive remedy for violations of § 13(d) because the plaintiff's claims were based on a failure to file and were outside the scope of § 18(a). *See id.* at *3.

In Plaintiff's reply to the Motion (ECF No. 201), Plaintiff extensively refers to *Vladimir v. Bioenvision*, 606 F.Supp.2d 473 (S.D.N.Y. 2009), *aff'd.*, *Thesling v. Bioenvision*, 374 Fed.App'x. 141 (2d Cir. 2010). In that case, the plaintiff alleged that, as an insider to the company, the largest stockholder Perseus-Soros had a duty to disclose all material non-public information concerning the company or to abstain from trading, and yet the stockholder failed to amend its Schedule 13D/A to disclose the events leading up to the merger. *Id.* at 480. In particular, the plaintiff alleges that Perseus-Soros misled the public by (1) failing to file an amended Schedule 13D once the merger plans were set in motion and (2) breaching its duty to disclose material information or abstain from trading when it exercised warrants to purchase a large amount of stock. *Id.* at 483. The district court noted that "[t]here is a duty to disclose if the shareholder had a purpose of acquiring control

and had the requisite intent, defined as a determination [to acquire control] made with an element

of resolve." *Id.* (quoting *Azurite Corp. Ltd. v. Amster Co.*, 52 F.3d 15, 18 (2d Cir. 1995)); *see also*

*Azurite*, 52 F.3d at 18 ("if a plan need not be disclosed under Item 4, such an omission does not

support a section 10(b) claim founded solely upon an alleged section 13(d) violation.")

     Relying on *GAF Corp.*, the district court assumed that a violation of section 13(d) can be

a predicate for a 10b-5 claim, plausibly under the duty to disclose when the SEC's rules require

disclosure. *Id.* at 491.  However, the district court determined the plaintiff's claims insufficient

because they improperly relied upon an anonymous source for the key allegation that an undefined

secret agreement was formed between the largest stockholder and the company. *Id.* at 492 (noting

that plaintiffs had not "alleged anything at all about Luci's alleged anonymous source, let alone

describing him with any particularity whatsoever.")  With respect to defendants whom the

plaintiffs claimed were Perseus-Soros-connected director defendants that insisted other company

board members sell their shares, the district court noted that these defendants' actions could not

be attributed to Perseus-Soros because they did not work for Perseus-Soros, the plaintiffs did not

allege how Perseus-Soros controlled the company board through these directors, or that the

directors were in a position to file or cause to have filed an updated Schedule 13D. *Id.* at 494.

### ii.  Defendants' Arguments

     Defendants present a plethora of arguments to disprove Plaintiff's standing. Certain

defendants argue that Section 18(a), 15 U.S.C. § 78r(a), is the exclusive remedy for Section 13(d)

violations.  (Honig Supp. Br., ECF No. 217, at p. 4–12; Groussman Supp. Br., ECF No. 218, at p.

8–10; Riot Supp. Br., ECF No. 220, at p. 5–13; Stetson Supp. Br., ECF No. 222, at p. 8–11.)  *See*

*e.g., Rosenbaum v. Klein*, 547 F. Supp. 586, 590 – 91 (E.D. Pa. 1982) ("To read into section 13(d)

a cause of action for damages by shareholders who do not allege detrimental reliance as purchasers

or sellers on misrepresentations in reports filed, but simply a failure to file required reports, would be to authorize an end-run around section 18."); *Kalmanovitz v. Heileman Brewing Co.*, 595 F. Supp. 1385 (D.Del. 1984), *aff'd*, 769 F.2d 152 (3d Cir. 1985) (declining to imply a private cause of action for a Section 13(e) claim); *In re Penn Cent. Sec. Litigation*, 494 F.2d 528, 540 – 41 (3d Cir. 1974) (declining to imply a private cause of action for a Section 13(a) claim "in the absence of exceptional circumstances which are not present in this case.").  After reviewing the cases cited, the Court did not find an express prohibition for private monetary damages claims under Section 10(b) predicated on a Section 13(d) violation.[10]

### iii.  Discussion

Due to the complicated and interconnected nature of the securities market, courts are "extremely reluctant to imply a cause of action . . . that is significantly broader than the remedy Congress chose to provide." *Touche Ross v. Redington*, 442 U.S. 560, 574 (1979); *see also GAF Corp.*, 453 F.2d at 722 ("This same reasoning is just as meaningful in the framework of section 13(d), and accordingly, we are chary of finding that GAF, based on the allegations before us, had standing under Rule 10b-5.").  The text of Section 13(d) and Rule 13d do not provide clarification on whether a shareholder may hold another shareholder liable for damages due to an allegedly defective Schedule 13D.  15 U.S.C. § 78m(d); 17 C.F.R. § 240.13d.  Moreover, most of the cases mentioned by the parties are not sufficiently applicable to this matter because (1) they arose in the midst of or the aftermath of a merger or proxy contest when disclosure is vital[11], (2) they involved

