# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RIOT BLOCKCHAIN, INC., *et al.*, <br><br> Defendants. | Civil No. 3:18-CV-02293(GC)(RLS) <br><br> MOTION DATE:  October 17, 2022 <br><br> **ORAL ARGUMENT REQUESTED** |

---

## MEMORANDUM OF LAW IN SUPPORT OF RIOT BLOCKCHAIN, INC.'S MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

---

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*RIOT BLOCKCHAIN, INC., JOHN O'ROURKE, AND MICHAEL BEEGHLEY*

Table of Contents

Page

I. INTRODUCTION ........................................................................1

II. FACTUAL ALLEGATIONS ........................................................3

   A. Riot's Investments in the Cryptocurrency Business ...........3

   B. The TAC's Allegations Concerning the Riot Defendants .................4

III. PROCEDURAL HISTORY .........................................................5

IV. LEAD PLAINTIFF HAS FAILED AGAIN TO STATE A SECTION 10(B) CLAIM AGAINST RIOT ....................................................7

   A. Lead Plaintiff's Claims Are Subject to Heightened Pleading Standards ..........................................................7

   B. Lead Plaintiff Cannot Allege an Affirmative Duty to Disclose to Support a Section 10(b) Claim.........................................8

   C. Lead Plaintiff's Item 404 Allegations Must Be Dismissed ..............11

   D. Lead Plaintiff's Item 1.01 Allegations Must Be Dismissed .............18

   E. Lead Plaintiff's Item 403 Allegations Must Be Dismissed .............22

   F. Riot's Other Disclosures Were Not False or Misleading...................31

   G. The TAC Does Not Raise a Strong Inference of Scienter ................34

   H. Lead Plaintiff's Alleged Corrective Disclosures Do Not Establish Loss Causation....................................................34

V. LEAD PLAINTIFF DOES NOT ADEQUATELY ALLEGE "SCHEME LIABILITY" UNDER SECTION 10(B) ..................................38

VI. CONCLUSION............................................................................40

Table of Authorities

Page(s)

**Cases**

*In re Advanta Corp. Sec. Litig.*,
   180 F.3d 525 (3d Cir. 1999), *abrogated on other grounds by
   Tellabs, Inc., v. Makor Issues & Rights, Ltd*., 551 U.S. 308 (2007)............33, 34

*Alfus v. Pyramid Tech. Corp.*,
   764 F. Supp. 598 (N.D. Cal. 1991).................................................................9, 11

*In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act
   (ERISA) Litig.*,
   2011 WL 3211472 (S.D.N.Y. July 29, 2011)....................................................20

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988)....................................................................................11, 20

*Biofrontera AG v. Deutche Balaton AG*,
   2020 WL 1489788 (S.D.N.Y. Mar. 27, 2020)....................................................31

*Brian B. Sand & Zachary B. Sand Joint Tr. v. Biotechnology Value
   Fund, L.P.*,
   2017 WL 3142110 (N.D. Cal. July 25, 2017) ....................................................30

*Brooks v. United Dev. Funding III, L.P.*,
   2020 WL 6132230 (N.D. Tex. Apr. 15, 2020) ...................................................27

*In re Canandaigua Sec. Litig.*,
   944 F. Supp. 1202 (S.D.N.Y. 1996) ....................................................................9

*Chiarella v. United States*,
   445 U.S. 222 (1980)..............................................................................................9

*In re China Valves Tech. Sec. Litig.*,
   2012 U.S. Dist. LEXIS 130284 (S.D.N.Y. Sept. 12, 2012) ..............................15

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   713 F. Supp. 2d 378, 403 ...................................................................................34

Table of Authorities

Page(s)

*CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*,
    654 F.3d 276 (2d Cir. 2011) ...................................................................29

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)................................................................................7

*Fan v. StoneMor Partners LP*,
    927 F.3d 710 (3d Cir. 2019) ..................................................................8

*Forward Indus., Inc. v. Wise*,
    2014 WL 6901137 (S.D.N.Y. Sept. 23, 2014) ............................25, 26

*Golan v. Puleo*,
    480 F. Supp. 2d 1325 (S.D. Fla. 2007) ..................................................9

*Gold v. Ford Motor Co.*,
    852 F. Supp. 2d 535 (D. Del. 2012).....................................................21

*Gordon v. Royal Palm Real Est. Inv. Fund I, LLLP*,
    2020 WL 2836312 (E.D. Mich. May 31, 2020) ..................................40

*Greenfield v. Criterion Cap. Mgmt., LLC*,
    2017 WL 2720208 (N.D. Cal. June 23, 2017).....................................29

*Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*,
    432 F. Supp. 2d 571 (E.D. Va. 2006) .............................................9, 11

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ................................................................35

*Litzler v. CC Invs., L.D.C.*,
    411 F. Supp. 2d 411 (S.D.N.Y. 2006) .................................................30

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*,
    223 F. Supp. 2d 435 (S.D.N.Y. 2001) ...........................................26, 28

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020) .................................................16

Table of Authorities

Page(s)

*Lorenzo v. SEC,*
   139 S. Ct. 1094 (2019)............................................................38, 39

*Manela v. Garantia Banking Ltd.,*
   5 F. Supp. 2d 165, 175 (S.D.N.Y. 1998) ...............................17

*In re Merck & Co., Inc. Sec. Litig.,*
   432 F.3d 261 (3d Cir. 2005) ...........................................36, 37

*In re Mindbody, Inc. Sec. Litig.,*
   489 F. Supp. 3d 188 (S.D.N.Y. 2020) ...................................40

*Nat'l Junior Baseball League v. Pharmanent Dev. Grp. Inc.,*
   720 F. Supp. 2d 517 (D.N.J. 2010)........................................34

*Oran v. Stafford,*
   226 F.3d 275 (3d Cir. 2000) .........................................*passim*

*In re Plavix Mktg., Sales Practice & Prods Liab. Litig. (No. II),*
   332 F. Supp. 3d 927 (D.N.J. 2017)........................................22

*Rahman v. Kid Brands, Inc.,*
   736 F.3d 237 (3d Cir. 2013) ................................................22

*Rubenstein v. Int'l Value Advisers, LLC,*
   363 F. Supp. 3d 379 (S.D.N.Y. 2019), *aff'd*, 959 F.3d 541 (2d Cir.
   2020) ........................................................................25

*SEC v. Cioffi,*
   868 F. Supp. 2d 65 (E.D.N.Y. 2012) ....................................20

*SEC v. Citigroup Glob. Mkts., Inc.,*
   752 F.3d 285 (2d Cir. 2014) ...............................................20

*SEC v. Conaway,*
   698 F. Supp. 2d 771 (E.D. Mich. 2010) ...........................20, 22

*SEC v. Honig*.......................................................*passim*

Table of Authorities

Page(s)

*SEC v. Lucent Techs., Inc.*,
    363 F. Supp. 2d 708 (D.N.J. 2005) ....................................27

*SEC v. Rio Tinto plc*,
    2022 WL 2760323(2d Cir. July 15, 2022) ........................39

*Stephens v. Uranium Energy Corp.*,
    2016 WL 3855860 (S.D. Tex. July 15, 2016) ............................17, 22

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ..................................8

*In re Tangoe, Inc. S'holders Litig.*,
    333 F. Supp. 3d 77 (D. Conn. 2018)....................................16

*In re Tellium, Inc. Sec. Litig.*,
    2005 WL 2090254 (D.N.J. Aug. 26, 2005) ........................35

*In re Teva Sec. Litig.*,
    2021 WL 1197805 (D. Conn. Mar. 30, 2021) ....................40

*Torchmark Corp. v. Bixby*,
    708 F. Supp. 1070 (W.D. Mo. 1988) ................................29

*Transcon Lines v. A.G. Becker Inc.*,
    470 F. Supp. 356 (S.D.N.Y. 1979) ....................................29

*Trustcash Holdings, Inc. v. Moss*,
    668 F. Supp. 2d 650 (D.N.J. 2009)....................................38

*Unite Here v. Cintas Corp*,
    2006 WL 2859279 (S.D.N.Y. Oct. 6, 2006)....................................14

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017) ................................8

Table of Authorities

Page(s)

**Statutes**

15 U.S.C.

§ 78m ................................................................................................24
§ 78m(d)(3) ......................................................................................29
§ 78u-4 ...............................................................................................8

Exchange Act

§ 10(b) ........................................................................................*passim*
§ 13(d)(3) ...................................................................................*passim*

Private Securities Litigation Reform Act ....................................*passim*

**Other Authorities**

17 C.F.R.

§ 229.403 .....................................................................................24, 30
§ 229.403(a) .......................................................................................23
§ 229.404 .....................................................................................12, 14
§ 229.404(a) .......................................................................................15
§ 240 10b-5(a) ....................................................................................38
§ 240 10b-5(b) ..............................................................................38, 39
§ 240 10b-5(c) ....................................................................................38
§ 240 10b-22 ........................................................................................7
§ 240 13d-2 .........................................................................................30
§ 240 13d-5(b)(1) ...............................................................................24
§ 240.10b-5 .................................................................................11, 12, 19
§ 240.10b-5 ................................................................................*passim*
§ 240.13a-11(c) ...................................................................................19
§ 240.13d-5(b)(1) ...............................................................................24

Fed. R. Civ. P. 9(b) ..............................................................................8

## I.    <u>INTRODUCTION</u>

Lead Plaintiff has been afforded *four* attempts to state claims against Riot Blockchain, Inc. ("Riot" or the "Company"), John O'Rourke ("O'Rourke"), and Michael Beeghley ("Beeghley," and together with Riot and O'Rourke, the "Riot Defendants").[1] Whether by court order or otherwise, each of these attempts has failed to state actionable claims against the Riot Defendants. The Consolidated Third Amended Class Action Complaint (the "TAC") is no different.

