# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>     v.<br><br>RIOT BLOCKCHAIN, INC., et al.,<br><br>          Defendants. | Civil No. 3:18-CV-02293(GC)(RLS)<br><br>MOTION DATE:  October 17, 2022<br><br>**ORAL ARGUMENT REQUESTED** |

---

## MEMORANDUM OF LAW IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' JOINDER AND MOTION TO DISMISS THE CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

---

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*RIOT BLOCKCHAIN, INC., JOHN O'ROURKE, AND MICHAEL BEEGHLEY*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND AS TO THE INDIVIDUAL DEFENDANTS .................5

    A.   Relevant Procedural Background..................................................5

    B.   The Individual Defendants' Positions at Riot ......................................7

    C.   The Settled *Honig* Action.................................................................9

    D.   The Individual Defendants' Relationship and Past Interactions
        With Honig .......................................................................................9

III.  THE SECTION 10(B) CLAIM AGAINST THE INDIVIDUAL
     DEFENDANTS SHOULD BE DISMISSED ...........................................10

    A.   Claims Based on Statements Made in Three Form 8-Ks Fail
        Under *Janus* Because the Individual Defendants Did Not
        "Make" Any Alleged Misstatements ...............................................10

    B.   All Claims Fail Against the Individual Defendants Because the
        TAC Lacks Allegations of a Strong Inference of Scienter ...............12

        1.   O'Rourke's Stock Sales Were Neither Suspicious nor
            Unusual and Cannot Sustain a Strong Inference of
            Scienter...................................................................................14

        2.   Lead Plaintiff's Circumstantial Allegations of Conscious
            Misbehavior or Recklessness Fail to Support a Strong
            Inference of Scienter. ..............................................................17

            a.   Allegations Regarding the Unrelated *Honig* Action
                Do Not Support a Strong Inference of Scienter. ...........19

            b.   Investments Made in Companies Other than Riot
                are Irrelevant to the Issue of Scienter. ...........................20

            c.   Personal Relationships or Past Interactions With
                Certain Individuals Do Not Establish Knowledge. .......23

            d.   The Individual Defendants' Positions Do Not
                Support a Strong Inference of Scienter. ........................24

        3.   The TAC is Devoid of Particularized Facts Supporting a
            Strong Inference of Scienter for Beeghley. .............................29

**TABLE OF CONTENTS**
(continued)

**Page**

4. Lead Plaintiff Pleads No Facts to Support Scienter for His Item 404 and Item 1.01 Violations .................................... 31

5. Taken Together, the TAC's Generalized and Conclusory Allegations Fail to Create a Strong Inference of Scienter. ...... 33

IV. THE SECTION 20(A) CLAIM AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED ............................................. 36

V. CONCLUSION ............................................................................ 37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acito v. Imcera Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995) ...................................................................................15

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) .........................................................................26, 31

*In re Alpharma Sec. Litig.*,
  372 F.3d 137 (3d Cir. 2004) .............................................................................36

*In re Amarin Corp. PLC*,
  No. . 13–CV–6663(FLW)(TJB), 2015 WL 3954190
  (D.N.J. Jun. 29, 2015) .......................................................................................29

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
  413 F. Supp. 2d 378 (E.D. Pa. 2005) ................................................................32

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004) ...............................................................15

*In re Burlington Coat Factory Sec. Litig*,
  114 F.3d 1410 (3d Cir. 1997) ...............................................................3, 14, 18

*Burt v. Maasberg*,
  No. ELH-12-0464, 2013 WL 1314160 (D. Md. Mar. 31, 2013)........................24

*Cal. Pub. Emp.s'. Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004) .............................................................................27

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d 240 (8th Cir. 2008) ..............................................................................3

*Ciolli v. Iravani*,
  625 F. Supp. 2d 276 (E.D. Pa. 2009)................................................................19

*City of Roseville Emps.' Ret. Sys. V. Horizon Lines, Inc.*,
  713 F. Supp. 2d 378 (D. Del. 2010)..................................................................13

*Cohen v. Stevanovich*,
  722 F. Supp. 2d 416 (S.D.N.Y. 2010) ...............................................................32

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Cypress Semiconductor Sec. Litig.*,
  No. C-92-20048-RMW, 1992 U.S. Dist. LEXIS 22480,
  (N.D. Cal. Sept. 24, 1992) ...................................................................16

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan
  Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ..................................................................4

*In re Egalet Corp. Sec. Litig.*,
  340 F. Supp. 3d 479 (E.D. Pa. 2018)...................................................17

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ......................................................12, 23

*In re Equimed, Inc. Sec. Litig.*,
  No. 98-CV-5374 NS, 2000 WL 562909 (E.D. Pa. May 9, 2000) .....................37

*Fain v. USA Techs., Inc.*,
  707 F. App'x 91 (3d Cir. 2017) ............................................................26

*Fox Int'l Relations v. Fiserv Sec. Inc.*,
  490 F. Supp. 2d 590 (E.D. Pa. 2007)...................................................36

*Gasoline Sales, Inc. v. Aero Oil Co.*,
  39 F.3d 70 (3d Cir. 1994) ......................................................................4

*In re Gildan Activewear, Inc. Sec. Litig.*,
  636 F. Supp. 2d 261 (S.D.N.Y. 2009) ..................................................15

*Glazer Cap. Mgmt., LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008) ...............................................................19

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999)................................................................16

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004) ................................................................18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) .............11

*In re Hertz Glob. Holdings, Inc.*,
  905 F.3d 106 (3d Cir. 2018) ........................................................................15, 16

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
  537 F.3d 527 (5th Cir. 2008) ...............................................................................35

*Institutional Invs. Grp. v. Avaya, Inc*,
  564 F.3d 242 (3d Cir. 2009) ..............................................................12, 14, 34, 36

*In re Intelligroup Sec. Litig.*,
  527 F. Supp. 2d 262 (D.N.J. 2007) .....................................................................18

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011)..........................................................................................2, 10

*KBC Asset Mgmt. NV v. DXC Tech. Co.*,
  19 F.4th 601 (4th Cir. 2021) ...............................................................................15

*Klein v. Autek Corp.*,
  147 F. App'x 270 (3d Cir. 2005) ...........................................................................2

*Litzler v. CC Invs., L.D.C.*,
  411 F. Supp. 2d 411 (S.D.N.Y. 2006) .................................................................14

*Lorenzo v. SEC*,
  139 S. Ct. 1094 (2019)..........................................................................................12

*Martin v. GNC Holdings, Inc.*,
  757 F. App'x 151 (3d Cir. 2018) .........................................................................28

*Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc.*,
  720 F. Supp. 2d 517 (D.N.J. 2010).....................................................4, 28, 29, 33

*Oran v. Stafford*,
  34 F. Supp. 2d 906 (D.N.J. 1999), ......................................................................14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Party City Sec. Litig.*,
147 F. Supp. 2d 282 (D.N.J. 2001) ........................................................................4

*Percoco v. Deckers Outdoor Corp.*,
No. 12-1001-SLR, 2013 WL 3584370 (D. Del. July 8, 2013) ....................27, 28

*In re Radian Sec. Litig.*,
612 F. Supp. 2d 594 (E.D. Pa. 2009) ....................................................................15

*Rahman v. Kid Brands, Inc.*,
736 F.3d 237 (3d Cir. 2013) .................................................................................28

*Rubenstein v. Int'l Value Advisers, LLC*,
363 F. Supp. 3d 379 (S.D.N.Y. 2019),  ........................................................3, 20

*In re Salomon Analyst Winstar Litig.*,
No. 02 Civ. 6171(GEL), 2006 WL 510526 (S.D.N.Y. Feb. 28,
2006) .....................................................................................................................19

*Scott v. Multi-Amp Corp.*,
386 F. Supp. 44 (D.N.J. 1974) .............................................................................24

*Shemian v. Rsch. In Motion Ltd.*,
No. 11 Civ. 4068 (RJS), 2013 WL 1285779 (S.D.N.Y. Mar. 29,
2013) .....................................................................................................................26

