## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,

          Plaintiff,

  vs.

RIOT BLOCKCHAIN, INC. F/K/A, BIOPTIX, INC., MICHAEL BEEGHLEY, JOHN O'ROURKE, and BARRY HONIG,

          Defendants.

Civil Action No.: 18-2293(GC)(RLS)

*ORAL ARGUMENT REQUESTED*

Motion Return Date: October 17, 2022

## DEFENDANT BARRY C. HONIG'S REPLY BRIEF IN FURTHER SUPPORT OF HIS MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Dated:  October 3, 2022

*Attorneys for Defendant Barry C. Honig*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

ARGUMENT...............................................................................................................2

I.     THE TAC'S FIRST CAUSE OF ACTION AGAINST MR. HONIG SHOULD AGAIN BE DISMISSED, THIS TIME WITH PREJUDICE. ...................................................................................................................2

     A.    The Opposition Concedes That The TAC's Section 10(b) "Scheme Liability" Claim Is Based Upon Conduct That Judge Quraishi Ruled Is Not Actionable. ........................................................2

     B.    The Opposition Improperly Reargues Precisely The Same Theories That Judge Quraishi Rejected................................................3

     C.    The TAC Remains Devoid Of Any Allegation That Mr. Honig's Disclosures Were A Substantial Cause of Plaintiff's Alleged Loss. ........................................................................................................5

     D.    Mr. Honig Was Not Required to Disclose a Non-Existent "Group." ....................................................................................................6

     E.    Mr. Honig's Sales Were Disclosed to the Public in Riot's SEC Filings.............................................................................................9

II.    THE TAC'S SECOND CAUSE OF ACTION AGAINST MR. HONIG SHOULD AGAIN BE DISMISSED, THIS TIME WITH PREJUDICE. ...............................................................................................11

III.   THE TAC'S SECTION 20(a) CAUSE OF ACTION AGAINST MR. HONIG SHOULD AGAIN BE DISMISSED, THIS TIME WITH PREJUDICE. ....................................................................................12

CONCLUSION ..........................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

Cases

*Berry v. Coleman*
  172 Fed. App'x 929 (11th Cir. 2006) ..................................................15

*In re City of Phila. Litig.*
  158 F.3d 711 (3d Cir.1998)..........................................................4, 5

*In re Digital Island Sec. Litig.*
  223 F.Supp.2d 546 (D. Del. 2002) ..................................................13

*Janus Capital Grp., Inc. v. First Derivative Traders*
  564 U.S. 135 (2011)......................................................................11

*Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*
  223 F. Supp. 2d 435 (S.D.N.Y. 2001) ..............................................7

*Monk v. Johnson & Johnson, C.A.*
  No. 10–4841 (FLW), 2012 WL 1884037 (D.N.J. May 22, 2012)....................13

*Paxton v. Provention Bio, Inc.*
  C.A. No. 3:21-cv-11613, 2022 WL 3098236 (D.N.J. Aug. 4, 2022) ...............11

*Portsmouth Square v. Shareholders Prot. Comm.*
  770 F.2d 866 (9th Cir. 1985)............................................................7

*In re Suprema Specialties, Inc. Sec. Litig.*
  438 F.3d 256 (3d Cir. 2006)..............................................................8

*U.S. ex rel. Silver v. Omnicare, Inc*.
  C.A. No. 11-1326, 2020 WL 7022664 (D. N.J. Nov. 30, 2020) ........................4

*VT Investors v. R & D Funding Corp.*
  733 F. Supp. 823 (D.N.J. 1990) ......................................................13

Statutes

15 U.S.C § 78u ............................................................................8, 10

15 U.S.C § 78m ...............................................................................3

## INTRODUCTION

The entirety of Lead Plaintiff's Opposition re-argues facts and legal arguments that the two prior judges who presided over this matter already rejected. Entire pages of the Opposition are cut-and-pasted from briefs that Lead Plaintiff filed during the last round of motions to dismiss, which he lost. The Opposition repeatedly misleads by claiming that the Third Amended Complaint ("**TAC**") "clarifies" allegations that Judges Wolfson and Quraishi dismissed as being deficient in prior rulings. In reality, the TAC presents zero new claims or factual allegations concerning Mr. Honig's transactions in Riot Blockchain securities. Lead Plaintiff cloaks a belated and improper motion for reconsideration of decisions by two federal judges, which are the law of the case, under the guise of an amended complaint.

