## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>    v.<br><br>RIOT BLOCKCHAIN, INC., *et al.*,<br><br>            Defendants. | Civil No. 3:18-CV-02293(GC)(RLS)<br><br>MOTION DATE:  October 17, 2022<br><br>**ORAL ARGUMENT REQUESTED** |

## REPLY MEMORANDUM IN SUPPORT OF RIOT BLOCKCHAIN, INC.'S MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED THIRD AMENDED CLASS ACTION COMPLAINT

THOMAS A. ZACCARO
*thomaszaccaro@paulhastings.com*
D. SCOTT CARLTON
*scottcarlton@paulhastings.com*
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, California 90071-2228
Telephone:  1(213) 683-6000
Facsimile:  1(213) 627-0705

CHAD J. PETERMAN
*chadpeterman@paulhastings.com*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
Telephone:  1(212) 318-6000
Facsimile:  1(212) 319-4090

*Attorneys for Defendants*
*RIOT BLOCKCHAIN, INC., JOHN O'ROURKE, AND MICHAEL BEEGHLEY*

Table of Contents

Page

I.     INTRODUCTION .........................................................................1

II.    ARGUMENT...............................................................................2

       A.   The TAC Does Not Allege Facts to Show a Duty to Disclose a
            Section 13(d) Group. .............................................................2

       B.   The TAC Does Not Allege Facts Giving Rise to a Duty to
            Disclose Honig as a Related Party. ......................................7

       C.   Generalized and Vague Statements Are Not Actionable. ................10

       D.   Lead Plaintiff's Opposition Does Not Revive the TAC's Loss
            Causation Allegations. .......................................................13

III.   CONCLUSION..........................................................................15

Table of Authorities

Page(s)

CASES

*De La Fuente v. DCI Telecomms., Inc.*,
   259 F. Supp. 2d 250 (S.D.N.Y. 2003) ................................................................5

*Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) ...............................................................................13

*In re Bradley Pharms., Inc. Sec. Litig.*,
   421 F. Supp. 2d 822 (D.N.J. 2006) .....................................................................15

*In re Bristol-Meyers Squibb Sec. Litig.*,
   2005 WL 2007004 (D.N.J. Aug. 17, 2005) ........................................................14

*In re Cybershop.com Sec. Litig.*,
   189 F. Supp. 2d 214 (D.N.J. 2002) .....................................................................13

*In re Gen. Motors Class E Stock Buyout Sec. Litig.*,
   694 F. Supp. 1119 (D. Del. 1988) .........................................................................7

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
   1993 U.S. Dist. LEXIS 5333 (E.D. Pa. Apr. 21, 1993) .....................................11

*In re Intelligroup Sec. Litig.*,
   468 F. Supp. 2d 670 (D.N.J. 2006) .....................................................................13

*In re Mutual Funds Investment Litigation*,
   566 F.3d 111 (4th Cir. 2009) ..............................................................................13

*In re Sanofi-Aventis Sec. Litig.*,
   774 F. Supp. 2d 549 (S.D.N.Y. 2011) ..................................................................8

*Kang v. PayPal Holdings, Inc.*,
   2022 WL 3155241 (N.D. Cal. Aug. 8, 2022) .....................................................13

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ...............................................................................14

*Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*,
   363 F. Supp. 3d 476 (D. Del. 2019) ....................................................................13

Table of Authorities

Page(s)

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) ..................................................................1, 2, 3, 7

*Oregon Public Employees Retirement Fund v. Apollo Group Inc.*,
  774 F.3d 598 (9th Cir. 2014) ..............................................................13

*Powell v. Verizon*,
  2019 WL 4597575 (D.N.J. Sept. 20, 2019)...........................................7

*Salvani v. ADVFN PLC*,
  50 F. Supp. 3d 459 (S.D.N.Y. 2014), *aff'd sub nom. Salvani v.*
  *InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015).................14

