

570 Broad Street / Suite 1201 / Newark, NJ 07102
973.623.3000 Main / 973.623.0858 Fax / litedepalma.com

Newark / Philadelphia

October 11, 2022

**VIA ECF**
Honorable Georgette Castner, U.S.D.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Federal Building & United States Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    *Takata v. Riot Blockchain, Inc., et al.*
               **Civil Action No. 3:18-cv-02293(GC)(RLS)**

Dear Judge Castner:

      I write, reluctantly, on behalf of Lead Plaintiff ("Plaintiff") in the above-referenced matter and in response to Chad Peterman's October 7, 2022 letter (the "10/7/22 Letter," ECF No. 245) on behalf of Defendants Riot Blockchain, Inc., John O'Rourke, and Michael Beeghley (the "Riot Defendants"). Plaintiff's counsel had requested that the Riot Defendants correct a misstatement in their Reply (ECF No. 244) concerning one of Plaintiff's scienter allegations against Defendants O'Rourke and Barry Honig. Specifically, the Riot Defendants incorrectly stated that Plaintiff's allegation that "O'Rourke and Honig shared office space . . . is based ***solely*** on the allegation in a CNBC article in which CNBC crew members visited Honig's office and ran into O'Rourke who was visiting that day." (ECF No. 244 at 13 n.16 (emphasis added).) As the Riot Defendants now acknowledge, Plaintiff's allegation is ***also*** based on identical allegations made by the U.S. Securities and Exchange Commission ("SEC") in two securities fraud complaints[1] that the SEC filed against O'Rourke and Honig on September 6, 2018 and March 8, 2019. The SEC's complaints are Exhibits A and B to Plaintiff's Third Amended Complaint ("TAC"). *See* TAC Exs. A & B (ECF No. 231-1 at 1-155).

      In their letter, rather than simply correct their misstatement, the Riot Defendants offer new factual and legal arguments in which they: (1) mischaracterize the SEC's allegations regarding O'Rourke and Honig's shared office; and (2) incorrectly argue that the SEC's allegations cannot support Plaintiff's claims. I write to correct the Riot Defendants' new misstatements and to briefly respond to their uninvited legal arguments, which compel a response. Because we are mindful that any uninvited argument burdens the Court, we respectfully request that Your Honor considers this short response.

---

[1] The SEC's case against O'Rourke and Honig is *SEC v. Honig*, No. 1:18-cv-08175 (S.D.N.Y.).

**LITE DEPALMA**
**GREENBERG &**
**AFANADOR**

Honorable Georgette Castner, U.S.D.J.
October 11, 2022
Page 2

*First*, the Riot Defendants assert that the "allegations in *SEC v. Honig* . . . state that Honig and O'Rourke shared an office at some unstated point in time" and "the SEC does not allege *when* this sharing supposedly occurred and whether it was even during the relevant class period—*i.e.*, March 15, 2017 to September 6, 2018." 10/7/22 Letter at 1-2.  This is simply incorrect and misstates the SEC's allegations.  The SEC's September 7, 2018 complaint alleged that "Honig . . . *currently* works at an office in Boca Raton with . . . O'Rourke" (TAC Ex. A ¶ 34), and that "O'Rourke . . . *currently* works at an office . . . with Honig" (*id.* ¶ 36).  Thus, as of September 7, 2018—the day after the end of the Class Period—O'Rourke and Honig shared the same office.

Likewise, the SEC's March 8, 2019 amended complaint (TAC Ex. B) alleged that "[t]hroughout these stages, Honig . . . and O'Rourke were in nearly daily contact because *they worked out of the same office* . . . ."  (TAC Ex. B ¶ 56.)  Thus, the SEC alleged that "throughout th[e] stages" of the three pump-and-dump schemes, which the SEC alleged O'Rourke and Honig "perpetrated . . . *from 2013 through 2018*" (*see* TAC ¶ 49 (emphasis added); TAC Ex. A ¶ 1)—and up to and including September 7, 2018 (TAC Ex. A ¶¶ 34, 36)—O'Rourke and Honig worked out of the same office.

The SEC's allegations corroborate CNBC's same conclusions.  Specifically, on February 1, 2018, CNBC reporters travelled to Boca Raton to attend Riot's annual shareholder meeting but were told by the hotel that "there was never a meeting room ever booked under the name Riot Blockchain."  (TAC ¶ 132.)  "So [the CNBC reporters] drove to [Honig's] nearby office building, trying to find Barry Honig."  *Id.*  "When CNBC crew members walked into the office, they didn't find Honig, they found O'Rourke," who "quickly closed the door" but then "agreed to answer [CNBC's] questions via email instead."  (TAC ¶ 131-32.)  "One of CNBC's first questions was whether [O'Rourke] worked in the same office as Honig."  (TAC ¶ 131.)  According to CNBC, O'Rourke "insisted that he does not work out of Barry Honig's office."  TAC ¶ 132.  Honig similarly told CNBC "John O'Rourke does not work out of my office" but admitted that "at one time John O'Rourke had space in my office . . . we speak often."  TAC ¶ 131.

The SEC's allegations that O'Rourke and Honig worked out of the same office "throughout" their schemes during 2013-2018 and as of September 7, 2018 (TAC Ex. A ¶¶ 1, 34, 36), together with CNBC's corroborating reporting that journalists found O'Rourke and Honig together in that same shared office on February 1, 2018 (the day Riot abruptly cancelled its annual shareholder meeting) are important facts because they strongly support Plaintiff's allegation that O'Rourke and Honig were in constant contact and working together *with respect to Riot,* just as they had for years at dozens of other companies, including the companies identified by the SEC as fraudulent pump-and-dump schemes (TAC ¶¶ 49-71), resulting in O'Rourke and Honig being permanently barred from participating in any public offering of penny stock (TAC ¶¶ 69-70).

**LITE DEPALMA GREENBERG & AFANADOR**

Honorable Georgette Castner, U.S.D.J.
October 11, 2022
Page 3

     ***Second***, the Riot Defendants cite an out-of-circuit case to question "Lead Plaintiff's ability to borrow allegations from the SEC's complaint in *SEC v. Honig* to support his claims."  10/7/22 Letter at 2.  But courts in the Third Circuit routinely permit plaintiffs to rely upon on allegations in government complaints.  *See, e.g.*, *Lord Abbett Affiliated Fund, Inc. v. Navient Corp.*, 363 F. Supp. 3d 476, 493 (D. Del. 2019) (permitting plaintiff to "incorporat[e] allegations from government complaints filed in other cases" and crediting plaintiff's use of "specific factual allegations in the government complaint, which must under Fed. R. Civ. P. 11 be based on a reasonable inquiry, to corroborate similar factual allegations in its own complaint"); *In re Navient Corp. Sec. Litig.*, 2019 WL 7288881, at *8 (D.N.J. Dec. 30, 2019) ("The reasoning in *Lord Abbett* is both persuasive and directly on point here.  Accordingly, the Court will not discount the factual assertions in the Complaint that rely on allegations contained in government complaints.").

                                                   Respectfully,

                                                 */s/ Joseph J. DePalma*

                                                 Joseph J. DePalma

JJD:emp

cc:       All Counsel of Record (via ECF)