**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CREIGHTON TAKATA, Individually and on behalf of all others similarly situated,<br><br>             Plaintiff,<br><br>v.<br><br>RIOT BLOCKCHAIN, INC., *et al.*,<br><br>             Defendants. | Civ. Action No. 18-2293 (GC) (RLS)<br><br>**OPINION** |

**CASTNER, District Judge:**

This matter is a putative class action brought by shareholders against defendants Riot Blockchain, Inc. ("Riot") and three of Riot's former officers, directors, and individual investors (collectively with Riot, "Defendants"). The court-appointed lead plaintiff, Dr. Stanley Golovac ("Plaintiff"), alleges that he, and other shareholders, purchased Riot's stock between April 20, 2017, and September 6, 2018 (the "Class Period"), and asserts that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated under that statute, 17 C.F.R. § 240.10b-5. Plaintiff also asserts that the three individual defendants are vicariously liable under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Plaintiff's allegations in the TAC are largely consistent with those stated in the previous iterations. In short, Plaintiff alleges that Defendants, acting in concert with an undisclosed investor group of other Riot shareholders, participated in a scheme to: (1) amass a controlling interest in Riot; (2) conceal their control through false and misleading statements and omissions in violation of Section 13(d) of the Exchange Act, Regulation 13d, and Item 403 of Regulation S-

K; (3) inflate the price and trading volume of Riot stock through manipulative trading, promotional activity, and false and misleading disclosures; (4) engage in undisclosed related-party transactions at the expense of the company and its shareholders in violation of Item 404 of Regulation S-K and Item 1.01(a) of Form 8-K; and (5) dump their shares on unsuspecting retail investors. (*See* Third Amended Complaint ("TAC") ¶¶ 1-6, ECF No. 231.)

Presently before the Court are three separate motions, brought by Defendants, to dismiss the Third Amended Complaint ("TAC") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.[1] The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated herein, and for other good cause shown, Defendants' motions to dismiss (ECF Nos. 232, 233, 234) are **GRANTED**; Plaintiff's claims are **DISMISSED** with prejudice.

## I.   **BACKGROUND**

The following facts are drawn from the allegations in the TAC and are accepted as true for the purposes of the present motions.[2] The TAC alleges substantially the same facts as set forth in its previous iterations and recounted in the two prior Opinions of the Court in this matter.[3] To the extent Plaintiff's allegations remain the same, a summary of the basic facts is included for context;

---

[1] The separate motions to dismiss are as follows: ECF No. 232, by Riot Blockchain, Inc.; ECF No. 233, by John O'Rourke and Michael Beeghley; and ECF No. 234, by Barry Honig.

[2] As noted in the Court's prior Opinions, on a motion to dismiss, while the Court may take judicial notice of certain publicly available documents, such as SEC filings and court filings, it may only do so to establish the existence of those records and the statements contained therein, and not (as Plaintiff again asks the Court to do) for the truth of the matter asserted in those documents. *See Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (Wolfson, J.) (citations omitted); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

[3] *See Takata v. Riot Blockchain, Inc.*, No. 18-02293, 2022 WL 1058389 (D.N.J. Apr. 8, 2022); *Takata v. Riot Blockchain, Inc.*, No. 18-02293, 2020 WL 2079375 (D.N.J. Apr. 30, 2020).

where there are differences or additions, the Court notes them below.

**A.      Defendants and the Alleged Scheme**

Defendant Riot, formerly a medical products company known as Venaxis, and then Bioptix, Inc., is a publicly traded company on the NASDAQ that entered the cryptocurrency industry in October 2017.[4] (TAC ¶¶ 21, 81, 83, 94.) Defendant John O'Rourke ("O'Rourke") served as Riot's Chairman and CEO from November 2017 to September 2018. (*Id.* ¶ 14.) Defendant Michael Beeghley ("Beeghley") served as Riot's CEO from April 2017 to November 2017, when he was replaced by O'Rourke; as Riot's Chairman from January 2017 to November 2017; and served on the Board of Directors from November 2016 to November 2017. (*Id.* ¶ 15.) Defendant Barry Honig ("Honig") was an eleven percent plus shareholder of Riot during the Class Period. (*Id.* ¶ 13.) Honig sold at least 1,583,005 shares of his Riot stock for at least $17 million in proceeds during the Class Period, while maintaining close ties with Riot insiders such as O'Rourke, Beeghley, and others, with whom he also had longstanding business ties and co-

---

[4] Riot's pivot from the medical products industry to cryptocurrency is set forth in detail in the Court's April 30, 2020 Opinion. (*See* ECF No. 166.)  As previously explained, this change in business strategy coincided with a proxy fight that resulted in Defendant Honig and his purported associates, including Defendants O'Rourke and Beeghley, acquiring a controlling stake in Riot. (*See id.* at 5.)

investments.[5] (*Id.*)

According to Plaintiff, Defendants acted in concert with an undisclosed investor group (referred to as the "Selling Shareholders") to commit deceptive acts and otherwise disseminate false and misleading statements and omissions in violation of federal securities laws. (*Id.* ¶ 1.) Specifically, Plaintiff alleges that Defendants engaged in a manipulative scheme to inflate Riot's stock price, while concealing Honig's sales of Riot stock, and that Honig's sales were planned and coordinated with the Selling Stockholders, who constituted an investor "group" as defined by Section 13(d) of the Exchange Act, Regulation 13d, and Item 403 of Regulation S-K. (*Id.* ¶ 2.) In addition, Plaintiff alleges that O'Rourke and Beeghley deceived Riot's public investors by announcing and promoting corporate transactions in which Honig was a related party without disclosing his involvement, contrary to Item 1.01(a) of Form 8-K and Item 404 of Regulation S-K. (*Id.* ¶ 4.) Plaintiff further points to a series of alleged corrective disclosures that ultimately revealed such information to Riot's public investors, resulting in a sharp decline in Riot's stock price. (*Id.* ¶ 5.)