---

[10] Although not expressly considered, the Third Circuit has implied that plaintiffs can assert claims under either Section 10(b) or 18(a).  *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 277, 283–84 (3d Cir. 2006) (discussing merits of 10(b) and 18(a) claims against the same company officers). *Cf. Lorenzo v. S.E.C.*, 139 S.Ct. 1094, 1102 (2019) ("Each succeeding prohibition was thus 'meant to cover additional kinds of illegalities – not to narrow the reach of the prior sections.") (quoting *United States v. Naftalin*, 441 U.S. 768, 774 (1979)).  Notably, *Suprema* primarily dealt with a request for injunctive relief. 438 F.3d at 277.

[11] *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101-01 (2d Cir. 2015) (Item 303 omission is actionable only if it satisfies the materiality requirements outlined in *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) and if all the

express agreements to act as a group[12], (3) they did not involve violations of Section 13(d) as a predicate to 10(b)[13], (4) the damages to be collected were authorized[14], and/or (5) the parties are not both shareholders.  Given that "cases raised under an implied right in the Securities Acts rely upon analogous cases at common law," a plaintiff must sufficiently prove that a Section 13(d) violation can give rise to damages under Section 10(b).  *See S.E.C. v. Teo*, 746 F.3d at 101; *Rondeau*, 422 U.S. at 60 n. 10.

The Williams Act (which Section 13(d) is a part of) is "intended to alert investors to potential changes in corporate control so that they could properly evaluate the company in which they had invested or were investing."  *GAF Corp.*, 453 F.2d at 720.  According to the committee reports, the Williams Act would correct a gap in the securities laws by "provid[ing] for full disclosure in connection with cash tender offers and other techniques for accumulating large blocks of equity securities of publicly held companies."   *Id.* at 717 (quoting S.Rep.No.550 at 4;

---

other requirements to sustain an action under Section 10(b) are fulfilled); *Azurite Corp.*, 52 F.3d at 18 (proxy contest); *Vladimir*, 606 F. Supp. 2d at 491 (in the context of a potential merger, "a plaintiff can point to a violation of section 13(d) as the predicate for a 10b–5 claim"); *GAF Corp.*, 453 F.2d at 714 (appeal from denial of injunctory relief in the context of a proxy contest for control); *see also Rosenbaum v. Klein*, 547 F. Supp. 586, 591 (E.D. Pa. 1982) ("to read into section 13(d) a cause of action for damages by shareholders who do not allege detrimental reliance as purchasers or sellers on misrepresentations in reports filed, but simply a failure to file required reports, would be to authorize an end-run around section 18.")

[12] *S.E.C. v. Teo*, 2010 WL 3184349, at *9 (D.N.J. Aug. 10, 2010) (where an individual made express statements about controlling a company, made purchases in names of family members without filing a 13D, and made investments on behalf of a trust without filing a 13D or 13G or disclosing his position, "[a] false or misleading statement made on a Schedule 13D may be actionable under the antifraud provision of [Section] 10(b)."); *but see S.E.C. v. Teo*, 746 F.3d at 91 (noting that different rules apply to SEC-initiated civil enforcement and private enforcement action).

[13] *Hallwood Realty Partners, L.P.* 286 F.3d at 619 (no private damage remedy for issuers under 13(d)); *Oran v. Stafford*, 226 F.3d 275, 288 (3d Cir. 2000) ("[A] violation of [mandatory] reporting requirements [of Regulation S-K Item 303] does not automatically give rise to a material omission under Rule 10b-5."); *In re Penn Central Sec. Litig.*, 494 F.2d 528, 540 (3d. Cir. 1974) (holding that Section 18(a) is the exclusive remedy for alleged violations of an analogous provision requiring the filing or reports with the SEC); *Dreiling v. Am. Online Inc.*, 578 F.3d 995, 1003 (9th Cir. 2009); *Issen v. GSC Enterprises, Inc.*, 522 F. Supp. 390, 396 (N.D.Ill. 1981) (holding that the effect of litigating a 13(d) violation through 16(b) would amount to a barred 10(b) litigation against those who aided and abetted accounting fraud, subverting the PSLRA and the Supreme Court's prohibition against aiding and abetting violations under 10(b)).

[14] Section 21(d) of the Exchange Act grants the SEC authority to obtain disgorgement in civil actions of "any unjust enrichment by the person who received such unjust enrichment as a result of such violation." 15 U.S.. § 78u.  Section 13(d) and the PSLRA do not provide a similar express grant to private parties. *See* 15 U.S.C. §§ 78m, 78u-4; *Rubin*, 701 F.Supp at 1050-51 (a court must infer a private cause of action for money damages because 13(d) does not expressly create one).