The Court has now twice expressly ruled that Lead Plaintiff has failed to allege cognizable misstatements and omissions based on Riot's purported failure to disclose certain related-parties and investor groups in its SEC filings. In both of these rulings, the Court emphasized that to state a claim under Rule 10b-5, Lead Plaintiff must establish that a private right of action existed or that the Riot Defendants had an affirmative duty to disclose such matters, but that Lead Plaintiff plainly failed to do so under Items 403 and 404 of Regulation S-K. (Dkt. 166 (the "Apr. 30, 2020 Order") at 20, 17; Dkt. 223 (the "Apr. 8, 2022 Order") at 22.)

Yet, in the TAC, Lead Plaintiff does not allege any *new facts* that would change the Court's analysis. Instead, Lead Plaintiff merely repackages the same

---

[1] O'Rourke and Beeghley have filed a separate motion to dismiss against the TAC to address Lead Plaintiff's scienter allegations. Riot incorporates by reference each of the arguments set forth in that motion to dismiss. Barry Honig ("Honig") is represented separately.

deficient allegations and relies on the same SEC regulations.  Lead Plaintiff offers only one new, but equally indefensible *theory* for its claims based entirely on an *instruction* to an SEC form that has no legal effect and cannot create an affirmative duty of disclosure for a Rule 10b-5 claim.  Lead Plaintiff simply affixes a label that conclusorily states "affirmative duty to disclose" to his claims hoping the Court will just accept it at face value.  But the law in the Third Circuit is clear that such a conclusory allegation is not enough, and the proper analysis confirms that such a duty does not exist.  *See Oran v. Stafford*, 226 F.3d 275, 287 (3d Cir. 2000) ("we must examine whether the disclosure mandated by [the relevant SEC regulation] is governed by standards consistent with those that the Supreme Court has imposed for private fraud actions under the federal securities laws") (alteration added).

Even beyond the legal failures in Lead Plaintiff's claims, the TAC is riddled with untenable and irrelevant allegations that cannot survive another dismissal under the Private Securities Litigation Reform Act (the "Reform Act").  Lead Plaintiff advances the same narrative of Riot's purported failure to disclose (1) Honig as a related party in the Coinsquare Ltd. ("Coinsquare"), Kairos Global Technology, Inc. ("Kairos"), and March 2017 private placement transactions by virtue of his investments therein; and (2) Honig and other stockholders' purported group status.  But his reliance on borrowed allegations from an *unrelated* SEC

action pertaining to investments in *companies other than Riot*, which have already been rejected, have once again proven fatal to Lead Plaintiff's claims.

Additionally, Lead Plaintiff has done nothing to fix his loss causation allegations from prior iterations of his complaint. Despite previous determinations by the Court that much of Lead Plaintiffs' loss causation allegations were insufficient (Apr. 30, 2020 Order at 39), the TAC continues to rely on a number of media articles, SEC filings, and an unrelated litigation, that neither correct prior disclosures nor even reflect any new information pertinent to the allegations.

Given Lead Plaintiff's numerous attempts to state a claim, Riot therefore requests that the Court dismiss all of the claims against it with prejudice.

## II.   FACTUAL ALLEGATIONS

### A.   Riot's Investments in the Cryptocurrency Business

Riot, formerly known as Venaxis and, then, Bioptix, Inc. ("Bioptix") (TAC ¶¶ 81, 83), entered into the cryptocurrency industry in October of 2017. (*Id*. ¶ 94.) Specifically, on October 4, 2017, Bioptix announced an investment in goNumerical Ltd., a Canadian cryptocurrency exchange that operates as Coinsquare. (*Id*. ¶ 96.) In conjunction with this announcement, Bioptix formally changed its name to Riot Blockchain, Inc. (RIOT) to demonstrate its new focus as "a strategic investor and operator in the blockchain ecosystem with a particular focus on the Bitcoin and Ethereum blockchains." (*Id*. ¶ 94.) In line with this focus, on November 3, 2017,

Riot announced that it entered into a share exchange agreement with Kairos a

Nevada-based cryptocurrency company, with the primary purpose of purchasing

various Bitcoin mining machines.  (*Id*. ¶ 206.)

### B.    The TAC's Allegations Concerning the Riot Defendants

In this latest version of the complaint, the TAC abandons its reliance on the

Honig Group[2] to advance its narrative of an elaborate, orchestrated, and

coordinated pump-and-dump scheme between multiple insiders at Riot, as well as

its theme that Riot aimed to hoax investors into thinking Riot was a serious

cryptocurrency company.  (SAC ¶¶ 1-16.)  Instead, Lead Plaintiff focuses only on

Honig as the purported orchestrator of the alleged fraud, his alleged beneficial

interests in Riot and status as a related party in certain transactions, and Riot's

alleged failure to disclose such matters in violation of Rule 10b-5.  (TAC ¶¶ 1-4.)

Despite Lead Plaintiff's desertion of his defective Honig Group theory, the

TAC clings onto the allegations that Honig "secretly coordinated his investments

in Riot as part of a group in order to inflate the price of Riot's stock."  (*Id*. ¶ 142)

Lead Plaintiff also characterizes certain investments in cryptocurrency companies

as "related-party" transactions due to Honig's investments in those companies.  (*Id.*

---

[2] The Honig Group previously was alleged to be Honig, O'Rourke, Mark
Groussman, John Stetson, Catherine DeFrancesco, and Beeghley.  Undoubtedly
recognizing the weaknesses of the allegations against the Honig Group, the TAC
declines to state claims against Groussman, Stetson, and DeFrancesco, and
removes allegations of their purported fraudulent conduct.

¶¶ 204, 207.)  But the TAC is even more untenable than the prior, dismissed versions of the complaint.  The TAC includes irrelevant and insufficient (1) "background" allegations regarding Honig and other Selling Stockholders'[3] investments in companies *other than Riot* that occurred well prior to any allegations surrounding Riot (*Id.* ¶¶ 49-80); (2) borrowed SEC allegations from an *unrelated* lawsuit against Honig, O'Rourke, and other individuals for *unrelated* conduct, including a statement from 2014 by O'Rourke describing Honig as the principal investor in their "small group" (*Id.* ¶¶ 49-74); (3) allegations regarding Honig's and O'Rourke's stock sales that reveal no coordination of investments (*Id.* ¶¶ 147, 234); and (4) allegations that O'Rourke, Honig, and others had purportedly shared an office at a point in time.  (*See e.g.*, *id.* ¶¶ 151, 162.)

## III.   <u>PROCEDURAL HISTORY</u>

Each of Lead Plaintiff's complaints following the Consolidated Class Action Complaint ("CAC") filed on January 15, 2019 alleged similar versions of the same

---

[3] The TAC alleges that the Selling Stockholders included "2330573 Ontario, Aifos, ATG, Brauser, DeFrancesco, Grander, Groussman, GRQ 401K, Alan Honig, Barry Honig, Jonathan Honig, JAD, Karr, Kesner, Melechdavid, Molinsky, Namaste, Northurst, Paradox, O'Braitis, Stetson Capital, Theofilos, and Titan, and other affiliated shareholders." (TAC ¶ 79.)

factual allegations, only supported by different legal theories of securities violations—none of them credible and each of them dismissed.[4]  (Dkt. 52.)

On May 9, 2019, Lead Plaintiff filed his Corrected Consolidated Amended Class Action Complaint (Dkt. 72 (the "CCAC")) against the Riot Defendants and other defendants, alleging similar claims to the TAC.[5]  On April 30, 2020, the Court dismissed the CCAC.  (*See* Apr. 30, 2020 Order.)  Lead Plaintiff argued the applicability of Item 404 of Regulation S-K in his opposition to the motions to dismiss, which the Court found unconvincing and ruled that Lead Plaintiff had "not alleged any affirmative duty that would have required Riot to disclose . . . that the Coinsquare and Kairos transactions involved related parties."  (*Id.* at 20, 17.)

Lead Plaintiff filed the Consolidated Second Amended Class Action Complaint (Dkt. 188 (the "SAC")) on December 24, 2020.  The SAC alleged almost identical allegations as to the TAC, claiming that Riot failed to disclose beneficial ownerships in violation of Section 13(d) and Item 403 and related

---

[4] On March 18, 2019, the Riot Blockchain Defendants and Jeffrey McGonegal filed a Motion to Dismiss against Lead Plaintiff's CAC.  (Dkt. 66.)  Lead Plaintiff, thereafter, voluntarily sought leave to amend his complaint.