*In re Smith Barney Transfer Agent Litig.*,
884 F. Supp. 2d 152 (S.D.N.Y. 2012) .............................................................10, 12

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
365 F.3d 353 (5th Cir. 2004) ...............................................................................23

*In re Supercom Inc. Sec. Litig.*,
15 Civ. 9650 (PGG), 2018 WL 4926442 (S.D.N.Y. Oct. 18, 2018) ..................26

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) .................................................................................18

*In re Synchronoss Sec. Litig.*,
705 F. Supp. 2d 367 (D.N.J. 2010) ......................................................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...............................................................12, 26, 36

*Treppel v. Biovail Corp.*,
   No. 03-CV-3002 (PKL), 2005 WL 2086339 (S.D.N.Y. Aug. 30,
   2005) ...............................................................................................4

*Utesch v. Lannett Co.*,
   316 F. Supp. 3d 895 (E.D. Pa. 2018)..................................................36

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ..........................................................15

*In re Verisign, Inc., Deriv. Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007)..............................................34

*Vogel v. Sands Bros. & Co., Ltd.*,
   126 F. Supp. 2d 730 (S.D.N.Y. 2001) ...........................................3, 24

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011) ................................................26

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
   504 F. Supp. 3d 224 (S.D.N.Y. 2020) ...............................................28

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ............................................................35

**Statutes**

15 U.S.C.
   § 10(b)..................................................................1, 7, 10, 11
   § 20(a) ........................................................................36, 37
   § 78u-4(b)(1)...........................................................................26

**Rules**

17 C.F.R.
   § 229.404.................................................................................23

## I.   <u>INTRODUCTION</u>

The Consolidated Third Amended Class Action Complaint (the "TAC") fails to revive the deficient allegations that were unable to sustain actionable claims against Defendants John O'Rourke or Michael Beeghley (together the "Individual Defendants").[1]  This is now Lead Plaintiff's fourth attempt to plead a complaint against the Individual Defendants.  In twice dismissing previous complaints, the Court made clear that Lead Plaintiff's past complaint did not "sufficiently allege particularized facts that would support a strong inference of scienter with respect to several individual Defendants."  (Dkt. 166 (the "April 30, 2020 Order") at 28 n.16 (Wolfson, J.).)[2]  Yet, the TAC is striking in how little it differs from the defective scienter allegations of the CCAC.  The TAC simply ignores the Court's directive and doubles down on the same deficient allegations.

---

[1] The Individual Defendants fully join and incorporate by reference the brief and supporting papers of Riot Blockchain, Inc.'s ("Riot") Motion to Dismiss the TAC ("Riot's MTD") filed by Lead Plaintiff Dr. Stanley Golovac ("Lead Plaintiff"), which demonstrates that all of the claims in this case should be dismissed, with prejudice.  While the Individual Defendants do so, they also move separately to highlight the lack of meaningful allegations establishing that the Individual Defendants acted with scienter.  The Individual Defendants also move to dismiss on separate grounds with respect to the Section 10(b) claim.

[2] On March 18, 2019, Riot, the Individual Defendants, and Jeffrey McGonegal filed a Motion to Dismiss against Lead Plaintiff's Consolidated Class Action Complaint.  (Dkt. 66.)  Lead Plaintiff, thereafter, voluntarily sought leave to amend his complaint, filing the CCAC.  (Dkt. 73.)  The Wolfson Opinion, dated April 30, 2020, dismissed the CCAC.

Notably, Lead Plaintiff cites neither (i) internal documents; (ii) confidential witness statements from people who might have interacted with the Individual Defendants; nor (iii) other evidence (*i.e.*, particularized facts) to support *any* inference of scienter, let alone a strong one.  *See Klein v. Autek Corp.*, 147 F. App'x 270, 277 (3d Cir. 2005) (dismissing claims that "ma[de] no more than blanket assertions" that the defendants "'knew' that the representations were untrue, without any corroborating factual support explaining how and why the [d]efendants knew the statements to be false").  Unable to provide direct, non-conclusory allegations of the Individual Defendants' scienter, the TAC relies mostly on a handful of circumstantial allegations that either have *nothing to do* with the events in question at Riot or pertain to activities that *pre-date* the relevant Class Period.

- *First*, as a threshold matter, any liability premised on alleged misstatements in three SEC Form 8-Ks alleged in the TAC fails as a matter of law because the Individual Defendants did not sign any of them and are, thus, not the "makers" of statements contained therein. *See Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142 (2011).

- *Second*, Lead Plaintiff fails to raise a strong inference of scienter by alleging that O'Rourke sold stock to cover his tax obligations.

Allegations of ordinary stock sales by corporate officers are insufficient under the Private Securities Litigation Reform Act, 15 U.S.C. § 78j *et seq.* (the "PSLRA" or "Reform Act"). *See In re Burlington Coat Factory Sec. Litig,* 114 F.3d 1410, 1424 (3d Cir. 1997).

- *Third*, Lead Plaintiff mistakenly relies on a separate lawsuit relating to investments in companies other than Riot. The lawsuit, having nothing to do with Riot, resulted in no finding of wrongdoing, further weighing against an inference of scienter. *See In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248–49 (8th Cir. 2008).

- *Fourth*, the TAC's assertions that certain individuals invested in companies *other than Riot* and that *other investors* bought Riot stock are irrelevant and do not support any scienter relating to events at Riot. *See Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 392 (S.D.N.Y. 2019), *aff'd*, 959 F.3d 541 (2d Cir. 2020).

- *Fifth*, though the TAC focuses on personal relationships and past interactions between the Individual Defendants and certain other individuals, those are insufficient to establish an inference of scienter that is cogent and compelling. *See Vogel v. Sands Bros. & Co., Ltd.,* 126 F. Supp. 2d 730, 739 (S.D.N.Y. 2001).

-3-

- *Sixth,* Lead Plaintiff's heavy reliance on the Individual Defendants' positions at Riot to establish an inference of scienter is frequently dismissed by numerous courts for failing to "withstand Rule 9(b) scrutiny[,]" let alone the heightened pleading standards under the PSLRA. *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 316-17 (D.N.J. 2001). Moreover, a narrow "core operations" exception based on positions cannot save the deficient scienter claims. *Nat'l Junior Baseball League v. PharmaNet Dev. Grp., Inc*., 720 F. Supp. 2d 517, 556 (D.N.J. 2010).

The tenuous and conclusory nature of these allegations are precisely the type of allegations targeted by the Reform Act. *See ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co*., 553 F.3d 187, 196 (2d Cir. 2009) (the PSLRA "establishes a more stringent rule for inferences involving scienter"). This Court should therefore dismiss for the *third time* Lead Plaintiff's claims, but this time dismissal should be granted with prejudice. *See Gasoline Sales, Inc. v. Aero Oil Co.,* 39 F.3d 70, 74 (3d Cir. 1994) (noting, where plaintiff sought to add facts to a twice-amended complaint, "three attempts at a proper pleading is enough"); *Treppel v. Biovail Corp.,* No. 03-CV-3002 (PKL), 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (declining leave to amend after plaintiff "already had two bites at the apple and they have proven fruitless[]").

-4-

## II.    BACKGROUND AS TO THE INDIVIDUAL DEFENDANTS[3]

### A.    Relevant Procedural Background

On February 17, 2018, plaintiff Creighton Takata filed the initial complaint in this matter, naming Riot, O'Rourke and one other officer as defendants.  (Dkt. 1.)  Beeghley was not named as a defendant.  (*See id.*)  Thereafter, three separate plaintiffs or groups of plaintiffs moved to seek appointment as lead plaintiff.  (*See id.* Dkt. 14, 17, and 19.)  On November 6, 2018, Chief Judge Freda L. Wolfson appointed Dr. Golovac as Lead Plaintiff.  (Dkt. 39.)