Two Judges of this Court dismissed prior iterations of Plaintiffs' claims. Also, after investigating the matter, the Securities Exchange Commission ("**SEC**") decided not to proceed with any enforcement action.[1] There is nothing to see here. After five attempts at pleading a claim, it is evident that Lead Plaintiff's case theory remains completely implausible and that he cannot articulate any facts establishing a legally cognizable claim. Respectfully, this case should now be dismissed with prejudice.

---

[1] *See* Declaration of Robert D. Weber in Support of Mr. Honig's Motion to Dismiss the TAC ("**Weber Decl.**"), Exhs. L & M [Dkt. 234-14 & 15] (February 2020 correspondence from SEC stating that "we do not intend to recommend an enforcement action by the Commission.")

## ARGUMENT

I.   **THE TAC'S FIRST CAUSE OF ACTION AGAINST MR. HONIG SHOULD AGAIN BE DISMISSED, THIS TIME WITH PREJUDICE.**

A.   *The Opposition <u>Concedes</u> That The TAC's Section 10(b) "Scheme Liability" Claim Is Based Upon Conduct That Judge Quraishi Ruled Is Not Actionable.*

Large swathes of the Opposition are nothing but an attempt to reargue, literally word-for-word, arguments that Lead Plaintiff made, and Judge Quraishi rejected, during the last round of motions to dismiss.

Judge Quraishi pointedly ruled that a "**<u>Section 13(d) violation may not give rise to a private right of action for damages under Section 10(b).</u>**" April 8, 2022 Opinion [Dkt. 223] at 20. (emphasis added). He reached that conclusion following an exhaustive review of dozens of legal decisions (*id*. at 9-20) which he had specifically requested from the parties in a supplemental round of briefing.[2] His decision was a fatal blow to Lead Plaintiff's Section 10(b) claim, which is based upon Mr. Honig's alleged failure to make certain disclosures which Lead Plaintiff claims were required under Section 13. Judge Quraishi gave Lead Plaintiff leave to amend, but only "in a manner consistent with" his ruling. Dkt. 223 at 22.

Lead Plaintiff ignored Judge Quraishi by refiling the same claim against Mr. Honig: a Section 10(b) claim predicated upon his purported violations of Section 13 reporting requirements. The Opposition <u>admits</u> that Lead Plaintiff disregarded Judge

---

[2] *See* Dkt. Nos. 216-222.

Quraishi: "Honig accomplished his scheme, in part, by failing to promptly file public reports with the SEC that are required by Section 13(d) of the Exchange Act and Rule 13d-2." (Opp. at 9). This is precisely the same "scheme" that Judge Quraishi previously considered and found to be non-actionable as a matter of law. *See* Dkt. 223 at 2, 9, 10.

Lead Plaintiff tries to excuse his refusal to follow Judge Quraishi's order by arguing that the TAC merely "clarifies" that Mr. Honig's alleged scheme involves more than "a technical 'Section 13(d) violation' or a 'defective Schedule 13D,'" but also involves a conspiracy to "secretly coordinate his investments in Riot as part of a group in order to artificially inflate the price of the Company's stock—and sell those shares at inflated prices." Opp. at 12. That is a blatant mischaracterization; Lead Plaintiff alleged all of this in his prior complaint,[3] as Judge Quraishi noted in his Opinion.

**B.**    ***The Opposition Improperly Reargues Precisely The Same Theories That Judge Quraishi Rejected.***

Just as the TAC merely repeats the factual allegations from the Consolidated Second Amended Complaint ("**CSAC**") [Dkt. 188] that Judge Quraishi found lacking, the Opposition reargues the same legal theory that Judge Quraishi considered and rejected.