*SEC v. Conaway*,
  698 F. Supp. 2d 771 (E.D. Mich. 2010) ...............................................10

*SEC v. Honig*,
  2021 WL 276155 (S.D.N.Y. Jan. 27, 2021) ..........................................3, 4, 5, 15

*SEC v. Lee*,
  720 F. Supp. 2d 305 (S.D.N.Y. 2010) ..................................................5

*Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*,
  475 F.3d 824 (7th Cir. 2007) ..............................................................13

*Unite Here v. Cintas Corp.*,
  2006 WL 2859279 (S.D.N.Y. Oct. 6, 2006).........................................9

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) .............................................................4

*Veal v. LendingClub Corp.*,
  423 F. Supp. 3d 785 (N.D. Cal. 2019)..................................................13

STATUTES

15 U.S.C. § 78m...................................................................................4

Table of Authorities

Page(s)

REGULATIONS

17 C.F.R.
§ 229.404.................................................................................................9
§ 229.404(a)............................................................................................9

## I.  __INTRODUCTION__

The Opposition to Riot's Motion to Dismiss (the "Opposition" or "Opp.") demonstrates that Lead Plaintiff has failed yet again to set forth a viable theory for liability for his Section 10(b) claims.[1]  *First*, the Opposition proves that Lead Plaintiff cannot allege, under the test established by the Third Circuit, that Item 403 and Item 404 of Regulation S-K legally and independently give rise to an "affirmative duty of disclosure" for purported Section 13(d) groups and related party transactions.  *Oran v. Stafford*, 226 F.3d 275, 287 (3d Cir. 2000).  Such a failure is fatal, as this Court has now twice emphasized (on almost identical allegations) that, without it, Lead Plaintiff cannot state a claim.  (Dkt. 166 at 20, 17; Dkt. 223 at 22.)

*Second*, in an attempt to manufacture a duty of disclosure, Lead Plaintiff relies on generalized statements regarding the absence of material relationships with and agreements between Riot's stockholders in the Company's Forms S-3. Lead Plaintiff alleges that such statements were false and, thus, a duty to disclose arose under Items 403 and 404 from that alleged prior misstatement.  Not only is this theory not alleged in Lead Plaintiff's complaint (*see, e.g.*, TAC ¶¶ 187, 190,

---

[1] Unless otherwise indicated, Riot utilizes the same defined terms as used in the opening Motion.

204 (hinging duty solely on the regulations)), but the Court already ruled these *exact statements* in the *exact Forms S-3* as nonactionable.  (Dkt. 166 at 18.)

*Third*, and regardless, Lead Plaintiff has not alleged sufficient facts to lead to a plausible inference that any of the purported misstatements and omissions are false or misleading, even if a duty to disclose existed.  Indeed, the Opposition underscores that Lead Plaintiff has added virtually no allegations in his fourth version of his pleading to support (1) the existence of purported Section 13(d) groups and (2) Honig's legal relatedness in certain transaction.  Absent such facts—and absent any showing of duty—Lead Plaintiff is left with the same untenable complaint that has already been twice dismissed by this Court.  The Court should thus dismiss the TAC with prejudice.

## II.   <u>ARGUMENT</u>

### A.   **The TAC Does Not Allege Facts to Show a Duty to Disclose a Section 13(d) Group.**

After failing several times to conjure up or re-package a viable theory for Riot's purported failure to disclose a Section 13(d) group, Lead Plaintiff makes another fleeting attempt to demonstrate an affirmative duty of disclosure premised on Item 403.  (Opp. at 25-30.)  Lead Plaintiff concedes that the analysis set forth by the Third Circuit in *Oran* governs the inquiry, including that a violation of Regulation S-K "does not automatically give rise to a private right of action" and

that a separate duty must be shown. (*Id.* at 27.) Yet, Lead Plaintiff suggests, contrary to *Oran*, an omission under Item 403 is automatically material and thus a basis for a 10b-5 claim. Lead Plaintiff's contention lacks merit for several reasons.