Plaintiff highlights that Defendants' scheme reflects the same *modus operandi* of other

---

[5] Plaintiff's TAC lists numerous "Relevant Non-Parties," consisting of Honig associates and Honig-associated entities, including: 2330573 Ontario, Inc.; Aifos Capital LLC; ATG Capital LLC; Biozone Pharmaceuticals, Inc.; Michael Brauser; Catherine DeFrancesco; Grander Holdings, Inc. 401K; Mark Groussman; GRQ Consultants, Inc. Roth 401K FBO Barry Honig; Alan Honig; Jonathan Honig; JAD Capital Inc; Kairos Global Technology Inc.; Edward M. Karr; Harvey Kesner; MabVax Therapeutics Holdings, Inc.; Marathon Digital Holdings, Inc.; Marcandy Investments Corp.; Melechdavid Inc.; MTG Capital Investments Inc.; Richard Molinsky; MUNDOmedia Ltd.; Nameste Gorgie Inc.; Northurst Inc.; Robert O'Braitis; Paradox Capital Partners LLC; Pershing Gold Corp.; PolarityTE Inc.; Erick Richardson; John Stetson; Stetson Capital Management, LLC; Jason Theofilos; and Titan Multi-Strategy Fund I, Ltd. (*See* TAC ¶¶ 16-48.) However, notably, the TAC abandons Plaintiff's previous theory that Honig led a group of investors, referred to as the "Honig Group," in the alleged pump and dump scheme. The Honig Group was previously alleged to consist of Honig, O'Rourke, Beeghley, Mark Groussman, John Stetson, and Catherine DeFrancesco. The TAC removes Groussman, Stetson, and DeFrancesco as defendants.

pump-and-dump schemes allegedly orchestrated by Honig, O'Rourke, and other Selling Stockholders, which were the subject of a Securities and Exchange Commission (SEC) enforcement action in the Southern District of New York.[6] (*Id.* ¶¶ 49-73.) Relying on the SEC's allegations in that separate action, Plaintiff sets forth the prior investments of Honig, O'Rourke, and certain previously named defendants in various companies, which are included in Plaintiff's list of Relevant Non-Parties. (*Id.* ¶¶ 52-68.) In each instance, Honig, O'Rourke, and others allegedly engaged in a coordinated scheme to run up the stock price of a particular company and subsequently dump their respective shares into an artificially inflated market. (*Id.*) The SEC ultimately reached individual settlements with the defendants in that enforcement action, including Honig and O'Rourke. (*Id.* ¶¶ 69-70 (citing *SEC v. Honig, et al.*, No. 1:18-cv-08175 (S.D.N.Y.) (ECF Nos. 152, 228).) Plaintiff also separately sets forth Beeghley's prior co-investment with Honig and O'Rourke in PolarityTE Inc., and the various overlapping investments of Honig, O'Rourke, Beeghley, and the Selling Stockholders in several other companies, which are named as Relevant Non-Parties. (*Id.* ¶¶ 74-80.)

**B.    Alleged False and Misleading Statements During the Class Period**

Plaintiff lists Defendants' numerous allegedly materially false and misleading statements and omissions during the Class Period. (*Id.* ¶¶ 173-223.) These alleged statements and omissions generally fall into the four following categories.

*First*, Riot, under the management of O'Rourke and Beeghley, issued several public filings with the SEC (on Forms S-3, S-3/A, 10-K, 8-K, and 8-K/A) that omitted that Honig and the Selling Stockholders were members of a group pursuant to an agreement or understanding to acquire, hold,

---

[6] The SEC's civil action is captioned *SEC v. Honig, et al.*, No. 1:18-cv-08175 (S.D.N.Y.) (*See* TAC ¶ 49 n.4.)

vote, and sell off their Riot shares in coordination with each other. (*Id.* ¶ 167.) Further, Plaintiff alleges that, starting in April 2017, six of Riot's Registration Statements (Forms S-3 and S-3/A) affirmatively state the opposite, representing that there were no agreements, arrangements, or understandings with respect to the sale of Riot stock. (*Id.* ¶¶ 109, 168, 181-88, 191-99, 209-20.)

*Second*, Riot issued Forms 8-K and 8-K/A with respect to three separate transactions that failed to disclose the transactions involved Honig. (*Id.* ¶ 170.) The three related-party transactions include: (i) the "March 2017 Private Placement" by which Riot sold $2,250,000 units of its securities to Honig; (ii) the October 2017 "Coinsquare Agreement" by which Riot purchased $3,000,000 of units of Coinsqaure, a company in which Honig and several Selling Stockholders were co-investors; and (iii) the November 2017 "Kairos Transaction" where Riot, in order to acquire computer equipment and other assets used for mining cryptocurrency, purchased a 100% ownership interest in Kairos, a company in which Honig and another Selling Stockholder were shareholders. (*Id.* 92-108, 170.)

*Third*, on February 16, 2018, *CBNC* published statements made by O'Rourke and Honig in which they both continued to conceal the alleged scheme by denying that O'Rourke worked out of Honig's office; downplayed Honig's influence over Riot; and denied that Riot was engaged in SEC disclosure violations. (*Id.* ¶¶ 171, 221-23.)

And *fourth*, that same day, Riot filed a Form 8-K attaching a letter from O'Rourke addressed to Riot's shareholders in which he again denied any disclosure violations by Riot. (*Id.* ¶¶ 172, 221-23.)