H.R.Rep.No.1711 at 4, U.S. Code Cong. & Admin. News p. 2814).   According to the Second Circuit, the entire purpose of 13(d) is to require disclosure so that investors can assess the potential for changes in corporate control and adequately evaluate the company's worth.  *Id.*  At least to this Court, a private's plaintiff's right to damages for a failure to disclose is not apparent in the legislative purpose.

The trend in Section 13(d) cases indicates a strong reluctance of, if not an absolute bar to, allowing suits for damages, both under 10(b) and 18(a).  The Second Circuit, at least, has stated that "[o]ne complaining of a false or misleading statement in a Schedule 13D may seek damages only under Section 18(a) of the Act."  *Kamerman*, 891 F.2d at 430.  Although the Third Circuit has indicated that plaintiffs may bring an action for a Section 13(d) violation under both Section 10(b) and Section 18(a), *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 277, 227 & 283– 84 (3d Cir. 2006), the Court cannot find any support that the courts in the Third Circuit intended for such an action to be brought under only Section 10(b).  *Cf. In re Burlington*, 114 F.3d at 1434. In fact, the Third Circuit has narrowed the instances where a duty to update a Schedule 13D may give rise to injunctive relief.  *See id.*  Even in the landmark case in the Second Circuit, *GAF Corp. v. Milstein*, the court explicitly refused to consider if (and had reservations whether) non-injunctive relief was available under 10(b) for a Section 13(d) violation.  *See* 453 F.2d at 714.  As such, the Court finds that Section 13(d) violation may not give rise to a private right of action for damages under Section 10(b).  Accordingly, the Court finds that Plaintiff's Section 20(a) claim necessarily fails as well.

When such a duty arises, the proper relief should relate to the information that was misstated or omitted.  *See, e.g.*, *In re Burlington*, 114 F.3d at 1434.  As stated above, courts have consistently held that implied private rights under Section 13(d) may provide plaintiffs injunctive

relief but not monetary damages; to allow Plaintiff to sidestep the boundaries of even the implied right of action by pleading Section 10(b) seems improper.

### B.  Item 403(a) and Item 404

Plaintiff also alleges violations of Item 403(a) and Item 404.  (Second Amended Complaint ¶ 1.)  Item 403(a) requires that certain information "with respect to any person (including any 'group' as that term is used in section 13(d)(3) of the Exchange act) who is known to the registrant to be the beneficial owner of more than five percent of any class of the registrant's voting securities."  17 C.F.R. § 229.403(a).  The Third Circuit has held that, in order to show liability under Section 10(b) for other Regulation S-K items, a plaintiff must first establish that the regulation creates an independent private right of action or that the regulation imposes an affirmative duty of disclosure that, if violated, would constitute a material omission under Rule 10b-5.  *Oran v. Stafford*, 226 F.3d 275, 287 (3d Cir. 2000).  The Court did not find any cases that can elucidate whether there is an independent private right of action.  Plaintiff's only support for a right of action arises from *SEC v. Honig*, Civ. No. 18-8175, 2021 WL 276155, at *6 (S.D.N.Y. Jan. 27, 2021), which does not provide any inference of a private right under 403(a).

Item 404 requires the registrant to describe any transaction "in which the registrant was is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest."  17 C.F.R. § 229.404(a).  Under the instructions to Item 404(a), a "related person" can be security holder covered by Item 403(a).  *See id.*  However, the instructions further provide that disclosure need not be provided if: "(a) [t]he transaction is one where the rates or charges involved in the transaction are determined by competitive bids . . . or (c) the interest of the related person arises solely from the ownership of a class of equity securities of the registrant and all holders of that class of equity securities of the

registrant received the same benefit on a pro rata basis." *Id.*  Item 404 only requires that the issuer

update the disclosures when it normally does.  *Id.*  On the facts alleged for the Coinsquare and

Kairos related party transactions (Second Amended Complaint ¶¶ 188–199) and given the

exceptions included in the instructions, the Court finds that the inference that Riot failed to update

its Item 403 and 404 disclosures due to an undisclosed control group is not as cogent and

compelling as the inference that such disclosure was delayed due to a potential exception or even

the timings that the company usually discloses such information.  (*See* Second Amended

Complaint ¶¶ 188–199.)

## V.        <u>CONCLUSION</u>

For the reasons stated above, Defendants' motions to dismiss all claims is granted without

prejudice.  Plaintiff may file a separate motion seeking leave to amend his complaint in a manner

consistent with this Opinion.  An appropriate order follows.


Dated: April 8. 2022




                                        s/ Zahid N. Quraishi
                                        **ZAHID N. QURAISHI**
                                        **UNITED STATES DISTRICT JUDGE**