[5] The other defendants in the CCAC included Honig, Catherine DeFrancesco ("DeFrancesco"), John Stetson ("Stetson"), Mark Groussman ("Groussman"), Andrew Kaplan ("Kaplan"), Mike Dai ("Dai"), Jeffrey McGonegal ("McGonegal"), Jason Les ("Les"), and Eric So.  Lead Plaintiff dismissed many defendants, only alleging claims against the Riot Defendants, Honig, Groussman, Stetson, and DeFrancesco.

parties in violation of Item 404.  After the parties had fully briefed the motions to dismiss, the Court requested the parties to submit supplemental briefings on whether there is an implied private action for shareholders to seek damages directly under Section 13(d) or indirectly under Section 10(b).  (Dkt. 216, 217-22.) The Court held that there was not.  (Apr. 8, 2022 Order at 20.)  The Court also noted the need for an affirmative duty of disclosure under Regulation S-K to give rise to a Rule 10b-5 claim.  (*Id.* at 22.)  The Court dismissed the SAC.

Despite the Court's prior rulings, Lead Plaintiff's TAC[6] alleges the same Item 403 and Item 404 violations, but adds the words "affirmative duty to disclose"  (*see* TAC ¶ 155) as an apparent attempt to address the dismissal orders. The TAC invokes Item 1.01 of Form 8-K as a "new" violation.  (*See id.* ¶ 98.)

## IV. LEAD PLAINTIFF HAS FAILED AGAIN TO STATE A SECTION 10(B) CLAIM AGAINST RIOT

### A. Lead Plaintiff's Claims Are Subject to Heightened Pleading Standards

To state a claim under Section 10(b) of the Exchange Act, a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance on each misrepresentation or omission; (5) economic loss; and (6) loss causation.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  Section 10(b) claims are subject to the heightened

---

[6] The TAC now only alleges claims against Honig and the Riot Defendants.

pleading standards of both Federal Rule of Civil Procedure 9(b) and the Reform

Act, 15 U.S.C., § 78u-4; *Fan v. StoneMor Partners LP*, 927 F.3d 710, 714 (3d Cir.

2019).  To survive a motion to dismiss, Lead Plaintiff must "state with particularity

the circumstances constituting fraud[,]" Fed. R. Civ. P. 9(b), pleading, at

minimum, "the 'who, what, when, where and how' of the events[.]"  *In re Suprema*

*Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (citation omitted).

The Reform Act takes it a step further.  With the goal of curbing meritless

securities class actions, the Reform Act imposes on Lead Plaintiff the additional

requirements to (i) "specify each allegedly misleading statement, why the

statement was misleading, and if an allegation is made on information and belief,

all facts supporting that belief with particularity"; and (ii) "state with particularity

facts giving rise to a strong inference that the defendant acted with the required

state of mind."  *Williams v. Globus Med., Inc.,* 869 F.3d 235, 241 (3d Cir. 2017).

**B.    Lead Plaintiff Cannot Allege an Affirmative Duty to Disclose to Support a Section 10(b) Claim**

In Lead Plaintiff's prior complaint, he alleged two grounds for his Section

10(b) claim:  (1) Riot failed to disclose related-party transactions pertaining to

Riot, in violation of Item 404 of Regulation S-K; and (2) Riot failed to disclose

that Honig and other stockholders were members of a group, in violation of Item

403 of Regulation S-K.  (SAC ¶¶ 29, 233).  In the TAC, Lead Plaintiff repeats

those allegations, only adding that the failure to disclose the related-party

transactions also violated Item 1.01 of Form 8-K.  These alleged omissions cannot save Lead Plaintiff's claims from yet another dismissal.

"[T]he Third Circuit has held that, in order to show liability under Section 10(b) for other Regulation S-K items, a plaintiff must first establish that the regulation creates an independent private right of action or that the regulation imposes an affirmative duty of disclosure that, if violated, would constitute a material omission under Rule 10b-5."  *Oran*, 226 F.3d at 287. (Apr. 8, 2022 Order at 21; Dkt. 288-1 ("MLA") at 9).  Indeed, "[m]ere non-disclosure of information will not necessarily give rise to 10b-5 liability even if the information was material; a plaintiff must also establish that the defendant had a duty to disclose." *In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202, 1208 (S.D.N.Y. 1996); *see also Chiarella v. United States*, 445 U.S. 222, 235 (1980).  Lead Plaintiff does not contend that a private right of action exists for Items 403 or 404 of Regulation S-K or Item 1.01 for Form 8-K.  (*See e.g.*, MLA at 16-17.)  Nor could Lead Plaintiff convincingly advance such an argument.  (*See* Apr. 8, 2022 Order at 21.)  *See also Oran*, 226 F.3d at 287 (Item 303 does not create an independent private right of action).[7]  Rather, Lead Plaintiff claims that such violations create an "affirmative

---

[7] *See also Iron Workers Local 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 583 (E.D. Va. 2006) (same); *Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 608 (N.D. Cal. 1991) (same); *Golan v. Puleo*, 480 F. Supp. 1325, 1328 (S.D. Fla. 2007) (declining to apply a private right of action under Item 404 because, *inter alia*, "[t]he case law is clear as to the absence of an express private

duty to disclose," and Riot's purported failures thereunder constitute material omissions under Rule 10b-5.  (*See e.g.*, TAC ¶¶ 177, 185, 187, 189, 204, 205.) Simply adding the words "affirmative duty to disclose" to the TAC, without alleging any *new* facts, does not give rise to such a duty.

*Oran* clarified the analysis for determining whether an affirmative duty to disclose exists, such that a rule could imply a private right of action under Section 10(b).  *See Oran*, 226 F.3d at 287.  The court explained that "we must examine whether the disclosure mandated by SK-303 is governed by the same standards consistent with those that the Supreme Court has imposed for private fraud actions[.]"  *Id*.  It noted that Item 303 requires disclosure (1) when the event is likely to come to fruition; or (2) if management cannot make that determination, if the event would have a material effect on the registrant's financial condition or operations.  *Id*.  Because this standard varied from the Supreme Court's standard under Section 10(b), which, in the case of forward-looking statements, requires "a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity," the court found that Item 303's disclosure obligations extend beyond Rule 10b-5's

---

right of action under Regulation S-K, and courts may not imply a private right of action under Regulation S-K where Congress has not established one").

obligations. *Id*. at 288 (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 237 (1988)). Thus, a violation of Item 303 did not imply liability under Rule 10b-5.[8]

Here, Lead Plaintiff's allegations rest on purported omissions—that is, the failure to disclose certain alleged related parties and investor groups. (TAC ¶¶ 167, 170.) In such a case, a duty only arises under Rule 10b-5 when disclosure is necessary to make a prior statement not misleading. *See* 17 C.F.R. § 240.10b-5; *Basic, Inc.*, 485 U.S. at 229. As discussed *infra*, the *Oran* analysis confirms that the Court cannot imply a private right of action based on any of these violations.

### C. Lead Plaintiff's Item 404 Allegations Must Be Dismissed

#### 1. Item 404's Disclosure Standard Does Not Resemble that of Section 10(b) and Rule 10b-5

The only apparently "new" allegation in Lead Plaintiff's TAC pertaining to the Item 404 violation is the statement that "Item 404 of Regulation S-K, *require*[s] companies to disclose transactions with related parties[.]" (TAC ¶ 4 (emphasis in original).) According to Lead Plaintiff, that provision creates a duty to disclose that automatically results in a Section 10(b) violation. (*Id*.)

Item 404 requires disclosure for transactions over $120,000 in which a related party has a material interest and requires that the registrant (1) name such person; (2) identify the nature of such person's interest in the transaction; and (3)

---

[8] Other courts agree with this reasoning. *See e.g.*, *Alfus*, 764 F. Supp. at 608; *Iron Workers*, 432 F. Supp. 2d at 583.

where applicable, specify the amount of such person's interest in the transaction.

17 C.F.R. § 229.404.  The duty of disclosure under Section 10(b) rests on whether

a disclosure is needed to make the statement not misleading.  *See* 17 C.F.R. §

240.10b-5.  These are two separate duties that cannot be reconciled.  In

practicality, this means that while an omission of a related party's identity may be

a *per se* violation of Item 404, the same is not necessarily true under Section 10(b).

*See Oran*, 226 F.3d at 288.  Thus, a violation of Item 404's reporting requirements

"does not automatically give rise to a material omission under Rule 10b-5."  *Id*.

> ### 2.   The Riot Defendants Did Not Have a Duty to Disclose Honig and the Other Selling Stockholders as "Related Parties"

Lead Plaintiff has also failed to plead with particularity an Item 404

violation.  Lead Plaintiff's TAC alleges the same facts regarding the Riot

Defendants' alleged violations under Item 404 of Regulation S-K as stated in the

SAC.  (*Compare* SAC ¶¶ 389-417, *with* TAC ¶¶ 173-80, 200-06.)  It alleges that

Riot failed to disclose related-party transactions in its Forms 8-K and 10-K,

including (1) the Coinsquare Agreement; (2) the Kairos Transaction; and (3) a

March 2017 private placement.  (TAC ¶ 170.)  But none of these transactions

required disclosure of Honig as a related party under Item 404.