*First Complaint*.  On January 15, 2019, Lead Plaintiff filed its first complaint against, *inter alia*, Riot, O'Rourke, and Beeghley.  (Dkt. 52.)  The parties stipulated to a briefing schedule, and on March 18, 2019, defendants filed their motion to dismiss the complaint.  (Dkt. 66.)  Lead Plaintiff's opposition was due May 2, 2019 pursuant to the stipulated order; however, one month after receiving defendants' motion to dismiss, on April 8, 2019, Lead Plaintiff submitted a letter to the Court asking for leave to file an amended complaint, alleging that "new" information between March 8, 2019 and April 8, 2019 purportedly strengthened his claims, which it did not.  (Dkt. 69.)

---

[3] The Individual Defendants join and hereby incorporate the factual background submission included with Riot's Motion to Dismiss.

*Second Complaint and Granting of Dismissal.*  On May 9, 2019, Lead Plaintiff filed an amended complaint (the "CCAC").  (Dkt. 73.)  Defendants once again filed motions to dismiss the CCAC.  On April 30, 2020, Judge Wolfson granted the motions to dismiss, ruling that Lead Plaintiff failed to adequately allege that any of the purported misstatements were false or misleading or otherwise actionable under Rule 10b-5.  (*See* the April 30, 2020 Order at 15.)  As to individual defendants such as O'Rourke and Beeghley, Judge Wolfson specifically noted that the complaint "does not appear to sufficiently allege *particularized* facts that would support a strong inference of scienter with respect to several of the individual Defendants."  (*Id.* at 28 n.16.)  Judge Wolfson also stated that the complaint "fails to allege the first element of Plaintiff's claim, *i.e.*, a 'deceptive or manipulative act,' with respect to defendants Beeghley, O'Rourke…."  (*Id.* at 40.)  In permitting Lead Plaintiff to file a motion for leave to amend, Judge Wolfson stressed that Lead Plaintiff needed to "clearly identify the *particularized* allegations that support each element of the claims."  (*Id.* at 41 n.20.)  Judge Wolfson also commented:

> "Indeed, it is not the Court's responsibility to sift through the Complaint in order to identify those allegations that have been pled with particularity.  *See DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 120 (3d Cir.

2012) (noting that '[j]udges are not like pigs, hunting for truffles buried in briefs") (citation omitted)).'"

*Third Complaint and Granting of Dismissal*.  On December 24, 2020, Lead Plaintiff filed another a Consolidated Second Amended Class Action Complaint ("SAC").  (Dkt. 188.)  Defendants once again filed motions to dismiss Lead Plaintiff's amended complaint, and on April 8, 2022, Judge Zahid N. Quraishi, like Judge Wolfson, granted the motions to dismiss.  (Dkt. 223.)  Judge Quraishi ruled that there is no implied private action for shareholders to seek damages directly under Section 13(d) or indirectly under Section 10(b).  (*Id.* at 20.)  Judge Quraishi also noted the need for an affirmative duty of disclosure under Regulation S-K to give rise to a Rule 10b-5 claim.  (*Id.* at 22.)

## B.    The Individual Defendants' Positions at Riot

O'Rourke became a director of Riot on January 6, 2017, served as the President, Secretary, and Treasurer "since at least September 2017," and then as the "CEO and Board Chairman from November 3, 2017 until September 8, 2018." (TAC ¶ 14.)  The TAC alleges that Beeghley was a director at Riot from November 30, 2016 to November 2017, CEO from April 6, 2017 to November 3, 2017, and Chairman of Riot's Board from January 2017 to November 2017.  (*See id.* ¶ 15.)

Lead Plaintiff sets forth boilerplate allegations that "O'Rourke and Beeghley, by virtue of their high-level positions with the Company, directly participated in the management of the Company, were directly involved in the day-to-day operations of the Company at the highest levels, and were privy to confidential proprietary information concerning the Company and its business, operations, financial statements, and financial condition as alleged herein." (*Id*. ¶ 227.)  But the TAC alleges no facts connecting these "high-level positions" to O'Rourke and Beeghley's purported knowledge that certain members of an alleged group acted as an undisclosed investor group to manipulate Riot's stock.  (*Id*. ¶ 251.)

Lead Plaintiff also improperly lumps together O'Rourke and Beeghley throughout the TAC, further muddying the allegations against each individual.  In Part X of the TAC, entitled "ADDITIONAL SCIENTER ALLEGATIONS," the TAC simply repeats "O'Rourke and Beeghley" in each successive paragraph.  (*See* TAC ¶¶ 224-31.)  Lead Plaintiff also lumps together separate roles and titles for O'Rourke in a section dedicated specifically to his purported scienter, stating that O'Rourke was "Riot's Director, President, Treasurer, Secretary, and CEO," without distinguishing *when* he held certain roles, and connecting those roles with each alleged misstatement.  (*Id.* ¶ 158.)

-8-

### C.      The Settled *Honig* Action

Lead Plaintiff alleges that on September 7, 2018, the SEC filed an action in

the Southern District of New York entitled *SEC v. Honig*, No. 1:18-cv-08175

(S.D.N.Y.) (the "*Honig* Action").  (*See* TAC ¶ 49.)  Lead Plaintiff relies heavily on

the *Honig* Action in contending that the Individual Defendants acted with scienter,

simply lifting and repeating large portions of the complaint in that case.  (*See id*. ¶¶

49-71.)  But Lead Plaintiff readily admits that the *Honig* Action had nothing to do

with Riot.  (*See id.*, Ex. A, Ex. B.)  Moreover, the TAC ignores that O'Rourke

settled the *Honig* Action with the SEC ***without admitting or denying any of the***

***SEC's allegations***.  (*See* TAC ¶¶ 69-70 n.11; (Declaration of D. Scott Carlton

("Carlton Decl."), Ex. J.))[4]

### D.      The Individual Defendants' Relationship and Past Interactions
###         With Honig

The TAC provides threadbare allegations attempting to connect the

Individual Defendants with Honig in an effort to buttress the glaring weaknesses in

Lead Plaintiff's scienter claims.  For example, Lead Plaintiff references a single

February 3, 2014 email from O'Rourke to an entirely unrelated person associated

---

[4] While past complaints also referenced a separate SEC investigation (*see, e.g.,*
Consolidated Second Amended Class Action Complaint ("SAC") ¶ 445, Dkt. 193-
1), only a single vague and untethered reference to a "SEC investigation" remains
in the TAC.  (*See* TAC ¶ 235.)  In Lead Plaintiff's attempt to remove sections from
the previous complaint, a number of vestigial parts are leftover throughout the
TAC.

with a potential merger target with no connection at all to Riot.  (*See* TAC ¶ 55.)

Indeed, the event was years before O'Rourke was involved with Riot and before

Riot became the blockchain company relevant to Lead Plaintiff's claims.  In

addition, Lead Plaintiff alleges that O'Rourke and Honig shared an office in Boca

Raton, Florida.  (*Id*. ¶ 162.)  As to Beeghley, the allegations are even more lacking.

Lead Plaintiff makes one allegation about Beeghley having served as a director at a

different company while Honig was the Chairman.  (*See id.* ¶ 74.)  Ultimately,

none of these allegations are even related to the Individual Defendants' conduct at

Riot.

## III.   THE SECTION 10(B) CLAIM AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

### A.   Claims Based on Statements Made in Three Form 8-Ks Fail Under *Janus* Because the Individual Defendants Did Not "Make" Any Alleged Misstatements

As a threshold matter, Lead Plaintiff's attempt to premise the Individual

Defendants' liability on three Form 8-Ks fails as a matter of law because they did

not sign them.  *See Janus Cap.*, 564 U.S. at 142 (only the "maker" of alleged

misstatements are liable for securities fraud); *see also In re Smith Barney Transfer*

*Agent Litig.,* 884 F. Supp. 2d 152, 165 (S.D.N.Y. 2012) (holding that defendant is

"not responsible for misleading statements in SEC filings he did not sign[]").[5]

---

[5] Lead Plaintiff also points to a February 16, 2018 Shareholder Letter attached to a
Form 8-K with a statement from O'Rourke, long after Beeghley had left the

Lead Plaintiff alleges that Riot's Form 8-Ks dated March 16, 2017, October 4, 2017, and November 3, 2017 contained alleged misstatements and omissions, and that "O'Rourke and Beeghley caused the Company to issue materially false and misleading" Forms 8-Ks.  (TAC ¶¶ 153, 177, 204-208.)  But O'Rourke and Beeghley did not sign those three Form 8-Ks (*see* Carlton Decl. Exs. A, H, and I), nor does Lead Plaintiff allege that they had ultimate authority over them.[6] Moreover, an individual's role as an officer – on its own – is insufficient for the individual to be deemed to have "made" a statement under *Janus* for purposes of 10(b).  *See Hefler v. Wells Fargo & Co*., No. 16-CV-05479-JST, 2018 WL 1070116, at *2 (N.D. Cal. Feb. 27, 2018) (individual officers not liable under 10b-5 for statements made in company press releases and SEC filings where individuals did not sign SEC filings and absent specific facts showing individuals had ultimate authority over alleged misstatements).