The Opposition's principal argument is that – in direct opposition to Judge Quraishi's ruling – a Section 13 violation <u>can</u> serve as a predicate for a damages claim pursuant to Section 10(b). (Opp. at 13-20). Lead Plaintiff made this argument to Judge

---

[3] *See* CSAC ¶¶ 8, 12, 233, 237, 306, 308, 48-85, 491-92.

Quraishi the last time around, and lost. The Opposition regurgitates exactly the same arguments. Every single one of the cases cited in this section of the Opposition was presented by Lead Plaintiff in the brief it submitted to Judge Quraishi on March 14, 2022.[4] Indeed, almost the entirety of Opposition pages 16-18 is a verbatim cut-and-paste of portions of pages 7-11 of Lead Plaintiff's March 14, 2022 brief.[5] Lead Plaintiff did not seek reconsideration of Judge Quraishi's order while he was still assigned to the case; instead, now that there is a new judge on the bench, Lead Plaintiff is rearguing points that he already lost, and freely admits this tactic.[6] It really is quite outrageous.

Judge Quraishi's ruling that an alleged Section 13 violation may not give rise to a private right of action for damages under Section 10(b) is well-founded and correct for the reasons articulated in his opinion, which we need not repeat here. His holding is a legal conclusion, which cannot be disturbed under the law of the case doctrine, except for "extraordinary circumstances." *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir.1998); *see also U.S. ex rel. Silver v. Omnicare, Inc.*, C.A. No. 11-1326, 2020 WL 7022664 at *3 (D.N.J. Nov. 30, 2020) ("The previous disposition of a motion to

---

[4] The following cases cited in the Opposition can be found in Lead Plaintiff's March 14, 2022 supplemental brief addressing this issue [Dkt. 219] on the page(s) indicated in the parenthetical that follows each caption: *Phillips* (pp. 5, 6); *MTB Investment* (p. 7); *Gruber* (p. 14); *Wey* (p. 8); *Puddu* (pp. 8, 13, 14); *Levie* (p. 10); *Kraft* (p. 8); *Burt* (p. 8); *Amida* (pp. 8-10); *Luxottica* (p. 9); *Rondeau* (p. 9). Judge Quraishi expressly distinguished most of them in his April 2022 Order.
[5] *Compare* Opp. at 14-16 *with* Dkt. No. 219 at 7-11.
[6] Opp. footnote 4 encourages the Court to "reconsider" Judge Quraishi's prior ruling.

dismiss may constitute the law of the case."). Such extraordinary circumstances include instances where: (1) new evidence is available; (2) supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice. *City of Phila.*, 158 F.3d at 718 (further citations omitted). None of those circumstances exist here.

C. **The TAC Remains Devoid Of Any Allegation That Mr. Honig's Disclosures Were A Substantial Cause of Plaintiff's Alleged Loss.**

Similarly, Lead Plaintiff asks the Court to reverse Judge Wolfson's earlier finding that Lead Plaintiff's Corrected Consolidated Amended Complaint in this action (the "**CCAC**" [Dkt. 73]) failed to plead loss causation with respect to Mr. Honig. Judge Wolfson previously found:

> [T]he Complaint is devoid of any allegation that [Mr. Honig's Feb. 13, 2018 disclosure] was a 'substantial cause' of shareholders' economic losses or otherwise contributed in any way to a decline in Riot's stock price. In contrast, the Complaint is replete with allegations that other negative media reports and public disclosures caused precipitous declines in the price of Riot's stock.

April 30, 2020 Opinion [Dkt. 166] at 39. Judge Wolfson dismissed the Section 10(b) claim against Mr. Honig based upon this failure to plead loss causation. *Id.*

The Opposition argues that the TAC "addresses [Judge Wolfson's] concerns by clarifying that the market did not first learn on February 13, 2018, that Honig had previously sold all but 1% of his Riot stock," but rather, those sales were "revealed on January 31, 2018, when *The Wall Street Journal* published an article" reporting on, among other things, Mr. Honig's stock sales. (Opp. at 26-27).