First, Lead Plaintiff mischaracterizes the Court's April 8, 2022 Opinion and *Oran*, arguing that Riot had a duty to disclose the purported group under Item 403 "which is a 'regulation impos[ing] an affirmative duty of disclosure that, if violated, would constitute a material omission under Rule 10b-5.'" (*Id.*) However, both the April 8 Opinion and *Oran* stated that a plaintiff must *establish* such an affirmative duty, not that Item 403 automatically imposes a duty of disclosure.[2] As Riot explained in its Motion, an isolated violation of Item 403 does not give rise to such claim because Item 403 and Rule 10b-5 have disparate materiality considerations under *Oran*. (Mot. at 23.)

To refute this, Lead Plaintiff relies on cases, outside of the Third Circuit, that purportedly concluded that the fact that information is required to be disclosed under Section 13(d) is "evidence" of its materiality. (Opp. at 29.) However, it is this line of case law, which contemplates an implied private right of action under 10b-5 for a Section 13(d) violation, that this Court rejected in its April 8 Opinion.

---

[2] (*See* Dkt. 223 at 21 ("*in order to show liability under Section 10(b)* for other Regulation S-K items, a plaintiff must first establish that . . . the regulation imposes an affirmative duty of disclosure that, if violated, would constitute a material omission under Rule 10b-5.) (emphasis added)); *Oran*, 226 F.3d at 287.

(Dkt. 223 at 10-22.)  In fact, the Court expressly found that Lead Plaintiff's reliance on *SEC v. Honig*, 2021 WL 276155, at *6 (S.D.N.Y. Jan. 27, 2021), did "not provide any inference of a private right under 403(a)."[3]  (*Id*. at 21.)

Second, Lead Plaintiff contends that a duty to disclose arose because Riot had made "inaccurate, incomplete or misleading prior disclosure[s]," despite not alleging as such in the TAC.  (Opp. at 26.)  For instance, Lead Plaintiff argues that Riot falsely stated that it had no "agreements, arrangements or understandings with respect to the sale of any of their shares."[4]  (*Id*.)  But the argument necessarily begs the question:  Does the TAC contain particularized facts establishing the existence of an agreement that would give rise to a Section 13(d) group that requires disclosure under Item 403?

The answer to that question is undoubtedly no.  As Riot explained in detail in its Motion (Mot. at 24-31), which Lead Plaintiff entirely ignores, the TAC is utterly devoid of any allegations regarding any activity by Honig and the Selling Stockholders that would demonstrate that they acted as a group "for the purpose of acquiring, holding, or disposing of securities" of Riot.  15 U.S.C. § 78m.  Rather,

---

[3] Regardless, *United States v. Bilzerian* "decline[d] to hold that the information . . . is material *per se* for purposes of § 10(b) simply because such disclosure is required under the securities laws."  926 F.2d 1285, 1298 (2d Cir. 1991).

[4] Lead Plaintiff also offers that Riot's duty arose because Honig and the other Selling Stockholders "were engaged in massive undisclosed sales of Riot stock." (Opp. at 30.)  This confuses Riot's obligations with those of the investors.

Lead Plaintiff relies on allegations that do not actually reveal anything regarding any purported group activity at Riot and, more importantly, do not *legally* give rise to a Section 13(d) group under the pleading standards imposed by the Reform Act.