## C.   Revelation of the Alleged Scheme

Beginning in December of 2017, a series of news outlets and investment analysts began reporting their suspicions of an alleged pump-and-dump scheme being perpetrated at Riot by

Honig, O'Rourke, and others. (*Id.* ¶¶ 118-20,125-41.) Plaintiff alleges that, following each of these revelations in the media and other public disclosures filed around the same time, Riot's stock price dropped precipitously. (*Id.*) Plaintiff draws from and directly incorporates information from media reports and public disclosures, which detail Honig's allegedly covert sale of Riot stock during the Class Period, his close business relationships with O'Rourke and other Selling Stockholders, and his connection to the March 2017 Private Placement, the Kairos Transaction, and the Coinsquare Agreement.[7] (*Id.*)

### D.      Plaintiff's Claims

Plaintiff asserts three separate counts in the TAC, which largely mirror those previously before the Court. (*See* TAC ¶¶ 264-81.) Count I sets forth alleged violations of Section 10(b) of the Exchange Act and Rule 10b-5, subsections (a) and (c), as to all Defendants. (*Id.* ¶¶ 264-69.) First, Plaintiff claims that O'Rourke and Beeghley, as officers or directors of Riot, pursuant to an explicit or tacit scheme or plan with Honig, caused Riot to issue materially false and misleading statements in SEC filings—including on Forms S-3, S-3/A, 8-K, 8-K/A, 10-K and Schedule 14A— that misrepresented Riot's beneficial ownership in violation of Section 13(d) and Item 403 of Regulation S-K by concealing that many of Riot's largest shareholders, including Honig, were members of a group as defined by Section 13(d)(3). (*Id.* ¶ 266.) Plaintiff also claims that O'Rourke, Beeghley, and Riot issued materially false and misleading Forms 8-K and 10-K that misrepresented and concealed related-party transactions between and among Riot and Riot's controlling (i.e., greater-than-5%) shareholders, including Honig. (*Id.*) Second, Plaintiff claims that, as part of the alleged scheme, Honig coordinated with other Riot shareholders to artificially

---

[7] The Court has previously summarized Plaintiff's allegations in this respect in its April 30, 2020 Opinion (ECF No. 166). *See Takata*, 2020 WL 2079375, at *4-5.

inflate Riot's stock price by failing to disclose pertinent ownership and stock sale information to the public, thereby painting a false picture of the market. (*Id.* ¶ 267.)

Count II asserts violations of Section 10(b) and Rule 10b-5(b), against all Defendants. (*Id.* ¶¶ 270-77.) Plaintiff claims that Defendants disseminated or approved false statements and failed to disclose the material facts necessary to make the statements, in light of the circumstances, not materially misleading. (*Id.* ¶ 272.) Plaintiff claims that Defendants failed to disclose that Riot's largest shareholders, including Honig, were members of a group and concealed various related-party transactions between and among Riot and greater-than-five percent shareholders of Riot, including Honig. (*Id.* ¶ 273.)

Count III asserts liability under Section 20(a) of the Exchange Act against O'Rourke, Beeghley, and Honig. Plaintiff claims that they are vicariously liable as "controlling persons" for any materially false and misleading statements made by Riot. (*Id.* ¶¶ 278-81.)

### E.    Procedural History

Plaintiff filed the initial complaint in this action (ECF No. 1) on February 17, 2018 and filed a corrected and consolidated amended complaint ("CCAC", ECF No. 73) on May 9, 2019. The Court dismissed Plaintiff's claims without prejudice. (ECF No. 166.) In its April 30, 2020 Opinion, the Court held that: (1) Plaintiff failed to plead any actionable misrepresentations or omissions in Riot's registration and proxy statements because Plaintiff failed to allege that any of the alleged statements were materially false or misleading (*Id.* at 27-28); (2) Plaintiff failed to allege a "deceptive or manipulative act" with respect to Beeghley or O'Rourke, and other now-omitted defendants (*Id.* at 40); (3) Plaintiff adequately alleged that Honig committed a "deceptive or manipulative act" and with the requisite scienter but failed to plead the element of loss causation with respect to Honig (*Id.*); and (4) Plaintiff failed to plead any facts showing underlying violations

by Riot because Plaintiff did not adequately allege any of his claims under Section 10(b) of the Exchange Act (*Id.* at 41).

Plaintiff subsequently filed the Second Amended Complaint. (ECF No. 188.) Upon the motions of Defendants and others now omitted, the Court again dismissed Plaintiff's claims without prejudice. (ECF No. 223.) In its April 8, 2022 Opinion, the Court concluded that: (1) failure to disclose information required by Section 13(d) does not give rise to a private right of action for damages under Section 10(b); and (2) nor do violations of Items 403 and 404 of Regulation S-K. (*Id.* at 20-22.)

Thereafter, Plaintiff filed the TAC. (*See generally* TAC.) Defendants again moved to dismiss, filing three separate motions. (ECF No. 232-1; ECF No. 233-1; ECF No. 234-1.) Plaintiff opposed each motion. (ECF No. 240; ECF No. 239; ECF No. 241.) Defendants separately replied. (ECF No. 243; ECF No. 244; ECF No. 242.)

## II.   **LEGAL STANDARD**

### A.   **Rule 12(b)(6)**

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"[M]ere restatements of the elements of [a] claim [] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (citation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

### B.    Rule 9(b)

"Independent of the standard applicable to Rule 12(b)(6) motions," Rule 9(b) of the Federal Rules of Civil Procedure "imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Rule 9(b) states, in pertinent part: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, a plaintiff must state the circumstances of its alleged cause of action with "sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004) (alteration in original)). Specifically, the plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.* (citing *Lum*, 361 F.3d at 224). The Third Circuit has further explained that, at a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (quoting *In re Rockefeller*, 311 F.3d at 217).

### C.    PSLRA

In addition to the plausibility analysis under Rule 12(b)(6) and the heightened pleading requirements of Rule 9(b), Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C § 78u, *et seq.*, to require an even higher pleading standard for plaintiffs bringing private securities fraud actions. *See In re Suprema*, 438 F.3d at 276. This heightened pleading standard is targeted at preventing abusive securities litigation. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007) (stating that the PSLRA was "[d]esigned to curb perceived abuses of the § 10(b) private action—nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers") (citations and internal quotation marks omitted).