*a) The Coinsquare and Kairos Transactions*

Lead Plaintiff's allegations regarding the Item 404 violations rest on a mischaracterization of Honig's interest in the pertinent transactions.[9]  Lead Plaintiff alleges that Honig, by virtue of his investments in Coinsquare and Kairos, should have been identified by name in Riot's Forms 8-K on October 4, 2017 and November 3, 2017, respectively.  (*See* TAC ¶ 105.)  Lead Plaintiff further contends that Item 404 requires disclosure of related party transactions with "security holder[s] covered by Item 403(a) [of Regulation S-K]," which includes "individuals who own greater than 5% of the registrant."[10]  (*Id.*)  But the Coinsquare and Kairos transactions were not transactions *with a Riot security holder—i.e., Honig.*  They were transactions with Coinsquare and Kairos.  And, as the TAC confirms, those transactions were properly disclosed.  (TAC ¶¶ 200, 206.)  Honig was not a party to these agreements.  Rather, Honig had, at most, an ***indirect*** interest in the transactions because he was an investor in both companies.

---

[9] Lead Plaintiff also alleges that Riot should have disclosed Groussman, Titan Muti-Strategy Fund, I. Ltd. ("Titan"), Stetson, and 2330573 Ontario ("Ontario") in the Coinsquare transaction (TAC ¶ 97), and DeFrancesco in the Kairos transaction. (*Id.* ¶ 108.)  Riot's arguments apply equally to these parties.

[10] Lead Plaintiff's application of Item 404 lacks logic.  To assess whether a party to the transaction is related with the registrant, the focus of the analysis is on the party on the other side of the registrant.  A party is not related to the registrant solely because one of its investors is also an investor in the registrant, without more.

Instruction 6 of Item 404 sets forth that transactions involving persons with *indirect* interests, such as Honig, need only be disclosed in limited circumstances:

> "[a] person who has a position or relationship with a firm, corporation, or other entity that engages in a transaction with the registrant ***shall not*** *be deemed to have an indirect material interest . . . where . . .[t]he interest arises* only (i) [f]rom such person's position as a director of another corporation or organization that is a party to the transaction; or (ii) ***[f]rom the direct or indirect ownership by such person . . ., in the aggregate, of less than a ten percent equity interest in another person . . . which is a party to the transaction***; or (iii) [f]rom both such position and ownership[.]"

*Id.* (Instruction 6) (emphasis added); *see also e.g., Unite Here v. Cintas Corp*, 2006 WL 2859279, at *6 (S.D.N.Y. Oct. 6, 2006) (Item 404(a) includes exclusion for "ten percent participation thresholds where the [related party] has less than a ten percent interest in the entity receiving money from the corporation.").

Lead Plaintiff alleges only that Honig had ownership interests in Coinsquare and Kairos, not that he owned 10% or more of those companies; therefore, the exclusion under Item 404 applies. (TAC ¶¶ 204, 207.) 17 C.F.R. § 229.404. Accordingly, the Coinsquare and Kairos transactions would require disclosure of Honig, only if Honig owned more than 10% of Coinsquare or Kairo's—***not Riot's***—stock.[11]  He did not.  Honig owned 8.6% of Kairos and 0.9% of

---

[11] If Lead Plaintiff's argument were valid, registrants would have the impossible burden to disclose every individual involved in every transaction with every company in which a shareholder of the registrant is also a shareholder of the other company, no matter how insignificant their ownership interest.

-14-

Coinsquare at the time of the transactions.[12] (TAC ¶¶ 108, 100.)  Thus, Honig did

not have an indirect interest that created a disclosure duty under Item 404.[13]

Regardless, Lead Plaintiff ignores the $120,000 threshold payment required

under Item 404.  *See* 17 C.F.R. § 229.404(a).  Lead Plaintiff admits that Riot paid

only a $50,000 consulting fee to Honig related to Coinsquare.  (TAC ¶ 97.)  As a

matter of law, the payment to Honig was not "material or even required by Item

404 in the first instance."  *In re China Valves Tech. Sec. Litig.*, 2012 U.S. Dist.

LEXIS 130284, at *24 (S.D.N.Y. Sept. 12, 2012) (dismissing the complaint

because $50,000 payment insufficient for related party disclosure).

### b)  The March 10, 2017 Private Placement

Lead Plaintiff rehashes the same allegations regarding the March 10, 2017

private placement, arguing that Riot failed to disclose Honig, by name, in its

March 16, 2017 Form 8-K and its March 31, 2017 Form 10-K.  (*Compare* TAC ¶¶

173, 178, *with* SAC ¶¶ 389, 392.)  Lead Plaintiff's claim fails for several reasons.

---

[12] Groussman owned 0.2%, Titan owned 0.3%, Ontario owned 4.4%, and Stetson owned 0.2% in the Coinsquare transaction. (TAC ¶ 97.)

[13] Although under no affirmative duty, on April 17, 2018, Riot disclosed in its Form 10-K for FY 2017 that the Coinsquare transaction involved a $50,000 payment to a company that was related to Honig and also disclosed his interest. (Declaration of D. Scott Carlton ("Carlton Decl.") Ex. F, Riot's Form 10-K for FY 2017 at p. 73 ("GRQ consultants, Inc., a related party of Honig received a cash payment of $50,000 for diligence services in connection with the Company's investment in Coinsquare.").)

First, Riot fully disclosed that the agreement was with a related party.  The Form 8-K attached the Securities Purchase Agreement, which disclosed that the "Purchaser represents and warrants that: (i) Purchaser has *a prior substantial pre-existing relationship* with the Company." [14]  (*See* Carlton Decl. Ex. A, Bioptix's March 16, 2017 Form 8-K, Ex. 10.1 at 22.)[15]  Moreover, Riot specified that Honig was an investor who participated in the March 2017 private placement offerings in the Company's July 19, 2017 Registration Statement.  (*See id*, Ex. C, Bioptix's July 19, 2017 Form S-3 (Amendment No. 1) at 2-4.)  Thus, Riot disclosed the private placement as a related party transaction with Honig, while also disclosing the material information to that transaction. [16]

---

[14] Riot's March 31, 2017 Form 10-K also "[i]ncorporated by reference from the Registrant's Report on Form 8-K, effective March 15, 2017 and filed March 17, 2017," which contained the related-party disclosure. (*See* Carlton Decl. Ex. B, Riot's Form 10-K for FY 2016 at 51.)

[15] Moreover, mere days following this disclosure, Riot filed a Notice of Exempt Offering of Securities that disclosed that the private placement of $2,250,000 in promissory notes and purchase warrants was sold to an inside investor.  (*See* Carlton Decl. Ex. D, Bioptix's Form D filed on March 22, 2017 at 4.)

[16] *See In re Tangoe, Inc. S'holders Litig.*, 333 F. Supp. 3d 77, 100 (D. Conn. 2018) (holding on a motion to dismiss that the company "provided shareholders with a total mix of information necessary to make an informed decision about whether to tender their shares."); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 794 (S.D.N.Y. 2020) (defendant's disclosure that shares would be purchased from a "principal shareholder" in a related-party transaction in one filing and the names of shareholders in a separate filing two months prior was not materially misleading).

Second, in this regard, an alleged failure to disclose a related party by name in a Form 8-K cannot constitute a 10b-5 violation.  In the TAC, Lead Plaintiff clarifies that his *only* issue with Riot's disclosure about the March 10, 2017 private placement is that Riot did not identify Honig as the "accredited investor" set forth in the disclosure.  (*See id*. ¶ 174.)  However, failing to include a specific name in an Item 404 disclosure is not a material omission, and Plaintiff's complaint does not allege otherwise.  *See Stephens v. Uranium Energy Corp.*, 2016 WL 3855860, at *21 (S.D. Tex. July 15, 2016) (holding the omission of names of family members involved in a transaction from the defendants' Item 404 disclosure was immaterial, and granting defendants' motion to dismiss with prejudice); *Manela v. Garantia Banking Ltd.,* 5 F. Supp. 2d 165, 175 (S.D.N.Y. 1998) ("The failure of defendants to identify GBL as the seller of the bonds Manela bought on the morning of January 12, 1995 . . .  cannot support a claim under Rule 10b-5.").[17]

---

[17] Additionally, the TAC does nothing to address the Court's ruling in the April 8, 2022 Order that "given the exceptions included in the instructions," the inference that Riot failed to update its Item 404 disclosures on its Forms 8-K due to some wrongful act is "not as cogent and compelling as the inference that such disclosure was delayed due to a potential exception or even the timing[] that the company usually discloses such information."  (Apr. 8, 2022 Order at 22; *see also* 17 C.F.R. § 229.404(a) (exceptions under Item 404 when *e.g.*, interest of the related person arises solely from the ownership of a class of securities and all holders received the same benefit on a pro rata basis).)  Indeed, the TAC suggests Honig and the other Selling Stockholder, whose interest arose from investments in the companies, received the same benefit (*i.e.*, shares) based on their percentage ownership in the companies.  (TAC ¶ 100.)