Accordingly, O'Rourke and Beeghley cannot be considered the "maker" of the statements contained in the Form 8-Ks and, therefore, cannot be held liable for

---

company.  (*See* TAC ¶¶ 222-23.)  But the letter adds nothing new and simply relies on other allegations that are patently flawed for a multitude of reasons, as discussed below and in Riot's Motion to Dismiss (Riot's MTD at 33-34), which the Individual Defendants join and incorporate herein.  None of the alleged misstatements contained in any Form 8-K support Lead Plaintiff's claims against the Individual Defendants.

[6] Lead Plaintiff's claim that Beeghley signed Riot's October 4, 2017 Form 8-K is simply wrong.  (*See* ¶ 200; *see also* Carlton Decl. Ex. H.)

the alleged misstatements.  *See In re Smith Barney,* 884 F. Supp. 2d at 165

(holding that "only those officers whose signatures appear on misleading

statements may be liable as the 'makers' of those statements[]").[7]

> **B.    All Claims Fail Against the Individual Defendants Because the TAC Lacks Allegations of a Strong Inference of Scienter**

The Reform Act makes a "sharp break with Rule 9(b)," requiring a plaintiff

to "state with particularity facts giving rise to a strong inference that the defendant

acted with the required state of mind."  *Institutional Invs. Grp. v. Avaya, Inc*, 564

F.3d 242, 253 (3d Cir. 2009) (citation omitted); *see also Eminence Cap., LLC v.

Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam) ("The [Reform

Act] requires a plaintiff to plead … with an unprecedented degree of specificity

and detail . . . . This is not an easy standard to comply with – it was not intended to

be – and plaintiffs must be held to it.").  The inference of scienter must be "more

than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus

strong in light of other explanations."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308, 324 (2007).  "[S]uch inferences are not to be made lightly," but

"may be made only when the fact pattern *unambiguously indicates* that the

---

[7] *Lorenzo v. SEC*, 139 S. Ct. 1094, 1102 (2019) does not impact the analysis.  Even under *Lorenzo,* a plaintiff would still need to plead particularized facts as to deceptive conduct and scienter for liability to attach.

defendant was acting with the requisite state of mind." *In re Synchronoss Sec. Litig.*, 705 F. Supp. 2d 367, 399 (D.N.J.  2010).

The TAC attempts to establish scienter through two buckets of allegations: (i) allegations of O'Rourke's stock sale to establish motive; and (ii) circumstantial allegations of conscious misbehavior or recklessness relating to a separate lawsuit, investments in other companies, personal relationships with others, positions at Riot, and core operations allegations.  The allegations – separately and taken as a whole – fail to satisfy the Reform Act's exacting pleading standards as to O'Rourke or Beeghley.  Rather, non-culpable inferences drawn from the allegations are far more cogent and compelling than any inferences of fraudulent intent.[8]

---

[8] To evaluate the scienter of a corporate defendant (*e.g.,* Riot), courts "look to the state of mind of the individual corporate official or officials who make or issue the statement . . . ."  *City of Roseville Emps.' Ret. Sys. V. Horizon Lines, Inc.*, 713 F. Supp. 2d 378, 402 (D. Del. 2010), *aff'd*, 442 F. App'x 672 (3d Cir. 2011). Therefore, a corporate defendant cannot be held liable "absent a showing that at least one individual officer who made, or participated in the making of, a false or misleading statement did so with scienter."  *Id*. at 403 (citation omitted).  Since Lead Plaintiff does not specifically allege that the Individual Defendants – who are the only parties in this action who are officers or directors of the Company – acted with the requisite scienter, Lead Plaintiff also fails to allege that Riot acted with the requisite scienter.

1.    **O'Rourke's Stock Sales Were Neither Suspicious nor Unusual and Cannot Sustain a Strong Inference of Scienter.**

Lead Plaintiff's lone "motive" allegation – that O'Rourke's stock sales reveal "his motive to commit fraud" – fails as a matter of law.[9]  (TAC ¶ 234.)  The Third Circuit "will not infer fraudulent intent from the mere fact that some officers sold stock."  *In re Burlington,* 114 F.3d at 1424.  Rather, Lead Plaintiff must allege specific facts showing "that the trades were made at times and in quantities that were suspicious enough to support the necessary 'strong inference of scienter.'"  *Oran v. Stafford,* 34 F. Supp. 2d 906, 910 (D.N.J. 1999), *aff'd,* 226 F.3d 275 (3d Cir. 2000) (quoting *In re Burlington,* 114 F.3d at 1424) ( "plaintiffs choose to allege fraudulent behavior based on what they perceive as 'suspicious' trading, they have to allege facts that support that suspicion").  But nothing about O'Rourke's trade renders it "suspicious," let alone suggestive of any intent to commit fraud.

*First,* O'Rourke's sale of less than 10% of his holdings is *de minimis*.  The TAC alleges O'Rourke sold 30,383 Riot shares on December 29, 2017 (s*ee* TAC ¶ 234), which represented "less than 10% of [his] overall position[.]"  (*Id.* ¶ 221.)  Courts have concluded that sales of such a small percentage are not unusual.  *See,*

---

[9] The Third Circuit precludes Lead Plaintiff from hinging scienter allegations solely on "motive and opportunity."  *See Institutional Invs. Grp.*, 564 F.3d at 277 ("'motive and opportunity' may no longer serve as an independent route to scienter . . .").

*e.g., Acito v. Imcera Grp., Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (sale of 11% of defendant's holdings not unusual); *KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 611 (4th Cir. 2021) (selling 17% of shares not enough for scienter).  In fact, small percentages actually undercut a finding of scienter since O'Rourke retained much more than he had sold.  *See In re Gildan Activewear, Inc. Sec. Litig.*, 636 F. Supp. 2d 261, 270 (S.D.N.Y. 2009) ("Further, total sales amounting to a relatively low percentage of an insider's percentage of stock holdings militate against an inference of scienter.")

*Second,* O'Rourke's sale "to cover tax obligations" (TAC ¶ 221) undermines any inference of scienter.  *See In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 611 (E.D. Pa. 2009) ("Other federal courts have found such sales – i.e., sales to cover tax liabilities – as weighing against an inference of scienter.") (citations omitted); *see also In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (sales to pay tax not indicative of fraud).

*Third*, a long class period such as the one in this action – nearly eighteen months (TAC ¶ 1) – cuts against any inference of scienter since "a lengthy class period makes it difficult to infer intent from the mere fact of a stock sale, as it is not unusual for insiders to trade at some point during their tenure with a company." *In re Hertz Glob. Holdings Inc*., 905 F.3d 106, 120 (3d Cir. 2018) (citation omitted); *see also In re Vantive Corp. Sec. Litig.,* 283 F.3d 1079, 1092 (9th Cir.

-15-

2002) (inference of scienter lessened due to "unusually long class period of sixty-three weeks [fifteen months]"), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008).

      *Fourth*, O'Rourke did not sell at the high point during the Class Period, making the timing *not* suspicious.  Lead Plaintiff alleges that, during the Class Period, the stock reached a high of $46.20 per share, but that O'Rourke sold his shares for approximately $28.61 per share (TAC ¶ 234), or nearly 38% off the high price.  *See In re Hertz,* 905 F.3d at 120 (noting that "the timing of the insider trades is not particularly suspicious[]" since defendants sold Hertz stock between $21.23 and $28.00 while the "overall class period high, in contrast, was $31.56 …."); *see also Greebel v. FTP Software, Inc.*, 194 F.3d 185, 206 (1st Cir. 1999) (finding timing of insider trades to be not "very suspicious" because the insiders did not sell at "high points of the stock").