But as meticulously shown by Appendix A to Mr. Honig's Memorandum in Support of his Motion to Dismiss the TAC (the "**Opening Brief**"), there are no material differences between the loss causation allegations that Judge Wolfson found deficient and those which appear in the TAC. Judge Wolfson was well aware of the *Wall Street Journal* article, which she specifically referenced it in her April 30, 2020 Opinion [Dkt. 166] at pp. 8, 39. The TAC's second supposed "clarification" is, once again, no such thing. It simply rehashes an old allegation that was considered and deemed insufficient Judge Wolfson, and we respectfully submit that it would be improper to second-guess Her Honor's reasoned judgment.

D.   *Mr. Honig Was Not Required to Disclose a Non-Existent "Group."*

The TAC incants numerous times about the existence of a collection of investors who invested in Riot, of which Mr. Honig was the alleged "de-facto leader" (Opp. at 36), whose trading was coordinated so as to require disclosure of their "group" status under Section 13(d). The TAC then argues that the alleged members' failure to disclose the group's existence amounted to "wholesale market manipulation." *Id.* at 12.

There's one big problem with this theory: no Section 13 "group" involving Riot shares existed during the Class Period, and thus Mr. Honig had no obligation to disclose that he was a member of any such group. As explained in the Opening Brief, a collection of individual investors who happen to invest in the same company may be deemed a "group" only if all of them: (1) agree to vote their shares in a similar manner, (2) coordinate transactions in the securities, or (3) otherwise act in unison to affect the

-6-

control or management of the issuer. *See Portsmouth Square v. Shareholders Prot. Comm.*, 770 F.2d 866, 874 (9th Cir. 1985).

While the TAC spills much ink describing Mr. Honig's past co-investments with others in several different companies, the TAC does not allege specific facts showing that these persons coordinated transactions or actions to control **Riot** during the Class Period. Allegations of "group" activity in connection with other investments cannot form the basis for an allegation of group activity in regards to Riot. *See e.g., Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 448 (S.D.N.Y. 2001) ("[C]onclusory allegations of fraud and of the Defendants' previous investments . . . cannot serve as the basis for a claimed violation of Section 13(d).").

The non-existence of a definable group can be seen from Lead Plaintiff's nebulous and ever-changing claims about the so-called "group." *First*, Lead Plaintiff cannot decide which individuals are in it. Sometimes, the TAC alleges that the group was a large number of individuals and entities deemed the "Selling Stockholders" in various Forms S-3 and S-3/As; but the persons identified as "Selling Stockholders" varied. *Compare* TAC ¶ 181 *with* TAC ¶ 209. Other paragraphs of the TAC identify the "group" as being only Messers. "O'Rourke, Stetson, and Groussman." TAC ¶ 151. Sometimes Mr. Brauser is in the group and Ms. DeFrancesco is out of it, and vice versa. *Compare* TAC ¶ 149 *with* ¶ 167. In earlier complaints, the "group" sometimes was identified as 23 individuals and entities (*see* CCAC [Dkt. 73] at ¶ 79), but at another

time was just Messrs. Honig, O'Rourke, Groussman, Stetson, DeFrancesco, and Beeghley (*see* CSAC [Dkt. 188] at ¶ 29). Lead Plaintiff plainly cannot even identify who is in the "group" and bandies the word about in hopes that something might stick.

Second, the TAC does not plead <u>what</u> agreement existed between the "group" members (whomever they were), <u>when</u> it was entered into, <u>where</u> it was agreed to, or <u>why</u> any agreement was made.