In sum, Lead Plaintiff relies on allegations (1) of purported coordinated investments by Honig and other Selling Stockholders in companies *other than Riot* in years well prior to the class period; (2) of group activity in other issuers borrowed from *SEC v. Honig* and that do not meet the Reform Act's pleading requirements;[5] (3) of personal relationships prior to the class period, often taken from *SEC v. Honig*;[6] and (4) that Honig and DeFrancesco worked together, prior to the class period, not to coordinate stock, but to nominate certain individuals to Riot's Board and that those individuals used the same fax number.[7] (Opp. at 4-7; Mot. at 26-28.)  None of these allegations give rise to a plausible inference that a

---

[5] In opposition to the Individual Defendants' motion, Lead Plaintiff argues that it is not improper to rely on allegations from an SEC complaint and cites authority. (Dkt. 239 at 21.)  This authority is not helpful to Lead Plaintiff, as the SEC complaints relied on by the private plaintiffs in those cases were against the same defendants *for the same conduct*.  *SEC v. Lee*, 720 F. Supp. 2d 305, 340 (S.D.N.Y. 2010); *De La Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 260 (S.D.N.Y. 2003).  Lead Plaintiff cannot use irrelevant conduct unrelated to Riot from an SEC complaint to jump to the conclusion that a fraudulent scheme was also carried on at Riot without any allegations that support that assumption.

[6] Even Lead Plaintiff's use of O'Rourke's purported quote that "Barry Honig is the principal investor of our small group" was from 2014 (years before the class period), related to companies other than Riot, and was adopted from the SEC's complaint.  (TAC ¶ 55.)

[7] Lead Plaintiff's reliance on Honig's statement that he had control of 40% of the company through his stock ownership with his "friends and family" was made

group *at Riot* was formed for the purpose of *acquiring Riot stock.*

If there was any doubt, the weakness of Lead Plaintiff's allegations is confirmed by a comparison to the very SEC complaint that Lead Plaintiff attaches to his pleading.  (TAC Ex. C.)  The SEC sets forth allegations regarding each member of the alleged group's agreement and participation in the group's coordinated investment activities *of the company at issue in the complaint*, including referencing communications demonstrating an agreement or understanding regarding such activities and allegations of coordinated trades.  (*See, e.g., id.* ¶¶ 76-80, 94-96 109, 143-44.)  No such allegations are made here.[8] Without stating facts that lead to a plausible inference of an understanding to coordinate investments in Riot (or even allegations of the coordinated investments themselves), Lead Plaintiff has not alleged that Riot's statement in its Forms S-3 that no agreements existed were false or misleading.  This failure in turn undermines Lead Plaintiff's theory regarding Riot's affirmative duty under Item 403—and indeed, the factual issue of whether a Section 13(d) group even existed.

---

before the class period in 2016 and does not identify who those friends or family were, whether they maintained that alleged ownership during the class period, or how, if at all, such statement is connected to any purported conduct of the Selling Stockholders.  (Opp. at 6.)

[8] The TAC is almost completely devoid of any allegation of coordinated trades. Moreover, Lead Plaintiff's theory regarding O'Rourke's knowledge of the group hinges on the same allegations of "*modus operandi*" and personal relationships that are inadequate under the Reform Act.  And Beeghley's knowledge is simply not alleged apart from a meager mention of his position at Riot.  (TAC ¶ 86.)

**B.      The TAC Does Not Allege Facts Giving Rise to a Duty to Disclose
         Honig as a Related Party.**

Lead Plaintiff does not challenge, and thereby concedes, that Item 404 and

Item 1.01 of Form 8-K do not give rise to a duty to disclose under Rule 10b-5.[9]

(Opp. at 33.)  Instead, Lead Plaintiff simply assumes, without support, that Riot

had that duty and that failures to disclose Honig's and the Selling Stockholders'

investor status in certain transactions were material omissions.  Lead Plaintiff

bases his position on: (1) Honig's stock sales; (2) Honig's purported personal

relationships with O'Rourke and Beeghley; and (3) the decline in Riot's stock

price around the time Honig's alleged interests in the Kairos and Coinsquare

transactions were disclosed.  (*Id.*)  Setting aside that Lead Plaintiff glosses over

whether a duty existed under *Oran*, none of these points moves the needle.