The PSLRA's heightened pleading standard has two distinct requirements. First, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Second, the complaint must, "with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Both provisions require that facts be pleaded "with particularity." *See Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (stating that "Rule 9(b)'s particularity requirement is comparable to and effectively subsumed by the requirements of ... the PSLRA") (citations and internal quotation marks omitted). Furthermore, under the second requirement, a "strong inference" exists "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw." *Tellabs*, 551 U.S. at 324 (2007).

### III.   **DISCUSSION**

Defendants move to dismiss Plaintiff's TAC with prejudice, arguing that the Court has twice dismissed Plaintiff's claims for failure to allege cognizable misstatements or omissions under Rule 10b-5 and that Plaintiff now fails to set forth any new facts or legal theories that would change the Court's analysis. (*See* ECF No. 232-1 at 8.)[8]

First, Defendants assert that Plaintiff cannot allege an affirmative duty of disclosure under Item 404 of Regulation S-K, Item 403 of Regulation S-K, or Item 1.01 of Form 8-K to support liability pursuant to Section 10(b). (*See id.* at 8.)  Second, Defendants argue that Plaintiff cannot otherwise point to any statements or disclosures that were materially false or misleading to support Section 10(b) liability. (*See id.* at 38-40.)  Third, Defendants highlight that Plaintiff's Section 10(b) claims are, once again, not supported by sufficient allegations of loss causation. (*See id.* at 34-38.)  O'Rourke and Beeghley separately emphasize that Plaintiff merely repackages prior allegations of scienter that the Court has previously rejected as deficient. (*See* ECF No. 233-1. at 9-12.)  Honig adds that, although the Court previously held that violations of Section 13(d) do not give rise to a private right of action for damages under Section 10(b), Plaintiff reasserts a Section 10(b) claim based on the same conduct that the Court already ruled to be nonactionable. (*See* ECF No. 234-1 at 8.)

As set forth in further detail below, Plaintiff's TAC (i) fails to cure the pleading deficiencies previously identified by the Court and (ii) fails to set forth a viable cause of action against Defendants based on conduct that has now been the subject of several complaints.  Accordingly, Plaintiff's claims are dismissed with prejudice.

---

[8] O'Rourke, Beeghley, and Honig fully join, and incorporate by reference, the arguments presented by Riot in its motion. (*See* ECF No. 233-1 at 1; ECF No. 234-1 at 1.)

## A.  The Section 10(b) Claims (Counts I & II)

Section 10(b) of the Exchange Act makes it unlawful "to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ."  15 U.S.C § 78j(b).  To implement Section 10(b), the SEC enacted Rule 10b-5, which makes it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security, in connection with the purchase or sale of any security.

[17 C.F.R. § 240.10b-5.]

The TAC asserts liability under each of the three subsections of Rule 10b-5 for Defendants' alleged conduct.  (*See* TAC ¶¶ 264-77.)

### 1.  *Rule 10b-5(b) Liability*

To state a claim under Rule 10b-5(b), a plaintiff must adequately plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011) (quoting *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)). Plaintiff's prior complaint asserted two grounds for material misrepresentations or omissions under Rule 10b-5(b): (1) Riot failed to disclose related-party transactions in violation of Item 404 of Regulation S-K and (2) Riot failed to disclose that Honig and the Selling Stockholders were members of a "group" in violation of Item 403 of

Regulation S-K.  In the TAC, Plaintiff repeats those allegations and adds that the failure to disclose the related-party transactions also violated Item 1.01 of Form 8-K.  (*See* TAC ¶¶ 266-67.)

As the Court explained in its April 8, 2022 Opinion, "[t]he Third Circuit has held that, in order to show liability under Section 10(b) for . . . Regulation S-K items, a plaintiff must first establish that the regulation creates an independent private right of action or that the regulation imposes an affirmative duty of disclosure that, if violated, would constitute a material omission under Rule 10b-5."  (ECF No. 223 at 21 (quoting *Oran v. Stafford*, 226 F.3d 275, 287 (3d Cir. 2000)).)  Plaintiff does not argue that a private right of action exists for Items 403 or 404 of Regulation S-K or Item 1.10 of Form 8-K—the Court's April 8, 2022 Opinion forecloses that argument.  (*See id.* at 21-22.)  Rather, Plaintiff contends that such provisions create "an affirmative duty to disclose," and failure to comply constitutes a material omission under Rule 10b-5(b).  (*See* TAC ¶¶ 177, 185, 187, 189, 204-05.)

Under Third Circuit law, in determining whether a regulation creates a duty of disclosure that, if violated, would constitute a material omission under Section 10(b) and Rule 10b-5, courts "must examine whether the disclosure mandated by [the regulation] is governed by standards consistent with those that the Supreme Court has imposed for private fraud actions under the federal securities laws."  *Oran*, 226 F.3d at 287.  Under Rule 10b-5, "[m]aterial information is 'information that would be important to a reasonable investor in making his or her investment decision.'"  *Id.* at 282 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1417 (3d Cir.1997)).  "Generally, undisclosed information is considered material if there is a substantial likelihood that the disclosure would have been viewed by the reasonable investor as having significantly altered the total mix of information available to that investor."  *Id.* (internal quotation marks and citations omitted).  Where the materiality standards for Rule 10b-5 and a particular

statute or regulation "differ significantly," a violation of the statute or regulation's reporting requirements "does not automatically give rise to a material omission under Rule 10b-5." *Id.* (holding that "a violation of SK–303's reporting requirements does not automatically give rise to a material omission under Rule 10b–5"). Here, Plaintiff's claims rest largely on alleged omissions—failure to disclose a purported investor group in certain SEC filings and related parties in connection with three transactions during the Class Period. (*See* TAC ¶¶ 167, 170.)

a)    Disclosure of Section 13(d) Group (Item 403)

Plaintiff alleges that Riot's failure to disclose that Honig and the Selling Stockholders were acting as a group, as defined by Section 13(d), in its Forms S-3, S-3/A, 10-K, 8-K, and 8-K/A violated Item 403 of Regulation S-K, giving rise to Rule10b-5 liability. (*See Id.* ¶¶ 167-69.) Defendants move to dismiss, arguing that (i) Item 403's reporting requirements do not resemble Rule 10b-5's requirements and (ii) Plaintiff fails to sufficiently allege the existence of a group that would have required disclosure under Item 403. (*See* ECF No. 232 at 29-38.)