**D.    Lead Plaintiff's Item 1.01 Allegations Must Be Dismissed**

1.    <u>Item 1.01 Does Not Impose an Affirmative Duty of Disclosure Comparable to that of Section 10(b)</u>

While hoping to distract from the TAC's lack of new facts, Lead Plaintiff offers yet another theory for liability that rests entirely on administrative instructions to an SEC form.  Lead Plaintiff contends that the Riot Defendants' failure to disclose Honig and other investors' identities in connection with the transactions just discussed *supra*, was a violation of Item 1.01 of Form 8-K, which, in turn, implies Rule 10b-5 liability.  (TAC ¶¶ 173, 201, 206.)  Not so.

Mirroring the guidelines for registrants regarding disclosures on SEC filings set forth by Regulation S-K, Item 1.01 is simply an instruction to registrants completing Forms 8-K.  (Carlton Dec. Ex. E, Form 8-K Instructions.)  The instruction directs registrants to file a Form 8-K if the registrant has entered into a material definitive agreement not made in the ordinary course of business, and requires disclosure of (1) the date of the agreement; (2) the identity of the parties to the agreement; (3) a brief description of any material relationship between the registrant and any of the parties; and (4) a brief description of the terms and conditions of the agreement that are material to the registrant.  (*See id*.)

Under the analysis set forth by *Oran*, Item 1.01[18] cannot be the basis for implying a private right of action under Section 10(b).  Section 10(b) requires disclosure only when needed to make the statement not misleading.  17 C.F.R. § 240.10b-5.  In contrast, Item 1.01 requires disclosure of certain information *without regard* for whether the information is material or its omission could be misleading.  As a result, the disclosure requirements under Item 1.01, alone, do not give rise to a Section 10(b) claim.

Moreover, Item 1.01 contains a safe harbor confirming that an Item 1.01 violation cannot be the basis for a securities fraud claim:  "No failure to file a report on Form 8-K that is required solely pursuant to Item 1.01 . . . of Form 8-K shall be deemed to be a violation of [Section 10(b)] or [Rule 10b-5]."  17 C.F.R. § 240.13a-11(c) (alterations added).  Relying on the language in the latter half of the safe harbor—stating that "material misstatements or omissions in a Form 8-K will continue to be subject to Section 10(b) and Rule 10b-5 liability"—Lead Plaintiff's position simply asserts that Section 10(b) liability *may* arise *if* an Item 1.01 is materially false or misleading.  However, the safe harbor and the analysis under *Oran* establishes that Item 1.01 imposes requirements that pay no regard to such

---

[18] While not a Regulation S-K item, Item 1.01 similarly outlines how registrants should disclose certain information in SEC filings.  Accordingly, the analysis set forth in *Oran* should apply here given that the Court simply evaluated whether a violation of an SEC regulation or rule could give rise to a Section 10(b) claim. *Oran*, 226 F.3d at 287.

concepts of materiality.  Rather, Item 1.01 requires disclosure of certain

information on Form 8-K in every case regardless of what would be material to

investors.  "[B]ecause not all of the information that Item [1.01] requires to be

disclosed meets the higher standard of materiality of *Basic, Inc.*, failure to disclose

those less significant matters may be a violation of [Item 1.01], but they would not

constitute a 10b-5 violation."  *SEC v. Conaway*, 698 F. Supp. 2d 771, 838 (E.D.

Mich. 2010) (alterations added); *In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret.

Income Sec. Act (ERISA) Litig.,* 2011 WL 3211472, at *10 (S.D.N.Y. July 29,

2011) (dismissing a claim based on Item 1.01 because "the plaintiffs cannot allege

that the failure to comply with Item 1.01(a) is, standing alone, sufficient to state a

claim under Section 10(b) and Rule 10b-5.").  Thus, Lead Plaintiff's new version

of the Section 10(b) claim, which completely relies on Riot's alleged failure to

meet Item 1.01's requirements, suffers the same fate as every iteration of the claim

before it.  (*See e.g.*, TAC ¶¶ 98, 100.)  As will be detailed *infra*, Lead Plaintiff has

not and cannot demonstrate a misstatement, let alone a material one.[19]

---

[19] Nothing in the language of Item 1.01 suggests that it should *ever* give rise to a
private right of action under Section 10(b).  Indeed, "the Supreme Court has
refused to imply private rights of action from any other provision of the securities
laws."  *SEC v. Cioffi*, 868 F. Supp. 2d 65, 71 n.4 (E.D.N.Y. 2012) (citing *Touche
Ross & Co. v. Redington*, 442 U.S. 560, 576 (1979)), *abrogated on other grounds
by SEC v. Citigroup Glob. Mkts., Inc.,* 752 F.3d 285 (2d Cir. 2014). (*See* Apr. 8,
2022 Order at 18.)  The Supreme Court has also "warned that the '§ 10(b) private
right should not be extended beyond its present boundaries,' because '[c]oncerns
with the judicial creation of a private cause of action caution against its

2.   Riot Did Not Have a Duty to Disclose Honig In Connection with the Coinsquare or Kairos Transactions under Item 1.01

Lead Plaintiff's liability theory based on the Coinsquare and Kairos transactions cannot be resurrected by Item 1.01.  Lead Plaintiff claims that the Forms 8-K were false and misleading because they failed to disclose Honig's "participation in the investment."  (*Id*. ¶¶ 207, 204.)  But Item 1.01 instructs registrants to disclose only the "parties to the agreement," and Honig and the other shareholders were *not* "parties" to the agreement.[20]

3.   The TAC Cannot Allege that Honig's Identity was Material

Lead Plaintiff alleges that the failure to disclose Honig in the March 16, 2017 private placement is also a violation of Item 1.01.  (TAC ¶ 178.)  All of the arguments regarding Item 404, including that Riot disclosed that the transaction with a related-party, apply with equal force to Item 1.01.  (*See* Section IV.C.)

---

expansion.'" *Gold v. Ford Motor Co.*, 852 F. Supp. 2d 535, 540 (D. Del. 2012) (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008)).  While Section 10(b) clearly invokes such a right by explicitly noting the protection for investors, Item 1.01 is utterly devoid of any mention of investors at all.  Of course, this is not surprising because Item 1.01 is a *form instruction* without any legal effect, not an SEC regulation or a statute.

[20] If there was any doubt, Item 1.01 clarifies that the material definitive agreement must be "enforceable against the registrant" or "enforceable by the registrant against one of the parties . . . to the agreement."  (Carlson Decl. Ex. E.)  Lead Plaintiff cannot plausibly allege that Honig or any of the other shareholders could enforce the agreements merely by virtue of their "investments" in those companies.

More importantly, however, even if Riot's disclosure of Honig's name a few months after the initial disclosure was a violation of Item 1.01 (it was not), that is not the end of the analysis for a Section 10(b) claim.  *See Conaway*, 698 F. Supp. 2d at 838.  Lead Plaintiff must show that the omission was material.  Lead Plaintiff alleges *only* that Riot had a duty to disclose such information (TAC ¶ 204), and leaves it to the Court to infer that such an omission was material, falling woefully short of the requirements under the Reform Act.  (*E.g.*, *Id.* ¶ 208 ("it omitted Honig's involvement in the transaction—material information that was required to be disclosed").)  *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 243 (3d Cir. 2013) ("An allegation of materiality is crucial because '[t]he first requirement under the PSLRA obliges a plaintiff to specify . . . the reason or reasons why the statement is misleading") (alterations added).  Lead Plaintiff cannot allege that Honig's identity was material to the Kairos, Coinsquare, or private placement transactions. *Stephens*, 2016 WL 3855860, at *21; *see also In re Plavix Mktg., Sales Practice & Prods Liab. Litig. (No. II)*, 332 F. Supp. 3d 927, 946 (D.N.J. 2017) ("failure to plead materiality [is] a proper basis for a motion to dismiss").

### E.    Lead Plaintiff's Item 403 Allegations Must Be Dismissed

#### 1.    An Affirmative Duty of Disclosure Does Not Exist Under Item 403 for Purposes of a Section 10(b) Claim

Lead Plaintiff alleges that Riot's failure to disclose that Honig and other Selling Stockholders were acting as a group in its Forms S-3, S-3/A, 10-K, 8-K,

and 8-K/A violated Item 403 of Regulation S-K.  (*Compare* SAC ¶ 344 *with* TAC ¶ 187.)  The Item 403 liability theory is supported by no new factual allegations.[21]

Item 403 requires that certain information "with respect to any person (including any 'group' as that term is used in section 13(d)(3) of the Exchange Act) who is known to the registrant to be the beneficial owner of more than five percent of any class of the registrant's voting securities."  17 C.F.R. § 229.403(a).[22]

Lead Plaintiff plainly alleges that "[b]ecause O'Rourke had an affirmative duty under the applicable regulations to disclose Honig's group status and failed to do so, the [ ] Form 10-K[s] [were] false and misleading when [they were] filed." (TAC ¶ 190.)  Under *Oran*, however, Item 403's disclosure requirements do not resemble those under Rule 10b-5.  *See Oran*, 226 F.3d at 287.  Item 403 requires disclosure of a Section 13(d) group when a registrant knows that such group exists. 17 C.F.R. § 229.403(a).  Any failure to make such disclosure does not create Rule 10b-5 liability because of the disparate materiality considerations.