      *Fifth,* the absence of any allegation that Beeghley sold any shares during the Class Period further cuts against an inference of scienter.  *See In re Cypress Semiconductor Sec. Litig.,* No. C-92-20048-RMW, 1992 U.S. Dist. LEXIS 22480, at *6 (N.D. Cal. Sept. 24, 1992) (holding that plaintiffs' claims that defendants artificially inflated the company's share price so that they could sell their stock at a huge profit was undermined by the fact that one of the four defendants did not sell his stock during the class period).

*Lastly*, Lead Plaintiff's failure to allege particularized facts as to the scope and timing of O'Rourke's trade is reason enough to prohibit any inference of scienter. *See In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 512 (E.D. Pa. 2018) ("However, Plaintiffs do not allege particularized facts as to the scope or timing of Defendants' stock trades, which is, along with other deficiencies in pleading scienter, 'fatal of plaintiffs' case.'") (citation omitted), *aff'd sub nom. Spizzirri v. Zyla Life Scis.*, 802 F. App'x 738 (3d Cir. 2020); *Oran,* 226 F.3d at 289 (finding an "absence of . . . information" about "whether the trades were normal and routine for each executive") (citation omitted).  Lead Plaintiff provides no additional facts from which one can evaluate the scope of O'Rourke's trade in any meaningful way, such as the original purchase price and profit margin, O'Rourke's other trades, if any, during the Class Period or during a relevant control period, so that one can ascertain "whether the trades were normal and routine." *Id.*

Accordingly, the timing and scope of O'Rourke's stock trade undermines Lead Plaintiff's theory of nefarious market timing and cuts against any suggestion of motive.  *See Oran*, 226 F.3d at 290.

> ### 2.      **Lead Plaintiff's Circumstantial Allegations of Conscious Misbehavior or Recklessness Fail to Support a Strong Inference of Scienter.**

Since motive as a pathway to scienter is unavailable, as it is here, Lead Plaintiff must "alleg[e] specific facts that constitute 'strong circumstantial evidence

of conscious misbehavior or recklessness.'" *GSC Partners CDO Fund v.*

*Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (quoting *In re Burlington*, 114 F.3d

at 1418).  Conscious misbehavior or recklessness requires Lead Plaintiff to allege

conduct by the Individual Defendants that is "[h]ighly unreasonable (conduct),

involving not merely simple, or even inexcusable negligence, but an *extreme*

*departure* from the standards of ordinary care . . . which presents a danger of

misleading buyers and sellers that is either known to the defendant or is so obvious

that the actor must have been aware of it." *In re Suprema Specialties, Inc. Sec.*

*Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (citation omitted) (emphasis added).  To

do so, Lead Plaintiff must allege that O'Rourke and Beeghley "knew of specific

facts that [were] contrary to their public statements." *GSC*, 368 F.3d at 239

(citation omitted).  And when motive is not apparent, "the strength of the

circumstantial allegations must be [even] greater." *In re Intelligroup Sec. Litig.,*

527 F. Supp. 2d 262, 285 (D.N.J. 2007) (alteration in original) (quoting *Kalnit v.*

*Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).[10]

　　　　Lead Plaintiff sets forth four circumstantial allegations that, together, fail to

be "greater" than other deficient allegations.

---

[10] In that situation, a plaintiff "must support their allegations by detailing, with
particularity, 'the who, what, when, where and how' of the events at issue and
present clear facts verifying plaintiff's deductions with respect to defendant's state
of mind." *In re Intelligroup*, 527 F. Supp. 2d at 285 (citing *In re Burlington*, 114
F.3d at 1422).

### a.   Allegations Regarding the Unrelated *Honig* Action Do Not Support a Strong Inference of Scienter.

Lead Plaintiff's allegations regarding the *Honig* Action and subsequent settlements do nothing to salvage his inadequate pleadings with regard to scienter. Setting aside the fact that neither Riot nor Beeghley are involved in or implicated by the *Honig* Action, the TAC readily admits – and indeed, sets forth in detail – that the litigation is unrelated to the conduct Lead Plaintiff now targets with respect to Riot.  (*See id*. ¶¶ 49-71.)

Moreover, Lead Plaintiff's heavy reliance on O'Rourke's settlement of the *Honig* Action further ignores that O'Rourke consented to the SEC's order ***without admitting or denying the SEC's allegations***.  (*See id*. ¶ 70 n.11; *see also* Carlton Decl., Ex. J.)  When assessing scienter, courts routinely disregard these same allegations regarding SEC settlements even when they actually relate to the company that is subject of the fraud.[11]  Thus, Lead Plaintiff's attempts to plead scienter through use of the *Honig* Action is meritless.

---

[11] *See In re Salomon Analyst Winstar Litig.*, No. 02 Civ. 6171(GEL), 2006 WL 510526, at *8 (S.D.N.Y. Feb. 28, 2006) (rejecting plaintiffs attempt to plead scienter by citing to a settlement in which the defendant did not admit to any allegations); *see also Ciolli v. Iravani*, 625 F. Supp. 2d 276, 289 (E.D. Pa. 2009) (striking as immaterial portions of complaint that relied on settlement negotiations that took place in connection with a different action); *Glazer Cap. Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) (settlement agreements involving defendants with the DOJ and SEC were not sufficient to meet the pleading requirements of the Reform Act because the admissions were largely

### b. Investments Made in Companies Other than Riot are Irrelevant to the Issue of Scienter.

Lead Plaintiff also relies on allegations that O'Rourke and Beeghley, and other assorted investors, invested in companies *other than Riot* at which Honig and several non-parties maintained investments.  (*See* TAC ¶¶ 79-80, 109.)  These generalized allegations come nowhere close to providing a plausible inference that (i) both O'Rourke and Beeghley separately knew that others were acting as a group in connection with Riot; or that (ii) O'Rourke and Beeghley each intended to omit that information in Riot's public filings.  The fact that individuals invested in other companies together does not provide a compelling inference that the Individual Defendants knew that those same individuals invested in Riot to acquire, hold, vote, or dispose of securities of Riot as a coordinated group.[12]  *See Rubenstein*, 363 F. Supp. 3d at 392 ("These provisions thereby require the members of the 'group' to have agreed to act together for the purpose of acquiring not just any security, but

---

legal conclusions rather than particularized facts giving rise to a strong inference of scienter).

[12] Likewise, Lead Plaintiff's allegation that, *on February 3, 2014*, O'Rourke had emailed an officer of a different company that "Barry Honig is the principal investor of our small group" (TAC ¶ 55) in connection with investments in a different company is misplaced.  This allegation does not suggest that O'Rourke knew, years later, that Honig was part of a group at Riot that was subject to the disclosure requirements of Section 13(d).

securities of a particular issuer.")  The connection is far too tenuous to sustain a claim.

Similarly, Lead Plaintiff relies on trades at different companies (outside of Riot) made by different investors to insinuate that the Individual Defendants should have been aware that there was a large group coordinating their investments *in* Riot.  (*See e.g., id*. ¶¶ 352, 365, 373, 386.)  For instance, Lead Plaintiff alleges that (i) JAD Capital invested in MUNDOMedia Ltd. (*id.* ¶ 80); (ii) O'Braitis invested in PolarityTE (*id.* ¶ 40); (iii) JAD and O'Braitis invested in Riot (81,204 shares) (*id.* ¶ 188), and that this combination of separate events by separate entities proves "that the Selling Stockholders were coordinating their investment as a group" at Riot**,** and that the Individual Defendants knew about it at all times.[13] (*Id*.)  This is nonsensical.  Lead Plaintiff leaves unresolved the obvious flaw in logic, alleging no facts to show that (i) the Individual Defendants knew that there was, at best, a nebulous connection between JAD Capital, O'Braitis, Honig, and other "Selling Stockholders," or (ii) the connection somehow would lead to the conclusion that a large, undisclosed group of individuals must be acting to control Riot's operations as some secret coordinated group.