Third, the TAC does not allege how the members of the amorphous "group" coordinated their transactions in Riot stock, as required to establish the necessity for disclosure under Section 13(d). The TAC does not detail coordinated sales by any of the so-called group members, and the TAC actually <u>deleted</u> previously-alleged facts which showed that alleged "group" members' sales were <u>not</u> coordinated.[7]

Lead Plaintiff's inconsistent and confusing allegations about the so-called "group" of Riot investors render his claim against Mr. Honig implausible and fall far short of the exacting requirements of Rule 9(b) and the PSLRA to plead particularized allegations. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (Rule 9(b) requires a plaintiff to allege the "essential factual background that

---

[7] Citing two examples, the prior SAC alleged that Mr. Honig sold shares on 26 separate occasions from April 20 through September 25, 2017, while former defendants and now-non-parties Groussman and DeFrancesco sold <u>none</u>. [*see* SAC ¶¶ 316, 330, 337]. The SAC also alleged purchases by Mr. Honig during October and November 2017 without alleging any purchases by Groussman or DeFrancesco during those months. [*See id.*]

would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue.").

### E.   *Mr. Honig's Sales Were Disclosed to the Public in Riot's SEC Filings*

The Opposition continues to falsely argue that Mr. Honig "concealed" his sales of Riot stock. He did not. As explained in the Opening Brief, a series of publicly-available Form S-3/A registration statements filed with the SEC between July 2017 and January 2018 show that (a) Mr. Honig and his entity GRQ Consultants, Inc. intended to sell Riot stock, and (b) then actually proceeded to do it. The public filings show that the number of shares that Mr. Honig and GRQ owned at various points in time, and the number of shares they would have left after the contemplated sales. Riot stock held by Mr. Honig and GRQ declined from July to August to September, and that Mr. Honig planned to sell more in a proposed Riot offering.[8] A December 12, 2017 Riot proxy statement listing persons who beneficially owned 5% or more of Riot stock no longer listed Mr. Honig, while the earlier filings listed him as owning over 8%. Riot's January 5, 2018 Form S-3 revealed that Mr. Honig had sold all but 22,222 shares held by GRQ Consultants.[9]

---

[8] See TAC ¶ 181 (April 20, 2017 Form S-3), ¶ 191 (July 19, 2017 Form S-3/A), ¶ 194 (August 24, 2017 Form S-3/A), ¶ 197 (September 25, 2017 Form S-3/A), ¶ 209 (January 5, 2018 Form S-3), ¶ 215 (February 7, 2018 Form S-3/A).

[9] Lead Plaintiff asserts that "[t]he January 5, 2018 Form S-3 did not include Honig in the list of 'selling stockholders' or purport to list his share holdings; rather, it only listed 'GRQ' and its holdings." (Opp. at 19). This is incorrect. Footnote 15 corresponding to GRQ's holdings states that "Barry Honig is the trustee of GRQ Consultants, Inc. In

Anyone who actually was following the public disclosures about Mr. Honig's Riot holdings obviously would see that he was selling. In an effort to explain away the importance of these disclosures, the Opposition bizarrely argues that "investors reading these filings would have no reason to think about Honig—much less contemplate the inferences that could be drawn from his absence." (Opp. at 19). This statement is astoundingly hypocritical when one realizes that Lead Plaintiff's entire case is predicated upon the Court accepting the notion that investors <u>were</u> following Mr. Honig's moves, and were duped into buying Riot stock because (allegedly) Mr. Honig was not disclosing that he was selling.

The absolute baselessness of Lead Plaintiff's case is fully exposed by his <u>admission</u> that even after Lead Plaintiff claims Mr. Honig definitively announced he had sold most of his shares in the *Wall Street Journal* (on January 31, 2018) and in a February 13, 2018 SEC filing, **<u>Lead Plaintiff kept buying Riot shares</u>**. Lead Plaintiff's PSLRA certification filed in this action reveals that he purchased Riot shares on January 31 and February 6, 7, 12, 13, 14, 15, 16, and 21, 2018. (*See* Dkt. 191). This is fatal to Lead Plaintiff's claim that had he known concealed information regarding Mr. Honig's sales he "would not have purchased the Company's securities at the artificially inflated prices that [he] did, or at all." TAC ¶ 275.

---

such capacity he has voting and dispositive power over the securities held by such entity." *See* Weber Decl. Ex. J [Dkt. 234-12].