First, as explained *supra*, the TAC alleges no facts to support that O'Rourke

or Beeghley knew of Honig's investment activity.  To the contrary, the TAC states

that Honig hid his stock sales and did not disclose them on a Schedule 13D (and

thereby, to Riot) until April 2018.[10]  (TAC ¶ 102, n. 35.)  Second, Lead Plaintiff

cannot hinge Riot's duty to disclose or materiality on a subsequent drop in Riot's

---

[9] *Powell v. Verizon*, 2019 WL 4597575, at *9 (D.N.J. Sept. 20, 2019) ("A
plaintiff concedes a claim when she fails to oppose arguments in support of
a motion to dismiss. . . .").

[10] It strains credulity to assert that sales by an individual (who is not even an
insider) could give rise to a duty on behalf of Riot to disclose certain individuals as
related parties.  *In re Gen. Motors Class E Stock Buyout Sec. Litig.*, 694 F. Supp.

stock price using the benefit of hindsight.[11]   Third, Lead Plaintiff cannot rely on

"long-standing ties" between Honig, O'Rourke, and Beeghley to demonstrate that

Honig was a "related party" that *legally* required disclosure pursuant to Item 404.

Such reliance only emphasizes Lead Plaintiff's misunderstanding regarding what

type of circumstances trigger the related party disclosures under the regulation.

Indeed, Lead Plaintiff challenges Riot's argument that Honig's interest in the

Kairos and Coinsquare transactions were limited to *indirect* interests based on his

less than 10% investment interests in each company.  (Opp. at 31.)  The

Opposition, however, fails to demonstrate what direct interest Honig or the Selling

Stockholders had as shareholders of Kairos and Coinsquare in transactions Riot

engaged in with Kairos and Coinsquare.  (*Id*.)  While the shareholders of those

companies were implicated in the transactions (as they are in many major business

transactions), this does not transform their interest into a direct interest.  Rather,

Item 404's Instructions explicitly contemplate this sort of arrangement, specifying

that a person who has a relationship with the firm with which the registrant is

transacting due to a 10% or less interest in that firm has an *indirect interest* that is

---

1119, 1129 (D. Del. 1988) ("An insider who trades on material information has a
duty to disclose that information[.]").  Nor does Lead Plaintiff connect any stock
sales by O'Rourke or Beeghley to such alleged related party transactions.

[11] *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 565 n.15 (S.D.N.Y. 2011)
("The omission of facts that may be material or significant by hindsight does not
render their omission at a prior time misleading.").

not required to be disclosed.[12]  Lead Plaintiff points to no authority that holds *all*

shareholders of a company, regardless of how insignificant their interests, that

receive shares or payouts as a result of a transaction (*e.g.*, an acquisition) with a

registrant in which they are also invested must be disclosed.[13]  Such a result would

place an undue burden on registrants and would serve little purpose to investors.[14]

The only *direct* interest that Lead Plaintiff has identified in the TAC is the

$50,000 consulting fee that Honig received related to the Coinsquare transaction.

This, of course, does not change the outcome because it does not meet Item 404's

monetary threshold of $120,000.  (Mot. at 15.)

Regarding the March 2017 Private Placement, Lead Plaintiff simply argues

that Item 1.01 requires the identity of the party to the agreement to be disclosed

such that an omission thereof is automatically a Rule 10b-5 violation.  (Opp. at 33-

34.)  However, as Riot explained in its Motion, instructions to an SEC form do not

give rise to an affirmative duty of disclosure.  (Mot. at 20, n. 19.)  At minimum,

---

[12] *See* 17 C.F.R. § 229.404; *see also Unite Here v. Cintas Corp.*, 2006 WL
2859279, at *6 (S.D.N.Y. Oct. 6, 2006).

[13] As a result, Lead Plaintiff's focus on the value of the shares Honig and
DeFrancesco received related to the transaction is irrelevant, as the threshold
requirement for Item 404 focuses on the percentage interest in the entity receiving
money from the registrant.  17 C.F.R. § 229.404(a).