Item 403(a) requires disclosure of certain identifying information "with respect to any person (including any 'group' as that term is used in section 13(d)(3) of the Exchange act) who is known to the registrant to be the beneficial owner of more than five percent of any class of the registrant's voting securities." 17 C.F.R. § 229.403(a). Section 13(d) of the Exchange Act defines a "group" as "two or more persons [who] act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer[.]" 15 U.S.C. § 78m(d)(3).

Here, as Defendants argue, Item 403's disclosure requirements do not mirror the materiality requirements of Rule 10b-5. (*See* ECF No. 232-1 at 29-30.) Item 403 requires disclosure of a Section 13(d) group if the registrant knows that such group exists, regardless of

whether the existence of such a group is important to a reasonable investor or whether it would alter the total mix of information available to that investor. As such, there is no basis for the Court to find that a disclosure failure under Item 403 automatically gives rise to a material omission under Rule 10b-5. *See Oran*, 226 F.3d at 288.

That said, even assuming, as Plaintiff argues, that such an omission would be material under the alleged circumstances (*see* ECF No. 240 at 31-36), Plaintiff ultimately fails to plausibly establish the existence of a Section 13(d) group requiring disclosure by Riot. Section 13(d) requires the "members of the 'group' to have agreed to act together for the purpose of acquiring not just any security, but securities of a particular issuer." *Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 392 (S.D.N.Y. 2019), *aff'd*, 959 F.3d 541 (2d Cir. 2020). But the TAC fails to set forth any activity by Honig and the Selling Stockholders that demonstrates they acted as a group "for the purpose of acquiring, holding, or disposing of securities" of Riot. 15 U.S.C. § 78m.

First, Plaintiff cannot establish a Section 13(d) group based on investments and activities at companies other than Riot. *See Log On Am., Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp. 2d 435, 448 (S.D.N.Y. 2001) (finding that allegations of previous investments and fraudulent conduct among defendants insufficient to support existence of group with respect to relevant issuer). Plaintiff provides extensive background information regarding Honig's and the Selling Stockholders' prior investment activities at other companies, drawing directly from the

allegations in *SEC v. Honig*.[9]  (*See* TAC ¶¶ 49-80.)  However, such borrowed allegations, which are unrelated to Riot and pre-date the Class Period, are insufficient to demonstrate a Section 13(d) group requiring disclosure by Riot.  Second, Plaintiff's allegations that do tend to focus on Riot fail to show any coordinated investment activity by Honig and the Selling Stockholders.  (*See id.* ¶¶ 81-91.)  For instance, Plaintiff alleges that Honig and another Selling Stockholder shared counsel in connection with an agreement related to Riot's Board of Directors and that Honig shared an office with O'Rourke for some period of time.  (*See* TAC ¶¶ 88, 151, 162.)  While such allegations may give rise to the inference of business relationships, nothing in the TAC demonstrates joint investment activity at Riot by Honig, O'Rourke, or the Selling Stockholders.  Indeed, two or more persons do not become a group within the meaning of Section 13(d)(3) unless they "act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding, or disposing of securities of an issuer[.]"  15 U.S.C. § 78m(d)(3) .  Aside from conclusory allegations of coordination, Plaintiff does not specify any unified group activity as to

---

[9] The parties vigorously dispute the propriety of Plaintiff's reliance on allegations from the SEC's complaint in *SEC v. Honig*.  For instance, in opposition to the O'Rourke/Beeghley motion to dismiss, Plaintiff contends that "[c]ourts routinely hold that where a plaintiff does her own investigation, allegations relied on from other litigants in other cases can be considered" and that there is no rule barring a private plaintiff from relying on government pleadings to meet his or her burden. (*See* ECF No. 239 at 27.) Additionally, in a supplemental submission, Plaintiff argues the same. (*See* ECF No. 246 at 3.) While the Court does not discount the utility of allegations found in SEC or other government pleadings, the value of such allegations is considerably diminished, particularly in light of the heightened pleading standards of the PSLRA, where, as here, such allegations concern conduct unrelated to the company at issue. *See SEC v. Lee*, 720 F. Supp. 305, 340-41 (S.D.N.Y. 2010).

the acquisition, holding, or disposition of Riot stock.[10]

As Defendants highlight, the insufficiency of Plaintiff's allegations in this regard are underscored by comparison to the SEC complaint in *SEC v. Honig*, upon which Plaintiff heavily relies and attaches to the TAC. (*See* TAC, Ex. C.) Therein, the SEC sets forth allegations as to each member of the alleged group's agreement and participation in coordinated investment activities with respect to the companies at issue in the complaint. (*See id.* ¶¶ 74-81, 94-99, 109, 143-54.) Here, Plaintiff's failure to do the same undermines Plaintiff's assertion of a Section 13(d) group at Riot and, similarly, renders Plaintiff's duty of disclosure theory under Item 403 unactionable.

          b)      Disclosure of Related-Party Transactions (Item 404 & Item 1.01)