---

[21] In fact, Lead Plaintiff admitted that he is simply reasserting the same Item 403 allegations, but only "refocusing its allegations" and alleging that an affirmative duty of disclosure exists under Item 403.  (MLA at 9.)  It does not.

[22] The Court has already ruled that there is no private right of action under Section 13(d) or an implied private right of action under Section 10(b).  (*See* Apr. 8, 2022 Order at 18-21)  Given the inextricable link between the disclosure obligations of Section 13(d) and Item 403, it betrays logic to hold any differently for Item 403 violations, especially in light of the law holding that there is not independent private of action for Regulation S-K violations.  (*See supra*, Section IV.B.)

### 2.   Riot Otherwise Complied with Item 403's Requirements

#### a) *Lead Plaintiff Cannot Allege the Existence of a Group that Would Require Item 403 Disclosure*

Even if Item 403 could support a Section 10(b) claim (it cannot), the TAC fails plausibly to establish that Riot neglected to disclose a "group"; indeed, Lead Plaintiff fails to allege that a group even existed in the first place.

As an initial matter, Riot adequately disclosed each of Honig's and the other shareholders' percentage ownership above five percent in accordance with Item 403, and Lead Plaintiff concedes the same.  (TAC ¶¶ 190, 191, 194, 197.)  Lead Plaintiff's allegations, instead, hinge on Riot's purported failure to disclose the Selling Stockholders' group status on its Forms S-3.  Item 403 is linked to the language of Section 13(d), in that it requires disclosure of a group, as defined in Section 13(d).  17 C.F.R. § 229.403.  Section 13(d) defines a "group" as two or more persons who act "as a partnership, limited partnership, syndicate, or other group *for the purpose of acquiring, holding, or disposing of securities of an issuer*[.]"  15 U.S.C. § 78m (emphasis added).[23]

---

[23] Rule 13d-5(b)(1) provides that when "two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities *of that issuer beneficially owned by any such persons*."  17 C.F.R. 240.13d-5(b)(1) (emphasis added).

Accordingly, Section 13(d) requires the "members of the 'group' to have agreed to act together for the purpose of acquiring not just any security, but ***securities of a particular issuer***." *Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 392 (S.D.N.Y. 2019), *aff'd*, 959 F.3d 541 (2d Cir. 2020) (emphasis added) (finding that plaintiff failed to allege the existence of a Section 13(d) group because allegations that defendants shared common investment objectives did not imply an intent to pool their voting interests in the issuer).

The TAC relies on the theory that "Honig's sales were planned and coordinated with the Selling Stockholders, who constituted an investor 'group' as defined by Section 13(d)." (TAC ¶ 2.)  Indeed, Lead Plaintiff attempts to weave together a story of Honig as "the man behind the curtain," who used his power and influence to serve as the kingpin of an alleged group to perpetuate fraud at Riot. (*Id.* ¶ 5.)  Yet, noticeably lacking from Lead Plaintiff's TAC are any allegations regarding Honig's purported control over the investment decisions of other individuals.  *See, e.g.*, *Forward Indus., Inc. v. Wise*, 2014 WL 6901137, at *3 (S.D.N.Y. Sept. 23, 2014) (finding "unpersuasive" plaintiff's position that the defendants' longstanding business relationship supported the inference that one defendant was working under the other defendant's direction and control).  Nor is there a single allegation suggesting that any of the alleged Selling Stockholders

agreed—expressly or implicitly—to coordinate their investments with Honig to propagate Honig's alleged fraud.  (*See generally* TAC.)

Instead, the TAC takes two approaches to alleging the existence of a group, neither of which can withstand a motion to dismiss.  First, Lead Plaintiff devotes over ten pages of "background" on the existence of the group, which does not relate to Riot whatsoever.  (TAC ¶¶ 49-80.)  Lead Plaintiff discusses, at length, Honig and the Selling Stockholders' investments in numerous companies *other than Riot*, occurring several years prior to the class period.  (*Id*.)  Lead Plaintiff then confirms his almost exclusive reliance on such allegations by reiterating—*at least nine times*—that certain investors had "invested with O'Rourke and Honig in one or more previous public companies, further supporting that these Selling Stockholders were investing in Riot as a Section 13(d) 'group' requiring disclosure under Item 403[.]"  (TAC ¶¶ 193 fn. 64, 196 fn. 65, 199 fn. 66, 198 fn. 68, 217 fn. 69; *see also id*. ¶¶ 3, 6, 139, 169.)  Allegations involving *companies other than Riot* in years well prior to any alleged conduct relating to Riot cannot serve as the basis for Lead Plaintiff's group claims.  *See Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F. Supp. 2d 435, 448 (S.D.N.Y. 2001) (holding allegations that, *inter alia*, (i) the two investors had jointly invested in companies in the past and (ii) defendants had engaged in similar fraudulent conduct in connection with other companies did not sufficiently allege the existence of a group).

Second, the allegations are not even Lead Plaintiff's own allegations.  (TAC ¶¶ 49-74.)  Apart from five short paragraphs, Lead Plaintiff borrows directly from the allegations in *SEC v. Honig* without any indication that Lead Plaintiff has any first-hand knowledge of, or conducted any investigation to verify, the allegations.[24] *See Brooks v. United Dev. Funding III, L.P.,* 2020 WL 6132230, at *13 (N.D. Tex. Apr. 15, 2020) (striking allegations from an SEC action).  These rehashed allegations not only have nothing to do with Riot, but also disregard that the SEC, unlike Lead Plaintiff, does not need to satisfy the Reform Act's stringent pleading requirements.  *See e.g., SEC v. Lucent Techs., Inc.*, 363 F. Supp. 2d 708, 717 (D.N.J. 2005) (the Reform Act does not apply to the SEC).  Despite this very apparent weakness, Lead Plaintiff uses the *SEC v. Honig* allegations *twenty-one other times*, including for purposes of alleging the remainder of Lead Plaintiff's so-called group allegations.[25]  (TAC ¶¶ 3, 6, 13, 14, 20, 22, 23, 45, 80, 139, 142, 146, 150, 152, 163, 182, 183, 186, 190, 235, 247.)

---

[24] Lead Plaintiff emphasizes that Honig and O'Rourke are permanently barred from participating in an offering of penny stock to purportedly bolster his claims, but, as Lead Plaintiff admits, that was a result of a settlement that cannot bear on the sufficiency of the SEC's allegations, especially in light of the different pleading standard.  (TAC ¶¶ 69, 163.)

[25] Even the alleged statement from O'Rourke that "Barry Honig is the principal investor of our small group" is an allegation in *SEC v. Honig*, from 2014, and has nothing to do with Riot.  (TAC ¶ 150.)

The TAC's other "group" allegations do not advance Lead Plaintiff's claims any further because they fail to describe any coordination among the purported group members' *investments* at Riot, as required by Section 13(d).  (TAC ¶¶ 81-91.)  At most, Lead Plaintiff offers legally irrelevant allegations of Honig's and DeFrancesco's agreement related to Riot's Board of Directors and places significant weight on the allegation that DeFranceso and Honig suggested that they shared counsel in connection therewith.  (*Id.* ¶ 88.)  *Promethean,* 223 F. Supp. 2d at 448 (allegations that, *inter alia*, investors used same law firm was insufficient).

Similarly, Lead Plaintiff hopes that the Court will simply take the allegation that Honig shared an office with O'Rourke and make the logical leap to conclude that because they worked out of the same location, they *must* be coordinating investment activities at Riot.  (*See, e.g.*, TAC ¶¶ 151, 162.)  The most obvious issue with these allegations is that they clearly cannot suggest any group activity by the rest of the Selling Stockholders.  But, even with regard to Honig, DeFrancesco, and O'Rourke, these allegations are irrelevant—they do not give rise to the inference that a group was formed for the purpose of acquiring Riot stock. Lead Plaintiff's allegations barely amount to alleging a business relationship, let alone coordinated investment activity.  "Even if many of the parties' 'activities' were the result of group action, two or more entities do not become a group within the meaning of section 13(d)(3) unless they 'act as a . . . group for the purpose of

acquiring . . . securities of an issuer.' 15 U.S.C. § 78m(d)(3)." *CSX Corp. v. Children's Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 284 (2d Cir. 2011).[26]

Perhaps most importantly, Lead Plaintiff's newest version of the complaint is completely bereft of anything more than a conclusory allegation of concerted efforts to control the disposition of securities at Riot.  He does not allege even a single coordinated trade.  The TAC only mentions Riot stock trades by two individuals—Honig and O'Rourke—and those sales do not demonstrate any coordinated activity.  (*Compare* TAC ¶¶ 147 (claiming that Honig sold Riot stock from January 2017 until October 2017, then had a few large purchases of stock in October and November 2017), *with* 234 (alleging that O'Rourke sold Riot stock in December 2017).)  Nothing in the TAC, nor any prior version of the pleadings, even hints at an agreement between the Selling Stockholders regarding coordination of *Riot's* stock.[27]  *Greenfield v. Criterion Cap. Mgmt., LLC,* 2017 WL

---

[26] *See also Torchmark Corp. v. Bixby*, 708 F. Supp. 1070, 1083 (W.D. Mo. 1988) ("there must be evidence [] indica[ting] an intention to act in concert over and above the prior and continuing relationship between the various parties") (citations omitted); *Transcon Lines v. A.G. Becker Inc.,* 470 F. Supp. 356, 375 (S.D.N.Y. 1979) (mere relationships are insufficient).