---

[13] The TAC provides no further details regarding when all these trades took place, whether ownership of shares overlapped among investors pursuant to an agreement among investors, and other pertinent details that would be necessary to understand the nature of the allegation.

Moreover, Lead Plaintiff's allegation of an "investor group," which is central to his claims, has been a moving target.  In Lead Plaintiff's prior complaint, the SAC, the group was defined as the "Honig Group" with six members.  (*See* SAC ¶ 29.)  However, in the TAC, Lead Plaintiff now refers to the group as the "Selling Stockholders," whose expanded membership now includes:  "2330573 Ontario, Aifos, ATG, Brauser, DeFrancesco, Grander, Groussman, GRQ 401K, Alan Honig, Barry Honig, Jonathan Honig, JAD, Karr, Kesner, Melechdavid, Molinsky, Namaste, Northurst, Paradox, O'Braitis, Stetson Capital, Theofilos, and Titan, ***and other affiliated shareholders***."  (TAC ¶¶ 1, 79) (emphasis added).

Lead Plaintiff's effort to expand dramatically the alleged investor group further cuts against any inference of scienter.  It is implausible that O'Rourke and Beeghley each knew, or were reckless in not knowing, the alleged coordinated activities of each distinct entity or individual, including the catch-all "other affiliated shareholders," when the TAC fails to allege the connections between O'Rourke, Beeghley and each entity or individual, or the basis of any such knowledge.  Nor does Lead Plaintiff provide pertinent details regarding the dates of relevant trades by each entity and individual that would provide enough contextual information to connect the Individual Defendants to an imputed

knowledge of the alleged group's activities.[14]  This ambiguity begs the question (or

questions), who bought what and when?  What was O'Rourke's or Beeghley's

position at the time?  Did O'Rourke and Beeghley know each of them?  Did

anyone sell, and when?  Lead Plaintiff's assertion that the Individual Defendants

knew about the twenty-plus member group, without providing particularized facts

tailored separately to O'Rourke and Beeghley, undermines any inference of

scienter.  *See Eminence Cap.,* 316 F.3d at 1052 ("The [Reform Act] requires a

plaintiff to plead … with an unprecedented degree of specificity and detail"); *see*

*also Southland Sec. Corp. v. INSpire Ins. Sols. Inc*., 365 F.3d 353, 365 (5th Cir.

2004) (the Reform Act requires "plaintiffs to 'distinguish among those they sue

and enlighten *each defendant* as to his or her particular part in the alleged fraud'").

Put simply, the allegation strains credulity.

### c. Personal Relationships or Past Interactions With Certain Individuals Do Not Establish Knowledge.

Lead Plaintiff's scienter allegations also heavily rely on circumstantial

allegations of purported relationships and past interactions involving O'Rourke and

Honig.  (*See e.g.,* TAC ¶¶ 14, 15, 162.)  However, Lead Plaintiff fails to draw even

---

[14] At most, Lead Plaintiff alleges that some of the Selling Stockholders owned Riot stock at the same time, but that does not even allege the *existence of a group*, let alone Beeghley's or O'Rourke's knowledge of one.  (*See* Riot's MTD at 30.); *see also Litzler v. CC Invs., L.D.C.*, 411 F. Supp. 2d 411, 415 (S.D.N.Y. 2006) ("General allegations of parallel investments by institutional investors do not suffice to plead a 'group.'").

a remote connection between any personal relationship and the alleged scheme in the TAC. *See Vogel,* 126 F. Supp. 2d at 739 ("allegations of a close relationship fail to establish the kind of circumstantial evidence necessary to support a claim of fraudulent or reckless intent.") (citations omitted).

Lead Plaintiff's allegation that O'Rourke shared Honig's office in Boca Raton is unavailing.  (TAC ¶ 162.)  Lead Plaintiff alleges no particularized facts that provide a cogent and compelling inference that sharing an office in Florida or a fax number somehow suggests that O'Rourke acted with a fraudulent intent at Riot. *See Burt v. Maasberg*, No. ELH-12-0464, 2013 WL 1314160, at *17 (D. Md. Mar. 31, 2013) ("The existence of personal or professional relationships between individuals does not establish a 'group' under § 13(d)."); *see also Scott v. Multi-Amp Corp.*, 386 F. Supp. 44, 70 (D.N.J. 1974) ("Mere relationship, among persons or entities, whether family, personal or business, is insufficient to create a group which is deemed to be a statutory person.").

### d.   The Individual Defendants' Positions Do Not Support a Strong Inference of Scienter.

Lead Plaintiff cannot satisfy the Reform Act's heightened standard for pleading scienter by suggesting that the Individual Defendants must have known the alleged misstatements were false because, "by virtue of their high-level positions with the Company, [they] were directly involved in the day-to-day operations of the Company at the highest levels...."  (TAC ¶ 227.)  Yet, the TAC

-24-

does precisely that.  A substantial portion of Lead Plaintiff's scienter claims impermissibly emanates from the Individual Defendants' positions at Riot, for example:

- "…given their positions in Riot's executive management and as Board members" (*Id.* ¶ 115);

- "as CEO … Beeghley would have been aware" (*Id.* ¶ 165);

- "O'Rourke and Beeghley – who were both Directors of the Company at this time – would have been aware" (*Id.* ¶ 177);

- "O'Rourke and Beeghley would have been aware of the Coinsquare Agreement, Honig's (and other Selling Stockholders') role … by virtue of their positions" (*Id.* ¶ 205);

- "O'Rourke knew or should have known … because he was Chairman and CEO of Riot" (*Id.* ¶ 213);

- "Based on their roles at Riot, [O'Rourke and Beeghley] would have been involved with, or had knowledge of, the wrongdoing" (*Id.* ¶ 226)

It is well-settled, however, that "allegations that a securities-fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.'" *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999),

*abrogated on other grounds by Tellabs v. Makor Issues & Rights, Ltd.,* 551 U.S. 308 (2007)(citation omitted); *see also Fain v. USA Techs., Inc.,* 707 F. App'x 91, 96 (3d Cir. 2017) ("That Defendants were in top positions at USA Technologies, alone, is not enough.")[15]

Nor can Lead Plaintiff use the Individual Defendants' positions to invoke a narrow "core operations" exception to salvage deficient scienter allegations.  With no viable path to establish a strong inference of scienter through allegations of motive or through circumstantial evidence of conscious misbehavior or recklessness, Lead Plaintiff throws in a core-operations exception near the end of the TAC's substantive allegations, encompassing only three paragraphs (TAC ¶¶ 228-230).  The argument appears to be:

- O'Rourke and Beeghley were senior executives (*Id.* ¶ 228);

---

[15] Several courts "have expressed doubts as to the [core operations] doctrine's continuing import …" following the Reform Act.  *In re Supercom Inc. Sec. Litig.,* 15 Civ. 9650 (PGG), 2018 WL 4926442, at *31 (S.D.N.Y. Oct. 10, 2018); *see also Shemian v. Rsch. In Motion Ltd.,* No. 11 Civ. 4068(RJS), 2013 WL 1285779, at *18 (S.D.N.Y. Mar. 29, 2013) ("[T]his Court has carefully considered the continued viability of the 'core operations' inference in light of the PSLRA's heightened pleading requirement and found it lacking"), *aff'd*, 570 F. App'x 32 (2d Cir. 2014); *In re Wachovia Equity Sec. Litig.,* 753 F. Supp. 2d 326, 353 (S.D.N.Y. 2011) ("Based on the trajectory of 'core operations' law in this and other circuits, the Court ventures to suggest that the future of the doctrine may be tenuous. Indeed, the plain language of the PSLRA, which requires facts supporting the scienter inference to be 'state[d] with particularity,' would seem to limit the force of general allegations about core company operations.") (citing 15 U.S.C. § 78u-4(b)(1)).