For all the reasons set forth above, the Count One "Scheme Liability" claim against Mr. Honig should be dismissed.

## II.     THE TAC'S SECOND CAUSE OF ACTION AGAINST MR. HONIG SHOULD AGAIN BE DISMISSED, THIS TIME WITH PREJUDICE.

The TAC's Second Cause of Action for violation of Section 10(b) and Rule 10b-5 concerns the making of allegedly false statements. The Opposition does not deny that all of the material statements made during the Class Period were made by Defendants Riot, O'Rourke or Beeghley, and that only those defendants, as the "makers" and disseminators of the statements, <u>might</u> have any potential liability. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

The Opposition's only retort to this is, frankly, absolutely absurd. The Opposition notes that in response to a CNBC reporter's loaded question of "do you still manipulate stocks?", Mr. Honig responded, "no," – a one word statement which Lead Plaintiff incredibly argues is itself a fraudulent statement. (Opp. at 21).

***Is Lead Plaintiff for real?*** This is like trying to use the ancient "are you still beating your wife?" joke to form the basis of a fraud lawsuit. Obviously, there is no support in the law for this,[10] but the facts don't jibe with this theory, either. By the time Mr. Honig made this statement he had publicly announced that he had sold off his Riot

---

[10] The lone case cited in the Opposition, *Paxton v. Provention Bio, Inc.,* C.A. No. 3:21-cv-11613, 2022 WL 3098236 at *10 (D.N.J. Aug. 4, 2022), stands only for the unremarkable principle that when a company makes disclosure on a topic it must not omit material information. It is nothing like the situation here, where Mr. Honig simply denied a reporter's "gotcha" loaded question.

shares, and the stock had experienced most of its price decline. The TAC offers no evidence that Mr. Honig "manipulated" Riot's stock at any time, and certainly not after he sold. That Lead Plaintiff would offer such a ludicrous argument reveals just how baseless his claim is. It should be dismissed.

## III.   THE TAC'S SECTION 20(a) CAUSE OF ACTION AGAINST MR. HONIG SHOULD AGAIN BE DISMISSED, THIS TIME WITH PREJUDICE.

Judges Wolfson and Quraishi both dismissed Lead Plaintiff's prior Section 20(a) claims against Mr. Honig[11] for good reason – the prior complaints failed to allege an underlying violation of securities laws, and more significantly, did not allege a single fact even hinting that Mr. Honig actually controlled any of the actions taken by Riot's management as described in the TAC.

The TAC offers no new factual allegations concerning Mr. Honig's control. To the contrary, the Opposition highlights that the TAC's allegations are precisely the same ones that Judge Quraishi considered, and rejected, when he dismissed the CSAC. The Opposition asserts that Mr. Honig was "the de-factor [sic] leader" of a so-called "undisclosed control group," and cites several dozen paragraphs in support. (Opp. at 36). But none of these paragraphs are new; many are copied verbatim from the CSAC, while others are just slightly word-smithed from the CSAC version.[12] Further, an actual

---

[11] Opinion [Dkt. 166] at pp. 40-41; Opinion [Dkt. 223] at p. 20.

[12] *Compare* TAC ¶ 187 & n. 62 *with* CSAC ¶ 351 & n. 78; TAC ¶ 193 & n. 64 *with* CSAC ¶ 364 & n. 80; TAC ¶ 196 & n. 65 *with* CSAC ¶ 368 & n. 80; TAC ¶ 199 & n. 66 with CSAC ¶ 371 & n. 80; TAC ¶ 84 *with* CSAC ¶ 168; TAC ¶¶ 85-91 with CSAC

reading of the paragraphs cited in the Opposition reveals that <u>none</u> of them describe how Mr. Honig supposedly exerted "control" over any action taken by Riot. All of the facts flagged in the Opposition were considered by Judge Quraishi when he dismissed Lead Plaintiff's Section 20(a) claim.