[14] While Riot later disclosed additional information regarding these transactions,
that disclosure does not impact whether Item 404 or Item 1.01 mandate disclosure
of Honig by name.  It also certainly does not establish that Riot "understood all
along that Honig was a related person."  (Opp. at 32.)

"because not all of the information that Item [1.01] requires to be disclosed meets the higher standard of materiality of *Basic, Inc.*, failure to disclose those less significant matters may be a violation of [Item 1.01], but they would not constitute a 10b-5 violation." *SEC v. Conaway*, 698 F. Supp. 2d 771, 838 (E.D. Mich. 2010). Notably, Lead Plaintiff offers no challenge to Riot's argument or authority demonstrating that Honig's identity is not material and did not require disclosure as a matter of law. (Mot. at 17, 22; *see generally* Opp.)

Finally, Lead Plaintiff argues that Riot's disclosure of Honig as the lead investor was misleading because he was the only investor in the private placement. (Opp. at 34.) In actuality, Honig *was* the lead investor, along with another entity.[15]

### C.    Generalized and Vague Statements Are Not Actionable.

Without the backing of the Item 403, 404, and 1.01 violations, the remainder of Lead Plaintiff's theories for liability crumble. First, Riot's statement that "[t]he selling stockholders may not sell or otherwise dispose of any or all of the shares offered by this prospectus" was not false because (1) no agreement is alleged; (2)

---

[15] While the entity was related to Honig, it is *legally* separate from Honig (as dictated by established principles of corporate law) and the language referring to "investors" in the Form S-3 simply reflects this legal reality. (Declaration of Daniel Scott Carlton in Support of Riot Defendants' Reply Memorandums ("Carlton Reply Decl.") Ex. C.) Likewise, the statement that "no other investor has the ability to waive conditions for the escrow release" is not false because only Honig had that ability and is not misleading because Honig and his entity were the investors in the private placement. (*Id.*)

the statement simply lists potential outcomes; and (3) the TAC does not establish that O'Rourke or Beeghley knew that *some or all* of the stockholders would sell.[16]

Second, Riot's statement in its Forms S-3 that "none of the selling stockholders had material relationships with [Riot]" was not false because the remainder of that sentence clarifies that such relationship would only arise "other than as a result of the ownership of [Riot's] shares[.]"  (TAC ¶¶ 211-13.)  Lead Plaintiff argues the relationship arose from the Coinsquare, Kairos, and private placement transactions.  (Opp. at 20.)  Even if Honig were required to be disclosed as a related party to those transactions (he was not), this statement would still not be false.  As Lead Plaintiff admits, Honig's relatedness in those transactions would not exist without his alleged ownership in Riot.  (TAC ¶ 105.)  As a result, Riot's reference to Honig's "prior substantial relationship with the Company" is not in conflict with the statement that none of the shareholders had "material relationships with" Riot "other than as a result of the ownership of" Riot.  In the former statement, Riot was simply referencing Honig's prior investments in Riot (as disclosed in its Forms S-3).  Such ownership did not qualify as a "material

---

[16] Lead Plaintiff argues that sales actually occurred.  But Lead Plaintiff has not established that O'Rourke and Beeghley knew the investors would sell *at the time the statement was made*.  *See In re Goodyear Tire & Rubber Co. Sec. Litig.*, 1993 U.S. Dist. LEXIS 5333, at *57 (E.D. Pa. Apr. 21, 1993).  In fact, Lead Plaintiff alleges that "Honig's stock sales were not disclosed until he filed his April 18, 2018 Schedule 13D/A."  (TAC ¶ 147.)

relationship" requiring additional explanation on Riot's Forms S-3.