Plaintiff alleges that Riot failed to disclose related-party transactions in its Forms 8-K and 10-K, including the March 2017 Private Placement, the Coinsquare Agreement, and the Kairos Transaction, in violation of Item of 404 of Regulation S-K. (*See* TAC ¶¶ 170, 173-80, 200-08.) Plaintiff also asserts that Riot's failure to disclose the identities of Honig and other investors in connection with such transactions violated Item 1.01 of Form 8-K. (*Id.* ¶¶ 173, 201, 206.) According to Plaintiff, these purported violations imply Rule 10b-5 liability. (*Id.* ¶ 273.) Moving to dismiss Plaintiff's claims, Defendants argue that (i) the disclosure requirements of Item 403 and Item 1.01 alone do not give rise to a Section 10(b) claim and (ii) the relevant disclosure requirements were not triggered by the transactions in question and, even if they were,

---

[10] Plaintiff's claim based on Item 403 violations fails for the additional, independent reason that the TAC does not allege with specificity that Riot, O'Rourke, or Beeghley actually knew of the existence of a purported Section 13(d) group led by Honig. 17 C.F.R. § 229.403. Plaintiff's theory regarding O'Rourke's knowledge of the alleged group relies on deficient allegations of prior investment relationships at other companies. (*See* TAC ¶¶ 160-63.) With respect to Beeghley, Plaintiff merely mentions Beeghley's role as a director at another company with ties to Honig. (*See id.* ¶ 76.)

nondisclosure was not a material omission. (*See* ECF No. 232-1 at 18-29.)

Item 404 requires the registrant to describe any transaction "in which the registrant was or is to be a participant and the amount involved exceeds $120,000, and in which any related person had or will have a direct or indirect material interest." 17 C.F.R. § 229.404(a).  Similar to the disclosure guidelines for SEC filings set forth in Regulation S-K, Item 1.01 provides disclosure instructions to registrants completing Forms 8-K.  (*See* ECF No. 232-2, Ex. E.)  Specifically, Item 1.01 directs registrants to file a Form 8-K if the registrant has entered into a material definitive agreement not made in the ordinary course of business, and requires disclosure of: (1) the date of the agreement; (2) the identity of the parties to the agreement; (3) a brief description of any material relationship between the registrant and any of the parties; and (4) a brief description of the terms and conditions of the agreement that are material to the registrant.  (*See id.*)

Like Plaintiff's Item 403 theory, the Court cannot find that a violation of Item 404 or Item 1.01 automatically gives rise to a material omission under Rule 10b-5, as each requires disclosure of information that does not meet Rule10b-5's higher standard of materiality.  *See Oran*, 226 F.3d at 288.  Still, Plaintiff argues that Riot's purported violations of Item 404 and Item 1.01 were material omissions in light of the circumstances alleged in the TAC.  (*See* ECF No. 240 at 39-40.) Plaintiff's theories with respect to both Item 404 and Item 1.01 suffer pleading deficiencies.

Item 404. Plaintiff alleges that, by virtue of his investments in Coinsquare and Kairos, Honig should have been identified in Riot's Forms 8-K on October 4, 2017 and November 3, 2017, respectively, as Item 404 requires disclosure of related parties in transactions with the registrant. (*See* TAC ¶¶ 96-108.)  But the instructions to Item 404 also set forth certain exclusions to its disclosure requirements.  17 C.F.R. § 229.404(a).  Relevant here, as Defendants argue that, under Instruction 6 of Item 404, Honig's less than ten percent interest in either Coinsquare or Kairos at

the time of the transactions excluded him from the disclosure requirements of Item 404(a). *See* 17 C.F.R. § 229.404(a), inst. 6; *see also Unite Here v. Cintas Corp.*, No.06-7061, 2006 WL 2859279, at *6 (S.D.N.Y. Oct. 6, 2006). In fact, Instruction 6 of Item 404 expressly contemplates transactions in which an equity holder of the registrant is also an equity holder of the other transacting party—stating that, where the equity holder owns less than a ten percent interest in the other transacting party, such a situation does not amount to an "indirect material interest" requiring disclosure. 17 C.F.R. § 229.404(a), inst. 6. Plaintiff ultimately fails to provide any support for the notion that Honig, or the Selling Stockholders, were somehow direct parties to Riot's transactions with Coinsquare and Kairos or demonstrating the inapplicability of the exclusion set forth in Instruction 6. (*See* ECF No. 240 at 30-33.) In this way, Plaintiff cannot show that Riot failed to disclose a direct or indirect material interest in either transaction under Item 403, let alone one that amounted to a material omission under Rule 10b-5.

With respect to the March 2017 Private Placement, Plaintiff alleges that Riot failed to disclose Honig by name in its March 16, 2017 Form 8-K and its March 31, 2017 Form 10-K. (*See* TAC ¶¶ 173, 178.) But Plaintiff does not explain how Riot's mere failure to identify Honig by name as the purchaser in the March 2017 Private Placement amounts to a material omission that "would have been viewed by the reasonable investor as having significantly altered the total mix of information available to that investor." *Oran*, 226 F.3d at 282. As explained above, even if the nondisclosure of Honig's name amounted to a technical violation of Item 404, that omission does not necessarily support a Rule 10b-5 claim. *See Stephens v. Uranium Energy Corp.*, No. H-15-1862, 2016 WL 3855860, at *21 (S.D. Tx. July 15, 2016) (holding that "alleged omissions from the Item 404 disclosures" of names of related persons in related-party transactions "were not material and cannot support [] Rule 10b-5(b) claims").