[27] Lead Plaintiff highlights the Selling Stockholders' investments by setting forth the purported coordinated investments in a chart compiled by counsel.  (TAC ¶ 80.)  Lead Plaintiff's chart can quickly be discarded as a ploy to divert from the matter that is actually relevant to Lead Plaintiff's claims.  *Nothing in the chart pertains to Riot.*  (*Id*.)  The TAC also alleges that the Selling Stockholders coordinated investments by representing that a couple of them owned the same amount at the same time.  (*Id*. ¶ 188.)  But "[a]llegations of parallel investment

2720208, at *7 (N.D. Cal. June 23, 2017) ("The assertion that [defendant] 'employed a common investment strategy in managing the portfolio investments of the Master Funds," was insufficient).

> b) *The TAC Fails to Allege Riot's Knowledge of Any Group*

Lead Plaintiff's claim based on the Item 403 violations fails for yet another, independent reason:  The TAC fails to allege any facts to show that the Riot Defendants knew, or participated in, any alleged coordinated Riot investments. Item 403 requires disclosure only of Section 13(d) groups that are *actually known* to the company.  17 C.F.R. § 229.403.  Lead Plaintiff's allegations contradict any inference that O'Rourke or Beeghley could ever possess such knowledge.

The entire premise for Lead Plaintiff's claim is that Honig "secretly" coordinated his investments at Riot to control the management and inflate the Company's stock.  (TAC ¶ 142.)  Lead Plaintiff speculates that Honig accomplished this by "failing to promptly file public reports with the SEC that are required by Section 13(d) of the Exchange Act and Rule 13d-2."  (*Id.* ¶ 143.) Indeed, Lead Plaintiff alleges that Honig never filed his Schedule 13D, which

---

activity, are insufficient to allege an 'agreement' to combine efforts in furtherance of a commonly held objective."  *Brian B. Sand & Zachary B. Sand Joint Tr. v. Biotechnology Value Fund, L.P.,* 2017 WL 3142110, at *7 (N.D. Cal. July 25, 2017); *Litzler v. CC Invs., L.D.C.*, 411 F. Supp. 2d 411, 415 (S.D.N.Y. 2006).

would disclose such facts *to Riot*.[28]  *Biofrontera AG v. Deutche Balaton AG*, 2020 WL 1489788, at *7 (S.D.N.Y. Mar. 27, 2020) (describing Section 13(d) as an alert system forcing investors to report disclosing information *to* issuers).  Once again, Lead Plaintiff relies on deficient allegations that O'Rourke must have known about a purported group coordinating purchases and sales of Riot stock because Honig and other individuals previously invested in other companies.  (TAC ¶¶ 160-63.) And with regard to Beeghley, Lead Plaintiff fails to allege any facts supporting knowledge at all, stating only that Beeghley was a director of a separate company while Honig was the CEO of the same company.  (*Id.* ¶ 76.)  This allegation pertains neither to the coordination of stock nor to Riot.

### F.    Riot's Other Disclosures Were Not False or Misleading

Lead Plaintiff alleges various other statements by Riot and O'Rourke via Riot's SEC filings and media articles that cannot support Lead Plaintiff's claims.

First, Lead Plaintiff tries to revive certain allegations regarding misstatements in Riot's Registration Statements on (i) April 20, 2017, (ii) July 19, 2017, (iii) August 24, 2017, (iv) September 25, 2017, (v) January 5, 2018, and (vi) February 7, 2018 that the Court expressly dismissed in its April 30, 2020 Order. (TAC ¶¶ 181-99, 215-17; *see also* Apr. 30, 2020 Order at 18.)  Lead Plaintiff

---

[28] The SAC also confirmed that Groussman, Stetson, and DeFrancesco also failed to disclose their group status to Riot in their Schedule 13Ds.  (SAC ¶¶ 311, 325, 341, 484.)  The TAC does not discuss any of the other Selling Stockholders.

alleges that Riot's statement that "none" of the selling stockholders had a "material relationship with us or any of our subsidiaries" was false.  (TAC ¶ 113.)  As the Court correctly held, "[t]he registration statements unambiguously state that any reference to "'we', 'us,' and 'our' refers to Riot." (Apr. 30, 2020 Order at 18; *see e.g.*, Carlton Decl. Ex. C.)  Moreover, Lead Plaintiff's position that Honig had a relationship with Riot through his investments in Coinsquare and Kairos was unreasonable in light of the references to "subsidiaries," "shares, and securities."[29]

Second, Lead Plaintiff takes issue with three other statements in the Registration Statements: (1) "there are currently no agreements, arrangements, or understandings with respect to the sale of any of the shares" (*Id*. ¶ 182); (2) "[t]he selling stockholders may not sell or otherwise dispose of any or all of the shares offered by this prospectus" (*Id*. ¶ 183); and (3) "the selling stockholders may sell or otherwise dispose of some, all or none of the shares covered hereby." (*Id*. ¶ 184.)  Lead Plaintiff alleges that these are misleading because O'Rourke and Beeghley knew that Honig and other shareholders would sell "at least some" of their shares.  (*Id*. ¶¶ 182, 184.)  Again, the TAC fails to allege the existence of an agreement to sell Riot's shares or that Riot knew of any such agreement. (*See*

---

[29] Indeed, Lead Plaintiff blatantly ignores the remaining part of that disclosure which said "other than as a result of the ownership of our shares or other securities."  (TAC ¶ 211.)  Even accepting Lead Plaintiff's nonsensical version of the facts, this disclosure could not be misleading, as Lead Plaintiff alleges that Honig's "material relationship" arose out of his ownership of Riot's stock.

*supra*, Section IV.E.)  Moreover, these statements do nothing more than set forth the potential outcomes of the public offering—*i.e.*, stockholders may sell their shares, they may not sell their shares, or they may sell some of their shares.  (*See e.g.*, *id*. ¶ 181.)  Simply because certain stockholders would sell all of their shares, does not mean the rest of the statement is false or misleading.

Third, the TAC relies on a statement by O'Rourke in a CNBC interview that he was not "worried about the SEC because [Riot] overdisclose[s]."[30] (TAC ¶ 220.) Lead Plaintiff, similarly, claims that a February 16, 2018 Shareholder Letter with a statement from O'Rourke was false because it inaccurately stated that Riot took "reporting obligations seriously" and "diligently."[31]  (*Id*. ¶ 222.)  The Court has previously dismissed "vague and general statements of optimism," like these, as mere "puffery."  (Apr. 30, 2020 Order at 24.)  *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 538 (3d Cir. 1999), *abrogated on other grounds by Tellabs, Inc., v. Makor Issues & Rights, Ltd*., 551 U.S. 308 (2007).  Even if such broad statements could be actionable, Lead Plaintiff's premise for their falsity rises and falls with its allegations regarding (1) Honig's group status; (2) the March 2017 Placement; and

---

[30] Lead Plaintiff also challenges that O'Rourke allegedly said that Honig did not work out of O'Rourke's office.  (TAC ¶ 219.)  The TAC fails to allege how such a statement could be materially misleading, where it fails to allege how such a purported fact is even pertinent to the issues in the TAC.  (*Supra*, Section IV.E.)

[31] None of these statements can be attributed to Beeghley.

(3) Coinsquare and Kairos.  (*Id.*)  For all of the reasons stated previously, none of these allegations support Lead Plaintiff's claims.

### G.      The TAC Does Not Raise a Strong Inference of Scienter

Riot incorporates by reference the Individual Defendants' concurrently filed Motion to Dismiss.  The TAC only provides generalized and conclusory allegations, relying on unrelated conduct from the *SEC v. Honig* action, investments in other companies, and Beeghley and O'Rourke's positions at the Company.  This failure to plead the requisite state of mind on behalf of Beeghley and O'Rourke necessarily defeats any claim that Riot acted with scienter.  *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 403 (D. Del. 2010) (dismissing claims against a corporate defendant for lack of scienter, where the plaintiff failed to plead that any of the company's officer's acted with scienter), *aff'd*, 442 F. App'x 672 (3d Cir. 2011).

### H.      Lead Plaintiff's Alleged Corrective Disclosures Do Not Establish Loss Causation

The Section 10(b) claims are likewise not supported by cognizable allegations of loss causation.  Under the Reform Act, Lead Plaintiff must plead "that the very misrepresentation at issue proximately caused them an economic loss."  *Nat'l Junior Baseball League v. Pharmanent Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 559 (D.N.J. 2010) (citing *Dura*, 544 U.S. at 345).

1. <u>News Articles Unconnected to Any Allegations of Fraudulent Omissions Are Not Corrective Disclosures</u>

a) *The January 31, 2018 Wall Street Journal Article and Press Release*

Lead Plaintiff relies on an article published by *The Wall Street Journal* on January 31, 2018, which only stated that Honig sold around 500,000 Riot shares, to support his loss causation allegations. (TAC ¶ 238.) A journalist's reporting of Honig's sale reveals nothing regarding any alleged falsity of the prior statements on which Lead Plaintiff's relies to state his claims—namely, the purported Item 404, Item 1.01, and Item 403 violations. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005) (dismissing plaintiffs' allegations for failing to provide the necessary "causal link" between defendant's purported fraud and plaintiffs' losses). Riot had no obligation to disclose any of Honig's stock sales.