- Thus, they knew everything about Riot's "core business" (*Id.*);

- Riot's core business was cryptocurrency and Bitcoin (*Id.* ¶ 229);

- Riot's October 4, 2017 Form 8-K (relating to the Coinsquare Agreement, *id.* ¶ 200) and its November 3, 2017 Form 8-K (relating to the Kairos Transaction, *id.* ¶ 206) related to cryptocurrency and Bitcoin (*Id.* ¶¶ 94, 106);

- *Ergo*, O'Rourke and Beeghley knew about the alleged misstatements and omissions in both Form 8-Ks.[16]  (*Id.* ¶ 230.)

The core operations exception has no application here.[17]  "Only in rare instances can core operations alone allow inferences of scienter[.]")  *Percoco v.*

---

[16] Lead Plaintiff's attempt to invoke the core-operations exception is so generalized and conclusory, it is unclear what is actually being specifically alleged, which misstatements are impacted, and which public filings at issue are involved. Neither the Court nor Individual Defendants should have to piece together and spell out Lead Plaintiff's argument for him in order to address it adequately, especially when Lead Plaintiff is attempting to invoke a narrow exception as an end-around the PSLRA's requirement for particularized facts.  *See Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 145 (3d Cir. 2004) ("[U]nless plaintiffs in securities fraud actions allege facts supporting their contentions of fraud with the requisite particularity mandated by Rule 9(b) and the Reform Act [PSLRA], they may not benefit from inferences flowing from vague or unspecific allegations-inferences that may arguably have been justified under a traditional Rule 12(b)(6) analysis.") (citation omitted).

[17] The core operations exception fails here as a matter of law because the Individual Defendants were not the "makers" of any alleged misstatements in those Form 8-Ks under *Janus* and, thus, cannot be held liable for them.  (*See supra* Part III.A.)

*Deckers Outdoor Corp.*, No. 12-1001-SLR, 2013 WL 3584370, at *5 (D. Del. July 8, 2013).  More often, the doctrine "constitutes 'supplemental support' for alleging scienter[]" that has already been sufficiently established.  *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 259 (S.D.N.Y. 2020) (citation omitted).  The core operations exception in the Third Circuit requires a plaintiff to allege facts showing that "'it would be 'absurd' to suggest that [Defendants were] without knowledge'" of the challenged statements' falsity, *Percoco*, 2013 WL 3584370, at *5 (citation omitted).

Moreover, it cannot be "automatically assumed that a corporate officer is familiar with certain facts just because these facts are important to the company's business; there must be ***other, individualized allegations*** that further suggest that the officer had knowledge of the fact in question."  *Nat'l Junior Baseball League*, 720 F. Supp. 2d at 556 (emphasis added) (citations omitted); *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 155 (3d Cir. 2018) (exception "does not support a finding of scienter … absent some additional allegation of specific information conveyed to management and related to the fraud.") (citation omitted).[18]

---

[18] *See also In re Amarin Corp. PLC*, No. 13–CV–6663 (FLW)(TJB), 2015 WL 3954190, at *12 (D.N.J. Jun. 29, 2015) (unpublished) (refusing to infer scienter from core operations doctrine "absent particularized allegations showing that defendants had ample reason to know of the falsity of their statements") (citation omitted); *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 246-47 (3d Cir. 2013) (declining to apply core operations doctrine in the absence of allegations demonstrating that Defendants knew the information they disseminated was false).

Here, Lead Plaintiff fails not only to plead facts that sufficiently establish scienter independent of the core operations exception, but also to allege that "other, individualized allegations" related to the alleged misstatements implicated here were communicated to O'Rourke or Beeghley such that they knew or had ample reason to know of any alleged falsity.  *Id.*  In fact, there is not a single non-conclusory allegation of O'Rourke's or Beeghley's knowledge in the TAC sufficient to support any finding of scienter.  Without that, the core operations doctrine fails for this separate reason.  *See Nat'l Junior Baseball League*, 720 F. Supp. 2d at 526 ("Plaintiff cannot rely on this [core operations] doctrine when it has failed to allege other individualized allegations that [the Individual Defendants] had knowledge of the facts at issue.") (alterations added).

### 3.   The TAC is Devoid of Particularized Facts Supporting a Strong Inference of Scienter for Beeghley.

While the TAC as a whole suffers from a lack of particularized facts, the deficiency is pronounced as to Beeghley.  In discussing the prior CCAC, the Court noted that "Plaintiff barely addresses the scienter of defendant[] Beeghley … in his opposition brief" and that "the only scienter allegations mentioned with respect to Beeghley and McGonegal are that those particular defendants personally attested in SOX certifications…."  (April 30, 2020 Order at 28 n.16.)  In the TAC, Lead Plaintiff alleges that Beeghley and Honig overlapped for approximately one year in different roles at a separate company.  (*See* TAC ¶¶ 13-15.)  But beyond that, the

TAC pleads little else relating to Beeghley's role and interactions with other individuals.  Not surprisingly, the section in the TAC regarding Beeghley's scienter is limited to two paragraphs.  (*Id.* ¶¶ 164-65.)

But the sheer lack of particularized allegations relating to Beeghley does not stop Lead Plaintiff from alleging that:  Beeghley was "keenly aware of Honig's prior investment history and *modus operandi*" (*id.* ¶ 3); the "Selling Stockholders" had a myriad of prior co-investments with Beeghley (*id.* ¶ 109), Beeghley knew that these individuals "were investing as part of a closely organized 'group'" (*id.*); and that Beeghley knew of Honig "secretly coordinating stock sales and voting with other group members" (*id.* ¶ 154).  With so little alleged as to Beeghley, Lead Plaintiff's statements about him are by default conclusory and generalized, based on little more than his past titles at Riot, and ultimately insufficient to establish scienter.[19]  *See In re Advanta*, 180 F.3d at 539 ("Generalized imputations of knowledge do not suffice, regardless of the defendants' positions within the company.")

---

[19] Additionally, the purported misstatements and/or omissions occurring after Beeghley resigned from the Board of Directors at Riot cannot be attributed to him. These include the January 5, 2018 Form S-3; the February 7, 2018 Form S-3/A; the February 16, 2018 CNBC article; and the February 16, 2018 Form 8-K.  (*See* TAC ¶¶ 206-23.)

### 4.     <u>Lead Plaintiff Pleads No Facts to Support Scienter for His Item 404 and Item 1.01 Violations</u>

The lack of allegations pertaining to Beeghley are particularly damaging to Lead Plaintiff's claims based on the purported Item 404 of Regulation S-K and Item 1.01 of Form 8-K violations.  As explained *supra*, neither O'Rourke nor Beeghley signed the Form 8-Ks that purportedly support Lead Plaintiff's Item 404 and Item 1.01 allegations.  (*See supra*, Section III.A.)  However, even assuming an officer position is enough to attribute the alleged omissions to that officer (it is not), only Beeghley was an officer of Riot at the time of the March 16, 2017, October 4, 2017, and November 3, 2017 Form 8-Ks.[20]  Lead Plaintiff seems to ignore this and simply treats Beeghley and O'Rourke as a unit in an attempt to manufacture scienter allegations.  This is insufficient.  *See Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 429 (S.D.N.Y. 2010) ("Generalized allegations of scienter directed at a group of defendants and based entirely on conclusory statements are insufficient to state a claim for securities fraud.")  Nor is relying on Beeghley's and O'Rourke's positions as directors enough.  (TAC ¶ 177)  *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 413 F. Supp. 2d 378, 395 (E.D. Pa. 2005) (dismissing

---

[20] Beeghley was replaced as CEO by O'Rourke on November 3, 2017.  However, even if the Form 8-K can be attributed to O'Rourke, Lead Plaintiff does not (and cannot) allege how O'Rourke knew about the pertinent details of, let alone Honig's insignificant interest in, a transaction that took place on November 1, 2017, before O'Rourke was CEO.  (TAC ¶¶ 206-08.)

claims against a director defendant when plaintiffs made no allegations that would connect the non-signing director to the allegedly misleading statements). Because Lead Plaintiff cannot connect O'Rourke (as a non-signing director) to the Form 8-Ks, any scienter allegations pertaining to O'Rourke cannot support the Item 404 or Item 1.01 violations.