Merely noting that Mr. Honig and some people he knew owned Riot stock is not nearly enough to sufficiently allege that Mr. Honig <u>controlled</u> Riot's actions. "A claim under Section 20(a) must state with particularity the circumstances of the defendant's control of the primary violator." *VT Investors v. R & D Funding Corp.,* 733 F. Supp. 823, 841 (D.N.J. 1990) (*Monk v. Johnson & Johnson, C.A.* No. 10–4841 (FLW), 2012 WL 1884037, *2 (D.N.J. May 22, 2012) (same). "In order to establish controlling person liability under [Section 20(a)], a defendant must possess 'actual control over the transactions in question.'" *In re Digital Island Sec. Litig.*, 223 F.Supp.2d 546, 563 (D. Del. 2002) (citation omitted).

Further, the few truly new allegations in the TAC affirm that Defendants O'Rourke and Beeghley (not Mr. Honig) were the people who controlled Riot. *See, e.g.*, TAC ¶ 109 ("Starting in April 2017, the Company (under the control of O'Rourke and Beeghley) issued six Registration Statements . . . ."); ¶ 113 ("O'Rourke caused the Company to affirmatively misrepresent Honig's relationship with Riot."); ¶ 115

---

¶¶ 169-176; TAC ¶ 145 *with* CSAC ¶ 146; TAC ¶ 145 *with* CSAC ¶ 253; TAC ¶ 147 *with* CSAC ¶ 317; and TAC ¶ 13 *with* CSAC ¶ 23.

("O'Rourke and Beeghley had an affirmative duty to disclose . . . ."); ¶ 153 ("O'Rourke and Beeghley caused the Company to issue materially false and misleading Forms S-3 and S-3/A, Forms 8-K, and other public filings."); ¶ 167 ("[T]he Company, under the management and direction of O'Rourke and Beeghley (serving as CEO, Chairman, and Director) issued public filings with the SEC . . . that misrepresented and concealed material facts . . . ."). Of course it makes total sense that O'Rourke and Beeghley controlled Riot's conduct, as they (not Mr. Honig) were the company's CEOs.

The shamefully transparent edits that Lead Plaintiff made in his effort to loop Mr. Honig into the Section 20(a) claim is a prime example of his pervasive wordsmithing without adding any of the requisite factual particularly. In the earlier CSAC, Lead Plaintiff led off his Section 20(a) cause of action with this:

> During the Class Period, ***Defendants O'Rourke and Beeghley participated*** in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. (SAC ¶ 500) (emphasis added)

In the TAC, Lead Plaintiff claims to have "substantively" amended that, to this:

> During the Class Period, ***Defendants participated*** in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. (TAC ¶ 279) (emphasis added)

See what Lead Plaintiff did there? He simply deleted three words, added no specific allegations pertaining to outside investor Mr. Honig, and then used this conclusory verbiage to assert that he controlled Riot alongside Riot's CEOs. Sorry, but linguistic

sleight-of-hand is no substitute for the factual particularity required to adequately plead a Section 20(a) claim. *See Berry v. Coleman*, 172 Fed. App'x 929, 932 (11th Cir. 2006) ("'[C]onclusory allegations and unwarranted deductions of fact are not admitted as true.' . . . particularly . . . when the conclusory allegations contradict the other facts alleged in the complaint.").

<u>**CONCLUSION**</u>

For the foregoing reasons, in addition to those articulated in his Opening Brief and in the April 30, 2020 and April 8, 2022 Opinions, Mr. Honig respectfully asks the Court to grant his motion to dismiss the TAC. Because further leave to amend would be futile, Mr. Honig asks that the dismissal be made with prejudice.

Respectfully submitted,

Dated: October 3, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 653-8700

By: /s/ *Tyler E. Baker*
Tyler E. Baker, Esq. (NJ Bar No. 44392011)
tbaker@sheppardmullin.com
Christopher Bosch (*pro hac vice*)

Robert D. Weber (*pro hac vice*)
1901 Avenue of the Stars, 16th Fl.
Los Angeles, CA 90067
(310) 228-3700

*Attorneys for Defendant Barry C. Honig*