Third, Lead Plaintiff argues that the TAC offers a different theory of falsity for a different set of SEC filings.[17]  (Opp. at 21.)  Not so.  Lead Plaintiff alleges the **exact same allegations and set of Forms S-3 as were dismissed by Judge Wolfson**.  (*Compare* TAC ¶¶ 181-99, 215-17 *with* CCAC (Dkt. 73) ¶¶ 210-12, 220-21, 225-26, 230-31, 309-11, 322-324; *see also* Dkt. 166 at 18.)  In his prior dismissed complaint, Lead Plaintiff alleged that the "material relationships" statement was misleading due to Honig's "undisclosed investment in Coinsquare" and "Kairos" just as he alleges here.[18]  (CCAC ¶¶ 311, 324; *see also* Opp. at 21.)

Lastly, Lead Plaintiff relies on O'Rourke's statements published in a CNBC article and letter regarding Riot's commitments to SEC filing requirements.  (Opp. at 23-25.)  However, these statements suggest, at most, a goal for complying with obligations (*e.g.*, "[w]e support full disclosure" (Opp. at 25)), which "are the kind of corporate puffery that are rarely (if ever) actionably misleading."[19]  *Kang v.*

---

[17] Despite the allegations in the TAC, Lead Plaintiff now argues that only the January and February 2018 Forms S-3 are false and misleading.  (Opp. at 21.)

[18] Regarding the Forms S-3 in 2017, Lead Plaintiff maintains his dismissed theory that the statements were misleading because of the purported Section 13(d) group.  (*Compare* TAC ¶¶ 181-99 *with* CCAC ¶¶ 214, 224, 229, 234; Dkt. 166 at 18.)

[19] Moreover, the TAC demonstrates that Riot *did* diligently file all reports—*e.g.*, disclosing the Coinsquare, Kairos, and Private Placement transactions.  (TAC ¶¶ 173, 200, 206.)  Lead Plaintiff's attempt to point to Honig's reporting obligations as to why these statements were misleading is nonsensical.  (Opp. at 25.)  Such obligation was Honig's (not Riot's).

*PayPal Holdings, Inc.*, 2022 WL 3155241, at \*10 (N.D. Cal. Aug. 8, 2022).[20]

> **D.  Lead Plaintiff's Opposition Does Not Revive the TAC's Loss Causation Allegations.**

The TAC also does not adequately plead loss causation.[21]  First, the January 31, 2018 *Wall Street Journal* article regarding Honig's sale of Riot stock and the news regarding Riot's annual meeting cannot be a corrective disclosure even under Lead Plaintiff's materialization of the risk theory.  The risk that there would be a drop in stock price following a major shareholder's sale of Riot stock is not associated with the alleged misrepresentations about Section 13(d) groups and related parties.  Put another way, such an event risks a change in stock price

---

[20] *See also Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 487 (D. Del. 2019) (statements that company has "a robust compliance driven culture," a "very, very strong compliance culture," "demonstrated compliance culture," and "rigorous training programs" were puffery); *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 804 (N.D. Cal. 2019) (statement about company's "relentless focus on compliance" was puffery); *Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) (declaring "general statements about reputation, integrity, and compliance with ethical norms" to be "puffery").

[21] While there is a circuit split, the majority of circuits have applied Rule 9(b) to loss causation.  *See, e.g., In re Mutual Funds Investment Litigation*, 566 F.3d 111, 119-20 (4th Cir. 2009) *rev. on other grounds Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011); *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 842 (7th Cir. 2007); *Oregon Public Employees Retirement Fund v. Apollo Group Inc.*, 774 F.3d 598, 605 (9th Cir. 2014).  Courts in this district have held plaintiffs to the Reform Act for loss causation.  *See In re Cybershop.com Sec. Litig.*, 189 F. Supp. 2d 214, 233 (D.N.J. 2002); *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 703 (D.N.J. 2006).

regardless of whether any false statements were made.[22]  The connection between the sale and any purported misrepresentation by Riot is far too tangential.[23]

Second, the February 16, 2018 CNBC article cannot be a corrective disclosure because Riot never had any obligation to disclose any personal ties to "Honig, Kesner, Paradox, Kairos, and Laxague."  (Opp. at 36.)  More notably, the alleged "corrective disclosures" were taken directly from Riot's previous disclosures and, thus, were not concealed.  (TAC ¶ 131 ("***Riot's filings*** reveal . . ."), (". . . ***according to SEC filings***."), ("in the footnotes of ***Riot's filings***.").)