*Item 1.01.* Plaintiff cannot salvage a Section 10b-5 claim as to the Coinsquare Agreement, the Kairos Transaction, or the March 2017 Private Placement based on Item 1.01. Plaintiff claims that Riot's October 4, 2017 Form 8-K and November 3, 2017 Form 8-K were false and misleading because they failed to disclose Honig's status as a shareholder in Coinsquare and Kairos, respectively. (*See* TAC ¶¶ 204, 207.) However, because Honig and the Selling Stockholders were not "parties to the agreement" in either instance, but rather mere shareholders of the transacting entities, disclosure was not required under Item 1.01. Plaintiff also claims that Riot's failure to disclose Honig as a party to the March 2017 Private Placement amounted to a violation of Item 1.01. (*See* TAC ¶ 178.) But, as noted above, Plaintiff "cannot allege that the failure to comply with Item 1.01(a) is, standing alone, sufficient to state a claim under Section 10(b) and Rule 10b–5." *In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09-2058, 2011 WL 3211472, at *10 (S.D.N.Y. July 29, 2011). Indeed, Plaintiff alleges only that Riot had a duty to disclose such information under Item 1.01 (*see* TAC ¶ 204), but failing to comply with the requirements of the PSLRA by specifying the reasons Honig's identity was material to investors at the time. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 243 (3d Cir. 2013) ("An allegation of materiality is crucial because '[t]he first requirement under the PSLRA obliges a plaintiff to specify . . . the reason or reasons why the statement is misleading"); *see also In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 565 n.15 (S.D.N.Y. 2011) ("The omission of facts that may be material or significant by hindsight does not render their omission at a prior time misleading.").

c)     Other Allegedly False or Misleading Statements

Plaintiff alleges that various other statements made by Riot and O'Rourke via SEC filings and interviews with the media give rise to Section 10b-5 liability. However, Plaintiff's allegations are insufficient to deem such statements materially false or misleading.

First, Plaintiff alleges that each of Riot's 2017 and 2018 Registration Statements (Form S-3) were materially false and misleading because they stated: (1) "there are currently no agreements, arrangements, or understandings with respect to the sale of any of the shares" (TAC ¶ 182); (2) "[t]he selling stockholders may not sell or otherwise dispose of any or all of the shares offered by this prospectus" (*Id.* ¶ 183); and (3) "the selling stockholders may sell or otherwise dispose of some, all or none of the shares covered hereby." (*Id.* ¶ 184.) Plaintiff claims that O'Rourke and Beeghley knew that Honig and others would sell "at least some" of their shares "as part of their usual *modus operandi*." (*Id.*) But, as the Court has already found, Plaintiff fails to sufficiently allege the existence of an agreement to sell Riot's shares or that Riot was aware of any such agreement.

Second, Plaintiff recycles allegations that Riot's January 5, 2018 and February 7, 2018 Forms S-3 were misleading because they stated: "[n]one of the selling stockholders has held any position or office, or has otherwise had a material relationship, with us or any of our subsidiaries within the past three years other than as a result of the ownership of our shares or other securities." (TAC ¶¶ 211-13.) The Court previously dismissed Plaintiff's claim in this regard. (*See, e.g.,* ECF No. 166 at 18.). Plaintiff now argues a new theory of falsity, asserting that "Honig (and several other Selling Stockholders) did in fact have a material relationship with Riot by virtue of their undisclosed participation in three corporate transactions involving Riot"—namely, the Coinsquare Agreement, the Kairos Transaction, and the March 2017 Private Placement. (ECF No. 240 at 25-26.) Plaintiff's theory, however, seemingly denies the import of the phrase "other than as a result

of the ownership of our shares or other securities"—ownership that ultimately formed the basis for Honig's participation in the transactions.

Third, Plaintiff points to purportedly false statements by O'Rourke in a *CNBC* interview on February 16, 2018 and in a letter to Riot shareholders that same day. (*See* TAC ¶¶ 220, 222.) Specifically, Plaintiff alleges that O'Rourke falsely stated to *CNBC* that he was not "worried about the SEC because [Riot] overdisclose[s]" (*id.* ¶ 220), and that O'Rourke similarly misleadingly stated to Riot shareholders that Riot took its "SEC reporting obligations seriously and diligently file all reports[.]" (*Id.* ¶ 222.) Nevertheless, the Court has previously dismissed similar allegations as "vague and general statements of optimism" that are immaterial and understood by reasonable investors as such. (*See* ECF No. 166 at 24-25 (collecting cases)). Moreover, "the general statements about compliance at issue here are the kind of corporate puffery that are rarely (if ever) actionably misleading." *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 898 (N.D. Cal. 2022); *see Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 642 (3d Cir. 1989) (holding that "statements of subjective analysis or extrapolation, such as opinions, motives, and intentions" are "soft information" and thus immaterial for purposes of Rule 10b-5).

Fourth, Plaintiff alleges that, on or around February 16, 2016, Honig falsely stated in an interview with *CNBC* that he no longer manipulated stocks in response to a question asking as much. (*See* TAC ¶¶ 131, 134.) Again, as with the statements made by O'Rourke, Honig's response to the interview question is easily dismissed as an immaterial statement about regulatory compliance by a single shareholder. Moreover, Plaintiff fails to allege facts indicating that the statement was false or misleading regarding Honig's activities at Riot when made.

In sum, the Court finds that Plaintiff cannot demonstrate the first element of a Rule 10b-5(b) claim. Since Plaintiff fails to adequately plead that any of the identified omissions or

statements are materially false or misleading, the Court does not reach whether Plaintiff has sufficiently pled scienter or loss causation, which are also vigorously challenged by Defendants. (*See* ECF No. 166 at 28 (collecting cases and declining to address the issues of scienter and loss causation absent a materially false or misleading statement or omission).)  Accordingly, given Plaintiff's numerous attempts to state a claim, Plaintiff's Rule 10b-5(b) claim against Defendants, Count II in the TAC, is dismissed with prejudice.

### 2.      *Rule 10b-5(a) and (c) Liability*

"To state a claim based on conduct violating Rule 10b–5(a) and (c), a private plaintiff must allege (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *SEC v. Lucent Techs., Inc.*, 610 F. Supp. 2d 342, 350 (D.N.J. 2009); *see In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 643 (3d Cir. 2011) ("We refer to claims under Rule 10b-5(a) and (c) as 'scheme liability claims' because they make deceptive conduct actionable, as opposed to Rule 10b-5(b), which relates to deceptive statements.").