Lead Plaintiff also contends that Riot's press release on the same day, announcing a delay in Riot's annual meeting, was a corrective disclosure. (TAC ¶ 241.) But Riot never misrepresented anything regarding the 2017 Annual Meeting of Stockholders. *In re Tellium, Inc. Sec. Litig.*, 2005 WL 2090254, at *4 (D.N.J. Aug. 26, 2005) (holding that "an announcement of bad news that does not disclose the fraud" does not plead loss causation as required to state a § 10(b) claim).

b) *The February 16, 2018 CNBC News Article*

Lead Plaintiff also relies on a February 16, 2018 CNBC article. (TAC ¶ 243.) While Lead Plaintiff claims that the CNBC article revealed that Honig was

-35-

"the man acting behind the Riot Blockchain curtain," Lead Plaintiff fails to allege

how such article corrected any of the purported fraud in the TAC.  (*Id*.)  Indeed,

the Court already determined the insufficiency of this allegation in ruling on the

Defendants' motions to dismiss the CCAC.  (Apr. 30, 2020 at 39.)  And to the

extent Lead Plaintiff contends the article corrected the Kairos disclosures (TAC ¶

243), this is without merit.  Riot had no obligation to disclose Honig in connection

with the Kairos transaction.  (*See supra*, Section IV.C & D.)

> 2.  Disclosures Made After This Action Was Filed Are Not
>     Corrective Disclosures

Lead Plaintiff alleges that a Form 10-K, Form 8-K, and the *SEC v. Honig*

actions are corrective disclosures, despite occurring well *after* the initiation of this

litigation.  (TAC ¶¶ 245-48; *see also* Dkt. 1.)  This is nonsensical.  Investors were

well aware of any purported omissions, because the litigation was already public.

*See In re Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 270–71 (3d Cir. 2005)

(newspaper's analysis of available information was not a corrective disclosure).

> a)  *Riot's April 18, 2018 Form 10-K*

Lead Plaintiff leans on Riot's April 18, 2018 Form 10-K to bolster his loss

causation allegations, alleging that the filing disclosed details regarding the March

2017 Private Placement and the Coinsquare and Kairos transactions.  (TAC ¶ 245.)

Again, Riot did not have a duty to disclose Honig's investments in any of these

transactions.  (*See supra*, Section IV.C & D.)  Riot fully disclosed the Coinsquare

and Kairos transactions, as well as the fact that the March 2017 private placement was a related-party transaction.  (*See id*.)  Moreover, the Form 10-K could not "correct" any statement about Honig's involvement in the March 2017 private placement because Riot already disclosed his participation almost a full year prior in the Company's July 19, 2017 Registration statement.[32]

### b)  Riot's May 25, 2018 Form 8-K

The TAC also alleges that Riot's stock price dropped after Riot filed its Form 8-K on May 25, 2018.  (TAC ¶ 246.)  Lead Plaintiff contends that this is a corrective disclosure because it disclosed that several "Honig Group" members were parties to the Coinsquare transaction.  (*Id*.)  As a threshold issue, the "Honig Group" is not even alleged in this version of Lead Plaintiff's facts.  The disclosure does not correct any alleged omissions because Riot never had a duty to disclose Honig.  (*See supra*, Section IV.C & D.)

### c)  The Unrelated SEC v. Honig Action

Desperate to support his lackluster allegations, Lead Plaintiff once again turns to the *SEC v. Honig* action—this time to allege loss causation.  (TAC ¶ 247.) The unrelated action fares no better for this element of Lead Plaintiff's claim.

---

[32] *See* Carlton Decl., Ex. C.  Honig's participation in the March 2017 private placement was also publicly disclosed in a *Seeking Alpha* article on December 11, 2017.  (*See id*. Ex. E., (*Riot Blockchain: Sudden Business Pivot, Suspicious, Acquisitions, Questionable Special Dividend* (Seeking Alpha).)

Indeed, it strains reason to hold that *allegations* of conduct *at other companies* could correct any purported fraud that occurred *at Riot*.

## V.   LEAD PLAINTIFF DOES NOT ADEQUATELY ALLEGE "SCHEME LIABILITY" UNDER SECTION 10(B)

Lead Plaintiff fails to allege any new facts that would support its scheme liability claim.  (*See* TAC ¶¶ 153-57.)  As the Court previously set forth in its Opinion, where Lead Plaintiff "has failed to adequately allege that any statements or omissions . . . were false or misleading[,] . . . those alleged misrepresentations and omissions cannot independently serve as 'deceptive or manipulative' acts to support" Lead Plaintiff's claim.  (*See* Apr. 30, 2020 Order at 31 n.17.)  Nevertheless, this is exactly what Lead Plaintiff alleges.  (TAC ¶ 153.)  Lead Plaintiff's slapdash repackaging of its Rule 10b-5(b) claims, as well as its allegations from prior complaints, is meritless.

To state a claim for scheme liability, Lead Plaintiff must allege that Riot "(1) committed a manipulative or deceptive act (2) in furtherance of the alleged scheme to defraud [investors], (3) scienter, (4) and reliance." *Trustcash Holdings, Inc. v. Moss*, 668 F. Supp. 2d 650, 661-61 (D.N.J. 2009) (alteration added) (citation omitted).  While the Supreme Court held in *Lorenzo v. SEC,* 139 S. Ct. 1094, 1096 (2019) that the dissemination of misstatements with the intent to defraud can fall within the scope of Rules 10b-5(a) and (c), no Circuit courts, including the Third Circuit, have expanded this decision to abrogate the rule that scheme liability

-38-

depends on conduct that is distinct from a misstatement.   And nor should they.
*See SEC v. Rio Tinto plc,* 2022 WL 2760323, at *6-7 (2d Cir. July 15, 2022)
(affirming the district court's ruling that *Lorenzo* did not decide whether something
"beyond misstatements or omissions" is needed for scheme liability and opining
that "a widened scope of scheme liability would defeat the congressional limitation
on the enforcement of secondary liability, multiply the number of defendants
subject to private securities actions, and render the statutory provision for
secondary liability superfluous.").

In *Lorenzo,* an investment banker sent emails to potential investors that he
knew contained false information about a company's prospects.  *Id*. at 1099-1100.
The Supreme Court did not consider whether the information was actually false,
and thus did not address whether scheme liability applies when a private plaintiff
fails to adequately allege—with particularity—actionable misrepresentations or
omissions or other deceptive conduct.[33]  *Lorenzo* also did not consider whether
scheme liability could apply when a plaintiff only alleges omissions as the
deceptive conduct, entirely duplicative of the Rule 10b-5(b) claim.  *Id*. at 1100.

---

[33] For this reason, the March 16, 2017, October 4, 2017, and November 3, 2017
Forms 8-K that were neither made nor signed by O'Rourke or Beeghley cannot be
the basis for scheme liability.  (*See* Carlton Decl. Exs. A, H, I, Riot's Forms 8-K
filed on March 16, 2017, October 4, 2017, and November 3, 2017, respectively.)
*See Rio Tinto plc,* 2022 WL 2760323, at *6 (*Lorenzo* requires, at minimum,
dissemination).

In line with this reasoning, numerous district courts have held that "omissions and misrepresentations alone cannot form the basis of a fraudulent scheme." *Gordon v. Royal Palm Real Est. Inv. Fund I, LLLP,* 2020 WL 2836312, at *5 (E.D. Mich. May 31, 2020); *see also In re Teva Sec. Litig.,* 2021 WL 1197805, at *5 (D. Conn. Mar. 30, 2021); *In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 216 (S.D.N.Y. 2020).

When as here, "the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission," courts have routinely rejected plaintiff's attempt to repurpose a misstatement violation as a scheme for additional liability.  *In re Teva*, 2021 WL 1197805, at *2, *6.  Because Lead Plaintiff alleges no more than his unsound claim that Riot failed to disclose (1) Honig's purported role in the purported related-party transactions and (2) Honig and the other Selling Stockholders' alleged group status, Lead Plaintiff fails to allege any deceptive act that could give rise to a scheme liability claim.[34]  (TAC ¶¶ 153-57.)

## VI.   <u>CONCLUSION</u>

For the reasons stated above, Riot respectfully requests that the Court dismiss Lead Plaintiff's TAC with prejudice.

---

[34] All of Riot's arguments regarding the insufficiency of these allegations, including the lack of duty, lack of misstatements, lack of materiality, and lack of scienter (as alleged in the Individual Defendants' brief) apply equally here.

DATED:      July 18, 2022              PAUL HASTINGS LLP


By: /s/ *Chad J. Peterman*
　　　CHAD J. PETERMAN

*chadpeterman@paulhastings.com*
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090


THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

Attorneys for Defendants
RIOT BLOCKCHAIN, INC.,
JOHN O'ROURKE, AND MICHAEL
BEEGHLEY