As a result, the *only* allegation supporting the Item 404 or Item 1.01 violations is the conclusory allegation that by virtue of his position, Beeghley would have known that Honig was a *5% shareholder of Riot*. (TAC ¶ 205.) But, as explained in Riot's Motion to Dismiss, it defies logic to hold that Riot must disclose every Riot shareholder that also owns stock in another company during a transaction, no matter how insignificant their share in that company. (*See* Riot's MTD at 13-15 (Item 404 only requires disclosure of a related-party who has an indirect interest in the transaction by way of owning equity, if such related-party owns more than 10% of the company receiving money).) Rather, the pertinent information for an Item 404 disclosure is whether Honig owned a significant share of Coinsquare and Kairos stock and whether Beeghley knew about that ownership interest. (*See id*.) The TAC alleges neither.[21] (TAC ¶¶ 205, 206-08.) Lead Plaintiff's scienter allegations are, thus, conclusory and based on a false premise,

---

[21] And, for Item 1.01, Honig must have been a party to the agreements—he was not. (*See* Riot's MTD at pp. 21-22.)

rendering the TAC utterly devoid of any allegations to support Lead Plaintiff's

claims regarding related-party transactions.[22]

### 5.   Taken Together, the TAC's Generalized and Conclusory Allegations Fail to Create a Strong Inference of Scienter.

As a whole, the TAC fails to plead particularized facts individually as to

O'Rourke and Beeghley demonstrating that either defendant had the requisite

intent to deceive.  *See e.g.*, *Nat'l Junior Baseball League*, 720 F. Supp. 2d at 558

(plaintiff's complaint, even when viewed in its entirety, failed to establish a strong

inference of scienter where the court had already found the plaintiff's insider

trading, group pleading, and GAAP violation allegations to be insufficient).  The

generalized allegations advanced by Lead Plaintiff establish nothing more than that

O'Rourke and Beeghley were in high-level positions at Riot at certain times and

may have had a personal relationship with certain other individuals, and that

O'Rourke sold stock in his ordinary course of conduct as an officer of Riot.  *See*

*Institutional Invs. Grp.*, 564 F.3d at 278 ("[M]otives that are generally possessed

by most corporate directors and officers do not suffice; instead, plaintiffs must

assert a concrete and personal benefit to the individual defendants resulting from

this fraud.") (citation omitted).

---

[22] Lead Plaintiff's allegations pertaining to the March 2017 Private Placement are likewise conclusory and insufficient, in that they only rely on Beeghley's position in the company.  (TAC ¶ 177; *see supra*, Section III.B.2.)

Lead Plaintiff fails to allege any facts bridging the gap between O'Rourke and Beeghley's conduct and the purported knowledge that Lead Plaintiff must show to avoid dismissal of his claims.  Indeed, Lead Plaintiff does not set forth a single fact suggesting that the Individual Defendants were privy to any specific information that would suggest that O'Rourke and Beeghley knew that the purported investor group was working to acquire stock and control Riot's operations.[23]  *See e.g., In re Verisign, Inc., Deriv. Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007) (granting a motion to dismiss because "[t]he assertions of scienter [were] entirely conclusory, and the CAC contain[ed] no specific allegations of contemporaneous reports or data supporting the assertions of scienter—not a single fact showing what each defendant knew, when he/she knew it, or how he/she acquired that knowledge").

As explained in detail in Riot's Motion to Dismiss, the TAC fails to establish that a group existed in connection with Riot that even required disclosure.

---

[23] In fact, past allegations about the alleged group itself were contradictory relating to alleged coordination of stock sales.  A prior version of Lead Plaintiff's complaint confirms that certain purported members of the alleged group had sales that were highly divergent within the relevant time frame.  (*See* SAC ¶ 330 (showing Groussman's purchases of stock from April 2017 to September 2017, and sales occurring in October 2017 and January 2018), ¶ 337 (describing DeFrancesco's purchases from September 2026 to January 2017, then a sale in January 2018), ¶ 342 (alleging that Stetson had kept his holdings steadily from April 2017 until September 2017), ¶¶ 299-303 (containing no allegations that Beeghley had sold or acquired any Riot shares).)

When, as here, the alleged misstatement or omission is not obviously false or did not clearly need to be disclosed, an inference of non-fraudulent conduct is more compelling.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009) ("[R]eporting false information will only be indicative of scienter where the falsity is patently obvious—where the 'facts [are] prominent enough that it would be absurd to suggest that top management was unaware of them.'") (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-89 (9th Cir. 2008)); *see also Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 536 (5th Cir. 2008) ("Plaintiffs cannot transform inherently nuanced conclusions into fraudulent misstatements or omissions simply by saying that there were abuses or misuses of the GAAP rules.").  Lead Plaintiff also does not identify any confidential witness or point to any records or contemporaneous documents to support its claims.  These are critical pleading deficiencies that in and of themselves weigh strongly against a finding of scienter.  *Institutional Invs. Grp.*, 564 F.3d at 253 ("[o]missions and ambiguities count against inferring scienter").

Lead Plaintiff instead heavily relies on an unrelated proceeding that has been settled without any finding or admission of fault, as well as on investments in ***other companies*** and ***by other investors*** in Riot, that require a logical leap that is simply insufficient to raise an inference of scienter, let alone a strong one.  These weaknesses in the TAC, in conjunction with Lead Plaintiff's allegations, create a

more compelling inference of non-fraudulent conduct.  *See Tellabs*, 551 U.S. at

319; *Utesch v. Lannett Co.*, 316 F. Supp. 3d 895, 902 (E.D. Pa. 2018) ("Read

holistically, the scienter allegations do not give rise to a strong inference that

Defendants acted with fraudulent intent[.]").  Accordingly, Lead Plaintiff has not

satisfied his high pleading burden.

## IV. <u>THE SECTION 20(A) CLAIM AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED</u>

Lead Plaintiff's allegation of control person liability under Section 20(a) of

the Exchange Act should also be dismissed.  For Section 20(a) liability, a plaintiff

must show:  (1) a person controlled another person or entity; (2) that the controlled

person or entity committed a primary violation of the securities laws; and (3) that

the defendant was a culpable participant in the fraud.  *Fox Int'l Relations v. Fiserv

Sec. Inc.*, 490 F. Supp. 2d 590, 601 (E.D. Pa. 2007).  If no controlled person is

liable, no control person liability exists.  *See In re Alpharma Inc. Sec. Litig.*, 372

F.3d 137, 153 (3d Cir. 2004), *abrogated on other grounds by Belmont v. MB Inv.

Partners, Inc.*, 708 F.3d 470 (3d Cir. 2013).

As demonstrated above and in Riot's Motion to Dismiss, Lead Plaintiff

cannot plead either a primary violation of the Exchange Act or culpable

participation in the alleged fraud, and therefore the Section 20(a) claim must be

dismissed.  *See In re Equimed, Inc. Sec. Litig.*, No. 98-CV-5374 NS, 2000 WL

562909, at *10 (E.D. Pa. May 9, 2000) ("The heightened standards of the Reform

Act apply to a § 20(a) claim, so a plaintiff must plead particularized facts of the

controlling person's conscious misbehavior as a culpable participant in the fraud.")

(internal quotation marks omitted) (citation omitted)).

## V.  **CONCLUSION**

For the reasons stated above, the Individual Defendants respectfully request

that the Court dismiss with prejudice Lead Plaintiff's TAC.


DATED:      July 18, 2022                    PAUL HASTINGS LLP


                                             By:  /s/ *Chad J. Peterman*
                                                  CHAD J. PETERMAN

                                             *chadpeterman@paulhastings.com*
                                             200 Park Avenue
                                             New York, NY 10166
                                             Telephone:  1(212) 318-6000
                                             Facsimile:  1(212) 319-4090

THOMAS A. ZACCARO
thomaszaccaro@paulhastings.com
D. SCOTT CARLTON
scottcarlton@paulhastings.com
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

Attorneys for Defendants
RIOT BLOCKCHAIN, INC., JOHN
O'ROURKE, AND MICHAEL
BEEGHLEY