Third, Lead Plaintiff argues that the truth was not revealed by the February 17, 2018 complaint, and thus the April 17, 2018 Form 10-K could still be a corrective disclosure, because it did not reveal the same exact facts as purportedly misrepresented by Riot.  (Opp. at 37.)  But as Lead Plaintiff's cases explain, the disclosure need not be a mirror linguistic image of the fraud; it need only be congruent.  *In re Bristol-Meyers Squibb Sec. Litig.*, 2005 WL 2007004, at *18-20

---

[22] Honig filed his Schedule 13D/A disclosing his 2017 stock sales on April 18, 2018 (TAC ¶ 102, n. 35), so this article—discussing Honig's sales in January 2018—was not a corrective disclosure for even Honig's failures.  (Opp. at 36.)

[23] *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005) ("if the connection is attenuated, or if the plaintiff fails to 'demonstrate a causal connection between the *content* of the alleged misstatements or omissions and the harm actually suffered,' . . . a fraud claim will not lie.") (emphasis added); *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 475 (S.D.N.Y. 2014), *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015) (events must be a foreseeable risk from the fraud).

(D.N.J. Aug. 17, 2005).  Because the February 17, 2018 complaint details allegations relating to Kairos and Honig, it nullifies the April 17, 2018 filing regarding corresponding facts relating to Kairos and Honig.[24]

Fourth, the May 25, 2018 disclosure did not correct any misrepresentations because Riot was never obligated to disclose Honig or other Selling Stockholders as less than 10% shareholders in Coinsquare under Item 404.

Fifth, Lead Plaintiff argues that the September 7, 2018 complaint was a corrective disclosure, despite being unrelated to Riot.  (Opp. at 39.)  Lead Plaintiff cannot reasonably argue that a complaint detailing conduct that occurred at an entirely separate company corrected any purported misrepresentations by Riot.[25]

III.  **CONCLUSION**

For the reasons stated above and in the Motion, Riot respectfully requests that the Court dismiss Lead Plaintiff's TAC with prejudice.

---

[24] Of course, Riot had already identified Honig as the related party in the March 2017 Private Placement and the Coinsquare and Kairos transactions did not require disclosure of Honig under Item 404.  (Declaration of Daniel Scott Carlton in Support of Riot Defendants' Motions to Dismiss ("Carlton MTD Decl.") Ex. C.)

[25] Indeed, Lead Plaintiff's case law only emphasizes such point.  In *In re Bradley Pharms., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 828 (D.N.J. 2006), the SEC inquiry was explicitly related to the sham transaction that allegedly occurred and was concealed by the defendant.  Here, of course, that is not the case.  *SEC v. Honig* cannot be a corrective disclosure, regardless of whether it affected Riot's stock.

DATED:      October 3, 2022              PAUL HASTINGS LLP


                                         By: /s/ *Chad J. Peterman*
                                              CHAD J. PETERMAN

                                         *chadpeterman@paulhastings.com*
                                         200 Park Avenue
                                         New York, NY 10166
                                         Telephone:  1(212) 318-6000
                                         Facsimile:  1(212) 319-4090


                                         THOMAS A. ZACCARO
                                         *thomaszaccaro@paulhastings.com*
                                         D. SCOTT CARLTON
                                         *scottcarlton@paulhastings.com*
                                         515 South Flower Street, 25th Floor
                                         Los Angeles, CA 90071-2228
                                         Telephone:  1(213) 683-6000
                                         Facsimile:  1(213) 627-0705

                                         Attorneys for Defendants
                                         RIOT BLOCKCHAIN, INC.,
                                         JOHN O'ROURKE, AND MICHAEL
                                         BEEGHLEY