Moving to dismiss Plaintiff's scheme liability claim, Defendants argue that Plaintiff merely repackages the statements or omissions that form the basis for the Rule 10b-5(b) claims. (*See* ECF No. 232-1 at 45.) As an initial matter, the Court has found those allegations unactionable under Rule 10b-5(b), *see supra*, and thus such statements or omissions cannot independently serve as "deceptive or manipulative" acts to support scheme liability under Rule 10b-5. (*See* ECF No. 166 at 31 n.17 (same).)  Further, "[w]here the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, courts have routinely rejected the [plaintiffs'] attempt to bypass the elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'" *In re Mindbody, Inc.*

*Sec. Litig.*, 489 F. Supp. 3d 188, 216 (S.D.N.Y. 2020) (quoting *SEC v. Kelly*, 817 F. Supp. 2d 340,

343 (S.D.N.Y. 2011)).   Without more, Plaintiff's allegations that Riot, O'Rourke, or Beeghley

failed to disclose Honig's role in the alleged related-party transactions and the existence of a

Section 13(d) group are insufficient to demonstrate a deceptive or manipulative act that might give

rise to scheme liability.   Accordingly, Plaintiff's scheme liability claim as to Riot, O'Rourke, and

Beeghley is dismissed with prejudice.

Honig separately moves to dismiss Plaintiff's scheme liability claim (*See* ECF No. 234-1

at 17-31; ECF No. 242 at 5-13.) Honig argues that the Court has twice dismissed Plaintiff's scheme

liability claim against him and that Plaintiff's TAC does nothing to rectify the deficiencies

identified in the Court's prior opinions.   (*See* ECF No. 234-1 at 7-10.)   In its April 30, 2020

Opinion, the Court found that Plaintiff failed to adequately plead loss causation with respect to

Honig's concealment of his ownership and sales of Riot stock in violation of Section 13(d) of the

Exchange Act and Rule 13d-2.   (*See* ECF No. 166 at 39.)   Subsequently, in its April 8, 2022

Opinion, the Court held that a "Section 13(d) violation may not give rise to a private right of action

for damages under Section 10(b)" and that, when "a duty arises" under Section 13(d), "the proper

relief should relate to the information that was misstated or omitted." (ECF No. 223 at 20.)

Despite the Court's latter ruling, Plaintiff's scheme liability claim against Honig continues

to rely on Honig's failure to promptly file public reports with the SEC that are required by Section

13(d) and Rule 13d-2. (*See* ECF No. 241 at 15; TAC ¶¶ 142-47.)   Further, in support of the claim,

Plaintiff rehashes legal arguments that have been previously considered and expressly rejected by

the Court. (*See* ECF No. 241 at 22-24.)   The Court declines Plaintiff's invitation to belatedly

reconsider its prior legal conclusions.[11]   *See U.S. ex rel. Silver v. Omnicare, Inc.*, No. 11-1326,

---

[11] On August 2, 2023, Plaintiff submitted a notice of supplemental authority, alerting the Court to
a recent district court opinion—*In re Bed Bath & Beyond Corp. Sec. Litig.*, No. 22-2541, 2023 WL

2020 WL 7022664, at *3 (D.N.J. Nov. 30, 2020) (stating that "[t]he doctrine of the law of the case precludes review of legal issues previously decided" and "[t]he previous disposition of a motion to dismiss may constitute the law of the case") (citing *In re City of Phila. Litig.*, 158 F.3d 711, 717-18 (3d Cir. 1998)).  Because Plaintiff's scheme liability claim against Honig is premised on conduct and a legal theory that the Court has already ruled unactionable, Plaintiff's Rule 10b-5, subsections (a) and (c), claim against Honig is dismissed with prejudice.

### B.    Section 20(a) Control Person Liability (Count III)

Count III of the TAC asserts liability pursuant to Section 20(a) of the Exchange Act against O'Rourke, Beeghley, and Honig.  (*See* TAC ¶¶ 278-81.)  Under Section 20(a) of the Exchange Act, "[o]ne can be liable . . . for controlling a company that committed securities fraud." *Jones v. Intelli-Check, Inc.*, 274 F. Supp. 2d 615, 644 (D.N.J. 2003).  To state a claim, the plaintiff must show: "(1) an underlying violation by the company; and (2) circumstances establishing defendant's control over the company's actions." *Id.* at 645.

Because Plaintiff has not adequately alleged claims against Riot under Section 10(b), Plaintiff's Section 20(a) cause of action necessarily fails.  Accordingly, Plaintiff's Section 20(a) claim against O'Rourke, Beeghley, and Honig is dismissed with prejudice.

---

4824734 (D.D.C. July 27, 2023)—holding that the filing of a misleading Schedule 13D by an individual investor accused of a pump-and-dump scheme can serve as a basis for a Section 10(b) claim. (*See* ECF No. 249.)  Having considered Plaintiff's submission, the Court finds no basis to depart from its prior conclusion that a Section 13(d) violation does not give rise to a private right of action for damages under Section 10(b). (*See generally* ECF No. 166.)  The district court in *Bed Bath & Beyond* never reaches the question of whether damages are available as a remedy when Section 10(b) liability arises from a Section 13(d) violation, noting only that such a determination amounts to a "separate question." 2023 WL 4824734, at *7.  In contrast, the Court extensively considered that question under controlling precedent in its April 8, 2022 Opinion, (*see* ECF No. 223 at 20-21), and declines to disturb that analysis based on an out-of-circuit opinion addressing a tangential legal issue.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED**; Plaintiff's claims are **DISMISSED with prejudice**. An appropriate Order will follow.

Date: August **25**, 2023

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE